## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

IN RE: PROCESSED EGG PRODUCTS     :
ANTITRUST LITIGATION     :
     :    MDL No. 2002
     :    08-md-02002

_____     :
     :
THIS DOCUMENT RELATES TO     :
2:12-cv-00088-GP     :

### UNITED EGG PRODUCERS, INC.'S ANSWER WITH AFFIRMATIVE DEFENSES TO PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendant United Egg Producers, Inc. ("UEP") provides the following answer with affirmative defenses to Plaintiffs Kraft Foods Global, Inc., The Kellogg Company, General Mills, Inc., and Nestle USA, Inc.'s ("Plaintiffs") Second Amended Complaint ("Second Amended Complaint").

### PRELIMINARY STATEMENT

By way of general response, Federal Rule of Civil Procedure 8(b) requires "short and plain" answers. A denial must fairly meet the substance of the averments, and a party may generally deny all allegations contained in a paragraph except those that are specifically admitted. *See* Fed. R. Civ. P. 8(b). Moreover, the federal rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

UEP denies all allegations contained in the Second Amended Complaint unless specifically admitted. Moreover, any factual averment that is admitted below is admitted only as to specific facts stated therein and not as to any conclusions, legal or otherwise, characterizations, implications or speculation in the averment or the Second Amended Complaint

as a whole.  To the extent that an averment includes a mix of alleged fact and legal conclusion, UEP denies such comingled allegations except those that are specifically admitted.  *See Charleston v. Salon Secrets Day Spa, Inc.,* No. 08-5889, 2009 U.S. Dist. Lexis 53073, at *5 (E.D. Pa. June 24, 2009) (holding that an answer on the basis that the averments assert conclusions of law to which no response is required was sufficient to deny the allegations); *Am. & Foreign Ins. Co. v. Phoenix Petroleum Co.,* No. 97-3349, 1998 U.S. Dist. LEXIS 20411, at *8-9 (E.D. Pa. Dec. 22, 1998) (finding that denials on the basis that the allegations were conclusions of law "meet the substance of the averments" and are "sufficient and do not constitute failures to deny").

Throughout the Second Amended Complaint, Plaintiffs' allegations include quoted material without any attribution or citation.  UEP lacks knowledge or information sufficient to form a belief as to the truth or falsity of those allegations, and UEP therefore denies the same.  *See* Fed. R. Civ. P. 8(b) ("If a party is without knowledge or information sufficient to form a belief as to the truth of an averment, the party shall so state and this has the effect of a denial.").  UEP has no obligation to investigate the source(s) of material that Plaintiffs purport to characterize or quote without attribution or citation, and UEP denies those allegations.

Similarly, Plaintiffs appear to have extracted many averments in the Second Amended Complaint from documents and other writings, both attributed and unattributed.  UEP denies Plaintiffs' characterization of such documents, which are writings that speak for themselves.  *See Great W. Life Assurance Co. v. Levithan,* 834 F. Supp. 858, 865 (E.D. Pa. 1993) (holding that responses stating that "writings speak for themselves" were sufficient because "such responses are denials of the Plaintiff's characterization of the writings"); *Am. & Foreign*

*Ins. Co.,* 1998 U.S. Dist. LEXIS 20411, at *8-9 (holding that responses which state that a contract speaks for itself meet the substance of the averments).

    Many of the allegations in the Second Amended Complaint concern the knowledge, perception, intention, or motivation of others. UEP cannot speak to the knowledge, perception, intention, or motivation of others without engaging in speculation.

    UEP acknowledges that Plaintiffs purport to define both "shell eggs" and "egg products." UEP takes no position as to the accuracy of Plaintiffs' purported definitions or terminology. To the extent UEP admits any allegation that contains this terminology, UEP's admission relates only to the terms as defined by the Plaintiffs.

    UEP denies any allegations set forth in or innuendo suggested by Plaintiffs' headings and/or footnotes.

    On those occasions in the Second Amended Complaint when Plaintiffs make allegations against all Defendants together, unless otherwise stated in this answer, UEP will answer for itself only, and any allegations directed against other Defendants will be denied. UEP incorporates this footnote by reference into its response to any paragraph in the Second Amended Complaint that makes global allegations against Defendants as a group.

    UEP incorporates this Preliminary Statement into each numbered paragraph of this Answer.

## ANSWER

1.      Admitted in part; denied in part.  UEP admits that Plaintiffs purport to define the terms "shell eggs," "egg products," and "eggs" as set forth in paragraph 1.  UEP denies the remaining allegations contained in paragraph 1.

2.      Admitted in part; denied in part.  UEP admits that certain defendants are producers of shell eggs and egg products.  UEP denies that it is a trade group.  To the contrary, UEP avers that it is a Capper-Volstead Agricultural Cooperative comprised of producer members.  UEP denies the remaining allegations contained in paragraph 2.

3.      Denied.  To the extent the allegations contained in paragraph 3 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 3.

4.      Admitted in part; denied in part.  UEP admits that historically egg production has fluctuated.  The allegations contained in the second sentence of paragraph 4 purport to characterize Cal-Maine Foods, Inc.'s August 4, 2011 Form 10-K, from which it appears that Plaintiffs have extracted certain allegations contained in paragraph 4.  UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 4.

5.      Admitted in part; denied in part.  UEP admits that Fred Adams, Jr., is the Chairman Emeritus of Cal-Maine Foods, Inc.  The allegations contained in the third through sixth sentences of paragraph 5 purport to characterize Cal-Maine Foods, Inc.'s August 4, 2001 Form 10-K, Michael Foods, Inc.'s August 8, 2011 prospectus, and an article published in the July 2007 edition of *Investor's Business Daily*, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 5.  UEP denies Plaintiffs' characterization of the

documents, which are writings that speak for themselves.  UEP denies the remaining allegations contained in paragraph 5.

6.      Admitted in part; denied in part.  UEP admits that there are fewer egg producers today than existed in the past.  UEP denies the remaining allegations contained in paragraph 6.

7.      Denied.  UEP denies the allegations contained in the first two and final sentences of paragraph 7.

A.      Admitted in part; denied in part.  UEP admits that in or around 1999 and 2000, UEP recommended that members molt flocks and reduce flock inventory as voluntary measures to manage supply.  To the extent the allegations contained in paragraph 7.A purport to characterize an article from UEP's United Voices or an Egg Industry article dated November 1999, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 7.A, UEP denies Plaintiffs' characterization of the articles, which are writings that speak for themselves.  UEP denies the remaining allegations contained in paragraph 7.A.

B.      Admitted in part; denied in part.  UEP admits that in or around 2001, UEP recommended that members reduce flock inventory as voluntary measures to manage supply.  To the extent the allegations contained in paragraph 7.B purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 7.B.

C.     Admitted in part; denied in part.  UEP admits that in or around 2002, UEP recommended that members molt flocks and reduce flock inventory as voluntary measures to manage supply.  To the extent the allegations contained in paragraph 7.C purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 7.C.

D.     Denied.  The allegations contained in the last sentence of paragraph 7.D purport to characterize UEP's *United Voices* newsletter dated March 4, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 7.D.  UEP denies Plaintiffs' characterization of the newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 7.D.

E.     Admitted in part; denied in part.  UEP admits that producers that elected to participate in UEP's animal welfare program were required to submit periodic compliance reports and to submit to periodic audits.  The allegations contained in the last sentence of paragraph 7.E purport to characterize UEP's animal welfare audit guidelines, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 7.E.  UEP denies Plaintiffs' characterization of the guidelines, which are contained in a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 7.E.

F.     Admitted in part; denied in part.  UEP admits that UEP's Annual Board

Meeting was held on October 11-12, 2002 in Savannah, Georgia, and that

at that meeting, a motion passed that required producers who voluntarily

chose to participate in the UEP animal welfare program to comply with

UEP's animal welfare guidelines at all of the producer's production

facilities.  The allegations contained in paragraph 7.F purport to

characterize the minutes from that meeting, from which it appears that

Plaintiffs have extracted the allegations contained in paragraph 7.F.  UEP

denies Plaintiffs' characterization of the meeting minutes, which are

contained in a writing that speaks for itself.  UEP denies the remaining

allegations contained in paragraph 7.F.

G.     Admitted in part; denied in part.  UEP admits that in or around 2004, UEP

recommended that members molt flocks and reduce flock inventory as

voluntary measures to manage supply.  To the extent the allegations

contained in paragraph 7.G purport to characterize the contents of a

document, UEP denies Plaintiffs' characterization of the document, which

is a writing that speaks for itself.  UEP denies the remaining allegations

contained in paragraph 7.G.

H.     Admitted in part; denied in part.  UEP admits that in or around 2004, UEP

recommended that members reduce flock inventory as voluntary measures

to manage supply.  To the extent the allegations contained in the

paragraph 7.H purport to characterize a document, UEP denies Plaintiffs'

characterization of the document, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 7.H.

I.      Admitted in part; denied in part. UEP admits UEP held an "Economic Summit" meeting on November 16, 2004, and that in 2004 UEP recommended that members adopt voluntary measures to manage supply. To the extent the allegations contained in the paragraph 7.I purport to characterize a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 7.I.

J.      Denied. The allegations contained in the first sentence of paragraph 7.J purport to characterize the minutes from UEP's December 16, 2004 Board of Directors meeting. To the extent the allegations contained in paragraph 7.J purport to characterize UEP's August 12, 2004 *United Voices* newsletter, UEP denies Plaintiffs' characterization of the these documents, which are writings that speak for themselves. UEP denies the remaining allegations contained in paragraph 7.J.

K.      Admitted in part; denied in part. UEP admits that the UEP Board of Directors held a meeting on January 25, 2005, in Atlanta, Georgia. To the extent the allegations in paragraph 7.K purport to characterize the minutes from that meeting, UEP denies Plaintiffs' characterization of the meeting minutes, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 7.K.

L.    Denied.  The allegations contained in the second sentence of paragraph

7.L purport to characterize a document, from which it appears that

Plaintiffs have extracted certain allegations contained in paragraph 7.L.

UEP denies Plaintiffs' characterization of the document, which is a

writing that speaks for itself.  UEP lacks knowledge or information

sufficient to form a belief as to the truth of the allegations relating to

Defendants other than UEP, and the same are therefore denied.  UEP

denies the remaining allegations contained in paragraph 7.L

8.    Admitted in part; denied in part.  UEP admits that it published *United Voices*

newsletters dated June 4, 2003, August 27, 2003, and September 11, 2003, from which it appears

that Plaintiffs have derived the allegations contained in paragraph 8.  UEP denies Plaintiffs'

characterization of the *United Voices* newsletters, which are writings that speak for themselves.

To the extent the allegations contained in paragraph 8 are conclusions of law, no response is

required, and they are thus deemed denied.  UEP denies the remaining allegations contained in

paragraph 8.

9.    Admitted in part; denied in part.  UEP admits that it published a *United Voices*

newsletter dated November 12, 2003.  The allegations contained in paragraph 9 purport to

characterize UEP's *United Voices* newsletter dated November 12, 2003, and a March 1, 2004

report authored by Don Bell, from which it appears that Plaintiffs have extracted the allegations

contained in paragraph 9.  UEP denies Plaintiffs' characterization of the documents, which are

writings that speak for themselves.   UEP denies the remaining allegations contained in

paragraph 9.

10.     Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated January 3, 2008, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 10.  UEP denies Plaintiffs' characterization of the newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 10.

11.     Admitted in part; denied in part.  UEP admits that Plaintiffs purport to bring this action as set forth in paragraph 11.  UEP denies that Plaintiffs are entitled to the relief they request.  To the extent the allegations contained in paragraph 11 constitute conclusions of law to which no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 11.

12.     Denied.  The allegations contained in paragraph 12 constitute conclusions of law to which no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 12.

13.     Denied.  The allegations contained in paragraph 13 constitute conclusions of law to which no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 13.

14.     Admitted in part; denied in part.  UEP admits that plaintiffs purport to define "Kraft Foods" as set forth in paragraph 14.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 14, and the same are therefore denied.  To the extent the allegations contained in the last sentence of paragraph 14 are conclusions of law, no response is required, and they are thus deemed denied.

15.     Admitted in part; denied in part.  UEP admits that plaintiffs purport to define "Kellogg" as set forth in paragraph 15.  UEP lacks knowledge or information sufficient to form a

belief as to the truth of the remaining allegations contained in paragraph 15, and the same are

therefore denied.  To the extent the allegations contained in the last sentence of paragraph 15 are

conclusions of law, no response is required, and they are thus deemed denied.

16.     Admitted in part; denied in part.  UEP admits that plaintiffs purport to define

"General Mills" as set forth in paragraph 16.  UEP lacks knowledge or information sufficient to

form a belief as to the truth of the remaining allegations contained in paragraph 16, and the same

are therefore denied.  To the extent the allegations contained in the last sentence of paragraph 16

are conclusions of law, no response is required, and they are thus deemed denied.

17.     Admitted in part; denied in part.  UEP admits that plaintiffs purport to define

"Nestle USA" as set forth in paragraph 17.  UEP lacks knowledge or information sufficient to

form a belief as to the truth of the remaining allegations contained in paragraph 17, and the same

are therefore denied.  To the extent the allegations contained in the last sentence of paragraph 17

are conclusions of law, no response is required, and they are thus deemed denied.

18.     Admitted.

19.     Admitted in part; denied in part.  UEP admits that Cal-Maine Foods, Inc., is the

largest egg producer in the United States.  UEP lacks knowledge or information sufficient to

form a belief as to the truth of the remaining allegations contained in paragraph 19, and the same

are therefore denied.

