## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE PROCESSED EGG PRODUCTS | § | MDL 2002 |
| ANTITRUST LITIGATION | § | 08-md-02002 |
| _____ | § | |
| | § | Jury Trial Demanded |
| THIS DOCUMENT APPLIES TO: | § | |
| No. 2:12-cv-00088-GP | § | Honorable Gene Pratter |

### DEFENDANT CAL-MAINE FOODS, INC.'S ANSWER AND DEFENSES TO THE SECOND AMENDED COMPLAINT OF KRAFT FOODS GLOBAL, INC., THE KELLOG COMPANY, GENERAL MILLS, INC., AND NESTLE USA, INC. AND COUNTERCLAIMS

Defendant Cal-Maine Foods, Inc. ("Cal-Maine") answers the Second Amended Complaint ("Complaint") of Kraft Foods Global, Inc., The Kellogg Company, General Mills, Inc., and Nestlé USA, Inc.'s ("Plaintiffs") as follows:

### ANSWER

In response to the Preamble, Cal-Maine admits that Plaintiffs have filed suit against it and the other Defendants and that Plaintiffs request a jury trial, but Cal-Maine denies that Plaintiffs are entitled to relief under applicable law.

1.    Cal-Maine admits that Plaintiffs have offered one possible definition of "shell eggs" and "egg products" in paragraph 1.  Cal-Maine denies any remaining allegations in paragraph 1.[1]

---

[1]    In paragraph one, Plaintiffs define "eggs" as "shell eggs and egg products."  Complaint ¶ 1.  This makes no sense in light of the remainder of the Complaint, which repeatedly and unequivocally uses the term "eggs" in a manner that excludes egg products. *See, e.g., id.* ¶¶ 82 ("Hens will substantially reduce their feed intake, stop laying eggs, and replace their feathers."); 84 ("To achieve optimal results from a molt, hens must completely stop laying eggs for 14 to 17 days."); 194 (". . . raise prices for eggs and egg products."); 195 ("To control and manipulate the supply/and or capacity for production of eggs and egg products.").  Unless otherwise noted, Cal-Maine will interpret the term "eggs" in the Complaint to include only shell eggs, and its use of the term eggs in this Answer should not be interpreted to include egg products.

1

2.      Cal-Maine admits that it is a farmer that produces shell eggs and a small amount of egg products.  Cal-Maine denies that UEP, USEM, and UEA are properly characterized as "interrelated trade groups."   Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 about other Defendants' activities and therefore denies them.  Cal-Maine denies any remaining allegations in paragraph 2.

3.      Cal-Maine denies the allegations of paragraph 3.[2]

4.      Cal-Maine admits the allegations of the first sentence of paragraph 4.  As for the second sentence, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the document referenced therein.  This document speaks for itself.  Cal-Maine denies any remaining allegations in paragraph 4, including without limitation Plaintiffs' characterization of the document.

5.      As for the first two sentences of paragraph 5, Cal-Maine admits that the demand for eggs is relatively inelastic, depending on the price, when compared to other consumer products, but Cal-Maine denies the remaining allegations.  As for the third, fourth, fifth, and sixth sentences of paragraph 5, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the documents referenced therein.  These documents speak for themselves.  Cal-Maine denies any remaining allegations in paragraph 5, including without limitation Plaintiffs' characterization of the documents referred to therein.

6.      As for the first sentence in paragraph 6, Cal-Maine admits that there have been several mergers in the egg industry in the last twenty years, but Cal-Maine denies any remaining allegations.  Cal-Maine denies the allegations in the second sentence of paragraph 6.  Cal-Maine

---

[2]      On those occasions in the Complaint when Plaintiffs make allegations against all Defendants together, unless otherwise stated in this answer, Cal-Maine will answer for itself only, and any allegations directed against other Defendants will be denied.  Cal-Maine incorporates this footnote by reference into its response to any paragraph in the Complaint that makes global allegations against Defendants as a group.

lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third and fourth sentences of paragraph 6 and therefore denies them.

7.  Cal-Maine denies the allegations of the first and second sentences of paragraph 7.

A.  As for subpart A, Cal-Maine admits that it voluntarily decided to amend its molting and disposal schedule in 1999 and that USEM considered developing a chick hatch reduction program, but denies any remaining allegations in subpart A.

B.  As for subpart B, Cal-Maine admits that it voluntarily decided to a 5% flock reduction but denies any remaining allegations.

C.  As for subpart C, Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

D.  Cal-Maine denies the allegations in the first and second sentences of subpart D.  As for the third sentence of subpart D, Cal-Maine admits that one aspect of the UEP animal welfare guidelines related to the amount of cage space per hen, but it denies any remaining allegations of the third sentence.  Cal-Maine denies the allegations of the fourth fifth, and sixth sentences of subpart D.  As for the seventh sentence of subpart D, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the document referenced therein. This document speaks for itself.  Cal-Maine denies any remaining allegations in the seventh sentence of subpart D, including without limitation Plaintiffs' characterization of the document.  Cal-Maine denies any remaining allegations in subpart D.

E.  Cal-Maine denies the allegations of the first sentence of subpart E.  As for the second sentence, Plaintiffs appear to be selectively quoting from—and

attempting to characterize—an unidentified document. If so, then the document speaks for itself. Cal-Maine denies any remaining allegations in subpart E of paragraph 7, including without limitation Plaintiffs' characterization of the document.

F.      As for the first, second, and sixth sentences of subpart F, Cal-Maine admits that the UEP Board of Directors carried a motion regarding the 100% rule at the October 10-11, 2002 meeting and that the 100% rule required a producer to maintain 100% of its production in conformity with the UEP Certified Program in order to market its eggs as "UEP Certified" eggs. Cal-Maine denies any remaining allegations of the first, second, and sixth sentences. Cal-Maine denies the third sentence of subpart F. As for the fourth and fifth sentences of subpart F, Plaintiffs appear to be selectively quoting from—and attempting to characterize—an unidentified document. If so, then the document speaks for itself. Cal-Maine denies any remaining allegations in subpart F of paragraph 7, including without limitation Plaintiffs' characterization of the document.

G.      As for subpart G, Cal-Maine admits that in mid-2004 it voluntarily decided to change its molt and flock disposal schedule. Cal-Maine denies any remaining allegations in subpart G.

H.      As for subpart H, Plaintiffs appear to be selectively quoting from—and attempting to characterize—an unidentified document. If so, then the document speaks for itself. Cal-Maine denies any remaining allegations in subpart H, including without limitation Plaintiffs' characterization of the document.

I.      As for subpart I, Plaintiffs appear to be selectively quoting from—and attempting to characterize—an unidentified document.  If so, then the document speaks for itself.  Cal-Maine denies any remaining allegations in subpart I, including without limitation Plaintiffs' characterization of the document.

J.      As for the first sentence of subpart J, Cal-Maine admits that in December 2004, the UEP Board voted to prohibit backfilling except in the case of catastrophic mortality and admits that Plaintiffs have offered one possible definition of "backfilling," but Cal-Maine denies that this was done to control the supply of eggs and denies any remaining allegations.  As for the first clause of the second sentence of subpart J, Plaintiffs appear to be selectively quoting from—and attempting to characterize—an unidentified document.  If so, then the document speaks for itself.  As for the second clause of the second sentence, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publication referenced therein.  This publication speaks for itself.  Cal-Maine denies all remaining allegations in subpart J, including without limitation Plaintiffs' characterization of the documents.

K.      As for subpart K, Plaintiffs appear to be selectively quoting from—and attempting to characterize—an unidentified document.  If so, then the document speaks for itself.  Cal-Maine denies any remaining allegations in subpart K, including without limitation Plaintiffs' characterization of the document.

L.      As for the first sentence of subpart L, Cal-Maine admits that it participated in certain exports through USEM in the relevant time period, but Cal-Maine denies the remainder of the allegations in the first sentence, including Plaintiffs'

characterization of those exports. In the second sentence, Plaintiffs appear to be selectively quoting from—and attempting to characterize—an unidentified document. If so, then the document speaks for itself. Cal-Maine denies any remaining allegations in the second sentence, including without limitation Plaintiffs' characterization of the document. Cal-Maine denies the allegations of the third and fourth sentences of subpart L. Cal-Maine denies all remaining allegations of subpart L.

Cal-Maine denies the allegations of the last sentence of paragraph 7. Cal-Maine denies any remaining allegations of paragraph 7.

8. Cal-Maine denies the allegations of the first two sentences of paragraph 8. As for the third, fourth, fifth, and sixth sentences of paragraph 8, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the documents referenced therein. These documents speak for themselves. Cal-Maine denies any remaining allegations in paragraph 8, including without limitation Plaintiffs' characterization of the documents as "private."

9. Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publications referenced in paragraph 9. These publications speak for themselves. Cal-Maine denies any remaining allegations in paragraph 9, including without limitation Plaintiffs' characterization of the publications.

10. Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publication referenced in paragraph 10. This publication speaks for itself. Cal-Maine denies any remaining allegations in paragraph 10, including without limitation Plaintiffs' characterization of the publication.

11.     As for the first sentence of paragraph 11, Cal-Maine admits that Plaintiffs purport to bring this action under federal law but denies that Plaintiffs are entitled to relief under applicable law.  The allegations in the second sentence of paragraph 11 state a legal conclusion to which no response is required.   To the extent a response is required, Cal-Maine admits the allegations contained in the second sentence of paragraph 11.

12.     Paragraph 12 contains legal conclusions about venue and personal jurisdiction to which no response is required.  To the extent a response is somehow required, Cal-Maine admits that it has transacted business in this district at certain points in time after 2000.  Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the paragraph about other Defendants' activities in this district and therefore denies them.  Cal-Maine denies any remaining allegations in paragraph 12.

13.     Paragraph 13 contains a legal conclusion about jurisdiction to which no response is required.  To the extent a response is somehow required, as for sub-paragraphs (a) and (b), Cal-Maine admits that it has transacted business in, and had contacts with certain states, including Pennsylvania.  Cal-Maine denies the allegations in sub-paragraph (c).  Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 about other Defendants' activities in this district and therefore denies them.

14.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14 and therefore denies them.

15.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15 and therefore denies them.

16.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 16 and therefore denies them.

17.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17 and therefore denies them.

18.     Cal-Maine admits the allegations of paragraph 18.

19.     Cal-Maine admits that 23% of the eggs it sold in 2011 were purchased from outside producers for resale and admits the remaining allegations of paragraph 19.

20.     Cal-Maine admits the allegations of the first sentence of paragraph 20.  As for the second sentence, Cal-Maine admits that Fred Adams, Jr. is the founder and former CEO of Cal-Maine but denies that he was personally a founding member of UEP.  Cal-Maine admits the allegations of the third, fourth, and fifth sentences of paragraph 20.

21.     As for the first sentence in paragraph 21, Cal-Maine admits that it owned approximately 44% of American Egg Products from 1998 to 2005 and that it acquired additional membership interests in 2005 and 2008, but denies any other allegations.  Cal-Maine admits the allegations of the second, third, and fourth sentences of paragraph 21.  Cal-Maine denies the allegations in the fifth sentence of paragraph 21.

22.     Cal-Maine denies the allegations in the first and second sentences of paragraph 22.  Cal-Maine further responds that it is a member of the UEP Certified program and has participated in some egg exports.

A.     Cal-Maine denies the allegations in the first sentence of subpart A.  As for the second sentence of subpart A, Cal-Maine admits that it voluntarily decided to amend its molting schedule in 1999 but denies all remaining allegations.

B.     Cal-Maine denies the allegations in the first sentence of subpart B.  As for the second sentence of subpart B, Cal-Maine admits that Ken Looper presented estimates regarding the potential relationship between flock size and egg pricing

and the price impact of excess supply at a November 2001 UEP meeting. Cal-Maine denies any remaining allegations in subpart B.

C.  As for subpart C, Cal-Maine admits that Fred Adams, Dolph Baker, Ken Looper, and Steve Storm attended the UEP Annual Board Meeting on October 10-11, 2002 in Savannah, Georgia and that the UEP Board of Directors carried a motion regarding the 100% rule at that meeting, but Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations about when the 100% rule was first implemented by egg producers and therefore denies them. Cal-Maine denies any remaining allegations of subpart C.

D.  Cal-Maine admits that it had voluntarily adopted the UEP Certified guidelines by 2003, but Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in subpart D and therefore denies them.

E.  Cal-Maine admits that it voluntarily decided to amend its molt and flock disposal schedule in mid-2004. Cal-Maine denies any remaining allegations in subpart E.

F.  Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of subpart F and therefore denies them. As for the second sentence, Cal-Maine admits that Dolph Baker began serving on the Executive/Export Committee in 2004. Cal-Maine denies any remaining allegations in subpart F.

G.  Cal-Maine admits the allegations of the first and second sentences of subpart G. Cal-Maine denies the allegations of the third sentence. Cal-Maine

admits the allegations of the fourth sentence. Cal-Maine denies any remaining allegations of subpart G.

H.    As for subpart H, Cal-Maine admits that it attended the November 18, 2004 Economic Summit in Atlanta, Georgia, and that it voluntarily signed a commitment in late 2004, but denies the remainder of the allegations in subpart H.

I.    Cal-Maine admits the allegations of subpart I.

J.    Cal-Maine admits the allegations of subpart J.

K.    As for subpart K, Cal-Maine admits that it was a member of USEM in October 2006. As for the remainder of the allegations of subpart K, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publication referenced therein. This document speaks for itself. Cal-Maine denies any remaining allegations in subpart K, including without limitation Plaintiffs' characterization of the publication.

L.    Cal-Maine admits the allegations of subpart L.

M.    As for the first sentence of subpart M, Cal-Maine admits that certain of its employees have served on the UEP Board of Directors and on certain UEP committees at various points in time but denies the remaining allegations. Cal-Maine admits the allegations of the second sentence. Cal-Maine denies any remaining allegations of subpart M.

23.    Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23 and therefore denies them.

24.    Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24 and therefore denies them.

25.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25 and therefore denies them.

26.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26 and subparts A-C and therefore denies them.  As for subpart D of paragraph 26, Cal-Maine admits that it attended the November 18, 2004 Economic Summit in Atlanta, Georgia, and that it voluntarily signed a commitment in late 2004.  Cal-Maine lacks knowledge or information sufficient to form a belief as to the allegations in subpart D that other producers signed written commitments, and therefore denies them.  Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of subparts E-F and therefore denies them.

27.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 27 and therefore denies them.

28.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 28 and therefore denies them.

29.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 29 and subparts A-C and therefore denies them.  Cal-Maine admits the allegations of subpart D.  Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of subpart E and therefore denies them.

30.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 30 and therefore denies them.

31.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 31 and therefore denies them.

32.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 32 and therefore denies them.

33.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 33 and therefore denies them.

34.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 34 and therefore denies them.

35.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 35 and therefore denies them.

36.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 36 and therefore denies them.

37.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 37 and therefore denies them.

38.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 38 and subparts A-D and therefore denies them.  As for subpart E, Cal-Maine admits that it attended the November 18, 2004 Economic Summit in Atlanta, Georgia, and that it voluntarily signed a commitment in late 2004, but Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations in subpart E that other producers signed written commitments, and therefore denies them.  Cal-Maine lacks knowledge or information sufficient to form a belief as to the allegations of subparts F-K and therefore denies them.

39.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 39 and therefore denies them.

40.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 40 and therefore denies them.

41.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 41 and therefore denies them.

42.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 42 and therefore denies them.

43.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 43 and therefore denies them.

44.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 44 and therefore denies them.

45.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 45 and therefore denies them.

46.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 46 and therefore denies them.

47.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 47 and subparts A and C and therefore denies them.  Cal-Maine admits the allegations of subpart B.

48.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 48 and therefore denies them.

49.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 49 and therefore denies them.

50.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 50 and therefore denies them.

51.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 51 and therefore denies them.

52.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 52 and subparts A-C and therefore denies them.  As for subpart D, Cal-Maine admits that it attended the November 18, 2004 Economic Summit in Atlanta, Georgia and that it voluntarily signed a commitment in late 2004, but Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations in subpart D that other producers signed written commitments, and therefore denies them.  Cal-Maine lacks knowledge or information sufficient to form a belief as to the allegations in subparts E-K and therefore denies them.

53.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 53 and therefore denies them.

54.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 54 and therefore denies them.

55.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 55 and therefore denies them.

56.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 56 and therefore denies them.

57.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 57 and therefore denies them.

58.     Cal-Maine admits that UEP is a Capper-Volstead Agriculture Cooperative corporation organized and existing under the laws of the State of Georgia, with its principal place of business in Alpharetta, Georgia, but Cal-Maine denies any remaining allegations in the first

sentence of paragraph 58. As for the second sentence, Cal-Maine admits that National Egg Company, Southwestern Egg Producers Association, Western Egg Company, New England Egg Marketing Association, and Midwest Egg Producers Cooperative Association were UEP's original regional cooperative members. Cal-Maine denies any remaining allegations of paragraph 58.

59. Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of paragraph 59 and therefore denies them. Cal-Maine denies the allegations in the second sentence. Cal-Maine admits the allegations of the third and fourth sentences.

60. As for paragraph 60, Cal-Maine admits that UEP administers the Certified program along with Validus Ventures, LLC and the United States Department of Agriculture, but denies that the program is accurately described in the Complaint.

