UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KRAFT FOODS GLOBAL, INC., THE KELLOGG COMPANY, GENERAL MILLS, INC., and NESTLÉ USA, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:11-cv-08808 |
| v. | ) ) | Judge Charles R. Norgle |
| UNITED EGG PRODUCERS, INC., UNITED STATES EGG MARKETERS, INC., CAL-MAINE FOODS, INC., MICHAEL FOODS INC., and ROSE ACRE FARMS, INC. | ) ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE CERTAIN
EVIDENCE PREDATING THE ALLEGED CONSPIRACY**

Defendants Rose Acre Farms, Inc. ("Rose Acre"), Michael Foods, Inc. ("Michael Foods"), Cal-Maine Foods, Inc. ("Cal-Maine"), United Egg Producers, Inc. ("UEP"), and United States Egg Marketers, Inc. ("USEM") (collectively, "Defendants") respectfully move this Court for an order precluding Plaintiffs from introducing certain evidence that predates the beginning of the antitrust conspiracy alleged in this case.

**INTRODUCTION**

Plaintiffs claim that, "[b]eginning in at least 1999," Defendants and others conspired to reduce the domestic supply of eggs in order to raise egg prices. (*See, e.g.,* Second Amended Complaint of Plaintiff Kraft Foods Global, Inc., *et al.,* ¶ 119, February 22, 2013 ("Second Amended Complaint") (filed in *In re Processed Egg Prod. Antitrust Litig.,* No. 08-MD-2002, at ECF No. 786-1).) According to Plaintiffs, egg producers Rose Acre, Michael Foods, and Cal-

Maine, along with cooperatives UEP and USEM, conspired to reduce the supply of eggs in the United States by adhering to certain short-term supply recommendations made by UEP, adhering to the animal welfare guidelines contained in the UEP Certified Program, and engaging in coordinated exports. This conduct, in turn, allegedly raised prices on egg products[1] purchased by Plaintiffs from certain Defendants.

On their proposed exhibit list, Plaintiffs have identified multiple documents that long predate the beginning of the alleged conspiracy. For example, Plaintiffs identify a document

███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
██████████

Any documents that pre-date 1999, particularly the documents referenced above – created up to fourteen years before the alleged conspiracy even began – are simply far too remote from the events at issue to be relevant under any standard. Any reference to them at trial must be

---

[1] Egg products largely consist of highly processed eggs sold for use as ingredients in making products like cake mixes, salad dressings, and mayonnaise.

[2] In filings in this Court, Plaintiffs have erroneously referred to Mr. Bell as an "economist." (*See* Second Amended Complaint at ¶ 116) (referring to "UEP Economist Donald Bell.") As noted, however, Judge Pratter ruled in the DPP case that Mr. Bell may only be referred to as an "economic consultant," not an "economist." (*In re Processed Egg Prod. Antitrust Litig.,* No. 08-MD-2002, at ECF No. 1678) (April 6, 2018 Memorandum at 11). Likewise, Plaintiffs in this case should not be permitted to refer to Mr. Bell as an "economist," but only as UEP's "economic consultant."

precluded. In addition, the very slight (if any) probative value of these documents is outweighed by a danger of unfair prejudice to Defendants and their potential to confuse the jury, particularly given the temporal distance from the alleged conspiracy.

## FACTUAL BACKGROUND

Plaintiffs' proposed exhibit list identifies approximately two dozen documents that are dated before 1999. Relevant to this motion, Defendants have included four as exemplars:

- ███████████████████████████████████████
- ███████████████████████████████████████
- ███████████████████████████████████████
- ███████████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████ He died in 2014.
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

3

██████████████████████████████████████████████████████

████████████████████████████

Although he is now deceased, Mr. Bell remains a witness in this case. He was deposed over the course of two days. In addition, he produced documents in discovery, including various papers, reports, and correspondence that he prepared.

