UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KRAFT FOODS GLOBAL, INC., THE KELLOGG COMPANY, GENERAL MILLS, INC., and Nestlé USA, INC., | ) ) ) ) |
| Plaintiffs, | ) No. 1:11-cv-08808 ) |
| v. | ) Judge Charles R. Norgle ) |
| UNITED EGG PRODUCERS, INC., UNITED STATES EGG MARKETERS, INC., CAL-MAINE FOODS, INC., MICHAEL FOODS INC., and ROSE ACRE FARMS, INC. | ) ) ) ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE PLAINTIFFS
FROM INTRODUCING EVIDENCE REGARDING THE
ALLEGED CONSPIRATORS' EGG EXPORTS**

Pursuant to Federal Rules of Evidence 401 and 403, Defendants Rose Acre Farms, Inc. ("Rose Acre"), Michael Foods, Inc. ("MFI"), Cal-Maine Foods, Inc. ("Cal-Maine"), United Egg Producers, Inc. ("UEP"), and United States Eggs Marketers, Inc. ("USEM"), respectfully request an order precluding Plaintiffs Kraft Foods Global, Inc., The Kellogg Company, General Mills, Inc., and Nestlé USA, Inc. from introducing testimony or evidence, or otherwise discussing, referring to, or mentioning at trial, the alleged conspirators' exports of eggs through USEM.

Time and time again, various plaintiffs in this multidistrict litigation have attempted to fold USEM exports into the conspiracy claims against Defendants, and the efforts have failed repeatedly. That track record notwithstanding, Plaintiffs here allege again that the conspiracy comprised multiple components, including the USEM exports. Plaintiffs' economic expert, Dr. Michael Baye, admitted under oath at the earlier DAP trial that the USEM exports had (at best) only a short-term effect on egg prices, which is insufficient to establish an anticompetitive effect

or antitrust injury as a matter of law. Accordingly, egg exports are irrelevant to the Plaintiffs' Sherman Act claims. Additionally, the danger of jury confusion and the certainty of wasted time substantially outweigh any probative value of any evidence regarding the USEM exports. The Court should therefore exclude evidence relating to USEM exports at trial.

## BACKGROUND

Plaintiffs allege that Defendants undertook three collective actions in furtherance of an alleged conspiracy to "control supply and artificially maintain and increase the price of eggs": (1) short-term supply recommendations, (2) the UEP Certified Program, and (3) coordinated, large-scale shell egg exports through USEM.[1] As Judge Pratter previously recognized in the multidistrict litigation, "[t]he centerpiece of this alleged conspiracy" "is the UEP Animal Care Certified Program ('Certified Program')."[2] Plaintiffs' allegations related to exports are ancillary to the Certified Program, and the evidence does not support a conspiracy that includes them. Specifically, Plaintiffs allege that Defendants exported shell eggs through USEM in order to reduce the domestic supply of eggs.[3] They further assert that "Defendants often exported eggs at a loss, and agreed to reimburse each other for related losses."[4] As set forth in more detail below, Plaintiffs are unable to come forward with evidence that could support a finding that USEM exports caused Plaintiffs to pay sustained higher egg products prices nor any evidence from which a jury could determine the amount by which any Plaintiff suffered injury by paying such sustained, higher prices.

---

[1] Am. Compl. ¶ 7, *Kraft Foods Global, Inc. et al v. United Egg Producers, Inc., et al.*, ECF No. 786-1 (February 22, 2013).
[2] *In re Processed Egg Prod. Antitrust Litig.,* No. 08-MD-2002, Mem. ("Summ. J. Op.") at 3, ECF No. 1437 (Sept. 9, 2016).
[3] Am. Compl. ¶ 7(L), *Kraft Foods Global, Inc. et al v. United Egg Producers, Inc., et al.*, ECF No. 786-1 (February 22, 2013).
[4] *Id.*

## ARGUMENT

Plaintiffs have tried—and failed—to prove that USEM exports were part of any conspiracy. Plaintiffs' expert, Dr. Baye, testified under oath at trial that he did not calculate damages from the USEM exports, and he admitted that USEM exports had only short-term effects on shell egg prices. Accordingly, Plaintiffs have not and cannot prove that USEM exports increased egg products prices, or that they suffered antitrust injury or damages as a result of USEM exports. Any testimony and evidence relating to USEM exports should therefore be excluded under Fed. R. Evid. 401 and 403 as such evidence is irrelevant, a waste of time and will serve to confuse the jury.

