UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRAFT FOODS GLOBAL, INC., THE KELLOGG COMPANY, GENERAL MILLS, INC., and NESTLÉ USA, INC., <br><br>Plaintiffs, <br><br>v. <br><br>UNITED EGG PRODUCERS, INC., UNITED STATES EGG MARKETERS, INC., CAL-MAINE FOODS, INC., MICHAEL FOODS INC., and ROSE ACRE FARMS, INC. <br><br>Defendants. | No. 1:11-cv-08808 <br><br>Judge Charles R. Norgle |

## DEFENDANTS' MOTION *IN LIMINE*
## TO EXCLUDE CERTAIN VIDEOS AND PHOTOGRAPHS

Defendants United Egg Producers, Inc. ("UEP"), United States Egg Marketers, Inc. ("USEM"), Cal-Maine Foods, Inc. ("Cal-Maine"), Michael Foods, Inc. ("MFI"), and Rose Acre Farms, Inc. ("Rose Acre") respectfully move *in limine* to preclude Plaintiffs from offering inflammatory and irrelevant animal activism videos and photographs into evidence at trial.

### Introduction

Plaintiffs plan to show the jury videos and photographs taken by animal activists surreptitiously at various egg production facilities allegedly associated with Defendants. The videos are designed to shock and create an emotional response. The videos, often with ominous voiceovers, include highly edited footage taken by activists to support campaigns targeting animal treatment and related diseases.

The videos and photographs are irrelevant to Plaintiffs' case, which involves allegations that the Defendants violated the antitrust laws by restraining the supply of eggs. Injecting alleged mistreatment of hens at various egg producers, Plaintiffs want to invite the jury to decide this case on emotion, not objective facts. This is doubly true with respect to the injection of salmonella outbreaks—a topic appearing in certain videos—which has absolutely nothing to do with this case.

There are multiple reasons why the videos and photographs are not admissible. First, videos pertaining to CMF and MFI lack foundation and cannot be authenticated. Second, any minimal probative value from the videos or photographs is substantially outweighed by the unfairly prejudicial impact. Finally, many of the videos contain inadmissible hearsay, including commentary, narration, and captions.

## Background

### A. Plaintiffs' Videos and Photographs Portray a Variety of Egg Facilities with Varying Degrees of Hearsay.

Plaintiffs have identified five exhibits relevant to this motion. Some contain multiple videos or photographs. A summary chart is attached as Ex. A.[1]

The videos and photographs all purport to portray scenes from inside egg production facilities. Many are graphic, depicting what the narrators claim are suffering or dead hens. One video (PX 10) is available on YouTube, and carries a content warning that the viewer must acknowledge before viewing the video.

---

[1] For the Court's convenience, Defendants will provide the Court a thumb drive with the relevant exhibits described on Ex. A. For ease of identification, Defendants have included Plaintiffs' initial exhibit number in the file names. Defendants have not otherwise altered the file names of the videos as they were provided to Defendants.

The videos are generally production-quality, and all include varying degrees of hearsay. Each video includes at least one caption (some more than others). Depending on the exhibit, some of these videos also include commentary overlaying the video from the person who purported to shoot the video or someone else, interviews with third persons, and ominous music. The videos were also taken over various time periods, including after this litigation began. *See* Ex. A.

Plaintiffs only have one witness—an activist from the Humane Society of the United States (HSUS)—who is expected to lay a foundation and authenticate three videos purportedly related to Rose Acre (although PX 10 includes videos related to a non-party and non-coconspirator named Rembrandt Enterprises). Plaintiffs do not have a witness who will lay a foundation or authenticate the two exhibits allegedly related to CMF and MFI.

