UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRAFT FOODS GLOBAL, INC., THE KELLOGG COMPANY, GENERAL MILLS, INC., and NESTLÉ USA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED EGG PRODUCERS, INC., UNITED STATES EGG MARKETERS, INC., CAL-MAINE FOODS, INC., MICHAEL FOODS INC., and ROSE ACRE FARMS, INC. <br><br> Defendants. | No. 1:11-cv-08808 <br><br> Judge Charles R. Norgle |

**DEFENDANTS' MOTION *IN LIMINE* TO BAR ARTICLES AND BOOKS FOR THE TRUTH OF THE MATTER ASSERTED**

Defendants United Egg Producers, Inc. ("UEP"), United States Egg Marketers, Inc. ("USEM"), Cal-Maine Foods, Inc. ("Cal-Maine"), Michael Foods, Inc. ("MFI"), and Rose Acre Farms, Inc. ("Rose Acre") respectfully request the Court enter an order *in limine* requiring Plaintiffs to identify the purposes for which they intend to introduce into evidence certain articles, books, and journals and barring Plaintiffs from introducing these materials for the truth of the matter asserted therein.

### Introduction

Plaintiffs' exhibit list includes dozens of articles from newspapers, newsletters, journals, and magazines, as well as a handful of books. These materials span national newspapers like the *Wall Street Journal*, with an article on an investigation into alleged antitrust violations in the egg industry (which was closed with no action

against any company), to academic textbooks. Many of the materials include quotes and interviews, adding a second layer of hearsay.

These documents are classic hearsay that is inadmissible for the truth of the matter asserted. The same is true for statements within the documents: To avoid the hearsay barrier, Plaintiffs must call the author/reporter and the people quoted in the articles to testify to the statements embedded in the document, but Plaintiffs have identified no such witness. With no exception or exemption from the hearsay rules apparent, the documents should be barred from admission at trial.

To avoid protracted objections and argument during trial over the proffered basis for the materials, Defendants propose the following process: Plaintiffs identify the purpose for which they intend to offer the materials—either for the truth or for a specific/particular non-hearsay purpose—30 days before trial, with Plaintiffs identifying the witness who will either (a) lay the foundation or (b) be shown the material for a non-hearsay purpose. This will provide sufficient time in advance of trial for the Defendants to identify specific objections to the materials and for the Court to rule on them outside the presence of the jury.

Furthermore, should such materials be offered for a non-hearsay purpose, Plaintiffs should be barred from publishing the materials to the jury to avoid unfair prejudice to the Defendants. There is a substantial risk that jurors will consider the materials for the truth of the matter asserted, despite a limiting instruction, given the anticipated length of this trial and the sheer number of articles and newsletters at issue. Exceptions to this general rule may be considered on a case-by-case basis.

Finally, apart from this proposed process, the Court should bar Plaintiffs from offering certain statements in the materials for the truth of the matter asserted. Statements or quotes embedded in the articles are double hearsay. Plaintiffs cannot lay the foundation for these double-hearsay statements because they are not calling the reporter/author or the person quoted in the article to testify. Moreover, articles and books should not be admitted in evidence simply because an expert may have reviewed them, and the articles and books fail a Rule 403 analysis.

### Background[1]

A representative sampling of Plaintiffs' exhibit list follows.

*Newspapers*. Of the numerous newspaper articles, PX 611 is a September 2008 article from the *Wall Street Journal* titled "Federal Prosecutors Probe Food-Price Collusion." Plaintiffs cited this article in Paragraph 100 of their operative complaint. The article discusses how the DOJ was conducting "investigations into tomatoes and eggs," claims "it's a crime for competitors to collaborate on production or prices," and parrots portions of Plaintiffs' theory of the case by stating "[f]resh-egg farmers acted together through a series of export shipments, organized by [UEP], an industry cartel whose 250-plus members include virtually all of the nation's big egg producers." Ex. A. Plaintiffs will attempt to prove all of these things are true. Another example is PX 527, a July 2007 article from *Yahoo! Finance* titled "High Corn Prices

---

[1] A non-exhaustive list of the materials at issue in this motion include PXs 100, 299, 527, 530, 537, 550, 590, 609, 611, 665, 666, 670, 674, 698, 699, 700, 704, 705, 712, 715, 716, 717, 718, 721, 722, 724, 726, 733, 736, 738, 739, 740, 741, 742, 743, 744, 746, 751, 752, 760, 763, 764, 765, 766, 767, 768, 769, 772, 773, 774, 942, 943, and 1050.

