UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRAFT FOODS GLOBAL, INC., THE KELLOGG COMPANY, GENERAL MILLS, INC., and NESTLE USA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED EGG PRODUCERS, INC., UNITED STATES EGG MARKETERS, INC., CAL-MAINE FOODS, INC., MICHAEL FOODS INC., and ROSE ACRE FARMS, INC. <br><br> Defendants. | No. 1:11-cv-08808 <br><br> Judge Charles R. Norgle |

# DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE PRIOR COMPLAINTS, INVESTIGATIONS, AND SETTLEMENTS

Defendants United Egg Producers, Inc. ("UEP"), United States Egg Marketers, Inc. ("USEM"), Cal-Maine Foods, Inc. ("Cal-Maine"), Michael Foods, Inc. ("MFI"), and Rose Acre Farms, Inc. ("Rose Acre") respectfully request an order precluding Plaintiffs from arguing, referencing, or introducing evidence related to advertising complaints filed by animal activist group Compassion Over Killing, Inc. ("COK"), or any related investigation, regulatory decision, or settlement agreement, as well as any federal criminal investigation.

## Introduction

Plaintiffs' sole claim against Defendants arises under the Sherman Act for allegedly restraining the supply of eggs and thus egg products. These Plaintiffs' claims involve their purchase of egg products from certain (but not all) Defendants.

1

These egg products largely consist of highly processed eggs sold for use in goods like cake mix, salad dressing, and mayonnaise.

Despite the singular focus of their lawsuit, Plaintiffs' exhibit list identifies documents that cast a far wider net, including a now-closed federal criminal investigation, as well as complaints of false advertising resolved more than a decade ago with the Better Business Bureau ("BBB") and Federal Trade Commission ("FTC").

The documents relate to a complaint by animal activist group COK filed with the BBB, alleging false advertising with respect to the UEP Animal Care Certified seal, which was placed on cartons of shell eggs in grocery stores. Plaintiffs also have identified related documents generated by the BBB and administrative bodies under its control.[1] Ultimately, the matter was referred to the FTC, and Plaintiffs seek to offer into evidence correspondence involving the FTC's resolution of this matter.

Plaintiffs also have identified as an exhibit a September 2008 Wall Street Journal article alleging "possible price-fixing" by egg producers, which reported that the Department of Justice was conducting a criminal investigation into potential "collusion" and noted that multiple producers of egg products received grand jury subpoenas in the matter.

---

[1] These exhibits are entitled, "Email from Al Pope to T. Hammond, K. Brown, D. Ortt re NAD News Release, Egg Industry Will Pursue Labeling Issue with FTC" (UE0649033, Plaintiffs' Proposed Exhibit 1144) and "FTC response to UEP re Complaint Seeking Action Against the UEP for Deceptive Advertising in Connection with the Animal Care Certified Program" (Plaintiffs' Proposed Exhibit 183).

Defendants ask this Court to reject Plaintiffs' efforts to inject these extraneous investigations, complaints, and regulatory actions into this case. These documents are irrelevant, unfairly prejudicial, and contain inadmissible hearsay. In addition, Rule 408 precludes any reference to the compromise between the FTC and UEP, which brought an end to the advertising dispute, as well as between UEP and state attorneys' general.

For these reasons, the MDL Court largely excluded these documents in the prior trials. *See* ECF Nos. 1678 and 2024.[2] The MDL Court held that the rulings by the FTC and BBB were "tangentially relevant" and more prejudicial than probative. ECF No. 2024 at 7. The MDL Court granted an unopposed motion to exclude evidence concerning settlements between UEP and 16 state attorneys general. *Id.* at 5.

This Court should enter an order precluding Plaintiffs from introducing any argument or evidence (whether documentary or testimony) regarding the COK advertising complaints, the BBB, the FTC, UEP's settlement with state attorneys general, and any federal criminal investigation that has since terminated.

