# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| KRAFT FOODS GLOBAL, INC., THE KELLOGG COMPANY, GENERAL MILLS, INC., and NESTLÉ USA, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:11-cv-08808 |
| v. | ) ) | Judge Charles R. Norgle |
| UNITED EGG PRODUCERS, INC., UNITED STATES EGG MARKETERS, INC., CAL-MAINE FOODS, INC., MICHAEL FOODS INC., and ROSE ACRE FARMS, INC. | ) ) ) ) ) ) | |
| Defendants. | ) | |

## PLAINTIFFS' RESPONSE TO
## DEFENDANTS' MOTION FOR BIFURCATION OF TRIAL

Brandon D. Fox
Amy M. Gallegos (*admitted pro hac vice*)
JENNER & BLOCK LLP
515 South Flower
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199
bfox@jenner.com
agallegos@jenner.com

James T. Malysiak
Terrence J. Truax
Joel T. Pelz
Angela M. Allen
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Tel: (312) 222-9350
Fax: (312) 527-0484
jmalysiak@jenner.com
ttruax@jenner.com
jpelz@jenner.com
aallen@jenner.com

*Attorneys for Kraft Foods Global, Inc.; The Kellogg Company;
General Mills, Inc.; and Nestlé USA, Inc.*

Plaintiffs Kraft Foods Global, Inc.; The Kellogg Company; General Mills, Inc.; and Nestlé USA, Inc. ("Plaintiffs") submit this Response to Defendants' Motion For Bifurcation Of Trial (Dkt. 153, the "Motion"). Bifurcating the trial would not serve any interest of justice or efficiency and would both delay the case and prejudice Plaintiffs. The Motion should be denied.

## INTRODUCTION

Defendants seek to bifurcate this case into separate trials on liability and damages for two reasons, neither of which has merit. *First*, Defendants boast that there is a good chance Plaintiffs will lose on the issue of liability, obviating the need for the jury to consider damages and promoting judicial economy. As an initial matter, this argument is legally insufficient because it "could be made in any case," and a "court [should] not preclude a party from presenting evidence relevant to both liability and damages in the same proceeding merely because that party may not ultimately obtain a favorable judgment." *Keyes Fibre Co. v. Packaging Corp. of Am.*, 763 F. Supp. 374, 376 (N.D. Ill. 1991). Instead, Defendants' bifurcation proposal would *add* unnecessary delay to this case by requiring a second proceeding with evidence largely duplicative of the first. "In a private antitrust suit there is no neat dividing line between the issues of liability and damages," *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 21 (5th Cir. 1974), and evidence of antitrust liability is probative of damages and vice versa, *see Broadway Delivery Corp. v. United Parcel Serv. of Am, Inc.*, 74 F.R.D. 438, 439 (S.D.N.Y. 1977). Thus, Defendants' bifurcation proposal necessarily will require overlapping evidence in each trial phase and almost certainly prompt disputes among the parties as to which evidence is appropriate in which phase. Bifurcation, therefore, will mean the Court will have to make difficult decisions on the overlapping evidence, which would not be the case if the trial proceeded in the ordinary course.

*Second*, Defendants argue that presentation of both liability and damages evidence in a single trial may confuse the jury and prejudice Defendants. But the opposite is true. Plaintiffs must present evidence relating to *both* liability and anticompetitive effect to prove their antitrust claims, *see id.*, as do Defendants to mount their defense, *see, e.g.*, *Lowe v. Phil. Newspapers, Inc.*, 594 F. Supp. 123, 125 (E.D. Pa. 1984). Thus, bifurcation would prejudice Plaintiffs by forcing them to divide an antitrust case that, by its nature, cannot neatly be divided. *See Terrell*, 494 F.2d at 21; *accord Veizaga v. Nat'l Bd. for Respiratory Therapy*, No. 75 C 3430, 1979 WL 156, at *8 (N.D. Ill. Feb. 9, 1979) ("Liability under Section 4 of the Clayton Act, 15 U.S.C. Section 15, is predicated on injury resulting from violation of the antitrust laws. Obviously, the issues of liability and damages are so intertwined that a bifurcated trial is not feasible.")

Defendants have the burden to show bifurcation is appropriate, *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000), and they have not met that burden here. The Motion should be denied.

