# **EXHIBIT A**

```
 1                IN THE UNITED STATES DISTRICT COURT

 2              FOR THE EASTERN DISTRICT OF PENNSYLVANIA

 3

 4   IN RE:  PROCESSED EGG PRODUCTS:      MDL NO. 2002
     ANTITRUST LITIGATION                 08-MDL-02002
 5

 6

 7                            - - - - -

                            PHILADELPHIA, PA
 8
                              - - - - -
 9
                            NOVEMBER 6, 2019
10
                              - - - - -
11

12
     BEFORE:      THE HONORABLE GENE E.K. PRATTER, J.
13

14                            - - - - -

15                   TRANSCRIPT OF TRIAL PROCEEDINGS

16                              DAY 5

17                            - - - - -

18

19

20

21           KATHLEEN FELDMAN, CSR, CRR, RPR, CM
             Official Court Reporter
22           Room 1234 - U.S. Courthouse
             601 Market Street
23           Philadelphia, PA  19106
             (215) 779-5578
24

25
         (Transcript produced by mechanical shorthand via C.A.T.)
```

```
 1    APPEARANCES:

 2
                   KENNY NACHWALTER, P.A.
 3                 BY:  RICHARD ALAN ARNOLD, ESQUIRE
                   WILLIAM J. BLECHMAN, ESQUIRE
 4                 DOUGLAS H. PATTON, ESQUIRE
                   MICHAEL A. PONZOLI, ESQUIRE
 5                 BRANDON S. FLOCH, ESQUIRE
                   201 South Biscayne Boulevard, Suite 1100
 6                 Miami, Florida  33131
                   For Plaintiffs The Kroger Co., Safeway Inc.,
 7                 Roundy's Supermarkets, Inc., Walgreen Co.,
                   Hy-Vee, Inc., Albertsons LLC, The Great
 8                 Atlantic & Pacific Tea Company, Inc., H.E Butt
                   Grocery Company, and Conopco, Inc.
 9

10                 SPERLING & SLATER
                   BY:  PAUL E. SLATER, ESQUIRE
11                 JOSEPH M. VANEK, ESQUIRE
                   DAVID P. GERMAINE, ESQUIRE
12                 JOHN P. BJORK, ESQUIRE
                   55 West Monroe Street, Suite 3200
13                 Chicago, Illinois  60603
                   For Plaintiffs Publix Super Markets, Inc.
14                 and SuperValu Inc.

15
                   MARCUS & SHAPIRA, LLP
16                 BY:  MOIRA CAIN-MANNIX, ESQUIRE
                   BRIAN C. HILL, ESQUIRE
17                 One Oxford Centre 35th Floor
                   301 Grant Street
18                 Pittsburgh, PA  15219
                   For Plaintiff Giant Eagle, Inc.
19

20                 AHERN & ASSOCIATES, P.C.
                   BY:  PATRICK J. AHERN, ESQUIRE
21                 THEODORE BELL, ESQUIRE
                   8 South Michigan Avenue, Suite 3600
22                 Chicago, Illinois  60603
                   For Plaintiff Winn-Dixie Stores, Inc.,
23                 H.J. Heinz Company, L.P., C&S Wholesale
                   Grocers, Inc.
24

25                    (CONT.)
```

```
 1   APPEARANCES:  (CONT.)

 2
                    PEPPER HAMILTON LLP
 3                  BY:  JAN P. LEVINE, ESQUIRE
                    ROBIN P. SUMNER, ESQUIRE
 4                  ALEXANDER L. HARRIS, ESQUIRE
                    WHITNEY R. REDDING, ESQUIRE
 5                  KAITLIN MEOLA, ESQUIRE
                    LACEY D. REEDER, ESQUIRE
 6                  3000 Two Logan Square
                    18th & Arch Streets
 7                  Philadelphia, PA  19103
                    For Defendants United Egg Producers, Inc.
 8                  and United States Egg Marketers, Inc.

 9
                    PORTER WRIGHT MORRIS & ARTHUR LLP
10                  BY:  JAY L. LEVINE, ESQUIRE
                    DONALD M. BARNES, ESQUIRE
11                  ALLEN T. CARTER, ESQUIRE
                    2020 K Street, NW
12                  Suite 600
                    Washington, DC  20006
13                          And
                    PORTER WRIGHT MORRIS & ARTHUR LLP
14                  BY:  JAMES A. KING, ESQUIRE
                    ARLENE BORUCHOWITZ, ESQUIRE
15                  41 South High Street
                    Suite 2900
16                  Columbus, OH  43215
                    For Defendant Rose Acre Farms, Inc.
17                  THE DEPUTY CLERK:  All rise.

18

19

20

21

22

23

24

25
```

