# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: PROCESSED EGG PRODUCTS | ) | |
| ANTITRUST LITIGATION | ) | |
| | ) | |
| | ) | MDL Docket No. 2002 |
| THIS DOCUMENT APPLIES TO: | ) | 08-md-02002 (GP) |
| | ) | |
| | ) | |
| Kraft Foods Global, Inc. et al. v. United Egg | ) | |
| Producers, Inc., et al. | ) | |
| | ) | |
| Civil Action No. 2:12-cv-00088 | ) | |
| | ) | |

## THE KRAFT PLAINTIFFS' OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSION

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, the Kraft Plaintiffs by and through their attorneys, Jenner & Block LLP, submit the following objections and responses to Defendants' First Set of Requests for Admission.

### GENERAL OBJECTIONS

1. The Kraft Plaintiffs object to these Request for Admission, including the Definitions, Instructions, and specific Requests, to the extent that they seek to impose on the Kraft Plaintiffs any requirements that are beyond or inconsistent with the requirements imposed by the applicable rules of this Court. The Kraft Plaintiffs respond only to the extent required by those rules.

2. The Kraft Plaintiffs object to these Requests for Admission, including the Definitions, Instructions, and specific Requests, to the extent they seek information or material protected by the attorney-client privilege, the work product doctrine, or any other applicable

privilege, doctrine, or immunity. The inadvertent production of any material protected by the attorney client privilege, the work product doctrine, or any other applicable privilege, doctrine, or immunity is not intended and should not be construed to constitute a waiver and the Kraft Plaintiffs reserve their right to demand the return or destruction of any inadvertently produced document.

3.      The Kraft Plaintiffs object to these Requests for Admission, including the Definitions, Instructions, and specific Requests, to the extent they purport to require the Kraft Plaintiffs to provide information that is not in their possession, custody, or control and/or to identify information that is in the possession, custody, or control of others.

4.      The Kraft Plaintiffs object to these Requests for Admission, including the Definitions, Instructions, and specific Requests, to the extent they seek information already in Defendants' possession, custody, or control, that are publicly available, that are equally available from other parties to the litigation, or that is duplicative of information already provided.

5.      The Kraft Plaintiffs object to these Requests for Admission, including the Definitions, Instructions, and specific Requests, to the extent they are duplicative, unreasonably cumulative, and/or harassing, and responding thereto will cause unnecessary expense.

6.      The Kraft Plaintiffs object to these Requests for Admission, including the Definitions, Instructions, and specific Requests, to the extent they are vague, ambiguous, overly broad, unduly burdensome, or seek information that is not reasonably calculated to lead to the discovery of admissible evidence.

7.     Any statement by the Kraft Plaintiffs that they will provide information does not and should not be construed to constitute an admission or representation that such information exists or that such information is in the Kraft Plaintiffs' possession, custody, or control.

8.     The Kraft Plaintiffs do not, by responding to these Requests for Admission, acknowledge agreement with any descriptions or assumptions contained therein.

9.     The Kraft Plaintiffs reserve all evidentiary objections and issues under the Federal Rules of Evidence.

10.     The Kraft Plaintiffs reserve the right to supplement their answers and/or add other objections if the Kraft Plaintiffs discover at a later date that supplementation or additional objection is warranted based on new or previously unknown information.

11.     The Kraft Plaintiffs object to Defendants' Requests for Admission to the extent they seek information outside the relevant time period set by the Court, namely, January 1, 1999 to December 31, 2008 ("Relevant Time Period").

12.     The Kraft Plaintiffs' decision to provide information pursuant to these Requests for Admission, notwithstanding the objectionable nature of the requests, the definitions, or the instructions, should not be construed as: (a) a stipulation that the material is relevant; or (b) a waiver of the general or specific Objections asserted hereto.  The Kraft Plaintiffs specifically reserve all objections as to the competency, relevancy, materiality, and admissibility of the information provided, all objections as to burden, vagueness, unintelligibility, overbreadth, and ambiguity, and all rights to object to the use of any documents or information in any subsequent proceeding, including, without limitation, the trial of this action.

