## UNITED STATES DISTRICT COURT
## IN THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KRAFT FOODS GLOBAL, INC., THE KELLOGG COMPANY, GENERAL MILLS, INC., and NESTLÉ USA, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:11-cv-08808 |
| v. | ) ) | Judge Charles R. Norgle |
| UNITED EGG PRODUCERS, INC., UNITED STATES EGG MARKETERS, INC., CAL-MAINE FOODS, INC., MICHAEL FOODS INC., and ROSE ACRE FARMS, INC. | ) ) ) ) ) ) | |
| Defendants. | ) | |

### DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 7 TO PRECLUDE REFERENCE TO THE ACTION OR INACTION OF ANY FEDERAL OR STATE ANTITRUST REGULATOR OR THE U.S. DEPARTMENT OF AGRICULTURE

## I.    INTRODUCTION

Plaintiffs' Motion *in Limine* No. 7 seeks two separate and distinct types of relief.  First, Plaintiffs seek to preclude reference to the decisions of federal or state antitrust agencies not to initiate actions against the Defendants, *i.e.*, so-called "non-enforcement" evidence.  Defendants have filed a separate motion *in limine* seeking to preclude evidence relating to federal investigations. Defs.' Mot. Lim., ECF No. 169.  Defendants contend that all aspects of enforcement actions should be precluded.  Allowing Plaintiffs to introduce evidence of the initiation of federal investigations while depriving Defendants of the opportunity to rebut this evidence with testimony and evidence relating to government inaction, *i.e.*, that no charges were brought or pursued by the federal government, would be unfairly prejudicial.  As such, Defendants respectfully request that the Court enter an order imposing a categorical bar on both enforcement *and* non-enforcement evidence, and also reserving, as the MDL Court did,

Defendants' right to introduce non-enforcement evidence if Plaintiffs somehow open the door by referencing or introducing evidence of government investigations or enforcement actions.

Second, Plaintiffs seek to preclude certain (if not all) evidence relating to the U.S. Department of Agriculture ("USDA"). Defendants do not oppose this aspect of Plaintiffs' Motion to the extent it seeks to preclude similar "non-enforcement" evidence, *i.e.*, that USDA did not raise concerns about the legality of the UEP Certified Program or otherwise suggest that USDA (through its inaction) believed the UEP Certified Program did not violate the antitrust laws. However, Defendants oppose Plaintiffs' Motion to the extent Plaintiffs seek to preclude all references to USDA, including the USDA's role as an independent, third-party auditor of the UEP Certified Program.

USDA's involvement in UEP and the UEP Certified Program is an essential fact about the UEP Certified Program, which Plaintiffs challenge as a sham and pretext, and will aid the jury in understanding how the Program was structured and how it worked. It is relevant to show the legitimacy of the UEP Certified Program as a *bona fide* animal welfare program designed to respond to customer demand, not a pretext for an illegal supply restriction scheme. It also is relevant to show the Program's procompetitive benefits, which the jury will have to weigh against any anticompetitive effects. And the USDA's involvement in the UEP Certified Program and at UEP meetings where key aspects of the alleged conspiracy were discussed openly undercuts the inference of conspiracy Plaintiffs will ask the jury to draw from circumstantial evidence. Further, given the voluminous references to the USDA in the proposed exhibits, it would be impractical and unduly prejudicial to redact or remove references to USDA altogether. Accordingly, the Court should deny this Motion to the extent it seeks to preclude references to USDA beyond "non-enforcement" evidence.

## II.    BACKGROUND

### A.    Prior DPP Ruling and DAP Stipulation on Government Inaction

In the Direct Purchaser Plaintiff ("DPP") case, the DPPs filed a motion *in limine* similar to the instant motion seeking to preclude any reference to the failure of any federal or state antitrust agency to initiate an enforcement action.  *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002 [hereinafter "MDL Court"], Mot. Lim. No. 10, ECF No. 1600 (E.D. Pa. Feb. 16, 2018).  The MDL Court granted this motion with one important caveat: "This ruling is not absolute. If the DPPs open the door to this non-enforcement evidence, the defendants may request reconsideration of this ruling."  MDL Court, Order at 1 n.1, ECF No. 1661 (E.D. Pa. Mar. 22, 2018).

