# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| KRAFT FOODS GLOBAL, INC., THE KELLOGG COMPANY, GENERAL MILLS, INC., and NESTLÉ USA, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:11-cv-08808 |
| v. | ) ) | Judge Charles R. Norgle |
| UNITED EGG PRODUCERS, INC., UNITED STATES EGG MARKETERS, INC., CAL-MAINE FOODS, INC., MICHAEL FOODS INC., and ROSE ACRE FARMS, INC. | ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE CERTAIN EVIDENCE PREDATING THE ALLEGED CONSPIRACY**

Brandon D. Fox
Amy M. Gallegos (*admitted pro hac vice*)
JENNER & BLOCK LLP
515 South Flower Street
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199
bfox@jenner.com
agallegos@jenner.com

James T. Malysiak
Terrence J. Truax
Joel T. Pelz
Angela M. Allen
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Tel: (312) 222-9350
Fax: (312) 527-0484
jmalysiak@jenner.com
ttruax@jenner.com
jpelz@jenner.com
aallen@jenner.com

*Attorneys for Kraft Foods Global, Inc.; The Kellogg Company; General Mills, Inc.; and Nestlé USA, Inc.*

Defendants seek to preclude Plaintiffs from introducing at trial approximately twenty documents that Defendants argue are irrelevant because they pre-date the conspiracy. They also argue that the probative value of these documents is outweighed by the danger of unfair prejudice to Defendants and their potential to confuse the jury.

Defendants are wrong on both the law and the facts. Evidence that predates the start of an alleged conspiracy is relevant to show knowledge or intent of the conspirators to join the conspiracy, or the origin, scope, and/or contours of the conspiracy itself. *See United States v. Graham*, 83 F.3d 1466, 1473 (D.C. Cir. 1996). Additionally, all of the documents that Defendants seek to exclude are relevant as they tell an all-important story about UEP consultant Don Bell's exhortations that egg producers agree on a cage space requirement to restrict supply and the various efforts which ultimately led to the adoption of the UEP Certified Program. Evidence of these efforts and restrictions is relevant to show Defendants' intent to enter into a supply restriction scheme and to rebut Defendants' argument that the Certified Program and other UEP actions were implemented to foster hen welfare.[1]

Instead of addressing each of the documents they seek to exclude, Defendants address only a few and ask the Court to exclude all documents created prior to 1999 based on nothing more than a temporal argument that any document that existed before the conspiracy period is "too remote."[2] Plaintiffs request the Court to deny this Motion because these documents are relevant, are not unfairly prejudicial, and will not mislead the jury.

---

[1] *See* Phillip E. Areeda & Herbert Hovenkamp, 13 ANTITRUST LAW ¶ 1421a ("if there is other evidence of a present conspiracy, the defendants' sins elsewhere may cast doubt on the truthfulness of their innocent explanations"); *Milgram v. Loew's, Inc.*, 192 F.2d 579, 583–584 (3d. Cir. 1951) (holding that the alleged existence of a concerted refusal to deal by motion picture distributors was strengthened by the "past proclivity" of the same defendants to engage in similar anticompetitive, unlawful conduct).

[2] Defendants seek to preclude pre-1999 documents on the basis of the allegation in Plaintiffs' complaint that Defendants and others conspired to restrict egg supply "[b]eginning in at least 1999." *See* Second Amended Complaint at ¶ 119, *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002 (E.D. Pa. Feb. 22, 2013), ECF No. 23-1. However, as discussed in Plaintiffs' *Santiago* Proffer, Plaintiffs assert that Defendants' conspiracy began in 1998. ECF No. 164 at 15, 22. Thus, any documents dated in 1998 are during Defendants' conspiracy.

Judge Pratter denied a similar motion filed by Defendants in the Direct Action Plaintiff ("DAP") case. Rose Acre, a defendant in this case, filed the motion in the DAP case. Judge Pratter found the pre-conspiracy documents are relevant to show Defendants' "knowledge or intent to join the conspiracy as well as the formation and scope of the conspiracy itself." Order, *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002 (E.D. Pa. Oct. 21, 2019), ECF No. 2020 ("MDL Dkt. 2020"). This Court should similarly deny Defendants' Motion.

