# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| KRAFT FOODS GLOBAL, INC., THE KELLOGG COMPANY, GENERAL MILLS, INC., and NESTLÉ USA, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:11-cv-08808 |
| v. | ) ) | Judge Charles R. Norgle |
| UNITED EGG PRODUCERS, INC., UNITED STATES EGG MARKETERS, INC., CAL-MAINE FOODS, INC., MICHAEL FOODS INC., and ROSE ACRE FARMS, INC. | ) ) ) ) ) ) | |
| Defendants. | ) | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE PRIOR COMPLAINTS, INVESTIGATIONS, AND SETTLEMENTS

Brandon D. Fox
Amy M. Gallegos (*admitted pro hac vice*)
JENNER & BLOCK LLP
515 South Flower Street
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199
bfox@jenner.com
agallegos@jenner.com

James T. Malysiak
Terrence J. Truax
Joel T. Pelz
Angela M. Allen
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Tel: (312) 222-9350
Fax: (312) 527-0484
jmalysiak@jenner.com
ttruax@jenner.com
jpelz@jenner.com
aallen@jenner.com

*Attorneys for Kraft Foods Global, Inc.; The Kellogg Company;*
*General Mills, Inc.; and Nestlé USA, Inc.*

Defendants seek to exclude highly relevant evidence related to animal activists' complaints to government agencies that Defendant United Egg Producers' ("UEP") branding of their Certified Program was misleading. The complaints asserted that UEP communicated a level of care and humane treatment for hens that was superior to the actual conditions permitted under the program and therefore UEP's "animal care certified" label was misleading. This evidence is squarely relevant to rebutting Defendants' claim that Defendants' agreement was to improve the welfare of hens in the eyes of animal rights activists, and not to unlawfully restrict the egg supply. Plaintiffs contend that animal rights concerns were a pretext—the program was a naked supply restriction designed to increase the price of eggs and the profits of Defendants. As Judge Pratter previously held in rejecting a similar attempt to exclude them, the complaints Defendants now seek to exclude "show that the defendants were on notice that their program was not meeting the demands of the animal rights groups they sought to assuage." The other documents relating to those proceedings that Defendants seek to admit are similarly relevant to rebut any claim that a defendant joined the UEP Certified Program due to pressure from animal activists and are likewise admissible.

Defendants also ask the Court to exclude any reference to the fact of a criminal investigation by the Department of Justice into "possible price-fixing" by egg producers, as was reported in a September 2008 *Wall Street Journal* article. Plaintiffs seek the introduction for a proper—and critical—purpose. Plaintiffs will not ask the jury to infer that the fact of the investigation reflects a governmental judgment as to the legality of Defendants' conduct. Instead, the evidence will show that Defendants were aware that their conduct had attracted official scrutiny, which explains Defendants' later comments about the purpose of the UEP Program, why Defendants stopped referring to the supply-reduction benefits of the UEP Program, and why the UEP stopped asking producers to engage in the early slaughter and early molting of hens, and coordinating large exports of eggs at a loss. Whereas many of Defendants' earlier statements refer

to the UEP Program as a way to boost prices and profits, later statements increasingly recite animal welfare concerns. The criminal investigation is highly probative to contextualizing Defendants' post-2008 statements and rebutting Defendants' introduction of post-2008 evidence as a defense to their pre-2008 conspiracy to limit egg supply. Thus, the investigation provides context for many of Defendants' allegedly exculpatory statements.

Plaintiffs have separately moved to exclude liability evidence concerning conduct or events after 2008 (Pls. Mot. *in Limine* No. 1). If the Court grants that motion, Plaintiffs will not seek to introduce the fact of the 2008 government investigation as the evidence that it would be used to put in context would separately be excluded.

## BACKGROUND

*Documents at Issue*. On June 18, 2003, animal activist group Compassion Over Killing, Inc., ("COK") filed complaints ("COK Complaints") with the National Advertising Division ("NAD") of the Council of the Better Business Bureaus ("BBB") and with the Federal Trade Commission ("FTC"). In those complaints, COK contended that Defendant UEP's Certified Program was misleading to consumers because the "Animal Care Certified" ("ACC") logo placed on egg cartons pursuant to the UEP program communicated a level of care and humane treatment for hens that was superior to the actual conditions permitted under the certification program.

