UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRAFT FOODS GLOBAL, INC., THE KELLOGG COMPANY, GENERAL MILLS, INC., and NESTLÉ USA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED EGG PRODUCERS, INC., UNITED STATES EGG MARKETERS, INC., CAL-MAINE FOODS, INC., MICHAEL FOODS INC., and ROSE ACRE FARMS, INC. <br><br> Defendants. | No. 1:11-cv-08808 <br><br> Judge Steven C. Seeger |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR BIFURCATION OF TRIAL**

Defendants United Egg Producers, Inc., United States Egg Marketers, Inc., Cal-Maine Foods, Inc., and Rose Acre Farms, Inc., respectfully request that this Court grant their motion for bifurcation of trial.

## Introduction

Plaintiffs have no legitimate response to the fact that liability and damages were successfully bifurcated in both earlier trials. While Plaintiffs go to great lengths to embellish the differences between this trial and the previous two, the fact remains that this trial presents the same theory of liability, and many of the same witnesses (including experts) and exhibits as the prior two trials. Those prior trials proceeded in an orderly fashion; the same will happen here. Plaintiffs do not cite any adverse consequences of the bifurcation decision in the earlier trials—no unnecessary delay,

1

no evidentiary disputes, and no prejudice. Bifurcation previously ensured judicial economy and prevented prejudice to the Defendants; it will do the same here.

## Argument

### A. Plaintiffs Have No Credible Response to the Fact that Bifurcation Worked Twice Before.

Plaintiffs trot out a parade of hypothetical horribles that they believe will result from bifurcation. Plaintiffs anticipate "disputes among the parties as to which evidence is appropriate in which phase," speculating that "[b]ifurcation . . . will mean the Court will have to make difficult decisions on the overlapping evidence." (Opp. at 1). Plaintiffs suggest they will be prejudiced by having to make a case on liability "without damages evidence that is inextricably linked with the question of liability." (*Id.* at 13). But Plaintiffs fail to identify **any** evidence or argument that was muted or complicated in the earlier trials due to bifurcation. None of Plaintiffs' horribles came to pass.

The DPP and DAP trials were bifurcated in the interest of convenience and judicial economy. *See* MDL ECF No. 1560. Bifurcation resulted in efficiencies in both cases. For instance, the jury in the DPP trial found no restraint on trade, obviating the need for a damages phase. In the second trial involving the DAPs, the jury found no conspiracy, again obviating the need to address damages. Tellingly, the DAP plaintiffs did not object to bifurcation. Had bifurcation of the earlier DPP trial been misguided or plausibly in error, the DAP plaintiffs surely would have objected. Similarly, if bifurcation caused the evidentiary disputes and difficult decisions that Plaintiffs hypothesize will happen here, the MDL court likely would not have

2

bifurcated the DAP trial. But that did not happen, and the reason is simple. Bifurcation did not complicate the issues in those prior trials, and it will not complicate this trial. Instead, bifurcation did and will prevent undue prejudice to the Defendants, while ensuring orderly presentation of the evidence.

These Plaintiffs may wish that "*those* [prior] cases have nothing to do with the bifurcation proposal before the Court in *this* case." (Opp. at 9). But Plaintiffs' suggestion that their case is so different as to warrant a different result from the earlier two trials falls flat.

*First*, virtually all of the factual and legal issues that will be presented in this trial arose in the previous two trials. Plaintiffs are re-presenting much of the same evidence from the DPP and DAP trials and their exhibit list overlaps significantly with the DPP and DAP plaintiffs' exhibit lists from the prior two trials. Plaintiffs also plan to read into evidence the trial testimony of twelve people who were witnesses at the DPP and DAP trials. Put simply, these Plaintiffs are taking chapters—not a mere page—from the playbooks that the plaintiffs in the earlier trials used. Bifurcation worked efficiently in those trials and there is no reason to believe it will not work here.

*Second*, Plaintiffs have the exact same economics expert as the DAP plaintiffs. Plaintiffs have not identified any liability evidence that this shared expert was unable to opine upon in the DAP trial due to bifurcation. Plaintiffs have no basis to suggest that their economics expert will have any difficulty presenting his economic analysis, particularly because he has already done it once before without issue.

