UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRAFT FOODS GLOBAL, INC., THE KELLOGG COMPANY, GENERAL MILLS, INC., and NESTLÉ USA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED EGG PRODUCERS, INC., UNITED STATES EGG MARKETERS, INC., CAL-MAINE FOODS, INC., MICHAEL FOODS INC., and ROSE ACRE FARMS, INC. <br><br> Defendants. | No. 1:11-cv-08808 <br><br> Judge Steven C. Seeger |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO PROCURE REBUTTAL TESTIMONY OF THIRD-PARTY WITNESS GARY PICKETT**

Defendants United Egg Producers, Inc. ("UEP"), United States Egg Marketers, Inc. ("USEM"), Cal-Maine Foods, Inc. ("Cal-Maine"), and Rose Acre Farms, Inc. ("Rose Acre") (collectively, "Defendants") submit this Brief in Support of Defendants' Motion for Leave to Procure Rebuttal Testimony of Third-Party Witness Gary Pickett.

This case arises out of Plaintiffs' allegations that Defendants engaged in anticompetitive behavior, including through the creation and adoption of the UEP Certified Program (the "Program"). Relevant here is an anticipated dispute at trial over the role that large customers like Walmart played in adoption and implementation of the Program. In short, Plaintiffs will seek to demonstrate that Walmart was not pressured by animal rights groups to sell UEP certified eggs and

Defendants will seek to show the opposite: that Walmart and other important customers of Cal-Maine and Rose Acre and other UEP members were concerned about pressure from animal rights groups, and this concern, among other business concerns, led to Walmart's demand for eggs laid by hens housed under more humane conditions and egg producers' adoption and implementation of the Program.

To bolster their argument, Plaintiffs have designated testimony from a former Walmart employee, Anthony Airoso, which originally was given during the 2018 Direct Purchaser Plaintiff ("DPP") class action trial. Notably, Mr. Airoso was first disclosed as a witness in the DPP trial in the final pretrial order on the eve of trial, well after the 2014 close of fact discovery. He had not been deposed or otherwise disclosed prior to that date. The court in that trial allowed Mr. Airoso to testify because the parties were not required to make initial disclosures in the MDL, and there were no discovery requests asking for identification of trial witnesses. Accordingly, the court found his disclosure as a witness was timely, and he was permitted to testify. More recently, Plaintiffs have designated Mr. Airoso's 2018 trial testimony for use in the October 2023 trial of this case. Notably, three of the four defendants in this case were not defendants in the 2018 trial and thus never had an opportunity to cross-examine Mr. Airoso or to offer a witness to rebut his testimony.

To rebut Mr. Airoso's testimony in this trial, Defendants seek to call another (now-former) Walmart employee, who was Walmart's egg buyer during significant portions of the relevant time period, Gary Pickett. Like Mr. Airoso in the DPP trial, Mr. Pickett was first identified in witness disclosures after the close of discovery. He

2

was not previously identified as a witness and has not been deposed. Like Mr. Airoso, because the parties here also did not have to make initial disclosures and did not propound discovery requests asking for identification of trial witnesses, the disclosure of Mr. Pickett as a trial witness is timely.

Complicating this dispute is that Mr. Pickett lives in Arkansas and has significant family health issues which make him unavailable to testify live in-person. To accommodate both Mr. Pickett (a third-party witness) and Plaintiffs, Defendants proposed two alternative means to procure his testimony at trial: (1) pursuant to Fed. R. Civ. P. 32, taking a trial deposition of Mr. Pickett in Bentonville, Arkansas on August 4, 2023; or (2) pursuant to Fed. R. Civ. P. 43, permitting Mr. Pickett to testify remotely during trial. Plaintiffs have rejected both, indicating they object to Mr. Pickett's trial testimony on both timeliness and relevance grounds, thereby necessitating this motion.[1]

## I. Background

Plaintiffs indicated in their draft pretrial order submission to Defendants that they intend to introduce the previous trial testimony of Mr. Airoso. In May 2018, without previously being identified or deposed during the pre-trial discovery period, Mr. Airoso testified in the DPP trial in this MDL. At the time of Mr. Airoso's trial testimony, he was employed at Walmart, and testified that he did not have a role in purchasing eggs for Walmart until the Fall of 2007. Defendants at that trial were Rose Acre and two other egg producers. Defendants Cal-Maine, UEP, and USEM

---

[1] Plaintiffs have also informed Defendants that they reserve the right to lodge additional objections once they review Defendants' filing.

