**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KRAFT FOODS GLOBAL, INC., THE KELLOGG COMPANY, GENERAL MILLS, INC., and NESTLÉ USA, INC., | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | No. 1:11-cv-08808 |
| | ) | |
| v. | ) | Judge Steven C. Seeger |
| | ) | |
| UNITED EGG PRODUCERS, INC., UNITED STATES EGG MARKETERS, INC., CAL-MAINE FOODS, INC., and ROSE ACRE FARMS, INC. | ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO PROCURE REBUTTAL TESTIMONY OF THIRD-PARTY WITNESS GARY PICKETT

Plaintiffs Kraft Foods Global, Inc.; The Kellogg Company; General Mills, Inc.; and Nestlé USA, Inc. submit this Opposition to *Defendants' Motion For Leave To Procure Rebuttal Testimony Of Third-Party Witness Gary Pickett* (the "Motion"). Despite its title, Defendants' motion actually is a request to re-open discovery, which was closed nine years and two trials ago. In failing to justify the relief they seek, Defendants mischaracterize Plaintiffs' theory of the case, the relevance of the witness's testimony, the Federal Rules, and Seventh Circuit case law.

### INTRODUCTION

Nearly a decade after fact discovery closed and weeks before trial, Defendants move to either: (a) take an untimely deposition of former Walmart employee Gary Pickett or (b) call him remotely at trial. Tellingly, Defendants do not explain *why* they have waited until now to make this request. After all, they have known about Mr. Pickett since before fact discovery closed in April 2014. Defendants' Motion comes too late and should be denied for several reasons.

*First*, contrary to Defendants' claim, Rule 32 does not give Defendants authority to notice a deposition of a fact witness before trial. Instead, it only covers a party's *use* of that testimony.

*Second*, Defendants' attempt to recast Mr. Pickett's deposition as a "trial deposition" rather than a "fact deposition" similarly is misguided. The Federal Rules and the case law in this district do not suggest that renaming a deposition permits a party to ignore long-set discovery deadlines.

*Third*, Defendants have not even attempted to make a good cause showing to re-open discovery, as required by Rule 16(b) and the long-standing scheduling orders. Nor could they— the primary consideration for good cause is a party's diligence. Yet, Defendants have shown a marked lack of diligence in failing to procure Mr. Pickett's testimony over the twelve years this matter has been pending. Defendants have known of Mr. Pickett and his unavailability since before fact discovery closed nearly a decade ago. Defendants say they need to depose Mr. Pickett to respond to Plaintiffs' designation of trial testimony from former Walmart executive Anthony Airoso, but that testimony occurred in 2018. Defendants, including Rose Acre, a participant in that trial, waited five years to raise the issue. Allowing them to do so now would cause significant prejudice to Plaintiffs, who would have no ability to take further discovery to determine if Mr. Pickett's recollections, some of which would be 20 years old, are accurate.

*Fourth*, Defendants also have not shown there is good cause in a compelling circumstance to call Mr. Pickett remotely under Rule 43. Defendants have not demonstrated that Mr. Pickett's concerns that he will spread COVID to his family warrant remote testimony. No current guidance from the CDC instructs high risk individuals to refrain from travel due to COVID, let alone instructs their *relatives* to stay home. This is particularly so here where his family members recently contracted COVID, which likely gives them several months of improved immunity.

*Finally,* Defendants have not shown that Mr. Pickett would offer the sort of probative testimony that would warrant a departure from the Court's strong preference for live testimony. As described by Defendants, Mr. Pickett's testimony would not rebut the key testimony of Mr. Airoso—namely that Defendants employed threats and intimidation to stop customers from purchasing from competitors who were not in the UEP Certified Program. Instead, Defendants preview that Mr. Pickett will testify to something else: that Defendants should not be blamed for their anti-competitive conduct because Walmart and other customers asked that they take those actions. As Plaintiffs point out in their *Motion* In Limine *No. 5*, this evidence is irrelevant and prejudicial. To the extent the Court believes the Defendants should be allowed to introduce *some* evidence of their customers' behavior, Mr. Pickett's testimony would be cumulative. Even without Mr. Pickett's testimony, the District Judge overseeing the MDL and the prior trials recognized that the defendants bogged down the trial with far too much testimony on this point. Defendants do not need to add even *more* to this trial with Mr. Pickett's remote or deposition testimony.

