# EXHIBIT 2

```
 1                IN THE UNITED STATES DISTRICT COURT

 2             FOR THE EASTERN DISTRICT OF PENNSYLVANIA

 3

 4   IN RE:  PROCESSED EGG PRODUCTS:        MDL NO. 2002
     ANTITRUST LITIGATION                   08-MDL-02002
 5

 6
                              - - - - -
 7
                         PHILADELPHIA, PA
 8
                              - - - - -
 9
                         OCTOBER 24, 2019
10
                              - - - - -
11

12
     BEFORE:         THE HONORABLE GENE E.K. PRATTER, J.
13

14                            - - - - -

15                   FINAL PRETRIAL CONFERENCE

16                            - - - - -

17

18

19

20                   KATHLEEN FELDMAN, CSR, CRR, RPR, CM
                     Official Court Reporter
21                   Room 1234 - U.S. Courthouse
                     601 Market Street
22                   Philadelphia, PA  19106
                     (215) 779-5578
23

24
          (Transcript produced by mechanical shorthand via C.A.T.)
25
```

```
 1   APPEARANCES:

 2
                     KENNY NACHWALTER, P.A.
 3                   BY:  WILLIAM J. BLECHMAN, ESQUIRE
                     DOUGLAS H. PATTON, ESQUIRE
 4                   BRANDON S. FLOCH, ESQUIRE
                     MICHAEL A. PONZOLI, ESQUIRE
 5                   Four Seasons Tower
                     141 Brickell Avenue, Suite 1100
 6                   Miami, Florida  33131
                     For the Kroger Plaintiffs
 7

 8
                     SPERLING & SLATER
 9                   BY:  PAUL E. SLATER, ESQUIRE
                     DAVID P. GERMAINE, ESQUIRE
10                   JOSEPH M. VANEK, ESQUIRE
                     55 West Monroe Street, Suite 3200
11                   Chicago, Illinois  60603
                     For Plaintiffs Publix and SuperValu Inc.
12

13
                     MARCUS & SHAPIRA, LLP
14                   BY:  MOIRA CAIN-MANNIX, ESQUIRE
                     One Oxford Centre 35th Floor
15                   301 Grant Street
                     Pittsburgh, PA  15219
16                   For Plaintiff Giant Eagle, Inc.

17

18                   PEPPER HAMILTON LLP
                     BY:  JAN P. LEVINE, ESQUIRE
19                   ROBIN P. SUMNER, ESQUIRE
                     ALEXANDER L. HARRIS, ESQUIRE
20                   KAITLIN MEOLA, ESQUIRE
                     3000 Two Logan Square
21                   18th & Arch Streets
                     Philadelphia, PA  19103
22                   For Defendants United Egg Producers, Inc.
                     and United States Egg Marketers, Inc.
23

24
                     (Cont.)
25
```

```
 1   APPEARANCES:  (Cont.)

 2
                   PORTER WRIGHT MORRIS & ARTHUR LLP
 3                 BY:  JAY L. LEVINE, ESQUIRE
                   DONALD M. BARNES, ESQUIRE
 4                 2020 K Street, NW
                   Suite 600
 5                 Washington, DC  20006
                          And
 6                 PORTER WRIGHT MORRIS & ARTHUR LLP
                   BY:  JAMES A. KING, ESQUIRE
 7                 41 South High Street
                   Suite 2900
 8                 Columbus, OH  43215
                   For Defendant Rose Acre Farms, Inc.
 9

10
                   AHERN AND ASSOCIATES, P.C.
11                 BY:  THEODORE BELL, ESQUIRE
                   Willoughby Tower
12                 8 South Michigan Avenue, Suite 3600
                   Chicago, IL  60603
13                 For Winn-Dixie Stores, Inc., Roundy's,
                   and H.J. Heinz Company, L.P.
14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   BY PHONE:

 2                   Whitney Redding, Esquire

 3                   Brian Hill, Esquire

 4                   John Bjork, Esquire

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

 1     jury box for sitting or your clients if they're going to be

 2     here.  Okay, so you work with Mr. Coyle.

 3            All right, some more substantive or actual

 4     law-related issues.  There is an issue about asking what my

 5     thoughts are on objections to deposition designations.  You

 6     don't have to say a word yet.  I've just kind of teed up your

 7     open questions.  I would like to at least know, well, three,

 8     but, at the least, two full business days what your objections

 9     are to deposition designations.  That's how much time in

10     advance I'd like to know.  I don't want -- it was not rational

11     for it all before the trial started so I'm not going to do

12     that.  But I do need at least two full days to kind of turn

13     that around.  Obviously, I need the deposition, and if you can

14     give me the highlighted versions, that would be an act of

15     kindness.

16            Okay, now we've got summary exhibits that seems to

17     be now a big thing here.  I need written -- as I understand,

18     the DAPs object to some of the Defense summaries, and if

