UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KRAFT FOODS GLOBAL, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 11-cv-8808 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| UNITED EGG PRODUCERS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER

Defendants' motion for leave to depose Gary Pickett, or alternatively to permit him to testify remotely during the trial (Dckt. No. 262), is hereby granted in part and denied in part. The Court will not permit a late-breaking deposition. But the Court will allow Pickett to testify by video if he is unwilling or unable to travel to Chicago for in-person testimony for medical reasons.

According to the motion, Pickett is a former Walmart employee, and a retiree. He recently reported that he is unwilling to travel to Chicago for trial. According to his declaration, Pickett and his family suffer from a number of health conditions that make traveling to Chicago problematic. *See* Pickett Decl. (Dckt. No. 263-2). Several of the health conditions make them vulnerable to COVID-19. *Id.* at ¶¶ 3–7. The pandemic isn't what it used to be – but COVID-19 hasn't gone away, either.

Pickett is willing to sit for deposition, and he is willing to testify remotely at trial, too. But he isn't willing to get on an airplane, and he isn't in a position to drive (due to a lingering injury from a car accident). *Id.* at ¶¶ 6–7. So, Defendants want to depose him now, or want to call him as a witness at trial by video.

Pickett was the buyer responsible for Walmart's shell eggs from 2003 until 2008, and he remained a buyer at Walmart until 2012. *Id.* at ¶ 1. Defendants want to elicit testimony from Pickett about Walmart's preferences and requirements for eggs. Specifically, they want to establish that "Walmart and other important customers of Cal-Maine and Rose Acre and other UEP members were concerned about pressure from animal rights groups, and this concern, among other business concerns, led to Walmart's demand for eggs laid by hens housed under more humane conditions and egg producers' adoption and implementation of the Program." *See* Mem. in Supp. of Mtn. to Procure, at 2 (Dckt. No. 263).

Defendants believe that Pickett's testimony is necessary to rebut the testimony of Anthony Airoso, another former Walmart employee. *Id.* Airoso testified in one of the prior trials in the MDL court, and Plaintiffs intend to introduce his prior testimony from the 2018 trial in the upcoming trial (Airoso is not expected to testify live). *Id.*

In broad strokes, Airoso testified "about the pressure campaign that UEP and others waged so that Walmart would continue to purchase from egg producers in the UEP Certified Program and would not buy eggs from a competitor that had opted not to participate in that program." *See* Pls.' Resp., at 4–5 (Dckt. No. 265). Essentially, Airoso testified that Walmart purchased UEP-certified eggs not because Walmart preferred them, but because Defendants pressured it to buy these eggs.

The long and the short of it is that Defendants want to present Pickett's testimony at trial to rebut Airoso's testimony. But they can't present his deposition testimony, because there is none. And they can't force him here, because he is outside the reach of the Court's subpoena power.

As a general matter, preserving testimony from witnesses is one of the key purposes of fact discovery. Sometimes witnesses will not be available for trial. A witness might be sick, or deceased, or hard to find, or something along those lines.

One of the possible reasons for unavailability has to do with the court's subpoena power. Rule 45(c)(1)(A) of the Federal Rules of Civil Procedure provides that a subpoena can command an out-of-state non-party to attend trial only if the witness resides or works within 100 miles. (Some types of cases have national subpoena power, like SEC cases. But antitrust cases aren't one of them.) So going in, parties know that it is important to obtain the testimony of an out-of-state witness, because if they don't, there is a risk that the witness will not voluntarily attend trial.

That's what happened here. Pickett is not willing to attend trial in Chicago, so Defendants want to depose him.

Defendants have known for quite a while that Pickett was a potential fact witness. He came up during the trial in Philadelphia in 2018. But in the intervening years, Defendants have not asked to take his deposition until now. (As an aside, this Court does not know for certain when Defendants first learned that Pickett is a potential fact witness. But two dates are important. Fact discovery closed in 2014. And Defendants learned that he is a potential fact witness by 2018, though likely before. *See* Trial Tr., at 4 (Dckt. No. 265-7) (mentioning Gary Pickett as "the egg buyer for corporate Walmart" in the 2018 MDL trial); Pls.' Resp., at 4 (Dckt. No. 265) (noting that Pickett's name appears in several documents produced in the MDL court and that he was mentioned in a March 2014 deposition).

