**APPENDIX 13-2**
**PLAINTIFFS' PROPOSED JURY INSTRUCTIONS**

Note:

Plaintiffs propose and Defendants dispute the following instructions. Plaintiffs' Proposed Instructions fall into the following categories:

- Instructions 1 and 2 are instructions to be used prior to the submission of evidence.

- Instruction 3 is to be used during the trial.

- Instructions 4 through 45 are instructions to be used after the submission of evidence. Plaintiffs request that the case be tried on a per se theory of liability. Instructions 13 through 19 reflect Plaintiffs' liability theory. As alternatives to the per se theory, Plaintiffs present two alternatives. Plaintiffs' first alternative, Instructions 20 through 32, follows the directions of the Seventh Circuit in *Wilk v. American Medical Association*, 719 F.2d 207 (7th Cir. 1983). Plaintiffs' second alternative, Instructions 33 through 45, are to be used if this case is tried on a rule of reason.

- Plaintiffs' instructions 46 through 50 are for the damages phase of the trial.

# Table of Contents

Instructions Before Introduction of Evidence ....................................................... 1

    Plaintiffs' Proposed Instruction No. 1 Preliminary Statement of
the Case ................................................................................................................ 1

    Plaintiffs' Proposed Instruction No. 2 Jurors Questioning
Witnesses ............................................................................................................. 3

Instructions Upon the Admission of Certain Evidence .................................... 5

    Plaintiffs' Proposed Instruction No. 3 Instruction Before
Introduction of Prior Sworn Testimony ......................................................... 5

Instructions After Presentation Of The Evidence ............................................. 6

General Instructions ............................................................................................... 6

    Plaintiffs' Proposed Instruction No. 4 All Litigants Equal
Before the Law ..................................................................................................... 6

    Plaintiffs' Proposed Instruction No. 5 Business Organizations ........... 7

    Plaintiffs' Proposed Instruction No. 6 Prior Sworn Testimony ........... 8

    Plaintiffs' Proposed Instruction No. 7 Redacted Exhibits ..................... 9

    Plaintiffs' Proposed Instruction No. 8 No Inferences Regarding
Timing of Trial ................................................................................................... 10

    Plaintiffs' Proposed Instruction No. 9  Multiple Claims,
Plaintiffs, and Defendants ............................................................................... 11

    Plaintiffs' Proposed Instruction No. 10 Trade Associations ............... 12

    Plaintiffs' Proposed Instruction No. 11 Burden of Proof:
Preponderance of the Evidence ...................................................................... 13

Elements Instructions ........................................................................................... 14

    Plaintiffs' Proposed Instruction No. 12 Purpose of The
Antitrust Laws ................................................................................................... 14

Per Se Liability Instructions ............................................................................... 15

Plaintiffs' Proposed Instruction No. 13 Liability Element: Limiting Domestic Supply ........................................................................ 15

Plaintiffs' Proposed Instruction No. 14 Limiting Domestic Supply ....................................................................................................... 17

Plaintiffs' Proposed Instruction No. 15 Conspiracy Definition .......... 18

Plaintiffs' Proposed Instruction No. 16  Membership in Conspiracy ...................................................................................... 19

Plaintiffs' Proposed Instruction No. 17  Explanation of Conspiracy ...................................................................................... 21

Plaintiffs' Proposed Instruction No. 18 Evidence of Conspiracy ....... 23

Plaintiffs' Proposed Instruction No. 19 Cause of Injury/Pass Through Irrelevant ............................................................................ 24

First Alternative to Per Se Instructions: *Wilk* .................................... 26

Plaintiffs' Proposed Instruction No. 20 Wilk Alternative: Jury Decides If Per Se Case is Proven Intro ........................................... 26

Plaintiffs' Proposed Instruction No. 21 Wilk Alternative: Limiting Domestic Supply ............................................................. 28

Plaintiffs' Proposed Instruction No. 22  Wilk Alternative: Jury Decides If Per Se Case is Proven ................................................... 30

Plaintiffs' Proposed Instruction No. 23 Wilk Alternative: Conspiracy Definition ................................................................... 32

Plaintiffs' Proposed Instruction No. 24 Wilk Alternative: Membership In Conspiracy ........................................................... 33

Plaintiffs' Proposed Instruction No. 25 Wilk Alternative: Explanation of Conspiracy ........................................................... 35

Plaintiffs' Proposed Instruction No. 26 Wilk Alternative: Evidence of Conspiracy ................................................................ 37

Plaintiffs' Proposed Instruction No. 27 Wilk Alternative: Cause of Injury; Pass-Through Irrelevant .............................................. 38

Plaintiffs' Proposed Instruction No. 28 Wilk Alternative: Rule of Reason ...................................................................................... 39

**Plaintiffs' Proposed Instruction No. 29 Wilk Alternative: Rule of Reason – Proof Of Competitive Harm/Relevant Market** ................ **40**

**Plaintiffs' Proposed Instruction No. 30 Wilk Alternative: Evidence Of Competitive Benefits** ..................................................... **42**

**Plaintiffs' Proposed Instruction No. 31 Wilk Alternative: Balancing The Competitive Effects** ............................................... **43**

**Plaintiffs' Proposed Instruction No. 32 Wilk Alternative: Motive Not A Defense** ...................................................................... **44**

**Second Alternative to Per Se Instructions: Rule of Reason** .......................... **45**

**Plaintiffs' Proposed Instruction No. 33 Rule of Reason Alternative: Sherman Act Section 1** ..................................... **45**

**Plaintiffs' Proposed Instruction No. 34 Rule of Reason Alternative: Rule of Reason Overview** ................................... **46**

**Plaintiffs' Proposed Instruction No. 35 Rule of Reason Alternative: Limiting Domestic Supply** ................................. **47**

**Plaintiffs' Proposed Instruction No. 36 Rule of Reason Alternative: Conspiracy Definition** ............................................ **48**

**Plaintiffs' Proposed Instruction No. 37 Rule of Reason Alternative: Membership In Conspiracy** .................................... **49**

**Plaintiffs' Proposed Instruction No. 38 Rule of Reason Alternative: Explanation of Conspiracy** ................................. **51**

**Plaintiffs' Proposed Instruction No. 39 Rule of Reason Alternative: Evidence of Conspiracy** ........................................ **53**

**Plaintiffs' Proposed Instruction No. 40 Rule of Reason Alternative: Proof Of Competitive Harm/Relevant Market** ............... **54**

**Plaintiffs' Proposed Instruction No. 41 Rule of Reason Alternative: Evidence Of Competitive Benefits** ....................................... **56**

**Plaintiffs' Proposed Instruction No. 42 Rule of Reason Alternative: Balancing The Competitive Effects** ................................... **57**

**Plaintiffs' Proposed Instruction No. 43 Rule of Reason Alternative: Motive Not A Defense** ........................................... **58**

**Plaintiffs' Proposed Instruction No. 44 Rule of Reason Alternative: Cause of Injury/Pass Through Irrelevant** ........................ **59**

**Plaintiffs' Proposed Instruction No. 45 No Defense of In Pari Delicto** ........................................................................... **60**

**Damage Instructions** ..................................................... **61**

**Plaintiffs' Proposed Instruction No. 46 Antitrust Damages** ................ **61**

**Plaintiffs' Proposed Instruction No. 47 Pass Through Of No Concern** ............................................................................... **62**

**Plaintiffs' Proposed Instruction No. 48 Basis for Calculating Damages** ............................................................................. **63**

**Plaintiffs' Proposed Instruction No. 49 Joint and Several Liability** ............................................................................... **64**

**Plaintiffs' Proposed Instruction No. 50 Multiple Plaintiffs** ................ **65**

**Instructions Before Introduction of Evidence**

**Plaintiffs' Proposed Instruction No. 1**

**Preliminary Statement of the Case**

Although you may have learned some of what I am about to tell you during jury selection, I am now going to give some background about this case.

This is a civil case. It is not a criminal case. You will not be deciding if anyone has committed a crime or may be sentenced to prison. The government is not a party to this case.

In this civil case, the parties are private entities. The party that brings a lawsuit is known as the Plaintiff. There are four Plaintiffs in this case. They are large food manufacturers that are probably familiar to you: General Mills, Kellogg, Kraft, and Nestlé. These four businesses are suing the Defendants.

The Defendants consists of two large egg-producing companies and two trade associations for egg producers. The companies are Cal-Maine and Rose Acre Farms. The trade associations are called the United Egg Producers and the United States Egg Marketers. Plaintiffs allege that the Defendants and others were members of a conspiracy, a term I will explain shortly.

Plaintiffs allege that Moark, Michael Foods, and Wabash Valley—other egg producers—joined the conspiracy. These alleged co-conspirators are not defendants in this trial. You should not concern yourself with why they, or anyone else you will hear about, are not defendants.

This is an "antitrust" case. In our country, laws exist to protect free and open competition among businesses. One of those laws is the Sherman Antitrust Act, which, among other things, prohibits businesses from entering into an agreement, known as a "conspiracy," to restrain trade.

This case is about eggs. Plaintiffs buy eggs – in the form of processed egg products that they use in manufacturing the foods that they sell. Egg products are eggs that have been cracked, the egg whites and yolks are then processed in various ways, and the product can then be used in large quantities in making food that are sold in grocery stores.

Plaintiffs claim that the Defendant and their co-conspirators violated the Sherman Act by agreeing to actions that would limit the supply of eggs available to be sold in the United States. They claim the Defendants and their co-conspirators agreed to engage in anti-competitive activity to restrict the supply of eggs to raise prices from what they would have been in a free and open market. The Plaintiffs

1

allege that they paid higher prices for egg products that they purchased from Defendants and their co-conspirators as a result of their alleged conduct.

The Plaintiffs allege that this conspiracy violated the antitrust laws. The Defendants deny Plaintiffs' allegations. They claim that there was no conspiracy and that their conduct did not violate the antitrust laws.

To succeed on their claim, the Plaintiffs must prove each of the following propositions by a preponderance of the evidence:

(1) defendants and their alleged co-conspirators were at relevant times competitors or potential competitors;

(2) defendants knowingly entered into an agreement to limit or restrict the production of eggs. To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason; and

(3) plaintiffs were injured in their business or property because of the agreement.

The relevant time period is 1999 to [2008] and, therefore, much of the evidence in this case concerns facts that occurred many years ago. The Plaintiffs filed their civil lawsuit in a timely fashion several years ago. It is through no fault of the parties that this case was brought to trial no earlier than now.

When I say a particular party must prove something by "a preponderance of the evidence," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

This instruction is intended to give you a brief overbview of what you will need to decide. I will provide further instructions on these requirements and others at the conclusion of this trial.

**Source(s):** Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.), Sample Preliminary Instruction at 412 (for form and structure). *See* Plaintiffs' Proposed Per Se Liability Instructions.

## Plaintiffs' Proposed Instruction No. 2

### Jurors Questioning Witnesses

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

First, you must submit all questions in writing. Please don't ask any questions aloud.

Second, the court can't re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an opinion about the case or a witness. You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.