20.     Admitted in part; denied in part.  UEP admits that Cal-Maine Foods, Inc., was a

UEP member and participated in the UEP Certified program, certification no. 103, at certain

times during the alleged relevant time period.  UEP further admits that Fred Adams, Jr., was the

former CEO of Cal-Maine Foods, Inc.  UEP further admits that Dolph Baker is Cal-Maine

Foods, Inc.'s CEO; served as Chairman of UEP's Executive Committee; and served on UEP's

Board of Directors at certain times during the alleged relevant time period. UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the first, third, and fourth sentences of paragraph 20, and the same are therefore denied. UEP denies the remaining allegations contained in paragraph 20.

21. Admitted in part; denied in part. UEP admits that Ken Looper was Vice Chairman of Cal-Maine Foods, Inc., at certain times during the alleged relevant time period. UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 21, and the same are therefore denied.

22. Denied. UEP denies the allegations contained in the first two sentences of paragraph 22.

  A. Denied. The allegations contained in paragraph 22.A purport to characterize an article from UEP's *United Voices* newsletter and an *Egg Industry* article dated November 1999, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 22.A. UEP denies Plaintiffs' characterization of the documents, which are writings that speak for themselves. UEP denies the remaining allegations contained in paragraph 22.A.

  B. Denied. The allegations contained in paragraph 22.B purport to characterize a *Feedstuffs* article dated November 5, 2001, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 22.B. UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 22.B.

C.    Admitted in part; denied in part.  UEP admits that UEP's Annual Board
      Meeting was held on October 11-12, 2002 in Savannah, Georgia, and that
      at that meeting, a motion passed that required producers who voluntarily
      chose to participate in the UEP animal welfare program to comply with
      UEP's animal welfare guidelines at all of the producer's production
      facilities.  UEP further admits that the minutes from that meeting state that
      the individuals identified in paragraph 22.C were present at that meeting.
      UEP denies the remaining allegations contained in paragraph 22.C.

D.    Admitted in part; denied in part.  UEP admits that UEP's animal welfare
      program had approximately 200 participants in or around 2003, and that
      Cal-Maine Foods, Inc., was a participant in UEP's animal welfare
      program in or around 2003.  UEP lacks knowledge or information
      sufficient to form a belief as to the truth of the allegations regarding the
      layer numbers contained in paragraph 22.D, and the same are therefore
      denied.  By way of further response, UEP avers that the total number of
      layers attributed to participants in the UEP animal welfare program varies
      from month to month.  UEP denies the remaining allegations contained in
      paragraph 22.D.

E.    Denied.  To the extent that the allegations contained in paragraph 22.E.
      purport to characterize the November 23, 2004, issue of *United Voices*,
      UEP denies Plaintiffs' characterization of the document, which is a
      writing that speaks for itself.  UEP denies the remaining allegations
      contained in paragraph 22.E.

-13-

F.      Denied.  UEP lacks knowledge or information sufficient to form a belief
        as to the truth of the allegations contained in paragraph 22.F and the same
        are therefore denied.

G.      Admitted in part; denied in part.  UEP admits that the meeting minutes
        from UEP's October 23, 2003 Annual Membership Meeting state that
        Dolph Baker was elected as UEP's first Vice Chairman.  UEP further
        admits that the meeting minutes from UEP's October 21, 2004 Annual
        Membership Meeting state that Dolph Baker and Ken Looper were elected
        to serve as members of UEP's Board of Directors and that Mr. Baker was
        elected to serve as UEP's Vice Chairman. UEP further admits that UEP
        held an Annual Board Meeting and Executive Conference in New Orleans,
        Louisiana on October 21-22, 2004, and that UEA's Allied Industries
        division held an Annual Membership meeting in New Orleans, Louisiana
        on October 20, 2004.  UEP further admits that Dolph Baker was the
        Chairman of UEP's Shell Egg Marketing Committee at certain times
        during the alleged relevant time period. UEP denies the remaining
        allegations contained in paragraph 22.G.

H.      Admitted in part; denied in part.  UEP admits that UEP held an "Economic
        Summit" meeting on November 16, 2004 in Atlanta, Georgia.  UEP denies
        Plaintiffs' characterization of "UEP's 'intentions program.'"  To the extent
        the allegations contained in paragraph 22.H purport to characterize the
        contents of a document, UEP denies Plaintiffs' characterization of the
        document, which is a writing that speaks for itself.  To the extent that the

allegations contained in paragraph 22.H purport to characterize the

November 23, 2004, issue of *United Voices*, UEP denies Plaintiffs'

characterization of the document, which is a writing that speaks for itself.

UEP denies the remaining allegations contained in paragraph 22.H.

I.      Admitted in part; denied in part.  UEP admits that Ken Looper and Fred

Adams served as members of UEP's Board of Directors at certain times

during the alleged relevant time period.  UEP admits that the UEP Board

of Directors held a meeting on January 25, 2005, in Atlanta, Georgia.  To

the extent that the allegations of paragraph 22.I purport to characterize the

minutes from that meeting, UEP denies Plaintiffs' characterization of the

minutes, which are in a writing that speaks for itself.  UEP denies the

remaining allegations contained in paragraph 22.I.

J.      Admitted in part; denied in part.  UEP admits that UEP's Producer

Committee for Animal Welfare held a meeting on April 19, 2005, in

Chicago, Illinois, and that the minutes from that meeting state that Steve

Storm attended the meeting.  To the extent that the allegations of

paragraph 22.J purport to characterize the minutes from that meeting, UEP

denies Plaintiffs' characterization of the minutes, which are in a writing

that speaks for itself.  UEP denies the remaining allegations contained in

paragraph 22.J.

K.      Denied. The allegations contained in paragraph 22.K purport to

characterize a *United Voices* newsletter dated November 17, 2006, from

which it appears that Plaintiffs have extracted the allegations contained in

paragraph 22.K.  UEP denies Plaintiffs' characterization of the newsletter, which is a writing that speaks for itself.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 22.K, and the same are therefore denied.

L.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22.L, and the same are therefore denied.

M.    Admitted in part; denied in part.  UEP admits that individuals affiliated with Cal-Maine Foods, Inc., served on certain UEP committees at certain times during the alleged relevant time period.  UEP further admits that individuals affiliated with Cal-Maine Foods, Inc., served on the following UEP Committees in 2008:  Executive Committee, Finance Committee, Shell Egg Price Discovery Committee, Shell Egg Marketing Committee, Quality Assurance/Food Safety Committee, Producer Committee for Animal Welfare, and Long Range Planning Committee.  UEP admits that an individual affiliated with Cal-Maine Foods, Inc., served as UEP Chairman at certain times during the alleged relevant time period.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the second sentence of paragraph 22.M, and the same are therefore denied.  UEP denies the remaining allegations contained in paragraph 22.M.

23.     Admitted in part; denied in part.  UEP admits that Daybreak Foods, Inc., is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business in Lake Mills, Wisconsin.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 23, and the same are therefore denied.

24.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24, and the same are therefore denied.

25.     Admitted in part; denied in part.  UEP admits that William Rehm is the President of Daybreak Foods, Inc., and that Daybreak Foods, Inc., was a UEP member at certain times during the alleged relevant time period.  UEP denies the remaining allegations contained in paragraph 25.

26.     Denied.  UEP denies the allegations contained in the first two sentences of paragraph 26.

            A.      Admitted in part; denied in part.  UEP admits that William Rehm attended meetings for UEP's Producer Committee for Animal Welfare at certain times during the alleged relevant time period.   UEP denies the remaining allegations contained in paragraph 26.A.

            B.      Admitted in part; denied in part.  UEP admits that UEP's Annual Board Meeting was held on October 11-12, 2002 in Savannah, Georgia, and that at that meeting, a motion passed that required producers who voluntarily chose to participate in the UEP animal welfare program to comply with UEP's animal welfare guidelines at all of the producer's production facilities.  UEP further admits that the minutes from that meeting state that

-17-

Bill Rehm attended that meeting. UEP denies the remaining allegations contained in paragraph 26.B.

C.     Admitted in part; denied in part. UEP admits that the meeting minutes from UEP's October 23, 2003 Annual Membership Meeting state that William Rehm was elected to serve as a member of UEP's Board of Directors. UEP further admits that the meeting minutes from UEP's October 21, 2004 Annual Membership Meeting state that Mr. Rehm was elected to serve as a member of UEP's Board of Directors. UEP further admits that UEP held an Annual Board Meeting and Executive Conference in New Orleans, Louisiana on October 21-22, 2004, and that UEA's Allied Industries division held an Annual Membership meeting in New Orleans, Louisiana on October 20, 2004. UEP denies the remaining allegations contained in paragraph 26.C.

D.     Admitted in part; denied in part. UEP admits that UEP held an "Economic Summit" meeting on November 16, 2004 in Atlanta, Georgia. UEP denies Plaintiffs' characterization of "UEP's 'intentions program.'" To the extent the allegations contained in paragraph 26.D purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. To the extent that the allegations contained in paragraph 26.D. purport to characterize the November 23, 2004, issue of *United Voices*, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 26.D.

    E.     Admitted in part; denied in part. UEP admits that William Rehm served as a member of UEP's Board of Directors at certain times during the alleged relevant time period, including on or around January 2005. UEP further admits that the UEP Board of Directors held a meeting on January 25, 2005, in Atlanta, Georgia, and that the minutes from that meeting state that Tony Rehm and Patricia Stronger attended that meeting. To the extent that the allegations of paragraph 26.E purport to characterize the minutes from that meeting, UEP denies Plaintiffs' characterization of the minutes, which are in a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 26.E.

    F.     Admitted in part; denied in part. UEP admits that William Rehm served as a member of UEP's Board of Directors at certain times during the alleged relevant time period. UEP denies the remaining allegations contained in paragraph 26.F.

27.    Admitted.

28.    Denied. UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28, and the same are therefore denied.

29.    Denied. UEP denies the allegations contained in the first two sentences of paragraph 29.

    A.     Admitted in part; denied in part. UEP admits that UEP's animal welfare program had approximately 200 participants in or around 2003, and that Hillandale Farms, Inc., marketed and/or sold UEP Certified eggs in or around 2003. UEP lacks knowledge or information sufficient to form a

belief as to the truth of the allegations regarding the layer numbers contained in paragraph 29.A, and the same are therefore denied. By way of further response, UEP avers that the total number of layers attributed to participants in the UEP animal welfare program varies from month to month. UEP denies the remaining allegations contained in paragraph 29.A.

B.      Denied. UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29.B, and the same are therefore denied.

C.      Admitted in part; denied in part. UEP admits that UEP held an "Economic Summit" meeting on November 16, 2004 in Atlanta, Georgia. UEP denies Plaintiffs' characterization of "UEP's 'intentions program.'" To the extent the allegations contained in paragraph 29.C purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. To the extent that the allegations contained in paragraph 29.C purport to characterize the November 23, 2004, issue of *United Voices*, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 29.C.

D.      Admitted in part; denied in part. UEP admits that the UEP Board of Directors held a meeting on January 25, 2005, in Atlanta, Georgia. To the extent that the allegations of paragraph 29.D purport to characterize the minutes from that meeting, UEP denies Plaintiffs' characterization of the

minutes, which are in a writing that speaks for itself. UEP denies the
remaining allegations contained in paragraph 29.D.

E.      Denied. To the extent that allegations contained in paragraph 29.E purport
to characterize a document, UEP denies Plaintiffs' characterization of the
document, which is a writing that speaks for itself. UEP denies the
remaining allegations of paragraph 29.E.

30.     Admitted in part; denied in part. UEP admits that Michael Foods, Inc., is a
corporation organized and existing under the laws of the State of Delaware, with its principal
place of business in Minnetonka, Minnesota. To the extent that the allegations contained in
paragraph 30 purport to characterize an unidentified 2011 SEC filing, from which Plaintiffs
purport to derive some of the allegations of paragraph 30, UEP denies Plaintiffs' characterization
of the SEC filing, which is in a writing that speaks for itself. UEP lacks knowledge or
information sufficient to form a belief as to the truth of the remaining allegations contained in
paragraph 30, and the same are therefore denied.

31.     Admitted in part; denied in part. UEP admits that Michael Foods, Inc., is an egg
producer and producer of certain egg products. UEP lacks knowledge or information sufficient
to form a belief as to the truth of the allegations contained in paragraph 31, and the same are
therefore denied.

32.     Denied. UEP lacks knowledge or information sufficient to form a belief as to the
truth of the allegations contained in paragraph 32, and the same are therefore denied.

33.     Denied. UEP lacks knowledge or information sufficient to form a belief as to the
truth of the allegations contained in paragraph 33, and the same are therefore denied.

34.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34, and the same are therefore denied.

35.     Admitted in part; denied in part.  UEP admits that Sunbest-Papetti Farms participated in the UEP Certified program at certain times during the alleged relevant time period.  UEP denies that Sunbest-Papetti farms was a UEP member.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 35, and the same are therefore denied.

36.     Admitted in part; denied in part.  UEP admits that Sunbest-Papetti Foods participated in the UEP Certified program, certification no. 245, at certain times during the alleged relevant time period.  UEP denies the remaining allegations of paragraph 36.

37.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37, and the same are therefore denied.

38.     Denied.  UEP denies the allegations contained in the first two sentences of paragraph 38.

A.     Admitted in part; denied in part.  UEP admits that Tim Bebee is affiliated with Michael Foods, Inc., and that Mr. Bebee attended meetings for UEP's Producer Committee for Animal Welfare at certain times during the alleged relevant time period.  UEP denies the remaining allegations of paragraph 38.A.

B.     Admitted in part; denied in part.  UEP admits that UEP's Annual Board Meeting was held on October 10-11, 2002 in Savannah, Georgia, and that at that meeting, a motion passed that required producers who voluntarily chose to participate in the UEP animal welfare program to comply with

UEP's animal welfare guidelines at all of the producer's production facilities. UEP further admits that the minutes from that meeting state that Tim Bebee was present at that meeting. UEP denies the remaining allegations contained in paragraph 38.B.