61. Cal-Maine admits that USEM is a Capper-Volstead Agricultural Cooperative corporation organized under the laws of the state of Georgia but denies any remaining allegations of the first sentence of paragraph 61. As for the second sentence, Cal-Maine admits that UEP currently manages USEM under a management contract but denies any remaining allegations. Cal-Maine admits the allegations of the third sentence of paragraph 61. Cal-Maine denies that Gene Gregory is the President and CEO of UEP but otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the fourth sentence of paragraph 61 and therefore denies them.

62. Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of paragraph 62, and therefore denies them. As for the second sentence, Cal-Maine admits that Plaintiffs are selectively quoting from—and

attempting to characterize—the website referenced in paragraph 62. This website speaks for itself. Cal-Maine denies any remaining allegations in the second sentence, including without limitation Plaintiffs' characterization of the website. Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the third and fourth sentences of paragraph 62 and therefore denies them.

63. Cal-Maine denies the allegations of paragraph 63.

64. Cal-Maine admits that UEA is a nonprofit corporation organized under the laws of the District of Columbia but denies the remaining allegations of the first sentence of paragraph 64. Cal-Maine admits the allegations of the second sentence. As for the third sentence, Cal-Maine admits that UEP and UEA share a mailing address and a website and admits that UEP meetings sometimes occur in the same location as UEA meetings but denies any remaining allegations. Cal-Maine denies that Gene Gregory is the President and CEO of UEP, but Cal-Maine otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the fourth, fifth, sixth, and seventh sentences of paragraph 64, and therefore denies them. Cal-Maine denies any remaining allegations of paragraph 64.

65. Cal-Maine admits the allegations of the first sentence of paragraph 65. Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the remainder of paragraph 65, and therefore denies them.

66. Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 66 and therefore denies them.

67. Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 67 and therefore denies them.

68.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 68 and therefore denies them.

69.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 69 and therefore denies them.

70.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 70 and therefore denies them.

71.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 71 and therefore denies them.

72.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 72 and therefore denies them.

73.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 73 and therefore denies them.

74.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 74 and therefore denies them.

75.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 75 and therefore denies them.

76.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 76 and therefore denies them.

77.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 77 and therefore denies them.

78.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 78 and therefore denies them.

79.     Cal-Maine denies the allegations of paragraph 79.

80.     Cal-Maine admits that the allegations of paragraph 80 provide one description of the beginning of the egg production cycle.  Cal-Maine denies any remaining allegations in paragraph 80.

81.     Cal-Maine admits that the allegations of paragraph 81 provide one possible description of the productivity of a flock.  Cal-Maine denies any remaining allegations in paragraph 81.

82.     Cal-Maine admits that the allegations of paragraph 82 provide one description of the natural molting process.  Cal-Maine denies any remaining allegations in paragraph 82.

83.     Cal-Maine admits that the first two sentences of paragraph 83 provide one description of the artificial molting process and some possible ways a producer might induce molting.  Cal-Maine denies the allegations of the third sentence of paragraph 83.  Cal-Maine denies any remaining allegations in paragraph 83.

84.     Cal-Maine admits that the allegations of paragraph 84 set forth one possible description of the relationship between molting and egg production, but denies that molting necessarily reduces a bird's overall total production of eggs over the lifetime of the bird.  Cal-Maine denies any remaining allegations of paragraph 84.

85.     Cal-Maine admits that the allegations of paragraph 85 set forth one possible description of spent hens and one possible description of certain operations at a chicken farm and certain decisions that an egg producer faces over time.  Cal-Maine denies any remaining allegations of paragraph 85.

86.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 86 and therefore denies them.

87.     Cal-Maine admits that the allegations of paragraph 87 set forth one possible description of the shell eggs sector, table eggs, breaking eggs, and hatching eggs.  Cal-Maine denies any remaining allegations of paragraph 87.

88.     Cal-Maine admits that the allegations of paragraph 88 set forth one possible definition of egg products and description of the eggs products sector.  Cal-Maine denies any remaining allegations of paragraph 88.

89.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of in the first sentence of paragraph 89 and therefore denies them.  As for the second sentence, Cal-Maine admits the allegations therein set forth certain possible uses for egg products.  Cal-Maine denies any remaining allegations of paragraph 89.

90.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 90 and therefore denies them.

91.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 91 and therefore denies them.

92.     Cal-Maine admits that shell eggs include both typical table eggs and specialty eggs and that Plaintiffs have set forth one possible definition of specialty eggs.  Cal-Maine denies any remaining allegations of paragraph 92.

93.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 93 and therefore denies them.

94.     As for the first sentence of paragraph 94, Cal-Maine admits the common-sense notion that the forces of supply and demand affect shell eggs and egg products.  As for the second sentence, Cal-Maine admits that breaking eggs are a key ingredient of egg products and that feed costs are an important cost component for shell eggs, but denies the remaining

allegations.  Cal-Maine admits the allegations of the third sentence of paragraph 94.  Cal-Maine denies any remaining allegations of paragraph 94.

95.     Cal-Maine denies the allegations of the first sentence of paragraph 95.   As for the second sentence, Cal-Maine admits that it sells shell eggs and a small amount of egg products, but lacks knowledge or information sufficient to form a belief regarding the allegations about the business practices of other producers and therefore denies them.   Cal-Maine denies the allegations of the third and fourth sentences of paragraph 95.  As for the fifth sentence, Cal-Maine admits that the 100% Rule under the UEP Certified Program applies to egg production regardless of whether those eggs are sold as shell eggs or used in making egg products.  As for the sixth sentence, Cal-Maine admits that UEP rejected proposals to modify the 100% Rule in early 2003.  Cal-Maine denies any remaining allegations in paragraph 95.

96.     Cal-Maine denies the allegations of paragraph 96.

97.     As for paragraph 97, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the document referenced therein.  This document speaks for itself.  Cal-Maine denies any remaining allegations of paragraph 97, including without limitation Plaintiffs' characterization of the document.

98.     Cal-Maine denies the allegations of the first sentence of paragraph 98.  As for the second sentence, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—an unspecified document.  This document speaks for itself.  Cal-Maine denies any remaining allegations in the second sentence of paragraph 98, including without limitation Plaintiffs' characterization of the document.

99.     As for the first sentence of paragraph 99, Cal-Maine admits that the demand for eggs is relatively inelastic, depending on the price, when compared to other consumer products,

but Cal-Maine denies any remaining allegations. Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence and therefore denies them. As for the third sentence, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publication referenced therein. This publication speaks for itself. Cal-Maine denies any remaining allegations in the third sentence of paragraph 99, including without limitation Plaintiffs' characterization of the publication.

100.    Cal-Maine denies the allegations of the first sentence of paragraph 100. As for the second sentence, Cal-Maine denies that the Plaintiffs are accurately quoting from and characterizing the publication referenced therein. The publication speaks for itself. As for the third, fourth, and fifth sentences, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publications referenced therein. The publications speak for themselves. Cal-Maine denies the remainder of the allegations in paragraph 100, including without limitation Plaintiffs' characterization of the publications.

101.    Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publications referenced in paragraph 101. The publications speak for themselves. Cal-Maine denies the remainder of the allegations in paragraph 101, including without limitation Plaintiffs' characterization of the publications.

102.    As paragraph 102, Cal-Maine admits that it operates at several levels of the egg production industry, including feed, chick hatching, pullet growing, egg processing, and marketing, and that it hatches most of its layer stock. Further, Cal-Maine admits that some other egg producers also operate at several levels of the egg production industry, but otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations about other companies and therefore denies them.

103.     Cal-Maine denies the allegations of paragraph 103.

104.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 104 and therefore denies them.

105.     Cal-Maine admits that in 2010, Cal-Maine had 28,000,000 layers in production, which comprised approximately 8.24% of layers located in the United States, but Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations of paragraph 105 and therefore denies them.

106.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 106 and therefore denies them.

107.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 107 and therefore denies them.

108.     Cal-Maine denies the allegations of paragraph 108.

109.     Cal-Maine denies the allegations of paragraph 109.

110.     Cal-Maine admits that it sells and ships eggs outside of the states where its eggs are produced, but lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 110 about other producers, and therefore denies them.

111.     Cal-Maine admits that it has generally used raw material, equipment, and supplies in connection with its production and sale of eggs that have moved in interstate commerce, but lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 111 about other producers, and therefore denies them.

112.     Cal-Maine admits that it has exchanged information, correspondence, and money across state lines from time to time with certain other defendants, but paragraph 112 is so general

and vague that Cal-Maine must respond that it lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies them.