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████

In the earlier Direct Action Plaintiffs ("DAP") trial, the defendants filed a motion to exclude documents predating the conspiracy (which the plaintiffs in that case alleged began in 2000), as irrelevant and inadmissible hearsay. (*In re Processed Egg Prod. Antitrust Litig.,* No. 08-MD-2002, at ECF No. 1907). Judge Pratter denied the motion and accepted the plaintiffs' argument that these documents were "relevant to show knowledge or intent to join the conspiracy as well as the formation and scope of the conspiracy itself." (*In re Processed Egg Prod. Antitrust Litig.,* No. 08-MD-2002, at ECF No. 2020) (October 21, 2019 Order) (attached as Exhibit H). Notably, Judge Pratter did not specifically consider whether any particular document was relevant for this purpose. (*See id.*) Further, none of the four documents highlighted in this motion was admitted at the DAP trial. As explained below, review of the Bell Documents and the DOJ Presentation demonstrates that they could not possibly be used for this purpose.

4

### III. LAW AND ARGUMENT

#### A. Legal Standard.

Under Rule 402 of the Federal Rules of Evidence, relevant evidence is generally admissible but "[i]rrelevant evidence is not admissible." Rule 401 defines relevant evidence as having "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Trial courts have broad discretion to determine whether evidence is too remote to be relevant. *Stinnett v. Iron Works Gym/Exec. Health Spa,* 301 F.2d 610, 614 (7th Cir. 2002); *see also* 2 *Weinstein's Federal Evidence* § 401.04 (2021) ("Evidence, though otherwise relevant, may be excluded because it is too remote in space or time from the proposition being proved."). In exercising this discretion, the court "must weigh [the evidence's] probative value against the dangers of unfairness, confusion, and undue expenditure of time on collateral issues." 2 *Weinstein's Federal Evidence*, § 401.04.

Further, even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The acceptable amount of prejudice varies, depending on the proposed evidence's probative value. *United States v. Bowling,* 770 F.3d 1168, 1177 (7th Cir. 2014). Whereas a court will tolerate some risk of prejudice for more probative evidence, "less probative evidence will be received only if the risk of prejudice is more remote." *Id.* "Fundamental to a judge's role as the presiding officer at jury trials is the administration of the rules of evidence in a way that will minimize the likelihood that the jury's verdict will be a product of confusion or inappropriate emotion." I*n re High Fructose Corn Syrup Antitrust Litig.,* 361 F.3d 439, 441 (7th Cir. 2004). District judges

have broad discretion in ruling on motions *in limine*. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002).

### B. The Proposed Exhibits Pre-Dating the Alleged Conspiracy Are Irrelevant.

This case concerns an alleged antitrust conspiracy that began, according to Plaintiffs, in or around the year 1999. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ All are too remote in time to be relevant to the alleged conspiracy and, therefore, must be excluded from trial. *See Lewis v. City of Chi.*, No. 04 C 3904, 2005 U.S. Dist. LEXIS 63709, *39-40 (N.D. Ill. June 27, 2005) (evidence related to the decedent's military career that predated wrongful death case by 12-18 years, including that he dropped rank in the Army, is "too remote in time to bear any relevance to this case."); *Skibniewski v. Am. Home Prods. Corp.*, No. 99-0842-CV-W-FJG, 2004 U.S. Dist. LEXIS 31014, at *4-9 (W.D. Mo. April 1, 2004) (excluding memo written 23 years before case against pharmaceutical company was filed).

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ they contain nothing that would relate to Defendants' "knowledge or intent to join the conspiracy."

(*See* ECF No. 2020) (October 21, 2019 Order). These documents are also too remote to shed any light on the "formation and scope of the conspiracy itself." (*See id.*)

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Accordingly, these documents are irrelevant and should not be referenced before the jury at trial.

### C. Any Probative Value of Such Temporally Remote Documents Is Outweighed by Their Unfair Prejudice and Potential to Mislead the Jury

Further, evidence pre-dating the conspiracy will only serve to unfairly prejudice Defendants and confuse the jury. ▮▮▮▮▮▮▮▮▮▮▮▮ In addition, Plaintiffs should be precluded from making any reference to a prior DOJ investigation. *See Fakhoury v. O'Reilly,* No. 16-13323, 2022 WL 909347, at *9 (E.D. Mich. Mar. 28, 2022) ("Moreover, the DOJ investigation led to no charges being filed. This evidence will be unfairly prejudicial under Rule 403 because it will suggest to the jury that Fakhourys are engaged in illegitimate activities. The DOJ investigation is inadmissible.").