To prove a Section 1 violation, the Plaintiffs must establish that Defendants entered into an "agreement" that "unreasonably restrain[ed] trade." *Am. Needle, Inc. v. NFL*, 560 U.S. 183, 186 (2010); *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 335 (7th Cir. 2012). Each Plaintiff also must prove individual antitrust injury *and* measurable damages resulting from that illegal agreement. *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) ("[T]he issue of fact of damage 'is a question unique to each particular plaintiff and one that must be proved with *certainty*.'") (emphasis added) (quoting *Alabama v. Blue Bird Body Co.*, 573 F.2d 309 (5th Cir. 1978)); *accord In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008).

The Sherman Act does not concern itself with "[r]estraints [of trade] with short durations." *Procaps S.A. v. Patheon Inc.*, 141 F. Supp. 3d 1246, 1281 (S.D. Fla. 2015), *aff'd*, 2016 U.S. App. LEXIS 23427 (11th Cir. Dec. 30, 2016) (holding that a restraint on trade that lasted seven months was "far too short as a matter of law to create the required substantial marketwide harm of actual detrimental effects."). *See also Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752,

768, 104 S. Ct. 2731, 2740 (1984) (indicating that the Sherman Act is intended to "distinguish robust competition from conduct with long-run anticompetitive effects"); *Adaptive Power Sols., LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947 (9th Cir. 1998) (holding that a "four- to ten-month" effect on competition "is not significant enough to be classified as an injury to competition under the Sherman Act").

To prove antitrust injury, each Plaintiff must show that "the violation was the cause-in-fact of the injury: that 'but for' the violation, the injury would not have occurred." *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 395 (7th Cir. 1993) (citations omitted). Antitrust injury means "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 50 L. Ed. 2d 701, 97 S. Ct. 690 (1977). Put differently, "injury . . . will not qualify as 'antitrust injury' unless it is attributable to an anticompetitive aspect of the practice under scrutiny." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334, 110 S. Ct. 1884 (1990) (quoting *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104 (1986)).

Plaintiffs have no proof that USEM exports increased egg product prices, causing them to pay sustained higher prices, and there is certainly no proof of quantifiable damages resulting from USEM exports. After two trials, that much is clear. Plaintiffs' own economic expert has stated repeatedly that the export of eggs did not result in sustained effects necessary to prove any harm to the marketplace nor any injury to Plaintiffs. ▮

---

[5] Baye Depo. at 197 (▮)
(excerpts attached as Exhibit A).



In the second MDL trial, certain Defendants filed a similar motion *in limine* to exclude evidence relating to USEM exports because, like here, Dr. Baye (who also served as the plaintiffs' expert in that trial) did not calculate damages from USEM exports. Nevertheless, Judge Pratter concluded that based on the record evidence at the time, there could be a question of fact as to whether the exports injured the Direct Action Plaintiffs. That question was answered by Dr. Baye's testimony in that trial, which made clear that there is no factual dispute regarding harm flowing from USEM exports. Specifically, Dr. Baye conceded that there were only a "handful" of exports and the effect, *if any*, would last about a month:

> Q. And you testified towards the end of your examination about USEM exports, and I just want to sort of be clear. That you've also called USEM exports short-term measures, correct?
>
> A. That's correct.
>
> Q. And that -- I think you've testified before that any effect it would have had would have been very short-lived about a month between, maybe, when they were announced and when they were -- actually took place, correct?
>
> A. Yeah, that's -- I mean, that's exactly what I've estimated there is, that month, the price impact during that month.

---

[6] Baye Report ¶ 121; *see also id.* ¶¶ 122-123 (████████████████████████████████████████████████████████████████) (excerpts attached as Exhibit B).
[7] Baye Depo. at 295. *See also* Baye Report ¶ 40 (████████████████████████████████████████████████████████).
[8] *Id.* ████████████████████████████████████████████████████████

5

Q. Right.

A. And I think there was only a handful of those, yeah, that's correct.

Q. Right. And that, in other words, the price would not have been sustained any longer than that month was your testimony, I believe?

A. Based on the ones that I was able to collect data and actually examine the effect, that's correct.

DAP Trial Tr., Day 18, at 148:18-149:11 (excerpts attached as Exhibit C).