## B. Only Certain Videos Related to Rose Acre Were Permitted at the DAP Trial.

Plaintiffs' proposed exhibits only partially overlap with videos and photos used in the previous trial involving supermarkets and retailers known as the "Direct Action Plaintiffs" (or "DAPs") against Rose Acre, UEP, and USEM. In that trial, the defendants filed a motion to exclude these videos and photographs as irrelevant and inadmissible under Rule 403. Judge Pratter granted in part and denied in part the motion, ruling (1) no commentary would be permitted from any of the videos; (2) any images or portions of video depicting a Rembrandt facility were inadmissible as irrelevant; and (3) "the DAPs must be thoughtful in deciding how much of this evidence they seek to admit" to avoid running afoul of Rule 403, and defendants could

3

renew their Rule 403 objection during trial "if the DAPs attempt to take a mile where the Court has allowed an inch." *See* Ex. B, Order, D.E. 2004 (Oct. 7, 2019).

At trial, the DAPs attempted to introduce portions of videos and photographs related to Rose Acre, which Plaintiffs here included within PX 24 and PX 1094 on their exhibit list. Ex. C, DAP Trial Tr., Day 7, at 121:23 *et seq.* To authenticate these videos and photographs, the DAPs called James Carlson, who Plaintiffs have also included on their witness list here. Mr. Carlson was an HSUS investigator who lied on a job application to Rose Acre—falsely representing that he was not affiliated with an animal protection group—so that he could get hired and secretly take videos and photographs in Rose Acre's facility. The night before his testimony, Mr. Carlson gave a deposition where counsel walked him through various scenes of the Rose Acre videos (identified by captions with scene numbers) and photographs. Mr. Carlson testified about what the images depicted (if he knew) and whether he could remember taking the video or photograph. From this deposition, the DAPs prepared a revised version of the video scenes that they proposed to play at trial.

Before Mr. Carlson's testimony, Defendants objected to the admission of scenes depicting a pullet facility as opposed to a layer facility as irrelevant.[2] Defendants also objected to the admission of scenes that Mr. Carlson could not recall filming specifically at Rose Acre, which he therefore could not authenticate. Judge Pratter

---

[2] A "pullet" is a younger hen that does not yet lay eggs, as distinguished from a "layer," which does lay eggs. Pullet facilities, unlike layer facilities, were not subject to the UEP Animal Husbandry Guidelines. Defendants reserve all relevance objections should Plaintiffs attempt to introduce into evidence any videos or photographs taken of pullet houses.

4

accepted those arguments and sustained many of Defendants' objections.[3] Ultimately, certain portions of the video were admitted into evidence as Exhibit 719, and five photos were admitted into evidence as Exhibit 506. The proposed exhibits on Plaintiffs' list, by contrast, go far beyond what Judge Pratter permitted in the previous trial and include, collectively, multiple hours of footage and videos that the DAPs did not even attempt to admit during trial.

## Law and Argument

### A. The Videos Allegedly Involving Cal-Maine and MFI Lack Foundation and Cannot Be Authenticated.

First, the two sets of videos pertaining to CMF and MFI should be excluded for lack of foundation and Plaintiffs' inability to authenticate them.

Plaintiffs must "satisfy the requirement of authenticating or identifying an item of evidence" by "produc[ing] evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). "Rule 901 does not expressly describe how videotape evidence may be authenticated," but the Seventh Circuit has held that a proponent can "authenticate a recording by offering testimony of an eyewitness that the recording accurately reflects the events as they occurred." *United States v. Brewer*, 915 F.3d 408, 416-17 (7th Cir. 2019) (cleaned up). "For video

---

[3] Plaintiffs agreed to delete scenes 12 and 30, and Judge Pratter then excluded scenes 3 and 4 (as irrelevant videos of pullet houses) and scenes 32 and 34 (for lack of authentication). Ex. C, DAP Trial Tr., Day 7, at 134:15-24, 141:9-23. According to the captions on the final video admitted into evidence as Exhibit 719, the 5 minutes and 26 seconds of video ultimately included scenes 2, 15, 21, 22, 23, 27, 28, 29, 31, 33, 35, 39, 40, 41, 45, and 49; these scenes are currently included as part of Plaintiffs' proposed PX 24, although PX 24 goes far beyond the limited scenes admitted at the DAP trial.