3

Drive Up Eggs and Help Cal-Maine Have Fun." The article discusses the impact of supply on the price of eggs and purports to quote CMF's former CEO as stating: "We're having fun in the egg business right now." Ex. B. The article's author is not on Plaintiffs' witness list, and CMF's former CEO is no longer alive; plainly, Plaintiffs are attempting to use the article as a vehicle to get the former CEO's hearsay statement before the jury.[2]

*Industry Magazines/Newsletters*. An example from this category includes articles from the agriculture news magazine *Feedstuffs*. One such article (PX 100) is titled "Pope: UEP has done 'remarkable things.'" This article references an interview with UEP's former CEO, Al Pope, with purported direct quotes from him, and a discussion of the UEP Certified Program, which is the focal point of Plaintiffs' case. Ex. C. This category also includes any United Voices Newsletter, which was UEP's bi-weekly newsletter sent to members and non-members alike. Plaintiffs have included approximately 115 versions of United Voices on their exhibit list. In the DAP trial, some of these exhibits were admitted only as to UEP, and some were admitted to multiple defendants.

*Other Books, Journals, or Magazines*. Many of the documents in this category appear to constitute materials relied upon by Plaintiffs' experts which are otherwise inadmissible. Three examples are the article at PX 744 from the *Journal of Political*

---

[2] Other examples include PX 721, an online article from *USA Today* dated October 26, 2007, titled "Cage-free eggs rolling off the farms," and PX 722, an online article from *The New York Times* dated August 12, 2007, titled "Suddenly, the Hunt Is On for Cage-Free Eggs." Exs. D & E.

4

*Economy* (printed in 1989) titled "Entry and Exit Decisions under Uncertainty," the article at PX 746 from *The Journal of Business* (printed in 1974) titled "Special Information and Insider Trading," and PX 712, an excerpt from the 2005 edition of the textbook titled *Microeconomic Theory: Basic Principles and Extensions* that appears to deal with "production functions." Exs. F, G, & H. Plaintiffs have not proposed any non-hearsay purpose for these exhibits beyond the fact that their experts may have reviewed these materials.

*Blog Posts*. Plaintiffs plan to introduce several blog posts, such as PX 740, which appears to be a blog post from the Southern Poverty Law Center regarding "Eco-Violence: The Record," and PX 764, which appears to a blog post by Jayson Lusk, one of Plaintiffs' expert witnesses, titled "Who Are The Vegetarians?" Exs. I & J. These blog posts are selected summaries and persuasion pieces, including by one of Plaintiffs' expert witnesses, intended to bolster the statements made by the experts and to prove several of the matters asserted therein.

## Law and Argument[3]

### A. The Court Should Require Plaintiffs to Identify the Purpose for Which They Intend to Offer the Articles and Books.

As the Court is well aware, deciding admissibility for many of the articles and books at issue will depend on Plaintiffs' purpose for the documents (*e.g.*, for a non-

---

[3] Defendants reserve and do not waive any objections regarding authentication, foundation, and relevance. While certain exhibits may be self-authenticating under Rule 902(6), many of them do not appear to fall into any category of self-authenticating evidence, such as the blog posts at PXs 740 and 764. Moreover, the exhibits contain a wide array of content, and Defendants expressly reserve all evidentiary objections.

5

hearsay purpose, such as effect on the reader, or for the truth of the matter asserted therein). Given the substantial volume of material, the complexity of the evidentiary issues embedded in these materials, and the likelihood that many will require redactions and/or limiting instructions, Defendants propose that the Court impose a process to streamline potential objections to the articles and books at issue in this motion.

To date, Plaintiffs have not specified the purpose for which they are offering these articles and books. Therefore, by 30 days before trial, the Court should require Plaintiffs to identify the purpose for which they are offering the articles and books— either for the truth or for a specific non-hearsay purpose—with Plaintiffs identifying the witness who will either (a) lay the foundation or (b) be shown the material for a non-hearsay purpose. In advance of trial, Defendants can then identify specific objections to the materials and present any objections to the Court for ruling in a streamlined manner outside the presence of the jury.

**B. Certain Parts of Plaintiffs' Proffered Articles and Books Should Be Inadmissible at Trial.**

The process proposed by Defendants above will streamline resolution of many of Defendants' objections to the articles and books. Nonetheless, certain categories of Plaintiffs' proposed exhibits are plainly admissible, and the Court should exclude them.

**1. Inadmissible Hearsay and Hearsay Within Hearsay Should Be Excluded.**

The Court should bar Plaintiffs from offering any hearsay or double hearsay in the articles or books for the truth of the matters asserted. Fed. R. Evid. 802 & 805.