## Factual Background

*The COK Complaints.* In June 2003, COK, an animal activist group, filed complaints with the National Advertising Division ("NAD") of the Council of the BBB and the FTC. The complaints alleged false advertising with the carton logo

---

[2] In both prior trials, Judge Pratter deferred ruling on the admissibility of the underlying COK complaints to "await developments during trial." ECF No. 1678 at 12. She noted that the complaints were "possibly admissible for [the] very narrow purpose" of rebutting the assertion that defendants joined the UEP Certified Program under pressure from animal activist groups. ECF No. 2024 at 6.

used to identify shell eggs produced in compliance with UEP's animal welfare program, which at the time was called the Animal Care Certified program. COK alleged that the logo misled consumers by suggesting that compliant egg producers afforded hens a higher level of care than the program actually required. *See* Ex. A, NARB Panel Report #121.

NAD investigated COK's complaint and ultimately determined "that the seal conveyed a message that hens raised in compliance with the certification program were treated more humanely than the level of care reflected by the guidelines." *Id.* at UE0649038. UEP appealed the decision to the National Advertising Review Board ("NARD"), the appellate body responsible for reviewing NAD decisions. NARB affirmed NAD's conclusions and recommended that the seal be discontinued or "modified to more clearly communicate . . . that certification signifies the specific standard of care as set forth in the UEP Guidelines." *Id.* at UE0649041.

The COK advertising dispute was then referred to the FTC. *See* Ex. B, Letter from M. Engle to A. Pope. Before the FTC made any decision regarding the matter, UEP voluntarily changed the Animal Care Certified seal to read "United Egg Producers Certified, Produced in Compliance with the United Egg Producers Animal Husbandry Guidelines. www.uepcertified.com." *Id.* In a letter dated September 30, 2005, FTC staff confirmed that the revised seal resolved any concerns identified by NARB and that the FTC would make no determination regarding the challenged conduct. *Id.* A year later, UEP settled claims from sixteen state attorneys general, who also alleged that the Animal Care Certified seal misled consumers.

4

*Federal Investigation.* In September 2008, the Wall Street Journal ran an article alleging "possible price-fixing" by egg producers, reporting that the Department of Justice was conducting a criminal investigation into potential "collusion" and noting that multiple producers of egg products received grand jury subpoenas in the matter. No charges were ever brought as a result of the investigation, and the investigation was closed.

## Legal Standard

"Irrelevant evidence is not admissible." Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Even relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice or confusing the jury. Fed. R. Evid. 403.

Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801. Hearsay is inadmissible except as provided by the rules. Fed. R. Evid. 802.

Evidence of settlement negotiations or compromise are also inadmissible to prove liability on the underlying claim. Fed. R. Evid. 408.

## Argument

Plaintiffs should be barred from arguing or offering evidence relating to the complaints filed by COK, the reports by the NAD and NARD, the FTC letter, as well as any settlements, and any federal criminal investigation. These matters are

5

irrelevant and highly prejudicial, contain inadmissible hearsay, and reflect settlement communications.

### A. The COK Complaints and Resulting Proceedings Are Irrelevant and Unfairly Prejudicial.

The COK complaints and resulting proceedings relate to an advertising dispute about the message conveyed by UEP's Animal Care Certified seal placed on shell egg cartons to consumers, in other words indirect purchasers of shell eggs. *See* Ex. B, at 1 (alleging "the Animal Care Certified (or 'ACC') seal on egg cartons is misleading because it communicates a level of care and humane treatment for hens that is superior to the actual conditions permitted under the certification program"). These materials are irrelevant for two reasons. First, the claim in this case is alleged restraints on trade, not false advertising to consumers. Second, the Plaintiffs in this case are large corporations that purchased industrial egg products, not consumers. Any impact on consumers (i.e., indirect purchasers who buy shell eggs at a grocery store) by the allegedly unlawful conduct at issue in this lawsuit is plainly irrelevant under well-settled law.[3] *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 729 (1977).

This lawsuit concerns allegations that the UEP Certified Program unreasonably restrained trade by reducing the supply of eggs and thereby raising the price of egg products. Because this case does not relate to advertising directed at consumers of shell eggs, the COK complaint and subsequent proceedings do not make any fact of consequence more or less probable and should be excluded.

---

[3] Moreover, Plaintiffs have otherwise agreed not to introduce evidence or argument regarding purported pass-through harm to retail egg consumers.