**ARGUMENT**

"The piecemeal trial of separate issues in a single lawsuit is not to be the usual course." *Id.* at 620 (citing 9 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIV. § 2388 (2d ed. 1995)). Federal Rule of Civil Procedure 42(b) gives courts discretion to bifurcate a trial, but "[n]otwithstanding this discretion, a court should not routinely order separate trials." *Keyes Fibre Co.*, 763 F. Supp. at 375. "In order for a court to grant bifurcation, the party seeking bifurcation has the burden of demonstrating that judicial economy would be served and that no party would be prejudiced by separate trials, based on the circumstances of the individual case." *Real*, 195 F.R.D. at 620.

Here, Defendants have not met their burden on either factor—nor can they. Requiring separate liability and damage trials would only drag this case out longer and force Plaintiffs to separate, and the jury to make sense of, liability and damages issues in this antitrust case that are inextricably intertwined. The parties should make every effort to conclude this trial in their projected timeline, especially with the inevitable surge in COVID-19 cases that occurs after extended families gather for the holidays.

## I. Bifurcation Will Not Be Efficient.

### a. One Trial Will Be More Efficient Than Two.

The general rule against bifurcation is driven largely by the truism that one trial is more efficient than two. "A single trial generally tends to lessen the delay, expense, and inconvenience to all concerned." *THK Am., Inc. v. NSK Co.*, 151 F.R.D. 625, 631 (N.D. Ill. 1993). "Although there may be some theoretical economies to bifurcating proceedings" in some instances, separate trials are not appropriate where "[l]iability and damages cannot be easily compartmentalized." *Philips Med. Sys. (Cleveland), Inc. v. Buan*, No. 1:19 CV 02648, 2021 WL 5447034, at *2 (N.D. Ill. Nov. 22, 2021).

Antitrust suits are a perfect example of cases in which the phases of the trial cannot be easily compartmentalized. "In a private antitrust suit there is no neat dividing line between the issues of liability and damages." *Terrell*, 494 F.2d at 21. Proving anticompetitive effect and injury to business or property of the plaintiff are elements of liability; quantifying its amount is the damages issue. *See Broadway Delivery Corp.*, 74 F.R.D. at 439. As a result, proof of liability requires the presentation of proof of loss. *Id.* "Because this 'dividing line' is so difficult to draw, separate trials of 'liability' and 'damage' in antitrust cases pursuant to Rule 42(b) must be approached with trepidation." *Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307,

3

1324 (5th Cir. 1976), *abrogated on other grounds by Cont'l T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36 (1977); *accord Broadway Delivery Corp.*, 74 F.R.D. at 439 (denying bifurcation of liability and damages in an antitrust trial because "one issue will be probative of the other"). Proving an antitrust case necessarily involves overlapping testimony on the issues of liability and damages, and "[a] single trial would relieve the parties of having to bring the same witnesses back into court a second time to elicit the same testimony." *Keyes Fibre Co.*, 763 F. Supp. at 376.

That is the case here. Defendants said it best in a separate filing in support of a motion *in limine*: "Allowing [the] witnesses to appear once encourages efficiency, minimizes burdens to the witnesses, and allows for a more streamlined presentation of the evidence in what the parties expect to be a five-week trial with dozens of witnesses." (Dkt. 166 at 2.) "This is particularly true in light of the ongoing concerns for persons' health and safety due to the lingering COVID-19 pandemic." (*Id.*) Yet, in their present Motion, Defendants argue the exact opposite—that witnesses should be called first in a trial on liability, then again in a trial on damages. (Mot. at 11.) Nowhere in their Motion do Defendants identify any witness who would testify *only* in the damages phase thereby creating the efficiencies they claim bifurcation would promote. Defendants' request to conduct two trials, the contents of which will necessarily have substantial overlap, is impracticable and should be denied. *Accord Veizaga*, 1979 WL 156, at *8 ("Liability under Section 4 of the Clayton Act, 15 U.S.C. Section 15, is predicated on injury resulting from violation of the antitrust laws. Obviously, the issues of liability and damages are so intertwined that a bifurcated trial is not feasible.")