1   Q.   And did you express your concerns to Mr. Miller about the
2   program?
3   A.   I expressed exactly the same kind of concerns, and I was
4   kind of asking for feedback -- am I all wet here?  Or is there
5   something I'm missing?
6   Q.   Thank you.  Now, going to Plaintiffs' Exhibit 691 and
7   looking at the -- at the first document, is -- can you
8   describe for the jury what this document is?
9   A.   This is a November 5th, 2003 letter from myself to
10  Irving Isaacson, and it's regarding United -- United Egg
11  Producers Animal Care Certified Program.
12  Q.   And turning to the second page of the document, is that
13  your signature?
14  A.   Yes, it is.
15  Q.   And you wrote this document?
16  A.   I did.
17  Q.   Okay.  Turning back to the first page, under the
18  blacked-out section, it says:  As we have relayed from time to
19  time to the UEP executive staff, the hidden agenda of the
20  Animal Welfare Program is concerning to us.  Do you see that?
21  A.   I do.
22  Q.   And it says here that you had relayed from time to time
23  concerns to the UEP staff.  Is that what you previously
24  testified to?
25  A.   Yes.  And I just related to Irving and to others, Don in

1    Albuquerque right after I drafted this letter.
2    Q.   When you referred to the hidden agenda, what were you
3    referring to?
4    A.   What I had talked to about earlier, the hidden agenda is
5    you're hiding your price fixing schematic behind an Animal
6    Welfare Program.
7    Q.   Now, the next sentence, it says:  In short, we believe if
8    not carried forward properly, a strong case could not be made
9    that the Animal Welfare Program is in essence a program being
10   offered by our trade association and its members to reduce
11   outputs in an effort to increase prices.
12            Do you see that?
13   A.   I do.
14   Q.   Is that a belief that you would have held at the time?
15   A.   Yes.
16   Q.   Is that once again a belief that you expressed to the UEP
17   staff prior to writing this letter?
18   A.   Numerous times.
19   Q.   And what, if anything, does that paragraph have, that
20   sense have to do with the hidden agenda that you referred to
21   in the prior sentence?
22   A.   Well, I think it -- at least it's trying to directly tie
23   it.  If you don't roll this out properly, meaning if this is
24   not offered and sold to the public and to our customers as
25   truly an Animal Welfare Program, they're going to start

1    allegations, and what I was getting at was I was simply asking
2    questions.  Irving's response seems to think that I was making
3    allegations.  I was asking the questions, Irving.  You didn't
4    answer them, so when I talk to you in earnest about them --
5    Q.   Just to be clear, Mr. Isaacson -- you can put that
6    down -- Mr. Isaacson was the outside lawyer for UEP, right?
7    A.   Correct.
8    Q.   And he -- and you knew him?
9    A.   Yep.
10   Q.   In your letter, you said you were raising questions,
11   right?  Yes?
12   A.   Yes.
13   Q.   Raising legal questions?
14   A.   And other questions.
15   Q.   Right.  And you were -- you were writing this letter
16   lawyer to lawyer, right, asking -- asking Mr. Isaacson to look
17   at these issues lawyer to lawyer.  You're a lawyer, right?
18   A.   Yep.
19   Q.   And you were writing lawyer to lawyer, correct?
20   A.   Yes.
21   Q.   And this letter that was signed by you was based on your
22   legal education, your training, and experience, right?
23   A.   Yes.
24   Q.   Because you were the general counsel for Sparboe, right?
25   A.   That's correct.

1  Q.  And you were a member of the bar; is that correct?
2  A.  Yes.
3  Q.  Member of the Minnesota bar?
4  A.  Yes.
5  Q.  Good standing?
6  A.  Yes.
7  Q.  Have you always been in good standing in the Minnesota
8  bar?
9  A.  Yes.
10 Q.  Have you ever been disciplined?
11 A.  Yes.
12 Q.  And you were disciplined.  You were publicly reprimanded?
13 A.  Yes.
14 Q.  And you were on probation?
15 A.  Yes.
16 Q.  Your law license was on probation for two years?
17 A.  Okay.  Yes.
18 Q.  And that was before you joined Sparboe, correct?
19 A.  It was in 1995.
20 Q.  And in this letter that you wrote in November of 2003 --
21         MR. KING:  If we can put up Exhibit 691.
22 BY MR. KING:
23 Q.  One of the things you say here --
24 A.  I don't have it.  It hasn't come up.
25         MR. KING:  Can you give us Exhibit 691?

1  We'll go through to about 12:30, and then we'll be done for
2  the day tomorrow on that basis.  So have a lovely evening.  Do
3  not worry, think about or do anything relating to this case,
4  but have a safe journey home and come back here.  See you
5  tomorrow, 9:30.
6              THE DEPUTY CLERK:  All rise.
7              (Jury out.)
8              THE COURT:  There you go.  See you tomorrow, 9:30.
9  And what deposition is it going to be, by the way?
10             MR. PATTON:  Mr. Gregory's deposition.
11             THE COURT:  I'm sorry?
12             MR. PATTON:  Mr. Gregory's deposition.
13             THE COURT:  Okay.
14             (Court adjourned.)
15
16
                        C E R T I F I C A T E
17
18       I certify that the foregoing is a correct transcript
19  from the record of the proceedings in the above-entitled
20  matter.
21
22
23                              _____
24                              Kathleen Feldman, CSR, CRR, RPR, CM
                                Official Court Reporter
25