13.     Each Request for Admission, as well as all factual premises within each such request, is denied to the extent that the request, and each factual premise within each request, is not expressly admitted in the specific response below to each request.

14.     These General Objections are incorporated in the Specific Objections and Responses below.

### SPECIFIC OBJECTIONS AND RESPONSES TO REQUESTS FOR ADMISSION

1.     Admit that You have purchased UEP Certified eggs or egg products.

**RESPONSE:** Admitted.

2.     Admit that You have sought to purchase UEP Certified eggs or egg products.

**RESPONSE:** Admitted with respect to Plaintiffs Kraft, Kellogg, and Nestle.  Denied as to Plaintiff General Mills.

3.     Admit that You have communicated with one or more of Your suppliers regarding the purchase of eggs or egg products that were UEP Certified.

**RESPONSE:** Admitted with respect to Plaintiffs Kraft, Kellogg, and Nestle.  Denied as to Plaintiff General Mills.

4.     Admit that You have requested that one or more of Your suppliers provide You with UEP Certified eggs or egg products.

**RESPONSE:** Admitted with respect to Plaintiffs Kraft, Kellogg, and Nestle.  Denied as to Plaintiff General Mills.

5.     Admit that You have requested that one or more of the Defendants provide You with eggs or egg products that were UEP Certified.

**RESPONSE:** Admitted with respect to Plaintiffs Kraft, Kellogg, and Nestle.  Denied as to Plaintiff General Mills.

6.    Admit that You have required that one or more of Your suppliers provide You with eggs or egg products that were UEP Certified.

**RESPONSE:** Admitted with respect to Plaintiffs Kraft, Kellogg, and Nestle. Denied as to Plaintiff General Mills.

7.    Admit that You have required that one or more of the Defendants provide You with eggs or egg products that were UEP Certified.

**RESPONSE:** Admitted with respect to Plaintiffs Kraft, Kellogg, and Nestle. Denied as to Plaintiff General Mills.

8.    Admit that one or more of the suppliers who sold UEP Certified eggs or egg products to You explained its costs of production to You.

**RESPONSE:** Admitted with respect to Plaintiff Kraft. Denied as to Plaintiffs Kellogg, Nestle, and General Mills.

9.    Admit that one or more of the Defendants who sold UEP Certified eggs or egg products to You explained its costs of production to You.

**RESPONSE:** Admitted with respect to Plaintiff Kraft. Denied as to Plaintiffs Kellogg, Nestle, and General Mills.

10.    Admit that one or more of the suppliers who sold UEP Certified eggs or egg products to You explained that its costs of production for eggs or egg products were increased as a result of participating in the UEP Certified program.

**RESPONSE:** Admitted with respect to Plaintiff Kraft. Denied as to Plaintiffs Kellogg, Nestle, and General Mills.

11.    Admit that one or more of the Defendants who sold UEP Certified eggs or egg products to You explained that its costs of production for eggs or egg products were increased as a result of participating in the UEP Certified program.

**RESPONSE:** Admitted with respect to Plaintiff Kraft. Denied as to Plaintiffs Kellogg, Nestle, and General Mills.

5

12.     Admit that one or more of the suppliers who sold UEP Certified eggs or egg products to You explained that the UEP Certified program was designed to increase the average cage space per bird to approximately 67 square inches per laying hen.

**RESPONSE:** Admitted.

13.     Admit that one or more of the Defendants who sold UEP Certified eggs or egg products to You explained that the UEP Certified program was designed to increase the average cage space per bird to approximately 67 square inches per laying hen.

**RESPONSE:** Admitted.

14.     Admit that You knew that You would pay an additional price for one or more UEP Certified eggs or egg products sold to You.

**RESPONSE:** Admitted with respect to Plaintiffs Kraft, Kellogg, and Nestle.  Denied as to Plaintiff General Mills.

15.     Admit that You knew that You would pay an additional price for one or more UEP Certified eggs or egg products sold to You by one or more of the Defendants.