In light of this prior ruling, the parties in the later Direct Action Plaintiff ("DAP") case stipulated and agreed that Defendants would not "introduce evidence, argument, or testimony referring to the failure of federal or state enforcement agencies to initiate an enforcement action concerning the UEP Certified Program."  MDL Court, Order at 2, ECF No. 1947 (E.D. Pa. Aug. 15, 201).  The stipulation noted that "[i]f DAPs open the door to non-enforcement evidence, however, Defendants may seek to present argument, evidence, or testimony that responds to any such non-enforcement evidence." *Id.*  Defendants believe the same contours should apply here.

### B.    Evidence Relating to USDA's Involvement in the Certified Program

When a producer joins the UEP Certified Program it agrees to be "audited annually by independent auditors (USDA/AMS or Validus), designated and approved by UEP." *See, e.g.*, Ex. A at 24, UE0140563 (UEP Animal Welfare Guidelines, 2008 Edition).  Plaintiffs have challenged these audits and their purpose, alleging that the audits were not a *bona fide*, procompetitive aspect of the UEP Certified Program, but rather a mechanism to enforce an illegal agreement to reduce supply.  *See* Second Am. Compl. ¶ 7(E), ECF No. 25/73-17 (alleging

3

that Defendants used "periodic audits to enforce the conspiratorial agreements and to provide a means to monitor for and detect cheating"). To rebut these allegations, as well as Plaintiffs' broader allegations of sham and pretext, Defendants intend to introduce evidence that UEP devised and implemented this independent annual audit feature of the UEP Certified Program directly in response to the expectations and demands of: the Scientific Advisory Committee ("SAC"); the Food Marketing Institute ("FMI"), a trade association to which many of these Plaintiffs belonged as associate members; the animal activists; and UEP members' customers. *See, e.g.*, Ex. B, Nov. 25, 2019 DAP Trial Tr. 104:12-21 (testifying that the SAC anticipated that the UEP Certified Program would have an audit because "there were many groups, FMI, NCCR, McDonald's, Burger King" calling for audits and "some of them set up their own"); Ex. C, Nov. 21, 2019 DAP Trial Tr. 58:12-21 (testifying that audits were viewed as crucial to FMI because "you can write the best guidelines in the world, but if no one's using them, then you're really not having an impact on welfare"); Ex. D, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. As Gene Gregory, former UEP President, explained: "We needed to find a way in which to make sure that we had a credible program, and so we urged USDA originally to be an auditing firm. We felt it was important to have a government agency doing the auditing as well as an independent agency doing the auditing." Ex. E, Gregory Dep. 851:11-17 (June 27, 2013).

In its capacity as an independent auditor, USDA is frequently mentioned in UEP documents relating to the UEP Certified Program. *See, e.g.*, Ex. F at 2, UE0153388 (Oct. 9, 2002 UEP Animal Welfare Committee Meeting) (confirming that USDA/AMS "would sign an agreement with UEP to provide 3rd party independent auditing of the UEP welfare guidelines");

Ex. G at 1, UE0153366 (Jan. 21, 2003 UEP Animal Welfare Committee Meeting) ("Howard

Magwire of USDA/AMS reported on the training of auditors. He further reported that during the

first year of the program, USDA plans to visit every facility for each company that request

USDA's audit service"); Ex. H, MPS-00123260 (Feb. 3, 2003 Letter from UEP to Certified

Members) (relaying USDA's plans for audits). Indeed, USDA is referenced in hundreds of

exhibits included on both parties' initial exhibit lists.