## ARGUMENT

### A. The Proposed Exhibits Are Relevant.

Defendants claim that the approximately "two dozen"[3] exhibits that are dated before 1999 are not relevant solely because they allegedly pre-date the purported start date of the conspiracy. Defs. Mot. at 2–3. Ignoring that Defendants misconstrue when the conspiracy started, as it began in 1998, Defendants' sole argument that the start date of the conspiracy establishes a bright-line relevance rule is incorrect. As Judge Pratter previously held, evidence that predates the start of an alleged conspiracy is relevant to show knowledge or intent of the conspirators to join the conspiracy, or the origin, scope and/or contours of the conspiracy itself. MDL Dkt. 2020. Judge Pratter stated "the Court agrees that they are relevant for the purposes the DAPs argue"; namely, that the documents "show knowledge or intent to join the conspiracy as well as the formation and scope of the conspiracy itself." *Id.*; *see also Graham*, 83 F.3d at 1473 ("Although this testimony related to events taking place outside the indicted period, because it focused on the origin and scope of the Newton Street conspiracy in which appellants participated, it was relevant to establish the formation and contours of the conspiracy and to show appellants' knowledge of the conspiracy and their intent to join."); *United States v. Lokey*, 945 F.2d 825, 835 (5th Cir. 1991) ("The probity of the evidence is, however, clear; the evidence established the formation of the conspiracy, its

---

[3] There are 18 pre-1999 exhibits on Plaintiffs' proposed exhibit list, not two dozen.

2

operating procedures, as well as the intent of the conspirators. Any prejudice was outweighed by this probative value.").

In their motion, Defendants provide only a few examples of pre-conspiracy documents they seek to exclude[4]:

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (attached as Exhibit 1);

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (attached as Exhibit 2).[5]

The documents that Defendants highlight contain the statements of Don Bell (Exs. 1, 2). Bell, who was a poultry specialist from the University of California, worked with Defendant UEP in various capacities, including as a consultant and as a member of UEP's Animal Welfare Advisory Panel. As Judge Pratter ruled, these documents are relevant, despite the fact that they predate the conspiracy. MDL Dkt. 2020. Bell was instrumental in the creation of Defendants' conspiracy to restrict the supply of eggs through Animal Welfare Guidelines and other means. Indeed, Judge Pratter previously acknowledged the importance of Bell's reports in the Direct Purchaser Trial because the Bell Reports provide "an alleged blue print of the scheme to fix prices." *See In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2018 WL 1725802, at *5 (E.D. Pa. Apr. 6, 2018). In ruling that the Bell reports could be admitted, the MDL Court stated:

> [T]he Bell reports are the alleged lynchpin of the price-fixing program and form the basis for the origins of the alleged scheme itself[.] The centrality of these reports thus makes it far more likely that the defendants would have knowledge of the theories in these documents (or, at least, that the UEP Certified Program was a price-fixing scheme).

---

[4] Defendants note that "none of the four documents highlighted in this motion was admitted at the DAP trial." Defs. Mot. at 4. While technically accurate, Defendants fail to mention that the DAP Plaintiffs did not seek to introduce any of these exhibits at trial. The DAP Plaintiffs made different trial decisions than the Plaintiffs in this case. Thus, the fact that these exhibits were not admitted at the prior trial is not relevant.

[5] Defendants also highlight ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Defs. Mot. at 3. But Plaintiffs do not intend to introduce these exhibits at trial unless Defendants open the door to the exhibits being used.

3

*Id.* at \*6.  For these same reasons, the Bell documents are relevant to the issues at this trial.