The NAD investigated the COK Complaints and found that UEP's ACC logo conveyed a misleading message that hens raised in compliance with the UEP program were treated more humanely than the level of care reflected by the UEP guidelines. The National Advertising Review Board ("NARB") on appeal affirmed the NAD's conclusions and recommended that the ACC seal

2

program be discontinued or modified to more clearly communicate the less humane standard of care allowed by the UEP guidelines.[1]

The UEP initially did not adequately comply with the NARB's recommendation, so on July 16, 2004, the NAD referred the matter to the FTC for enforcement against the UEP. On September 30, 2015, the FTC sent a letter to the UEP, referenced as "FTC response to UEP re Complaint Seeking Action Against the UEP for Deceptive Advertising in Connection with the Animal Care Certified Program" ("FTC Letter").[2] The FTC Letter summarizes the COK proceeding before the NAD and NARB. The FTC Letter recites that the UEP informed the FTC that it had developed a revised seal for its hen husbandry program that removed the term "Animal Care Certified" from its new logo and that the new logo would be placed on egg cartons by the end of November 2005. Defendant UEP replaced its "Animal Care Certified" logo with its "UEP Certified" logo. Based on this change, the FTC staff decided not to recommend enforcement action on the COK Complaints but instead would continue to monitor the UEP's use and advertising of the UEP's new logo in the marketplace. ███████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████[3]

Defendants seek to preclude Plaintiffs from arguing, referencing, or introducing evidence related to the COK Complaints, or any related investigation, regulatory decision, or settlement agreement, which Defendants assert includes the FTC Letter and the NAD and NARB reports.

---

[1] For the Court's convenience attached as Ex. 1 is a copy of the NARB report.

[2] For the Court's convenience attached as Ex. 2 is a copy of the FTC Letter which is publicly available.

[3] ████████████████████████████████

*Defendants' Prior Motion Practice*. Defendants previously filed similar motions *in limine* in the Direct Action Plaintiffs' action ("DAP Action") and the Direct Purchaser Plaintiffs' action ("DPP Action") concerning this evidence.

In the DPP Action, Judge Pratter ruled that "the fact of the making" of the COK "complaints is admissible, and the text of the complaints themselves may also be permitted, but the Court will await receipt of the actual complaint(s) before making any final ruling." *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2018 WL 1725802, at *1 (E.D. Pa. Apr. 6, 2018). The court further concluded that "[d]epending upon the timing and the text, the complaints themselves may be relevant and admissible," but that "the agencies' adjudications of the complaints are inadmissible." *Id.*

With respect to the claim that the COK "complaints show that the defendants were on notice that their program was not meeting the demands of the animal rights groups they sought to assuage," Judge Pratter concluded "that these documents may be admissible if they are not offered for the truth of the matter, but only if the defendants claim that they joined the UEP Certified Program under pressure from animal rights groups. These complaints, depending on their text and timing, can be used to rebut that assertion." *Id.* at *6.

In the subsequent DAP Action, Judge Pratter concluded, "[c]onsistent with the Court's previous ruling, the [COK] complaints themselves 'may be admissible if they are not offered for the truth of the matter, but only if the defendants claim that they joined the UEP Certified Program under pressure from animal rights groups. These complaints, depending on their text and timing, can be used to rebut that assertion.'" Order, *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002 (E.D. Pa. Oct. 22, 2019), ECF No. 2024 ("MDL Dkt. 2024") at 6. Judge Pratter declined to exclude the FTC Letter on the ground that it referenced a settlement agreement, but the court ultimately excluded the NAD and NARB reports, and the FTC Letter "because 'the supposed

imprimatur of authority' that a ruling by these entities carries makes admitting the rulings 'more prejudicial than probative.'" *Id.* at 7.

## ARGUMENT

Evidence concerning the COK complaints and their resolution is admissible to show the falsity of Defendants' assertion that they adopted anticompetitive measures to address animal care interests. Since 2003, Defendants were aware that the UEP program was not justified by animal care concerns and acknowledged as much in response to these complaints.

Separately, evidence of the 2008 DOJ investigation is admissible to provide context for Plaintiffs' post-2008 purported exculpatory conduct if that evidence is permitted into evidence.

**I.     The COK Complaints and Related Proceedings Are Admissible.**

**A.     The COK Complaints Are Relevant and Not Hearsay.**

Defendants claim the COK Complaints about the misleading message conveyed by the UEP's Animal Care Certified logo are not relevant to any issue in this case.[4] Judge Pratter disagreed, denying Defendants' prior motion to exclude the complaints because the complaints put Defendants on notice that the UEP program did not meet animal rights groups' demands.