3

*Third*, there is no merit to Plaintiffs' argument that the prior trials are irrelevant because Cal-Maine was not sitting at the defendants' table. Plaintiffs have identified no facts nor articulated any reason why Cal-Maine's presence would make bifurcation any less appropriate here than in the earlier two trials. And while Cal-Maine was not a defendant in the earlier trials due to settlements,[1] Plaintiffs fail to acknowledge that Cal-Maine was mentioned extensively throughout the two previous trials—over 190 times in the DAP trial and over 70 times in the DPP trial. Plaintiffs have no basis to suggest that their evidence or argument against Cal-Maine is better than the prior plaintiffs—supermarket chains, food service companies, and restaurants—who actually bought shell eggs from Cal-Maine. This trial is about egg products, and Cal-Maine did not sell any egg products to any of the Plaintiffs at any point during the alleged conspiracy. *See* Ex. A (Baye Rpt. App'x 3 Excerpts). Plaintiffs have not presented any facts regarding Cal-Maine that would necessitate a non-bifurcated trial.

*Fourth*, there is no merit to Plaintiffs' argument that they would suffer prejudice if their expert could not tell the jury during the liability phase that the alleged conspiracy caused "more than $100 million in overcharges to Plaintiffs." (Opp. at 13). Plaintiffs have no good faith reason to inject a nine-digit damages figure in the liability phase.

---

[1] Companies settle lawsuits for any number of reasons, and settlement is not an admission of liability. As large, sophisticated companies who are defendants in civil litigation, Plaintiffs are well aware of this.

Importantly, in the prior two trials, both juries found in the defendants' favors without reaching the question of damages. That critically undercuts Plaintiffs' argument of prejudice. *See MCI Comms. Corp. v. American Tel. and Tel. Co.*, 708 F.2d 1081, 1167 n.122 (7th Cir. 1983). Furthermore, under the Rule of Reason, the jury will consider whether the challenged restraints resulted in a substantial harm to competition in the relevant market, and also whether the restraints produced countervailing competitive benefits. The jury will then balance the competitive harm against the competitive benefit. This balancing can be—and has been—done without reference to a nine-digit damages figure.[2] Plaintiffs, of course, have no evidence or argument that it was not done properly before in either trial, a silence that is quite telling.

B. **Lacking Proof that Bifurcation Will Result in Prejudice, Plaintiffs Rely on Easily Distinguishable Case Law.**

Without facts showing that bifurcation did not work twice before, Plaintiffs are forced to rely on rhetoric untethered to facts. This effort should be rejected.

Plaintiffs rely heavily on an out-of-context quote from an out-of-circuit case. *See* Opp. at 1, 2, 3, 5, 11, and 12. Specifically, Plaintiffs cite *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 21 (5th Cir. 1974), for the proposition that "[i]n a private antitrust suit there is no neat dividing line between the issues of liability

---

[2] Before the bifurcated DAP trial, the MDL court permitted evidence as to the "*existence* of damages" in the liability phase, as distinct from evidence establishing the "*amount* of damages," which was reserved for the damages phase. *See* Ex. B, ECF No. 2003 (emphasis added). As a result, the DAPs were allowed to present evidence during the liability phase that they suffered damages, as the DAPs needed to prove that damages occurred to "prevail in a rule of reason case." *Id.* However, evidence related to "the *amount* of damages" could only be introduced "in the damages phase, not the liability phase." *Id.*

5

and damages." But *Terrell* illustrates the feasibility of a trial separating antitrust liability and damages. There, the court analyzed the impact of a prior Fifth Circuit *en banc* ruling affirming the trial court's judgment as to liability but reversing for a new trial on the jury's verdict on damages. *Id.* (citing *Household Goods Carriers' Bureau v. Terrell*, 452 F.2d 152 (5th Cir. 1971) (en banc)). The Fifth Circuit held that the court's previous reversal of the jury's damages verdict did *not* require a new trial on issues of "causation or the fact of damage." *Terrell*, 494 F.2d. at 21-22. While liability and damages may overlap, "[t]here is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage and the measure of proof necessary to enable the jury to fix the amount." *Id.* at 20 (citing *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562 (1931)). *Terrell* does **not** hold that bifurcation cannot occur in antitrust trials; instead, *Terrell* upheld the verdict of an antitrust trial as to liability only. *Id.* at 18. Consistent with the rationale of *Terrell*, bifurcation is appropriate because a "neat dividing line" has already been drawn twice before.[3]

Plaintiffs' other caselaw fares no better. In *Response of Carolina, Inc.*, the Fifth Circuit upheld a bifurcation order, partly due to the absence of prejudice. *Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307, 1324-25 (5th Cir. 1976). In *Veizaga,* the court refused to certify a class, simply noting that a bifurcated trial would not solve the predominance of individual issues as to liability. *Veizaga v. Nat'l*

---

[3] At the DAP trial, Judge Pratter commented that "there was acknowledgement that while the liability phase would have to include evidence about antitrust injury, [the parties] were not going to go into the specifics of any kind of computation or dollar amounts for damages during this phase." Ex. C, Dec. 6, 2019 DAP Trial Tr. 17:17-21.