3

were *not* participants at that trial and did not have the opportunity to cross-examine Mr. Airoso or to introduce a rebuttal witness.

At no time prior to the 2018 trial's final pretrial disclosures had Mr. Airoso been identified as a potential witness. This was because witness disclosures were not required during the MDL discovery phase, which closed in May 2014. For example, in accordance with MDL Case Management Order 18, all parties waived initial disclosures under Federal Rule of Civil Procedure 26. And no party served discovery requests asking for the disclosure of trial witnesses. The first time Mr. Airoso was disclosed as a potential witness was in the February 2018 final pretrial order on the eve of trial. Despite not having been deposed or otherwise disclosed during discovery, he was permitted to testify at the trial.

Plaintiffs in this case designated Mr. Airoso's 2018 trial testimony for use in the upcoming October 2023 trial. On June 15, 2023, in the context of pretrial order discussions, Defendants disclosed to Plaintiffs that they would seek to introduce the testimony of Mr. Pickett at trial. Defendants anticipate that Mr. Pickett will rebut key portions of the designated testimony of Mr. Airoso, who became Mr. Pickett's supervisor at Walmart for a limited period of time at the tail end of the alleged conspiracy period. Specifically, Mr. Pickett will provide testimony that beginning in or about 2003, he served as Walmart's buyer responsible for shell eggs. In that capacity, Mr. Pickett had direct knowledge of Walmart's animal welfare policies during the relevant time period and how those policies applied to Walmart's purchases of eggs. Mr. Pickett further will testify about Walmart's purchasing

4

practices, its policy of purchasing eggs produced under the Program's Guidelines, including the so-called 100% Rule, as well as his relevant experiences with Cal-Maine, Rose Acre, and Sparboe. It is expected that Mr. Pickett will testify that Walmart adopted the Program because it was good for Walmart.

As to his unavailability, Mr. Pickett lives in Bentonville, Arkansas, and is outside the subpoena power of the Court. He is unwilling to testify live at trial, principally due to family health issues, including issues related to him, his wife, his daughter and his grandson. *See* Declaration of Gary Pickett ("Pickett Decl.") at ¶¶ 3–8. Mr. Pickett has gone to significant lengths to protect the health of his family, and since the onset of the COVID-19 pandemic, he has not traveled on a commercial plane. *Id.* at ¶ 7. Based on his personal situation and unavailability, Defendants seek to offer Mr. Pickett's testimony in one of two ways: (1) pursuant to video recorded deposition testimony pursuant to Rule 32(a)(4)(B), because Mr. Pickett is willing and able to sit for a deposition in the Bentonville area on August 4, 2023, or on another mutually agreeable date; or (2) pursuant to Rule 43(a), because he is willing and able to testify remotely via Zoom or similar videoconference platform during the trial from Bentonville.

Shortly after Defendants raised Mr. Pickett's prospective testimony with Plaintiffs, Plaintiffs objected on two grounds: timeliness and relevance. As to timeliness, Plaintiffs claim that Mr. Pickett was disclosed well after the close of discovery. Plaintiffs have also objected on the basis that the anticipated substance of Mr. Pickett's testimony is irrelevant, particularly given Plaintiffs' pending Motion in

5

Limine to Exclude or Limit Evidence Regarding Grocers and Certain 30(b)(6) Witness Testimony (the "Grocer Motion"). Neither objection has merit.

First, Defendants have given Plaintiffs more than ample time to prepare for and take a pretrial deposition of Mr. Pickett. Plaintiffs can hardly claim prejudice given that Mr. Pickett was disclosed roughly four months before the trial is set to commence, and Mr. Pickett is willing to be deposed before trial and has offered dates in July and August. Importantly, if either of the two defense proposals is adopted, Plaintiffs can object to and cross-examine Mr. Pickett on his testimony and thus Plaintiffs will suffer no prejudice related to the introduction of Mr. Pickett's testimony. This stands in stark contrast to the prejudice that the Defendants will suffer by the unrebutted presentation of Mr. Airoso's previous trial testimony designations, which was procured without the participation of three of the four defendants in this case.