## BACKGROUND

Fact discovery closed nearly a decade ago. Plaintiffs filed this action on December 12, 2011. (Dkt. 1.) Shortly thereafter, the case was transferred to the Eastern District of Pennsylvania as part of an MDL. (Dkt. 12.) In the MDL, the parties participated in joint fact discovery, which closed on April 30, 2014. (Case No. 2:08-md-02002-GP (E.D. Pa.), Dkt. 869 at 3, the "Discovery Order," attached hereto as Exhibit A.) The case management orders provided that, "[a]bsent Court permission, which must be obtained in advance with a showing of good cause, the parties shall not serve any additional written discovery requests or notice any additional fact witness depositions...." (*Id.*) Indeed, in 2015, plaintiffs in the MDL sought to take additional depositions but the MDL court denied that request, finding that "there [was] not good cause to reopen fact discovery." (Case No. 2:08-md-02002-GP (E.D. Pa.), Dkt. 1210, attached hereto as Exhibit B.)

Defendants have known about Mr. Pickett since the inception of this case. A former employee of Walmart, Mr. Pickett's name appears in several documents produced in the MDL joint discovery, including hundreds of documents produced by UEP/USEM and Cal-Maine. (*See, e.g.*, Sept. 21, 2005 email chain re "FW: ACC story," Bates no. UE0199135, attached hereto as Exhibit C; Mar. 2, 2005 memo from J. Hardin to G. Pickett re "Business review 2006," Bates no. CM00215181, attached hereto as Exhibit D.) Mr. Pickett also was mentioned in multiple depositions, including a March 2014 deposition taken at the offices of Rose Acres' counsel in which Michael Foods' former president and CEO Greg Ostrander testified that Mr. Pickett was an egg purchaser for Walmart. (Dep. of G. Ostrander, Mar. 5, 2014, at 1, 77-89, attached hereto as Exhibit E.) And in an April 2014 deposition, Cal-Maine's vice president of sales, Jeff Hardin, testified that Mr. Pickett was "my buyer at Walmart." (Dep. of J. Hardin, Apr. 18, 2014, at 125-26, 143, attached hereto as Exhibit F.) Despite having been disclosed in documents and discussed in the 2014 depositions of Mr. Pickett, Defendants did not seek to depose Mr. Pickett.

Mr. Pickett came up during the two other cases in the MDL that went to trial: an action brought by direct purchaser plaintiffs against Rose Acre and other defendants (the "DPP Action"), and an action brought by direct action plaintiffs against Rose Acre, UEP, and USEM (the "DAP Action"). In the 2018 trial in the DPP Action, Mr. Pickett was mentioned multiple times, including during Rose Acre's closing argument. (DPP Action tr., May 9, 2018, at 132-46, attached hereto as Exhibit G; DPP Action tr., June 5, 2018, at 74-75, attached hereto as Exhibit H.) Defendants did not call Mr. Pickett to testify in the trials, including the DPP action in which the views of grocer-purchasers, such as Walmart, were arguably relevant.

Defendants now claim that they need to depose Mr. Pickett to respond to Mr. Arioso's testimony. As part of the 2018 trial in the DPP Action, the plaintiffs called Mr. Airoso, a senior vice president for food sourcing at Walmart, to testify about the pressure campaign that UEP and

4

others waged so that Walmart would continue to purchase from egg producers in the UEP Certified Program and would not buy eggs from a competitor that had opted not to participate in that program. (DPP Action tr., May 7, 2018, at 137, 140-178, attached hereto as <u>Exhibit I</u>.) Following Mr. Airoso's testimony, the defendants in the DPP Action introduced voluminous testimony and documentary evidence regarding Walmart's view of the UEP Certified Program—so much so that the MDL court refused to allow additional evidence on the point, noting it was "really just redundant because we've already gone over the Wal-Mart view." (Ex. G at 143.) The MDL court continued, "How can it not be cumulative? I've been sitting here for – I don't know how long," and noted that "we've talked a lot about Walmart and Walmart's views." (*Id.* at 144-45.) Defendants in the DPP Action did not seek to call Mr. Pickett for rebuttal, nor did Defendants later seek to re-open discovery to depose him.