19     that's true, I need to know what the written challenge is.  I

20     don't have that yet I don't believe.  If you want to challenge

21     them as a defense summary as some kind of supplement to the

22     Walker expert report, then I suppose I should listen to the

23     defense explanation as to why it isn't that and why it's a

24     straight 1006 summary, okay?

25            There is an objection from the Defense about

 1   somebody named Kristin or Kirsten Flanagan.  Who is Ms.

 2   Flanagan?

 3           MR. BLECHMAN:  Your Honor, she's the summary

 4   witness.

 5           THE COURT:  I understand that part.

 6           MR. BLECHMAN:  I apologize, Your Honor.  She is --

 7           THE COURT:  She's like a new entry here, right?

 8           MR. BLECHMAN:  The summary -- a summary witness was

 9   disclosed as a category in our trial witness list and then I

10   don't know how many weeks ago --

11           THE COURT:  A draft pick to be named later, or what?

12           MR. BLECHMAN:  At the start, yes, Your Honor, and

13   then several weeks ago, we identified her as the summary

14   witness and we disclosed that information to the Defendants.

15           THE COURT:  Okay.  Who is she and where's she from?

16           MR. BLECHMAN:  She's from Philadelphia.  She is at

17   an accounting firm.  The name of the accounting firm is --

18           MR. PONZOLI:  Friedman LLP.

19           MR. BLECHMAN:  Sorry -- Friedman LLP and she is not

20   offering any opinions, Your Honor.  The only thing she's doing

21   is she is serving as the vehicle, for lack of a better word,

22   and I apologize, through which we would introduce and offer

23   into evidence the summary exhibits and that's it.  We would

24   expect that to be a relatively brief examination to simply lay

25   the foundation to have the summary exhibits admitted and

1   that's the extent of the examination, Your Honor.

2          THE COURT:  So the extent of the examination would

3   not include this concept of being a certified fraud examiner?

4          MR. BLECHMAN:  Correct, Your Honor.

5          THE COURT:  No reference to that?

6          MR. BLECHMAN:  Correct, Your Honor.

7          THE COURT:  Correct, no reference?

8          MR. BLECHMAN:  Correct, no reference, Your Honor.

9          THE COURT:  Why can't you stipulate to the exhibit?

10   It may be a rhetorical question.

11          MR. KING:  Well --

12          THE COURT:  And then you can eliminate Ms. Flanagan

13   altogether.

14          MR. KING:  Well, a couple of issues with respect to

15   the summaries which the Plaintiffs seek to introduce under

16   1006.  Our review of them indicates to us that they really are

17   demonstratives.  They're not 1006 summaries.  They're intended

18   to persuade.  They pick and choose.  This isn't like -- these

19   aren't like summaries of cancelled checks or of invoices.

20   These are summaries that largely consist of timelines of each

21   of the alleged coconspirators that pick and choose various

22   pieces of evidence, United Voices, meeting minutes,

23   correspondence, e-mails, et cetera.  There's a lot more

24   analysis in these summaries, analysis and, I think, argument

25   in these summaries than you would see in a typical 1006

1    summary.  So that's our first concern as to why we would not

2    stipulate to them as true summaries.

3              THE COURT:  Okay.

4              MR. KING:  Second, insofar as Ms. Flanagan, who's an

5    outside consultant, who apparently was retained either on

6    September 12th or September 13th, insofar as she created these

7    and picking and choosing --

8              THE COURT:  You want to cross-examine her on that.

9    I understand that.

10             MR. KING:  I agree, but if she is -- I don't know

11   what criteria she's using, but if she's using any criteria

12   based on her experience, and I understand counsel doesn't

13   intend to refer to her as a certified fraud examiner, I think

14   we're crossing over -- we haven't examined her, but crossing

15   over a line of at least potential expert testimony here and

16   that was never disclosed.

17             THE COURT:  Well, I take a very dim view of letting

18   this person who supposedly is only going to say, Yes, I drew

19   this exhibit, this timeline, by looking at the following 102

20   documents, period, end of story.

21             MR. KING:  And, Your Honor --

22             THE COURT:  Which is why I'm asking why not --

23             MR. KING:  Lastly -- and, lastly, and we've asked

24   and so far they've accommodated, since Ms. Flanagan was

25   disclosed on September 27th, just a few weeks ago, we asked

1    counsel to please provide us with any communications and

2    drafts of the summaries and communications with Ms. Flanagan

3    or her firm.  They've accommodated that in that they've given