Defendants believe that they should be able to take Pickett's deposition (or have him testify remotely), in part, because of the circumstances of Airoso's trial testimony. Airoso was never deposed during the discovery period in the MDL court. *See* Mem. in Supp. of Mtn. to Procure, at 2 (Dckt. No. 263). Instead, he was first disclosed as a witness in the final pretrial order in that case, a few months before trial. *Id.* That relatively late disclosure was consistent with the MDL court's ruling that "the parties were not required to make initial disclosures" of witnesses before the final pretrial order and "there were no discovery requests asking for identification of trial witnesses." *Id.* So, the MDL court permitted Airoso to testify live during the 2018 trial.

In Defendants' view, their timing in disclosing Pickett's testimony mirrors the same schedule. "Like Airoso in the DPP trial, Mr. Pickett was first identified in witness disclosures after the close of discovery." *Id.* And like Airoso, Pickett "was not previously identified as a witness and has not been deposed." *Id.*

As they see it, "Defendants' disclosure of Mr. Pickett's testimony here is consistent with the class Plaintiffs' disclosure of Mr. Airoso in the MDL, where he was disclosed long after the discovery deadline and was nonetheless permitted to testify." *Id.* at 6. The difference between Airoso and Pickett, then, is that unlike Airoso, Pickett is "unavailable to testify live in-person." *Id.* at 3.

Defendants first learned that "Plaintiffs might attempt to use Mr. Airoso's prior trial testimony in July 2022," meaning more than one year ago. *See* Defs.' Reply, at 4 n.3 (Dckt. No. 270). But after that time, "the trial process . . . stalled," and both sides "made substantial revisions to their witness lists." *Id.* Plaintiffs formally identified their witnesses on June 9, 2023. *Id.*

On June 15, 2023, Defendants notified Plaintiffs of their intention to depose Pickett for the first time. *See* Memo on Depositions of Potential Trial Witnesses, at 1 (Dckt. No. 270-1). Defendants filed their motion to depose Pickett, or permit him to testify remotely during trial, on July 21, 2023. *See* Mtn. to Procure Deposition (Dckt. No. 262).

The Court begins with Defendants' request to take Pickett's deposition under Rule 32 of the Federal Rules of Civil Procedure. Rule 32(a)(4) permits a party to "use for any purpose the deposition of a witness, whether or not a party, if the court finds . . . that the witness is more than 100 miles from the place of hearing or trial" or "that the witness cannot attend or testify because of age, illness, infirmity, or imprisonment." *See* Fed. R. Civ. P. 32(a)(4)(B)–(C).

Defendants contend that Pickett satisfies both of these requirements. He lives in Arkansas, so he is more than 100 miles from the Dirksen Federal Building. *See* Mem. in Supp. of Mtn. to Procure, at 8 (Dckt. No. 263). And Defendants contend that Pickett "has myriad family health issues" including related to his wife and daughter who are susceptible to a COVID-19 infection. *Id.* at 8, 11.

3

Rule 32 does not seem to fit with the situation at hand. At least not exactly. The question is not whether Defendants can *use* Pickett's deposition. The question is whether Defendants can *take* Pickett's deposition.

The Court agrees that if Pickett had been deposed, then Defendants could have used his deposition testimony under these circumstances. But here, Defendants seek to depose Pickett for the first time to present his deposition testimony at trial. As things stand, there is no deposition to use.

"Trial depositions are not explicitly contemplated by the Federal Rules of Civil Procedure, as the Rules do not distinguish between discovery and trial depositions." *Maui Jim, Inc. v. SmartBuy Guru Enters.*, 2019 WL 4140782, at *3 (N.D. Ill. 2019). Some courts distinguish between "trial depositions" which are "intended solely to preserve evidence for trial" and "generic discovery depositions" intended to discover the facts of the case. *Id.* at *2. "Other courts, however, have outright rejected this distinction, emphasizing that Rule 16 of the Federal Rules of Civil Procedure was amended specifically to authorize and empower courts to establish discovery deadlines, enforce compliance with those deadlines, and avoid precisely the type of last-minute 'trial depositions' Defendants seek in this case." *Id.* (collecting cases).

A deposition is a deposition. There is no special dispensation for "trial depositions." And the time to take depositions has come and gone. In fact, the time to take depositions came and went nine years ago. Discovery closed in 2014.

Here, the Court declines to exercise its discretion to permit Pickett's deposition testimony. Defendants seek to depose Pickett long after discovery closed in 2014, and long after Defendants became aware of Pickett's identity in 2018 (if not before). Instead, Defendants moved to depose Pickett on July 21, 2023, less than three months before trial.