**Source:** Eleventh Circuit Pattern Jury Instructions, Civil Cases (2022 rev.), Instruction No. 1.4.

**Alternate:**

You may submit questions to witnesses to clarify their testimony during trial under certain conditions.

If you feel the answer to your question would be helpful in understanding this case, you should raise your hand after the lawyers have completed their examinations but before the witness is excused. I will have you write your question and hand it to the clerk. I will then privately confer with the lawyers about the question and make a ruling on whether the law allows the question to be asked of that witness. If the question is of the type that is allowed, I will address the question to the witness. Please do not directly speak to me, the lawyers, or the witnesses, but carefully follow this procedure if you wish to have a specific question addressed to a witness.]

**Source:** Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.), Sample Preliminary Instruction at 417 (alternate).

## Instructions Upon the Admission of Certain Evidence

## Plaintiffs' Proposed Instruction No. 3

## Instruction Before Introduction of Prior Sworn Testimony

You are about to receive evidence in the form of prior sworn testimony of a witness. ~~A deposition is the sworn testimony of a witness taken before trial.~~ The witness <u>was</u> ~~is~~ placed under oath to tell the truth and lawyers for each party [against whom the testimony is now being offered] <u>were able to</u> ~~may~~ ask questions. The questions and answers <u>were</u> ~~are~~ recorded.

The <u>testimony</u> ~~deposition~~ of [Witness] <u>occured</u>~~, which was taken~~ on [Date]<u>.</u> ~~, is about to be presented to you.~~ <u>This</u> ~~Deposition~~ testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify <u>in this courtroom</u>.

[Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]

<u>Only certain portions of the testimony are being played back for you. As a result, you may notice some edits throughout the recording. Please ignore these edits, and do not speculate about testimony that is not being presented to you. [In addition, I have instructed the parties to play both the portions the plaintiffs and defendants want to show you at the same time.]</u>

**Source(s):** Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.), Instruction No. 2.08 (modified); *cf. United States v. Jordan*, 223 F.3d 676, 690 (7th Cir. 2000) ("Effectively combining multiple instructions into one instruction is an accepted practice.").

## Instructions After Presentation Of The Evidence

### General Instructions

### Plaintiffs' Proposed Instruction No. 4 All Litigants Equal Before the Law

All parties are equal before the law. In this case <u>all</u> [one/some] of the [defendants/plaintiffs/parties] [is a/are] <u>business organizations</u> corporations. <u>The parties in this case are</u> A corporation is entitled to the same fair consideration that you would give any individual person.

**Source(s):** Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.), Instruction No. 1.03.

## Plaintiffs' Proposed Instruction No. 5

## Business Organizations

~~Under the law, a corporation is a person, but it~~ A business organization acts ~~only~~ through its agents. A business organization's ~~corporation's~~ agents include its directors, officers, employees, or others acting on its behalf. ~~A corporation is not capable under the law of conspiring with its own agents, unincorporated divisions, or wholly owned subsidiaries.~~ Through its agents, ~~however, a~~ business organization ~~corporation~~ is capable of conspiring with other outside persons or ~~independent corporations~~organizations.

A business organization ~~corporation~~ is legally bound by acts and statements of its agents or employees done or made within the scope of their duties ~~or apparent authority~~. [¶] An ~~acts done~~ or statement is within the scope of the agent's duties ~~are acts~~ if it is performed or made on behalf of a business organization ~~corporation~~ and directly related to the performance of the duties the agent has general authority to perform. ~~Apparent authority is the authority that persons outside the corporation could reasonably believe the agent would have, judging from his or her position with the company, the responsibilities previously entrusted to the person or the office, and the circumstances surrounding his or her past conduct. An agent can have apparent authority even when, despite these appearances, the agent is actually acting in a dishonest, fraudulent, or anticompetitive manner.~~

~~To summarize, for a corporation to be legally responsible for the acts or statements of its agents, you must find that the agent was acting within the scope of his or her employment with apparent authority.~~

~~The fact that a corporation has instructed its agents not to violate the antitrust laws does not excuse the corporation from responsibility for the unlawful acts of its agents done within the scope of their employment or apparent authority.~~

A business organization ~~corporation~~ is entitled to the same fair trial ~~as a private individual. The acts of a corporation~~ and its acts are to be judged by the same standard as ~~the acts of~~ a private individual~~, and you~~. You may hold a business organization ~~corporation~~ liable only if such liability is established by the preponderance of the evidence. ~~All~~That is because all persons, including business organizations ~~corporations~~, are equal before the law.

**Source(s):** *In re Egg Prods. Antitrust Litig.*, No. 2:12-cv-08808-MDL-2002 (E.D. Pa. Dec. 10, 2019), Instruction No. 5; ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-3 (modified); *see also In re Korean Ramen Antitrust Litig.*, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 14, 2018), Instruction No. 20; *Animal Sci. Prods., Inc. v. Chinook Grp., Ltd.*, No. 99-197 (TFH) (D.D.C. June 11, 2003), Instruction No. 26.

APPENDIX 13-2 - PLAINTIFFS' PROPOSED JURY INSTRUCTIONS: AUGUST 22, 2023

**Plaintiffs' Proposed Instruction No. 6 Prior Sworn Testimony**

During the trial, certain <u>prior</u> testimony <u>that was given under oath</u> was presented to you<u>, such as</u> by ~~[the~~ <u>showing or</u> reading of ~~a deposition/depositions]~~ ~~[and video]~~ <u>prior sworn testimony</u>. You should give this testimony the same consideration you would give it had the witness~~[es]~~ appeared and testified here in court.

**Source(s):** Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.), Instruction No. 1.05 (paragraph 1) (modified to include reference to prior trial testimony); *cf. United States v. Jordan*, 223 F.3d 676, 690 (7th Cir. 2000) ("Effectively combining multiple instructions into one instruction is an accepted practice.").

## Plaintiffs' Proposed Instruction No. 7

### Redacted Exhibits

Portions of certain exhibits have been "redacted," meaning that certain portions of those exhibits have been omitted or obscured so that those portions may not be read. The portions that have been shown are the relevant and admissible portions of the documents. You must only consider the visible portions of the exhibits and draw no inferences from the existence of redacted portions.

**Source(s):** *See Gonzalez v. Olson*, No. 11 C 8356, 2015 WL 3671641, at *20 (N.D. Ill. June 12, 2015) (explaining jury speculation regarding redacted information may be cured by an instruction that "the redacted information is not relevant to any issue in the case").

### Plaintiffs' Proposed Instruction No. 8

### No Inferences Regarding Timing of Trial

Much of the evidence in this case concern facts that occurred many years ago. The Plaintiffs filed their civil lawsuit in a timely fashion. It is through no fault of the parties that this case was brought to trial no earlier than now.

### Plaintiffs' Proposed Instruction No. 9

### Multiple Claims, Plaintiffs, and Defendants

You must give separate consideration to each claim and each party in this case. ~~[~~Although there are ~~[number]~~ four ~~d~~Defendants, it does not follow that if ~~you find~~ one ~~is~~to be liable, ~~any of~~ the others ~~is~~must necessarily also be liable.~~]~~ ~~[~~And although there are ~~[number]~~multiple ~~p~~Plaintiffs, it does not follow that if ~~you find that~~ one ~~is successful~~Plaintiff has proven its case, the others ~~are, too~~must necessarily have proven theirs as well.

*~~[If evidence was admitted only as to fewer than all defendants or all claims:]~~* ~~In considering a claim against a defendant, you must not consider evidence admitted only against other defendants [or only as to other claims.]~~

**Source(s):** Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.), Instruction No. 1.25 (modified).

## Plaintiffs' Proposed Instruction No. 10

## Trade Associations

Earlier I instructed you that UEP and USEM, like the other parties in the case, are business organizations. UEP and USEM are also trade associations.

Businesses that are actual or potential competitors may lawfully form into groups ~~associations~~ to advance common interests. For example, trade associations may keep members informed of new services or technology in the industry or perform other valuable services such as cooperative research, publication of trade journals, or joint representation before legislative or administrative bodies.

~~An association is~~These groups are capable of committing violations of the antitrust laws. The actions of a group of competitors taken through ~~an~~ association ~~to which they belong~~ present the same issues as the actions of a group of competitors ~~who have not created a formal organization such as a~~ taking actions independent of any trade association. A trade association or similar industry group cannot lawfully act to facilitate the raising, stabilizing, or maintaining of prices in the market in which its members compete with one another~~, to reduce members' collective output of products or services, or to allocate territories among members that are in horizontal competition with one another. A trade association or similar industry group cannot lawfully adopt rules that prohibit members from bidding competitively with one another because that severely affects price competition~~. These actions constitute an agreement with its members in violation of the Sherman Act even if the association has not conspired with a nonmember.

If a trade association exchanges with its members confidential, competitively sensitive information, such as current or future prices, or current or future output information, that is evidence which you may consider, along with all the other evidence, in deciding whether the association ~~is~~ and its members have acted in violation of the antitrust laws.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. C-10 (modified).

### Plaintiffs' Proposed Instruction No. 11

### Burden of Proof: Preponderance of the Evidence

Because this is a civil case, the Plaintiffs have the burden of proving their case against the Defendants by what is called the "preponderance of the evidence." When I say a particular party must prove something by "a preponderance of the evidence," or when I use the expression "if you find," or "if you decide," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this, so you should put that concept out of your mind.

[And because this is a private civil antitrust case, the presence or lack of a government investigation or prosecution is of no relevance, and you should not consider it as a factor in determining liability in this matter.]

**Source(s):** Paragraph 1 is taken in modified form from Instruction No. 1.27 of the Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.). Paragraphs 2 and 3 are taken from paragraphs 9 and 10 of Instruction No. 6 in the DAP trial. *In re Egg Prods. Antitrust Litig.*, No. 2:12-cv-08808-MDL-2002 (E.D. Pa. Dec. 10, 2019).

## Elements Instructions

## Plaintiffs' Proposed Instruction No. 12

## Purpose of The Antitrust Laws

I am now going to instruct you on the elements of the claims in this case.

The Plaintiffs allege that Defendants violated the antitrust laws, namely the Sherman Act. It is for you to decide whether the Plaintiffs have proven this violation.

The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace. The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.

A party may not justify an agreement to restrain competition based on the belief that it will improve a product's quality or be in the interests of consumers. Consumers are to decide through competition what is in their interests. Sellers may not agree to restrain the market because they think it is in the consumers' interests.

**Source:** Paragraph 3 is taken from ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 1, Instruction A-1 (modified); Paragraph 4 is taken in modified form from *The PLS.COM, LLC v. The National Association of Realtors, et al.*, 32 F.4th 824, 836 (9th Cir. 2022) (quoting *Nat'l Soc'y of Prof. Eng'rs v. United States*, 435 U.S. 679, 695 (1978).