C.     Denied. UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38.C, and the same are therefore denied.

D.     Admitted in part; denied in part. UEP admits that the meeting minutes from the October 23, 2003, and October 21, 2004, UEP Annual Membership Meetings indicate that Terry Baker was appointed to UEP's Board. UEP further admits that UEP held an Annual Board Meeting and Executive Conference in New Orleans, Louisiana on October 21-22, 2004, and that UEA's Allied Industries division held an Annual Membership meeting in New Orleans, Louisiana on October 20, 2004. UEP denies the remaining allegations contained in paragraph 38.D.

E.     Admitted in part; denied in part. UEP admits that UEP held an "Economic Summit" meeting on November 16, 2004 in Atlanta, Georgia. UEP denies Plaintiffs' characterization of "UEP's 'intentions program.'" To the extent the allegations contained in paragraph 38.E purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. To the extent that the allegations contained in paragraph 38.E purport to characterize the November 23, 2004, issue of *United Voices*, UEP denies Plaintiffs'

characterization of the document, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 38.E.

F. Admitted in part; denied in part. UEP admits that Terry Baker served as a member of UEP's Board of Directors at certain times during the alleged relevant time period. UEP further admits that the UEP Board of Directors held a meeting on January 25, 2005, in Atlanta, Georgia, and that the minutes from that meeting state that Tim Bebee and Toby Catherman attended that meeting. To the extent that the allegations of paragraph 38.F purport to characterize the minutes from that meeting, UEP denies Plaintiffs' characterization of the minutes, which are in a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 38.F.

G. Admitted in part; denied in part. UEP admits that a meeting of its Producer Committee For Animal Welfare was held on April 19, 2005, in Chicago, Illinois, and that the minutes from that meeting state that Tim Bebee was in attendance. To the extent that the allegations contained in paragraph 38.G purport to characterize the minutes from that meeting, UEP denies Plaintiffs' characterization of the meeting minutes, which are in a writing that speaks for itself. UEP denies the remaining allegations of paragraph 38.G.

H. Admitted in part; denied in part. UEP admits that Terry Baker served as a member of UEP's Board of Directors at certain times during the alleged

relevant time period. UEP denies the remaining allegations of paragraph 38.H.

    I.    Admitted in part; denied in part. UEP admits that a meeting of its Long Range Planning Committee was held on August 7, 2007, in Salt Lake City, Utah, and that the minutes from that meeting state that Terry Baker was in attendance. UEP denies the remaining allegations of paragraph 38.I.

    J.    Denied. To the extent that the allegations contained in paragraph 38.J purport to characterize an unidentified document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. UEP denies the remaining allegations of paragraph 38.J.

    K.    Admitted in part; denied in part. UEP admits that Michael Foods, Inc., was a member of UEP at certain times during the alleged relevant time period. UEP further admits that individuals affiliated with Michael Foods, Inc., have served on the following UEP Committees: Government Relations Committee, Environmental Committee, Quality Assurance/Food Safety Committee, Producer Committee for Animal Welfare, and Long Range Planning Committee. UEP denies the remaining allegations of paragraph 38.K.

39.    Admitted in part; denied in part. UEP admits that Midwest Poultry Services, L.P., is a limited partnership organized and existing under the laws of the State of Indiana, with its principal place of business in Mentone, Indiana. UEP further admits that Midwest Poultry Services, L.P., produced and sold eggs during the alleged relevant time period. UEP lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 39, and the same are therefore denied.

40.    Denied. UEP denies the allegations contained in the first two sentences of paragraph 40.

    A.    Admitted in part; denied in part. UEP admits that Robert Krouse is affiliated with Midwest Poultry Services, L.P., and Mr. Krouse attended meetings for UEP's Producer Committee for Animal Welfare at certain times during the alleged relevant time period. UEP denies the remaining allegations of paragraph 40.A.

    B.    Denied. UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40.B, and the same are therefore denied.

    C.    Admitted in part; denied in part. UEP admits that UEP's Annual Board Meeting was held on October 10-11, 2002 in Savannah, Georgia, and that at that meeting, a motion passed that required producers who voluntarily chose to participate in the UEP animal welfare program to comply with UEP's animal welfare guidelines at all of the producer's production facilities. UEP further admits that the minutes from that meeting state that Robert Krouse was present at that meeting. UEP denies the remaining allegations contained in paragraph 40.C.

    D.    Admitted in part; denied in part. UEP admits that UEP's animal welfare program had approximately 200 participants in or around 2003, and that Midwest Poultry Services, L.P., was a participant in UEP's animal welfare

program in or around 2003. UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the layer numbers contained in paragraph 40.D, and the same are therefore denied. By way of further response, UEP avers that the total number of layers attributed to participants in the UEP animal welfare program varies from month to month. UEP denies the remaining allegations contained in paragraph 40.D.

E.    Admitted in part; denied in part. UEP admits that the meeting minutes from the October 23, 2003, and October 21, 2004, UEP Annual Membership Meetings indicate that Robert Krouse was elected to UEP's Board and elected as UEP's Treasurer. UEP further admits that UEP held an Annual Board Meeting and Executive Conference in New Orleans, Louisiana on October 21-22, 2004, and that UEA's Allied Industries division held an Annual Membership meeting in New Orleans, Louisiana on October 20, 2004. UEP denies the remaining allegations contained in paragraph 40.E.

F.    Admitted in part; denied in part. UEP admits that UEP held an "Economic Summit" meeting on November 16, 2004 in Atlanta, Georgia. UEP denies Plaintiffs' characterization of "UEP's 'intentions program.'" To the extent the allegations contained in paragraph 40.F purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. To the extent that the allegations contained in paragraph 40.F purport to characterize the

November 23, 2004, issue of *United Voices*, UEP denies Plaintiffs'
characterization of the document, which is a writing that speaks for itself.
UEP denies the remaining allegations contained in paragraph 40.F.

G. Admitted in part; denied in part. UEP admits that Robert Krouse was on
UEP's Board of Directors in 2005, and that UEP held a Board of Directors
meeting on January 25, 2005, in Atlanta, Georgia. To the extent that the
allegations of paragraph 40.G purport to characterize the minutes of that
meeting, UEP denies Plaintiffs' characterization of the meeting minutes,
which are in a writing that speaks for itself. UEP denies the remaining
allegations of paragraph 40.G.

H. Admitted in part; denied in part. UEP admits that UEP's Producer
Committee for Animal Welfare held a meeting on April 19, 2005, in
Chicago, Illinois, and that the minutes from that meeting state that Robert
Krouse attended the meeting. To the extent that the allegations of
paragraph 40.H purport to characterize the minutes of that meeting, UEP
denies Plaintiffs' characterization of the meeting minutes, which are in a
writing that speaks for itself. UEP denies the remaining allegations
contained in paragraph 40.H.

I. Admitted in part; denied in part. The allegations contained in paragraph
40.I. purport to characterize a *United Voices* newsletter dated November
17, 2006, from which it appears that Plaintiffs have extracted the
allegations contained in paragraph 40.I. UEP denies Plaintiffs'
characterization of the newsletter, which is a writing that speaks for itself.

UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 40.I, and the same are therefore denied.

J.     Denied.  To the extent that the allegations contained in paragraph 40.J purport to characterize an unidentified document, from which it appears that Plaintiffs have derived the allegations of paragraph 40.J, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 40.J.

K.     Admitted in part; denied in part.  UEP admits that individuals affiliated with Midwest Poultry Services, L.P., served on certain UEP Committees at certain times during the alleged relevant time period and served on the following UEP Committees in 2008: Executive Committee, Finance Committee, Shell Egg Price Discovery Committee, Environmental Committee, and Producer Committee for Animal Welfare.  UEP denies the remaining allegations contained in paragraph 40.K.

41.     Admitted in part; denied in part.  UEP admits that National Food Corporation is a corporation organized and existing under the laws of the State of Washington, with its principal place of business in Everett, Washington.  UEP further admits that National Food Corporation produced and sold shell eggs and egg products during the alleged relevant time period.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 41, and the same are therefore denied.

42. Admitted in part; denied in part. UEP admits that National Food Corporation was a UEP member at certain times during the alleged relevant time period. UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 42, and the same are therefore denied

43. Denied. UEP denies the allegations contained in the first two sentences of paragraph 43.

    A. Admitted in part; denied in part. UEP admits that UEP's Annual Board Meeting was held on October 10-11, 2002 in Savannah, Georgia, and that at that meeting, a motion passed that required producers who voluntarily chose to participate in the UEP animal welfare program to comply with UEP's animal welfare guidelines at all of the producer's production facilities. UEP further admits that the minutes from that meeting state that Roger Deffner was present at that meeting. UEP denies the remaining allegations contained in paragraph 43.A.

    B. Denied. UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 43.B., and the same are therefore denied.

    C. Admitted in part; denied in part. UEP admits that UEP's animal welfare program had approximately 200 participants in or around 2003 and that National Food Corporation was a participant in UEP's animal welfare program in or around 2003. UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the layer numbers contained in paragraph 43.C, and the same are therefore

denied.  By way of further response, UEP avers that the total number of
layers attributed to participants in the UEP animal welfare program varies
from month to month.  UEP denies the remaining allegations contained in
paragraph 43.C.

D.      Admitted in part; denied in part.  UEP admits that the meeting minutes
from the October 23, 2003, and October 21, 2004, UEP Annual
Membership Meetings indicate that Roger Deffner was elected to UEP's
Board and elected as UEP's Chairman.  UEP further admits that UEP held
an Annual Board Meeting and Executive Conference in New Orleans,
Louisiana on October 21-22, 2004, and that UEA's Allied Industries
division held an Annual Membership meeting in New Orleans, Louisiana
on October 20, 2004.  UEP further admits that UEP held an "Economic
Summit" meeting on November 16, 2004.  UEP denies the remaining
allegations contained in paragraph 43.D.

E.      Admitted in part; denied in part.  UEP admits that UEP held an "Economic
Summit" meeting on November 16, 2004 in Atlanta, Georgia.  UEP denies
Plaintiffs' characterization of "UEP's 'intentions program.'"  To the extent
the allegations contained in paragraph 43.E purport to characterize the
contents of a document, UEP denies Plaintiffs' characterization of the
document, which is a writing that speaks for itself.  To the extent that the
allegations contained in paragraph 43.E purport to characterize the
November 23, 2004, issue of *United Voices*, UEP denies Plaintiffs'

characterization of the document, which is in writing and speaks for itself. UEP denies the remaining allegations contained in paragraph 43.E.

F.    Admitted in part; denied in part. UEP admits that Roger Deffner served as a member of UEP's Board of Directors at certain times during the alleged relevant time period. UEP further admits that the UEP Board of Directors held a meeting on January 25, 2005, in Atlanta, Georgia. To the extent that the allegations of paragraph 43.F purport to characterize the minutes from that meeting, UEP denies Plaintiffs' characterization of the minutes, which are in a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 43.F.

G.    Denied. The allegations contained in paragraph 43.G. purport to characterize a *United Voices* newsletter dated November 17, 2006, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 43.G. UEP denies Plaintiffs' characterization of the newsletter, which is a writing that speaks for itself. UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 43.G, and the same are therefore denied.

H.    Denied. To the extent that the allegations contained in paragraph 43.H purport to characterize an unidentified document, from which it appears that Plaintiffs have derived the allegations of paragraph 43.H, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks

for itself. UEP denies the remaining allegations contained in paragraph 43.H.

I.   Admitted in part; denied in part. UEP admits that individuals affiliated with National Food Corporation attended UEP meetings at certain times during the alleged relevant time period. UEP further admits that Roger Deffner served, at certain times during the alleged relevant time period, as a Board member and Chairman of the Board of UEP; as chair of UEP's Shell Egg Marketing Committee in 2008; and on the following UEP Committees in 2008: Shell Egg Price Discovery Committee, Shell Egg Marketing Committee, Public Relations Committee, and Long Range Planning Committee. UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 43.I insofar as they relate to USEM, and the same are therefore denied. UEP denies the remaining allegations of paragraph 43.I.

J.   Admitted in part; denied in part. UEP admits that individuals affiliated with National Food Corporation served on the following UEP Committees in 2008: Shell Egg Price Discovery Committee, Shell Egg Marketing Committee, Public Relations Committee, and Long Range Planning Committee. UEP denies the remaining allegations contained in paragraph 43.J.

44.   Admitted in part; denied in part. UEP admits that NuCal Foods, Inc., is a Capper-Volstead agricultural cooperative organized and existing under the State of California with its principal place of business in Ripon, California, and that NuCal Foods, Inc., markets and sells

eggs produced by Gemperle Enterprises, Inc., of Turlock, CA; Sunrise Farms, LLC, of Petaluma, CA; J.S. West Milling Co., Inc., of Modesto, CA; and Valley Fresh Foods, Inc., of Turlock, CA. UEP further admits that NuCal Foods, Inc., was a member of UEP at certain times during the alleged class period. UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 44, and the same are therefore denied.

45.    Denied. UEP denies the allegations contained in the first two sentences of paragraph 45.

A.    Admitted in part; denied in part. UEP admits that UEP's Annual Board Meeting was held on October 10-11, 2002 in Savannah, Georgia, and that at that meeting, a motion passed that required producers who voluntarily chose to participate in the UEP animal welfare program to comply with UEP's animal welfare guidelines at all of the producer's production facilities. UEP further admits that the minutes from that meeting state that Chuck Elste, Ernie Gemperle, Mark Oldenkamp, and Gary West were present at that meeting. UEP denies the remaining allegations contained in paragraph 45.A.

B.    Admitted in part; denied in part. UEP admits that NuCal Foods, Inc., participated in the UEP Certified program at certain times during the alleged relevant time period. UEP further admits that UEP's animal welfare program had approximately 200 participants in or around 2003. UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the layer numbers contained in paragraph 45.B, and the same are therefore denied. By way of further response, UEP

avers that the total number of layers attributed to participants in the UEP animal welfare program varies from month to month. UEP denies the remaining allegations contained in paragraph 45.B.