113.    As for supposed actions of the Plaintiffs, Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 113, and therefore denies them.  Cal-Maine admits that other entities have paid for eggs through interstate commerce.

114.    Cal-Maine denies the allegations of paragraph 114.

115.    Cal-Maine admits the allegations in the first sentence of paragraph 115.  Cal-Maine denies the allegations in the second sentence of paragraph 115.

116.    Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the document referenced in paragraph 116.  The publication speaks for itself.  Cal-Maine denies the remainder of the allegations in paragraph 116, including without limitation Plaintiffs' characterization of Don Bell as a "UEP economist."

117.    As for paragraph 117, Plaintiffs appear to be selectively quoting from—and attempting to characterize—an unidentified document.  If so, then the document speaks for itself.  Cal-Maine denies any remaining allegations in paragraph 117, including without limitation Plaintiffs' characterization of the document.

118.    Cal-Maine denies the allegations of paragraph 118.

119.    Cal-Maine denies the allegations of paragraph 119.

120.    As for the first sentence of paragraph 120, Cal-Maine admits that in 2000, UEP published the first version of its animal welfare guidelines but denies that these guidelines were intended to control the egg production process.  Cal-Maine denies the allegations of the second sentence of paragraph 120.

121.    Cal-Maine admits the allegations in the first sentence of paragraph 121. Cal-Maine denies the allegations of the second sentence.  As for the third sentence, Plaintiffs appear to be selectively quoting from—and attempting to characterize—an unidentified document.  If so, then the document speaks for itself.  Cal-Maine denies any remaining allegations paragraph 121, including without limitation Plaintiffs' characterization of the document and of the UEP animal welfare guidelines.

122.    As for the first and second sentences of paragraph 122, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publication referenced therein.  The publication speaks for itself.  Cal-Maine denies the remainder of the allegations in the first and second sentences, including without limitation Plaintiffs' characterization of the publication.  Cal-Maine denies the allegations of the third sentence of paragraph 122.  Cal-Maine denies any remaining allegations of paragraph 122.

123.    Cal-Maine admits that the first version of the UEP animal welfare guidelines included a minimum amount of space per-chicken but denies all remaining allegations in the first sentence of paragraph 123.  Cal-Maine denies the allegations in the second and third sentences. Cal-Maine denies any remaining allegations of paragraph 123.

124.    Cal-Maine admits the first sentence of paragraph 124.  As for the second sentence, Cal-Maine admits that in response to customer demands for a faster phase-in schedule, UEP amended its animal welfare standards in 2001 to cut the implementation time to six years, but denies the remainder of the allegations in the second sentence, including without limitation that this modification was made to hasten the supply control effects of the standards.

125.    As for the first and second sentences of paragraph 125, Cal-Maine admits that the UEP Board of Directors carried a motion regarding the so-called 100% rule at the October 10-11,

24

2002 meeting and that the so-called 100% rule required a producer to maintain 100% of its production in conformity with the UEP Certified Program in order to market its eggs as "UEP Certified" eggs, but Cal-Maine denies any remaining allegations. In the third sentence of paragraph 125, Plaintiffs appear to be selectively quoting from—and attempting to characterize—an unidentified document. If so, then the document speaks for itself. Cal-Maine denies any remaining allegations in the third sentence, including without limitation Plaintiffs' characterization of the document. Cal-Maine denies the allegations in the fourth sentence of paragraph 125. Cal-Maine denies any remaining allegations in paragraph 125.

126. Cal-Maine denies the allegations of the first sentence of paragraph 126. As for the second and third sentences of paragraph 126, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the document referenced therein. The document speaks for itself. Cal-Maine denies the remainder of the allegations in the second and third sentences, including without limitation Plaintiffs' characterization of the document.

127. Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 127 and therefore denies them. As for the second, third, and fourth sentences, Cal-Maine admits that Plaintiffs appear to be selectively quoting from—and attempting to characterize—unspecified documents. The documents speak for themselves. Cal-Maine denies the remainder of the allegations in the second, third, and fourth sentences, including without limitation Plaintiffs' characterization of the documents. Cal-Maine admits the allegations in the fifth sentence.

128. Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first and second sentences of paragraph 128 and therefore denies them. As for the third sentence, Cal-Maine admits that Plaintiffs are selectively quoting from—

and attempting to characterize—the publication referenced therein. The publication speaks for itself. Cal-Maine denies the remainder of the allegations in the third sentence, including without limitation Plaintiffs' characterization of the publication.

129. Cal-Maine admits the allegations of the first and second sentences of paragraph 129. As for third, fourth, fifth, and sixth sentences of paragraph 129, Plaintiffs appear to be selectively quoting from—and attempting to characterize—an unidentified document. If so, then the document speaks for itself. Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third through the sixth sentences and therefore denies them.

130. As for the first sentence of paragraph 130, admits that Plaintiffs are selectively quoting from—and attempting to characterize—the document referenced therein. The document speaks for itself. Cal-Maine denies the remainder of the allegations in the first sentence, including without limitation Plaintiffs' characterization of the document. Cal-Maine denies the allegations of the second sentence of paragraph 130. As for the third sentence, Plaintiffs appear to be selectively quoting from—and attempting to characterize—an unidentified document. If so, then the document speaks for itself. Cal-Maine denies any remaining allegations in the third sentence, including without limitation Plaintiffs' characterization of the document.

131. As for the first sentence of paragraph 131, Cal-Maine admits that UEP, not surprisingly, ensured that producers marketing their eggs as Certified were complying with the UEP Certified guidelines through audits conducted by independent third parties, but denies all remaining allegations therein. Cal-Maine denies the allegations in the second and third sentences. As for the fourth sentence, Cal-Maine admits that independent third parties conducted regular, thorough audits to ensure that producers marketing their eggs as Certified were

complying with the UEP Certified guidelines. As for the fifth sentence, Plaintiffs appear to be referring to—and attempting to characterize—the publication referenced therein. The publication speaks for itself. Cal-Maine denies the remainder of the allegations in the fifth sentence, including without limitation Plaintiffs' characterization of the publication.

132. Cal-Maine admits the allegations in the first sentence of paragraph 132, although it lacks knowledge or information sufficient to form a belief as to when those compliance reports began. Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations in second sentence of paragraph 132 and therefore denies them. Cal-Maine denies the allegations in the third sentence.

133. Cal-Maine denies the allegations of the first two sentences of paragraph 133. As for the remainder of the allegations in paragraph 133, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publication referenced therein. The publication speaks for itself. Cal-Maine denies the remainder of the allegations in paragraph 133, including without limitation Plaintiffs' characterization of the publication.

134. Cal-Maine denies the allegations of the first sentence of paragraph 134. As for the second sentence, Cal-Maine admits that minimum floor space allowances are an element of the UEP Certified Program guidelines, but otherwise denies the allegations of the second sentence of paragraph 134.

135. Cal-Maine denies the allegations of the first and second sentences of paragraph 135. In the third sentence, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the guidelines referenced therein. The document speaks for itself. Cal-Maine denies any remaining allegations in the third sentence, including without limitation Plaintiffs' characterization of the document. Cal-Maine admits the allegations in the fourth

sentence of paragraph 135. Cal-Maine denies the allegations in the fifth and sixth sentences of paragraph 135. As for the seventh sentence, Cal-Maine admits that one version of the UEP Certified Program prohibited backfilling and that Plaintiffs give one partial, possible definition of backfilling, but denies all other allegations. Cal-Maine denies the allegations in the eighth sentence of paragraph 135.

136. Cal-Maine denies the allegations in the first two sentences of paragraph 136. As for the third sentence, Cal-Maine admits that since January 1, 2007, only molting programs that do not require feed withdrawal are acceptable under the UEP Certified guidelines but denies all remaining allegations.

137. Cal-Maine admits the allegations of paragraph 137.

138. Cal-Maine denies the allegations of the first sentence of paragraph 138 as for itself but lacks knowledge or information sufficient to form a belief as to the truth of these allegations as they may relate to other parties and therefore denies them. As for the remainder of the allegations in all other sentences of paragraph 138, Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein and therefore denies them.

139. Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 139 and therefore denies them.

140. As for the first and second sentence of paragraph 140, Cal-Maine admits that more U.S. shell eggs are purchased by domestic purchasers than by foreign purchasers, but Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations therein and therefore denies them. Cal-Maine denies the allegations of the third and fourth sentences of paragraph 140.

141.     Cal-Maine denies the allegations of the first sentence of paragraph 141.  Cal-Maine admits the allegations of the second and third sentences of paragraph 141.  Cal-Maine denies the allegations of the fourth and fifth sentences.  As for the sixth sentence, Plaintiffs appear to be selectively quoting from—and attempting to characterize—an unidentified document.  If so, then the document speaks for itself.  Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations in sixth sentence and therefore denies them.  Cal-Maine denies any remaining allegations in paragraph 141.