Moreover, such documents may imply that the alleged conspiracy began much earlier than 1999. Fed. R. Evid. 403. It will be difficult for the jury to understand that these documents are submitted not as evidence of a conspiracy, but to somehow establish Defendants' alleged knowledge and intent to form the conspiracy. This distinction will be particularly difficult to grasp as to the Bell Documents, since Mr. Bell later served as a consultant to the UEP and Plaintiffs will likely introduce other documents authored by him in an effort to establish the

7

conspiracy itself. These potential harms outweigh the slight (if any) probative value of the pre-1999 documents. *See Lewis,* 2005 U.S. Dist. LEXIS 63709, at *39-40 (evidence related to decedent's military career, including that he dropped rank in the Army, excluded because "[a]ny arguable probative value is substantially outweighed by prejudicial effect, jury confusion and waste of trial time.").

IV. **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court issue an Order precluding Plaintiffs from referencing or eliciting testimony regarding documents predating the alleged conspiracy, including the Bell Documents and the DOJ Presentation.

Dated: August 26, 2022

Respectfully submitted,

*/s/ Jay L. Levine*
Jay L. Levine (jlevine@porterwright.com)
Donald M. Barnes (dbarnes@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
2020 K. Street, N.W., Suite 600
Washington, D.C. 20006-1110
Tel: (202) 778-3000

James A. King (jking@porterwright.com)
Allen T. Carter (acarter@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
41 South High Street, Suite 2900
Columbus, OH 43215
Tel: (614) 227-2000

***Counsel for Defendant Rose Acre Farms, Inc.***

*/s/ Patrick M. Otlewski*
Patrick M. Collins (pcollins@kslaw.com)
Livia M. Kiser (lkiser@kslaw.com)
Patrick Otlewski (potlewski@kslaw.com)
Abigail Terry (aterry@kslaw.com)
KING & SPALDING LLP
110 North Wacker Drive, 38th Floor
Chicago, IL 60606
Tel: (312) 995-6333

8

Lohr Beck (lohr.beck@kslaw.com)
(pro hac vice)
Andrew Chinsky (achinsky@kslaw.com)
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel: (404) 572-2812

Brian E. Robison (brian@brownfoxlaw.com)
(pro hac vice)
BROWN FOX PLLC
6303 Cowboys Way, Suite 450
Frisco, TX 75034
Tel: (972) 707-2809

*Counsel for Defendant Cal-Maine Foods, Inc.*

*/s/ Carrie C. Mahan*
Carrie C. Mahan (carrie.mahan@weil.com)
S. Nicole Booth (nicole.booth@weil.com)
WEIL, GOTSHAL & MANGES LLP
2001 M Street, N.W.
Washington, D.C. 20036
Tel: (202) 682-7000

Brian G. Liegel (brian.liegel@weil.com)
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Tel: (305) 577-3180

Stephen J. Siegel (ssiegel@novackmacey.com)
Elizabeth C. Wolicki (ewolicki@novackmacey.com)
NOVACK AND MACEY LLP
100 N Riverside Plaza
Chicago, IL 60606
Tel: (312) 419-6900

*Counsel for Defendant Michael Foods, Inc.*

*/s/ Robin P. Sumner*
Robin P. Sumner (robin.sumner@troutman.com)
Kaitlin L. Meola (kaitlin.meola@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
3000 Two Logan Square, 18th and Arch Streets

Philadelphia, PA 19103-2799
Tel: (215) 981-4000

Whitney R. Redding (whitney.redding@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
Union Trust Building
501 Grant Street, Suite 300
Pittsburgh, PA 15219-4429
Tel: (412) 454-5085

Robert E. Browne, Jr. (robert.browne@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
227 West Monroe Street, Suite 3900
Chicago, IL 60606
Tel: (312) 759-1923

***Counsel for Defendants United Egg Producers, Inc. & United States Egg Marketers, Inc.***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 26, 2022, a copy of the foregoing was filed and served on all counsel of record via the Court's ECF system.

*/s/ Jay L. Levine*
Jay L. Levine

21218192v1