Evidence is relevant if it "(a) has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Because evidence of USEM exports cannot serve to prove any anticompetitive effects flowing from the alleged conspiracy or any injury to Plaintiffs, it cannot make a fact in issue more or less probable and is of no consequence to any issue to be tried. Accordingly, any testimony and evidence relating to USEM exports should be excluded as irrelevant under Fed. R. Evid. 401.

Additionally, under Fed. R. Evid. 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of ... confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Here, the

---

[9] Baye Reply Report ¶ 64 (excerpts included in Exhibit D).

probative value of any evidence about USEM exports is substantially outweighed by the danger of jury confusion and the certainties of wasted time.

The Plaintiffs' initial exhibit list identifies 80 entries spanning a ten year timeframe relating to USEM and/or exports, which suggests they intend to spend hours at trial discussing the details of these exports. Introduction of such evidence will be confusing, misleading, and needlessly waste time because it will create the impression that USEM exports caused an increase in egg products prices and resulted in a cognizable antitrust injury, when it is now clear that Plaintiffs have no proof to support that theory. Accordingly, even if evidence of exports is relevant to some aspect of the alleged conspiracy, such evidence and testimony should be excluded because the time it would take, and confusion it would cause, substantially outweighs any its probative value.

## CONCLUSION

For the reasons set forth above, Defendants respectfully ask the Court to enter an order *in limine* precluding Plaintiffs from introducing any testimony or evidence, or otherwise discussing, referring to, or in any way mentioning at trial, the alleged conspirators' exports of eggs through USEM, purportedly for the purpose of raising egg prices.

Dated: August 26, 2022        Respectfully submitted,

/s/ Robin P. Sumner
Robin P. Sumner (robin.sumner@troutman.com)
Kaitlin L. Meola (kaitlin.meola@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
3000 Two Logan Square, 18th and Arch Streets
Philadelphia, PA 19103-2799
Tel: (215) 981-4000

Whitney R. Redding (whitney.redding@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
Union Trust Building

501 Grant Street, Suite 300
Pittsburgh, PA 15219-4429
Tel: (412) 454-5085

Robert E. Browne, Jr. (robert.browne@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
227 West Monroe Street, Suite 3900
Chicago, IL 60606
Tel: (312) 759-1923

***Counsel for Defendants United Egg Producers, Inc. & United States Egg Marketers, Inc.***

*/s/ Donald M. Barnes*
Donald M. Barnes (dbarnes@porterwright.com)
Jay L. Levine (jlevine@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
2020 K. Street, N.W., Suite 600
Washington, D.C. 20006-1110
Tel: (202) 778-3000

James A. King (jking@porterwright.com)
Allen T. Carter (acarter@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
41 South High Street, Suite 2900
Columbus, OH 43215
Tel: (614) 227-2000
***Counsel for Defendant Rose Acre Farms, Inc.***

*/s/ Patrick M. Otlewski*
Patrick M. Collins (pcollins@kslaw.com)
Livia M. Kiser (lkiser@kslaw.com)
Patrick Otlewski (potlewski@kslaw.com)
Abigail Terry (aterry@kslaw.com)
KING & SPALDING LLP
110 North Wacker Drive, 38th Floor
Chicago, IL 60606
Tel: (312) 995-6333

Lohr Beck (lohr.beck@kslaw.com)
(pro hac vice)
Andrew Chinsky (achinsky@kslaw.com)
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel: (404) 572-2812

Brian E. Robison (brian@brownfoxlaw.com)
(pro hac vice)
BROWN FOX PLLC
6303 Cowboys Way, Suite 450
Frisco, TX 75034
Tel: (972) 707-2809

*Counsel for Defendant Cal-Maine Foods, Inc.*

*/s/ Carrie C. Mahan*
Carrie C. Mahan (carrie.mahan@weil.com)
S. Nicole Booth (nicole.booth@weil.com)
WEIL, GOTSHAL & MANGES LLP
2001 M Street, N.W.
Washington, D.C. 20036
Tel: (202) 682-7000

Brian G. Liegel (brian.liegel@weil.com)
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Tel: (305) 577-3180

Stephen J. Siegel (ssiegel@novackmacey.com)
Elizabeth C. Wolicki (ewolicki@novackmacey.com)
NOVACK AND MACEY LLP
100 N Riverside Plaza
Chicago, IL 60606
Tel: (312) 419-6900

*Counsel for Defendant Michael Foods, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2022, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants registered to receive service in this action.

                                                             */s/ Robin P. Sumner*
                                                             Robin P. Sumner