5

recordings, like tape recordings, the proponent should also show that the camera functioned properly, the operator was competent in operating the equipment, and the recording fairly and accurately represented the scene depicted." *United States v. Cejas*, 761 F.3d 717, 723 (7th Cir. 2014). The proponent must authenticate video recordings from a "witness with knowledge," and courts may exclude evidence where a witness cannot "say how the video was made, or whether it had ever been altered." *Griffin v. Bell*, 694 F.3d 817, 827 (7th Cir. 2012).

*Griffin v. Bell* provides the appropriate framework for the Court's analysis. There, the trial court excluded a "video, excerpts from the video, and still photos created from the video because the video lacked a proper foundation, showed only part of the incident, and was unfairly prejudicial." *Griffin*, 694 F.3d at 820. The Seventh Circuit affirmed the trial court's decision to require the proponent to produce the maker of the video before allowing admission of the evidence. *Id.* at 827. Without the maker of the video, the proponent could not answer "many questions about the video" such as "whether the video was taken with a cell phone or a camcorder" and whether the "video had been altered at any time," which was particularly important because "the video portrayed only a small part of the incident." *Id.* at 826-27.

Here, like in *Griffin*, Plaintiffs cannot establish a foundation or authenticate the exhibits relevant to CMF or MFI. Plaintiffs' only witness on this matter, Mr. Carlson, took videos and photographs of the Rose Acre and Rembrandt facilities. Nothing in the record demonstrates that Mr. Carlson took any of the other videos, and Plaintiffs' witness list includes no other individuals with knowledge who would

6

have taken any of the footage depicted in the videos. Therefore, Plaintiffs cannot produce someone who can lay the foundation for the materials or testify about what they fairly and accurately depict. The Court should preclude Plaintiffs from offering any of the CMF or MFI videos into evidence.

B. The Videos and Photos Should Be Excluded Under Rule 403.

To the extent the videos and photos have any marginal relevance, it is substantially outweighed by a danger of unfair prejudice, misleading the jury, and wasting time. *See* Fed. R. Evid. 403. The Court must "determine whether any danger of unfair prejudice substantially outweighs the probative value of the evidence at issue." *United States v. Thompson*, 359 F.3d 470, 479 (7th Cir. 2004). "Evidence is unfairly prejudicial if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case." *Id.* (cleaned up).

Courts have applied this guidance to exclude videos and films such as those Plaintiffs seek to introduce into evidence. *See Griffin*, 694 F.3d at 820 (noting trial court also excluded video because it "showed only part of the incident, and was unfairly prejudicial"); *Johnson v. William C. Ellis & Sons Iron Works, Inc.*, 604 F.2d 950, 958 (5th Cir. 1979) (noting "motion pictures and other evidence that are basically cumulative in nature should be excluded"). A video that has been edited to express a certain point of view is especially vulnerable to challenge under Rule 403. *Mills v. Riggsbee*, No. CIV.A. 05:12-148-KKC, 2013 WL 6243951, at *3 (E.D. Ky. Dec. 3, 2013) (excluding a video of a video of security footage where "timing of the events captured on the video is, at best, confusing," and video "has been selectively focused" because

7

"at times the maker of the video . . . makes editorial decisions on how the footage is seen"). This includes production-quality videos that are overlaid with sound effects or commentary. *See Church of Univ. Love Music v. Fayette Cty.*, No. CIV.A. 06-872, 2009 WL 159272, at *2 (W.D. Pa. Jan. 22, 2009) (excluding segment from *The Daily Show* showing portions of an interview of plaintiff because the video was edited and contained a laugh track).[4]

As an initial matter, the media-type videos flunk a Rule 403 analysis. Take PX 4, which is a group exhibit that includes a highly edited video by HSUS, captioned "PX 0004 Cal-Maine_Egg-Laying_Hens_Suffering." This exhibit was produced with interviews and commentary—just like a news story—and also includes irrelevant commentary regarding a salmonella issue. In this same vein is PX 10, another highly edited video by HSUS put on YouTube. These are all media or media-like content. Courts have noted that "media accounts, by their very nature, maintain an inherent prejudicial effect." *Walker v. Cook County*, No. 05 C 5634, 2009 WL 65621, at *4 (N.D. Ill. Jan. 9, 2009).