6

Newspaper and magazine articles are generally considered hearsay and are inadmissible for the truth of the matters asserted. *E.g.*, *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742-43 (7th Cir. 1997); *Mi-Jack Prods. v. Int'l U. of Op. Engs. Local 150*, No. 94 C 6676, 1995 WL 680214, at *5 (N.D. Ill. Nov. 14, 1995).[4] Quotations within newspaper articles are double hearsay. *Mi-Jack Prods.*, 1995 WL 680214, at *5; *Taylor v. Chicago*, No. 14 C 737, 2015 WL 6561437, at *12 (N.D. Ill. Oct. 29, 2015) (requiring compliance with subpoena to reporter because "[t]he *Tribune* stories themselves are hearsay within hearsay, so they cannot be offered into evidence for any purpose.").

Plaintiffs' proffered articles and books are replete with hearsay and double hearsay. Defendants expect that Plaintiffs are seeking to introduce double hearsay statements by employees of Defendants from these articles. For example, as noted above, PX 527 purports to quote CMF's former CEO. Further, PX 611 contains numerous quotes from companies and even from the Federal Trade Commission. Another example is PX 721, an article reporting that the "senior director of the Humane Society of the United States' factory farming campaign, said cages severely restrict chickens' natural needs, preventing them from spreading their wings, nesting and perching, while limiting their ability to walk." Ex. D.

Those statements are inadmissible under well-established legal principles

---

[4] *See also Cox v. Nat'l Football League*, 29 F. Supp. 2d 463, 468 (N.D. Ill. Sept. 28, 1998) (excluding *Sports Illustrated* article where proponent relied on article for truth of matter but denying motion to exclude newspaper article offered for purposes other than the truth); Daniel E. Feld, Annotation, Admissibility Of Newspaper Article As Evidence Of The Truth Of The Facts Stated Therein, 55 A.L.R.3d 663 (1974, updated 2004) (listing cases where newspaper articles were excluded as hearsay).

reflected in this Court's prior ruling in *Mi-Jack Products*. There, this Court excluded *in limine* a newspaper article as "double hearsay" because it included an assertion made by an out-of-court declarant, the reporter, as well as an out-of-court statement made by a third person quoted in the article. *Mi-Jack Prods.*, 1995 WL 680214, at *5. As the Court noted, "[t]he reporter could arguably testify at trial as to" certain of the statements under Rule 801(d)(2) "as an admission of a party opponent. However, [proponent] does not list the reporter as a witness in the final pretrial order." *Id.* "The newspaper article may not substitute for the reporter's in-court testimony." *Id.*

The reasoning from *Mi-Jack Products* applies with equal force to the articles referenced above and others on Plaintiffs' exhibit list that share these same attributes. Plaintiffs cannot offer into evidence articles without the reporter/author laying the foundation for the statements and quotations attributed to the individuals referenced within the article.

### 2. No Exception to the Hearsay Rule Applies.

Plaintiffs may argue that certain statements within the articles and books are excluded from the definition of hearsay, or that various exceptions to the hearsay rule apply such that the articles and books would be admissible. Not so.

Statements in articles attributable to Defendants' employees, such as those in PX 527, do not qualify as party-opponent admissions for two reasons. *See* Fed. R. Evid. 801(d)(2)(A). First, Plaintiffs do not have a witness to lay a foundation to the statement, such as when it was made, in what context and in response to what question, and who else was present when the statement was made. Second, the quotations and statements cannot be divorced from the articles, which Plaintiffs

8

clearly want to admit in total. *E.g.*, *Berberena v. Pasquino*, No. CIV 03-557-CJP, 2006 WL 3253340, at *2 (S.D. Ill. Nov. 9, 2006) ("It is thus evident that substantial portions of the reports are not admissible as substantive evidence. Plaintiff has moved for the admission of the entire reports. The court declines to go through the reports and designate portions which may be admissible.").

Second, the articles are not admissible as a present-sense impression under Rule 803(1).[5] This Court addressed this very issue in *Cody v. Harris*. There, the Court excluded evidence from an article and statements recorded when drafting the article. The proponent argued that the article and statements were admissible as a present-sense impression. But the Court found that the proponent "offered no information about the circumstances surrounding the recording of [the] statements or the drafting of the article," including "no information as to the temporal lapse between the time" the statements were made "and the transcription of the statement into the article." *Cody*, 2004 WL 1254129, at *3. This same reasoning also applies here.

Third, the residual exception to the rule against hearsay does not apply.[6] Courts are reluctant to apply the residual exception to materials like newspaper

---

[5] To be admissible as a present-sense impression, "1) the statement must describe an event or condition without calculated narration; 2) the speaker must have personally perceived the event or condition described; and 3) the statement must have been made while the speaker was perceiving the event or condition, or immediately thereafter." *Cody v. Harris,* No. 03-CV-934, 2004 WL 1254129, at *3 (N.D. Ill. June 8, 2004) (cleaned up).