Further, under Rule 403, any marginal relevance of those materials would be outweighed by their unfair prejudice to Defendants and potential to mislead the jury. Evidence is unfairly prejudicial when it will influence the jury to decide the case on an improper basis. *United States v. Boros*, 668 F.3d 901, 909 (7th Cir. 2012) ("When background evidence is so removed from the focus of the case . . . even factual, brief, and succinct testimony may be unfairly prejudicial to the defendant."). The risk of prejudice is high when considering allegations and decisions by governmental agencies and official decision-makers because the jury may give improper weight to such findings. *See Vance v. Peters*, 97 F.3d 987, 995 (7th Cir. 1996) (excluding the report of a Department of Corrections officer "ensured that the jury reached its own conclusion with respect to the ultimate issue without giving inordinate weight to that officer's conclusion").

Here, the NAD and NARB reports as well as the FTC letter carry the weight of legitimacy attached to an official decision. The FTC letter appears on official government letterhead, contains government agency findings, and notes that future "enforcement action" is possible. *See* Ex. B, at 2 ("[T]he Commission reserves the right to take any such future action that the public interest may require."). The NARB letter cites to NAD/NARB procedures, references NAD having jurisdiction over the dispute, and conveys NARB's "[f]indings and conclusions." *See* Ex. A, at 1–2.

These official determinations risk confusing the issues and may cause the jury to substitute the judgment of the NAD, NARB, and the FTC for their own

7

judgment. *See Gumwood HP Shopping Partners, L.P. v. Simon Property Group, Inc.*, 3:11-CV-268 JD, 2016 WL 10706086, at *6 (N.D. Ind. Oct. 28, 2016) (excluding an FTC complaint as unduly prejudicial because "it could improperly suggest to the jury that the FTC has determined that [defendant] is a monopolist or has engaged in anticompetitive conduct.") (cleaned up). The NAD, NARB, and FTC decisions are specific to a false advertising claim and reflect the application of agency-specific standards that are different from the antitrust law to be applied by the jury. However, the jury may well interpret these decisions as passing a judgment on the general legitimacy of the UEP Certified Program, which is at the heart of this litigation. The risk that the jury may give undue weight to the irrelevant findings expressed in these decisions far outweighs any probative value they might have.

Finally, in addition to all that, Plaintiffs have designated numerous portions of prior deposition testimony related to these prior investigations.[4] These designations should be deemed inadmissible under Rule 403 due to the risk of unfair prejudice and the waste of time on an irrelevant tangent.

B. **The COK Complaints and Resulting Proceedings Contain Inadmissible Hearsay.**

The COK complaints and related documents are hearsay and cannot be offered for the truth of the matters asserted in them. *See Africano v. Atrium Med. Corp.*, No. 17-CV-7238, 2022 WL 1989450, at *2 (N.D. Ill. June 6, 2022) (holding

---

[4] *See, e.g.*, Ex. C (Excerpts of A. Pope Dep. (May 21, 2013)) at 318:17-20, 319:22-320:3, 320:11-321:18, 322:5-8, 323:25-324:15, 324:19-325:6; Ex. D (Excerpts of G. Gregory Dep. (Jun. 26, 2013)) at 419:17-420:5, 421:12-24, 422:12-16, 424:4-426:7, 431:13-18, 432:14-16, 432:20-21, 432:23-433:25, 434:14-435:9. 435:13, 439:17-22, 531:15-23, 532:14-21, 533:4-534:3, 534:7-535:10, 536:4-10, 536:16-537:17, 620:4-12.

8

that admission of an FDA complaint "runs headlong into the rule against hearsay"); *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1997 WL 201614, at *4 (N.D. Ill. Apr. 8, 1997) (declining to accept as true allegations in complaint made in separate case).

Similarly, Plaintiffs cannot manufacture a non-hearsay purpose for the COK complaint, the NAD and NARD reports, and the FTC Letter. *See Africano*, 2022 WL 1989450, at *3 (rejecting the argument that an FDA complaint could be used for purpose of rebuttal because the "complaint's allegations state broad regulatory violations that, on their face, do not specifically relate to" plaintiff's claim). Whether a single animal activist group considered the original UEP Certified Program's name to be adequate in 2003 has no bearing on whether Defendants and their customers faced pressure from animal activists, which led to the creation of the UEP Certified Program and is the reason so many producers joined the program.