Plaintiffs cite two cases for the proposition that "[j]udicial economy supports bifurcation when the damages inquiry will require additional expert testimony," but those cases arise in very different circumstances and do not support bifurcation here. In *Adams v. City of Chicago*, No. 06

4

CV 4856, 2012 WL 13060050 (N.D. Ill. Nov. 2, 2012), the plaintiffs claimed that defendant City of Chicago was liable for a police officer's violation of the plaintiffs' constitutional rights. *Id.* at *1. As the Court explained in *Adams*, to prevail on such a claim, the plaintiffs first had to show that the officer had violated their rights and then show the City was liable for the violation. *Id.* at *2. The City moved for separate trials on those two issues, noting that the second question (the City's liability) would require expert discovery that had not yet been completed. *Id.* The Court granted the motion, finding that the claim could be split neatly into two distinct parts and plaintiffs' failure on the first part would negate the need for the second, including the need for additional expert discovery regarding the City's liability. *Id.* at *2, 4-5. Similarly, in *Brom v. Bozell, Jacobs, Kenyon & Eckhardt, Inc.*, 867 F. Supp. 686 (N.D. Ill. 1994), the court granted a motion to bifurcate an age discrimination trial where "the evidence pertaining to damages appear[ed] to be wholly independent of the evidence pertaining to liability," and avoiding the damages question would spare the parties from a "hotly contested" battle of expert testimony. *Id.* at 690. "[B]oth sides in [that] case expect[ed] to call experts who [would] testify **solely** with respect to the issue of the proper damages to be awarded." *Id.* (emphasis added).

That is not the case here. As discussed above, in this antitrust trial evidence of liability is *not* "wholly independent" from proof of damages. *See Terrell*, 494 F.2d at 21. Defendants assert that bifurcation "would obviate the need for the parties' economic experts to testify on damages if liability is not proven" (Mot. at 11), but Defendants acknowledge that those same experts still would need to testify in the liability phase of trial (*id.* at 11 n.6). Defendants concede Plaintiffs' economic expert *did* testify as to liability in the previous trials against Defendants on similar claims. (*Id.* at 4). Thus, unlike the claims at issue in *Adams* and *Brom*, the antitrust claims here

5

involve overlapping proofs for liability and damages and, as Defendants themselves acknowledge, the parties' economic experts will testify to both.

Defendants also cite dicta from antitrust cases to suggest separate trials would promote efficiency, but those cases also fail to support bifurcation in this case. In *MCI Communications Corp. v. American Telephone & Telegraph Co.*, 708 F.2d 1081 (7th Cir. 1983), the court did not *bifurcate* a trial, but rather remanded a case for a partial new trial limited to the consideration of damages. The court found "[a] new trial on liability [was] unwarranted" because a jury already had found liability and the Seventh Circuit affirmed. *Id.* at 1166-67. The court further noted that, in that monopoly case, "MCI's proof of damages was quite distinct from its proof on the question of liability," involving different witnesses and different evidence. *Id.* at 1167. This horizontal price fixing case is different. Much of the evidence Plaintiffs will present to prove liability also is probative of damages including, as Defendants acknowledge in their Motion, the economic analysis performed by Plaintiffs' expert witness. (*See* Motion at 11 n.6.)

Defendants cite dicta from *In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651 (7th Cir. 2002), in which the court suggested several possible strategies for simplifying a uniquely complex antitrust case for the jury, including bifurcation. *Id.* at 665-66. The Court did not address the issue present in this case, namely that evidence of liability and damages overlap. In *High Fructose Corn Syrup* there was no discussion of the degree of overlap, the nature of the testimony, the length of the trial, or other issues that are relevant to bifurcation. Here, Plaintiffs must present evidence of "anticompetitive effects," that "the injury complained of be of a type that the antitrust laws were designed to guard against," and that Defendants' conduct was the direct cause of Plaintiffs' injury. *See In re Dealer Mgmt. Sys. Antitrust Litig.*, 313 F. Supp. 3d 931, 950

(N.D. Ill. 2018). Thus, separating liability from damages evidence will only creative cumulative testimony, confusion, and waste time.[1]

### b. Prior Trials Involving Other Plaintiffs Are Irrelevant.

Unable to credibly argue that adding a second trial would promote judicial economy, Defendants nonetheless urge the Court to bifurcate this proceeding in the *hope* that the damages phase will never come to pass. Pointing to the outcome of previous trials in other cases brought by different plaintiffs, Defendants argue that the Court should impute any shortcomings in those trials to Plaintiffs' case here and presume Plaintiffs will lose. (Mot. at 8-10.) Not only are the outcomes of those trials of no bearing on this case–they involved different plaintiffs, many different defendants, different evidence, and were tried on different theories–but Defendants' argument that those trials are relevant on the issue of bifurcation is wrong for several reasons.