**RESPONSE:** Admitted with respect to Plaintiffs Kraft, Kellogg, and Nestle.  Denied as to Plaintiff General Mills.

16.     Admit that You have sold UEP Certified eggs or egg products.

**RESPONSE:** Denied.

17.     Admit that You have advertised or marketed one or more eggs or egg products as being UEP Certified.

**RESPONSE:** Denied.

18.     Admit that one or more of Your customers has requested that You sell UEP Certified eggs or egg products.

**RESPONSE:** Denied.

19.     Admit that one or more entities or organizations has requested that You sell UEP Certified eggs or egg products.

**RESPONSE:** Denied.


20.     Admit that You have purchased one or more eggs or egg products that are labeled or otherwise marketed as "Certified Humane."

**RESPONSE:** Denied.


21.     Admit that You have sought to purchase one or more eggs or egg products that are labeled or otherwise marketed as "Certified Humane."

**RESPONSE:** Denied.


22.     Admit that You have communicated with one or more of Your suppliers regarding the purchase of eggs or egg products that are labeled or otherwise marketed as "Certified Humane."

**RESPONSE:** Denied.


23.     Admit that You have requested that one or more of Your suppliers provide You with eggs or egg products that are labeled or otherwise marketed as "Certified Humane."

**RESPONSE:** Denied.


24.     Admit that You have requested that one or more Defendant provide You with eggs or egg products that are labeled or otherwise marketed as "Certified Humane."

**RESPONSE:** Denied.


25.     Admit that You have sold eggs or egg products that are labeled or otherwise marketed as "Certified Humane."

**RESPONSE:** Denied.


26.     Admit that you have advertised or marketed one or more eggs or egg products as being "Certified Humane."

**RESPONSE:** Denied.

7

27.     Admit that one or more of Your customers has requested that You sell eggs or egg products that are "Certified Humane."

**RESPONSE:** Denied.


28.     Admit that one or more entities or organizations has requested that You sell eggs or egg products that are "Certified Humane."

**RESPONSE:** Denied.


29.     Admit that You have purchased one or more eggs or egg products that are marketed as having been produced in a humane manner.

**RESPONSE:** Denied.


30.     Admit that You have sought to purchase one or more eggs or egg products that are marketed as having been produced in a humane manner.

**RESPONSE:** Denied.


31.     Admit that You have communicated with one or more of Your suppliers regarding the purchase of one or more eggs or egg products that are marketed as having been produced in a humane manner.

**RESPONSE:** Kraft Plaintiffs' object to Request for Admission No. 31 on the grounds that "egg or egg products that are marketed as having been produced in a humane manner" is undefined and is vague and ambiguous.


32.     Admit that You have requested that one or more of Your suppliers provide You with eggs or egg products that are marketed as having been produced in a humane manner.

**RESPONSE:** Kraft Plaintiffs' object to Request for Admission No. 32 on the grounds that "egg or egg products that are marketed as having been produced in a humane manner" is undefined and is vague and ambiguous.


33.     Admit that You have requested that one or more of the Defendants provide You with eggs or egg products that are marketed as having been produced in a humane manner.

**RESPONSE:** Kraft Plaintiffs' object to Request for Admission No. 33 on the grounds that "egg or egg products that are marketed as having been produced in a humane manner" is undefined and is vague and ambiguous.

34.     Admit that You have sold one or more eggs or egg products that are marketed as having been produced in a humane manner.

**RESPONSE:** Denied.

35.     Admit that you have advertised or marketed one or more eggs or egg products as having been produced in a humane manner.

**RESPONSE:** Denied.

36.     Admit that one or more of Your customers has requested that You sell eggs or egg products produced in a humane manner.

**RESPONSE:** Denied.

37.     Admit that one or more entities or organizations has requested that You sell eggs or egg products produced in a humane manner.

**RESPONSE:** Denied.

38.     Admit that You have purchased one or more eggs or egg products that are marketed as having been produced in a manner that is beneficial to the well-being, welfare, comfort, health, or safety of animals.