## III.     ARGUMENT

### A.     Non-Enforcement Evidence Should Be Admissible If Plaintiffs Open the Door

Defendants do not take issue with Plaintiffs' request to preclude evidence of the antitrust

regulators' decision to not pursue an enforcement action against Defendants, so long as the Court

similarly precludes evidence of the initiation of such enforcement actions, as requested by

Defendants in the separate motion *in limine* to preclude prior complaints, investigations and

settlements. Defs.' Mot. Lim., ECF No. 169. Regardless, any ruling on this Motion should not

be "absolute." MDL Court, Order at 1 n.1, ECF No. 1661 (E.D. Pa. Mar. 22, 2018). As Judge

Pratter previously acknowledged, Defendants should be permitted to introduce non-enforcement

evidence if Plaintiffs open the door to such evidence. *Id.*

The case law cited by Plaintiffs recognizes that evidentiary rulings are subject to change

depending on how events unfold at trial. *U.S. ex rel. El-Amin v. George Washington Univ.*, 533

F. Supp. 2d 12, 19 (D.D.C. 2008). For example, in *In re EpiPen Marketing, Sales Practices &*

*Antitrust Litigation*, No. 17-MD-2785, 2022 WL 226130, at *5 (D. Kan. Jan. 26, 2022), the court

expressly acknowledged that even though its ruling excluded government inaction evidence,

"plaintiffs could reopen the door to the evidence" and if they do, "defendant may raise the issue

again" at trial. The same reasoning should apply here.

The importance of reserving Defendants' right to introduce non-enforcement evidence if Plaintiffs open the door is exemplified by Plaintiffs' exhibit list, which includes a *Wall Street Journal* article reporting that "[f]ederal prosecutors have opened separate criminal probes into possible price-fixing by major egg producers". *See* Ex. I (Sept. 23, 2008 *Wall Street Journal* article entitled *Federal Prosecutors Probe Food-Price Collusion*). The article makes clear on its face that the government was investigating egg processors and does not suggest that the government investigation related to the allegations in this case. *Id.* at 2. To the contrary, the article expressly distinguishes the civil claims filed by Plaintiffs here, and indeed, no criminal probe was ever launched into the activity at the center of this case or into the activities of the Defendants who remain in this case. To the extent Plaintiffs are permitted to introduce or reference the *Wall Street Journal* article or any federal criminal investigation, Defendants should have the opportunity to rebut this evidence with testimony and evidence that the criminal investigation did not relate to the allegations in this case, and no charges were brought or pursued by the federal government.

Both enforcement and non-enforcement evidence should be precluded at trial, but if Plaintiffs somehow open the door by discussing the *Wall Street Journal* article, government investigations or enforcement actions, the Court should allow the Defendants to admit non-enforcement evidence at trial.

### B.    Evidence Relating to USDA is Relevant, and Preclusion of Such Evidence Would Prejudice Defendants Unfairly

Plaintiffs appear to engage in intentional ambiguity regarding precisely what "USDA evidence" they seek to preclude. Although Plaintiffs at times cast the Motion as limited to the

UEP Certified Program,[1] other language in the Motion and the relief it seeks is not so limited and suggests that Plaintiffs seek to preclude or redact all references to USDA.[2]

Plaintiffs further obfuscate the issue by stating that Defendants should be precluded from introducing evidence that "USDA was aware of UEP Certified Program, inspected egg production facilities, participated in UEP inspections and enforcement, ***and yet took no action***." Pls.' Mot. Lim. at 5, ECF No. 178 (emphases added). While Defendants agree not to present evidence or argue that USDA "took no action," Defendants oppose Plaintiffs' attempts to preclude other references to USDA, which explain an important aspect of the UEP Certified Program—the independent annual audit—and USDA's role in it. This evidence is non-prejudicial and should be admitted at trial.