Exhibit 1 ███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████ is

relevant to explain the purpose of the cage space requirements that the UEP adopted a few years

later.  █████████████████████████████████████

Exhibit 2 █████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████ prior to the initiation of the UEP

Certified Program and cage space requirements help show the purpose of the program and whether

it was designed to help animal welfare, or, as Plaintiffs contend, whether it was designed as a

supply restriction program.  Ex. 2 at 1.

While Defendants complain about only a few exhibits, their motion addresses an entire

class of documents.  In the motion, Defendants cherry-pick the earliest documents but fail to

highlight other highly relevant exhibits that Defendants' motion also seeks to exclude.  For

example, Exhibit 3 is ████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████  This evidence is significant as it demonstrates that the true purpose of the

UEP Certified Program (including the cage space requirements and backfilling prohibition) was

to restrict egg supply, and it rebuts Defendants' contention that the program was designed to help

animal welfare.  Similarly, Exhibit 4 is a 1998 article that states that "[i]t is widely acknowledged

4

that there are major welfare problems for laying hens in conventional cages."[6] As an initial matter, this document does not predate the conspiracy because Plaintiffs assert that the conspiracy began in 1998. *See supra* note 2. But this also rebuts Defendants' animal welfare defense, as the UEP program contemplated suppliers' use of cages, notwithstanding animal welfare concerns with cages regardless of cage size.

### B. The Documents Are Not Unfairly Prejudicial to Defendants or Likely to Mislead the Jury.

Evidence pre-dating the conspiracy will not unfairly prejudice Defendants or confuse the jury. The jury will easily understand that documents pre-dating the conspiracy are not evidence of the conspiracy, but instead show Defendants' knowledge and intent to form the conspiracy. The limited number of pre-conspiracy documents will also aid in minimizing any potential confusion. Any potential harm is outweighed by the probative value of these pre-conspiracy documents to establishing Defendants' knowledge and intent. *See United States v. Mebust*, 857 F. Supp. 609, 619 (N.D. Ill. 1994) (denying motion *in limine* to preclude "similar other acts evidence" where relevant to defendant's knowledge and intent, and finding probative value not substantially outweighed by danger of unfair prejudice).

Moreover, to be excluded under Rule 403, the probative value of the evidence must be substantially outweighed by the danger of *unfair* prejudice. "Because all probative evidence is to some extent prejudicial, [the Seventh Circuit has] consistently emphasized that Rule 403 balancing turns on whether the prejudice is *unfair*." *United States v. Eads*, 729 F.3d 769, 777 (7th Cir. 2013) (internal citation omitted) (emphasis in original). Courts employ "a sliding scale approach: as the probative value increases, so does our tolerance of the risk of prejudice." *United States v. Earls*, 704 F.3d 466, 471 (7th Cir. 2012).

---

[6] Michael C. Appleby, *Modification of Laying Hen Cages to Improve Behavior*, 77 POULTRY SCIENCE 1828, 1828 (1998).

5

Here, the pre-conspiracy evidence is highly probative of Defendants' knowledge and intent, shows the true purpose of the UEP program was to restrict egg supply, and rebuts Defendants' contention that the program was designed to help animal welfare. In such circumstances, the danger of any unfair prejudice does not substantially outweigh the evidence's probative value. *See, e.g.*, *Mebust*, 857 F. Supp. at 619.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion *In Limine* to Exclude Certain Evidence Predating the Alleged Conspiracy.

September 16, 2022

Respectfully submitted,

*Counsel for Plaintiffs Kraft Foods Global, Inc., General Mills, Inc., Nestlé USA, Inc. and The Kellogg Company*

  /s/ *Brandon D. Fox*
Brandon D. Fox
Amy M. Gallegos (*admitted pro hac vice*)
JENNER & BLOCK LLP
515 South Flower Street
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199
bfox@jenner.com
agallegos@jenner.com

James T. Malysiak
Joel T. Pelz
Angela M. Allen
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Tel: (312) 222-9350
Fax: (312) 527-0484
jmalysiak@jenner.com
jpelz@jenner.com
aallen@jenner.com