The UEP's contention that the UEP program was about animal care, which was false in 2003, and is false now, is at the heart of Defendants' trial defense. By their terms, the UEP Guidelines and the Certified Program were depicted as "science based" and in furtherance of animal welfare, and the ACC logo suggested that the eggs were produced in a way to foster hen welfare. Defendants claim egg producers took collective measures to limit the supply of eggs by "join[ing] the UEP Certified Program under pressure from animal rights groups." *In re Processed Egg Prods. Antitrust Litig.*, 2018 WL 1725802, at *6.

---

[4] Defendants do not assert the COK Complaints are unfairly prejudicial.

5

As Judge Pratter concluded, "the [COK] complaints show that the defendants were on notice that their program was not meeting the demands of the animal rights groups they sought to assuage." *Id.* The complaints also establish that animal welfare was not the purpose of the UEP Certified Program—if it were, the UEP would have enhanced the animal welfare components of the UEP Guidelines to be consistent with the perception given by the "Animal Care Certified" logo, rather than what the UEP ultimately did, which was to remove the ACC logo and replace it with a logo that did not reference animal welfare. Therefore, the COK Complaints can rebut any claim that a Defendant joined the UEP Certified Program due to pressure from activists.

Defendants argue that the COK Complaints are hearsay and cannot be admitted for the truth of the matter asserted. Plaintiffs do not seek to introduce the complaints for their truth, but rather, as Judge Pratter previously acknowledged, to show that Defendants were on notice that their program did not meet the demands of the animal rights groups they purportedly sought to assuage and to rebut Defendants' claims that they created or joined the UEP Certified Program to foster hen welfare.

### B. The FTC, NARB, and NAD Proceedings Are Relevant, Not Inadmissible Hearsay, and Not Unfairly Prejudicial.

The FTC Letter, and the NARB and NAD reports, are relevant for the same reason the COK Complaints are relevant. They show that Defendants "were on notice that their program was not meeting the demands of the animal rights groups they sought to assuage," and they rebut Defendants' contention that "they joined the UEP Certified Program under pressure from animal rights groups." *In re Processed Egg Prods. Antitrust Litig.*, 2018 WL 1725802, at *6.

Defendants argue that this evidence would be prejudicial because as "official determinations," they "risk confusing the issues and may cause the jury to substitute the judgment of the NAD, NARB, and the FTC for their own judgment." ECF No. 169 at 7-8. But the NAD,

6

NARB, and FTC determinations do not make any findings related to Defendants' anticompetitive activity, so any risk that the jury would substitute its judgment with the agencies' is vanishingly low. Both cases that Defendants cite in support are inapposite. In *Gumwood HP Shopping Partners, L.P. v. Simon Property Group Inc.*—cited at pp. 8-9 of Defendants' motion—an antitrust action, the court excluded an FTC complaint as unduly prejudicial because the complaint "could improperly suggest to the jury that the FTC has determined that [defendant] is a monopolist or has engaged in anticompetitive conduct." 3:11-CV-268 JD, 2016 WL 10706086, at *6 (N.D. Ind. Oct. 28, 2016). In other words, the FTC's determination in *Gumwood* mapped directly onto the question for the jury in that case. Judge Pratter premised her exclusion of the FTC Letter and the NAD and NARB reports on the same idea—that "'the supposed imprimatur of authority' [of] a ruling by these entities … makes admitting the rulings 'more prejudicial than probative,'" citing cases in which the agency determination drew "categorical legal conclusions … at the heart of [the] case." MDL Dkt. 2024 at 7. *Vance v. Peters*, 97 F.3d 987, 995 (7th Cir. 1996)—cited at p. 7 of Defendants' motion—similarly involved the court's exclusion of evidence of an official's determination regarding the ultimate issue before the jury—whether defendant used excessive force.

Here, as Defendants recognize, the NAD, NARB, and FTC applied "standards that are different from the antitrust law to be applied by the jury." ECF No. 169 at 8. The jury can thus easily distinguish those standards, and the relevance of these agencies' determinations to rebutting Defendants' sole defense against Plaintiffs' antitrust claim far outweighs any purported prejudice to Defendants.[5] *See Pittman v. Unified Gov't of Wyandotte Cnty./Kansas City*, No. 12-2010-JPO, 2016 WL 3521980, at *2 (D. Kan. June 28, 2016) ("[T]he court is certain that the jury will be able

---

[5] If necessary, the court can instruct the jury the FTC investigation did not relate to antitrust issues.

to distinguish plaintiff's actions from those of others, and that the danger of potential unfair prejudice or confusion is low."). Thus, the reason stated by Judge Pratter for rejecting the NAD, NARB, and FTC documents is incorrect.