6

*Bd. for Respiratory Therapy*, No. 75-C-3430, 1979 WL 1592, at *3 (N.D. Ill. Feb. 9, 1979). *Phillips Medical Systems* involved a request to bifurcate trial and discovery, such that "if [d]efendants are found liable on even one count, [the court would] have to conduct multiple rounds of discovery and multiple trials." *Phillips Med. Sys. (Cleveland), Inc. v. Buan*, No. 1:19-CV-2648, 2021 WL 5447034, at *2-3 (N.D. Ill. Nov. 22, 2021). The same distinction applies to *THK America, Inc. v. NSK Co.*, 151 F.R.D. 625, 631 (N.D. Ill. 1993) (defendants' bifurcation motion "sought too much" by asking for "more than just separate trials—[defendants] sought separate trials with two different juries" and "severance of discovery with respect to damages"). And in *Real*, bifurcation was denied as the Court commented it "ha[d] not seen a more simple patent case." *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 627 (N.D. Ill. 2000).

Contrary to Plaintiffs' suggestion, bifurcation is eminently feasible in antitrust cases, and it certainly can be done in this case as it has in the prior two trials. Furthermore, the Seventh Circuit has been clear with its guidance that bifurcation should be considered in antitrust trials. *See High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 666 (7th Cir. 2002) ("No doubt in view of the complexity of the case the judge will also want to bifurcate the trial, that is, to have a trial on liability first and only if the jury finds that the defendants violated the law to conduct a trial to determine the plaintiffs' damages. If these suggestions are followed, we think the case can be tried in a reasonable amount of time and be made comprehensible to a jury."). All Plaintiffs can do in the face of this authority is call it dicta, while failing

7

to acknowledge the persuasive value of the guidance from an appellate court that is well versed in antitrust matters.

## Conclusion

Defendants respectfully request that this Court grant their Motion for Bifurcation.

Dated: December 2, 2022

Respectfully submitted,

*/s/ Patrick M. Otlewski*
Patrick M. Collins (pcollins@kslaw.com)
Livia M. Kiser (lkiser@kslaw.com)
Patrick M. Otlewski (potlewski@kslaw.com)
Abigail Hoverman Terry (aterry@kslaw.com)
KING & SPALDING LLP
110 North Wacker Drive, 38th Floor
Chicago, IL 60606
Tel: (312) 995-6333

Lohr Beck (lohr.beck@kslaw.com)
(pro hac vice)
Andrew Chinsky (achinsky@kslaw.com)
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel: (404) 572-2812

Brian E. Robison (brian@brownfoxlaw.com)
(pro hac vice)
BROWN FOX PLLC
6303 Cowboys Way, Suite 450
Frisco, TX 75034
Tel: (972) 707-2809

**Counsel for Defendant Cal-Maine Foods, Inc.**

*/s/ Robin P. Sumner*
Robin P. Sumner
(robin.sumner@troutman.com)
Kaitlin L. Meola
(kaitlin.meola@troutman.com)

8

TROUTMAN PEPPER HAMILTON SANDERS LLP
3000 Two Logan Square, 18th and Arch Streets
Philadelphia, PA 19103-2799
Tel: (215) 981-4000

Whitney R. Redding
(whitney.redding@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
Union Trust Building
501 Grant Street, Suite 300
Pittsburgh, PA 15219-4429
Tel: (412) 454-5085

Robert E. Browne, Jr.
(robert.browne@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
227 West Monroe Street, Suite 3900
Chicago, IL 60606
Tel: (312) 759-1923

*Counsel for Defendants United Egg Producers, Inc. & United States Egg Marketers, Inc.*

*/s/ Donald M. Barnes*
Donald M. Barnes
(dbarnes@porterwright.com)
Jay L. Levine (jlevine@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
2020 K. Street, N.W., Suite 600
Washington, D.C. 20006-1110
Tel: (202) 778-3000

James A. King (jking@porterwright.com)
Allen T. Carter (acarter@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
41 South High Street, Suite 2900
Columbus, OH 43215

Tel: (614) 227-2000

*Counsel for Defendant Rose Acre Farms, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants registered to receive service in this action.

*/s/ Patrick M. Otlewski*
Patrick M. Otlewski