Second, the timeliness of the disclosure must be considered in the context of the entire MDL and how discovery was conducted by Judge Pratter. As referenced above, in accordance with the agreement in MDL Case Management Order 18, neither Mr. Airoso nor any other person affiliated with Walmart was disclosed as a potential witness or a person with relevant information until February 2018. Defendants' disclosure of Mr. Pickett's testimony here is consistent with the class Plaintiffs' disclosure of Mr. Airoso in the MDL, where he was disclosed long after the discovery deadline and was nonetheless permitted to testify. Considering that the

6

DPPs were allowed to disclose Mr. Airoso in the MDL in this manner, Defendants should be allowed to rebut his testimony in a similar manner here.

As to relevance, Mr. Pickett's anticipated testimony is directly relevant to core disputed factual issues, such as the reasoning and rationale for the Program, and whether customers felt pressured by egg producers to demand eggs produced under the Program. Mr. Pickett's anticipated testimony will directly rebut portions of Mr. Airoso's designated testimony. As an example, Mr. Airoso testified that he did not recall Walmart "receiving pressure from animal rights groups to sell certified eggs." 08-MDL-02002 Trial Tr. 143:8–11, May 7, 2018 (excerpts attached as Exhibit 1). Mr. Airoso also testified that he never had any concerns about having to defend the fact that Walmart chose a supplier that was not UEP certified. *Id.* at 161:21–162:13. Defendants anticipate that Mr. Pickett's testimony will rebut these and other key sections of Mr. Airoso's testimony.

Also, allowing Mr. Airoso's testimony to be presented to the jury while simultaneously foreclosing Defendants' ability to present the rebutting testimony from Mr. Pickett based on timeliness grounds would severely prejudice Defendants. This is especially true for Cal-Maine, UEP, and USEM, none of which were parties at the trial from which Mr. Airoso's designated testimony comes, and thus had no opportunity to cross-examine or object to his testimony.[2]

---

[2] As to the pending Grocer Motion, Plaintiffs have represented that Mr. Airoso's testimony falls outside the scope of the Grocer Motion. Defendants disagree to the extent that if this Court grants Plaintiffs' motion to exclude the testimony at issue in the Grocer Motion, Defendants believe Mr. Airoso's testimony must be excluded for the same reasons. However, given Plaintiffs' position, the Court's decision on the Grocer Motion would not

7

Finally, Defendants' disclosure of Mr. Pickett is consistent with witness exchanges in this case. In July 2022, the Parties each disclosed potential trial witnesses and, for each of the first-time disclosed witnesses, the Parties reserved their rights to depose or otherwise seek discovery related to each in advance of trial.[3]

Considering all the facts and circumstances, the Court should grant this motion for Defendants to procure the testimony of Mr. Pickett, either through a trial deposition testimony (on August 4 or shortly thereafter) or remote trial testimony.

## II. Argument

### A. Mr. Pickett's Deposition May Be Ordered at the Court's Discretion under Rule 32.

Rule 32(a)(4)(B) provides for use of deposition testimony "for any purpose" in lieu of live in-court testimony if the court finds that the witness is "[u]navailable." Fed. R. Civ. P. 32(a)(4). A witness is unavailable if, among other reasons, they cannot attend or testify due to "age, illness, [or] infirmity," or if they live "more than 100 miles from the place of hearing . . ." *Id.* at 32(a)(4)(B)–(C). Mr. Pickett lives in Bentonville, Arkansas, more than 100 miles from the place of hearing in Chicago, Illinois. Mr. Pickett is retired and has myriad family health issues to attend to in Bentonville. Pickett Decl. at ¶¶ 2–6. Mr. Pickett's circumstances easily qualify him

---

resolve the current issue, as Mr. Pickett's testimony relates to identical subject matter as Mr. Airoso's testimony.

[3] In July 2022, Plaintiffs disclosed to Defendants that they may call two previously undisclosed witnesses, Marcos Eloi and Aaron Riippa, to testify at trial as so-called "corporate representatives" of Kraft and General Mills. Defendants did not object to Plaintiffs calling either Mr. Eloi or Mr. Riippa, as long as Defendants could depose each before trial. During the meet and confer process, and after indicating they would provide deposition dates, Plaintiffs reversed course and notified Defendants that they now do not intend to call either as a witness at trial.

8

under Rule 32, and Plaintiffs cannot dispute that he meets Rule 32's unavailability requirements.