Plaintiffs informed Defendants they would be introducing Mr. Airoso's prior trial testimony more than a year ago. On July 22, 2022, Plaintiffs' counsel sent Defendants' counsel initial designations of several witnesses' transcripts, including Mr. Airoso's testimony. (July 22, 2022 email from A. Allen, attached hereto as <u>Exhibit J</u>.) Defendants reviewed Plaintiffs' designations of Mr. Airoso's testimony and responded with their own counter-designations and objections. (August 5, 2022 email from A. Carter attached hereto as <u>Exhibit K</u>.) Following Plaintiffs' July 22, 2022 disclosure of Mr. Airoso's designations, Defendants did not seek to re-open discovery to depose Mr. Pickett.

## ARGUMENT

### I. Defendants Fail To Satisfy The Rigorous Standard To Re-Open Discovery.

Defendants frame their Motion as a request under Rule 32 to take an additional deposition. But Rule 32 deals with the *use* of depositions at trial, not the *taking* of new depositions after discovery has closed. Properly framed, Defendants seek to re-open discovery, which under the

terms of the Discovery Order and Rule 16 of the Federal Rules of Civil Procedure requires a showing of good cause. Defendants have not shown good cause and the Court should deny their request to take the untimely deposition.

### A. Rule 32 Does Not Permit Defendants To Take An Untimely Deposition.

Rule 32(a) is titled "Using Depositions in Court Proceedings" and only discusses using depositions that have already been taken. Fed. R. Civ. P. 32(a). It says nothing about taking new depositions. Thus, the rule provides "only that [an unavailable witness's] deposition can be *used* at trial, not that [a party] is entitled to reopen the discovery schedule in order to *take* [the witness's] deposition at [a] late date." *Rizza v. Wausau Underwriters*, No. 09 CV 687, 2011 WL 867492, at *1 (N.D. Ill. Mar. 11, 2011) (emphases added). "[A party] still must explain why late deposition ... should be permitted in the first place, as opposed to the more usual and desirable procedure of calling witnesses at trial." *Orthofix Inc. v. Gordon*, No. 1:13-cv-01463-SLD-TSH, 2016 WL 11755593, at *1 (C.D. Ill. Aug. 10, 2016).

In *Rizza*, a defendant relied on Rule 32(a)(4) in moving to depose a witness to obtain her testimony for use at trial because the witness lived more than 100 miles from the court and, as the defendant had recently learned, the witness was confined to a wheelchair. *Id.* at *1. The court explained that Rule 32(a)(4) did not apply, and the defendant's request was properly considered under Rule 16(b)(4), which required a showing of good cause to re-open discovery. *Id.* at *2. The court denied the request, noting that the defendant had failed "to identify any legitimate reason for not deposing [the witness] earlier," and explaining that the defendant's "decision to wait until the eleventh hour to seek to depose [the witness] threaten[ed] to wreak havoc with the court's trial schedule, as well as interfere with the preparations of plaintiff's counsel." *Id.*

Defendants cite *United States v. Firishchak*, 468 F.3d 1015, 1022-23 (7th Cir. 2006), claiming that the Seventh Circuit has endorsed Rule 32(a)(4)(B) as grounds for taking an untimely

6

deposition (Brief at 9), but the court in *Firishchak* did no such thing. There, the issue was whether the lower court abused its discretion by not providing a continuance after allowing the government to use depositions at trial. There is no suggestion in the opinion that the defendant challenged the deposition notices. The Seventh Circuit affirmed the lower court's decision not to continue the trial. 468 F.3d at 1023. As a district court later noted, *Firishchak* "does not present a case where depositions of unavailable witnesses were allowed to be presented at trial; rather, the Seventh Circuit affirmed the district court's refusal to grant a continuance to a defendant after the plaintiff informed the defendant it would be taking a late deposition." *Orthofix*, 2016 WL 11755593, at *1.

In short, Defendants' reliance on Rule 32 is misplaced. The rule provides no authority for Defendants to take Mr. Pickett's deposition on the eve of trial, nearly a decade after fact discovery has closed.