4    us a lot of material through September 27th.  We've asked them

5    to supplement that because just a couple of days ago, we

6    received revised versions of these summaries and we asked for

7    any communications, draft of these summaries from

8    September 27th to the time when they served this latest set.

9          We have deep concerns that these summaries actually

10   were created by counsel, not by the witness, and so that we're

11   happy to brief that, as well as the other objections that we

12   have.

13         THE COURT:  What's the "that"?

14         MR. KING:  That issue after we get -- after we get

15   all the information we've requested.

16         We're also happy to brief our objections to the

17   summaries as not true summaries, but really as demonstratives.

18         THE COURT:  Okay.  And has there been any discussion

19   about deposing this person?

20         MR. KING:  There hasn't been.  We already have one

21   person we have to depose and that's the person who took the

22   photographs and videos.  We're really crunched and that's

23   why -- that's really one of the main -- we believe we are

24   prejudiced by virtue of the late disclosure of Ms. Flanagan

25   because it's just really not enough time for us to prepare for

1    trial and engage in --

2           THE COURT:  Well, except what you'd be asking her

3    is, you know, who are you and how did you make this and did

4    the lawyers -- I mean, presumably from what you're suggesting,

5    did you hire and pick and choose what exhibits, where's the

6    footnotes, is there a legend to these exhibits, where are the

7    documents you pulled from it, and then you can at least

8    prepare and say, well, she did or didn't use the correct

9    underlying documents or she's going to say, Yeah, you caught

10   me, the Plaintiffs' lawyers gave this to me and asked me to

11   color it.

12          MR. KING:  Your Honor, should the Court grant leave,

13   we'd be happy to depose her.  We'd like to depose her --

14          THE COURT:  My point is I don't think it should take

15   all that long.

16          MR. KING:  Right.  I also believe she's near the end

17   of their case presentation at least in terms of the order of

18   witnesses so -- and it could be after the flurry of activities

19   over the next ten days or so that we certainly would be able

20   to find time to depose her.

21          THE COURT:  My concern really here is, Mr. Blechman,

22   that it's so easy to kind of drift into the notion of some

23   more substantive testimony than simply saying these are the

24   documents I got this data from, and here it is, and I decided

25   that it was better to have a lateral exhibit than a horizontal

1    exhibit.  I just don't really don't want to see this person

2    become an undisclosed expert witness.

3              MR. BLECHMAN:  Your Honor, we understand the Court's

4    concern.  That has not been our intention from the start.

5              THE COURT:  No, I know, but you know what she is

6    going to say.

7              MR. BLECHMAN:  And I have some idea of what I think

8    she will say, Your Honor, and that has to do with simply the

9    creation of the documents and whatever other foundational-type

10   questions are necessary in connection with the creation of the

11   summary exhibits.  And, that is, Your Honor, as I believe it

12   to be, sum and substance of where this goes.  We don't intend

13   to ask her questions about whether she's looked at Rose

14   Acre's financial statements or whether she's done -- applied

15   her experience as a certified fraud examiner to look at any --

16             THE COURT:  By the way, who certified her?

17             MR. BLECHMAN:  I don't know the answer to that

18   question, Your Honor.

19             THE COURT:  Okay.

20             MR. BLECHMAN:  But I've answered the Court's

21   question directly about that, and if I might, so the starting

22   point for this is our effort to try to find ways to

23   streamline, to make the presentation more efficient for the

24   jury for the trial of the case, and so a summary witness using

25   summary exhibits becomes a very helpful mechanism by which to

 1   do that.

 2              I take issue with what Defense Counsel said in terms

 3   of the description.  There are, in fact, several -- there's --

 4   I forget how many there are, Your Honor, there's several, but

 5   a number of them are --

 6              THE COURT:  Several of exhibits.

 7              MR. BLECHMAN:  Several summary exhibits, excuse me.

 8              One, for example, is, I think, a list of the members

 9   of the various committees and Board of Directors and, in fact,

10   the Defendants have submitted something that is similar to

11   that in their summary exhibits.

12              Another one or two literally take copies of motions