Defendants offer no reason for this delay. If Pickett's testimony were so crucial to Defendants' case, one wonders why Defendants waited until now to secure his testimony. "[I]f the witness were truly that important, the prudent course would be to secure his testimony earlier and within the confines of appropriate discovery," or to have filed a more timely motion to obtain Pickett's deposition. *Anderson v. Proctor & Gamble Paper Prods. Co.*, 2013 WL 5651802, at *3 (E.D. Wis. 2013). After all, Defendants have known about Airoso's testimony since 2018, when he testified in the MDL court.

Maybe Defendants did not act with more urgency in securing Pickett's deposition because other evidence exists to show Walmart's position on UEP-certified eggs. During the 2018 trial before Judge Pratter, the defendants introduced evidence of Walmart's view. *See* Trial Tr., at 3–11 (Dckt. No. 265-7). Judge Pratter commented that the defendants introduced so much evidence of Walmart's view that it was "redundant" and "cumulative." *Id.* at 14. Defendants in that case went "over the Walmart view" to the point of being "just cumulative." *Id.* Judge

4

Pratter noted that the defendants "talked a lot about Walmart and Walmart's views," yet Pickett never testified. *Id.* at 16.

So, Pickett's testimony does not appear essential to Defendants' case. Maybe Pickett's testimony is the best evidence to rebut Airoso's testimony. But it does not appear to be the only evidence that could rebut Airoso. Maybe that reality explains why Defendants did not jump at the chance to depose him.

Putting the reason aside, the disruption caused by a late-breaking deposition on the doorstep of trial is undeniable. A deposition may not seem like a big deal, in the grand scheme of things. And in the vast expanse of a fact discovery period in an antitrust case, it isn't. But the closer you get to trial, the heavier things seem. Small things feel like big things.

The closer you get to trial, the greater the burden of every new task, and every new request. Even a relatively small change near trial – like a new exhibit, or a new deposition designation, or a new witness – can create big problems and new headaches. It creates significant work and distracts lawyers from other trial preparations. It consumes precious time at a point when the parties don't have much time. The pressures become hydraulic. It functions like leverage – the less time there is before trial, the more problems created by unveiling anything new.

A deposition at this late stage would disrupt trial preparations in this complex and long-running case. The parties are only a few short months before trial. They don't need to be thinking about a deposition unless there is a truly compelling reason. And here, there isn't.

A deposition is one thing. Remote testimony is another.

As an alternative, Defendants ask for leave to call Pickett remotely during trial. Under Rule 43(a) of the Federal Rules of Civil Procedure, "[a]t trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise." *See* Fed. R. Civ. P. 43(a).

The Rule creates a narrow exception. "For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." *Id.*

Defendants contend that good cause exists and that the situation at hand is a compelling circumstance. Pickett's wife "is severely asthmatic," and his daughter "suffers from COPD." *See* Mem. in Supp. of Mtn. to Procure, at 11 (Dckt. No. 263). Pickett is concerned about the "potentially devasting impact of an illness, and particularly a COVID infection" if Pickett contracted COVID-19 during his travels to Chicago. *Id.* Pickett is also facing "his own ongoing recovery for issues related to his 2022 car accident." *Id.*

5

The legal system has a strong presumption in favor of in-person testimony, and rightly so. There is no way to replicate the feel of a witness walking into a courtroom, climbing the witness stand, facing the jury, and answering questions. People behave differently, and react differently, to people in the same room than to people on a video screen. In-person testimony feels personal, but remote testimony has an inescapable feel of artificiality. Technology removes some of the humanity.

That said, the Federal Rules do allow remote testimony in narrow circumstances. And on this record, the Court concludes that Defendants have demonstrated good cause, and that compelling circumstances weigh in favor of allowing Pickett to testify by video. Pickett is a retiree. He is potentially vulnerable to COVID-19. And so are members of his immediate family. It is hard to fault someone who wants to protect his family's health.

The Court has no reason to think that Pickett is trying to avoid in-person testimony for any improper purpose. And, depending on how things go, the shoe might be on the other foot. Maybe one of Plaintiffs' witnesses will become unavailable, and need some special latitude for medical reasons. If so, the Court will apply an even-handed approach.

In sum, the motion is granted in part and denied in part. The Court denies the motion for leave to depose Pickett, but grants the motion for leave to present his testimony remotely. The Court will require defense counsel to work with the Court's staff to make all necessary arrangements from a technological perspective.

Date: August 11, 2023

Steven C. Seeger
United States District Judge

6