## Per Se Liability Instructions

## Plaintiffs' Proposed Instruction No. 13

## Liability Element:   Limiting Domestic Supply

Plaintiffs claims that ~~each d~~Defendant ~~[and~~*~~/or other persons~~* its co-conspirators] ~~are competitors [~~*~~or potential competitors~~*~~] and have~~ violated the Sherman Act by agreeing to ~~limit the production of [~~*~~product X~~*~~].~~actions limit production or restrict the domestic supply of eggs and egg products in the United States. Plaintiffs claim the conspirators engaged in some or all of the following overt acts in furtherance of the conspiracy: (1) the early slaughter and early molting of hens to reduce the number of egg-laying hens; (2) the creation and enforcement of rules that restricted the number of egg-producing hens allowed in henhouses; (3)   the banning of backfilling of egg-producing hens; or (4) the export of eggs to reduce the number of eggs available in the domestic market and therefore increase prices.  The defendants have denied these allegations.

A business has the right to determine on its own how much of its product to produce, provided that the decision results from the exercise of an independent business judgment and not from any agreement with a competitor ~~[or a potential~~ ~~competitor]~~. The Sherman Act prohibits agreements between competitors ~~[or~~ *~~potential competitors~~*~~]~~ that ~~limit~~restrict how much of a product one or more of them will produce.

~~By way of example, this includes an agreement by two or more competitors~~ ~~that one of them will reduce the amount of a product it produces in competition with~~ ~~the other's products, to set a quota on the amount of product to be produced, or to~~ ~~require one of them to discontinue the development or production of a product which~~ ~~the other will continue to produce and sell.~~

To succeed on their claim, the Plaintiffs must prove each of the following propositions:

(1) defendants and their alleged co-conspirators ~~are [~~*~~or were at relevant~~* *~~times~~*~~]~~ competitors or potential competitors;

(2) defendants ~~[~~*~~or that defendant~~* *and one or more other persons who were* *its competitor(s)*] knowingly entered into an agreement to limit or restrict the production of eggs.  To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason;

~~(3) defendants agreed that production of [~~*~~product X~~*~~] would be limited by~~ ~~[~~*~~state the nature of the alleged limitation on production, e.g., that one of~~* *~~them would reduce the amount of the product X produced~~*~~];~~

15

APPENDIX 13-2 - PLAINTIFFS' PROPOSED JURY INSTRUCTIONS: AUGUST 22, 2023

(4) the agreement occurred in or affected interstate [*or foreign*] commerce; and

(3~~5~~) plaintiffs were~~as~~ injured in their ~~its~~ business or property because of the agreement.

If you find that the evidence is insufficient to prove any one or more of these elements as to a particular ~~d~~Defendant <u>or a particular Plaintiff</u>, then you must find for that Defendant and against <u>that</u> ~~p~~Plaintiff ~~on plaintiff's claim that defendant conspired to limit production. If you find that the evidence is sufficient to prove all five elements as to that defendant, then you must find for plaintiff and against that defendant on plaintiff's claim with respect to an agreement to limit production~~.

<u>To assist you in applying this instruction, I will now provide further instructions as to the meaning of these terms.</u>

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. C-4 (modified); *Federal Trade Comm'n v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411 (applied per se rule despite societal benefits to the action of the defendants) (1990); *National Collegiate Athletic Ass'n v. Board of Regents*, 468 U.S. 85, 100 (1984); *Hartford-Empire Co. v. United States*, 323 U.S. 386, 400-01, 406-07 (1945); *United States v. Andreas*, 216 F.3d 645, 667-68 (7th Cir. 2000); *General Leaseways, Inc. v. National Truck Leasing Ass'n*, 744 F.2d 588, 594 (7th Cir.1984).

16

## Plaintiffs' Proposed Instruction No. 14

### Limiting Domestic Supply

The Plaintiffs claim that Defendants agreed to "limit production" or "restrict the domestic supply" of eggs and egg products.

When I refer to limiting production or restricting output, I am not just asking you to decide whether the domestic supply of eggs went up or down. It is a violation of the antitrust laws for competitors to agree to limit production or restrict the domestic supply of eggs below what it would have been without their agreement.

I will give some examples.

If the level of supply went up during the relevant time period, but due to an agreement of competitors it went up less than it would have gone up without the agreement, that may be a violation of the antitrust laws. As an example, it is unlawful to agree to reduce supply from 10 to 5. It is also unlawful to agree to limit the increase in supply from 10 to 12 when without the agreement output naturally would have increased from 10 re 14. Both are examples of restricting output.

It is also true that not every decrease in supply is unlawful. if the level of supply went down but the decrease was not the result of an agreement of competitors, it is not a violation of the antitrust laws. It does not violate the antitrust law if supply declines from 10 to 5 where that decrease is not caused by an agreement among competitors. Likewise, it does not violate the antitrust laws where supply increases from 10 to 12 when it was expected to increase to 14, when the reason for the lower growth in production is something other than an agreement among competitors.

In deciding whether Defendants limited production or restricted domestic supply, it is for you to decide if Defendants caused the level of domestic supply to be less than it would have been without their agreement.

**Source:** *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 789-90 (6th Cir. 2002) (holding that evidence of injury to competition was sufficient where Plaintiff presented evidence that two of the three other manufacturers grew more slowly than they otherwise would have but for unlawful monopolization and " although [sales] in the . . . market grew, there was evidence showing that [the defendant's] actions caused higher prices and reduced consumer choice, both of which [were] harmful to competition"); *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637 (N.D. Ill. June 30, 2023) (Durkin, J.) (court approved admission of opinion "that a producer might restrict supply by slowing the rate of increase of production as opposed to an overall production cut. This may result in an increased production number, but one that would have been higher but for the conspiracy. To the extent the facts bear out this possibility, Williams's opinion on this issue is helpful and will not be excluded").

## Plaintiffs' Proposed Instruction No. 15

## Conspiracy Definition

Plaintiff~~s~~ allege~~s~~ that ~~d~~Defendant~~s~~ participated in a conspiracy to restrain trade by [*alleged conduct or restraint*] <u>limiting or restricting the the domestic egg supply. Defendants deny that they entered into an agreement to restrict the domestic supply of eggs.</u>

A "conspiracy" is an express or implied agreement between two or more persons <u>or entities</u> to do something the law prohibits. ~~commit a crime~~. The basis of a conspiracy is an agreement or understanding between two or more persons. A conspiracy may be proven even if its goal~~[s]~~ [was; ~~were~~] not accomplished.

In deciding whether the ~~charged~~ conspiracy existed, you may consider all of the circumstances, including the words and acts of each of the alleged participants.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-1 (modified) (paragraph 1); *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit* (2020 ed.), Instruction 5.09, at 107 (modified) (paragraphs 2 and 3).

**Plaintiffs' Proposed Instruction No. 16**

**Membership in Conspiracy**

[1]     To be a member of a conspiracy, ~~[the; a]~~ Defendant does not need to join it at the beginning, and he does not need to know all of the other members or all of the means by which the ~~illegal~~ <u>unlawful</u> goal~~[s]~~ of the conspiracy was~~; were~~ to be accomplished. <u>A defendant may join in the unlawful plan at some later time of the conspiracy. It is also not necessary that all of the means or methods claimed by the Plaintiffs were agreed upon by each individual Defendant to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members.</u> ~~The government must prove beyond a reasonable doubt that the defendant [you are considering] was aware of the illegal goal[s] of the conspiracy and knowingly joined the conspiracy.~~

~~[A defendant is not a member of a conspiracy just because he knew and/or associated with people who were involved in a conspiracy, knew there was a conspiracy, and/or was present during conspiratorial discussions.]~~

~~[The conspiracy must include at least one member other than the defendant who, at the time, was not [agovernment agent; a law enforcement officer; an informant].]~~

[2]     In deciding whether ~~[the; a]~~ Defendant joined the <u>alleged</u> ~~charged~~ conspiracy, you must base your decision only on what ~~[that; the]~~ Defendant did or said.  To determine what ~~[that; the]~~ Defendant did or said, you may consider ~~[that; the]~~ Defendant's own words or acts.  You may also use the words or acts of other persons to help you decide what the Defendant did or said.

[3]     If you find that the alleged conspiracy existed, then the acts and statements of the conspirators are binding on all of those whom you find were members of the conspiracy.

[4]     ~~Once you have found~~ <u>If you find</u> that a ~~d~~<u>D</u>efendant is a member of a conspiracy, ~~he, she, or~~ <u>that Defendant</u> is presumed to remain a member and is responsible for all actions taken by all coconspirators during and in furtherance of the conspiracy until it is shown that the conspiracy has been completed or abandoned ~~[or that the person has withdrawn from the conspiracy]~~.

**Source:** *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit* (2022 ed.), Instruction 5.10, at 109 (paragraphs 1 & 2, modified as shown);

ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.),Ch. 2, Instruction A-4 (paragraphs 3 and 4, modified as shown).

## Plaintiffs' Proposed Instruction No. 17

## Explanation of Conspiracy

An agreement or understanding between two or more persons exists when they share a commitment to a common scheme. To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement. The agreement itself may have been entirely unspoken. A person can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the charged conspiracy. The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose. To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish a common purpose.

A conspiracy may be formed without all parties coming to an agreement at the same time [*such as where competitors separately accept invitations to participate in a plan to restrain trade*]. Similarly, it is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement. It is also not necessary that all of the means or methods claimed by ~~p~~Plaintiffs were agreed upon to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members, nor that all of them employed all of the means or methods designed to achieve the goals of the agreement or conspiracy. It is the agreement or understanding to restrain trade [*in the way alleged by plaintiff*] by limiting or restricting the growth of the domestic egg supply that constitutes a conspiracy. Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed. It is enough that a participant knowingly agreed or conspired to use at least one of the means or methods designed to achieve the common objective.

A person who knowingly joins an existing conspiracy, or who participates only in part of a conspiracy with knowledge of the overall conspiracy, is just as responsible as if he or she had been one of those who formed or began the conspiracy and participated in every part of it.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-1 (modified) (other portions are included in other instructions) (paragraphs 1-2); ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-4; *Toys R Us, Inc. v. FTC*, 221 F.3d 928, 932, 935 (7th Cir. 2000) (finding horizontal conspiracy among toy manufacturers in response to a major retailer's demand that they not supply warehouse club stores particular toys sold to the major retailer where it was demonstrated that toy manufacturers agreed to the

demand only "on the condition that their competitors would do the same") (paragraph 3).

## Plaintiffs' Proposed Instruction No. 18

## Evidence of Conspiracy

[1]     Plaintiffs may prove the existence of the alleged [agreement] or conspiracy through direct evidence, circumstantial evidence, or both. Direct evidence is explicit and requires no inferences to establish the existence of the alleged conspiracy.

[2]     While conspiracies are often carried out in secret, secrecy is not an element of a conspiracy.  Conspirators may act openly or not, as best suits their purpose.

[3]     Direct proof of an agreement may not be available. A conspiracy may be proven by the circumstances or the acts of the members. Therefore, you may infer the existence of an agreement from what you find the alleged members actually did, as well as from the words they used. Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together, does not by itself establish the existence of a conspiracy unless the evidence tends to exclude the possibility that the persons or businesses were acting independently.