C.      Denied. UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 45.C, and the same are therefore denied.

D.      Admitted in part; denied in part. UEP admits that the meeting minutes from the October 23, 2003, and October 21, 2004, UEP Annual Membership Meetings indicate that Steven Gemperle and Mark Oldenkamp were elected/appointed to UEP's Board of Directors. UEP further admits that UEP held an Annual Board Meeting and Executive Conference in New Orleans, Louisiana on October 21-22, 2004, and that UEA's Allied Industries division held an Annual Membership meeting in New Orleans, Louisiana on October 20, 2004. UEP denies the remaining allegations contained in paragraph 45.D.

E.      Admitted in part; denied in part. UEP admits that UEP held an "Economic Summit" meeting on November 16, 2004 in Atlanta, Georgia. UEP denies Plaintiffs' characterization of "UEP's 'intentions program.'" To the extent the allegations contained in paragraph 45.E purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. To the extent that the allegations contained in paragraph 45.E purport to characterize the November 23, 2004, issue of *United Voices*, UEP denies Plaintiffs'

characterization of the document, which is a writing that speaks for itself.
UEP denies the remaining allegations contained in paragraph 45.E.

F.    Admitted in part; denied in part.  UEP admits that Steve Gemperle and
Mark Oldenkamp were on UEP's Board of Directors in 2005.  UEP
further admits that UEP held a Board of Directors meeting on January 25,
2005, in Atlanta, Georgia, and that the meeting minutes from that meeting
indicate that Chuck Elste, Tom Silva, Jill Benson, and Wayne Winslow
were present at the meeting.  To the extent that the allegations of
paragraph 45.F purport to characterize the minutes from that meeting,
UEP denies Plaintiffs' characterization of the minutes, which are in a
writing that speaks for itself.  UEP denies the remaining allegations of
paragraph 45.F.

G.    Admitted in part; denied in part.  UEP admits that UEP's Producer
Committee for Animal Welfare held a meeting on April 19, 2005, in
Chicago, Illinois, and that the minutes from that meeting state that Mark
Oldenkamp attended the meeting.  To the extent that the allegations of
paragraph 45.G purport to characterize the minutes of that meeting, UEP
denies Plaintiffs' characterization of the meeting minutes, which are in a
writing that speaks for itself.  UEP denies the remaining allegations
contained in paragraph 45.G.

H.    Denied. The allegations contained in paragraph 45.H purport to
characterize a *United Voices* newsletter dated November 17, 2006, from
which it appears that Plaintiffs have extracted the allegations contained in

-36-

paragraph 45.H.  UEP denies Plaintiffs' characterization of the newsletter, which is a writing that speaks for itself.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 45.H. and the same are therefore denied.

I.      Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 45.I, and the same are therefore denied.

J.      Denied.  To the extent that the allegations contained in paragraph 45.J purport to characterize an unidentified document, from which it appears that Plaintiffs have derived the allegations of paragraph 45.J, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 45.J.

K.      Admitted in part; denied in part.  UEP admits that individuals affiliated with NuCal Foods, Inc., served on the following UEP Committees in 2008: Shell Egg Price Discovery Committee, Shell Egg Marketing Committee, and Quality Assurance Food Safety Committee.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 45.K. insofar as they relate to USEM, and the same are therefore denied.  UEP denies the remaining allegations of paragraph 45.K.

46. Admitted in part; denied in part. UEP admits that Ohio Fresh Eggs, LLC, is a limited liability company with its principal place of business in Croton, Ohio. UEP further admits that Ohio Fresh Eggs, LLC, is an egg producer. UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 46, and the same are therefore denied.

47. Denied. UEP denies the allegations contained in the first two sentences of paragraph 47.

    A. Admitted in part; denied in part. UEP admits that UEP held an "Economic Summit" meeting on November 16, 2004 in Atlanta, Georgia. UEP denies Plaintiffs' characterization of "UEP's 'intentions program.'" To the extent the allegations contained in paragraph 47.A purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. To the extent that the allegations contained in paragraph 47.A purport to characterize the November 23, 2004, issue of *United Voices*, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 47.A.

    B. Admitted in part; denied in part. UEP admits that UEP held a Board of Directors meeting on January 25, 2005, in Atlanta, Georgia. To the extent that the allegations of paragraph 47.B. purport to characterize the minutes from that meeting, UEP denies Plaintiffs' characterization of the minutes, which are in a writing that speaks for itself. UEP denies the remaining allegations of paragraph 47.B.

C.      Denied. To the extent that the allegations contained in paragraph 47.C

           purport to characterize a document, UEP denies Plaintiffs'

           characterization of the document, which is a writing that speaks for itself.

           UEP denies the remaining allegations of paragraph 47.C.

48.      Admitted in part; denied in part. UEP admits that Rose Acre Farms, Inc., is a corporation organized and existing under the laws of the State of Indiana, with its principal place of business in Seymour, Indiana. UEP further admits that Rose Acre Farms, Inc., produced and sold shell eggs and egg products during the alleged relevant time period. UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 48, and the same are therefore denied.

49.      Denied. UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 49, and the same are therefore denied.

50.      Admitted in part; denied in part. UEP admits that Rose Acre Farms, Inc., participates in more than one step in the process of bringing an egg to market. To the extent the allegations contained in paragraph 50 are conclusions of law, no response is required, and they are thus deemed denied. UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 50, and the same are therefore denied.

51.      Admitted in part; denied in part. UEP admits that Rose Acre Farms, Inc., was a UEP member at certain times during the alleged relevant time period. UEP denies the remaining allegations contained in paragraph 51.

52.      Denied. UEP denies the allegations contained in the first two sentences of paragraph 52.

A.      Admitted in part; denied in part.  UEP admits that UEP's animal welfare

program had approximately 200 participants in or around 2003, and that

Rose Acre Farms, Inc., was a participant in UEP's animal welfare program

in or around 2003.  UEP lacks knowledge or information sufficient to

form a belief as to the truth of the allegations regarding the layer numbers

contained in paragraph 52.A, and the same are therefore denied.  By way

of further response, UEP avers that the total number of layers attributed to

participants in the UEP animal welfare program varies from month to

month.  UEP denies the remaining allegations contained in paragraph

52.A.

B.      Admitted in part; denied in part.  UEP admits that Marcus Rust is

affiliated with Rose Acre Farms, Inc., and that the meeting minutes from

the October 23, 2003, and October 21, 2004, UEP Annual Membership

Meetings indicate that Mr. Rust was elected to UEP's Board of Directors.

UEP further admits that UEP held an Annual Board Meeting and

Executive Conference in New Orleans, Louisiana on October 21-22, 2004,

and that UEA's Allied Industries division held an Annual Membership

meeting in New Orleans, Louisiana on October 20, 2004.  UEP denies the

remaining allegations contained in paragraph 52.B.

C.      Denied.  UEP is without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 52.C, and

the same are therefore denied.

D.   Admitted in part; denied in part.  UEP admits that UEP held an "Economic
     Summit" meeting on November 16, 2004 in Atlanta, Georgia.  UEP denies
     Plaintiffs' characterization of "UEP's 'intentions program.'"  To the extent
     the allegations contained in paragraph 52.D purport to characterize the
     contents of a document, UEP denies Plaintiffs' characterization of the
     document, which is a writing that speaks for itself.  To the extent that the
     allegations contained in paragraph 52.D purport to characterize the
     November 23, 2004, issue of *United Voices*, UEP denies Plaintiffs'
     characterization of the document, which is in writing and speaks for itself.
     UEP denies the remaining allegations contained in paragraph 52.D.

E.   Admitted in part; denied in part.  UEP admits that Marcus Rust was on
     UEP's Board of Directors at certain times during the alleged relevant time
     period.  UEP further admits that UEP held a Board of Directors meeting
     on January 25, 2005, in Atlanta, Georgia, and that the meeting minutes
     from that meeting indicate that Greg Hinton and K.Y. Hendrix attended
     that meeting.  To the extent that the allegations of paragraph 52.E purport
     to characterize the minutes from that meeting, UEP denies Plaintiffs'
     characterization of the minutes, which are in a writing that speaks for
     itself.  UEP denies the remaining allegations of paragraph 52.E.

F.   Admitted in part; denied in part.  UEP admits that UEP's Producer
     Committee for Animal Welfare held a meeting on April 19, 2005, in
     Chicago, Illinois, and that the minutes from that meeting state that K.Y.
     Hendrix attended the meeting.  To the extent that the allegations of

paragraph 52.F purport to characterize the minutes of that meeting, UEP

denies Plaintiffs' characterization of the meeting minutes, which are in a

writing that speaks for itself. UEP denies the remaining allegations

contained in paragraph 52.F.

G.    Admitted in part; denied in part. UEP admits that UEP published a

*United Voices* newsletter dated November 17, 2006, from which it appears

that Plaintiffs have extracted the allegations contained in paragraph 52.G.

UEP denies Plaintiffs' characterization of the *United Voices* newsletter,

which is a writing that speaks for itself. UEP lacks knowledge or

information sufficient to form a belief as to the truth of the remaining

allegations contained in paragraph 52.G, and the same are therefore

denied.

H.    Denied. Denied. UEP is without knowledge or information sufficient to

form a belief as to the truth of the allegations contained in paragraph 52.H,

and the same are therefore denied.

I.    Denied. To the extent that the allegations contained in paragraph 52.I

purport to characterize an unidentified document, from which it appears

that Plaintiffs have derived the allegations of paragraph 52.I, UEP denies

Plaintiffs' characterization of the document, which is in writing and

speaks for itself. UEP denies the remaining allegations contained in

paragraph 52.I.

J.    Admitted in part; denied in part. UEP admits that individuals affiliated

with Rose Acre Farms, Inc., were on UEP's Board of Directors at certain

times during the alleged relevant time period. UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 52.J, and the same are therefore denied. UEP denies the remaining allegations contained in paragraph 52.J.

K. Admitted in part; denied in part. UEP admits that individuals affiliated with Rose Acre Farms, Inc., served on the following UEP Committees in 2008: Government Relations Committee, Shell Egg Price Discovery Committee, Shell Egg Marketing Committee, Environmental Committee, Producer Committee for Animal Welfare, Public Relations Committee, Long Range Planning Committee, and Environmental Scientific Panel. UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 52.K insofar as they relate to USEM, and the same are therefore denied. UEP denies the remaining allegations of paragraph 52.K.

53. Admitted in part; denied in part. UEP admits that R.W. Sauder, Inc., is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business in Lititz, Pennsylvania. UEP further admits that R.W. Sauder, Inc., produced and sold shell eggs and egg products during the alleged relevant time period. UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 53, and the same are therefore denied.

54. Denied. UEP denies the allegations contained in the first two sentences of paragraph 54.

A.   Admitted in part; denied in part.  UEP admits that UEP's Annual Board

Meeting was held on October 10-11, 2002 in Savannah, Georgia, and that

at that meeting, a motion passed that required producers who voluntarily

chose to participate in the UEP animal welfare program to comply with

UEP's animal welfare guidelines at all of the producer's production

facilities.  UEP further admits that Paul Sauder is affiliated with R.W.

Sauder, Inc., and that the minutes from that meeting state that Mr. Sauder

was present at that meeting.  UEP denies the remaining allegations

contained in paragraph 54.A.

B.   Admitted in part; denied in part.  UEP admits that UEP's animal welfare

program had approximately 200 participants in or around 2003, and that

R.W. Sauder, Inc., was a participant in UEP's animal welfare program in

or around 2003.  UEP lacks knowledge or information sufficient to form a

belief as to the truth of the allegations regarding the layer numbers

contained in paragraph 54.B, and the same are therefore denied.  By way

of further response, UEP avers that the total number of layers attributed to

participants in the UEP animal welfare program varies from month to

month.  UEP denies the remaining allegations contained in paragraph

54.B.

C.   Admitted in part; denied in part.  UEP admits that UEP's Producer

Committee for Animal Welfare held a meeting on April 19, 2005, in

Chicago, Illinois, and that the minutes from that meeting state that Paul

Sauder attended the meeting.  To the extent that the allegations of

-44-

paragraph 54.C purport to characterize the minutes of that meeting, UEP

denies Plaintiffs' characterization of the meeting minutes, which are in a

writing that speaks for itself. UEP denies the remaining allegations

contained in paragraph 54.C.

D.   Admitted in part; denied in part. UEP admits that UEP published a

*United Voices* newsletter dated November 17, 2006, from which it appears

that Plaintiffs have extracted the allegations contained in paragraph 54.D.

UEP denies Plaintiffs' characterization of the *United Voices* newsletter,

which is a writing that speaks for itself. UEP lacks knowledge or

information sufficient to form a belief as to the truth of the remaining

allegations contained in paragraph 54.D, and the same are therefore

denied.

E.   Admitted in part; denied in part. UEP admits that individual affiliated

with R.W. Sauder, Inc., have, at various times during the alleged relevant

time period, served on the following UEP Committees: Shell Egg Price

Discovery Committee, Producer Committee for Animal Welfare, and

Public Relations Committee. UEP denies the remaining allegations of

paragraph 54.E.

F.   Denied. To the extent that the allegations contained in paragraph 54.F

purport to characterize an unidentified document, from which it appears

that Plaintiffs have derived the allegations of paragraph 54.F, UEP denies

Plaintiffs' characterization of the document, which is a writing that speaks

for itself.  UEP denies the remaining allegations contained in paragraph
54.F.

55.     Admitted in part; denied in part.  UEP admits that Sparboe Farms, Inc. is a
corporation organized and existing under the laws of the State of Minnesota, with its principal
place of business in Litchfield, Minnesota.  UEP lacks knowledge or information sufficient to
form a belief as to the truth of the remaining allegations contained in paragraph 55, and the same
are therefore denied.