142.     Cal-Maine denies the allegations of the first and second sentences of paragraph 142.  As for the third sentence and the remainder of paragraph 142, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the document referenced therein.  The document speaks for itself.  Cal-Maine denies the remainder of the allegations in the third sentence and the remainder of this paragraph, including without limitation Plaintiffs' characterization of the document.

143.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 143 and therefore denies them.

144.     Cal-Maine admits that on just a few occasions between 2000 and 2008, USEM members voted to accept export orders for shell eggs, and a potential consequence of selling shell eggs to buyers outside the United States is a reduction in an oversupply of shells eggs in the United States.  Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations about the exact volume or timing of the exports listed in subparts A-E and therefore denies them.  As for the third and fourth sentences in subpart D, Plaintiffs appear to be selectively quoting from—and attempting to characterize—documents.  If so, then the documents speak for themselves.  Cal-Maine denies the remainder of the allegations in subpart

Case: 1:11-cv-08808 Document #: 73-26 Filed: 01/16/20 Page 30 of 56 PageID #:1681

D, including without limitation Plaintiffs' characterization of the documents. Cal-Maine denies the remaining allegations of paragraph 144.

145.    Cal-Maine admits that a potential consequence of selling shell eggs to buyers outside the United States is a reduction in an oversupply of shells eggs in the United States, but otherwise denies the allegations of the first sentence of paragraph 145.  As for the second and third sentences of paragraph 145, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publications referenced therein, although the November 17th internal newsletter was dated November 17, 2006.  The publications speak for themselves.  Cal-Maine denies the remainder of the allegations in paragraph 145, including without limitation Plaintiffs' characterization of the documents.

146.    Cal-Maine denies the allegations of the first sentence of paragraph 146.  As for the second and third sentence of paragraph 146, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publications referenced therein.  The publications speak for themselves.  Cal-Maine denies the remainder of the allegations in paragraph 146, including without limitation Plaintiffs' characterization of the documents.

147.    Cal-Maine denies the allegations of the first sentence of paragraph 147.  As for the second sentence, Cal-Maine admits that Marketing Committee passed a motion in 1999 to ask UEP members to voluntarily molt 5% of their flocks and cut back 5% of their flock size. Cal-Maine admits the allegations of the third sentence of paragraph 147.

148.    Cal-Maine denies the allegations of the first sentence of paragraph 148.  As for the second sentence, Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein and therefore denies them.  Cal-Maine admits the allegations of the third sentence of paragraph 148.

149.     As for paragraph 149, Plaintiffs appear to be selectively quoting from—and attempting to characterize—unidentified documents.  If so, then the documents speak for themselves.  Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in paragraph 149 and therefore denies them.

150.     Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 150 and therefore denies them.

151.     As for paragraph 151, Plaintiffs appear to be selectively quoting from—and attempting to characterize—an unidentified document.  If so, then the document speaks for itself.  Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in paragraph 151 and therefore denies them.

152.     Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publication referenced in paragraph 152.  The publication speaks for itself.  Cal-Maine denies the remainder of the allegations paragraph 152, including without limitation Plaintiffs' characterization of the publication.

153.     Cal-Maine denies that Plaintiffs are accurately quoting from the document referenced in paragraph 153.  The document speaks for itself.  Cal-Maine denies the remainder of the allegations paragraph 153.

154.     Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publication referenced in paragraph 154.  The publication speaks for itself.  As for the third sentence in paragraph 154, Cal-Maine lacks knowledge or information sufficient of form a belief as to the truth of the allegations therein and therefore denies them.  Cal-Maine denies the remainder of the allegations paragraph 154, including without limitation Plaintiffs' characterization of the publication.

155.    As for paragraph 155, Plaintiffs appear to be selectively quoting from—and attempting to characterize—an unidentified document.  If so, then the document speaks for itself.  Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in paragraph 155 and therefore denies them.

156.    As for the first sentence of paragraph 156, Plaintiffs appear to be selectively quoting from—and attempting to characterize—an unidentified document.  If so, then the document speaks for itself.  Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence and therefore denies them.  Cal-Maine denies the allegations of the third sentence of paragraph 156.

157.    Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publication referenced in paragraph 157.  The publication speaks for itself.  Cal-Maine denies the remainder of the allegations paragraph 157, including without limitation Plaintiffs' characterization of the publication.

158.    Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publication referenced in paragraph 158.  The publication speaks for itself.  Cal-Maine denies the remainder of the allegations paragraph 158, including without limitation Plaintiffs' characterization of the publication.

159.    Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publication referenced in paragraph 159.  This document speaks for itself.  Cal-Maine denies any remaining allegations, including without limitation Plaintiffs' characterization of the publication.

160.    As for paragraph 160, Plaintiffs appear to be selectively quoting from—and attempting to characterize—an unidentified document.  If so, then the document speaks for itself.

Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in paragraph 160 and therefore denies them.

161.    Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the document referenced in paragraph 161.  This document speaks for itself.  Cal-Maine denies any remaining allegations, including without limitation Plaintiffs' characterization of the document.

162.    Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publication referenced in paragraph 162.  This document speaks for itself.  Cal-Maine denies any remaining allegations, including without limitation Plaintiffs' characterization of the publication.

163.    Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publication referenced in paragraph 163.  This document speaks for itself.  Cal-Maine denies any remaining allegations, including without limitation Plaintiffs' characterization of the publication.

164.    Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publication referenced in paragraph 164.  The publication speaks for itself.  Cal-Maine denies the remainder of the allegations in paragraph 164, including without limitation Plaintiffs' characterization of the publication.

165.    Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publication referenced in paragraph 165.  The publication speaks for itself.  Cal-Maine denies the remainder of the allegations in paragraph 165, including without limitation Plaintiffs' characterization of the publication.

166.    Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publication referenced in paragraph 166.  This document speaks for itself.  Cal-Maine denies any remaining allegations, including without limitation Plaintiffs' characterization of the publication.

167.    Cal-Maine denies the allegations of paragraph 167.

168.    Cal-Maine denies the allegations of the first sentence of paragraph 168.  As for the remainder of paragraph 168, Plaintiffs appear to be selectively quoting from—and attempting to characterize—an unidentified document.  If so, then the document speaks for itself.  Cal-Maine denies any remaining allegations, including without limitation Plaintiffs' characterization of the document.  Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the remainder of paragraph 168 and therefore denies them.

169.    Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publication referenced in paragraph 169.  The publication speaks for itself.  Cal-Maine denies the remainder of the allegations in paragraph 169, including without limitation Plaintiffs' characterization of the publication.

170.    Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publication referenced in paragraph 170.  The publication speaks for itself.  Cal-Maine denies the remainder of the allegations in paragraph 170, including without limitation Plaintiffs' characterization of the publication.

171.    Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publication referenced in paragraph 171.  The publication speaks for itself.  Cal-Maine denies the remainder of the allegations in paragraph 171, including without limitation Plaintiffs' characterization of the publication.

172.    Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publication referenced in paragraph 172.  The publication speaks for itself. Cal-Maine denies the remainder of the allegations in paragraph 172, including without limitation Plaintiffs' characterization of the publication.

173.    Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publication referenced in paragraph 173.  The publication speaks for itself. Cal-Maine denies the remainder of the allegations in paragraph 173, including without limitation Plaintiffs' characterization of the publication.

174.    Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the publication referenced in paragraph 174.  The publication speaks for itself. Cal-Maine denies the remainder of the allegations paragraph 174, including without limitation Plaintiffs' characterization of the publication.

175.    Cal-Maine denies the allegations of the first sentence of paragraph 175.  As for the second sentence, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the statement referenced in paragraph 175.  This statement speaks for itself.  Cal-Maine denies any remaining allegations, including without limitation Plaintiffs' characterization of the statement.

176.    Paragraph 176 contains legal conclusions and Plaintiffs' spin on the law to which no response is required.   To the extent a response is required, Cal-Maine denies the allegations in paragraph 176.

177.    As for the first sentence of paragraph 177, Cal-Maine admits that it is a producer of shell eggs and that it believes UEP has procedures in place to ensure that all of its members are producers of agricultural products, but Cal-Maine does not know the details of all UEP

members' operations and thus lacks knowledge or information sufficient to form a belief as to the truth of the allegations about other UEP members in the first sentence of paragraph 177 and therefore denies them. The allegations in the second sentence of paragraph 177 state a legal conclusion to which no response is required. To the extent a response is required, Cal-Maine denies the allegations contained in the second sentence of paragraph 177.