---

[4] *See also Bolstridge v. Central Maine Power Co.*, 621 F. Supp. 1202, 1203-04 (D. Me. 1985) ("Almost always an edited tape necessarily raises issues as to every sequence portrayed of whether . . . it is unduly prejudicial because of the manner of presentation," and therefore "the Court concludes that videotapes should be admitted as demonstrative evidence only when the tapes convey the observations of a witness to the jury more fully or accurately than for some specific, articulable reason the witness can convey them through the medium of conventional, in-court examination."); *Roberts v. Stevens Clinic Hosp.*, 176 W. Va. 492, 497, 345 S.E.2d 791, 796 (1986) ("A videotape's tone and editing, as well as the availability of similar evidence through in-court testimony, are all factors a trial court should consider in deciding whether to admit a videotape.").

Also, the group of videos proposed as part of PX 4 includes reference to a salmonella outbreak that occurred at a facility. Salmonella has absolutely nothing to do with this case. Injecting an issue like salmonella to this trial has no relevance and would only cause unfair prejudice.

The other videos and photographs should also be excluded under Rule 403. As discussed above, the videos and photographs are focused on complaints by animal welfare activists. Whether hens were mistreated at Defendants' facilities does not at all respond to Defendants' arguments that UEP adopted the Certified Program, and individual egg farmers joined the program, because of customer demand. The jury is not going to be asked to decide whether they agree with animal activists' views on modern egg production, despite Plaintiffs' efforts to do so.[5]

The videos and photographs pose a real danger of unfair prejudice, confusing the issues, and needlessly presenting cumulative evidence. The videos and photographs taken by HSUS and compiled into advocacy videos are not objective facts. They are biased and one-sided propaganda pieces, replete with inflammatory commentary, interviews, and ominous music. The videos were cut, edited, and perhaps even staged to inflame passions and garner opposition to modern egg farming. The videos are also unnecessary and cumulative because Plaintiffs can use the "medium of conventional, in-court examination" for the same purpose. *Bolstridge*, 621 F. Supp. at 1204. Plaintiffs can call eyewitnesses who can testify as to the

---

[5] Defendants acknowledge that, in the DAP trial, the MDL Court ruled that evidence of animal mistreatment was relevant to the argument that the Certified Program's motives were a pretext for decreasing supply, in admitting the video involving Rose Acre.

substance of what they saw—like Mr. Carlson, who purportedly took some of the videos at issue.

Alternatively, should the Court allow some of the videos or photographs into evidence, the Court should issue a limiting instruction to the jury, limiting the jury's consideration of any video to that particular Defendant only. For example, the Court should instruct for the jury that any videos of Rose Acre facilities cannot be used as evidence against the other Defendants—UEP, USEM, MFI, or CMF.

## C. Many Portions of the Videos Contain Inadmissible Hearsay.

To the extent that the Court allows any videos to be played before the jury (though it should not), the Court should exclude any commentary, interviews, or captions, under the rules against hearsay and hearsay within hearsay. Hearsay consists of out-of-court statements which Plaintiffs intend to offer to prove the truth of the matters asserted. Such statements should be excluded unless they are specifically excluded from the definition of hearsay or they fit one of the exceptions to the hearsay rule. Fed. R. Evid. 801 & 802. For double hearsay, each layer of hearsay must fit an exception. Fed. R. Evid. 805.

Any portions of the videos which include commentary and interviews are plainly hearsay. No exception to the rule against hearsay applies. Plaintiffs wish to use the videos as evidence of the truth of the matters asserted—namely, to prove the actual conditions of the hen houses—so that Plaintiffs can make legal argument about whether Defendants cared about animal welfare issues. Some of the videos even include interviews with HSUS personnel who offer their perspective on the

conditions of the hen houses. Courts have excluded videos on this basis, particularly media-type programs. *See Holland v. Walter Kidde Portable Equip., Inc.*, No. 2:05-CV-325-TMP, 2008 WL 11375379, at *1 (N.D. Ala. Apr. 17, 2008) ("Evidence from the 'ABC News 20/20' program is . . . filled with inadmissible hearsay and unsupported expert opinion. It also is likely to unduly extend the trial and confuse the jury under FRE 403."); *Kallstrom v. Columbus*, 165 F. Supp. 2d 686, 693 (S.D. Ohio 2001) (striking statements from transcripts of 20/20 program as "classic hearsay" that "do not fall within any of the exceptions" to the rule against hearsay).