[6] The residual exception only applies if "(1) the statement is supported by sufficient guarantees of trustworthiness," considering the totality of the circumstances, and "(2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807.

9

articles. Courts have noted inherent problems with trusting the memory or accuracy of the reporters. *E.g.*, *Eisenstadt*, 113 F.3d at 745 ("It would be an abuse of discretion to admit the article as evidence because of the doubt about what it means and about whether it is an accurate report of what [person] said and because the author was available to be deposed, or give an affidavit, and clear up these questions.").[7] This too works against any indication of trustworthiness.

The reluctance to apply the residual exception even applies to well-known publications. For example, in *United States Football League v. National Football League*, No. 84 CIV. 7484 (PKL), 1986 WL 5803, at *2 (S.D.N.Y. May 16, 1986), the court sustained a hearsay objection to an article published in *The Washington Post*. The court found: "There is nothing 'truly exceptional,' however, about newspaper articles containing statements by unknown declarants. To the contrary, such articles appear frequently, are often challenged by interested parties as inaccurate, and could be the subject of wide-spread abuse if admitted into evidence under the residual hearsay exceptions in any but the most extraordinary circumstances." *Id.* In this case, the articles and books lack a guarantee of trustworthiness and include a variety of statements from both known and unknown declarants.

Moreover, Plaintiffs have made no showing that they cannot procure more probative evidence with reasonable efforts. In fact, Plaintiffs intend to call many fact

---

[7] *See also May v. Cooperman*, 780 F.2d 240, 263 (3d Cir. 1985) (Beckner, J., dissenting on other grounds) ("We have no idea of the amount of editorializing that went into the articles, which could have been written from a biased point of view. It is not unknown for reporters to stretch some facts or omit others in order to arouse public indignation.").

10

and expert witnesses who can testify as to the same information discussed in these articles regarding the history of the UEP Certified Program, cage space issues, and economic theory. For this reason, too, the residual exception does not apply.

### 3. The Articles and Books Are Inadmissible as Facts or Data Observed by Plaintiffs' Experts.

Plaintiffs may also argue that certain of the articles and books should be admitted because their experts relied on the materials in forming their opinions. But such a blanket argument is incorrect. Rule 703 allows an expert to base his opinion on facts or data that "the expert has been made aware of or personally observed," which "need not be admissible for the opinion to be admitted." However, Rule 703 also states "if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."

As Rule 703 makes clear, inadmissible evidence cannot be admitted through the backdoor of expert testimony unless the probative value "substantially outweighs" the prejudicial effect.

Courts have cautioned against the practice of allowing Rule 703 to overcome evidentiary issues. For example, in *Linde v. Arab Bank, PLC*, 922 F. Supp. 2d 316, 323 (E.D.N.Y. 2013), the court noted that "an expert may not simply transmit hearsay to the jury." Instead, experts must form their "own opinions by applying [their] extensive experience and a reliable methodology to the inadmissible materials." *Id.* (cleaned up). *See also United States v. Lawson*, 653 F.2d 299, 302 (7th Cir. 1981) (affirming admission of "staff reports, interviews with other physicians, and

11

background information," which (in that case) "were clearly of the type that psychiatrists would rely upon in making a similar professional judgment.").

In this case, the Court should not allow Plaintiffs to invoke Rule 703 to admit articles and books, as a blanket matter, simply because their expert relied on those materials in forming the expert's opinions. The experts should not be allowed to take the stand and read these materials into the record. Instead, Plaintiffs must show why the "probative value" of disclosing articles and books cited by their experts "substantially outweighs their prejudicial effect" so that the expert is not a "mere conduit for inadmissible evidence." *Linde*, 922 F. Supp. 2d at 323.

### 4. Rule 403 Requires Exclusion of the Newspaper Articles.

Finally, many of the articles and books also should be excluded because they pose a danger of unfair prejudice and misleading the jury. Fed. R. Evid. 403. The Court must "determine whether any danger of unfair prejudice substantially outweighs the probative value of the evidence at issue." *United States v. Thompson*, 359 F.3d 470, 479 (7th Cir. 2004). "Evidence is unfairly prejudicial if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case." *Id.* (cleaned up).