Plaintiffs also should be precluded from offering the FTC Letter and the decisions by NAD and NARB into evidence. *See Gumwood HP*, 2016 WL 10706086, at *5 (N.D. Ind. Oct. 28, 2016) (excluding an FTC complaint because the allegations in the complaint were inadmissible hearsay); *Rexall Sundown, Inc. v. Perrigo Co.*, 651 F. Supp. 2d 9, 36–37 (E.D.N.Y. 2009) (excluding from evidence decisions by NAD and NARB because "[t]hese findings, like judicial findings . . . are generally characterized as inadmissible hearsay that cannot be used to prove the truth of the matter asserted."). The NAD, NARB, and FTC materials thus should be excluded under Rule 802.

9

Further, no hearsay exception applies that would permit the admission of these materials for the truth of the matter asserted. The FTC letter does not qualify for the public record hearsay exception. To qualify as a public record, the FTC letter must include "factual findings from a legally authorized investigation." FED. R. EVID. 803(8)(A)(iii). But the FTC did not investigate the COK complaints, as evidenced by the face of the letter itself. *See* Ex. B, at 2 (summarizing the proceedings before the NAD and NARB, stating that "no further Commission action is warranted" and advising that the FTC's decision not to pursue further action "should not be construed as a formal Commission determination"). The FTC letter also does not contain any findings of fact, rendering it inadmissible. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988); *see also Gunwood HP,* 2016 WL 10706086, at * 5 (an FTC complaint did not meet the public records exception to the hearsay rule because the complaint contained allegations, not "factual findings from a legally authorized investigation."). Because the FTC undertook no such "factual investigation" of the COK complaint, the letter is inadmissible hearsay. *Id.*

Finally, the FTC letter incorporates by reference the substance of the COK complaint itself. Third-party statements in public records "do not become admissible for their truth by virtue of their presence in a public record and instead must have an independent basis for admissibility." *Jordan v. Binns*, 712 F.3d 1123, 1133 (7th Cir. 2013). Because the underlying COK complaints are hearsay with no independent basis for admissibility, they remain inadmissible when incorporated

10

within the FTC letter. The FTC letter is also inadmissible because it implicates double hearsay, which is barred by Rule 805.

### C. References or Evidence of Settlement Agreements and Settlement Communications With NAD, NARB, and Attorneys General Are Inadmissible.

Rule 408 prohibits the use of offers of compromise or statements made during compromise negotiations. "[T]he law favors out-of-court settlements, and allowing offers of compromise to be used as admissions of liability might chill voluntary efforts at dispute resolution." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 689 (7th Cir. 2005). Rule 408 "authorizes the district court to exclude settlement letters." *New Burnham Prairie Homes, Inc. v. Vill. of Burnham*, 910 F.2d 1474, 1482 (7th Cir. 1990). While settlement evidence may be admissible if offered to prove a relevant issue in a different case, *see Zurich,* 417 F.3d at 690, the FTC letter does not bear on any relevant issue in this case.

The FTC letter summarizes the settlement between it and UEP to resolve the false advertising claim. In other words, the FTC letter summarizes an offer of compromise. *See* Ex. B, at 2 ("We believe that these changes directly address the deception identified in the NARB decision."). There is no reason other than the fact of the settlement that Plaintiffs offer this evidence. As a result, the compromise reached by UEP and the FTC should be excluded.

The same is true for the settlement that UEP reached with sixteen state attorneys general regarding the Animal Care Certified should seal. Plaintiffs should be precluded from eliciting any evidence or testimony regarding those settlements and the amounts UEP paid to settle the investigations. Like the FTC letter, this

11

settlement of a false advertising dispute is not germane to the antitrust claims in this case. The need for this settlement evidence does not outweigh the potentially chilling effect on future settlement negotiations and testimony regarding this settlement should be excluded.