First, Defendants misrepresent the prior proceedings as unqualified victories for Defendants. The truth is more nuanced. In both of those cases, the plaintiffs obtained settlements from several of the defendants prior to trial. The terms of many of those settlements are

---

[1] Elsewhere, Defendants cite other distinguishable cases. In *Houskins v. Sheahan*, 549 F.3d 480 (7th Cir. 2008), the Seventh Circuit upheld a district court's decision ***not*** to bifurcate a trial under Rule 42(b) where, as here, there would have been "an overlap in the facts, evidence, and witnesses" in each phase of the trial. *Id.* at 495-96. *Fetzer v. Wal-Mart Stores, Inc.*, No. 13-CV-9312, 2016 WL 6833912 (N.D. Ill. Nov. 21, 2016), was not an antitrust case, but a slip-and-fall matter where the court bifurcated damages because evidence of the plaintiff's severe injuries could prejudice the jury. *Id.* at *2, 5-6. The court noted concern about prejudice from damage evidence "may be overstated in most civil cases, [but] it gain[ed] legitimacy in cases involving ***personal*** injury." *Id.* at *5 (emphasis added). Although *C.R. Bard, Inc. v. M3 Sys., Inc.*, 93 C 4788, 1994 WL 362186 (N.D. Ill. July 11, 1994), and *Ohio-Sealy Mattress Mfg. Co. v. Duncan*, 79 C 2741, 1985 WL 1737 (N.D. Ill. June 7, 1985), both involved antitrust claims, they are markedly different from this case. *C.R. Bard* principally was a patent infringement case with antitrust counterclaims. Given the "complexity of the issues, the inordinate volume of jury instructions, and the impracticable number of and specificity of special interrogatories" involved in a case containing both patent infringement *and* antitrust claims, the court divided the case into *four* parts to avoid confusion. 1994 WL 362186, at *3. Similarly, in *Ohio-Sealy Mattress*, the court attempted to bring order to a trial consolidating multiple cases, some in different procedural stages. In one of the cases, there had not yet been any trial on liability or damages. In other cases, the Seventh Circuit had upheld a prior jury's findings as to liability but remanded for a new trial on damages. To accommodate that procedural complexity, the court bifurcated the trial: first consider the untried defendant's liability, and then consider damages for both the untried defendant and the defendants in the remanded cases. 1985 WL 1737, at *3. Nothing in this case presents the unique complexities that warranted bifurcation in *C.R. Bard* or *Ohio-Sealy*.

7

confidential, but in approving a settlement with Defendant Cal-Maine Foods, Inc. (a defendant going to trial in this matter) in the Direct Purchaser Plaintiffs matter, for example, the court found that Cal-Maine's payment of $28 million as well as other non-monetary compensation was fair and reasonable given the potential viability of the plaintiffs' claims. *See In re Processed Egg Prod. Antitrust Litig.*, 302 F.R.D. 339, 363 (E.D. Pa. 2014). The outcomes of those two prior cases—not just the ultimate trials—hardly suggest that those plaintiffs' claims were without merit.

In this case, there have been no such settlements and Defendants will not have the benefit of the empty chairs where Cal-Maine will now be sitting. No jury has ever found in favor of this collection of Defendants and Cal-Maine in particular was one of the chief architects of Defendants' anticompetitive scheme. ███████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████[2] This jury will be the first to hear these statements coming from Defendants and Plaintiffs are eager to try this case with never-before tried parties seated at Defendants' table.