**RESPONSE:** Kraft Plaintiffs' object to Request for Admission No. 38 on the grounds that "egg or egg products that are marketed as having been produced in a manner that is beneficial to the well-being, welfare, comfort, health, or safety of animals" is undefined and is vague and ambiguous.

39.     Admit that You have sought to purchase one or more eggs or egg products that are marketed as having been produced in a manner that is beneficial to the well-being, welfare, comfort, health, or safety of animals.

**RESPONSE:** Kraft Plaintiffs' object to Request for Admission No. 39 on the grounds that "egg or egg products that are marketed as having been produced in a manner that is beneficial to the well-being, welfare, comfort, health, or safety of animals" is undefined and is vague and ambiguous.

40.    Admit that You have communicated with one or more of Your suppliers regarding the purchase of eggs or egg products that are marketed as having been produced in a manner that is beneficial to the well-being, welfare, comfort, health, or safety of animals.

**RESPONSE:** Kraft Plaintiffs' object to Request for Admission No. 40 on the grounds that "egg or egg products that are marketed as having been produced in a manner that is beneficial to the well-being, welfare, comfort, health, or safety of animals" is undefined and is vague and ambiguous.

41.    Admit that You have requested that one or more of Your suppliers provide You with eggs or egg products that are marketed as having been produced in a manner that is beneficial to the well-being, welfare, comfort, health, or safety of animals.

**RESPONSE:** Kraft Plaintiffs' object to Request for Admission No. 41 on the grounds that "egg or egg products that are marketed as having been produced in a manner that is beneficial to the well-being, welfare, comfort, health, or safety of animals" is undefined and is vague and ambiguous.

42.    Admit that You have requested that one or more of the Defendants provide You with eggs or egg products that are marketed as having been produced in a manner that is beneficial to the well-being, welfare, comfort, health, or safety of animals.

**RESPONSE:** Kraft Plaintiffs' object to Request for Admission No. 42 on the grounds that "egg or egg products that are marketed as having been produced in a manner that is beneficial to the well-being, welfare, comfort, health, or safety of animals" is undefined and is vague and ambiguous.

43.     Admit that You have sold one or more eggs or egg products that are marketed as having been produced in a manner that is beneficial to the well-being, welfare, comfort, health, or safety of animals.

**RESPONSE:** Denied.

44.     Admit that You have advertised or marketed one or more eggs or egg products as having been produced in a manner that is beneficial to the well-being, welfare, comfort, health, or safety of animals.

**RESPONSE:** Denied.

45.     Admit that one or more of Your customers has requested that You sell eggs or egg products produced in a manner that is beneficial to the well-being, welfare, comfort, health, or safety of animals.

**RESPONSE:** Denied.

46.     Admit that one or more entities or organizations has requested that You sell eggs or egg products produced in a manner that is beneficial to the well-being, welfare, comfort, health, or safety of animals.

**RESPONSE:** Denied.

47.     Admit that You have purchased cage-free eggs or egg products.

**RESPONSE:** Denied.

48.     Admit that You have sought to purchase cage free eggs or egg products.

**RESPONSE:** Denied.

49.     Admit that You have communicated with one or more of Your suppliers regarding the purchase of cage-free eggs or egg products.

**RESPONSE:** Denied.

50.     Admit that You have requested that one or more of Your suppliers provide You with cage-free eggs or egg products.

**RESPONSE:** Denied.

51.     Admit that You have requested that one or more of the Defendants provide You with cage-free eggs or egg products.

**RESPONSE:** Denied.

52.     Admit that You have sold cage-free eggs or egg products.

**RESPONSE:** Denied.

53.     Admit that You have advertised or marketed one or more eggs or egg products as being cage-free.

**RESPONSE:** Denied.

54.     Admit that one or more of Your customers has requested that You sell cage-free eggs or egg products.

**RESPONSE:** Denied.

55.     Admit that one or more entities or organizations has requested that You sell cage-free eggs or egg products.

**RESPONSE:** Denied.

56.     Admit that You have purchased free-range eggs or egg products.

**RESPONSE:** Denied.

57.     Admit that You have sought to purchase free-range eggs or egg products.

**RESPONSE:** Denied.

58.     Admit that You have communicated with one or more of Your suppliers regarding the purchase of free-range eggs or egg products.