Evidence relating to USDA's involvement in UEP and the UEP Certified Program is highly relevant to core issues in this case – whether Defendants conspired to reduce supply and whether Defendant's conduct was, on balance, reasonable or unreasonable. USDA's involvement in UEP and the UEP Certified Program rebuts Plaintiffs' allegations that the Certified Program was a sham and pretext for a conspiracy to reduce supply and, thus, is probative evidence that the conspiratorial agreement alleged by Plaintiffs never existed. The USDA was familiar with the audit procedures and aspects of the UEP Certified Program that Plaintiffs allege to be anti-competitive – including the cage space restrictions, 100 percent rule and ban on backfilling – and the USDA was present at many of the UEP meetings where these

---

[1] The relevant fact section of the Motion is titled "*The USDA's Awareness of the UEP Certified Program.*"  Pls.' Mot. Lim. No. 7 at 2, ECF No. 178.

[2] Section II of Plaintiffs' Motion is titled "*The Court Should Exclude Evidence Regarding the USDA,*" and the Plaintiffs' proposed order seeks to exclude *any* "USDA action or inaction."  Pls.' Mot. Lim. No. 7 at 5, ECF No. 178.

aspects of the Program were discussed openly. This openness and lack of secrecy is the antithesis of the conspiracy Plaintiffs will ask the jury to infer from circumstantial evidence.

In addition, the independent third-party audits conducted by USDA are part and parcel of the UEP Certified Program and how it was structured to meet customer demand and achieve procompetitive benefits. Defendants intend to introduce testimony and evidence explaining why USDA involvement in the UEP Certified Program was viewed as critical to the Certified Program's credibility, which in turn was critical to satisfy customer demand. Indeed, the involvement of USDA and Validus as independent, third-party auditors directly rebuts Plaintiffs' allegation that Defendants enforced the UEP Certified Program "through mandatory, non-public compliance audits" that were "controlled" by UEP. Second Am. Compl. ¶ 131, ECF No. 25/73-17. This evidence is necessary to provide "an accurate picture of events" regarding the UEP Certified Program. *Gonzalez v. DeTella*, 127 F.3d 619, 621 (7th Cir. 1997). And to preclude this evidence would deny the jury a complete understanding of the facts.[3]

The fact that USDA attended UEP meetings and served as an independent auditor will not create unfair prejudice or confusion. Evidence that explains how the UEP Certified Program – which is the centerpiece of Plaintiffs' alleged conspiracy – actually works and provides benefits to egg producers' customers is markedly different from evidence or testimony that states USDA did not raise concerns about the UEP Certified Program and implies that USDA believed

---

[3] In the Seventh Circuit, the "definition of relevancy . . . is an expansive one." *United States v. Pollard*, 790 F.2d 1309, 1312 (7th Cir. 1986), *overruled on other grounds United States v. Sblendorio*, 830 F.2d 1382, 1393 (7th Cir. 1987) ("[T]o be relevant evidence need only be a brick, not a wall"); *see also United States v. Brisk*, 171 F.3d 514, 525 (7th Cir. 1999) ("This is not a difficult standard to meet."). Under Rule 401, "[e]vidence which is essentially background in nature . . . is universally offered and admitted as an aid to understanding." Advisory Committee's Note, Fed. R. Evid. 401; *see* 1 McCormick On Evid. § 185 (8th ed.) ("[S]ome evidence that is merely ancillary to evidence that bears directly on the issues may be admissible.").

the UEP Certified Program did not violate antitrust laws. *See Egbert v. Nissan N. Am.*, No. 2:04-CV-00551 PGC, 2006 WL 6503320, at *8 (D. Utah Mar. 1, 2006) (finding "NHTSA studies" to be admissible while barring evidence of NHTSA's decision not to act to create a rule on laminated glass). Barring all evidence that relates to USDA in any way is an overly broad prohibition that is not necessary to prevent any prejudice associated with government "non-enforcement."[4]