Defendants also argue that this evidence is hearsay and cannot be admitted for the truth of the matter asserted. But Plaintiffs do not seek to introduce the documents for their truth, only to show the notice provided to Defendants, the positions they took, and the actions they later adopted. The letters make clear that when challenged on the assertion that the UEP was motivated by animal welfare concerns and required to prove that statement, UEP abandoned its position. UEP and the producer Defendants went so far as to change their consumer-facing logo to remove any reference to animal welfare. Thus, the FTC Letter, and NARB and NAD reports are admissible to show that Defendants were on notice that their program did not meet the demands of the animal rights groups they purportedly sought to assuage and to rebut Defendants' claims that they created or joined the UEP Certified Program to foster hen welfare

Even if admitted for their truth, the FTC Letter and the NAD and NARB documents satisfy the public records exception to the hearsay rule.[6] Under Federal Rule of Evidence 803(8), records of a public office are admissible where they "set[] out … factual findings from a legally authorized investigation" and "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Here, Defendants admit that the NAD and NARB statements and the FTC Letter came after "NAD investigated COK's complaint," ECF No. 169 at 4, and these documents set out factual findings from the agencies' investigation of COK's complaints. For example, the NARB determination explains that "the COK evidence is corroborative of the NAD's sound judgment that many consumers will take away from the 'animal

---

[6] While Defendants argue that the FTC Letter does not satisfy the public records exception, they do not make the same assertion regarding the NAD and NARB determinations.

certified' logo a message that the level of care is more humane than allowed by the UEP guidelines," Ex. 1 at UE0649040, and the FTC Letter also describes the NAD and NARB's finding "that the ACC seal program was misleading in that consumers could reasonably interpret the seal to mean that the hens who laid the eggs sold in ACC-labeled cartons are accorded a more humane level of care than what was allowed by the UEP guidelines," Ex. 2 at 1.  They further cannot dispute that the NAD and NARB determinations and the FTC Letter are public records.[7]

### C.    The FTC Letter Is Not a Settlement Agreement and Does Not Reflect Any Settlement of Compromise.

Defendants claim that the FTC Letter is inadmissible evidence of a compromise under Rule 408.  Judge Pratter rejected this argument, correctly holding that the FTC Letter should not be excluded under Rule 408 because it is not a settlement.  MDL Dkt. 2024 at 5-6.

In making this finding, Judge Pratter recognized "the plain language of the letter summarizes the UEP's decision to modify its seal … without reference to any apparent settlement agreement prompting the UEP's actions."  MDL Dkt. 2024 at 6.  It is clear from the face of the FTC Letter that the UEP acted unilaterally when it replaced the ACC logo and not pursuant to any settlement with the FTC or anyone else.  Simply because the FTC indicated that the new logo adequately addressed the deception at issue, and indicated, after a factual finding, that no further FTC action was warranted at that time, does not mean a settlement was reached.  The FTC letter does not mention any compromise or settlement negotiation, and the UEP's unilateral actions cannot force the FTC or any other party into a settlement under Rule 408 or otherwise.  *See Lee Middleton Original Dolls, Inc. v. Seymour Mann, Inc.*, 299 F. Supp. 2d 892 (E.D. Wis. 2004) (defendant not entitled to protections provided by Rule 408 because there was nothing to indicate

---

[7]    The FTC Letter resides as a public record on the FTC's official website, https://www.ftc.gov/sites/default/files/documents/closing_letters/united-egg-producers-uep/uepstaffopinionletter.pdf.

that parties were engaging in settlement discussions and noting that one party cannot make another party privy to settlement negotiations against the other party's will).  Absent from the FTC Letter is any hallmark terms amounting to the furnishing, promising, offering, and accepting, which are delineated in Rule 408.  To the contrary, the letter shows that the UEP informed the FTC that it was unilaterally revising its logo in "response to concerns raised."

Without some showing of mutual assent and/or a specific intention to reach a compromise or settlement, there is nothing to suggest a settlement was contemplated or reached.  Judge Pratter thus correctly denied Defendants' prior attempt to exclude the FTC letter on these grounds because Defendants "fail[ed] to provide any evidence that the FTC letter concerns settlement discussions." MDL Dkt. 2024 at 6.  Plainly, Rule 408 does not apply to the FTC Letter.

## II.    The Fact of the Federal Investigation Is Admissible To Provide Context for Defendants' Proffered Post-2008 Evidence.