While there is no dispute that fact discovery closed in 2014, Mr. Pickett's video-recorded deposition will be taken solely for the purpose of use in lieu of live trial testimony under Rule 32(a)(4)(B), so it is within the Court's discretion to allow the deposition to proceed. For example, in *United States v. Firishchak*, discovery was closed when one of the parties sent notices of two *de bene esse*, or "trial," depositions for purposes of presenting fact witness testimony pursuant to Rule 32. 468 F.3d 1015, 1022–23 (7th Cir. 2006). The depositions were scheduled to take place fewer than 30 days before the trial was slated to start. *Id.* There, the 7th Circuit made clear that the trial court had discretion to allow *de bene esse* depositions where the "witness was unable to attend or testify" even after close of fact discovery, "[b]ecause the rule permits broad use of depositions in these circumstances ...." *Id.* at 1023.

Defendants acknowledge that some courts have refused to allow *de bene esse* depositions when they occur after deadlines set in a court's scheduling order. But those cases are distinguishable from the circumstances here, which align with courts' findings that *de bene esse* depositions are permissible, particularly in a case like this one where the parties were not required to identify or disclose trial witnesses. Specifically, many courts have held that the discovery deadline does **not** apply to trial depositions because they are **not** being taken for purposes of discovery. *RLS Assocs., LLC v. United Bank of Kuwait PLC*, No. 01 CIV. 1290 (CSH), 2005 WL 578917, *6 (S.D.N.Y. Mar. 11, 2005) ("[T]he majority of courts considering this issue have made

9

what can only be described as a federal common law distinction between 'discovery depositions' and 'trial depositions' (or alternatively, 'preservation depositions'), and have held the latter category permissible even after the discovery deadline had passed."); see also *Estenfelder v. Gates Corp.*, 199 F.R.D. 351, 355 (D. Colo. 2001) (stating that courts that "treat [trial and discovery] depositions the same" and attempt to "regulate them all under a bright-line rule . . . are simply ignoring reality").[4] Some districts, including the Eastern District of North Carolina, have codified this distinction. E.D.N.C. Civ. R. 32.1 ("Depositions *de bene esse* may be taken outside of the period of discovery."); see also *Neighbors L. Firm, P.C. v. Highland Cap. Mgmt., L.P.*, No. 5:09–CV–352–F, 2011 WL 649925, *3 (E.D.N.C. Feb. 10, 2011) (applying Local Civil Rule 32.1).

The assessment a court must make in determining whether to exercise its discretion to allow a *de bene esse* disposition is whether the deposition is truly being taken for trial purposes or as a pretext for taking belated discovery. *See, e.g.*, *Est. of Gee ex rel. Beeman v. Bloomington Hosp. and Health Care Sys., Inc.*, No. 1:06–cv–00094–TWP–TAB, 2012 WL 729269, *6 (S.D. Ind. Mar. 6, 2012). Here, Mr. Pickett's deposition is being taken solely for the purposes of trial. Defendants do not seek new information via Mr. Pickett's deposition to help plan the contours of their eventual defenses. Rather, they seek his deposition for the sole purpose of preserving his

---

[4] While structured like a deposition, "*[d]e bene esse* depositions to some extent should really be treated as trial transcripts rather than discovery materials used at trials in accordance with Fed. R. Civ. P. 32(a)." Letter from Hon. Anthony J. Scirica, U.S. Ct. App. 3d Cir., to Hon. David F. Levi, U.S. Dist. Ct. Dist. E.D. Cal. (July 17, 2002), https://www.uscourts.gov/file/17564/download (containing memo on *de bene esse* depositions from Hon. Joseph Irenas, U.S. Dist. Ct. Dist. N.J.).

10

testimony as an unavailable trial witness to rebut specific points of Mr. Airoso's testimony.

Because Mr. Pickett's video-recorded *de bene esse* deposition will be taken solely for its use in lieu of live trial testimony, Defendants respectfully request that the Court exercise its discretion to allow Defendants to take the deposition of Mr. Pickett, an unavailable witness under Rule 32(a)(4)(B)–(C).

**B.     Mr. Pickett's Contemporaneous Virtual Testimony Also May Be Ordered at the Court's Discretion Under Rule 43.**

Another option the Court may consider is to allow Mr. Pickett to testify remotely at trial. Rule 43(a) provides that remote witness testimony be allowed "for good cause in compelling circumstances and with appropriate safeguards . . . ." Fed. R. Civ. P. 43(a). Whether "good cause in compelling circumstances" exists is a matter left to the Court's discretion. *Kanuszewski v. Shah*, No. 1:18-CV-10472, 2023 WL 168749, at *1 (E.D. Mich. Jan. 12, 2023).