### B. Calling The Deposition A "Trial Deposition" Does Not Constitute Good Cause.

Defendants suggest they are not *really* asking to re-open discovery because Mr. Pickett's deposition would be a "trial deposition," not a "fact deposition." (Brief at 9-11.) But "[t]rial depositions are not explicitly contemplated by the Federal Rules of Civil Procedure, as the Rules do not distinguish between discovery and trial depositions." *Maui Jim, Inc. v. SmartBuy Guru Enters.*, No. 16 C 9788, 2019 WL 4140782, at *2 (N.D. Ill. Aug. 30, 2019). Indeed, many courts have noted Rule 16 "was amended specifically to authorize and empower courts to establish discovery deadlines, enforce compliance with those deadlines, and avoid precisely the type of last-minute 'trial depositions' Defendants seek in this case." *Id.* (collecting cases). Plaintiffs are not aware of a single civil case in this district where a court permitted a party to notice a deposition as a "trial deposition" after discovery had closed and Defendants cite none in their Brief.[1]

---

[1] The out-of-district decisions Defendants cite are not helpful to them. In *RLS Assocs., LLC v. United Bank of Kuwait PLC*, No. 01 CIV. 1290 (CSH), 2005 WL 578917, at *7 (S.D.N.Y. Mar.

In any event, *no* court allows what Defendants seek here—"the extension or reopening of fact discovery so they can obtain information about matters that [they believe] have been at the heart of this case since day one." *Id.* at *3. If preserving Mr. Pickett's testimony were so crucial, Defendants could have sought his testimony prior to the close of discovery nine years ago. They could have sought to re-open discovery after Mr. Airoso testified in 2018. They could have even attempted to re-open discovery in 2022, when Plaintiffs disclosed their intent to introduce Mr. Airoso's testimony at trial. "Leaving everything to the last minute while knowing about a deadline for [ten years] can and should have serious consequences." *Sapia v. Bd. of Educ.*, 329 F.R.D. 585, 586 (N.D. Ill. 2019). Defendants should not be able to skirt the Federal Rules and the long-standing Discovery Order, simply by calling this a "trial deposition."

### C.     Defendants Have Not Shown Good Cause To Re-Open Discovery.

Defendants have not made the appropriate good cause showing to re-open discovery, as required by both the Discovery Order and Rule 16. "In making a Rule 16(b) good-cause determination, the primary consideration ... is the diligence of the party seeking amendment." *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011). A party that waits until the last minute to request an extension faces an even higher hurdle. *See Pirzadah v. Erie LaSalle Venture LLC*, No. 21 C 2988, 2022 WL 17357770, at *1 (N.D. Ill. Dec. 1, 2022) ("Eleventh hour motions for

---

11, 2005), the witness only became unavailable after discovery closed because he left his job and moved to Dubai. Here, Mr. Pickett has been outside the reach of this Court, although available for deposition, since this case began. In *Estenfelder v. Gates Corp.*, 199 F.R.D. 351, 356 (D. Colo. 2001), unlike here, the court had not even set a date for trial when the defendant sought to depose a party outside the discovery period. And, in *Est. of Gee ex rel. Beeman v. Bloomington Hosp. & Health Care Sys., Inc.*, No. 1:06-CV-00094-TWP, 2012 WL 729269, at *7 (S.D. Ind. Mar. 6, 2012), the court relied on the precedent in that district to allow a late deposition but, noting the disruption it would cause, ordered the requesting plaintiff to pay the defendants "all costs and attorney's fees associated with preparing for and attending this belated deposition." Those cases do nothing more than indicate these are discretionary calls for the Court. But Defendants have done nothing to show the Court should use its discretion to permit the deposition of Mr. Pickett, especially given the authority in this district.

extensions of deadlines and last minute motions to compel discovery are generally unacceptable…. The timing of plaintiffs' combined motion is reason enough to deny it."); *Vann-Foreman v. Ill. Cent. R.R. Co.*, No. 19 C 8069, 2020 WL 7385451, at *1 (N.D. Ill. Dec. 16, 2020) (collecting cases and noting that "eleventh-hour requests for extensions often bear on the legitimacy of the request").

Here, Defendants do not even mention "good cause" in arguing why they should be allowed to take an untimely deposition, nor do they demonstrate that it exists. (Brief at 8-11.) As to the "primary consideration" of their own diligence in securing Mr. Pickett's testimony, Defendants do not explain why they have waited until now to make this request, despite knowing about Mr. Pickett and having ample opportunities during the discovery period. Indeed, before the 2014 discovery cut-off, Defendants took and defended depositions of dozens of potential witnesses, including more than 24 other egg purchasers. Mr. Pickett was not one of them. And, just like the defendant in *Rizza*, Defendants have known that Pickett would be "well beyond the reach of this court's subpoena power" since the beginning of this case. *See Rizza*, 2011 WL 867492, at *1.