13   that have been passed in board meetings and committee meetings

14   and simply puts that into a document reprinted verbatim with

15   the date that it occurs and the document control number that

16   you'll find in it.

17              Mechanisms to find ways to introduce into the record

18   information that we would otherwise have to introduce through

19   playing a number of depositions to establish the foundation

20   for getting documents into evidence.  These are documents that

21   are admissible.

22              We understand the rules of the road on that, Your

23   Honor, but we've endeavored to think in terms of how we can

24   make this trial more efficient.

25              THE COURT:  Do each of these summary exhibits have a

1    legend attached to them to say what the source of the

2    information portrayed on the summary exhibit --

3              MR. BLECHMAN:  Yes, Your Honor.

4              THE COURT:  Have the copies been shared of the

5    exhibits?

6              MR. BLECHMAN:  I believe the answer's yes.  The

7    answer's yes, Your Honor.

8              MR. PONZOLI:  Yes, Your Honor.

9              MR. KING:  Yes, Your Honor.  Just briefly, I don't

10   want to belabor the point.

11             Mr. Blechman's correct, there are some documents,

12   some summaries that may -- that come closer to 1006, but those

13   are few.

14             The bulk of the summaries and the vast majority -- I

15   don't have the precise count, but it's around 20, maybe a

16   little bit more than that, are these chronologies.

17             THE COURT:  20 out of some other number or what?

18             MR. KING:  There's 15 to 20 out of 23 or 4,

19   something like that.  I don't know the precise number.  But

20   80 percent of the summaries are these chronologies that focus

21   on various egg producers like Cal-Maine or Ohio Fresh,

22   Sparboe, Sauder.  The source -- they do list the sources in

23   the chronology, but for the life of me, I don't know how they

24   can put on Ms. Flanagan to testify about these because she

25   isn't just simply --

1          THE COURT:  It's not about them.  All she can

2    testify is how she put them on a piece of paper.

3          MR. BLECHMAN:  Right.

4          MR. KING:  She put them on a piece of paper but

5    somebody had to select these things.

6          THE COURT:  All right.

7          MR. KING:  That required judgment picking and

8    choosing among disparate pieces of evidence.  Again, this

9    isn't like assembling cancelled checks for --

10         THE COURT:  Okay, let me ask a couple of questions.

11         First of all, is Mr. King correct that you

12   anticipate having Ms. Flanagan or whoever or however towards

13   the end of your case in chief?

14         MR. BLECHMAN:  I don't know the answer to that

15   question, Your Honor, because depending upon sort of the pace,

16   I know the Court gets this better than all of us, depending on

17   the pace at which this goes, we may need to make some

18   decisions about putting Ms. Flanagan on earlier because the

19   witness isn't going to be available until next week, things of

20   that --

21         THE COURT:  Ah, there's a little bit of a rub,

22   because where I am inclined to go on this --

23         MR. BLECHMAN:  Well, if I can --

24         THE COURT:  Yes.

25         MR. BLECHMAN:  Oh --

1          THE COURT:  You're actually making me more nervous

2     about things.

3          MR. BLECHMAN:  No, I was going to make you feel -- I

4     was going to give the Court comfort.  I just wanted to finish

5     the sentence -- is that we understand that we're disclosing

6     witnesses a good number of days in advance, and so our belief

7     is, my belief is, that she's testifying towards the end of our

8     case in chief.  She will -- I expect that it would be before

9     the experts, before Dr. Baye who's the economist --

10          THE COURT:  Well, presumably --

11          MR. BLECHMAN:  -- before he testifies at the end.

12          THE COURT:  Well, presumably, this is something --

13     well, I'm not going to imagine what you all are thinking, but

14     let me pose another question.

15          How is this different?  How are these summaries

16     different than if, in the good old days, which I presume there

17     were, lawyers would create charts on thin butcher paper and

18     the easel and start saying, you know, they take a certain

19     piece of evidence that some witness said and they put it on

20     the easel and then we have all the great fun of people turning

21     the page of the easel.  Why are these different from that

22     process?  Because that process is permitted.

23          MR. KING:  Right.  Those are demonstratives.  The

24     underlying evidence is being admitted.  The issue here --

25          THE COURT:  Okay.