**Source(s):** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-1 (paragraph 1); *Federal Trade Comm'n v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411 (1990) (work stoppage conspiracy unlawful although it was publicly disclosed); *San Juan Racing Ass'n Inc. v. Asociacion de Jinetes de Puerto Rico, Inc., et al.,* 590 F.2d 31, 32 (1st Cir. 1979) (holding that jockeys had participated in conspiracy to illegally control prices in violation of antitrust laws finding that jockeys' "openness [did] not immunize agreement" where jockeys refused to race at night of scheduled race until their fees were increased); *United States v. Spock,* 416 F.2d 165, 170 (1st Cir. 1969) (paragraph 2); *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984) (paragraph 3).

### Plaintiffs' Proposed Instruction No. 19

### Cause of Injury/Pass Through Irrelevant

Plaintiffs must prove they were injured in their business or property.  Here, Plaintiffs complain that they were injured in their business or property by paying more for eggs [egg products] due to the conspiracy.   A Plaintiff has been injured in their business or property ~~if you find that~~ it  paid an inflated price for eggs [egg products] as a result of ~~d~~Defendant's alleged antitrust violation. Plaintiff must only prove that it has been injured in its business or property, and need not prove an amount of injury.

~~Plaintiff must also offer evidence that establishes by a preponderance of the evidence that defendant's alleged illegal conduct was a material cause of plaintiff's injury. This means that plaintiff must have proved that some damage occurred to it as a result of defendant's alleged antitrust violation, and not some other cause.~~ Plaintiffs must also establish that the injury was a result of a Defendant's violation of the antitrust laws. To do so, Plaintiffs must also establish that the alleged illegal conduct was a material or substantial cause of Plaintiffs' injuries. Plaintiffs ~~is~~are not required to prove that a ~~d~~Defendant's alleged antitrust violation was the sole cause of ~~its~~their injur~~y~~ies; nor need ~~p~~Plaintiffs eliminate all other possible causes of injury. It is enough if ~~p~~Plaintiffs ~~has~~have proved that the alleged antitrust violation was a material or substantial cause of ~~its~~their injury.

In evaluating whether a Plaintiff was injured, I instruct you that under antitrust law, only the entity that purchased products directly from a liable defendant may collect damages.  Thus, in evaluating whether a Plaintiff was injured, ~~That direct purchaser plaintiff is entitled to recover the full amount of the overcharge as damages, without regard to~~ you should not consider whether some portion of any injury suffered by a Plaintiff ~~the overcharge~~ was passed on to any of its ~~downstream~~ customers.  ~~As a result, you are not to be concerned whether any of an overcharge was passed on to other businesses or individuals.~~

It is for this reason that there has been no evidence in this trial about whether any overcharge was passed on from Plaintiffs to others – that question is irrelevant under the law.  Because there has been no evidence of pass through, and because you are to decide this case solely based on the evidence, you should not consider the issue in your deliberations.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction No. A-2 (modified)(paragraph 1):.ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction A-1 (paragraphs 3 and 4, modified); final two paragraphs: Instruction derived from ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction No. B-1 (explanatory note); *Paper Systems v. Nippon Paper Indus. Co.*, 281 F.3d 629, 632-34 (7th Cir. 2002) (citing

*Illinois Brick Co. v. Illinois,* 431 U.S. 720 (1977)).

### First Alternative to Per Se Instructions: *Wilk*

If the Court declines to use the per se instructions,
Plaintiffs propose the following Instructions.

### Plaintiffs' Proposed Instruction No. 20

### Wilk Alternative: Jury Decides If Per Se Case is Proven Intro

Plaintiff<u>s</u> claim that each Defendant and its co-conspirators violated the Sherman Act by agreeing to limit or restrict the supply of eggs and egg products in the United States. Plaintiffs claim the conspirators agreed engaged in some or all of the following overt acts in furtherance of the conpiracy: (1) the early slaughter and early molting of hens to reduce the number of egg-laying hens; (2) the creation and enforcement of rules that restricted the number of egg-producing hens allowed in henhouses; (3) the banning of backfilling of egg-producing hens; or (4) the export of eggs to reduce the number of eggs available in the domestic market and therefore increase prices. The defendants have denied these allegations.

There are two ways to evaluate whether the practices Plaintiffs challenge in this case constitute a violation of the Sherman Act.

First, a conspiracy to restrict the domestic supply of eggs and egg products is illegal under the "per se" rule. Under the per se rule, a practice is evaluated without considering the actual harm to competition resulting from the practice or the business justification for engaging in the practice.

Second, practices that unreasonably restrain trade in a relevant market are illegal and are evaluated under a "rule of reason." Under the "rule of reason," a practice that restrains trade is evaluated for its reasonableness in light of its actual effect on competition and any pro-competitive justifications for the practice.

Plaintiffs contend that Defendants engaged in a conspiracy to restrict the domestic supply of eggs. If you agree, you should evaluate this case under the per se rule.

If you do not agree that Defendants engaged in a conspiracy to restrict the domestic supply of eggs, you should evaluate the case under the rule of reason.

I will now instruct you as to both of these tests.

**Source:** *Wilk v. American Medical Association*, 719 F.2d 207 (7th Cir. 1983); 3A Fed. Jury Prac. & Instr. § 150.21&22 (5th ed.); ABA Model Jury Instr. In Civ. Antitrust

Cases A-36 (2005); Modern Fed. Jury Instr.-Civ. Instr. 79-49; Comm. on Pattern Jury Instr. Dis. Judges Ass'n 5th Cir.; Order Denying Dismissal Motion at 16-19.

## Plaintiffs' Proposed Instruction No. 21

### Wilk Alternative: Limiting Domestic Supply

The Plaintiffs claim that Defendants agreed to "limit production" or "restrict the domestic supply"of eggs and egg products.

When I refer to limiting production or restricting output, I am not just asking you to decide whether the domestic supply of eggs went up or down. It is a violation of the antitrust laws for competitors to agree to limit prodcution or restrict the domestic supply of eggs below what it would have been without their agreement, or to agree to restructions that unreasonably limit production or restrict the domestic supply of eggs.

I will give some examples.

If the level of supply went up during the relevant time period, but due to an agreement of competitors it went up less than it would have gone up without the agreement, that may be a violation of the antitrust laws. As an example, it is unlawful to agree to reduce supply from 10 to 5. It is also unlawful to agree to limit the increase in supply from 10 to 12 when without the agreement output naturally would have increased from 10 to 14. Both are examples of restricting output.

It is also true that not every decrease in supply is unlawful. If the level of supply went down but the decrease was not the result of an agreement of competitors, it is not a violation of the antitrust laws. It does not violate the antitrust law if supply declines from 10 to 5 where that decrease is not caused by an agreement among competitors. Likewise, it does not violate the antitrust laws where supply increases from 10 to 12 when it was expected to increase to 14, when the reason for the lower growth in production is something other than an agreement among competitors.

In deciding whether Defendants limited production or restricted domestic supply, it is for you to decide if Defendants caused the level of domestic supply to be less than it would have been without their agreement.

**Source:** *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 789-90 (6th Cir. 2002) (holding that evidence of injury to competition was sufficient where Plaintiff presented evidence that two of the three other manufacturers grew more slowly than they otherwise would have but for unlawful monopolization and " although [sales] in the . . . market grew, there was evidence showing that [the defendant's] actions caused higher prices and reduced consumer choice, both of which [were] harmful to competition"); *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637 (N.D. Ill. June 30, 2023) (Durkin, J.) (court approved admission of opinion "that a producer might restrict supply by slowing the rate of increase of production as opposed to an overall production cut. This may result in an increased production number, but one that

would have been higher but for the conspiracy. To the extent the facts bear out this possibility, Williams's opinion on this issue is helpful and will not be excluded").

## Plaintiffs' Proposed Instruction No. 22

## Wilk Alternative: Jury Decides If Per Se Case is Proven

Your first task is to decide if Plaintiffs have proven the existence of a conspiracy to restrict the domestic supply of eggs and egg products.

Plaintiffs claims that each ~~d~~Defendants ~~[and/or other persons]~~ ~~are competitors [or potential competitors]~~ and its co-conspirators ~~have~~violated the Sherman Act by agreeing to ~~limit the production of [product X]~~ limit or restrict the supply of eggs and egg products in the United States. They claim the conspirators engaged in some or all of the following overt acts in furtherance of the conspiracy: (1) the early slaughter and early molting of hens to reduce the number of egg-laying hens; (2) the creation and enforcement of rules that restricted the number of egg-producing hens allowed in henhouses; (3)  the banning of backfilling of egg-producing hens; or (4) the export of eggs to reduce the number of eggs available in the domestic market, and therefore increase prices.

A business has the right to determine on its own how much of its product to produce, provided that the decision results from the exercise of an independent business judgment and not from any agreement with a competitor ~~[or potential competitor]~~. The Sherman Act prohibits agreements between competitors ~~[or potential competitor]~~ that ~~limit~~ restrict how much of a product one or more of them will produce.

~~By way of example, this includes an agreement by two or more competitors that one of them will reduce the amount of a product it produces in competition with the other's products, to set a quota on the amount of product to be produced, or to require one of them to discontinue the development or production of a product which the other will continue to produce and sell.~~

~~To prevail on this claim against a~~ To apply the per se standard, against a ~~d~~Defendant, ~~p~~Plaintiffs must prove, as to that Defendant, each of the following elements by a preponderance of the evidence:

To succeed on their claim, the Plaintiffs must prove each of the following propositions:

(1) defendants and their alleged co-conspirators ~~are~~ ~~[or were at relevant times]~~ competitors or potential competitors;

(2) defendants ~~[or that defendant and one or more other persons who were its competitor(s)]~~ knowingly entered into an agreement to limit or restrict the production of eggs.  To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason;

(3) defendants agreed that production of [*product X*] would be limited by [*state the nature of the alleged limitation on production, e.g., that one of them would reduce the amount of the product X produced*];

(4) the agreement occurred in or affected interstate [*or foreign*] commerce; and

(3~~5~~) plaintiffs were~~as~~ injured in their ~~its~~ business or property because of the agreement.

If you find that the evidence is insufficient to prove any one or more of these elements as to a particular ~~d~~Defendant or Plaintiff, then you must ~~find for that defendant and against plaintiff on plaintiff's claim that defendant conspired to limit production. If you find that the evidence is sufficient to prove all five elements as to that defendant, then you must find for plaintiff and against that defendant on plaintiff's claim with respect to an agreement to limit production~~ evaluate the Plaintiff's claim against that Defendant under a rule of reason. I will explain the rule of reason test later in these instructions..

To assist you in applying this instruction, I will now provide further instructions as to the meaning of these terms.