56.     Admitted in part; denied in part.  UEP admits that Sparboe Farms, Inc., was a
member of UEP at certain times during the alleged relevant time period.  UEP denies the
remaining allegations contained in paragraph 56.

57.     Denied.  UEP denies the allegations contained in the first two sentences of
paragraph 57.

A.      Admitted in part; denied in part.  UEP admits that Garth Sparboe is
affiliated with Sparboe Farms, Inc., and that the meeting minutes from
certain meetings of UEP's Producer Committee for Animal Welfare
indicate that Mr. Sparboe was in attendance.  UEP denies the remaining
allegations of paragraph 57.A.

B.      Denied.  UEP is without knowledge or information sufficient to form a
belief as to the truth of the allegations contained in paragraph 57.B, and
the same are therefore denied.

C.      Admitted in part; denied in part.  UEP admits that individuals affiliated
with R.W. Sauder, Inc., have served on certain UEP Committees at certain

times during the alleged relevant time period. UEP denies the remaining allegations of paragraph 57.C.

58.     Admitted in part; denied in part. UEP admits that UEP is a Capper-Volstead Agricultural Cooperative corporation organized and existing under the laws of the State of Georgia. UEP further admits that UEP was formed in 1968 as a Capper-Volstead Agricultural Cooperative. To the extent the allegations contained in paragraph 58 purport to characterize information posted on UEP's website, from which it appears that Plaintiffs have extracted certain allegations contained in paragraph 58, UEP denies Plaintiffs' characterization of the website, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 58.

59.     Admitted in part; denied in part. UEP admits that Gene Gregory is the former President and CEO of UEP. UEP further admits that Al Pope was the President of UEP before his retirement in 2007. UEP avers that its membership fluctuated during the alleged relevant time period. UEP denies the remaining allegations contained in paragraph 59.

60.     Admitted in part; denied in part. UEP admits that it administers the UEP animal welfare program and that Plaintiffs purport to characterize the Animal Husbandry Guidelines for U.S. Egg Laying Flocks in their Second Amended Complaint. UEP denies Plaintiffs' characterization of the Guidelines, which are in a writing that speaks for itself. UEP denies the remaining allegations of paragraph 60.

61.     Admitted in part; denied in part. UEP admits that USEM is a Capper-Volstead Agricultural Cooperative organized and existing under the laws of the state of Georgia. UEP further admits that UEP and USEM have the same mailing address in Alpharetta, Georgia, and that USEM is managed by UEP pursuant to a management agreement. UEP further admits that

Gene Gregory is the former President and CEO of UEP and has used the title President of

USEM. While there is some information about USEM on UEP's website, UEP denies that it

shares a website with USEM. UEP denies the remaining allegations of paragraph 61.

62. Denied. To the extent the allegations contained in paragraph 62 purport to

characterize information posted on a website, from which it appears that Plaintiffs have extracted

certain allegations contained in paragraph 62, UEP denies Plaintiffs' characterization of the

website, which is a writing that speaks for itself. UEP lacks knowledge or information sufficient

to form a belief as to the truth of the remaining allegations contained in paragraph 62, and the

same are therefore denied.

63. Admitted in part; denied in part. UEP admits that USEM negotiates shell egg

export sales. UEP lacks knowledge or information sufficient to form a belief as to the truth of

the remaining allegations contained in paragraph 63, and the same are therefore denied.

64. Admitted in part; denied in part. UEP admits that UEA is a non-profit

corporation organized and existing under the laws of the District of Columbia and that UEA is

managed by UEP pursuant to a management agreement. UEP further admits that UEP and UEA

have the same mailing address in Alpharetta, Georgia. UEP further admits that Gene Gregory is

the former President and CEO of UEP and has used the title President of UEA. UEP further

admits that Chad Gregory is Gene Gregory's son, that Chad Gregory was the Senior Vice

President of UEP, and that Chad Gregory has used the title Vice President of UEA. While there

is some information about USEM on UEP's website, UEP denies that it shares a website with

USEM. UEP denies the remaining allegations of paragraph 64.

65. Admitted in part; denied in part. UEP admits that UEA is comprised of three

divisions: UEA Further Processor Division, UEA Allied Industry Division, and UEA

Producer/Packer Division.  To the extent that the allegations contained in paragraph 65 purport to characterize a website, from which it appears Plaintiffs have derived the allegations contained in paragraph 65, UEP denies Plaintiffs' characterization of the website, which is a writing that speaks for itself.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 65, and the same are therefore denied.

66.     Admitted in part; denied in part.  UEP admits that Moark, LLC, is a limited liability company organized and existing under the laws of the State of Missouri.  UEP denies the remaining allegations of paragraph 66.

67.     Admitted in part; denied in part.  UEP admits that Norco Ranch, Inc., is a corporation organized and existing under the laws of the State of California.  UEP further admits that Norco Ranch, Inc., is a subsidiary of Moark, LLC.  UEP denies the remaining allegations of paragraph 67.

68.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 68, and the same are therefore denied.

69.     Denied.  UEP denies the allegations contained in the first sentence of paragraph 69.

   A.     Admitted in part; denied in part.  UEP admits that UEP's Annual Board Meeting was held on October 10-11, 2002 in Savannah, Georgia, and that at that meeting, a motion passed that required producers who voluntarily chose to participate in the UEP animal welfare program to comply with UEP's animal welfare guidelines at all of the producer's production facilities.  UEP further admits that the minutes from that meeting state that

Joe Fortin and Paul Osborne were present at that meeting. UEP denies the remaining allegations contained in paragraph 69.A.

B.      Admitted in part; denied in part. UEP admits that UEP's animal welfare program had approximately 200 participants in or around 2003, and that certain Moark LLC subsidiaries participated in UEP's animal welfare program in or around 2003. UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the layer numbers contained in paragraph 69.B, and the same are therefore denied. By way of further response, UEP avers that the total number of layers attributed to participants in the UEP animal welfare program varies from month to month. UEP denies the remaining allegations contained in paragraph 69.B.

C.      Denied. UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 69.C, and the same are therefore denied.

D.      Denied. To the extent that the allegations contained in paragraph 69.D purport to characterize the November 23, 2004, issue of *United Voices*, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 69.D.

E.      Admitted in part; denied in part. UEP admits that the meeting minutes from the October 23, 2003, and October 21, 2004, UEP Annual Membership Meetings indicate that Joe Fortin was elected to UEP's Board

of Directors and as UEP's Secretary.  UEP further admits that UEP held

an Annual Board Meeting and Executive Conference in New Orleans,

Louisiana on October 21-22, 2004, and that UEA's Allied Industries

division held an Annual Membership meeting in New Orleans, Louisiana

on October 20, 2004.  UEP denies the remaining allegations contained in

paragraph 69.E.

F.      Denied.  UEP lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in paragraph 69.F, and the same

are therefore denied.

G.      Admitted in part; denied in part.  UEP admits that UEP held an "Economic

Summit" meeting on November 16, 2004 in Atlanta, Georgia.  UEP denies

Plaintiffs' characterization of "UEP's 'intentions program.'"  To the extent

the allegations contained in paragraph 69.G purport to characterize the

contents of a document, UEP denies Plaintiffs' characterization of the

document, which is a writing that speaks for itself.  To the extent that the

allegations contained in paragraph 69.G purport to characterize the

November 23, 2004, issue of *United Voices*, UEP denies Plaintiffs'

characterization of the document, which is a writing that speaks for itself.

UEP denies the remaining allegations contained in paragraph 69.G.

H.      Admitted in part; denied in part.  UEP admits that UEP held a Board of

Directors meeting on January 25, 2005, in Atlanta, Georgia, and that the

minutes from that meeting indicate that Joe Fortin, Dave Cisneros, Jerry

Kil, Dan Knutson, Dan Meagher, and Paul Osborne attended that meeting.

To the extent that the allegations of paragraph 69.H purport to characterize the minutes from that meeting, UEP denies Plaintiffs' characterization of the minutes, which are in a writing that speaks for itself. UEP denies the remaining allegations of paragraph 69.H.

I. Admitted in part; denied in part. UEP admits that UEP's Producer Committee for Animal Welfare held a meeting on April 19, 2005, in Chicago, Illinois, and that the minutes from that meeting state that Joe Fortin attended the meeting. To the extent that the allegations of paragraph 69.I purport to characterize the minutes of that meeting, UEP denies Plaintiffs' characterization of the meeting minutes, which are in a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 69.I.

J. Admitted in part; denied in part. UEP admits that UEP published a *United Voices* newsletter dated November 17, 2006, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 69.J. UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself. UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 69.J, and the same are therefore denied.

K. Denied. UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 69.K, and the same are therefore denied.

L.     Denied.  To the extent that the allegations contained in paragraph 69.L purport to characterize an unidentified document, from which it appears that Plaintiffs have derived the allegations of paragraph 69.L, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 69.L.

M.    Admitted in part; denied in part.  UEP admits that Moark, LLC, was a UEP member at certain times during the alleged relevant time period.  UEP further admits that individuals affiliated with Moark, LLC and its subsidiaries, attended UEP meetings at certain times during the alleged relevant time period, and served on the following UEP Committees in 2008: Executive Committee, Finance Committee, Government Relations Committee, Shell Egg Price Discovery Committee, Shell Egg Marketing Committee, Quality Assurance/Food Safety Committee, Producer Committee for Animal Welfare, Public Relations Committee, and Long Range Planning Committee.  UEP lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in the first and second sentences of paragraph 69.M, and the same are therefore denied.  UEP denies the remaining allegations contained in paragraph 69.M.

N.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 69.N, and the same are therefore denied.

70.     Denied.  UEP denies the allegations contained in the first sentence of paragraph 70.

    A.     Admitted in part; denied in part.  UEP admits that UEP's animal welfare program had approximately 200 participants in or around 2003, and that Norco Ranch, Inc., was a participant in UEP's animal welfare program in or around 2003.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the layer numbers contained in paragraph 70.A, and the same are therefore denied.  By way of further response, UEP avers that the total number of layers attributed to participants in the UEP animal welfare program varies from month to month.  UEP denies the remaining allegations contained in paragraph 70.A.

    B.     Denied.  To the extent that the allegations contained in paragraph 70.B purport to characterize the November 23, 2004, issue of *United Voices*, UEP denies Plaintiffs' characterization of the document, which is in writing and speaks for itself.  UEP denies the remaining allegations contained in paragraph 70.B.

    C.     Admitted in part; denied in part.   UEP admits that UEP published a *United Voices* newsletter dated November 17, 2006, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 70.C.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations contained in paragraph 70.C, and the same are therefore denied.

D.    Denied.  To the extent that the allegations contained in paragraph 70.D purport to characterize an unidentified document, from which it appears that Plaintiffs have derived the allegations of paragraph 70.D, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 70.D.

E.    Admitted in part; denied in part.  UEP admits that Norco Ranch, Inc., was a UEP member at certain times during the alleged relevant time period. UEP further admits that individuals affiliated with Norco Ranch, Inc. and Moark LLC, attended UEP meetings at certain times during the alleged relevant time period, and served on UEP's Government Relations Committee in 2008.  UEP denies the remaining allegations contained in paragraph 70.E.

F.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 70.F, and the same are therefore denied.

71.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 71, and the same are therefore denied.

72.    Admitted in part; denied in part.  UEP admits that Hillandale-Gettysburg, L.P., is a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Gettysburg, Pennsylvania.  UEP lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 72, and the same are therefore denied.

73.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 73, and the same are therefore denied.

74.     Admitted in part; denied in part.  UEP admits that Plaintiffs' purport to define "Hillandale Farms" as set forth in paragraph 74.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 74, and the same are therefore denied.

75.     Admitted in part; denied in part.  UEP admits that Hillandale-Gettysburg, L.P., was a UEP member at certain times during the alleged relevant time period.  UEP further admits that Rob Ballew and James Minkin are affiliated with Hillandale-Gettysburg, L.P., and that, in 2008, Mr. Minkin served on UEP's Shell Egg Marketing Committee and Mr. Ballew served on UEP's Environmental Committee.  UEP denies that the entities Hillandale Farms of Pa., Inc., Hillandale Farms East, Inc., and Hillandale Farms, Inc., participated in UEP.  UEP denies the remaining allegations contained in paragraph 75.

76.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 76, and the same are therefore denied.

77.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 77, and the same are therefore denied.

78.     Denied.  To the extent that the allegations contained in paragraph 78 constitute conclusions of law, no response is required, and they are thus deemed denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in

paragraph 78, including those contained in subparts 78.A-78.C and the same are therefore denied.

79.     Denied.  The averments of paragraph 79 constitute conclusions of law to which no responsive pleading is required.  To the extent a response is required, UEP denies these averments.  UEP denies the remaining allegations of paragraph 79.

80.     Admitted in part; denied in part.  UEP admits that chicks may be placed in a pullet house.  UEP further admits that egg producers may regulate egg laying hens' exposure to light.  UEP denies the remaining allegations contained in paragraph 80.

81.     Admitted in part; denied in part.  UEP admits that laying hens may lay eggs when they reach 18-22 weeks of age, that peak egg production may occur when a laying hen is between 30-32 weeks of age, and that egg production may decrease as hens reach 60-70 weeks of age.  UEP denies the remaining allegations contained in paragraph 81.

82.     Admitted in part; denied in part.  UEP admits that in commercial egg production, molting may provide a way to extend the life of a hen and to rejuvenate the reproductive cycle of the hen, and that egg producers may choose to molt egg laying hens.  UEP further admits that egg production temporarily ceases during molting.  UEP denies the remaining allegations contained in paragraph 82.