178.    As for the first sentence of paragraph 178, Cal-Maine admits that it operates at different levels of the egg production chain and that some other egg producer members of UEP do as well, but it lacks knowledge or information sufficient to form a belief as to the truth of the allegations about other, unnamed UEP members and therefore denies them. The second, third, fourth, and fifth sentences of paragraph 178 state legal conclusions to which no response is required. To the extent a response is required, Cal-Maine denies the allegations contained in the second through fifth sentences of paragraph 178.

179.    Cal-Maine denies the allegations of the first and second sentences of paragraph 179. Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third, fourth, and fifth sentences of paragraph 179 and therefore denies them. As for the sixth sentence of paragraph 179, Cal-Maine admits that in 2009 it purchased  on the spot market or from third-party producers 23% of the eggs it sold. Cal-Maine admits the allegations in the seventh and eighth sentences of paragraph 179. The ninth sentence of paragraph 179 states a legal conclusion to which no response is required. To the extent a response is required, Cal-Maine denies the allegations contained therein. Cal-Maine denies any remaining allegations in paragraph 179.

180. Paragraph 180 contains legal conclusions and Plaintiffs' spin on the law to which no response is required. To the extent a response is required, Cal-Maine denies the allegations in paragraph 180.

181. Paragraph 181 contains legal conclusions and Plaintiffs' spin on the law to which no response is required. To the extent a response is required, Cal-Maine denies the allegations in paragraph 181.

182. Paragraph 182 contains legal conclusions and Plaintiffs' spin on the law to which no response is required. To the extent a response is required, Cal-Maine denies the allegations in paragraph 182.

183. Paragraph 183 contains legal conclusions and Plaintiffs' spin on the law to which no response is required. To the extent a response is required, Cal-Maine denies the allegations in paragraph 183.

184. Paragraph 184 contains legal conclusions and Plaintiffs' spin on the law to which no response is required. To the extent a response is required, Cal-Maine denies the allegations in paragraph 184.

185. Paragraph 185 contains legal conclusions and Plaintiffs' spin on the law to which no response is required. To the extent a response is required, Cal-Maine denies the allegations in paragraph 185.

186. As for the first sentence in paragraph 186, Cal-Maine denies that it engaged in a conspiracy, states that it had legitimate business justifications for its conduct, and denies any remaining allegations. As for the second sentence, Plaintiffs appear to be selectively quoting from—and attempting to characterize—an unidentified document. If so, then the document speaks for itself. Cal-Maine denies any additional allegations in the second sentence, including

without limitation Plaintiffs' characterization of the document. Cal-Maine denies the allegations in the third and fourth sentences.

187.  As for paragraph 187, Cal-Maine denies that it engaged in any of the categories of misconduct listed in the paragraph. Cal-Maine further answers that Paragraph 187 contains legal conclusions and Plaintiffs' spin on the law to which no response is required. To the extent a response is required, Cal-Maine denies the allegations in paragraph 187. Cal-Maine denies any remaining allegations in paragraph 187.

188.  Cal-Maine denies the allegations of the first sentence of paragraph 188. The second sentence of paragraph 188 states a legal conclusion to which no response is required. To the extent a response is required, Cal-Maine denies the allegations contained therein. Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third, fourth, and fifth sentences of paragraph 188 therein and therefore denies them.

189.  Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 189 and therefore denies them.

190.  Paragraph 190 contains legal conclusions and Plaintiffs' spin on the law to which no response is required. To the extent a response is required, Cal-Maine denies the allegations in paragraph 190.

191.  Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 191 and therefore denies them.

192.  The first sentence of paragraph 192 state a legal conclusion to which no response is required. To the extent a response is required, Cal-Maine denies the allegations in the first sentence. Cal-Maine denies the allegations of the second sentence.

193.    Cal-Maine denies the allegations of the first sentence of paragraph 193.  As for the second sentence, Cal-Maine admits that UEP does not wash, break, pasteurize, package, store or distribute its members' eggs but denies the remaining allegations.  Cal-Maine denies the allegations in the third sentence.

194.    Cal-Maine denies the allegations of paragraph 194.

195.    Cal-Maine denies the allegations of paragraph 195.

196.    Cal-Maine denies the allegations of paragraph 196.

197.    Cal-Maine denies the allegations of paragraph 197.

198.    The first sentence of paragraph 198 contains a legal conclusion to which no response is required.  To the extent a response is required, Cal-Maine denies the allegations therein, and further responds that denies that it participated in any conspiracy and further states that Plaintiffs knew, or would have known through the exercise of due diligence, the facts supposedly supporting their supposed claims because those facts were publicly revealed.  Cal-Maine denies the allegations of the second, third, and fourth sentences of paragraph 198.  As for the fifth sentence, Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the assertions regarding Plaintiffs' knowledge, and therefore denies them.  Cal-Maine admits that September 23, 2008 was within four years of the date on which Plaintiffs filed this action.  Cal-Maine denies all remaining allegation in the fifth sentence.  Cal-Maine denies the allegations of the sixth sentence.  As for the seventh sentence, Cal-Maine admits that the Direct Purchaser Plaintiffs, Land O' Lakes, Moark, and Norco Ranch have publicly announced a settlement, but otherwise, Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the seventh sentence and therefore denies them.  As for the eight sentence, Cal-Maine admits that it and other Defendants have produced documents in this

litigation, but otherwise denies the allegations therein.  The ninth sentence contains a legal

conclusion to which no response is required.  To the extent a response is required, Cal-Maine

denies the allegations therein.  As for subparts A, B, and C of paragraph 198, Cal-Maine denies

the allegations therein.  As for subpart D, Cal-Maine lacks knowledge or information sufficient

to form a belief as to the truth of the allegations therein related to the alleged actions of another

Defendant, and therefore denies them.  Cal-Maine denies all remaining allegations in paragraph

198.

    199.    Cal-Maine denies the allegations of the first sentence of paragraph 199.

        A.    As for subpart A, Cal-Maine admits that it truthfully stated to its

customers that it decided to follow the UEP animal welfare guidelines

based upon animal welfare concerns and customer demands, denies that it

has any co-conspirators, but lacks knowledge or information sufficient to

form a belief as to the truth of the allegations about other parties and

therefore denies them.  As for the second sentence of subpart A, Cal-

Maine admits that the Guidelines are optional and that UEP members

could decide to adopt or decline, but otherwise denies the allegations

therein.  Cal-Maine admits the allegations in the third sentence of subpart

A.  Cal-Maine denies the allegations in the fourth, fifth, and sixth

sentences of subpart A.  As for the seventh sentence, Plaintiffs appear to

be selectively quoting from—and attempting to characterize—an

unidentified document.  If so, then the document speaks for itself.  Cal-

Maine denies any remaining allegations in the seventh sentence, including

without limitation Plaintiffs' characterization of the document.  Cal-Maine

denies the allegations of the eighth sentence of subpart A of paragraph 199.

    B.    Cal-Maine denies the allegations of subparts B of paragraph 199.

    C.    Cal-Maine denies the allegations of subparts C of paragraph 199.

200.    The first sentence of paragraph 200 contains a legal conclusion to which no response is required.  To the extent a response is required, Cal-Maine denies the allegations therein.  As for the second sentence, Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein regarding Plaintiffs and other egg purchasers' conduct, and therefore denies them.  Cal-Maine denies the allegations of the third sentence of paragraph 200.  Cal-Maine denies all remaining allegations in paragraph 200.

201.    Cal-Maine denies the allegations of the first sentence of paragraph 201.  As for the second sentence, Cal-Maine admits that Plaintiffs appear to be selectively quoting from—and attempting to characterize—an unidentified document.  If so, then the document speaks for itself.  Cal-Maine denies any remaining allegations in the second sentence, including without limitation Plaintiffs' characterization of the document.

202.    Cal-Maine denies the allegations of the first sentence of paragraph 202.  The second sentence contains a legal conclusion to which no response is required.  To the extent a response is required, Cal-Maine denies the allegations therein.  Cal-Maine denies the allegations in the third and fourth sentences of paragraph 202.

    A.    As for subpart A, Cal-Maine denies the allegations of the first, second, and third sentences therein.  As for the fourth sentence of subpart A, Plaintiffs appear to be selectively quoting from—and attempting to characterize—an unidentified document.  If so, then the document speaks for itself.  Cal-

Maine denies any remaining allegations in the fourth sentence of subpart A, including without limitation Plaintiffs' characterization of the document.

B.  Cal-Maine denies the allegations in subpart B of paragraph 202.

C.  As for subpart C, Cal-Maine denies the allegations in the first sentence. As for the second sentence in subpart C, Cal-Maine admits that attendance at some UEP meetings not surprisingly was restricted to UEP members, but otherwise denies the allegations therein.

D.  As for subpart D, Cal-Maine admits that UEP hired a public relations firm to help truthfully advertise the many virtues of the UEP Certified Program but otherwise denies all allegations.