Moreover, many of the videos contain captions which are hearsay or hearsay within hearsay. Though some of these captions may appear innocent—such as captions showing the date of an investigation, the location of filming, or the fact that it was an "investigation"—these captions go to the truth of the matter because the captions are statements (manually added by a person, not automatically generated), and the captions assert that the images depicted are in fact accurate depictions of the hen houses. Thus, these portions of the videos should also be excluded.

### Conclusion

For the foregoing reasons, Defendants respectfully request that the Court grant this motion *in limine* and preclude Plaintiffs from introducing into evidence at trial the videos and photographs summarized in Ex. A. Alternatively, the Court should preclude Plaintiffs from introducing into evidence any portions of the videos with commentary, interviews, or captions.

Dated: August 26, 2022              Respectfully submitted,

*/s/ Patrick M. Otlewski*
Patrick M. Collins (pcollins@kslaw.com)
Livia M. Kiser (lkiser@kslaw.com)
Patrick Otlewski (potlewski@kslaw.com)
Abigail Hoverman Terry (aterry@kslaw.com)
KING & SPALDING LLP
110 North Wacker Drive, 38th Floor
Chicago, IL 60606
Tel: (312) 995-6333

Lohr Beck (lohr.beck@kslaw.com)
(pro hac vice)
Andrew Chinsky (achinsky@kslaw.com)
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel: (404) 572-2812

Brian E. Robison (brian@brownfoxlaw.com)
(pro hac vice)
BROWN FOX PLLC
6303 Cowboys Way, Suite 450
Frisco, TX 75034
Tel: (972) 707-2809

*Counsel for Defendant Cal-Maine Foods, Inc.*

*/s/ Carrie C. Mahan*
Carrie C. Mahan (carrie.mahan@weil.com)
S. Nicole Booth (nicole.booth@weil.com)
WEIL, GOTSHAL & MANGES LLP
2001 M Street, N.W.
Washington, D.C. 20036
Tel: (202) 682-7000

Brian G. Liegel (brian.liegel@weil.com)
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Tel: (305) 577-3180

Stephen J. Siegel (ssiegel@novackmacey.com)
Elizabeth C. Wolicki (ewolicki@novackmacey.com)
NOVACK AND MACEY LLP
100 N Riverside Plaza
Chicago, IL 60606
Tel: (312) 419-6900

*Counsel for Defendant Michael Foods, Inc.*

*/s/ Robin P. Sumner*
Robin P. Sumner (robin.sumner@troutman.com)
Kaitlin L. Meola (kaitlin.meola@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
3000 Two Logan Square, 18th and Arch Streets
Philadelphia, PA 19103-2799
Tel: (215) 981-4000

Whitney R. Redding
(whitney.redding@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
Union Trust Building
501 Grant Street, Suite 300
Pittsburgh, PA 15219-4429
Tel: (412) 454-5085

Robert E. Browne, Jr.
(robert.browne@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
227 West Monroe Street, Suite 3900
Chicago, IL 60606
Tel: (312) 759-1923

*Counsel for Defendants United Egg Producers, Inc.*
*& United States Egg Marketers, Inc.*

*/s/ Donald M. Barnes*
Donald M. Barnes (dbarnes@porterwright.com)
Jay L. Levine (jlevine@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
2020 K. Street, N.W., Suite 600
Washington, D.C. 20006-1110
Tel: (202) 778-3000

James A. King (jking@porterwright.com)
Allen T. Carter (acarter@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
41 South High Street, Suite 2900
Columbus, OH 43215
Tel: (614) 227-2000

*Counsel for Defendant Rose Acre Farms, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants registered to receive service in this action.

<i>/s/ Patrick M. Otlewski</i><br>
Patrick M. Otlewski