In this case, many of the articles contain a number of unfairly prejudicial, confusing, and misleading statements. For example, Plaintiffs want to introduce a *Wall Street Journal* article (PX 611) that not only discussed a then-ongoing DOJ investigation, but also contained conclusions from the author, including that "producers of fresh eggs have coordinated their efforts to raise prices, according to

12

industry participants and a Wall Street Journal review of industry documents." This quotation goes directly to one of the disputed issues that the jury will evaluate in this case—and should be free to evaluate without the outside influence of the *Wall Street Journal*.

As PX 611 reinforces, "media accounts, by their very nature, maintain an inherent prejudicial effect." *Walker v. Cook County,* No. 05 C 5634, 2009 WL 65621, at *4 (N.D. Ill. Jan. 9, 2009) (requiring prior approval of court prior to introduction of such evidence). And here, as with PX 611, many of the articles are especially prejudicial because they are found in some of the nation's most trusted sources like the *Wall Street Journal*, *New York Times*, *Yahoo!*, and *USA Today*. *See* Ex. A, B, D, & E; *supra* at 12. The jurors would be more likely to implicitly trust these sources and not question their credibility or bias than they would a normal witness. Allowing the jurors access to the media reports also would provide them access to a number of facts irrelevant to the case, which would color their judgment in attempting to stick to the facts of this specific case. Plus, the sheer volume of materials—including large excerpts from books—is likely to overwhelm the jury, which will result in a waste of time and further confusion of the issues.

For this reason, too, the articles and books should be excluded under Rule 403.

## Conclusion

For the going reasons, Defendants respectfully request that the Court grant this motion *in limine*, require Plaintiffs to identify before trial the purposes for which they intend to introduce into evidence certain articles, books, and magazines, and bar

Plaintiffs from introducing these materials for the truth of the matter asserted therein.

Dated: August 26, 2022        Respectfully submitted,

*/s/ Patrick M. Otlewski*
Patrick M. Collins (pcollins@kslaw.com)
Livia M. Kiser (lkiser@kslaw.com)
Patrick Otlewski (potlewski@kslaw.com)
Abigail Hoverman Terry (aterry@kslaw.com)
KING & SPALDING LLP
110 North Wacker Drive, 38th Floor
Chicago, IL 60606
Tel: (312) 995-6333

Lohr Beck (lohr.beck@kslaw.com)
(pro hac vice)
Andrew Chinsky (achinsky@kslaw.com)
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel: (404) 572-2812

Brian E. Robison (brian@brownfoxlaw.com)
(pro hac vice)
BROWN FOX PLLC
6303 Cowboys Way, Suite 450
Frisco, TX 75034
Tel: (972) 707-2809

**Counsel for Defendant Cal-Maine Foods, Inc.**

*/s/ Carrie C. Mahan*
Carrie C. Mahan (carrie.mahan@weil.com)
S. Nicole Booth (nicole.booth@weil.com)
WEIL, GOTSHAL & MANGES LLP
2001 M Street, N.W.
Washington, D.C. 20036
Tel: (202) 682-7000

Brian G. Liegel (brian.liegel@weil.com)
WEIL, GOTSHAL & MANGES LLP

1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Tel: (305) 577-3180

Stephen J. Siegel (ssiegel@novackmacey.com)
Elizabeth C. Wolicki (ewolicki@novackmacey.com)
NOVACK AND MACEY LLP
100 N Riverside Plaza
Chicago, IL 60606
Tel: (312) 419-6900

*Counsel for Defendant Michael Foods, Inc.*

*/s/ Robin P. Sumner*
Robin P. Sumner (robin.sumner@troutman.com)
Kaitlin L. Meola (kaitlin.meola@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
3000 Two Logan Square, 18th and Arch Streets
Philadelphia, PA 19103-2799
Tel: (215) 981-4000

Whitney R. Redding
(whitney.redding@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
Union Trust Building
501 Grant Street, Suite 300
Pittsburgh, PA 15219-4429
Tel: (412) 454-5085

Robert E. Browne, Jr.
(robert.browne@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
227 West Monroe Street, Suite 3900
Chicago, IL 60606
Tel: (312) 759-1923

*Counsel for Defendants United Egg Producers, Inc.
& United States Egg Marketers, Inc.*

*/s/ Donald M. Barnes*
Donald M. Barnes (dbarnes@porterwright.com)
Jay L. Levine (jlevine@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
2020 K. Street, N.W., Suite 600

Washington, D.C. 20006-1110
Tel: (202) 778-3000

James A. King (jking@porterwright.com)
Allen T. Carter (acarter@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
41 South High Street, Suite 2900
Columbus, OH 43215
Tel: (614) 227-2000

*Counsel for Defendant Rose Acre Farms, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants registered to receive service in this action.

*/s/ Patrick M. Otlewski*
Patrick M. Otlewski