### D. Federal Investigation

Any reference to a federal investigation of Defendants or other egg producers, like that in the September 2008 Wall Street Journal article alleging a criminal investigation by the DOJ into "possible price-fixing" by egg producers, is plainly inadmissible under Rule 403. *See Schmidt v. Klinman*, No. 05-C-2134, 2005 WL 6939158, at *6 (N.D. Ill. 2005) (holding that the probative value of a criminal investigation is substantially outweighed by danger of unfair prejudice, confusion of the issues and jury confusion); *Fidelity Nat. Title Ins. Co. of N.Y. v. Intercounty Nat. Title Ins. Co.*, Nos. 00-C-5658, 00-C-7086, 2003 WL 2005233, at *10 (N.D. Ill. 2003) (same).

Whether DOJ opened an investigation into egg producers in 2008 for alleged price-fixing has no probative value. It would serve only to influence the jury into reaching the improper conclusion that these Plaintiffs' claims have merit because the DOJ opened an investigation. That DOJ's investigation was ultimately closed without charges does nothing to cure the prejudice—as the Court is well aware, federal criminal investigations involve a much higher burden of proof.

### Conclusion

For the reasons stated above, Defendants respectfully request the Court bar Plaintiffs from arguing, referencing, or introducing evidence related to advertising

12

complaints filed by animal activist group Compassion Over Killing, Inc., or any related investigation, regulatory decision, or settlement agreement, as well as any federal criminal investigation.

Dated: August 26, 2022          Respectfully submitted,

*/s/ Patrick M. Otlewski*
Patrick M. Collins (pcollins@kslaw.com)
Livia M. Kiser (lkiser@kslaw.com)
Patrick Otlewski (potlewski@kslaw.com)
Abigail Hoverman Terry (aterry@kslaw.com)
KING & SPALDING LLP
110 North Wacker Drive, 38th Floor
Chicago, IL 60606
Tel: (312) 995-6333

Lohr Beck (lohr.beck@kslaw.com)
(pro hac vice)
Andrew Chinsky (achinsky@kslaw.com)
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel: (404) 572-2812

Brian E. Robison (brian@brownfoxlaw.com)
(pro hac vice)
BROWN FOX PLLC
6303 Cowboys Way, Suite 450
Frisco, TX 75034
Tel: (972) 707-2809

**Counsel for Defendant Cal-Maine Foods, Inc.**

*/s/ Carrie C. Mahan*
Carrie C. Mahan (carrie.mahan@weil.com)
S. Nicole Booth (nicole.booth@weil.com)
WEIL, GOTSHAL & MANGES LLP
2001 M Street, N.W.
Washington, D.C. 20036
Tel: (202) 682-7000

13

Brian G. Liegel (brian.liegel@weil.com)
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Tel: (305) 577-3180

Stephen J. Siegel (ssiegel@novackmacey.com)
Elizabeth C. Wolicki (ewolicki@novackmacey.com)
NOVACK AND MACEY LLP
100 N Riverside Plaza
Chicago, IL 60606
Tel: (312) 419-6900

*Counsel for Defendant Michael Foods, Inc.*

 */s/ Robin P. Sumner*
Robin P. Sumner (robin.sumner@troutman.com)
Kaitlin L. Meola (kaitlin.meola@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
3000 Two Logan Square, 18th and Arch Streets
Philadelphia, PA 19103-2799
Tel: (215) 981-4000

Whitney R. Redding
(whitney.redding@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
Union Trust Building
501 Grant Street, Suite 300
Pittsburgh, PA 15219-4429
Tel: (412) 454-5085

Robert E. Browne, Jr.
(robert.browne@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
227 West Monroe Street, Suite 3900
Chicago, IL 60606
Tel: (312) 759-1923

*Counsel for Defendants United Egg Producers, Inc. & United States Egg Marketers, Inc.*

 */s/ Donald M. Barnes*
Donald M. Barnes (dbarnes@porterwright.com)
Jay L. Levine (jlevine@porterwright.com)

PORTER, WRIGHT, MORRIS & ARTHUR LLP
2020 K. Street, N.W., Suite 600
Washington, D.C. 20006-1110
Tel: (202) 778-3000

James A. King (jking@porterwright.com)
Allen T. Carter (acarter@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
41 South High Street, Suite 2900
Columbus, OH 43215
Tel: (614) 227-2000

*Counsel for Defendant Rose Acre Farms, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants registered to receive service in this action.

*/s/ Patrick M. Otlewski*
Patrick M. Otlewski