Further, Defendants fail to mention that the MDL Court twice denied Defendants' motions for summary judgment on Plaintiffs' claims. In response to a 2016 summary judgment motion filed by Defendants Rose Acre, Michael Foods, and two other co-conspirators, the MDL Court found that Plaintiffs had put forward "sufficient direct or unambiguous circumstantial evidence of an agreement to restrain trade" to send the case to a jury. *In re Processed Egg Prod. Antitrust Litig.*, No. 08-MD-2002, 2016 WL 5539592, at *12 (E.D. Pa. Sept. 28, 2016), *aff'd sub nom.*, 850 F. App'x 142 (3d Cir. 2021). In 2019, *all* Defendants joined in another summary judgment motion challenging the claims brought by parties who, like Plaintiffs, had purchased egg products rather

---

[2] Ex. 1, CM00275029 at 30.

8

than (or in addition to) shell eggs. The court rejected the challenge, ruling that "a reasonable jury could conclude that a reduction in the overall supply of eggs caused an increase in the price of egg products." *In re Processed Egg Prod. Antitrust Litig.*, 392 F. Supp. 3d 498, 510 (E.D. Pa. 2019). Those rulings recognize that the outcome of this trial depends on the proof admitted into evidence and the jury's assessment of that evidence.

More fundamentally, though, *those* cases have nothing to do with the bifurcation proposal before the Court in *this* case. Defendants ask the Court to bifurcate this trial based on the unremarkable proposition that Plaintiffs might lose on liability. But "this argument can be made in every case." *Real*, 195 F.R.D. at 623. "The court [should] not preclude a party from presenting evidence relevant to both liability and damages in the same proceeding merely because that party may not ultimately obtain a favorable judgment." *Keyes Fibre Co.*, 763 F. Supp. at 376.

Defendants cite *CDX Liquidating Tr. ex rel. CDX Liquidating Tr. v. Venrock Assocs.*, 389 B.R. 76, 79 (N.D. Ill. 2008), for the proposition that "bifurcation was in the interest of judicial economy where conspiracy claims based on the same allegations were dismissed in a different case" (Mot. at 8-9), but the facts in *CDX* are markedly different. In *CDX*, the parties had *agreed* to bifurcate their trial and the court entered an agreed bifurcation order. 389 B.R. at 81. On the eve of trial, and after more than two and one-half years of discovery and trial preparation focused only on liability, the plaintiff filed an emergency motion to reverse the previous bifurcation order. *Id.* at 86-87. The court denied the request, on the grounds that, "at th[at] late stage of the case," "[t]o reopen discovery on the issue of damages would result in a further delay of approximately one year as the parties incur substantial expense in taking fact and expert discovery." *Id.* at 87.

This case presents the exact opposite posture. The parties already have proceeded through years of discovery and preparation for a trial to address both liability and damages. Plaintiffs are

9

ready to prove their entire case. Splitting the trial in two would serve only to drag out these proceedings to the detriment of the Court, the parties, witnesses, and the jury.

## II. A Single Trial Will Best Avoid Prejudice to the Parties And Juror Confusion.

Bifurcation of the trial also would create undue prejudice, which is a sufficient reason to deny the Motion. "When weighing the competing equities under Rule 42(b), prejudice is the Court's most important consideration." *Real*, 195 F.R.D. at 621. Thus, even if a party can demonstrate some judicial economy through bifurcation, the court still should deny the request if prejudice would result. *Id.* at 620-21 (citing *Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 115 (E.D. La. 1992)). Courts must balance (i) any potential prejudice to the movant, such as jury confusion that could arise if bifurcation is denied; and (ii) the prejudice of added delay and expense that will befall the nonmovant if the trial is separated. *Id.* at 621. "The former can be remedied with cautionary warnings, limiting instructions, special verdict forms, and other instructions to the jury. [] The latter cannot be remedied except by denying separate trials." *Id.* (citations omitted).