**RESPONSE:** Denied.

59.     Admit that You have requested that one or more of Your suppliers provide You with free-range eggs or egg products.

**RESPONSE:** Denied.

60.    Admit that You have requested that one or more of the Defendants provide You with free-range eggs or egg products.

**RESPONSE:** Denied.


61.    Admit that You have sold free-range eggs or egg products.

**RESPONSE:** Denied.


62.    Admit that You have advertised or marketed one or more eggs or egg products as being free-range.

**RESPONSE:** Denied.


63.    Admit that one or more of Your customers has requested that You sell free-range eggs or egg products.

**RESPONSE:** Denied.


64.    Admit that one or more entities or organizations has requested that You sell free-range eggs or egg products.

**RESPONSE:** Denied.


65.    Admit that, prior to September 2004, You were aware of the existence of the UEP Certified program.

**RESPONSE:** Admitted.


66.    Admit that, prior to September 2004, You were aware that the UEP Certified program required that certain egg producers provide egg-laying hens additional cage space.

**RESPONSE:** Admitted.


67.    Admit that, prior to September 2004, You were aware of some of the requirements of the UEP Certified program.

**RESPONSE:** Admitted.


68.    Admit that, prior to September 2004, You were aware that some egg producers were exporting eggs outside the United States through USEM.

13

**RESPONSE:** Denied.

69.　　Admit that for at least part of the period from January 1, 1999 to December 31, 2008, Kraft Food Group, Inc. was a subsidiary of Kraft Foods Inc. ("Kraft").

**RESPONSE:** Admitted.

70.　　Admit that for the fiscal year ended December 31, 2001, Kraft's reported earnings before deferred income tax, depreciation, and amortization were $1,882,000,000. (*See* Kraft Foods Inc., Annual Report (Form 10-K), at 41 (Mar. 14, 2002)).

**RESPONSE:** The Kraft Plaintiffs object to Request for Admission No. 70 on the

grounds that (1) they are addressed to the Kraft Plaintiffs' "downstream" financial and

commercial information which is not relevant to any claim or defense in this price-fixing case

and (2) they are not reasonably calculated to lead to the discovery of admissible evidence.

71.　　Admit that for the fiscal year ended December 31, 2002, Kraft's reported earnings before deferred income tax, depreciation, and amortization were $3,394,000,000. (*See* Kraft Foods Inc., Annual Report (Form 10-K), at 46, Exh. 13 (Mar. 25 , 2003)).

**RESPONSE:** See response to Request for Admission No. 70.

72.　　Admit that for the fiscal year December 31, 2003, Kraft's reported earnings before deferred income tax, depreciation, and amortization were $3,476,000,000. (*See* Kraft Foods Inc., Annual Report (Form 10-K), at 42, Exh. 13 (Mar. 12, 2004)).

**RESPONSE:** See response to Request for Admission No. 70.

73.　　Admit that for the fiscal year ended December 31, 2004, Kraft's reported earnings before deferred income tax, depreciation, and amortization were $2,665,000,000. (*See* Kraft Foods Inc., Annual Report (Form 10-K), at 51 (Mar. 11, 2005)).

**RESPONSE:** See response to Request for Admission No. 70.

74.　　Admit that for the fiscal year ended December 31, 2005, Kraft's reported earnings before deferred income tax, depreciation, and amortization were $2,632,000,000. (*See* Kraft Foods Inc., Annual Report (Form 10-K), at 55 (Mar. 10, 2006)).

**RESPONSE:** See response to Request for Admission No. 70.

75.     Admit that for the fiscal year ended December 31, 2006, Kraft's reported earnings before deferred income tax, depreciation, and amortization were $3,060,000,000. (*See* Kraft Foods Inc., Annual Report (Form 10-K), at 58 (Mar. 1, 2007)).

**RESPONSE:** See response to Request for Admission No. 70.

76.     Admit that for the fiscal year ended December 31, 2007, Kraft's reported earnings before deferred income tax, depreciation, and amortization were $2,590,000,000. (*See* Kraft Foods Inc., Amended Annual Report (Form 10-K), at 48 (Feb. 26, 2008)).