Further, it would be impractical, if not impossible, to disentangle mention of USDA from the relevant evidence at trial. Hundreds of exhibits on both parties' initial exhibit lists refer to USDA, which illustrates USDA's integral involvement in the facts of the case. Any attempt to whitewash USDA's involvement through redactions would cause unfair prejudice to Defendants by leading the jury to speculate as to why evidence is being hidden. Take for example the February 3, 2003 letter from Gene Gregory (former UEP President) to UEP Certified producers, which is attached as Exhibit 49 to Plaintiffs' Santiago Proffer. *See* Ex. H. Plaintiffs intend to introduce this letter to show that "Gene Gregory acknowledged that some producers found that 'your customer is unwilling to pay your increased costs to meet these guidelines.'" Santiago Proffer at 21-22, ECF No. 164 (quoting Mr. Gregory's February 3, 2003 letter). The letter includes five bulleted points. *See* Ex. H. If the Court accepts Plaintiffs' invitation to "exclude evidence regarding the USDA" the fourth bullet point would be redacted in its entirety because it provides direct feedback from USDA on its plans for auditing UEP Certified members' facilities. The redaction of this background on the procedures for audits is unnecessary and prejudicial because it "may lead [the jury] to draw inaccurate inferences about what actually happened

---

[4] After all, "Rule 403 speaks not in terms of 'prejudice' but rather of 'unfair prejudice'—it is of course a truism that evidence is admissible only if it is prejudicial to the opponent (just another way of stating the concept of relevance)." *Regalado v. City of Chicago*, No. 96-C-3634, 1998 WL 919712, at *3 (N.D. Ill. Dec. 30, 1998).

(based on conjectures about why evidence is being hidden from their review)." *Gonzalez*, 127 F.3d at 621.

Because the probative value of USDA involvement in the UEP Certified Program substantially outweighs any danger of prejudice, this aspect of Plaintiffs' Motion should be denied.

## IV. CONCLUSION

For the foregoing reasons, this Motion should be denied to the extent it seeks a categorical bar on evidence relating to non-enforcement evidence and preclusion of all evidence referencing USDA.

Dated: September 16, 2022   Respectfully submitted,

*/s/ Robin P. Sumner*
Robin P. Sumner (robin.sumner@troutman.com)
Kaitlin L. Meola (kaitlin.meola@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
3000 Two Logan Square, 18th and Arch Streets
Philadelphia, PA 19103-2799
Tel: (215) 981-4000

Whitney R. Redding (whitney.redding@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
Union Trust Building
501 Grant Street, Suite 300
Pittsburgh, PA 15219-4429
Tel: (412) 454-5085

Robert E. Browne, Jr. (robert.browne@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
227 West Monroe Street, Suite 3900
Chicago, IL 60606
Tel: (312) 759-1923

*Counsel for Defendants United Egg Producers, Inc. & United States Egg Marketers, Inc.*

*/s/ Jay L. Levine*

Donald M. Barnes (dbarnes@porterwright.com)
Jay L. Levine (jlevine@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
2020 K. Street, N.W., Suite 600
Washington, D.C. 20006-1110
Tel: (202) 778-3000

James A. King (jking@porterwright.com)
Allen T. Carter (acarter@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
41 South High Street, Suite 2900
Columbus, OH 43215
Tel: (614) 227-2000

***Counsel for Defendant Rose Acre Farms, Inc.***

*/s/ Patrick M. Otlewski*
Patrick M. Collins (pcollins@kslaw.com)
Livia M. Kiser (lkiser@kslaw.com)
Patrick M. Otlewski (potlewski@kslaw.com)
Abigail Hoverman Terry (aterry@kslaw.com)
KING & SPALDING LLP
110 North Wacker Drive, 38th Floor
Chicago, IL 60606
Tel: (312) 995-6333

Lohr Beck (lohr.beck@kslaw.com)
(pro hac vice)
Andrew Chinsky (achinsky@kslaw.com)
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel: (404) 572-2812

Brian E. Robison (brian@brownfoxlaw.com)
(pro hac vice)
BROWN FOX PLLC
6303 Cowboys Way, Suite 450
Frisco, TX 75034
Tel: (972) 707-2809

***Counsel for Defendant Cal-Maine Foods, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2022, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants registered to receive service in this action.

*/s/ Robin P. Sumner*
Robin P. Sumner