Defendants argue that reference to an investigation by the Department of Justice into "possible price-fixing" by egg producers, including that in a September 2008 *Wall Street Journal* article, is inadmissible under Rule 403.  Plaintiffs intend to offer evidence concerning the 2008 investigation to place Defendants' proffered post-2008 evidence in context.  If the Court does not grant Plaintiffs' Motion *in Limine* No. 1 to exclude liability evidence concerning conduct or events after 2008, the 2008 disclosure places in context the conduct that occurred after 2008.

As described in Plaintiffs' motion *in limine*, Defendants seek to introduce evidence that describes Defendants' actions and reasoning, and the nature of customer demand after 2008, to justify their conduct prior to 2008.  For example, Defendants seek to introduce a UEP press release from May 2013 touting the "high marks" that the UEP program received from the Food Marketing Institute's animal welfare advisory committee.  The UEP's self-serving statement should be fairly placed in the context of the federal investigation, given that UEP would have had almost five years from the announcement of the investigation to enhance its animal welfare standards to serve as a

defense to its conspiracy to engage in anticompetitive conduct. Relatedly, Defendants seek to introduce an email that UEP board member Dave Rettig sent to a General Mills employee on the day the DOJ investigation was publicized in the *Wall Street Journal*, in which Rettig attempts to rebut the idea of a conspiracy by explaining why "the collusion idea doesn't make a lot of sense in the industrial segment." This is another self-serving statement that should be placed in the context of the DOJ investigation. Additionally, the Defendants' knowledge of the investigation will explain their *lack* of statements after September 2008 advocating for the reduction of the domestic supply of eggs and restricting production through the UEP Program.

The backdrop of the criminal investigation is critical to explaining Defendants' post-2008 conduct. The probative value of the fact that there was a criminal investigation is not substantially outweighed by any unfair prejudice to Defendants, given the highly relevant nature of the investigation to contextualizing Defendants' post-2008 conduct. *See Graves v. Plaza Med. Centers, Corp.*, No. 10-23382-CIV, 2017 WL 3895438, at *2 (S.D. Fla. Sept. 6, 2017) (denying motion *in limine* to preclude reference to "cooperation with the Department of Justice because it is relevant to the issue of … scienter").[8]

Plaintiffs agree that if the Court grants Plaintiffs' Motion *in Limine* No. 1, there will be no need to contextualize Defendants' post-2008 evidence. In that circumstance, Plaintiffs will not offer evidence of the fact of the 2008 investigation.

---

[8] Allowing Plaintiffs to introduce this investigation is consistent with Plaintiffs' Motion *in Limine* No. 7 to Preclude Any Reference to the Action or Inaction of Any Federal or State Antitrust Regulator or the U.S. Department of Agriculture. In their Motion *in Limine* No. 7, Plaintiffs moved to exclude evidence of the failure of any federal or state antitrust agency to initiate an action against the Defendants or their co-conspirators, as well as the action or inaction of the United States Department of Agriculture ("USDA"), because that evidence would unfairly prejudice Plaintiffs by inferring that these agencies determined that no unlawful conduct had occurred. In contrast, referencing the existence of the DOJ investigation—but not the outcome—does not unfairly prejudice either party, and it is important to contextualizing the conduct that occurred after 2008 should post-2008 evidence be admitted.

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion *in Limine* to Exclude

Prior Complaints, Investigations, and Settlements.

September 16, 2022                                        Respectfully submitted,

                                                         ***Counsel for Plaintiffs Kraft Foods Global, Inc.,***
                                                         ***General Mills, Inc., Nestlè USA, Inc. and The***
                                                         ***Kellogg Company***

                                                          /s/ *Brandon D. Fox*
                                                         Brandon D. Fox
                                                         Amy M. Gallegos (*admitted pro hac vice*)
                                                         JENNER & BLOCK LLP
                                                         515 South Flower Street
                                                         Los Angeles, CA 90071
                                                         Tel: (213) 239-5100
                                                         Fax: (213) 239-5199
                                                         bfox@jenner.com
                                                         agallegos@jenner.com

                                                         James T. Malysiak
                                                         Joel T. Pelz
                                                         Angela M. Allen
                                                         JENNER & BLOCK LLP
                                                         353 N. Clark Street
                                                         Chicago, IL 60654
                                                         Tel: (312) 222-9350
                                                         Fax: (312) 527-0484
                                                         jmalysiak@jenner.com
                                                         jpelz@jenner.com
                                                         aallen@jenner.com