Mr. Pickett's serious family health issues, including his protection of his family's health and his assistance in providing ongoing care for his daughter and grandson, preclude Mr. Pickett's travel to Chicago. The potentially devastating impact of an illness, and particularly a COVID infection, on Mr. Pickett, whose wife is severely asthmatic and whose daughter suffers from COPD, alone warrants allowing his remote testimony. Pickett Decl. at ¶¶ 3–4. These issues, in conjunction with his diminished annual income post-retirement from Walmart and his own ongoing recovery for issues related to his 2022 car accident, would place a heavy burden on Mr. Pickett if he were to travel to and from the trial to testify. *Id.* at ¶¶ 2,

11

6. Further, Mr. Pickett is outside the subpoena power of the Court, which also supports allowing his remote testimony due to his unavailability.

Strong technology exists to ensure that appropriate safeguards surrounding remote witness testimony are in place. Given the Courts' extensive (and recent) experience with the use of this technology during the COVID-19 pandemic, there should be no issues using videoconference technology here. Because "[v]ideoconference platforms like ZoomGov [or Zoom] adequately allow for cross-examination and the 'near instantaneous transmission of testimony with no discernable difference' from 'live' testimony allows jurors 'to judge credibility [of witnesses] unimpeded,'" Mr. Pickett's testimony being provided remotely would place absolutely no burden on Plaintiffs, but it would significantly ease the burden placed on Mr. Pickett. *Bao Xuyen Le v. Reverend Dr. Martin Luther King, Jr. Cnty.*, 524 F. Supp. 3d 1113, 1116 (W.D. Wash. 2021) (quoting *Julian Liu v. State Farm Mut. Auto. Ins. Co.*, 507 F. Supp. 3d 1262, 1265 (W.D. Wash. 2020)). Because good cause and compelling circumstances exist and appropriate safeguards can be set as required by Rule 43(a), the Court should grant leave so Mr. Pickett can provide testify remotely by videoconference if he is required to testify live during trial rather than via a video-recorded trial deposition.

## Conclusion

For the foregoing reasons, Defendants respectfully request that this Court exercise its discretion to grant Defendants' Motion for Leave to Procure Rebuttal Testimony of Third-Party Witness Gary Pickett for use at trial, whether via *de bene*

*esse* deposition under Rule 32 to be taken on August 4, 2023, or via contemporaneous videoconference under Rule 43, and any further relief this Court deems appropriate.

Dated: July 21, 2023                 Respectfully submitted,

*/s/ Patrick M. Collins*
Patrick M. Collins (pcollins@kslaw.com)
Livia M. Kiser (lkiser@kslaw.com)
Patrick M. Otlewski (potlewski@kslaw.com)
Abigail Hoverman Terry (aterry@kslaw.com)
KING & SPALDING LLP
110 North Wacker Drive, 38th Floor
Chicago, IL 60606
Tel: (312) 995-6333

Lohr Beck (lohr.beck@kslaw.com)
(pro hac vice)
Andrew Chinsky (achinsky@kslaw.com)
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel: (404) 572-2812

Brian E. Robison (brian@brownfoxlaw.com)
(pro hac vice)
BROWN FOX PLLC
6303 Cowboys Way, Suite 450
Frisco, TX 75034
Tel: (972) 707-2809

*Counsel for Defendant Cal-Maine Foods, Inc.*

*/s/ Robin P. Sumner*
Robin P. Sumner
(robin.sumner@troutman.com)
Kaitlin L. Meola
(kaitlin.meola@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
3000 Two Logan Square, 18th and Arch Streets

13

Philadelphia, PA 19103-2799
Tel: (215) 981-4000

Whitney R. Redding
(whitney.redding@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
Union Trust Building
501 Grant Street, Suite 300
Pittsburgh, PA 15219-4429
Tel: (412) 454-5085

Molly DiRago
(Molly.DiRago@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
227 West Monroe Street, Suite 3900
Chicago, IL 60606
Tel: (312) 759-1923

*Counsel for Defendants United Egg Producers, Inc. & United States Egg Marketers, Inc.*

*/s/ Donald M. Barnes*
Donald M. Barnes
(dbarnes@porterwright.com)
Jay L. Levine (jlevine@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
2020 K. Street, N.W., Suite 600
Washington, D.C. 20006-1110
Tel: (202) 778-3000

James A. King (jking@porterwright.com)
Allen T. Carter (acarter@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
41 South High Street, Suite 2900
Columbus, OH 43215
Tel: (614) 227-2000

*Counsel for Defendant Rose Acre Farms, Inc.*