Accordingly, the Court should deny Defendant's untimely request to depose Mr. Pickett. Defendants "ha[ve] identified no good cause under Rule 16(b)(4) for reopening the discovery schedule given [Defendants'] failure to identify any legitimate reason for not deposing [Pickett] earlier. *Id.* at *2; *accord Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 432 (7th Cir. 2000) (affirming order denying motion to reopen discovery to take deposition because identity of witness was known to the moving party "well in advance" of the event triggering the motion and request to depose was "well after the close of discovery," which closed five months earlier).

### D. An Untimely Deposition Would Prejudice Plaintiffs.

Defendants assert that their request to take an untimely deposition of Mr. Pickett would cause no harm to Plaintiffs. Defendants claim their request is no different than Plaintiffs' July 2022

disclosure of their intent to call corporate representatives for Kraft and General Mills at trial. (Brief at 6, 8 n.3.) Not so.

The untimely deposition of Mr. Pickett would cause significant prejudice to Plaintiffs. For one thing, "plaintiff[s] would be burdened with the cost of attending [an] out-of-state deposition[] scheduled after the close of fact discovery which it otherwise would not need to incur." *See Experience Based Learning, Inc. v. Hanover Ins. Co.*, No. 17 CV 05133, 2019 WL 2576390, at *3 (N.D. Ill. June 24, 2019). Further, at this late date, Plaintiffs would have no opportunity to take additional discovery to determine if Mr. Pickett's decades old recollection is accurate. Even if Plaintiffs were granted time to take additional discovery, it likely would launch a cascade of delays in an already old case. *See id.* (noting that discovery delays "tend to have 'a cascading effect on the rest of the cases and motions pending in a busy court.'" (citation omitted)). To that point, the parties and the Court have shifted to other trial preparation and should not be forced to divert their time and resources to a deposition request that "should have been served well-before [it] w[as] served." *See In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2022 WL 170044, at *3 (N.D. Ill. Jan. 19, 2022). Even if Plaintiffs had time to propound discovery and keep the October 16, 2023 trial date, there's far from any guarantee that any records that could disprove Mr. Pickett's recollection still exist, given the age of this case and relevant facts.

Defendants' prejudicial request is not at all analogous to Plaintiffs' disclosure of Marcos Eloi and Aaron Riippa as potential trial witnesses. As Defendants acknowledge in their Brief, Plaintiffs disclosed these potential witnesses more than a year ago, in July 2022 (when they also disclosed Mr. Airoso). (Brief at 8 n.3) Plaintiffs' disclosure was made pursuant to the scheduling orders and, notably, Defendants never objected that those disclosures were untimely.[2] But it is the

---

[2] Plaintiffs have since decided not to call either as witness, and have informed Defendants of this decision.

not the fact that Defendants have now *disclosed* Mr. Pickett as a witness that is objectionable—it is the fact that Defendants want to re-open discovery so they may take a deposition of him. With Mr. Eloi and Mr. Riippa, *Plaintiffs* made their potential witnesses available to *Defendants* to depose them, as a courtesy and standard practice so that the opposing party knows what the adverse witness will say and has a fair opportunity to cross-examine the witness at trial. Here, Defendants have identified Mr. Pickett as a beneficial witness to Defendants and it is Defendants who want to depose him so that they have new evidence at trial. The examples are not alike or even similar.

## II.   The Court Should Deny Defendants' Request To Take The Remote Testimony Of Mr. Pickett.

Defendants alternatively ask the Court to permit Gary Pickett to testify remotely. Their reason? Mr. Pickett is outside the subpoena power of this Court and he refuses to attend voluntarily. The Court should deny this request. Rule 43(a) sets a high burden for a party to introduce witness testimony remotely at trial, and Defendants have not met that burden.

### A.   Defendants Have Not Shown That Gary Pickett Cannot Appear Live At Trial.

Rule 43(a) requires that trial witness testimony "*must* be taken in open court" absent some exception. Fed. R. Civ. P. 43(a) (emphasis added). Only "[f]or good cause in compelling circumstances," may a party introduce trial testimony transmitted from a different location. *Id.* As this Court previously has explained:

> Testifying in person is part of our legal system's longstanding tradition. And for good reason. There is value in getting a witness into the courtroom (and outside of their comfort zone) for live, in-person testimony. There's no substitute for person-to-person cross examination, when everyone is in the same room. The atmosphere helps ferret out the truth. The jury needs to see and hear this witness, in person, to evaluate his credibility. Testimony via video feels artificial by comparison, and should be avoided absent compelling circumstances.