```
 1           MR. KING:  -- under 1006 --

 2           THE COURT:  This is more the kind of an expert on

 3      the weight of experts.  I understand that.

 4           MR. KING:  Under 1006, these are the substitute for

 5      the underlying material.

 6           THE COURT:  All right, I'll tell you what.  I'd like

 7      to see this collection of exhibits, the summaries that are

 8      being proposed.  I would like to see this person's CV.  I want

 9      you to recognize that if it's going to happen, it's going to

10      happen with a number of prefaces.

11           Number one, you'd better plan on the testimony being

12      a limitation of, This is how I color within the lines.  This

13      is how I did it.  I picked the crayons or the crayons were

14      given to me and I created this picture.  And then it can only

15      happen if the Defense has at least five business days before

16      you plan on calling her to depose her -- plan on deposing her,

17      okay?  That's what I'm thinking.  I'm not going to rule yet

18      because I want to see these things before.  Yes?

19           MS. SUMNER:  Your Honor, if I can just ask a

20      clarifying question.

21           We agree with everything that Mr. King has said, but

22      want to emphasize our objection to these exhibits coming in

23      regardless of Ms. Flanagan and her ability to testify and

24      whether she stays within the narrow confines.  We feel very

25      strongly that these are absolutely improper and will object to
```

1   them being admitted into evidence and would like the

2   opportunity to present that argument to the Court and I'm just

3   wondering when you would like us to do that.

4           THE COURT:  Well, when am I going to get a copy of

5   the exhibits to look at?

6           MR. PONZOLI:  We can provide a copy now, Your Honor,

7   and her CV.

8           THE COURT:  Well, since I have the representation

9   that we're not going to use these in openings, for example.

10          MR. BLECHMAN:  Correct, Your Honor.

11          THE COURT:  We've got a little bit of time.  So if

12  you can brief -- I'm going to get them now.  I'm going to be

13  able to look at them whenever.  Anybody who wants to submit

14  any kind of a short -- you don't have to give me the whole

15  lineup on this.  By a week from tomorrow, would that work?  So

16  this is, what, the first --

17          MS. SUMNER:  That's fine, Your Honor.

18          THE COURT:  So don't think you have to make the most

19  beautiful briefing on this.  I want to know what's the basis

20  for that.  I understand the prejudice.  Sadly, there are ways

21  to handle the prejudice in terms of the deposition, in terms

22  of the very, very strict confines of what this person can talk

23  about, but I do want to see what the exhibits look like.

24          MR. BLECHMAN:  Sure.  Sure.

25          MS. SUMNER:  Thank you.

```
 1            MR. BLECHMAN:  I had a question or two if I might?