**Source:** *Wilk v. American Medical Association*, 719 F.2d 207 (7th Cir. 1983); ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. C-4 (modified); *Federal Trade Comm'n v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411 (applied per se rule despite societal benefits to the action of the defendants) (1990); *National Collegiate Athletic Ass'n v. Board of Regents*, 468 U.S. 85, 100 (1984); *Hartford-Empire Co. v. United States*, 323 U.S. 386, 400-01, 406-07 (1945); *United States v. Andreas*, 216 F.3d 645, 667-68 (7th Cir. 2000); *General Leaseways, Inc. v. National Truck Leasing Ass'n*, 744 F.2d 588, 594 (7th Cir.1984).

## Plaintiffs' Proposed Instruction No. 23

## Wilk Alternative: Conspiracy Definition

Plaintiff~~s~~ allege~~s~~ that ~~d~~Defendant~~s~~ participated in a conspiracy to restrain trade by [*alleged conduct or restraint*] <u>limiting or restricting the domestic egg supply</u>. <u>Defendants deny that they entered into an agreement to restrict the domestic supply of eggs</u>.

A "conspiracy" is an express or implied agreement between two or more persons <u>or entities</u> to do something the law prohibits. ~~commit a crime~~. The basis of a conspiracy is an agreement or understanding between two or more persons. A conspiracy may be proven even if its goal[s] [was; were] not accomplished.

In deciding whether the ~~charged~~ conspiracy existed, you may consider all of the circumstances, including the words and acts of each of the alleged participants.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-1 (modified) (paragraph 1); *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit* (2020 ed.), Instruction 5.09, at 107 (modified) (paragraphs 2 and 3).

## Plaintiffs' Proposed Instruction No. 24

### Wilk Alternative: Membership In Conspiracy

[1]     To be a member of a conspiracy, ~~[the; a]~~ Defendant does not need to join it at the beginning, and he does not need to know all of the other members or all of the means by which the ~~illegal~~ unlawful goal~~[s]~~ of the conspiracy was~~; were~~ to be accomplished. <u>A defendant may join in the unlawful plan at some later time of the conspiracy. It is also not necessary that all of the means or methods claimed by the Plaintiffs were agreed upon by each individual Defendant to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members.</u> ~~The government must prove beyond a reasonable doubt that the defendant [you are considering] was aware of the illegal goal[s] of the conspiracy and knowingly joined the conspiracy.~~

~~[A defendant is not a member of a conspiracy just because he knew and/or associated with people who were involved in a conspiracy, knew there was a conspiracy, and/or was present during conspiratorial discussions.]~~

~~[The conspiracy must include at least one member other than the defendant who, at the time, was not [agovernment agent; a law enforcement officer; an informant].]~~

[2]     In deciding whether ~~[the; a]~~ Defendant joined the <u>alleged</u> ~~charged~~ conspiracy, you must base your decision only on what ~~[that; the]~~ Defendant did or said. To determine what ~~[that; the]~~ Defendant did or said, you may consider ~~[that; the]~~ Defendant's own words or acts. You may also use the words or acts of other persons to help you decide what the Defendant did or said.

[3]     If you find that the alleged conspiracy existed, then the acts and statements of the conspirators are binding on all of those whom you find were members of the conspiracy.

[4]     If you find ~~Once you have found~~ that a ~~d~~<u>D</u>efendant is a member of a conspiracy, ~~he, she, or~~ that Defendant is presumed to remain a member and is responsible for all actions taken by all coconspirators during and in furtherance of the conspiracy until it is shown that the conspiracy has been completed or abandoned ~~[*or that the person has withdrawn from the conspiracy*]~~.

**Source:** *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit* (2022 ed.), Instruction 5.10, at 109 (paragraphs 1 & 2, modified as shown);

ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.),Ch. 2, Instruction A-4 (paragraphs 3 & 4, modified as shown).

**Plaintiffs' Proposed Instruction No. 25**

**Wilk Alternative: Explanation of Conspiracy**

An agreement or understanding between two or more persons exists when they share a commitment to a common scheme. To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement. The agreement itself may have been entirely unspoken. A person can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the charged conspiracy. The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose. To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish a common purpose.

A conspiracy may be formed without all parties coming to an agreement at the same time [*such as where competitors separately accept invitations to participate in a plan to restrain trade*]. Similarly, it is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement. It is also not necessary that all of the means or methods claimed by ~~p~~Plaintiff<u>s</u> were agreed upon to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members<u>, nor that all of them employed all of the means or methods designed to achieve the goals of the agreement or conspiracy</u>. It is the agreement or understanding to restrain trade [~~*in the way alleged by plaintiff*~~]<u>by limiting or restricting the growth of the domestic egg supply</u> that constitutes a conspiracy. Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed. <u>It is enough that a participant knowingly agreed or conspired to use at least one of the means or methods designed to achieve the common objective.</u>

A person who knowingly joins an existing conspiracy, or who participates only in part of a conspiracy with knowledge of the overall conspiracy, is just as responsible as if he or she had been one of those who formed or began the conspiracy and participated in every part of it.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-1 (modified) (other portions are included in other instructions) (paragraphs 1-2); ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-4; *Toys R Us, Inc. v. FTC*, 221 F.3d 928, 932, 935 (7th Cir. 2000) (finding horizontal conspiracy among toy manufacturers in response to a major retailer's demand that they not supply warehouse club stores particular toys sold to the major retailer where it was demonstrated that toy manufacturers agreed to the

demand only "on the condition that their competitors would do the same") (paragraph 3).

## Plaintiffs' Proposed Instruction No. 26

### Wilk Alternative: Evidence of Conspiracy

[1]     Plaintiff<u>s</u> may prove the existence of the alleged [agreement] or conspiracy through direct evidence, circumstantial evidence, or both. Direct evidence is explicit and requires no inferences to establish the existence of the alleged conspiracy.

[2]     While conspiracies are often carried out in secret, secrecy is not an element of a conspiracy.  Conspirators may act openly or not, as best suits their purpose.

[3]     Direct proof of an agreement may not be available. A conspiracy may be proven by the circumstances or the acts of the members. Therefore, you may infer the existence of an agreement from what you find the alleged members actually did, as well as from the words they used. Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together, does not by itself establish the existence of a conspiracy unless the evidence tends to exclude the possibility that the persons or businesses were acting independently.

**Source(s):** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-1 (paragraph 1); *Federal Trade Comm'n v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411 (1990) (work stoppage conspiracy unlawful although it was publicly disclosed); *San Juan Racing Ass'n Inc. v. Asociacion de Jinetes de Puerto Rico, Inc., et al.,* 590 F.2d 31, 32 (1st Cir. 1979) (holding that jockeys had participated in conspiracy to illegally control prices in violation of antitrust laws finding that jockeys' "openness [did] not immunize agreement" where jockeys refused to race at night of scheduled race until their fees were increased); *United States v. Spock,* 416 F.2d 165, 170 (1st Cir. 1969) (paragraph 2); *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984) (paragraph 3).

APPENDIX 13-2 - PLAINTIFFS' PROPOSED JURY INSTRUCTIONS: AUGUST 22, 2023

**Plaintiffs' Proposed Instruction No. 27**

**Wilk Alternative: Cause of Injury; Pass-Through Irrelevant**

Plaintiffs must prove they were injured in their business or property. Here, Plaintiffs complain that they were injured by paying more for eggs [egg products] due to the conspiracy. A Plaintiff has been injured in their business or property ~~if you find that~~ it paid an inflated price for eggs [egg products] as a result of ~~d~~Defendant's alleged antitrust violation. Plaintiff must only prove that it has been injured in its business or property, and need not prove an amount of injury.

~~Plaintiff must also offer evidence that establishes by a preponderance of the evidence that defendant's alleged illegal conduct was a material cause of plaintiff's injury. This means that plaintiff must have proved that some damage occurred to it as a result of defendant's alleged antitrust violation, and not some other cause.~~ Plaintiffs must also establish that the injury was a result of a Defendant's violation of the antitrust laws. To do so, Plaintiffs must also establish that the alleged illegal conduct was a material or substantial cause of Plaintiffs' injuries. Plaintiffs ~~is~~are not required to prove that a ~~d~~Defendant's alleged antitrust violation was the sole cause of ~~its~~their injur~~y~~ies; nor need ~~p~~Plaintiffs eliminate all other possible causes of injury. It is enough if ~~p~~Plaintiffs ~~has~~have proved that the alleged antitrust violation was a material or substantial cause of ~~its~~their injury.

In evaluating whether a Plaintiff was injured, I instruct you that under antitrust law, only the entity that purchased products directly from a liable defendant may collect damages. Thus, in evaluating whether a Plaintiff was injured, ~~That direct purchaser plaintiff is entitled to recover the full amount of the overcharge as damages, without regard to~~ you should not consider whether some portion of any injury suffered by a Plaintiff ~~the overcharge~~ was passed on to any of its ~~downstream~~ customers. ~~As a result, you are not to be concerned whether any of an overcharge was passed on to other businesses or individuals.~~

It is for this reason that there has been no evidence in this trial about whether any overcharge was passed on from Plaintiffs to others – that question is irrelevant under the law. Because there has been no evidence of pass through, and because you are to decide this case solely based on the evidence, you should not consider the issue in your deliberations.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction A-1 (paragraphs 3 and 4, modified); final two paragraphs: Instruction derived from ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction No. B-1 (explanatory note); *Paper Systems v. Nippon Paper Indus. Co.*, 281 F.3d 629, 632-34 (7th Cir. 2002) (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)).

**Plaintiffs' Proposed Instruction No. 28**

**Wilk Alternative: Rule of Reason**

~~Plaintiff challenges defendant's conduct under Section 1 of the Sherman Act. Section 1 prohibits contracts, combinations, and conspiracies~~ You should only apply this instruction as to a Defendant if you decide that Plaintiffs have not proven that Defendants engaged in a conspiracy to restrict the domestic supply of eggs. In that case, you must then consider Plaintiffs' claims under a rule of reason standard to decide whether some or all of the Defendants entered into an agreement that had an anticompetitive effect and that is an unreasonabl~~ey~~ restraint ~~of~~ trade.

[¶]

To establish a violation of Section 1 of the Sherman Act under the rule of reason standard, must prove the following:

1. the existence of a contract, combination, or conspiracy between or among at least two separate entities;
2. the ~~contract, combination, or~~ conspiracy unreasonably restrain~~eds~~ trade;
3. ~~that the restraint affecteds interstate or foreign commerce; and~~
3. the restraint caused a ~~p~~Plaintiff to suffer an injury to its business or property.

If you find that a Plaintiff has proved these elements as to a Defendant, then you must find for that Plaintiff and against that Defendant.

If you find that the evidence is insufficient to prove any one or more of these elements as to a particular Defendant or Plaintiff, then you must find for that Defendant against that Plaintiff.

I have already instructed you as to what is meant by an agreement or conspiracy. I have also instructed you about whether a restraint has caused an injury to business of property. To assist you in applying this instruction, I will now instruct you as to what it means to unreasonably restrain trade.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 1, Instruction No. B-2(modified)

**Plaintiffs' Proposed Instruction No. 29**

**Wilk Alternative: Rule of Reason –
Proof Of Competitive Harm/Relevant Market**

[1]     ~~As I mentioned, t~~To prove that the challenged restraint is unreasonable, plaintiff first must demonstrate that the restraint resulted in a substantial harm to competition. ~~Although it may be relevant to the inquiry, harm that occurs merely to the individual business of plaintiff is not sufficient, by itself, to demonstrate harm to competition generally.¹ That is, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition.~~

[2]     ~~Furthermore,~~ Plaintiff must show that the harm to competition occurred in ~~an identified market, known as~~ a relevant market. There are two aspects to a relevant market.