83.     Admitted in part; denied in part.  UEP admits that molting is a natural process of chickens and other feathered species, in which birds shed and renew old, worn plumage and temporarily cease egg production.  UEP further admits that in commercial egg production, induced molting may be accomplished by manipulating light exposure.  UEP denies the remaining allegations contained in paragraph 83.

84.     Admitted in part; denied in part.  UEP admits that egg production will begin again following a molt.  UEP denies the remaining allegations contained in paragraph 84.

85.     Admitted in part; denied in part.  UEP admits that egg laying hens may reach the end of their egg laying production cycle when they are 100-130 weeks of age, and that egg producers may elect to molt or dispose of egg-laying hens.  UEP denies the remaining allegations contained in paragraph 85.

86.     Denied.  To the extent the allegations contained in paragraph 86 purport to characterize the contents of a document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 86, and the same are therefore denied.

87.     Admitted in part; denied in part.  UEP admits that shell eggs may include table eggs that are sold for consumption and breaking eggs that are used in egg products.  UEP denies the remaining allegations of paragraph 87.

88.     Admitted in part; denied in part.  UEP admits that shell eggs may be processed into egg products, that automated systems may be utilized in the production of egg products, and that egg products may be sold in liquid, frozen, or dried form.  UEP further admits that liquid egg production may involve, among other things, breaking, pasteurizing, and/or freezing.  UEP further admits that dried egg production may involve spray drying.  UEP denies the remaining allegations contained in paragraph 88.

89.     Admitted in part; denied in part.  UEP admits that breaking eggs may be processed into egg products and that egg products may be used as an ingredient in commercial baked goods and food items like mayonnaise, pasta and salad dressing.  UEP lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 89, and the same are therefore denied.

90.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 90, and the same are therefore denied.

91.     Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 91, and the same are therefore denied.

92.     Admitted in part; denied in part.  UEP admits that Plaintiffs purport to define the term "shell eggs" as including both "generic" and "specialty" eggs as set forth in paragraph 92. UEP denies the remaining allegations contained in paragraph 92.

93.     Admitted in part; denied in part.  UEP admits that most shell egg prices in the United States are based on the Urner Barry price and that some buyers of shell eggs and egg products purchase shell eggs and egg products on a cost-based formula that is related to the cost of feed.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 93, and the same are therefore denied.

94.     Admitted in part; denied in part.  UEP admits that shell eggs are an ingredient in egg products and that the prices of eggs and egg products may be influenced by supply and demand.  UEP denies the remaining allegations of paragraph 94.

95.     Admitted in part; denied in part.  UEP admits that some egg producers produce and sell both shell eggs and egg products.  UEP further admits that the UEP Certified program is applied to both shell eggs and egg products.  To the extent that the allegations contained in paragraph 95 purport to characterize unidentified documents, from which it appears that Plaintiffs have derived the remaining allegations contained in paragraph 95, UEP denies Plaintiffs characterization of the documents, which are writings that speak for themselves.  To

the extent that the remaining allegations contained in paragraph 95 are conclusions of law no response is required, and they are thus deemed denied. UEP denies the remaining allegations contained in paragraph 95.

96.     Denied. To the extent that the allegations contained in paragraph 96 are conclusions of law no response is required, and they are thus deemed denied. UEP denies the remaining allegations contained in paragraph 96.

97.     Denied. The allegations contained in paragraph 97 purport to characterize Cal-Maine Foods, Inc.'s August 4, 2001 Form 10-K, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 97. UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 97.

98.     Denied. To the extent that the allegations contained in paragraph 98 purport to characterize a white paper published by the American Egg Board, the report is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 98.

99.     Denied. To the extent the allegations contained in the first sentence of paragraph 99 are conclusions of law, no response is required, and they are thus deemed denied. To the extent that the allegations contained in the second sentence of paragraph 99 purport to characterize an article published in the February 2007 edition of Egg Industry, from which it appears that Plaintiffs have extracted certain allegations contained in paragraph 99, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 99.

100.     Denied. To the extent the allegations contained in paragraph 100 purport to characterize the April 14, 2005, issue of *United Voices*, the September 23, 2008, edition of the

*Wall Street Journal*, the July 11, 2007, issue of *Investor's Business Daily*, or Cal-Maine Foods,

Inc.'s August 3, 2011, Form 10-K, UEP denies Plaintiffs' characterization of the documents,

which are writings that speak for themselves. UEP denies the remaining allegations of paragraph

100.

      101.    Denied. To the extent that the allegations contained in paragraph 101 purport to

characterize an article published in the Chicago Tribune dated March 30, 2008, from which it

appears that Plaintiffs have extracted the allegations contained in paragraph 101, UEP denies

Plaintiffs' characterization of that article, which is a writing that speaks for itself. UEP denies

the remaining allegations contained in paragraph 101.

      102.    Admitted in part; denied in part. UEP admits that egg producers may perform

more than one step in the process of bringing an egg to market. To the extent the allegations

contained in paragraph 102 are conclusions of law, no response is required, and they are thus

deemed denied. UEP denies the remaining allegations contained in paragraph 102.

      103.    Denied.

      104.    Denied. UEP lacks knowledge or information sufficient to form a belief as to the

truth of the remaining allegations contained in paragraph 104, and the same are therefore denied.

      105.    Denied. UEP lacks knowledge or information sufficient to form a belief as to the

truth of the remaining allegations contained in paragraph 105, and the same are therefore denied.

      106.    Denied. UEP lacks knowledge or information sufficient to form a belief as to the

truth of the remaining allegations contained in paragraph 106, and the same are therefore denied.

      107.    Denied. UEP lacks knowledge or information sufficient to form a belief as to the

truth of the remaining allegations contained in paragraph 107, and the same are therefore denied.

      108.    Denied.

109.    Denied.

110.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 110, and the same are therefore denied.

111.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 111, and the same are therefore denied.

112.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 112, and the same are therefore denied.

113.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 113, and the same are therefore denied.

114.    Denied.

115.    Denied.

116.    Admitted in part; denied in part.  UEP admits that Don Bell is a poultry specialist. To the extent that the allegations contained in paragraph 116 purport to characterize a report authored by Don Bell, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 116, UEP denies Plaintiffs' characterization of the report, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 116.

117.    Denied.  To the extent that the allegations contained in paragraph 117 purport to characterize a report authored by Don Bell, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 117, UEP denies Plaintiffs' characterization of the report, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 117.

118.    Denied.

119.    Denied.

120. Denied.

121. Admitted in part; denied in part. UEP admits that UEP commissioned an independent Scientific Advisory Committee for Animal Welfare to review scientific literature relevant to the well-being of egg-laying hens, and to develop animal welfare recommendations based upon existing science; and that UEP accepted most of the recommendations of the Scientific Advisory Committee for Animal Welfare. To the extent that the allegations contained in paragraph 121 purport to characterize an unidentified document authorized by Sparboe Farms, from which it appears that Plaintiffs have derived some of the allegations of paragraph 121, UEP denies Plaintiffs' characterization of the contents of the document, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 121.

122. Admitted in part; denied in part. UEP admits that UEP published a *United Voices* newsletter dated July 16, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 122. UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself. To the extent the allegations contained in paragraph 122 are conclusions of law, no response is required, and they are thus deemed denied. UEP denies the remaining allegations contained in paragraph 122.

123. Denied. To the extent the allegations contained in paragraph 123 purport to characterize UEP's animal welfare audit guidelines, from which it appears that Plaintiffs' have derived the allegations contained in paragraph 123, UEP denies Plaintiffs' characterization of the audit guidelines, which are contained in a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 123.

124. Admitted in part; denied in part. UEP admits that in or around 2001, at the request of organizations that represent food retailers, wholesalers, and restaurants, UEP modified

the cage density phase-in period such that each hen would receive 67-76 square inches by 2008. To the extent that the allegations of paragraph 124 purport to characterize UEP's animal welfare audit guidelines, UEP denies Plaintiffs' characterization of the audit guidelines, which are contained in a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 124.

125. Admitted in part; denied in part. UEP admits that UEP's Annual Board Meeting was held on October 11-12, 2002 in Savannah, Georgia, and that at that meeting, a motion passed that required producers who voluntarily chose to participate in the UEP animal welfare program to comply with UEP's animal welfare guidelines at all of the producer's production facilities. To the extent the allegations contained in paragraph 125 purport to characterize a document, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 125, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 125.

126. Denied. To the extent the allegations contained in paragraph 126 purport to characterize a document, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 126, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 126.

127. Admitted in part; denied in part. UEP admits that Sparboe Farms, Inc., opposed the requirement that producers who voluntarily chose to participate in the UEP welfare program implement UEP's animal welfare guidelines at all of their production facilities. To the extent the allegations contained in paragraph 127 purport to characterize a document, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 127, UEP denies Plaintiffs'

characterization of the document, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 127.

128. Denied. To the extent the allegations contained in paragraph 128 purport to characterize emails, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 128, UEP denied Plaintiffs' characterization of the documents, which are writings that speak for themselves. UEP denies the remaining allegations contained in paragraph 128.

129. Admitted in part; denied in part. UEP admits that UEP's Board of Directors held a meeting by telephone conference on December 16, 2004. The remaining allegations purport to characterize the minutes from that meeting or other documents, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 129. UEP denies Plaintiffs' characterization of the meeting minutes and/or other documents, which are writings that speak for themselves.

130. Admitted in part; denied in part. UEP admits that UEP's Producer Committee for Animal Welfare held a meeting on April 19, 2005. To the extent the allegations contained in paragraph 130 purport to characterize the minutes from that meeting or other documents, UEP denies Plaintiffs' characterization of the meeting minutes and/or other documents, which are writings that speak for themselves. UEP denies the remaining allegations contained in paragraph 130.

131. Admitted in part; denied in part. UEP admits only that to protect the integrity of the UEP Certified program and seal, UEP Certified producers undergo regular audits conducted by third parties to ensure their compliance with the UEP Certified animal welfare guidelines. To the extent that the allegations contained in the last sentence of paragraph 131 purport to characterize the January 5, 2005, issue of *United Voices*, UEP denies Plaintiffs' characterization

of the *United Voices* issue, which is a writing that speaks for itself. UEP denies the remaining allegations of paragraph 131.

132. Admitted in part; denied in part. UEP admits only that to protect the integrity of the UEP Certified program, UEP Certified producers and non-certified marketers who obtain licenses to market Certified eggs must submit periodic audits and/or reports, among other things. To the extent that the allegations contained in paragraph 132 purport to characterize UEP's animal welfare audit guidelines, compliance reports, and marketing licenses, from which it appears that Plaintiffs have derived the allegations contained in paragraph 132, UEP denies Plaintiffs' characterization of these documents, which are contained in writings that speak for themselves. UEP denies the remaining allegations contained in paragraph 132.

133. Denied. To the extent the allegations contained in paragraph 133 purport to characterize articles from UEP's *United Voices* newsletter dated September 18, 2008, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 133, UEP denies Plaintiffs' characterization of the articles, which are writings that speak for themselves. UEP denies the remaining allegations contained in paragraph 133.

134. Denied. To the extent that the allegations contained in paragraph 134 purport to characterize the meeting minutes from an October 2002 meeting of UEP's Board of Directors, from which it appears that Plaintiffs have derived the allegations contained in paragraph 134, UEP denies Plaintiffs' characterization of the minutes, which are in a writing that speaks for itself. UEP denies the remaining allegations of paragraph 134.

135. Denied. To the extent the allegations contained in paragraph 135 purport to characterize UEP's animal welfare audit guidelines, UEP denies Plaintiffs' characterization of

the audit guidelines, which are contained in a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 135.

136. Denied. To the extent the allegations contained in paragraph 136 purport to characterize UEP's animal welfare audit guidelines, UEP denies Plaintiffs' characterization of the audit guidelines, which are contained in a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 136.

137. Admitted in part; denied in part. UEP admits that producers that produce eggs in compliance with the UEP Certified Guidelines are permitted to sell those eggs as UEP Certified. UEP denies the remaining allegations of paragraph 137.

138. Denied.

139. Denied. UEP avers that participation in the UEP Certified program fluctuated during the alleged relevant time period. UEP denies the allegations contained in paragraph 139.

140. Admitted in part; denied in part. UEP admits that shipping costs, perishability, and potential breakage may influence the locales to which eggs are exported. UEP further admits that USEM coordinated shell egg exports on behalf of its producer members at certain times during the alleged relevant time period. UEP denies the remaining allegations contained in paragraph 140.

141. Admitted in part; denied in part. UEP admits that some USEM export participants purchased eggs using UEP's egg traders at certain times during the alleged relevant time period. To the extent the allegations contained in paragraph 141 purport to characterize an unidentified document, from which it appears that Plaintiffs have derived some of the allegations contained in paragraph 141, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. To the extent that the allegations contained in paragraph 141

constitute conclusions of law, no response is required, and they are thus deemed denied. UEP

lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations contained in paragraph 141, and the same are therefore denied.

142. Denied. UEP lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 142, and the same are therefore denied. The

allegations contained in paragraph 142 purport to characterize a March 20, 2003, document, from

which it appears that Plaintiffs have extracted the allegations contained in paragraph 142. UEP

denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. UEP

denies the remaining allegations contained in paragraph 142.

143. Admitted in part; denied in part. UEP admits that Linda Reickard is a former

Vice President of UEP. The allegations contained in the first sentence paragraph 143 purport to

characterize an April 17, 2007, document. UEP denies Plaintiffs' characterization of the

document, which is a writing that speaks for itself. UEP lacks knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 143,

and the same are therefore denied.

144. Denied. UEP denies the allegations contained in the first sentence of paragraph

144.

      A. Denied. UEP lacks knowledge or information sufficient to form a belief
           as to the truth of the allegations contained in paragraph 144.A, and the
           same are therefore denied.

      B. Denied. UEP lacks knowledge or information sufficient to form a belief
           as to the truth of the allegations contained in paragraph 144.B, and the
           same are therefore denied.