E.  As for the first sentence of subpart E of paragraph 202, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the document referenced therein.  This document speaks for itself.  Cal-Maine denies any remaining allegations in the first sentence of subpart E, including without limitation Plaintiffs' characterization of the document.  Cal-Maine denies the allegations of the second sentence of subpart E.

F.  As for subpart F, Cal-Maine denies the first, second, and third sentences therein.

(1)  As for subpart (1) of subpart F, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the document referenced therein.  This document speaks for itself.  Cal-Maine

denies any remaining allegations in subpart (1), including without limitation Plaintiffs' characterization of the document.

(2)     As for subpart (2) of subpart F, Cal-Maine admits that in 2001, UEP (which had earlier proposed a twelve-year phase-in schedule) responded to customer pressure for an accelerated phase-in schedule and decided to phase in the Certified Program's cage-space requirements over six years.  As for the remainder of subpart (2) of subpart F, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the document referenced therein.  This document speaks for itself.  Cal-Maine denies any remaining allegations in subpart (2) of subpart F, including without limitation Plaintiffs' characterization of the document.

(3)     As for subpart (3) of subpart F, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the document referenced therein.  This document speaks for itself.  Cal-Maine denies any remaining allegations in subpart (3) of subpart F, including without limitation Plaintiffs' characterization of the document.

(4)     As for the first sentence of subpart (4) of subpart F, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the document referenced therein.  This document speaks for itself.  Cal-Maine denies any remaining allegations in the first sentence of subpart (4) of subpart F, including without limitation Plaintiffs'

characterization of the document. Cal-Maine denies the remainder of subpart (4) of subpart F.

(5)     As for the first sentence of subpart (5) of subpart F, Cal-Maine admits that the Scientific Advisory Committee assisted UEP in developing the Certified Program Animal Welfare Guidelines and that UEP truthfully stated as much. As for the final two sentences in subpart (5) of subpart F and the document quoted and referred to therein, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize— the document. This document speaks for itself. Cal-Maine denies any remaining allegations in the final two sentences of subpart (5) of subpart F, including without limitation Plaintiffs' characterization of the document.

(6)     As for subpart (6) of subpart F, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the document referenced therein. This document speaks for itself. Cal-Maine denies any remaining allegations in subpart (6) of subpart F, including without limitation Plaintiffs' characterization of the document.

(7)     As for subpart (7) of subpart F, Cal-Maine admits the allegations in the first sentence. As for the remainder of subpart (7) of subpart F, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—two documents referenced therein. Those documents speak for themselves. Cal-Maine denies any remaining allegations in

subpart (7) of subpart F, including without limitation Plaintiffs' characterization of the documents.

G.      As for subpart G of paragraph 202, Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein with respect to the opinions of other UEP members, and therefore denies them.  Cal-Maine denies all remaining allegations in subpart G.

H.      Cal-Maine denies all allegations in subpart H of paragraph 202.

I.      As for the first and second sentences of subpart I, Cal-Maine denies the allegations therein.  As for the third and fourth sentences of subpart I, and the text quoted therein, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the document referenced therein.  This document speaks for itself.  Cal-Maine denies any remaining allegations in the third and fourth sentences in subpart I, including without limitation Plaintiffs' characterization of the document.  As for the final two sentences of subpart I, Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein and therefore denies them.

J.      As for subparts J of paragraph 202, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the document referenced therein.  This document speaks for itself.  Cal-Maine denies any remaining allegations in subparts J, including without limitation Plaintiffs' characterization of the document referenced therein.

Case: 1:11-cv-08808-GEM-T Document 39 Filed 01/30/14 Page 46 of 56 PageID 38

K.      As for subparts K of paragraph 202, Cal-Maine admits that Plaintiffs are selectively quoting from—and attempting to characterize—the document referenced therein.  This document speaks for itself.  Cal-Maine denies any remaining allegations in subpart K, including without limitation Plaintiffs' characterization of the document referenced therein.

L.      Cal-Maine denies the allegations in subpart L of paragraph 202.

203.    Cal-Maine denies the allegations in the first sentence of paragraph 203.  As for the second sentence, Cal-Maine states that it did not agree, and knows of no UEP member who agreed, not to replace laying hens displaced by the UEP animal welfare guidelines, denies Plaintiffs' description of exports accepted by USEM members, and denies all other allegations. As for the third sentence, Plaintiffs are apparently referring to a legal opinion.  If that opinion is contained in a document, then that document speaks for itself, and Cal-Maine denies any remaining allegations in paragraph 203, including without limitation Plaintiffs' characterization of the document.

204.    Cal-Maine denies the allegations in the first and second sentences of paragraph 204.  Cal-Maine admits the allegations in the third, fourth, and fifth sentences.  Cal-Maine further admits that this pressure from animal activists, along with pressure from several Plaintiffs in this MDL and their trade associations, regarding animal welfare, prompted Cal-Maine to improve the welfare of its hens.  Cal-Maine denies the allegations in the sixth sentence.  Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' actions as alleged in the seventh and eighth sentence of paragraph 204, but Cal-Maine further responds that its customers, including several Plaintiffs in this MDL, demanded that UEP and its members swiftly implement animal welfare standards and required

(and still require to this day) that all eggs they purchased and still purchase be produced in conformity with UEP's Animal Welfare Guidelines. As for the ninth sentence, Cal-Maine admits that it was aware that the major purchasers of eggs and egg products, including Plaintiffs, were very focused on animal welfare concerns, but otherwise denies the allegations therein.

205. Cal-Maine denies the allegations in the first sentence of paragraph 205 because its public statements about the UEP animal welfare guidelines were not false. As for the second sentence, Cal-Maine admits that its statements about the UEP animal welfare guidelines were truthful, plausible, and credible, and Cal-Maine admits that UEP used the recommendations of an independent scientific advisory committee to develop the Animal Welfare Guidelines. Cal-Maine lacks knowledge and information sufficient to form a belief as to the truth of the allegations regarding other Defendants' actions and therefore denies them. Cal-Maine denies the remainder of the allegations in the second sentence of paragraph 205.

206. Cal-Maine denies the allegations of paragraph 206.

207. Cal-Maine denies the allegations of the first sentence of paragraph 207. As for subpart A, Cal-Maine denies the existence of any conspiracy and denies that Plaintiffs could not have asserted their claims sooner; the facts supposedly supporting their claims were publicly known long before September of 2008, as shown by the many public sources cited in the complaints in this MDL. Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations in subpart B, and therefore denies them. Cal-Maine denies the allegations in subparts C, D, and E of paragraph 207 and further answers that the facts supposedly supporting Plaintiffs' claims were publicly known long before September of 2008.

208. Cal-Maine denies the allegations in the first and second sentences of paragraph 208. As for the third and fourth sentences, Cal-Maine responds that Plaintiffs are

mischaracterizing the *Wall Street Journal* article and the one government investigation (into only three companies, not Cal-Maine, in the egg products sector) mentioned in that article, an investigation that later closed with no action taken against any company or person. In addition, Cal-Maine asserts that the article speaks for itself, and Cal-Maine denies any remaining allegations in the third and fourth sentences, including without limitation Plaintiffs' characterization of the article. As for the fifth sentence, Cal-Maine responds that a government agency had not investigated Cal-Maine for possible antitrust violations prior to September of 2008, Cal-Maine did not agree not to provide additional cage capacity for hens displaced by the UEP animal welfare guidelines, and Cal-Maine lacks knowledge or information sufficient to form a belief as to truth of the allegations about what other Defendants may have said to Plaintiffs and therefore denies them. Cal-Maine denies all remaining allegations in paragraph 208.

209. Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 209 regarding another Defendant, and therefore denies them. Further, Plaintiffs appear to be selectively quoting from—and attempting to characterize—an unidentified document. If so, then the document speaks for itself. Cal-Maine denies any remaining allegations in paragraph 209.

210. Cal-Maine admits that Plaintiffs claim to be members of the putative class of direct purchaser plaintiffs that certain plaintiffs alleged in complaints filed shortly after September 23, 2008.

211. Cal-Maine denies that it engaged in a conspiracy, but Cal-Maine lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 211, and therefore denies them.

212.    Paragraph 212 contains a series of legal conclusions to which no response is required.  To the extent a response is required, Cal-Maine denies the allegations therein.

213.    Cal-Maine lacks knowledge or information sufficient to form a belief as to the allegations of the first sentence of paragraph 213, and therefore denies them.  Cal-Maine denies the allegations of the second and third sentences of paragraph 213.

214.    Cal-Maine denies the allegations of paragraph 214.

215.    Cal-Maine denies any and all allegations contained in Plaintiffs' prayer for relief and demand for jury trial, denies that Plaintiffs are entitled to any relief, and requests that Plaintiffs take nothing in this suit and that this matter be dismissed with prejudice, with costs and fees awarded to Cal-Maine.