### a. Defendants Will Not Be Prejudiced By A Single Trial.

Defendants make a vague claim that they will be prejudiced by the comingling of liability and damages evidence in a single trial. (Mot. at 12.) For support, they cite two patent suits in which a court bifurcated the issues of liability and willfulness. (*Id.*) Those decisions provide no help to Defendants here. As those courts acknowledged, in patent cases "the issues of liability and willfulness are capable of separation," making bifurcation much more feasible. *See Pittway Corp. v. Maple Chase Co.*, No. 91 C 3582, 1992 WL 392584, at *5 (N.D. Ill. Dec. 16, 1992); *accord Amsted Indus. Inc. v. Nat'l Castings, Inc.*, No. 88 C 924, 1990 WL 106548, at *2 (N.D. Ill. July 11, 1990) ("Because patent litigation typically requires the factfinder to make threshold

10

determinations on such matters as the validity of the patent in question before damages can be considered, bifurcation is often appropriate."). Beyond that, the court in *Pittway* explained that patent cases often pose unique risks of prejudice because the issue of willfulness "'is determined by the judge and not the jury'" and evidence relevant to willfulness could lead the jury astray from its prescribed role. *Pittway Corp.*, No. 91 C 3582, 1992 WL 392584, at *5 (quoting *Laitram Corp.*, 791 F. Supp. at 116). Further, defending against claims of willfulness often requires a defendant to waive its attorney-client privilege, something courts are loathe to force upon a party if it can be avoided. *Id.* But antitrust claims are not patent claims, and there is no "unfair prejudice" to a defendant where, as here, the evidence a defendant seeks to avoid is a necessary part of proving liability. *See Lowe*, 594 F. Supp. at 125. As discussed above, in antitrust cases, proof of liability is probative of damages and vice versa. *Broadway Delivery Corp.*, 74 F.R.D. at 439; *accord Response of Carolina, Inc.*, 537 F.2d at 1324; *Terrell*, 494 F.2d at 21. Just as Plaintiffs must show evidence of injury to prove their liability case, Defendants must defend against the same. There is nothing prejudicial about that.

Further, any legitimate concern Defendants may have about jury confusion can be addressed with jury instructions. *See Real*, 195 F.R.D. at 621. Defendants assert that they will be "unfairly prejudiced if Plaintiffs divert the jury's attention with allegations of massive damages" without first proving liability separately. (Mot. at 12.) First, it is difficult to understand how Defendants could be unfairly prejudiced by evidence that Plaintiffs suffered more than $100 million in damages due to Defendants' anticompetitive scheme when the jury also will hear Defendants' *own* prior statements in the liability phase [Redacted] .[3] Plaintiffs evidence merely

---

[3] Ex. 2, IR 300 UE0069724.

11

will show that Defendants' conspiracy delivered as promised to its participants. In any event, any concern of prejudice can be dealt with through jury instructions. The Seventh Circuit "presume[s] that the jury follows [a court's] instructions," and such instructions can alleviate any concerns of prejudice to a party. *See Sanchez v. City of Chicago*, 700 F.3d 919, 932-33 (7th Cir. 2012). In the face of this presumption, Defendants cannot rely on vague worries of jury confusion to prevail on their Motion without any explanation whatsoever why simple instructions or other measures short of bifurcation cannot resolve their concerns. *See Challenge Aspen v. King World Prods. Corp.*, No. 00 C 6868, 2001 WL 1403001, at *3 (N.D. Ill. Aug. 11, 2010) (denying bifurcation motion where "defendants ha[d] not made the case that any potential prejudice cannot be alleviated by means short of bifurcation," such as jury instructions); *accord Woods v. Amazon.com, LLC*, No. 17 C 4339, 2019 WL 2323874, at *12 (N.D. Ill. May 30, 2019) (same).

### b. Plaintiffs Will Be Unduly Prejudiced If The Trial Is Bifurcated.

Defendants barely address the most important reason bifurcation is inappropriate here: it will prejudice Plaintiffs. In a single paragraph with no meaningful analysis, Defendants argue that "Plaintiffs cannot credibly claim prejudice" if the Motion is granted. (Mot. at 12.) But, as case law recognizes, any plaintiff suffers very real prejudice when it is forced to delay a portion of its case, and such prejudice "cannot be remedied except by denying separate trials." *Real*, 195 F.R.D. at 621. In antitrust cases, the prejudice from bifurcation is even greater. A plaintiff is forced to draw an arbitrary line between its liability and damages presentations where "there is no neat dividing line" between the two. *See Terrell*, 494 F.2d at 21. That is especially so here, where Defendants almost certainly will assert that Plaintiffs' claims should be evaluated under the rule of reason—as they did in their two previous trials—and the rule of reason requires plaintiffs to present evidence of "anticompetitive effects," that "the injury complained of be of a type that the antitrust