**RESPONSE:** See response to Request for Admission No. 70.

77.     Admit that for the fiscal year ended December 31, 2008, Kraft's reported earnings before deferred income tax, depreciation, and amortization were $2,901,000,000. (*See* Kraft Foods Inc., Annual Report (Form 10-K), at 51 (Feb. 27, 2009)).

**RESPONSE:** See response to Request for Admission No. 70.

78.     Admit that for the fiscal year 1999, the Kellogg Company's ("Kellogg") reported earnings, before interest, taxes, depreciation, and amortization, were $388,300,000. (*See* Kellogg Company, Annual Report (Form 10-K), at 19, Exh. 13.01, Annual Report to Share Owners (Mar. 24, 2000)).

**RESPONSE:** See response to Request for Admission No. 70.

79.     Admit that for the fiscal year December 31, 2000, Kellogg's reported earnings, before interest, taxes, depreciation, and amortization, were $587,700,000. (*See* Kellogg Company, Annual Report (Form 10-K), at 14, Exh. 13.01, Pages from the Company's Annual Report (Mar. 13, 2001)).

**RESPONSE:** See response to Request for Admission No. 70.

80.     Admit that for the fiscal year ended December 31, 2001, Kellogg's reported earnings, before interest, taxes, depreciation, and amortization were $473,600,000. (*See* Kellogg Company, Annual Report (Form 10-K), at 29, Exh. 13.01 (Mar. 25, 2002)).

**RESPONSE:** See response to Request for Admission No. 70.

81.     Admit that for the fiscal year ended December 28, 2002, Kellogg's reported earnings, before interest, taxes, depreciation, and amortization were $720,900,000. (*See* Kellogg Company, Annual Report (Form 10-K), at 32, Exh. 13.01, (Mar. 14, 2003)).

**RESPONSE:** See response to Request for Admission No. 70.

82.     Admit that for the fiscal year December 27, 2003, Kellogg's reported earnings, before interest, taxes, depreciation, and amortization were $787,100,000. (*See* Kellogg Company, Annual Report (Form 10-K), at 34, Exh. 13.01, Annual Report to Share Owners for the Fiscal Year (Mar. 10, 2004)).

**RESPONSE:** See response to Request for Admission No. 70.

83.     Admit that for the fiscal year ended January 1, 2005, Kellogg's reported earnings, before interest, taxes, depreciation, and amortization were $890,600,000. (*See* Kellogg Company, Annual Report (Form 10-K), at 36, Exh. 13.01, Annual Report to Share Owners for the Fiscal Year: Consolidated Statement of Cash Flows (Mar. 14, 2005)).

**RESPONSE:** See response to Request for Admission No. 70.

84.     Admit that for the fiscal year ended December 31, 2005, Kellogg's reported earnings, before interest, taxes, depreciation, and amortization were $980,400,000. (*See* Kellogg Company, Annual Report (Form 10-K), at 26 (Feb. 28, 2006)).

**RESPONSE:** See response to Request for Admission No. 70.

85.     Admit that for the fiscal year ended December 30, 2006, Kellogg's reported earnings, before interest, taxes, depreciation, and amortization were $1,004,100,000. (*See* Kellogg Company, Annual Report (Form 10-K), at 30 (Feb. 23, 2007)).

**RESPONSE:** See response to Request for Admission No. 70.

86.     Admit that for the fiscal year ended December 29, 2007, Kellogg's reported earnings, before interest, taxes, depreciation, and amortization were $1,103,000,000. (*See* Kellogg Company, Annual Report (Form 10-K), at 33 (Feb. 25, 2008)).

**RESPONSE:** See response to Request for Admission No. 70.

87.     Admit that for the fiscal year ended January 3, 2009, Kellogg's reported earnings, before interest, taxes, depreciation, and amortization were $1,148,000,000. (*See* Kellogg Company, Annual Report (Form 10-K), at 31 (Feb. 24, 2009)).