*Bolden v. Pesavento*, No. 17-CV-417 (N.D. Ill.) (Seeger, J.), Dkt. 465, attached hereto as Exhibit L.

Here, Defendants refer primarily to the health of Mr. Pickett's family members to suggest that the Court should reject the strong preference for in-person testimony and allow Mr. Pickett to testify remotely. (Brief at 11-12.) According to their Brief, Mr. Pickett's wife suffers from asthma and his daughter suffers from COPD. (*Id.* at 11.) This, Defendants argue, should preclude Mr. Pickett from having to testify in-person out of fear that his traveling to Chicago may put his wife and daughter at increased risk of contracting COVID. (*Id.*)[3]

Defendants fall well short of the "good cause in compelling circumstances" that a party must show to present remote testimony. By no means do Plaintiffs minimize the health issues that Mr. Pickett's wife and daughter face. Asthma and COPD are serious conditions and the COVID pandemic has forced many people with these (and a host of other) conditions to take extra care.

But Defendants point to no current medical guidance (and Plaintiffs are aware of none) recommending that people with increased COVID risk—let alone those *living* with them—should avoid travel altogether. Rather, for people with these conditions, the CDC recommends precautions like staying up to date with vaccines, wearing a mask, and testing if symptoms arise. Ctr. for Disease Control, *COVID-19: People with Certain Medical Conditions*, updated May 11, 2023, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The science does not support the premise that Mr. Pickett's travel to Chicago would create any greater risk of COVID infection than his family's current day-to-day life. According to the Harvard School of Public Health, when a passenger takes proper precautions, flying can be safer than grocery shopping. Harvard T.H. Chan School of Public Health, *With*

---

[3] Defendants also assert that Mr. Pickett has lingering issues from a 2022 car accident but they do not provide any information as to what those issues are or how they affect his ability to testify in person. (Brief at 11.) Similarly, they claim that Mr. Pickett has "diminished annual income" since retiring from Walmart, but they do not say what that income is, how travel to this district harm him economically, or why Defendants would not cover the cost of his travel to Chicago. (*Id.*) These vague statements are woefully inadequate to support a request for remote testimony.

*Proper Precautions, Flying Can Be Safer Than Grocery Shopping*, available at https://www.hsph.harvard.edu/news/hsph-in-the-news/with-proper-precautions-flying-can-be-safer-than-grocery-shopping. The low risk of travel is particularly true now that the threat of COVID has eased. *See J.D. v. Price*, 619 F. Supp. 3d 523, 529 (W.D. Pa. 2022) ("There is no reason to presume that court proceedings are more hazardous than the rest of our re-opened society. It is no longer reasonable, therefore, to treat the mere presence of COVID-19—without more—as the good cause and compelling circumstances necessary to permit video testimony."); *accord Good v. BioLife Plasma Servs., L.P.*, 605 F. Supp. 3d 947, 957 (E.D. Mich. 2022), *reconsideration denied,* No. 1:18-CV-11260, 2022 WL 17821556 (E.D. Mich. Dec. 20, 2022) ("[G]iven the development of COVID-19 vaccines and therapeutic treatments, the public-health situation has improved substantially.… Accordingly, the COVID-19 pandemic alone, at least at this juncture, does not justify ... testifying remotely.")[4] Further, Mr. Pickett declares that his wife and daughter recently contracted COVID (Dkt. 263-002 at 2), which likely gives them natural immunity against reinfection for several months, and even longer protection against a severe case. *See* Ctr. for Disease Control, *COVID-19: What Is Covid-19 Reinfection?*, updated Mar 15, 2023, available at https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html.

Defendants assert that "strong technology" means there "should be no issues using videoconference technology here" (Brief at 12), but anyone who has endured remote proceedings

---

[4] For that reason, Defendants' reliance on *Bao Xuyen Le v. Reverend Dr. Martin Luther King, Jr. Cnty.*, 524 F. Supp. 3d 1113, 1116 (W.D. Wash. 2021), decided amidst the throes of the COVID pandemic, is misplaced. The only other case Defendants cite, *Kanuszewski v. Shah*, No. 1:18-CV-10472, 2023 WL 168749, at *1 (E.D. Mich. Jan. 12, 2023), also does not help them. In *Shah*, the court explicitly stated that COVID's effect on a witness's ability to appear had subsided, but allowed remote testimony because a combination of "strange winter conditions and unknown technological issues" had created a nationwide air travel stoppage with no end in sight for the upcoming trial.