 2            THE COURT:  Yes.

 3            MR. BLECHMAN:  But first of all, the Defendants, the

 4   Court alluded to earlier, have proposed some summary exhibits

 5   of their own.  I'm not aware -- I could be mistaken, but I'm

 6   not aware of their having identified a witness, a summary

 7   witness through whom those exhibits are being introduced.

 8   Perhaps they're planning to use somebody who has testified,

 9   but if it's going to be someone that we don't know about yet,

10   we would like to know.

11            MR. KING:  Your Honor, it won't be anyone.

12            THE COURT:  Pardon me?

13            MR. KING:  It won't be anyone who hasn't been

14   disclosed or identified.

15            MR. BLECHMAN:  Then we'll play battleship and we'll

16   just wait and see.

17            MR. KING:  I just would make a request.  I did

18   ask -- I did mention that I asked for the additional materials

19   related to Ms. Flanagan's work since September 27th until when

20   she -- or when they served the latest set of summaries.  We

21   will need those, obviously, in advance of any deposition and

22   Mr. Ponzoli has already indicated he would provide the

23   request.

24            MR. PONZOLI:  Absolutely right.

25            THE COURT:  Okay.
```

1        MR. BLECHMAN:  And given our stated intention, Your

2    Honor, in terms of the limit and limitations with which we are

3    having this witness testify, I assume we should not and she

4    should not need to expect to have to be sitting for some very

5    lengthy depo going into all sorts of other things.

6        THE COURT:  No, my expectation is it should be

7    pretty pointed.

8        MR. BLECHMAN:  Thank you, Your Honor.

9        MR. KING:  I'm likely to take the deposition and I'm

10   going to be very busy with trial.  I don't anticipate wasting

11   anyone's time.

12       THE COURT:  Okay, we've agreed.  Nobody's going to

13   waste anybody's time.

14       MR. BLECHMAN:  I'm sorry.  With regard to the

15   Defendants' exhibits, I have two questions.  One was who was

16   sponsoring them.  The second was, as the Court alluded to

17   earlier, we have some issues with a number of their exhibits

18   and I'm wondering whether -- we'll file something with Your

19   Honor.  You asked for objections.  We'll file written

20   objections and we can hand in documents as need be and so

21   forth.

22       THE COURT:  So I'll tell you what, folks.  I'm going

23   to get the whole collection, the bouquet of the Plaintiffs'

24   exhibits, but if you've got objections to certain Defense

25   summaries that you already know, staple them to what your

1    objections are, okay?

2              MR. BLECHMAN:  Thank you, Your Honor.  That was my

3    question.

4              THE COURT:  Because that's just easier for us to

5    manage it this way.

6              MR. BLECHMAN:  Sure.

7              THE COURT:  Okay.  Stipulations.  There's some

8    issues about stipulations now.  Somebody is asking the Court

9    to take judicial notice of something, of some of the statutes,

10   I guess, right?

11             MS. LEVINE:  Yes.  Your Honor, we actually think

12   it's a little silly that we have to ask the Court for that

13   because we would have assumed that Plaintiff would have

14   stipulated as uncontested facts an enacted statute that the

15   Court has already ruled on a motion in limine and allowed in

16   the DPP trial, but, for some reason, we have a hard time

17   getting agreement on that.  So we would like it just to be as

18   an uncontested fact.  I myself sent these over to Plaintiffs,

19   the whole statute underlined, what we'd like to use on a

20   billboard or in our case, and we're sorry that we have to

21   bring this --

22             THE COURT:  I don't even know that you really have a

23   matter in dispute on this.  I mean, judicial notice is such an

24   unattractive avenue to follow.  But, sure, I'll take judicial

25   notice of the date of passage, effective date of a statute,

```
 1                    C E R T I F I C A T E

 2

 3          I certify that the foregoing is a correct transcript

 4    from the record of the proceedings in the above-entitled matter.

 5

 6                              _____

 7                              Kathleen Feldman, CSR, CRR, RPR, CM
      DATE:                     Official Court Reporter
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```