[3]     The first aspect is known as the relevant product market. Plaintiffs contend the relevant product market is the market for eggs, including shell eggs and egg products. One common way to think about the relevant product market is whether a seller of one product would be willing to shift their resources to selling a second product in response to an increase in the price of the second product.  To give an example not related to this case, take two orange growers. The first sells fresh squeezed juice, while the second grower process the oranges and sells orange juice concentrate. Generally speaking, a bottle of orange juice and a frozen container of orange juice concentrate are not reasonably interchangeable and, therefore, might be thought of as being in a separate product markets. However, it is possible that the fresh juice producer could quickly shift its resources to produce concentrate if the concentrate manufacturer raised its prices significantly and vice versa. Although purchasers of each product may not be willing or able to switch from one to the other, the ability of each manufacturer to alter its production could prevent the other manufacturer from raising prices significantly. Thus, in this example, fresh juice and concentrate would be included in the same market.

[4]     The second aspect is known as the relevant geographic market. Plaintiffs contend the relevant geographic market is the United States.~~ It is p~~Plaintiff~~'~~s~~'~~ burden to prove the existence of a relevant market.

[5]     If you find that plaintiff has proven the existence of a relevant market, then you must determine whether plaintiff also has proven that the challenged restraint has [*or is likely to have*] a substantial harmful effect on competition in that market. A harmful effect on competition refers to a loss of some of the benefits of competition, such as lower prices or increased output. Plaintiffs claim the Defendants' action caused higher prices and restrained output from what it would have been absent the Defendants' actions. If the challenged conduct has not resulted in [*or is not likely to result in*] higher prices, decreased output, lower quality, or the loss of some other

competitive benefit, then there has been no competitive harm, and you should find that the challenged conduct was not unreasonable.

In determining whether the challenged restraint has produced [*or is likely to produce*] competitive harm, you may look at the following factors:

- the effect of the restraint on prices, output, product quality, and service;

- the purpose and nature of the restraint;

- the nature and structure of the relevant market;

- the number of competitors in the relevant market and the level of competition among them, both before and after the restraint was imposed; and

- whether the defendant possesses market power.

The last factor mentioned, market power, has been defined as an ability to profitably raise prices, for a sustained period of time, above those that would be charged in a competitive market.[4] A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does not possess market power. The ability to charge higher prices for better products or services, however, is not market power. An important factor in determining whether defendant possesses market power is defendant's market share, that is, its percentage of the products or services sold in the relevant market by all competitors. Other factors that you may consider in determining whether defendant has market power include [*list factors relevant to the facts of the case, such as the existence of barriers to entry or potential competitors*]. If defendant does not possess a substantial market share, it is less likely that defendant possesses market power. If defendant does not possess market power, it is less likely that the challenged restraint has resulted [*or will result*] in a substantial harmful effect on competition in the market.

Source: Paragraphs 1, 2, 4, 5: ABA Model Jury Instructions in Civil Antitrust Cases (2016 Edition) Ch. 1, Instruction No. C-3B (modified). Paragraph 3 ABA Model Jury Instructions in Civil Antitrust Cases (2016 Ed.), Ch. 3, Section A, Instruction No. 5 (supply side substitutability)

**Plaintiffs' Proposed Instruction No. 30**

**Wilk Alternative:  Evidence Of Competitive Benefits**

If you find that plaintiff has proven that the challenged restraint resulted in substantial harm to competition in a relevant market, then you next must determine whether the restraint also benefits competition in other ways.

In considering whether the challenged restraints benefitted or harmed competition, you may consider various factors including, but not limited to: ~~whether the challenged restraints were demanded by customers,~~ increased or decreased production, consumer choice, prices,  and  product quality. Evidence regarding the ethical treatment of laying hens may be considered with respect to issues such as whether a challenged restraint affected output or product quality~~, widened customer choice, or met customer demand~~. However, the ethical treatment of laying hens as a societal benefit ~~standing alone~~ is not ~~in and itself~~ a procompetitive benefit.

If you find that the challenged restraint does result in competitive benefits, then you also must consider whether the restraint was reasonably necessary to achieve the benefits. If plaintiff proves that the same benefits could have been readily achieved by other, reasonably available alternative means that create substantially less harm to competition, then they cannot be used to justify the restraint.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases ( 2016 Edition), Chapter 1, Instruction 3C**.**

## Plaintiffs' Proposed Instruction No. 31

### Wilk Alternative: Balancing The Competitive Effects

If you find that the challenged restraint was reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same restraint.

If the competitive harm substantially outweighs the competitive benefits, then the challenged restraint is unreasonable. If the competitive harm does not substantially outweigh the competitive benefits, then the challenged restraint is not unreasonable. In conducting this analysis, you must consider the benefits and harm to competition and consumers, not just to a single competitor or group of competitors. Plaintiff bears the burden of proving that the anticompetitive effect of the conduct substantially outweighs its benefits.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 Edition), June 2016), Chapter 1 Instruction 3D.

## Plaintiffs' Proposed Instruction No. 32

## Wilk Alternative: Motive Not A Defense

If you find that a ~~d~~Defendant engaged in ~~a price-fixing~~ the conspiracy, it is not a defense for that ~~d~~Defendant to claim that it acted with good motives, that it thought its conduct was legal, that it thought its conduct resulted in other societal benefit, or that ~~the~~its conduct may have had some good results. If the conspiracy restrained trade, it is not a defense that the conspiracy was for a purpose other than to restrict egg supply. Moreover, a Defendant cannot justify engaging in a conspiracy by claiming it would have lost money had it not entered into the unlawful agreement.

A party may not justify an agreement to restrain competition based on the assumption or belief that it will improve a product's quality or be in the interests of customers. Customers are to decide through competition what is in their interests. Sellers may not agree to restrain the market because they think it is in the customers' interests. The antitrust laws are based on the view that competition will produce not only lower prices, but also better goods and services.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. B-3 (modified); *Wilk v. American Medical Association*, 719 F.2d 207, ___ (7th Cir. 1983); Paragraph 2 is taken in modified form from *The PLS.COM, LLC v. The National Association of Realtors, et al.*, 32 F.4th 824, 836 (9th Cir. 2022) (quoting *Nat'l Soc'y of Prof. Eng'rs v. United States*, 435 U.S. 679, 695 (1978).

**Second Alternative to Per Se Instructions: Rule of Reason**

If the Court declines to use the per se instructions or the *Wilk* Instructions, Plaintiffs propose the following Instructions.

**Plaintiffs' Proposed Instruction No. 33**

**Rule of Reason Alternative: Sherman Act Section 1**

Plaintiff challenges defendant's conduct under Section 1 of the Sherman Act. Section 1 prohibits contracts, combinations, and conspiracies that unreasonably restrain trade.

Plaintiffs claim that each Defendant and its co-conspirators violated the Sherman Act by agreeing to actions that would limit or restrict the supply of eggs and egg products in the United States. Plaintiffs claim the conspirators agreed to engage in some or all of the following: (1) the early slaughter and early molting of hens to reduce the number of egg-laying hens; (2) the creation and enforcement of rules that restricted the number of egg-producing hens allowed in henhouses; (3)  the banning of backfilling of egg-producing hens; or (4) the export of eggs to reduce the number of eggs available in the domestic market and therefore increase prices.  The defendants have denied these allegations.

Defendant deny these claims.

To establish a violation of Section 1 of the Sherman Act, plaintiff must prove the following:

1. the existence of a contract, combination, or conspiracy between or among at least two separate entities;
2. the ~~contract, combination, or~~ conspiracy unreasonably restrained~~s~~ trade;
~~[3] that the restraint affecteds interstate or foreign commerce; and~~
[3] the restraint caused a ~~p~~Plaintiff to suffer an injury to its business or property.


Source: **ABA Model Jury Instructions in Civil Antitrust Cases** (2016 Edition) Ch. 1, Instruction No. B (modified)

**Plaintiffs' Proposed Instruction No. 34**

**Rule of Reason Alternative:  Rule of Reason Overview**

Under Section 1 of the Sherman Act, a restraint of trade is illegal only if it is found to be unreasonable. You must determine, therefore, whether the restraint challenged here ⸺[*describe it*]⸺is unreasonable. In making this determination, you must first determine whether plaintiff has proven that the challenged restraint has resulted in a substantial harm to competition in a relevant product and geographic market. If you find that plaintiff has proven that the challenged restraint results in a substantial harm to competition in a relevant market, then you must consider whether the restraint produces countervailing competitive benefits.  If you find that it does, then you must balance the competitive harm against the competitive benefit. The challenged restraint is illegal under Section 1 of the Sherman Act only if you find that the competitive harm substantially outweighs the competitive benefit.[2]

I will now review each step of the analysis in more detail.

Source: **ABA Model Jury Instructions in Civil Antitrust Cases** (2016 Edition) Ch. 1, Instruction No. C-3A (modified)

46

### Plaintiffs' Proposed Instruction No. 35

### Rule of Reason Alternative:  Limiting Domestic Supply

The Plaintiffs claim that Defendants agreed to "limit production" or "restrict the domestic supply" of eggs and egg products.

When I refer to limiting production or restricting output, I am not just asking you to decide whether the domestic supply of eggs went up or down. It is a violation of the antitrust laws for competitors to agree to restructions that unreasonably limit production or restrict the domestic supply of eggs.

I will give some examples.

If the level of supply went up during the relevant time period, but due to an agreement of competitors it went up less than it would have gone up without the agreement, that may be a violation of the antitrust laws. As an example, it is unlawful to agree to reduce supply from 10 to 5. It is also unlawful to agree to limit the increase in supply from 10 to 12 when without the agreement output naturally would have increased from 10 to 14. Both are examples of restricting output.

It is also true that not every decrease in supply is unlawful. If the level of supply went down but the decrease was not the result of an agreement of competitors, it is not a violation of the antitrust laws. It does not violate the antitrust law if supply declines from 10 to 5 where that decrease is not caused by an agreement among competitors. Likewise, it does not violate the antitrust laws where supply increases from 10 to 12 when it was expected to increase to 14, when the reason for the lower growth in production is something other than an agreement among competitors.

In deciding whether Defendants limited production or restricted domestic supply, it is for you to decide if Defendants caused the level of domestic supply to be less than it would have been without their agreement.