C.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 144.C, and the same are therefore denied.

D.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first and second sentences of paragraph 144.D, and the same are therefore denied.  The allegations contained in the last sentence of paragraph 144.D purport to characterize a November 17, 2006 issue of *United Voices*, from which it appears that Plaintiffs have extracted the allegations contained in the last sentence of paragraph 144.D.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  To the extent that the allegations contained in paragraph 144.D purport to characterize a *Wall Street Journal* article, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 144.D, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 144.D, and the same are therefore denied.

E.    Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 144.E, and the same are therefore denied.

145.    Denied.  To the extent the allegations contained in paragraph 145 purport to characterize articles from UEP's *United Voices* newsletter, from which it appears that Plaintiffs

-69-

have extracted the allegations contained in paragraph 145, UEP denies Plaintiffs'
characterization of the articles, which are writings that speak for themselves.  UEP denies the
remaining allegations of paragraph 145.

146.   Denied.  To the extent the allegations contained in paragraph 146 purport to
characterize articles from UEP's *United Voices* newsletter and the minutes from the August 7,
2007, meeting of UEP's Long Range Planning Committee, from which it appears that Plaintiffs
have extracted the allegations contained in paragraph 146, UEP denies Plaintiffs'
characterization of the documents, which are writings that speak for themselves.  UEP denies the
remaining allegations of paragraph 146.

147.   Denied.  To the extent that the allegations contained in paragraph 147 purport to
characterize an article from UEP's *United Voices* newsletter or an *Egg Industry* article dated
November 1999, from which it appears that Plaintiffs have extracted the allegations contained in
paragraph 147, UEP denies Plaintiffs' characterization of the articles, which are writings that
speak for themselves.  UEP denies the remaining allegations contained in paragraph 147.

148.   Denied.  To the extent that the allegations contained in paragraph 148 purport to
characterize an article from UEP's *United Voices* newsletter or an *Egg Industry* article dated
November 1999, from which it appears that Plaintiffs have extracted the allegations contained in
paragraph 148, UEP denies Plaintiffs' characterization of the article, which is a writing that
speaks for itself.  UEP denies the remaining allegations contained in paragraph 148.

149.   Admitted in part; denied in part.  UEP admits that a documented titled "The Egg
Industry" dated August 2001 was included in materials for a September 5, 2001 UEP meeting.
The allegations contained in paragraph 149 purport to characterize that document and another
document, from which it appears that Plaintiffs have extracted certain allegations contained in

paragraph 149.  UEP denies Plaintiffs' characterization of these documents, which are writings that speak for themselves.  UEP denies the remaining allegations contained in paragraph 149.

150.    Denied.  To the extent the allegations contained in paragraph 150 purport to characterize a *Feedstuffs* article dated November 5, 2001, from which it appears that Plaintiffs have extracted certain allegations contained in paragraph 150, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 150.

151.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated May 20, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 151.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  To the extent the allegations contained in paragraph 151 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 151.

152.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated September 15, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 152.  UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself.  To the extent the allegations contained in paragraph 152 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 152.

153.    Denied.  To the extent the allegations contained in paragraph 153 purport to characterize a document, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 153, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  To the extent the allegations contained in paragraph 153 are

conclusions of law, no response is required, and they are thus deemed denied. UEP denies the remaining allegations contained in paragraph 153.

154. Admitted in part; denied in part. UEP admits that UEP published a *United Voices* newsletter dated November 23, 2004, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 154. UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself. To the extent the allegations contained in paragraph 154 are conclusions of law, no response is required, and they are thus deemed denied. UEP denies the remaining allegations contained in paragraph 154.

155. Admitted in part; denied in part. UEP admits that the UEP Board of Directors held a meeting on January 25, 2005, and that UEP's Shell Egg Marketing Committee held a meeting on January 24, 2005. To the extent the allegations contained in paragraph 155 purport to characterize the minutes from these meetings, UEP denies Plaintiffs' characterization of the meeting minutes, which are writings that speak for themselves. To the extent the allegations contained in paragraph 155 are conclusions of law, no response is required, and they are thus deemed denied. UEP denies the remaining allegations contained in paragraph 155.

156. Denied. UEP admits that UEP sent a letter to certain UEP members dated December 3, 2004, from which it appears that Plaintiffs have extracted certain allegations contained in paragraph 156. UEP denies Plaintiffs' characterization of the letter, which is a writing that speaks for itself. UEP denies Plaintiffs' characterization of "UEP's 'intentions program.'" To the extent the allegations contained in paragraph 156 purport to characterize the contents of documents, UEP denies Plaintiffs' characterization of these documents, which are writings that speak for themselves. To the extent that the allegations contained in paragraph 156 purport to characterize the February 3, 2005 edition of *United Voices*, UEP denies Plaintiffs'

characterization of the document, which is a writing that speaks for itself. To the extent the allegations contained in paragraph 156 are conclusions of law, no response is required, and they are thus deemed denied. UEP denies the remaining allegations contained in paragraph 156.

157. Admitted in part; denied in part. UEP admits that UEP published a *United Voices* newsletter dated February 3, 2005, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 157. UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 157.

158. Admitted in part; denied in part. UEP admits that UEP published a *United Voices* newsletter dated February 17, 2005, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 158. UEP denies Plaintiffs' characterization of the *United Voices* newsletter, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 158.

159. Admitted in part; denied in part. UEP admits that UEP published a *United Voices* newsletter dated February 15, 2006, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 159. UEP denies Plaintiffs' characterization of the newsletter, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 159.

160. Admitted in part; denied in part. UEP admits that UEP's Marketing Committee held a meeting via conference call on March 31, 2006. The allegations in paragraph 160 purport to characterize the minutes from that meeting, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 160. UEP denies Plaintiffs' characterization of

the meetings minutes, which are in a writing that speaks for itself. UEP denies the remaining allegations of paragraph 160.

161.    Admitted in part; denied in part. UEP admits that UEP it published an article titled "Supply/Demand Alert" in its April 13, 2006 edition of *United Voices*. UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 161.

162.    Admitted in part; denied in part. UEP admits that UEP published a *United Voices* newsletter dated August 3, 2006, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 162. UEP denies Plaintiffs' characterization of the newsletter, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 162.

163.    Admitted in part; denied in part. UEP admits that UEP published a *United Voices* newsletter dated February 2, 2007, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 163. UEP denies Plaintiffs' characterization of the newsletter, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 163.

164.    Admitted in part; denied in part. UEP admits that UEP published a *United Voices* newsletter dated March 15, 2007, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 164. UEP denies Plaintiffs' characterization of the newsletter, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 164.

165.    Admitted in part; denied in part. UEP admits that UEP published a *United Voices* newsletter dated April 10, 2007, from which it appears that Plaintiffs have extracted the

allegations contained in paragraph 165.  UEP denies Plaintiffs' characterization of the newsletter,

which is a writing that speaks for itself.  UEP denies the remaining allegations contained in

paragraph 165.

166.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices*

newsletter dated August 1, 2007, from which it appears that Plaintiffs have extracted the

allegations contained in paragraph 166.  UEP denies Plaintiffs' characterization of the newsletter,

which is a writing that speaks for itself.  UEP denies the remaining allegations contained in

paragraph 166.

167.    Denied.

168.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices*

newsletter dated August 27, 2003, from which it appears that Plaintiffs have extracted some of

the allegations contained in paragraph 168.  UEP denies Plaintiffs' characterization of the *United*

*Voices* newsletter, which is a writing that speaks for itself.  To the extent the allegations

contained in paragraph 168 purport to characterize an unidentified document, from which it

appears that Plaintiffs' have derived the remaining allegations of paragraph 168, UEP denies

Plaintiffs' characterization of this document, which is a writing that speaks for itself.  UEP

denies the remaining allegations contained in paragraph 168.

169.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices*

newsletter dated June 4, 2003, from which it appears that Plaintiffs have extracted the allegations

contained in paragraph 169.  UEP denies Plaintiffs' characterization of the *United Voices*

newsletter, which is a writing that speaks for itself.  UEP denies the remaining allegations

contained in paragraph 169.

170.    Admitted in part; denied in part.  UEP admits that Mike Bynum served as UEP's Chairman in 2003, and that UEP published a *United Voices* newsletter dated October 31, 2003, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 170. UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 170.

171.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated December 30, 2003, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 171.  UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 171.

172.    Admitted in part; denied in part.  UEP admits that UEP published *United Voices* newsletters dated November 1, 2006, and November 16, 2006, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 172.  UEP denies Plaintiffs' characterization of the newsletters, which are writings that speak for themselves.  UEP denies the remaining allegations contained in paragraph 172.

173.    Admitted in part; denied in part.  UEP admits that, in March 2008, Gene Gregory gave a presentation entitled "Egg Economics Report" at the Pacific Egg and Poultry Association Annual Convention.  To the extent the allegations contained in paragraph 173 purport to characterize the PowerPoint presentation displayed in association with this presentation, UEP denies Plaintiffs' characterization of the presentation, which is a writing that speaks for itself. UEP denies the remaining allegations of paragraph 173.

174.    Admitted in part; denied in part.  UEP admits that UEP published a *United Voices* newsletter dated January 3, 2008, from which it appears that Plaintiffs have extracted the

allegations contained in paragraph 174. UEP denies Plaintiffs' characterization of the newsletter, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 174.

175. Denied. To the extent that the allegations contained in paragraph 175 purport to characterize a written statement presented to the Joint Economic Committee, U.S. Congress, from which it appears that Plaintiffs have extracted the allegations contained in paragraph 175, UEP denies Plaintiffs' characterization of the testimony, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 175.

176. Denied. To the extent the allegations contained in paragraph 176 are conclusions of law, no response is required, and they are thus deemed denied. UEP denies the remaining allegations contained in paragraph 176.

177. Admitted in part; denied in part. UEP admits that, at certain times during the alleged relevant time period, certain UEP members were not egg producers. UEP further avers that, at all times during the alleged relevant time period, all UEP members were agricultural producers. To the extent the allegations contained in paragraph 177 are conclusions of law, no response is required, and they are thus deemed denied. UEP denies the remaining allegations contained in paragraph 177.

178. Admitted in part; denied in part. UEP admits that some of its members may participate in more than one step in the process of bringing an egg to market. To the extent the allegations contained in paragraph 178 are conclusions of law, no response is required, and they are thus deemed denied. UEP denies the remaining allegations of paragraph 178.

179. Denied. To the extent that the allegations contained in paragraph 179 are conclusions of law, no response is required, and they are thus deemed denied. UEP lacks

knowledge or information sufficient to form a belief as to the truth of the allegations relating to defendants other than UEP, and the same are therefore denied.  UEP denies the remaining allegations of paragraph 179.

179.    180.    Denied.  To the extent the allegations contained in paragraph 180 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations of paragraph 180.

181.    Denied.  To the extent the allegations contained in paragraph 181 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations of paragraph 181.

182.    Denied.  To the extent the allegations contained in paragraph 182 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations of paragraph 182.

183.    Denied.  To the extent the allegations contained in paragraph 183 are conclusions of law, no response is required, and they are thus deemed denied.  To the extent that the allegations contained in paragraph 183 purport to characterize an October 2, 1968, letter, and a 1997 report from the United States Department of Justice, UEP denies Plaintiffs' characterization of those documents, which are writings that speak for themselves.  UEP denies the remaining allegations of paragraph 183.

184.    Denied.  To the extent the allegations contained in paragraph 184 are conclusions of law, no response is required, and they are thus deemed denied.  To the extent that the allegations contained in paragraph 184 purport to characterize a decision of the Federal Trade Commission, UEP denies Plaintiffs' characterization of that decision, which is a writing that speaks for itself.  UEP denies the remaining allegations of paragraph 184.

185.  Denied.  To the extent the allegations contained in paragraph 185 are conclusions of law, no response is required, and they are thus deemed denied.  To the extent that the allegations contained in paragraph 185 purport to characterize United States Department of Agriculture publications, UEP denies Plaintiffs' characterization of those publications, which are writings that speak for themselves.  UEP denies the remaining allegations of paragraph 185.

186.  Denied.

187.  Denied.  To the extent the allegations contained in paragraph 187 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations of paragraph 187.

188.  Admitted in part; denied in part.  UEP admits that Sparboe Farms, Inc., withdrew from the UEP and its animal welfare program in or around June 2005.  To the extent the allegations contained in paragraph 188 are conclusions of law, no response is required, and they are thus deemed denied.  To the extent that the allegations contained in paragraph 188 purport to characterize an unidentified document, from which it appears that Plaintiffs have derived the allegations contained in paragraph 188, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations of paragraph 188.

189.  Denied.

190.  Denied.  The allegations contained in paragraph 190 are conclusions of law to which no response is required, and they are thus deemed denied.

191.  Denied.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 191, and the same are therefore denied.  UEP denies the remaining allegations contained in paragraph 191.

192.     Denied.  To the extent that the allegations contained in paragraph 192 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations of paragraph 192.

193.     Admitted in part; denied in part.  UEP admits that it does not wash, break, pasteurize, store, distribute, or negotiate contracts of sale for its members.  UEP denies the remaining allegations of paragraph 193.

194.     Denied.  UEP incorporates its answers to the foregoing paragraphs by reference as if fully set forth herein.  To the extent that the allegations contained in paragraph 194 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations of paragraph 194.

195.     Denied.  To the extent that the allegations contained in paragraph 195 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations of paragraph 195, including those contained in subparts 195.A-195.C.

196.     Denied.  To the extent that the allegations contained in paragraph 196 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations of paragraph 196, including those contained in subparts 196.A-196.J.

197.     Denied.  To the extent that the allegations contained in paragraph 197 are conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations of paragraph 197.