## DEFENDANT'S AFFIRMATIVE DEFENSES

1.    Plaintiffs fail, in whole or in part, to state a claim upon which relief could be granted.

2.    Plaintiffs' claims are barred, in whole or in part, by the Capper-Volstead Act, 7 U.S.C. §§ 291, 292.

3.    Plaintiffs' claims are barred, in whole or in part, by the Agricultural Cooperative Marketing Act, 7 U.S.C. § 455.

4.    Plaintiffs' claims are barred, in whole or in part, by Section 6 of the Clayton Act, 15 U.S.C. § 17.

5.    Plaintiffs' claims are barred, in whole or in part, by the Agricultural Marketing Act of 1929, 12 U.S.C. § 1141(a).

6.    Plaintiffs' claims are barred, in whole or in part, by 7 U.S.C. § 292's grant of exclusive or primary jurisdiction to the United States Secretary of Agriculture.

7.     If, for some technical reason, Defendants UEP and/or USEM were not exempt from Plaintiffs' claims under the foregoing immunities or any or all of the alleged acts and omissions of Defendants were not within the scope of the foregoing immunities, any such technical defects should be ignored as *de minimis*.

8.     If, for some technical reason, Defendants UEP and/or USEM were not exempt from Plaintiffs' claims under the foregoing immunities or any or all of the alleged acts and omissions of Defendants were not within the scope of the foregoing immunities, Cal-Maine mistakenly believed that those entities were exempt and acted within the scope of the foregoing immunities, and neither Plaintiffs' claims nor any antitrust injury were reasonably foreseeable by Cal-Maine.  At all relevant times, Cal-Maine acted in good faith and with intent to comply with the law.

9.     If, for some technical reason, Defendants UEP and/or USEM were not exempt from Plaintiffs' claims under the foregoing immunities or any or all of the alleged acts and omissions of Defendants were not within the scope of the foregoing immunities, any resulting damages should be equitably mitigated.

10.     Cal-Maine cannot be found liable for a violation of the antitrust laws due to the conduct of others that it neither knew about nor controlled.  Cal-Maine indisputably qualifies as a "farmer" or a "producer" under the foregoing immunities, and no Cal-Maine acts or omissions were outside the scope of those immunities.  Cal-Maine believed and understood that Defendants UEP and USEM had procedures in place to ensure that all their members similarly qualified and that none on their acts or omissions were outside the scope of these immunities.  Cal-Maine thus cannot be found liable for a violation of the antitrust laws.

11.     If, for any reason, any of the alleged acts and omissions of Defendants were unlawful under the antitrust laws and were outside the scope of any immunity, any resulting damages are limited to compensation for injuries that Plaintiffs can show to have resulted from that which made Defendants' conduct unlawful and to be separate from the effects of lawful concerted activity.

12.     To the extent that Plaintiffs seek to collect treble damages, attorneys' fees and expenses, and other monetary relief from Cal-Maine, they seek a recovery that is so grossly excessive and inequitable that it would violate the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.

13.     Cal-Maine has engaged in no behavior that it knew to be, or could reasonably foresee would ever be found to be, improper of forbidden under the antitrust laws, and thus neither actual nor treble damages may be awarded against it.

14.     Plaintiffs cannot demonstrate that Defendants' conduct was outside the scope of the foregoing immunities or that Defendants' prices were unduly enhanced as a result of any or all of the alleged acts and omissions.  The United States Department of Agriculture ("USDA") was fully aware of the conduct relevant to Plaintiffs' claims, and it regularly monitors and reports upon egg prices. However, the USDA never sought to object to, or to halt, any conduct by Defendants despite the fact that Section 2 of the Capper-Volstead Act, 7 U.S.C. § 292, provides that the Secretary of Agriculture "shall issue" an order directing agricultural associations "to cease and desist" conduct that causes the prices of agricultural products to be "unduly enhanced."

15.     Plaintiffs' claims are barred, in whole or in part, by the *Noerr-Pennington* doctrine, the state action doctrine, and/or the doctrine of implied immunity; Plaintiffs' claims are

51

further barred because the alleged conduct that is the subject of the Complaint was caused by, due, based upon, or in response from directives, laws, regulations, authorizations, policies and/or acts of governments and/or their agencies.

16.     Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations and/or laches.

17.     Plaintiffs' claims are barred, in whole or in part, by waiver, ratification, and/or estoppel.

18.     To the extent Plaintiffs claim that Defendants fraudulently concealed any actions, Plaintiffs have failed to allege this fraud with the particularity required by Federal Rule of Civil Procedure 9(b).

19.     Plaintiffs' claims are barred, in whole or in part, because Cal-Maine has acted in good faith.

20.     Plaintiffs' claims are barred, in whole or in part, because legitimate standard setting through cooperatives cannot give rise to antitrust liability.

21.     Plaintiffs' claims are barred, in whole or in part, because the claims are governed by the rule of reason, and Plaintiffs have not alleged and cannot prove the elements of a rule of reason claim.

22.     Plaintiffs' claims are barred, in whole or in part, because the pro-competitive benefits of the conduct alleged by Plaintiffs outweighs any alleged anti-competitive effects.

23.     Plaintiffs' claims are barred, in whole or in part, because they lack standing to bring some or all of their claims.

24.     Plaintiffs' claims are barred, in whole or in part, because they did not suffer antitrust injury.

25.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have failed to allege relevant product and geographic markets.

26.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs' claimed injuries and damages were not legally or proximately caused by any act or omission of Cal-Maine, or were caused, if at all, by the conduct of third parties, including, without limitation, the previous, intervening, or superseding conduct of such third parties.

27.     To the extent Plaintiffs have sustained damages, if any, they have failed to mitigate those damages and are therefore barred from recovering damages in whole or in part.

28.     Plaintiffs' damages claims are barred, in whole or in part, because they have suffered no damages or because the damages they seek are speculative and uncertain.

29.     Plaintiffs' claims are barred, in whole or in part, because of a failure to join necessary and/or indispensible parties.

30.     Plaintiffs' claims are barred, in whole or in part, because of the *Copperweld* doctrine.

31.     Plaintiffs' claims are barred, in whole or in part, by the doctrines of *in pari delicto*, involvement, participation, equal involvement, complete involvement, and unclean hands.

32.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs were co-initiators, co-conspirators, or involved in creating, maintaining, supporting, relying on, implementing, or otherwise utilizing the conduct and programs challenged in this action.

33.     Cal-Maine adopts by reference any applicable defense pleaded by any other Defendant that is not otherwise expressly set forth in this Answer.

34.     In stating these affirmative defenses, Cal-Maine does not concede that it has the burden of proof on any of the aforementioned defenses and denials.

## COUNTERCLAIMS

Cal-Maine incorporates here by reference, as if set forth in full, its counterclaims against Plaintiff Kraft Foods Global, Inc., which will be asserted in a separate document filed on February 4, 2014, as authorized by the Court via email from Mr. Parker Rider-Longmaid on January 31, 2014.  Cal-Maine incorporates each and every paragraph in that document as if fully set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Defendant Cal-Maine Foods, Inc. denies that Plaintiffs are entitled to any relief whatsoever and respectfully requests: (a) that Plaintiffs take nothing by their action; (b) that this Court dismiss Plaintiffs' claims with prejudice; (c) that this Court assess costs and fees against Plaintiffs; and (d) that this Court award Cal-Maine Foods, Inc. such other and further relief to which it may be justly entitled.

Respectfully submitted,

/s/ Brian E. Robison

Veronica S. Lewis (*admitted pro hac vice*)
Texas Bar No. 24000092
Brian E. Robison (*admitted pro hac vice*)
Texas Bar No. 00794547
Gibson, Dunn & Crutcher LLP
2100 McKinney Avenue, Suite 1100
Dallas, Texas 75201-6912
Tel: (214) 698-3100
Fax: (214) 571-2900

Robin Nagele
Post & Schell, P.C.
Four Penn Center, 14th Floor
1600 John F. Kennedy Blvd.
Philadelphia, PA 19103
Telephone: (215) 587-1114
Facsimile: (215) 320-4702

**ATTORNEYS FOR DEFENDANT**
**CAL-MAINE FOODS, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of January, 2014 a true and correct copy of the foregoing Answer and Defenses to Kraft Foods Global, Inc., et al.'s Second Amended Complaint and Counterclaims was filed using the CM/ECF system.  In addition, (1) the filing is available for viewing and downloading via the CM/ECF system, and (2) the CM/ECF system will send notification of this filing to all attorneys of record who have registered for CM/ECF updates.


/s/ Brian E. Robison
Brian E. Robison