laws were designed to guard against," and that the defendants' conduct was the direct cause of the plaintiffs' injury. *See Dealer Mgmt. Sys.*, 313 F. Supp. at 950. In short, evidence of damages is very much a part of proving liability under the rule of reason. Dividing the issues of liability and damages here would force Plaintiffs to put their liability case to a jury without damages evidence that is inextricably linked with the question of liability. *See Broadway Delivery Corp.*, 74 F.R.D. at 439; *accord Veizaga*, 1979 WL 156, at *8 ("Obviously the issues of liability and damages are so intertwined [in antitrust cases] that a bifurcated trial is not feasible.").

And the prejudice Plaintiffs would face from bifurcation here is exacerbated by the nature of the evidence at issue. If, for example, Plaintiffs' economic expert were prevented from discussing dollar amounts of damages during the liability phase and could only rely on abstract percentages or price increases of cents per pound of egg products purchased by Plaintiffs, it would make it much harder for the jury to understand the evidence and place it in its context. *See* Rebecca K. Helm, Valerie P. Hans, Valerie F. Reyna*, Trial by Numbers*, 27 CORNELL J.L. & PUB. POL'Y 107, 139–41 (2017) (discussing juries' difficulty understanding "meaningless" numbers and statistics without relevant context). That is particularly important here where the jury will hear that Defendants ▮.[4] The jury undoubtably will be looking to Plaintiffs to answer the obvious next question—did the scheme work? Plaintiffs can show the answer is "yes," and the best proof of the substantial impact of the conspiracy is evidence of the overcharges Plaintiff suffered due to Defendants' conspiracy. Plaintiffs can tell the jury the scheme raised the price of a single egg by a few cents, but that information means nothing unless the jury also can hear that the aggregate result of that increase was more than $100 million in overcharges to Plaintiffs, ▮.

---

[4] Ex. 2.

13

Finally, the prejudice to Plaintiffs would be even greater if, as Defendants urge, Plaintiffs were forced to bifurcate their trial presentation based not on any concrete possibility of judicial economy, but rather on the outcome of two previous trials in which Plaintiffs played no part. It is a well-established "general rule that a litigant is not bound by a judgment to which she was not a party." *Taylor v. Sturgell*, 553 U.S. 880, 898 (2008). It is one thing for a party to note a different court's prior ruling on a similar issue, but it is quite another to invite the Court, as Defendants do here, to restrict Plaintiffs' ability to present its evidence at this trial based on proceedings in which Plaintiffs had no say. Plaintiffs respectfully ask the Court to decline that invitation. "It must be remembered that the plaintiff has a right to a jury trial—a right which cannot lightly be disregarded." *THK Am., Inc. v. Nippon Seiko K.K.*, 141 F.R.D. 463, 465 (N.D. Ill. 1991). "Defendants' bifurcation proposal would make it unduly difficult to give full force and effect to [Plaintiffs'] entitlement to a jury trial on all of the issues presented." *Id.*

In sum, Defendants' bifurcation proposal would extend one trial into two, causing undue prejudice to Plaintiffs in the process. At best, it would cause needless delay because much of the evidence in Plaintiffs' case is probative of both liability *and* damages. At worst, it would require Plaintiffs to prove liability without crucial evidence that also has some bearing on damages and would confuse the jury in the process. In either event, it inevitably would cause additional delay and interruption as the parties argued over what evidence goes to liability, to damages, or both. Bifurcation here is a recipe for needless delay and jury confusion. The Motion should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion for bifurcation.

Dated: September 15, 2022

Respectfully submitted,

***Counsel for Plaintiffs Kraft Foods Global, Inc., General Mills, Inc., Nestlé USA, Inc. and The Kellogg Company***

<u>/s/ *Brandon D. Fox*</u>
James T. Malysiak
Joel T. Pelz
Angela M. Allen
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel: (312) 222-9350
Fax: (312) 527-0484
jmalysiak@jenner.com
jpelz@jenner.com
aallen@jenner.com

Brandon D. Fox
Amy M. Gallegos (*admitted pro hac vice*)
JENNER & BLOCK LLP
515 South Flower
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199
bfox@jenner.com
agallegos@jenner.com

15