**RESPONSE:** See response to Request for Admission No. 70.

88.     Admit that for the fiscal year ended May 30, 1999, General Mills Inc.'s ("General Mills") reported earnings before taxes, depreciation, and amortization were $534,500,000. (*See* General Mills Inc., Amended Annual Report (Form 10-K) (Aug. 23, 1999)).

**RESPONSE:** See response to Request for Admission No. 70.


89.     Admit that for the fiscal year ended May 28, 2000, General Mills' reported earnings before taxes, depreciation, and amortization were $614,400,000. (*See* General Mills Inc., Amended Annual Report (Form 10-K), at 24, Exh. 13, Portions of 2000 Annual Report (Nov. 3, 2000)).

**RESPONSE:** See response to Request for Admission No. 70.


90.     Admit that for the fiscal year ended May 27, 2001, General Mills' reported earnings before taxes, depreciation, and amortization were $665,100,000. (*See* General Mills Inc., Annual Report (Form 10-K), at 25, Exh. 13, 2001 Annual Report to Stockholders (Aug. 15, 2001)).

**RESPONSE:** See response to Request for Admission No. 70.


91.     Admit that for the fiscal year ended May 26, 2002, General Mills' reported earnings before taxes, depreciation, and amortization were $458,000,000. (*See* General Mills Inc., Annual Report (Form 10-K), at 28, Exh. 13, 2002 Annual Report to Stockholders ((Aug. 14, 2002)).

**RESPONSE:** See response to Request for Admission No. 70.


92.     Admit that for the fiscal year ended May 25, 2003, General Mills' reported earnings before taxes, depreciation, and amortization were $917,000,000. (*See* General Mills Inc., Annual Report (Form 10-K), at 24 (Aug. 5, 2003)).

**RESPONSE:** See response to Request for Admission No. 70.


93.     Admit that for the fiscal year ended May 30, 2004, General Mills' reported earnings before taxes, depreciation, and amortization were $1,055,000,000. (*See* General Mills Inc., Annual Report (Form 10-K), at 23 (July 29, 2004)).

**RESPONSE:** See response to Request for Admission No. 70.


94.     Admit that for the fiscal year ended May 29, 2005, General Mills' reported earnings before taxes, depreciation, and amortization were $1,240,000,000. (*See* General Mills Inc., Annual Report (Form 10-K), at 30 (July 28, 2005)).

**RESPONSE:** See response to Request for Admission No. 70.

95.     Admit that for the fiscal year ended May 28, 2006, General Mills' reported earnings before taxes, depreciation, and amortization were $1,090,000,000. (*See* General Mills Inc., Annual Report (Form 10-K), at 34 (July 27, 2006)).

**RESPONSE:** See response to Request for Admission No. 70.

96.     Admit that for the fiscal year ended May 27, 2007, General Mills' reported earnings before taxes, depreciation, and amortization were $1,144,000,000. (*See* General Mills Inc., Annual Report (Form 10-K), at 22 (July 26, 2007)).

**RESPONSE:** See response to Request for Admission No. 70.

97.     Admit that for the fiscal year ended May 25, 2008, General Mills' reported earnings before taxes, depreciation, and amortization were $1,294,700,000. (*See* General Mills Inc., Annual Report (Form 10-K), at 25 (July 11, 2008)).

**RESPONSE:** See response to Request for Admission No. 70.

98.     Admit that for the fiscal year ended May 31, 2009, General Mills' reported earnings before taxes, depreciation, and amortization were $1,304,400,000. (*See* General Mills Inc., Annual Report (Form 10-K), at 30 (July 13, 2009)).

**RESPONSE:** See response to Request for Admission No. 70.

99.     Admit that for the fiscal year ending in 1999, Nestlé USA, Inc.'s ("Nestlé") sales were greater than or equal to $8,000,000,000.