13

throughout the pandemic knows that simply is not true. As this Court and many others have recognized, video testimony is a poor substitute for a live witness:

> Experience over the last two-and-a-half years has demonstrated that, while comparatively more advanced than in the past, video technology still presents technological problems that can be distracting or even disruptive. The transition from in-person to video testimony has not been seamless. Screens freeze, audio garbles, and feedback screeches proceedings to a halt. The video feed drops, interrupting a witness mid-word or leaving a disembodied stream of words coming from a shadow avatar on a blank screen. All of these issues take time to resolve, prolonging the proceedings. As a result, in a jury trial, the perceived convenience of video testimony would be underwritten by the jurors' valuable time.

*J.D.*, 619 F. Supp. 3d at 528. This is in addition to the well-established "truth telling and truth discovering" benefits that come from a witness testifying within the four walls of a federal courtroom, in the presence of parties and the judge, and face-to-face with the jury. *Id.* at 528-29.

### B.     Defendants Have Not Shown That Mr. Pickett Offers Relevant Testimony.

Finally, Defendants have made no showing that Mr. Pickett would offer the sort of probative testimony that would warrant a departure from the tradition of live testimony. Defendants provide only scant information about what Mr. Pickett's testimony would be, but in what little they do provide, Defendants have framed Mr. Pickett as a "rebuttal" to Mr. Airoso. (Brief at 10-11.) In doing so, they mischaracterize Plaintiffs' theory of the case and the import of Mr. Airoso. While Defendants claim that "Plaintiffs will seek to demonstrate that Walmart was not pressured by animal rights groups to sell UEP certified eggs" (Brief at 1), Plaintiffs, in fact, have filed a motion *in limine* to bar Defendants' "grocers made us do it" argument. *Motion In Limine No. 5*. Defendants opposed that motion, trying to have the jury focus—as they do with Mr. Pickett—on issues that are not relevant, given that neither Walmart nor any other grocer is a party.

The preview they give of Mr. Pickett's testimony is far afield from the import of Mr. Airoso's testimony, which is attached hereto as <u>Exhibit I</u>. Mr. Airoso testified primarily about Defendants' strong-arm tactics to force Walmart to continue to purchase from egg producers in

the UEP Certified Program, including threats and intimidation. (*See* Ex. I at 163-174.) This is an example of the anti-competitive conduct that Plaintiffs must show to prevail. In contrast, Defendants indicate that Mr. Pickett's testimony will bolster their separate argument that Walmart demanded the UEP Certified Program due to pressure from animal welfare groups. (Brief at 2.) As explained in Plaintiffs' motion *in limine*, this is not a defense. Testimony designed to show that Defendants' customers are responsible for Defendants' anti-competitive behavior is irrelevant, unfairly prejudicial, and cumulative. (*See Motion* In Limine *No. 5*, Dkt. 180.) Even if the Court were to allow it, Defendants would not need Mr. Pickett's testimony to make that point. As set forth above, the defendants in the DPP Action (including Rose Acre) introduced so much of this evidence—without calling Mr. Pickett—that the court noted that the Walmart evidence became "really just redundant because we've already gone over the Wal-Mart view," and denied additional Walmart evidence as "cumulative." (Ex. G at 143-45.)

Accordingly, there is no good cause or compelling circumstance to allow the remote testimony of Mr. Pickett. Defendants have not made a sufficient showing that he could not appear in-person nor have they shown he will offer anything more than irrelevant testimony that is cumulative of the voluminous evidence Defendants already have garnered.

## CONCLUSION

For all of the foregoing reasons, the Court should deny Defendants' Motion to take an untimely deposition of Gary Pickett or to let him testify remotely at trial.

July 27, 2023

Respectfully submitted,

KRAFT FOODS GLOBAL, INC., GENERAL
MILLS, INC., NESTLÈ USA, INC., and THE
KELLOGG COMPANY

 /s/ *Brandon D. Fox*
Brandon D. Fox
Amy M. Gallegos (*pro hac vice*)
JENNER & BLOCK LLP
515 South Flower St, Suite 3300
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199
bfox@jenner.com
agallegos@jenner.com

James T. Malysiak
Joel T. Pelz
Angela M. Allen
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel: (312) 222-9350
Fax: (312) 527-0484
jmalysiak@jenner.com
jpelz@jenner.com
aallen@jenner.com