**Source:** *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 789-90 (6th Cir. 2002) (holding that evidence of injury to competition was sufficient where Plaintiff presented evidence that two of the three other manufacturers grew more slowly than they otherwise would have but for unlawful monopolization and " although [sales] in the . . . market grew, there was evidence showing that [the defendant's] actions caused higher prices and reduced consumer choice, both of which [were] harmful to competition"); *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637 (N.D. Ill. June 30, 2023) (Durkin, J.) (court approved admission of opinion "that a producer might restrict supply by slowing the rate of increase of production as opposed to an overall production cut. This may result in an increased production number, but one that would have been higher but for the conspiracy. To the extent the facts bear out this possibility, Williams's opinion on this issue is helpful and will not be excluded").

## Plaintiffs' Proposed Instruction No. 36

## Rule of Reason Alternative: Conspiracy Definition

Plaintiff~~s~~ allege~~s~~ that ~~d~~Defendant~~s~~ participated in a conspiracy to restrain trade by ~~*[alleged conduct or restraint]*~~ <u>limiting or restricting the domestic egg supply</u>. <u>Defendants deny that they entered into an agreement to restrict the domestic supply of eggs</u>.

A "conspiracy" is an express or implied agreement between two or more persons <u>or entities</u> to do something the law prohibits. ~~Commit a crime~~. The basis of a conspiracy is an agreement or understanding between two or more persons. A conspiracy may be proven even if its goal~~[s]~~ ~~[was; were]~~ not accomplished.

In deciding whether the ~~charged~~ conspiracy existed, you may consider all of the circumstances, including the words and acts of each of the alleged participants.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-1 (modified) (paragraph 1); *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit* (2020 ed.), Instruction 5.09, at 107 (modified) (paragraphs 2 and 3).

## Plaintiffs' Proposed Instruction No. 37

## Rule of Reason Alternative: Membership In Conspiracy

[1]     To be a member of a conspiracy, ~~[the; a]~~ Defendant does not need to join it at the beginning, and he does not need to know all of the other members or all of the means by which the ~~illegal~~ unlawful goal~~[s]~~ of the conspiracy was~~; were~~ to be accomplished. <u>A defendant may join in the unlawful plan at some later time of the conspiracy. It is also not necessary that all of the means or methods claimed by the Plaintiffs were agreed upon by each individual Defendant to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members.</u> ~~The government must prove beyond a reasonable doubt that the defendant [you are considering] was aware of the illegal goal[s] of the conspiracy and knowingly joined the conspiracy.~~

~~[A defendant is not a member of a conspiracy just because he knew and/or associated with people who were involved in a conspiracy, knew there was a conspiracy, and/or was present during conspiratorial discussions.]~~

~~[The conspiracy must include at least one member other than the defendant who, at the time, was not [a government agent; a law enforcement officer; an informant].]~~

[2]     In deciding whether ~~[the; a]~~ Defendant joined the <u>alleged</u> ~~charged~~ conspiracy, you must base your decision only on what ~~[that; the]~~ Defendant did or said.  To determine what ~~[that; the]~~ Defendant did or said, you may consider ~~[that; the]~~ Defendant's own words or acts.  You may also use the words or acts of other persons to help you decide what the Defendant did or said.

[3]     If you find that the alleged conspiracy existed, then the acts and statements of the conspirators are binding on all of those whom you find were members of the conspiracy.

[4]     If you find ~~Once you have found~~ that a ~~d~~<u>D</u>efendant is a member of a conspiracy, ~~he, she, or~~ that Defendant is presumed to remain a member and is responsible for all actions taken by all coconspirators during and in furtherance of the conspiracy until it is shown that the conspiracy has been completed or abandoned ~~[*or that the person has withdrawn from the conspiracy*]~~.

**Source:** *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit* (2022 ed.), Instruction 5.10, at 109 (paragraphs 1 & 2, modified as shown);

ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.),Ch. 2, Instruction A-4 (paragraphs 3 & 4 modified as shown).

**Plaintiffs' Proposed Instruction No. 38**

**Rule of Reason Alternative:  Explanation of Conspiracy**

An agreement or understanding between two or more persons exists when they share a commitment to a common scheme. To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement. The agreement itself may have been entirely unspoken. A person can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the charged conspiracy. The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose. To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish a common purpose.

A conspiracy may be formed without all parties coming to an agreement at the same time [*such as where competitors separately accept invitations to participate in a plan to restrain trade*]. Similarly, it is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement. It is also not necessary that all of the means or methods claimed by ~~p~~Plaintiff<u>s</u> were agreed upon to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members<u>, nor that all of them employed all of the means or methods designed to achieve the goals of the agreement or conspiracy</u>. It is the agreement or understanding to restrain trade [*in the way alleged by plaintiff*] <u>by limiting or restricting the growth of the domestic egg supply</u> that constitutes a conspiracy. Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed. <u>It is enough that a participant knowingly agreed or conspired to use at least one of the means or methods designed to achieve the common objective.</u>

A person who knowingly joins an existing conspiracy, or who participates only in part of a conspiracy with knowledge of the overall conspiracy, is just as responsible as if he or she had been one of those who formed or began the conspiracy and participated in every part of it.

**Source:**  ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-1 (modified) (other portions are included in other instructions) (paragraphs 1-2); ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-4; *Toys R Us, Inc. V. FTC*, 221 F.3d 928, 932, 935 (7th Cir. 2000) (finding horizontal conspiracy among toy manufacturers in response to a major retailer's demand that they not supply warehouse club stores particular toys sold to the major retailer where it was demonstrated that toy manufacturers agreed to the

demand only "on the condition that their competitors would do the same") (paragraph 3).

## Plaintiffs' Proposed Instruction No. 39

### Rule of Reason Alternative: Evidence of Conspiracy

[1]     Plaintiffs may prove the existence of the alleged [agreement] or conspiracy through direct evidence, circumstantial evidence, or both. Direct evidence is explicit and requires no inferences to establish the existence of the alleged conspiracy.

[2]     While conspiracies are often carried out in secret, secrecy is not an element of a conspiracy.  Conspirators may act openly or not, as best suits their purpose.

[3]     Direct proof of an agreement may not be available. A conspiracy may be proven by the circumstances or the acts of the members. Therefore, you may infer the existence of an agreement from what you find the alleged members actually did, as well as from the words they used. Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together, does not by itself establish the existence of a conspiracy unless the evidence tends to exclude the possibility that the persons or businesses were acting independently.

**Source(s):** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-1 (paragraph 1); *Federal Trade Comm'n v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411 (1990) (work stoppage conspiracy unlawful although it was publicly disclosed); *San Juan Racing Ass'n Inc. V. Asociacion de Jinetes de Puerto Rico, Inc., et al.,* 590 F.2d 31, 32 (1st Cir. 1979) (holding that jockeys had participated in conspiracy to illegally control prices in viola)ion of antitrust laws finding that jockeys' "openness [did] not immunize agreement" where jockeys refused to race at night of scheduled race until their fees were increased); *United States v. Spock,* 416 F.2d 165, 170 (1st Cir. 1969) (paragraph 2); *Monsanto Co. V. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984) (paragraph 3).

**Plaintiffs' Proposed Instruction No. 40**

**Rule of Reason Alternative:**
**Proof Of Competitive Harm/Relevant Market**

[1]    ~~As I mentioned, t~~To prove that the challenged restraint is unreasonable, plaintiff first must demonstrate that the restraint has resulted [*or is likely to result*] in a substantial harm to competition. ~~Although it may be relevant to the inquiry, harm that occurs merely to the individual business of plaintiff is not sufficient, by itself, to demonstrate harm to competition generally.¹ That is, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition.~~

[2]    ~~Furthermore,~~ Plaintiff must show that the harm to competition occurred in ~~an identified market, known as~~ a relevant market. There are two aspects to a relevant market. ~~²~~Plaintiffs contend the relevant product market is the market for eggs, including shell eggs and egg products.

[3]    The first aspect is known as the relevant product market. Plaintiffs contend the relevant product market is the market for eggs, including shell eggs and egg products. <u>One common way to think about the relevant product market is whether a seller of one product would be willing to shift their resources to selling a second product in response to an increase in the price of the second product.  To give an example not related to this case, take two orange growers. The first sells fresh squeezed juice, while the second grower process the oranges and sells orange juice concentrate. Generally speaking, a bottle of orange juice and a frozen container of orange juice concentrate are not reasonably interchangeable and, therefore, might be thought of as being in a separate product markets. However, it is possible that the fresh juice producer could quickly shift its resources to produce concentrate if the concentrate manufacturer raised its prices significantly and vice versa. Although purchasers of each product may not be willing or able to switch from one to the other, the ability of each manufacturer to alter its production could prevent the other manufacturer from raising prices significantly. Thus, in this example, fresh juice and concentrate would be included in the same market.</u>

[4]    The second aspect is known as the relevant geographic market. Plaintiffs contend the relevant geographic market is the United States.~~-~~It is ~~p~~<u>P</u>laintiff<u>s'</u>~~'s~~ burden to prove the existence of a relevant market.

[5]    If you find that plaintiff has proven the existence of a relevant market, then you must determine whether plaintiff also has proven that the challenged restraint has [*or is likely to have*] a substantial harmful effect on competition in that market. A harmful effect on competition refers to a loss of some of the benefits of competition, such as lower prices or increased output. Plaintiffs claim the Defendants' action caused higher prices and restrained output from what it would have been absent the

Defendants' actions. If the challenged conduct has not resulted in [~~or is not likely to result in~~] higher prices, decreased output, lower quality, or the loss of some other competitive benefit, then there has been no competitive harm, and you should find that the challenged conduct was not unreasonable.

~~In determining whether the challenged restraint has produced [~~*or is likely to produce*~~] competitive harm, you may look at the following factors:~~

  · ~~the effect of the restraint on prices, output, product quality, and service;~~

  · ~~the purpose and nature of the restraint;~~

  · ~~the nature and structure of the relevant market;~~

  · ~~the number of competitors in the relevant market and the level of competition among them, both before and after the restraint was imposed; and~~

  · ~~whether the defendant possesses market power.~~

~~The last factor mentioned, market power, has been defined as an ability to profitably raise prices, for a sustained period of time, above those that would be charged in a competitive market.¹ A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does not possess market power. The ability to charge higher prices for better products or services, however, is not market power. An important factor in determining whether defendant possesses market power is defendant's market share, that is, its percentage of the products or services sold in the relevant market by all competitors. Other factors that you may consider in determining whether defendant has market power include [~~*list factors relevant to the facts of the case, such as the existence of barriers to entry or potential competitors*~~]. If defendant does not possess a substantial market share, it is less likely that defendant possesses market power. If defendant does not possess market power, it is less likely that the challenged restraint has resulted [~~*or will result*~~] in a substantial harmful effect on competition in the market.~~

Source: Paragraphs 1, 2, 4, 5: ABA Model Jury Instructions in Civil Antitrust Cases (2016 Edition) Ch. 1, Instruction No. C-3B (modified). Paragraph 3 ABA Model Jury Instructions in Civil Antitrust Cases (2016 Ed.), Ch. 3, Section A, Instruction No. 5 (supply side substitutability)

**Plaintiffs' Proposed Instruction No. 41**

**Rule of Reason Alternative: Evidence Of Competitive Benefits**

If you find that plaintiff has proven that the challenged restraint resulted in substantial harm to competition in a relevant market, then you next must determine whether the restraint also benefits competition in other ways.