198.     Denied.  To the extent that the allegations contained in paragraph 198 are conclusions of law, no response is required, and they are thus deemed denied.  To the extent that the allegations contained in paragraph 198 purport to characterize a document, UEP denies

Plaintiffs' characterization of the document, which is a writing that speaks for itself. UEP denies the remaining allegations of paragraph 198, including those contained in subparts 198(A)-(D).

199.   Denied. To the extent that the allegations contained in paragraph 199 purport to characterize an unidentified document, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself. To the extent that the allegations contained in paragraph 199 constitute conclusions of law, no response is required, and they are thus deemed denied. UEP denies the remaining allegations contained in paragraph 199, including those contained in subparts 199(A)-(C).

200.   Denied. To the extent that the allegations contained in paragraph 200 are conclusions of law, no response is required, and they are thus deemed denied. UEP denies the remaining allegations of paragraph 200.

201.   Denied. To the extent that the allegations contained in paragraph 201 purport to characterize an email, UEP denies Plaintiffs' characterization of the email, which is a writing that speaks for itself. UEP denies the remaining allegations contained in paragraph 201.

202.   Admitted in part; denied in part. UEP admits that it restricted attendance at certain UEP meetings to UEP members. UEP further admits that it retained GolinHarris to truthfully promote UEP's animal welfare guidelines. To the extent that the allegations contained in paragraph 202 purport to characterize documents, UEP denies Plaintiffs' characterization of these document, which are writings that speak for themselves. To the extent that the allegations contained in paragraph 202 purport to characterize Plaintiffs' state of mind, UEP lacks knowledge or information sufficient to form a belief as to the truth of these allegations, and the same are therefore denied. UEP denies the remaining allegations contained in paragraph 202, including those contained in subparts 202(A)-(L).

203.    Denied.  To the extent that the allegations contained in paragraph 203 purport to characterize, UEP denies Plaintiffs' characterization of the document, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 203.

204.    Admitted in part; denied in part.  UEP admits that animal welfare activists have gained publicity in their efforts to target what they consider to be inhumane animal husbandry methods.  UEP further admits that, at certain times during the alleged relevant time period, certain groups endeavored to, among other things, improve animal welfare, ban caged egg production, and to encourage purchasers to buy only cage-free eggs.  UEP further admits that egg producers were aware that major purchasers of eggs and egg products were very focused on animal welfare concerns.  UEP lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the seventh and eighth sentences of paragraph 204, and the same are therefore denied.  UEP denies the remaining allegations contained in paragraph 204.

205.    Denied.  To the extent that the allegations contained in paragraph 205 purport to characterize Plaintiffs' state of mind, UEP lacks knowledge or information sufficient to form a belief as to the truth of these allegations, and the same are therefore denied.  UEP denies the remaining allegations contained in paragraph 205.

206.    Denied.

207.    Denied.  To the extent that the allegations contained in paragraph 207 are conclusions of law, no response is required, and they are thus deemed denied.  To the extent that the allegations contained in paragraph 207 purport to characterize Plaintiffs' state of mind, UEP lacks knowledge or information sufficient to form a belief as to the truth of these allegations, and the same are therefore denied.  Further,  UEP lacks knowledge or information to form a belief as to the truth of the allegations contained in the first and second sentences of paragraph 207(B).

-82-

UEP denies the remaining allegations contained in paragraph 207, including those contained in subparts 207(A)-(E).

208.    Denied.  To the extent that the allegations contained in paragraph 208 purport to characterize Plaintiffs' state of mind, UEP lacks knowledge or information sufficient to form a belief as to the truth of these allegations, and the same are therefore denied.  To the extent that the allegations contained in paragraph 208 purport to characterize an article published in the *Wall Street Journal* dated September 23, 2008, UEP denies Plaintiffs' characterization of the article, which is a writing that speaks for itself.  UEP denies the remaining allegations contained in paragraph 208.

209.    Denied.  To the extent that the allegations of paragraph 209 purport to characterize an article in the *Wall Street Journal* and an unidentified email, UEP denies Plaintiffs' characterization of these documents, which are writings that speak for themselves.  UEP denies the remaining allegations of paragraph 209.

210.    Denied.  The allegations contained in paragraph 210 constitute conclusions of law to which no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 210.

211.    Denied.

212.    Denied.  To the extent that the allegations contained in paragraph 212 constitute conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations contained in paragraph 212.

213.    Denied.  UEP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first paragraph of paragraph 213, and the same are therefore denied.  To the extent that the remaining allegations in paragraph 213 constitute

conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations of paragraph 213.

214.    Denied.  To the extent that the remaining allegations in paragraph 214 constitute conclusions of law, no response is required, and they are thus deemed denied.  UEP denies the remaining allegations of paragraph 214.

## REQUEST FOR RELIEF

WHEREFORE, UEP denies that Plaintiffs are entitled to any of the relief requested in the Second Amended Complaint, and respectfully requests that the Court enter judgment in its favor on all claims.

## AFFIRMATIVE DEFENSES

UEP asserts the following affirmative defenses.  In stating these affirmative defenses, UEP does not concede that it has the burden of proof on any of the aforementioned defenses and denials and does not make any admissions as to liability, which it disputes.  UEP adopts by reference any defense not otherwise expressly contained herein that is pleaded by any other Defendant in this action.

1.    The Second Amended Complaint fails to state a claim upon which relief may be granted.

2.    Plaintiffs are barred from recovering damages or obtaining injunctive relief on the claims asserted in the Second Amended Complaint by the doctrines of estoppel, waiver, laches, ratification and/or unclean hands.

3.    Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitation.

4.    Plaintiffs' claims are barred because Plaintiffs have not suffered any damages as a result of matters alleged in the Second Amended Complaint.

5.      Plaintiffs' claims for injunctive relief are invalid and improper in that Plaintiffs have failed to allege, and are incapable of demonstrating, irreparable harm and/or the absence of any adequate remedy at law.

6.      There is no direct and proximate causal connection between any claim of harm or injury alleged by Plaintiffs and any acts alleged to have been committed by UEP.

7.      Plaintiffs are barred, in whole or in part, from pursuing damages for the claims asserted in the Second Amended Complaint because they failed to mitigate its damages or to otherwise take commercially reasonable steps to limit any risks or losses.

8.      Plaintiffs' damages claims are barred in whole or in part because the damages they seek are speculative or uncertain.

9.      Plaintiffs' damages claims are limited to compensation for injuries that Plaintiffs can show to have resulted from that which made defendants' conduct unlawful and to be separate from the effects of lawful activity.

10.      To the extent that Plaintiffs seek to collect treble damages, attorneys' fees and expenses, and other monetary relief, they seek a recovery that is so grossly excessive and inequitable that it would violate the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution, or that is in excess of the limitations provided under other laws.

11.      Plaintiffs lack standing to bring some or all of their claims.

12.      Plaintiffs have suffered no antitrust injury.

13.      Plaintiffs have failed to plead that they purchased products in any properly defined market or sub-market.

14. Plaintiffs' claims are barred, in whole or in part, because any conduct engaged in by UEP was reasonable and based on independent, legitimate business and economic justifications.

15. Plaintiffs' claims are barred, in whole or in part, because legitimate standard setting through cooperatives does not give rise to antitrust liability.

16. Plaintiffs' claims are barred, in whole or in part, because the claims are governed by the rule of reason, and Plaintiffs have not alleged or cannot prove the elements of a rule of reason claim.

17. Plaintiffs' claims are barred, in whole or in part, because the pro-competitive benefits of the conduct alleged by Plaintiffs outweighs any alleged anti-competitive effects.

18. UEP has not engaged in any concert, combination or conspiracy to restrain trade.

19. Plaintiffs' damages, if any, were caused by the conduct of third parties.

20. UEP cannot conspire or attempt to conspire with its cooperative members because they enjoy intra-enterprise immunity.

21. Plaintiffs have failed to plead the alleged fraud and concealment with requisite particularity.

22. Plaintiffs have failed to plead the alleged conspiracy with requisite particularity.

23. Plaintiffs' claims are barred, in whole or in part, by the *Noerr-Pennington* doctrine, the state action doctrine, and/or the doctrine of implied immunity.

24. Plaintiffs' claims are barred because the alleged conduct that is the subject of the Second Amended Complaint was caused by, due, based upon, or in response from directives, laws, regulations, authorizations, policies and/or acts of governments and/or their agencies.

25.     UEP is immune from liability pursuant to the Capper-Volstead Act, 7 U.S.C. § 291 *et seq.*

26.     UEP is immune from liability pursuant to Section 5 of the Cooperative Marketing Act, 7 U.S.C. § 455.

27.     UEP is immune from liability pursuant to Section 6 of the Clayton Act, 15 U.S.C. § 17.

28.     UEP is immune from liability pursuant to the Agriculture Marketing Agreement Act, 7 U.S.C. § 601 *et seq.*

29.     UEP is immune from liability pursuant to the Export Trading Company Act, 15 U.S.C. § 4001 *et seq.*

30.     UEP is immune from liability pursuant to the Webb-Pomerene Act (Export Trade Act), 15 U.S.C. § 61 *et seq.*

31.     Plaintiffs' claims are barred, in whole or in part, by the Agricultural Marketing Act of 1929, 12 U.S.C. § 1141(a).

32.     If, for any reason, any or all of the alleged acts and omissions of defendants were not within the scope of the foregoing immunities, any resulting damages should be equitably mitigated.

33.     In addition to being barred by the above-referenced federal statutes, Plaintiffs' claims are barred, in whole or in part, by the state statutory equivalents of those federal statutes[1]

---

[1] The state statutes that provide antitrust immunity for agricultural coops and their members include at least the following: ARIZ. STAT. § 44-1401; CAL. FOOD & AGRIC. CODE § 58651, *et seq.*; CAL. FOOD & AGRIC. CODE § 54038; D.C. CODE ANN. § 28-4504; IOWA CODE § 553.6; KAN. STAT. §§ 17-1634, 17-1603(c); 13 M.R.S.A. § 1772; M.C.L.A. § 445.774; MINN. STAT. 325D.55(1); MISS. CODE § 75-21-5; 79-19-51; NEB. REV. STAT. § 59-1618; NEB. REV. STAT. § 2-3801, *et seq*; NEV. REV. STAT. § 598A.040(1); N.M. STAT. § 57-1-4; 76-12-1; N.Y. GEN. BUS. LAW § 340(3); N.D. STAT. § 51-08.1-04; 10 L.P.R.A. § 257; S.D. STAT. § 37-1-3.4; TENN. STAT. § 47-25-110; UTAH CODE § 76-10-915(2)(b); UTAH CODE § 34-19-1(2); W. VA. CODE § 47-18-5(b); W. VA. CODE § 19-4-28; W.S.A. § 133.07.

and by the harmonization principles that require state antitrust laws to be applied and construed consistently with federal antitrust laws and precedent.

34.    If any or all of the alleged acts and omissions of Defendants were not within the scope of the foregoing immunities, any such technical defects should be ignored as *de minimis*.

35.    Plaintiffs cannot demonstrate that defendants' conduct was outside the scope of the foregoing immunities or that defendants' prices were unduly enhanced as a result of any or all of the alleged acts and omissions.  The United States Department of Agriculture ("USDA") was fully aware of the conduct relevant to Plaintiffs' claims, and it regularly monitors and reports upon egg prices. However, the USDA never sought to object to, or to halt, any conduct by Defendants despite the fact that Section 2 of the Capper-Volstead Act, 7 U.S.C. § 292, provides that the Secretary of Agriculture "shall issue" an order directing agricultural associations "to cease and desist" conduct that causes the prices of agricultural products to be "unduly enhanced."

36.    Plaintiffs' claims are barred, in whole or in part, by 7 U.S.C. § 292's grant of exclusive or primary jurisdiction to the United States Secretary of Agriculture.

37.    Plaintiffs' claims are barred, in whole or in part, because of a failure to join necessary and/or indispensable parties.

38.    Plaintiffs' claims are barred, in whole or in part, by their failure to comply with the notice requirements of the applicable laws.

39.    UEP did not knowingly or consciously participate in a scheme designed to achieve an unlawful objective.

40. Plaintiffs' claims are barred, in whole or in part, by the doctrines of *in pari delicto*, involvement, participation, equal involvement, complete involvement, and unclean hands.

41. Plaintiffs' claims are barred, in whole or in part, because Plaintiffs were co-initiators, co-conspirators, or were involved in creating, maintaining, supporting, relying on, implementing, or otherwise utilizing the conduct and programs challenged in this action.

42. Plaintiffs' claims are barred, in whole or in part, because UEP did not act knowingly, willfully, or intentionally.

WHEREFORE, UEP respectfully requests that this Court enter judgment in favor of UEP and against Plaintiffs and award UEP its costs, attorneys' fees, and such other relief as may be just and proper.

Dated: January 31, 2014          Respectfully submitted,

<u>/s/ Jan P. Levine</u>
Jan P. Levine (PA 43869)
Robin P. Sumner (PA 82236)
PEPPER HAMILTON LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA, 19103-2799
Phone: (215) 981-4714
Fax:    (215) 981-4750
*Attorneys for Defendant United Egg Producers, Inc.*

CERTIFICATE OF SERVICE

I, Whitney R. Redding, hereby certify that on January 31, 2014, the foregoing

United Egg Producers, Inc.'s Answer With Affirmative Defenses To Plaintiffs Second Amended

Complaint was filed using the CM/ECF system, and (1) the filing is available for viewing and

downloading via the CM/ECF system and (2) the CM/ECF system will send notification of such

filing to all attorneys of record who have registered for CM/ECF updates.  On this date, the

aforementioned document was also served by e-mail on all attorneys listed on the Panel Attorney

Service List.

/s/ Whitney R. Redding
Whitney R. Redding
PEPPER HAMILTON LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
(215) 981-4121
reddingw@pepperlaw.com