**RESPONSE:** See response to Request for Admission No. 70.

100.     Admit that for the fiscal year ending in 2000, Nestlé's sales were greater than or equal to $8,000,000,000.

**RESPONSE:** See response to Request for Admission No. 70.

101.     Admit that for the fiscal year ending in 2001, Nestlé's sales were greater than or equal to $8,000,000,000.

**RESPONSE:** See response to Request for Admission No. 70.

102.    Admit that for the fiscal year ending in 2002, Nestlé's sales were greater than or equal to $8,000,000,000.

**RESPONSE:** See response to Request for Admission No. 70.


103.    Admit that for the fiscal year ending in 2003, Nestlé's sales were greater than or equal to $12,000,000,000. (*See Nestle Launches NESTLE® Good Start® Supreme Soy DHA & ARA*, PR Newswire, Http://Www.Prnewswire.Com/News-Releases/Nestle-Launches-Nestler-Good-Startr-Supreme-Soy-Dha-Ara-75362602.Html, last visited Aug. 2, 2013).

**RESPONSE:** See response to Request for Admission No. 70.


104.    Admit that for the fiscal year ending in 2004, Nestlé's sales were greater than or equal to $12,000,000,000. (*See Bitter Holidays for Nestle USA*, WashTech, Dec. 2, 2005, http://archive.washtech.org/news/industry/display.php?ID_Content=5027, last visited Aug. 2, 2013).

**RESPONSE:** See response to Request for Admission No. 70.


105.    Admit that for the fiscal year ending in 2005, Nestlé's sales were greater than or equal to $8,000,000,000. (*See Nestle FoodServices 'Breaks Ground' on New Culinary Innovation Center in Solon*, Thomasnet, Oc. 6, 2006, http://news.thomasnet.com/companystory/Nestle-FoodServices-Breaks-Ground-on-New-Culinary-Innovation-Center-in-Solon-507624, last visited Aug. 2, 2013).

**RESPONSE:** See response to Request for Admission No. 70.


106.    Admit that for the fiscal year ending in 2006, Nestlé's sales were greater than or equal to $8,000,000,000. (*See Half A Million Free Candy Bars!*, PR Newswire, http://www.prnewswire.com/news-releases/half-a-million-free-candy-bars-52747272.html, last visited Aug. 2, 2013).

**RESPONSE:** See response to Request for Admission No. 70.


107.    Admit that for the fiscal year ending in 2007, Nestlé's sales were greater than or equal to $8,000,000,000. (*See Nestle USA Announces Official Name Change for Butterfinger® Candy Bar*, The Free Library, Apr. 1, 2008, http://www.thefreelibrary.com/Nestle+USA+Announces+Official+Name+Change+for+BUTTE RFINGER(R)+Candy...-a0177307589, last visited Aug. 2, 2013).

**RESPONSE:** See response to Request for Admission No. 70.

108.     Admit that for the fiscal year ending in 2008, Nestlé's sales were greater than or equal to $8,000,000,000. (*See Day in the life interview: Nestle USA Brand Manager*, JOBS IN PODS, Aug. 9, 2009, http://jobsinpods.com/2009/08/05/day-in-the-life-interview-nestle-usa-brand-manager/)."

**RESPONSE:** See response to Request for Admission No. 70.

Dated:  May 30, 2014                         By: /s/Richard P. Campbell
                                             Richard P. Campbell
                                             James T. Malysiak
                                             Jenner & Block LLP
                                             353 North Clark Street
                                             Chicago, IL  60654-3456
                                             Tel:      (312) 222-9350
                                             Fax:      (312) 527-0484
                                             E-mail:   rcampbell@jenner.com

**CERTIFICATE OF SERVICE**

The undersigned, Richard P. Campbell, hereby certifies that on this 30th day of May, 2014, a true and correct copy of The Kraft Plaintiffs' Objections and Responses to Defendants' First Set of Requests for Admission was served upon Liaison Counsel for the Defendants by electronic email.


By:  /s/Richard P. Campbell
      Richard P. Campbell
      Jenner & Block LLP
      353 North Clark Street
      Chicago, IL  60654-3456
      Tel:      (312) 222-9350
      Fax:      (312) 527-0484
      E-mail:   rcampbell@jenner.com
      ***Counsel for Plaintiffs***