In considering whether the challenged restraints benefitted or harmed competition, you may consider various factors including, but not limited to: ~~whether the challenged restraints were demanded by customers,~~ increased or decreased production, consumer choice, prices, and product quality. Evidence regarding the ethical treatment of laying hens may be considered with respect to issues such as whether a challenged restraint affected output or product quality, ~~widened customer choice, or met customer demand~~. However, the ethical treatment of laying hens as a societal benefit ~~standing alone~~ is not ~~in and itself~~ a procompetitive benefit.

If you find that the challenged restraint does result in competitive benefits, then you also must consider whether the restraint was reasonably necessary to achieve the benefits. If plaintiff proves that the same benefits could have been readily achieved by other, reasonably available alternative means that create substantially less harm to competition, then they cannot be used to justify the restraint.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases ( 2016 Edition), Chapter 1, Instruction 3C**.**

## Plaintiffs' Proposed Instruction No. 42

### Rule of Reason Alternative: Balancing The Competitive Effects

If you find that the challenged restraint was reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same restraint.

If the competitive harm substantially outweighs the competitive benefits, then the challenged restraint is unreasonable. If the competitive harm does not substantially outweigh the competitive benefits, then the challenged restraint is not unreasonable. In conducting this analysis, you must consider the benefits and harm to competition and consumers, not just to a single competitor or group of competitors. Plaintiff bears the burden of proving that the anticompetitive effect of the conduct substantially outweighs its benefits.

**Souce:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 Edition), June 2016), Chapter 1 Instruction 3D.

### Plaintiffs' Proposed Instruction No. 43

### Rule of Reason Alternative: Motive Not A Defense

If you find that a ~~d~~Defendant engaged in ~~a price-fixing~~ the conspiracy, it is not a defense for that ~~d~~Defendant to claim that it acted with good motives, that it thought its conduct was legal, that it thought its conduct resulted in other societal benefit, or that ~~the~~its conduct may have had some good results. If the conspiracy restrained trade, it is not a defense that the conspiracy was for a purpose other than to restrict egg supply. Moreover, a Defendant cannot justify engaging in a conspiracy by claiming it would have lost money had it not entered into the unlawful agreement.

A party may not justify an agreement to restrain competition based on the assumption or belief that it will improve a product's quality or be in the interests of customers. Customers are to decide through competition what is in their interests. Sellers may not agree to restrain the market because they think it is in the customers' interests. The antitrust laws are based on the view that competition will produce not only lower prices, but also better goods and services.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. B-3 (modified); *Wilk v. American Medical Association*, 719 F.2d 207, ___ (7th Cir. 1983); Paragraph 2 is taken in modified form from *The PLS.COM, LLC v. The National Association of Realtors, et al.*, 32 F.4th 824, 836 (9th Cir. 2022) (quoting *Nat'l Soc'y of Prof. Eng'rs v. United States*, 435 U.S. 679, 695 (1978).

**Plaintiffs' Proposed Instruction No. 44**

**Rule of Reason Alternative: Cause of Injury/Pass Through Irrelevant**

Plaintiffs must prove they were injured in their business or property. Here, Plaintiffs complain that they were injured by paying more for eggs [egg products] due to the conspiracy. A Plaintiff has been injured in their business or property ~~if you find that~~ it paid an inflated price for eggs [egg products] as a result of ~~d~~Defendant's alleged antitrust violation. Plaintiff must only prove that it has been injured in its business or property, and need not prove an amount of injury.

~~Plaintiff must also offer evidence that establishes by a preponderance of the evidence that defendant's alleged illegal conduct was a material cause of plaintiff's injury. This means that plaintiff must have proved that some damage occurred to it as a result of defendant's alleged antitrust violation, and not some other cause.~~ Plaintiffs must also establish that the injury was a result of a Defendant's violation of the antitrust laws. To do so, Plaintiffs must also establish that the alleged illegal conduct was a material or substantial cause of Plaintiffs' injuries. Plaintiffs ~~is~~are not required to prove that a ~~d~~Defendant's alleged antitrust violation was the sole cause of ~~its~~their injur~~y~~ies; nor need ~~p~~Plaintiffs eliminate all other possible causes of injury. It is enough if ~~p~~Plaintiffs ~~has~~have proved that the alleged antitrust violation was a material or substantial cause of ~~its~~their injury.

In evaluating whether a Plaintiff was injured, I instruct you that under antitrust law, only the entity that purchased products directly from a liable defendant may collect damages. Thus, in evaluating whether a Plaintiff was injured, ~~That direct purchaser plaintiff is entitled to recover the full amount of the overcharge as damages, without regard to~~ you should not consider whether some portion of any injury suffered by a Plaintiff ~~the overcharge~~ was passed on to any of its ~~downstream~~ customers. ~~As a result, you are not to be concerned whether any of an overcharge was passed on to other businesses or individuals.~~

It is for this reason that there has been no evidence in this trial about whether any overcharge was passed on from Plaintiffs to others – that question is irrelevant under the law. Because there has been no evidence of pass through, and because you are to decide this case solely based on the evidence, you should not consider the issue in your deliberations.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction A-1 (paragraphs 3 and 4, modified); final two paragraphs: Instruction derived from ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction No. B-1 (explanatory note); *Paper Systems v. Nippon Paper Indus. Co.*, 281 F.3d 629, 632-34 (7th Cir. 2002) (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)).

## Plaintiffs' Proposed Instruction No. 45

### No Defense of In Pari Delicto

You have heard evidence that certain Plaintiffs [and other purchasers of eggs] may have wanted to purchase UEP certified eggs at some point during the conspiracy. If you find that Defendants conspired to restrain trade, it is no defense to a claim under the Sherman Act that the Plaintiffs [and other purchasers of eggs] were in some way aware of the Defendants' restraint of trade or were involved in or participated in it.

Source: *Perma-Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, ___ (1968)

## Damage Instructions

## Plaintiffs' Proposed Instruction No. 46

### Antitrust Damages

You have found that [certain] Plaintiff[s] has proven [certain] Defendant[s] committed antiturst violations that harmed [those] Plaintiff[s]. You must now determine the amount of damages, if any, Plaintiffs are entitled to recover. ~~The fact that I am giving you instructions concerning the issue of plaintiff's damages does not mean that I believe plaintiff should, or should not, prevail in this case. If you reach a verdict for defendant on the issue of liability, you should not consider the issue of damages, and you may disregard the damages instruction that I am about to give.~~

The law provides that ~~p~~Plaintiff~~s~~ should be fairly compensated for all damages ~~to its business or property~~ that were a direct result or likely consequence of the conduct that you have found to be unlawful.

~~If you have determined that there was an unlawful agreement among competitors to [~~*fix prices, restrict output, or allocate markets*~~] that caused some injury to plaintiff, you must now determine the amount of damages to award to plaintiff.~~ The proper way to calculate those damages is to determine the difference between the prices ~~p~~Plaintiff~~s~~ actually paid for ~~[~~*product X*~~]~~egg products and the prices ~~p~~Plaintiff~~s~~ would have paid had there been no agreement to ~~[~~*fix prices,* restrict *output, or allocate markets*~~]~~.the domestic supply of eggs. This is referred to as the overcharge. ~~[~~*The court should incorporate case-specific instructions addressing legitimate means of measuring overcharge damages, such as multiple regression, yardstick, or before-and-after analyses.*~~]~~

Antitrust damages are only compensatory, meaning their purpose is to put an injured ~~p~~Plaintiff as near as possible in the position in which it would have been had the alleged antitrust violation not occurred. The law does not permit you to award damages to punish a wrongdoer—what we sometimes refer to as punitive damages—or to deter particular conduct in the future. Furthermore, you are not permitted to award to ~~p~~Plaintiff~~s~~ an amount for attorneys' fees or the costs of maintaining this lawsuit.

**Source:** Paragraphs 1, 2, and 4 from ABA Model Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction B-1, p. 306 (modified); Paragraph 3 from ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction B-5 (modified).

## Plaintiffs' Proposed Instruction No. 47

## Pass Through Of No Concern

Under antitrust law, only the entity that purchased products directly from a liable defendant may collect damages. That direct purchaser plaintiff is entitled to recover the full amount of the overcharge as damages, without regard to whether some portion of the overcharge was passed on to any downstream customers. As a result, you are not to be concerned whether any of an overcharge was passed on to other businesses or individuals.

It is for this reason that there has been no evidence in this trial about whether any overcharge was passed on from Plaintiffs to others – that question is irrelevant under the law. Because there has been no evidence of pass through, and because you are to decide this case solely based on the evidence, you should not consider the issue in your deliberations.

Source: Instruction derived from ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction No. B-1 (explanatory note); *Paper Systems v. Nippon Paper Indus. Co.*, 281 F.3d 629, 632-34 (7th Cir. 2002) (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)).

## Plaintiffs' Proposed Instruction No. 48

## Basis for Calculating Damages

You are permitted to make just and reasonable estimates in calculating pPlaintiff's' damages. You are not required to calculate damages with mathematical certainty or precision. However, the amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates. Damages may not be based on guesswork or speculation. Plaintiffs must prove the reasonableness of each of the assumptions upon which the damages calculation is based.

If you find that pPlaintiffs hashave provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

If you find that pPlaintiffs hashave failed to carry itstheir burden of providing a reasonable basis for determining damages, then you may not award damages [*or you may award nominal damages, not to exceed one dollar*].

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction No. B-3 (modified).

**Plaintiffs' Proposed Instruction No. 49**

**Joint and Several Liability**

Each participant in a conspiracy that violates t antitrust laws is jointly and severally liable for all of the damages resulting from the conspiracy. This means that each conspirator is fully liable for all of the damages caused by the conspiracy and not solely for damages caused by ~~an~~that individual conspirator. One who knowingly joins an ongoing conspiracy is liable for the previous acts of the other conspirators in furtherance of the conspiracy.

Plainitff[s] [is] [are] entitled to recover from the Defendant[s] all damages caused by any member of the conspiracy.

*[Insert the following where plaintiff is a purchaser claiming injury from an alleged overcharge: Thus,* ~~d~~Defendants are therefore liable for overcharges on all purchases of ~~[the~~ egg products~~s]~~ by ~~p~~Plaintiffs from <u>any</u> members of the conspiracy, <u>including co-conspirators,</u> and not merely <u>for overcharges</u> on purchases from ~~d~~Defendants.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction No. B-17 (modified); *Paper Systems v. Nippon Paper Indus. Co.*, 281 F.3d 629, 632-34 (7th Cir. 2002) (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)).

### Plaintiffs' Proposed Instruction No. 50

### Multiple Plaintiffs

If you award damages, you will be asked what sum of money would fairly and reasonably compensate each ~~p~~Plaintiff. If you find that more than one ~~p~~Plaintiff is entitled to recover damages, exercise caution to be sure that each ~~p~~Plaintiff is awarded damages only for its own injuries.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction No. B-15 (modified).