UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KRAFT FOODS GLOBAL, INC., THE KELLOGG COMPANY, GENERAL MILLS, INC., and NESTLÉ USA, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:11-cv-08808 |
| v. | ) | Judge Steven C. Seeger |
| UNITED EGG PRODUCERS, INC., UNITED STATES EGG MARKETERS, INC., CAL-MAINE FOODS, INC., and ROSE ACRE FARMS, INC. | ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' OBJECTIONS TO
PLAINTIFFS' PROPOSED JURY INSTRUCTIONS[1]**

Unsatisfied with how this play ended the first two times, Plaintiffs are trying to re-write the script, and in doing so are ignoring the settled law of the case and contradicting their previous litigation positions. The vast majority of Plaintiffs' Proposed Jury Instructions Nos. 12–33 attempt to re-litigate issues long ago settled and decided, specifically (1) the appropriate characterization of the conspiracy that Plaintiffs are prosecuting, and (2) whether this case is to be judged under the standard rule of reason analysis or the stricter *per se* rule. Because an understanding of the rulings by the Eastern District of Pennsylvania and the Third Circuit Court of Appeals, as well as the context in which they were made, is critical to Defendants' objections, Defendants respectfully recount the history of these decisions before proceeding to the objections.

---

[1] Plaintiffs' Introduction to their Objections is a response to Defendants' Introduction. Rather than seek leave to file a reply now, Defendants anticipate they will have an opportunity to address the statements of fact and law in Plaintiffs' Introduction that Defendants believe are incorrect before ruling on jury instructions.

1

## BACKGROUND

I.    **PLAINTIFFS' CHARACTERIZATION OF THE ALLEGED CONSPIRACY**

A.    **Plaintiffs Repeatedly Described the Alleged Conspiracy as a Single Conspiracy With Three Components**

For more than a decade, all of the plaintiffs in this MDL have alleged that Cal-Maine Foods, Inc. ("Cal-Maine"), and Rose Acre Farms, Inc. ("Rose Acre"), engaged in a conspiracy with other egg producers and two egg farmer cooperatives, United Egg Producers ("UEP) and United States Egg Marketers ("USEM"), to reduce the American egg supply. Plaintiffs alleged a single conspiracy comprising (1) an animal welfare program sponsored by UEP called the "Certified Program," (2) USEM-coordinated egg exports; and (3) short-term supply measures recommended by UEP. Plaintiffs repeatedly assured Defendants and the courts that the conspiracy they sought to prove consisted of all three components. Plaintiffs also relied on the alleged three-part conspiracy in numerous filings, including their successful motion to dismiss Defendants' state-law counterclaims, *Santiago* proffer, and opposition to motions in limine.

1.    **Plaintiffs Pleaded A Three-Part Conspiracy Three Times**

From the very beginning of this case, Plaintiffs have alleged an overarching conspiracy to reduce the supply of eggs, which consisted of (1) the UEP Certified Program; (2) coordinated USEM exports; and (3) short-term supply measures. In Plaintiffs' Second Amended Complaint, for example, Plaintiffs made clear that the alleged conspiracy consisted of all three activities:

> 119.    Beginning in at least 1999 and continuing at least through 2008, Defendants agreed to control supply and artificially maintain and increase the price of eggs, and in furtherance of this conspiracy, agreed to and did (1) use UEP Certified Guidelines as a pretext to reduce and control chick hatch and the size of laying hen flocks and egg supply; (2) engage in coordinated, largescale exports to reduce supply and maintain and increase prices; (3) adopt a series of short-term measures with the purpose and effect to reduce supply.

Plaintiffs' Second Amended Complaint, *Kraft Foods Global, Inc., et al. v. United Egg Producers, Inc., et al.*, Case No. 2:12-cv-00088, ECF No. 25, ¶ 119 (E.D. Pa. March 6, 2013); These same allegations were contained in Plaintiffs' original and then First Amended Complaints. *See* Complaint, *Kraft Foods Global, Inc., et al. v. United Egg Producers, Inc., et al.*, Case No. 1:11-cv-08808, ECF No. 1, ¶¶ 7 & 120 (N.D. Ill. Dec. 12, 2011); First Amended Complaint, *Kraft Foods Global, Inc., et al. v. United Egg Producers, Inc., et al.*, Case No. 2:12-cv-00088, ECF No. 4, ¶¶ 7 & 119 (E.D. Pa. March 6, 2013).

After their initial description of the alleged conspiracy, Plaintiffs in each complaint go on to describe in detail the components of the alleged conspiracy, which include several short-term recommendations made by UEP, various aspects of the Certified Program and exports. Specifically, Plaintiffs alleged:

> 7.  During the relevant conspiracy period, Defendants unlawfully agreed to and did implement their conspiracy to control supply and artificially maintain and increase the price of eggs through a series of collective actions, including short-term measures, the UEP Certified Guidelines, and coordinated, large-scale exports.
>
> A. In 1999 and 2000, as a short-term measure to control supply, Defendants established a supply adjustment program under which Defendants agreed to engage in an immediate 5% flock molt, a 5% reduction of flock inventory in the next 6 to 12 months, and the development of a hatch reduction program. Around the same time, USEM members voted to pursue development of a chick hatch reduction program.
>
> B. In 2001, as a short-term measure to control supply, Defendants agreed to a 5% emergency flock reduction.
>
> C. In 2002, as a short-term measure to control supply, Defendants agreed to an early molt and hen disposal plan.
>
> D. By at least 2002, Defendants, using "animal welfare" as a pretext, and after having succeeded to a certain extent in controlling supply through short-term measures, adopted a program of guidelines to control the supply of eggs, the "UEP Certified Guidelines." Defendants realized that the UEP Certified Guidelines were a more reliable, long-term way to control supply and artificially maintain and increase the prices of eggs. The UEP Certified Guidelines required Defendants to increase the cage space for each laying hen (e.g., from 53 square inches to 67 square inches per hen). Defendants agreed

that this minimum floor space allowance would be achieved in part through a chick hatch reduction, which had the effect of limiting a producer's supply. Further, Defendants adopted this minimum floor space allowance with the understanding that hens displaced by lower density cages would not be replaced by building new facilities. The UEP Certified Guidelines had a direct and substantial impact on egg prices. Noting that 2003 had been "the best year on record for egg producers," an internal March 4, 2004 UEP newsletter explained that "[t]he supply side was held in check with the implementation of the animal welfare guidelines."

E. Throughout the conspiracy, as part of the UEP Certified Guidelines to control the supply of eggs, Defendants imposed a series of monthly and other reporting requirements as well as annual or other periodic audits to enforce the conspiratorial agreements and to provide a means to monitor for and detect cheating. As part of the UEP Certified reporting requirements, members had to submit periodic reports of all "shells eggs and or egg products [that] were sold as UEP Certified eggs" as well as shell eggs and egg products purchased from other UEP Certified companies.

F. On October 11–12, 2002 at UEP's Annual Board Meeting (which, like virtually all UEP board and committee meetings, was open only to UEP members and invited guests), as part of the UEP Certified Guidelines to control the supply of eggs, Defendants adopted a rule that required each participant to produce all of its eggs in compliance with the Guidelines, including eggs that Defendants purchased for resale. This was referred to as the "100% Rule." Defendants used this 100% Rule to extend the supply control requirements of the UEP Certified Guidelines to non-member producers. At this meeting, two producers moved "[t]o reconfirm . . . that a company must commit to implementing the welfare guidelines on 100% of all production facilities regardless of how or where eggs may be marketed. The 100% commitment is intended to be inclusive of all company entities, affiliates, etc." The motion carried by a vote of 19 yes and 1 no.

G. In mid-2004, as a short-term measure to control supply, Defendants agreed to an early molt and flock disposal plan.

H. In or about October 2004, as a short-term measure to control supply, Defendants privately agreed to "establish a plan calling for hens currently scheduled for disposal between December 1, 2004 and July 1, 2005 be disposed of 4 weeks early or reduce your flock size by 5%."

I. As part of a November 2004 Egg Industry Economic Summit, as a short-term measure to control supply, Defendants agreed to an "intentions program." Under the "intentions program," Defendants agreed to either "[1] To dispose of hens that are currently scheduled for disposal between January 1 and April 30, 2005 four (4) weeks earlier than previously scheduled[; or 2] To reduce their December 1, 2004 flock size by 5% between the dates of January 1 through April 30, 2005."

4

J. In December 2004, as part of the UEP Certified Guidelines to control the supply of eggs, Defendants privately adopted a rule that prohibited "backfilling," i.e., the practice of replacing older hens that died to maintain overall flock size. Defendants adopted this backfilling ban after UEP's economics consultant concluded that backfilling "could have disastrous effects" on egg prices and, as reported in an August 12, 2004 UEP internal newsletter, the backfilling practices had caused "poor egg prices."

K. During a January 25, 2005 UEP Board of Directors meeting in Atlanta, Georgia, as a short-term measure to control supply, the Defendants expanded the "intentions programs" and agreed that "flocks [were] to be disposed of 4 weeks earlier than previously scheduled and/or flock size reduction by 5% be extended through Labor Day."

L. Beginning at least as early as August 2002 and continuing through at least March 2008, Defendants engaged in coordinated, large-scale exports to control the supply of eggs. In a private document, UEP acknowledged that "exports [we]re only taken in large volume shipments over a very short delivery period for the purpose of having the greatest impact upon surplus supply reduction." Defendants often exported eggs at a loss, and agreed to reimburse each other for related losses. These coordinated exports had a direct and substantial impact on domestic egg prices.

Second Amended Complaint, ECF No. 25, ¶7A-L.

### 2. Plaintiffs Defeated Cal-Maine's and Rose Acre's Counterclaims Based on Their Assertion to Judge Pratter that the Conspiracy Included Three Component Parts.

Cal-Maine and Rose Acre filed counterclaims against certain Direct Action Plaintiffs,[2] including Kraft, for fraud, promissory estoppel, abuse of process, and extortion/attempted extortion. The basis of the counterclaims was the contradiction between Plaintiffs' expressed support for the Certified Program and demand for Certified eggs, on the one hand, and their allegation that "the Certified Program is a 'supply suppression' scheme constituting a per se violation of the antitrust laws that must be halted," on the other. Cal-Maine Foods, Inc.'s and

---

[2] When the District Court in the Eastern District of Pennsylvania originally organized all of the plaintiffs in the MDL, it did so into three groups – Direct Purchaser Plaintiffs ("DPPs"), Indirect Purchaser Plaintiffs, and Direct Action Plaintiffs ("DAPs"), which were companies that opted out of the DPP class and included all of the supermarket retailer plaintiffs as well as the four plaintiffs here. Plaintiffs here remained part of the DAP group until all summary judgment motions were resolved. To avoid confusion, any reference to "DAPs" refers to times when the Plaintiffs here were still part of that group. When referring to just the supermarket DAPs, we specify as such and when referring to just the Plaintiffs here, we simply refer to them as Plaintiffs.

Rose Acre Farms, Inc.'s Countercl. Against Certain DAPs at 3, No. 08-md-2002, Feb. 4, 2014, ECF No. 896.  Either Plaintiffs had defrauded Defendants into adopting a Certified Program that Plaintiffs considered unlawful, or they were "attempt[ing] to extort money from their egg suppliers" for a program they actually believe is lawful.  *Id.*

Plaintiffs moved to dismiss the counterclaims, arguing that "no DAP" had actually pleaded the Certified Program was "illegal."  DAPs' Rule 12(b)(6) Mot. to Dismiss Defs. Cal-Maine, Rose Acre & Sparboe's State-Law Countercls. at 2, No. 08-md-2002, Mar. 11, 2014, ECF No. 916.  Instead, Plaintiffs asserted that "Defendants undertook a coordinated effort to restrict egg supply through various means," including the UEP's supply management recommendations and USEM's egg exports.  *Id.* at 3.  According to Plaintiffs, "the core of Plaintiffs' antitrust claims is . . . a multifaceted supply-restriction conspiracy" that "involved much more than the supply limitations resulting from the Certified Program itself, such as the various supply reduction initiatives orchestrated through UEP and the USEM exports."  Reply in Supp. of DAPs'. Mot. to Dismiss Cal-Maine and Rose Acre's State-Law Countercls. at 10, No. 08-md-2002, Apr. 16, 2014, ECF No. 947.

Relying on Plaintiffs' description of the alleged conspiracy, Judge Pratter dismissed the counterclaims.  *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2014 U.S. Dist. LEXIS 78616 (E.D. Pa. June 10, 2014).  Judge Pratter agreed that Plaintiffs alleged the "use of the UEP Certified Program, *among and along with other agreed-upon activities*, to support or control supply."  *Id.* at *6 (emphasis in original).  Judge Pratter granted Plaintiffs' motion to dismiss because Plaintiffs were not "contending that the UEP Certified Program, standing *alone*, violates antitrust law."  *Id.* at *9 (emphasis in original).

### 3. Plaintiffs Relied on Their Allegation of a Single Conspiracy with Multiple Components at Summary Judgment

In a motion for summary judgment filed against the DAPs, certain Defendants sought a ruling that the rule of reason applied to the Certified Program. Defendants argued that Plaintiffs had only brought a *per se* case, and because the Certified Program should be judged under the rule of reason, the case must be dismissed. Defendants did not seek a ruling on the mode of analysis applicable to the UEP short-term supply recommendations or USEM egg exports. *See In re Processed Egg Prods. Antitrust Litig.*, 206 F. Supp. 3d 1033, 1040 n.2 (E.D. Pa. Sept. 9, 2016).

In opposing that motion, Plaintiffs (including Kraft, Kellogg's, General Mills and Nestle) confirmed that they alleged a single "overarching conspiracy" to restrict the supply of eggs. DAPs' Mem. in Opp'n to Defs'. Motion for Summ. J. at 2, No. 08-md-2002, Aug. 13, 2015, ECF No. 1272. "In furtherance of their overarching conspiracy," Plaintiffs said, "Defendants implemented numerous collective actions to reduce the supply of eggs," including the UEP Certified Program, UEP's "additional supply-reduction measures," and USEM's "coordinated export program." *Id*. at 2-3.

Plaintiffs criticized Defendants' argument that the district court should examine the Certified Program "separately from the other components of Defendants' conspiracy." *Id*. at 36. More specifically, Plaintiffs argued that the Certified Program was "inextricably intertwined" with the overall conspiracy. *Id*. at 38. Plaintiffs, therefore, urged Judge Pratter to reject "Defendants' fragmentation of the conspiracy." *Id*. at 37. Plaintiffs further argued that their claims were also being brought under the rule of reason and therefore even a ruling that the Certified Program should be judged by that standard would not warrant dismissal. *Id*. at 69-74.

In September 2016, Judge Pratter held that "the UEP Certified Program must be evaluated under the rule of reason." *In re Processed Egg Prods. Antitrust Litig.*, 206 F. Supp. 3d at 1036. The court did not address the USEM export program and UEP supply reduction recommendations because it had "not been asked to determine what standard applies to these components of the conspiracy." *Id*. at 1040, n.2. The district court also ruled that Plaintiffs "have not waived or disclaimed proceeding in this matter under a rule of reason"; accordingly, Judge Pratter did "not dismiss the plaintiffs' claims regarding the UEP Certified Program." *Id*. at 1053. Plaintiffs did not seek reconsideration or interlocutory appeal of that ruling.

### 4. Plaintiffs Described the Alleged Conspiracy to the Third Circuit as a Single Conspiracy with Three Components Parts

In its appeal to the Third Circuit of Judge Pratter's separate summary judgment order dismissing all egg product claims, Plaintiffs again described the conspiracy they alleged as a single conspiracy with three component parts. In appealing Judge Pratter's dismissal of all of their claims, Plaintiffs described the alleged conspiracy to the Third Circuit as follows:

> The Kraft Plaintiffs contend that the conspiracy reduced egg production below the competitive level primarily through the "UEP Certified Program," a program coordinated by the defendants through the United Egg Producers ("UEP") trade association. JA247-255 (Kraft SAC). The Kraft Plaintiffs also allege that the defendants reduced the egg supply through uneconomic exports and short-term measures designed to lower production, such as reducing the "chick hatch" to lower the number of layer hens producing eggs and engaging in "early molting" to take hens out of production prematurely. JA255-262 (Kraft SAC). Simply put, defendants conspired to raise shell egg and egg products prices by reducing the number of laying hens, thereby reducing the egg supply and, given the inelasticity of demand, increasing shell-egg and egg-products market prices. JA262-265 (Kraft SAC).

Plaintiffs' Opening Brief at 8, No. 16-3795, Mar. 7, 2017. And after remand, in opposing Defendants' renewed motion for summary judgment, Plaintiffs continued to describe the alleged conspiracy as one to "manage the egg supply" by engaging in the UEP Certified Program, exports, and recommendations concerning molting, slaughtering and chick hatch. DAPs' Mem.

In Opp. To Defs' Motion for Summ. J. On All Claims Based On Purchases Of Egg Products at 5-7, No. 08-md-2002, Sept. 21, 2018, ECF No. 1817.

5. **Plaintiffs Seek to Admit Evidence at This Trial Based on Their Allegation of a Single Conspiracy with Three Components**

Before this Court, Plaintiffs made a *Santiago* proffer to allow admission at trial of statements made by alleged co-conspirators. In doing so, consistent with their previous characterizations of the conspiracy, Plaintiffs described the alleged conspiracy in as broad terms as possible to maximize their chances of success:

> Beginning in 1998, Defendants and their co-conspirators hatched a conspiracy to restrict the national egg supply and raise prices of shell eggs and egg products. *The conspiracy had four main initiatives*: (1) the early slaughter and molting (through starvation) of hens, both short-term measures to reduce egg production temporarily; (2) overseas egg exports at a loss to restrict domestic supply; (3) the creation of industry rules to decrease hen cage density to restrict the number of egg-laying hens per facility; *__and__* (4) the banning of "backfilling"—the replacement of dead hens—to further restrict the number of egg-laying hens per facility.

Pls'. Santiago Proffer at 1–2, ECF No. 164 (emphasis added). Similarly, in opposing Defendants' Motion *In Limine* to Preclude Evidence Regarding Egg Exports, Plaintiffs explained that the exports were simply "one of the measures adopted as part of Defendants' conspiracy to restrict supply." Pls'. Mem. In Opp'n To Defs'. Motion In Limine To Preclude Evid. Regarding Egg Exports at 1, ECF No. 207. Plaintiffs explained that "Beginning in 1998, Defendants and their co-conspirators hatched a conspiracy to restrict the national egg supply and raise prices of shell eggs and egg products. One measure adopted by the conspiracy was to export eggs overseas at a loss to restrict domestic supply and thereby increase the domestic price of eggs." *Id.* at 2.

**B.    The Third Circuit Held the Supermarket DAPs to the case they "chose to make"**

In 2019, the supermarket DAPs went to trial.  Like Plaintiffs here, the supermarket DAPs attempted to re-characterize their conspiracy as including "*one or more*" of the alleged restraints, but objected to the jury's having to find that all three restraints were part of the same, *single* conspiracy.  DAPs' Proposed Instructions for the Liability Phase at 31, 34, 43, No. 08-md-2002, Oct. 17, 2019, ECF No. 2015.  Judge Pratter rejected the attempt.  Importantly, Judge Pratter distinguished between *what* the conspiracy is and *how* one joins it.  In terms of defining the conspiracy at issue, Judge Pratter instructed the jury:

> Under the Sherman Act, a restraint of trade is illegal only if it is found to be unreasonable. Therefore, you must determine, first, whether there was a contract, agreement, combination, or conspiracy that restrained trade; and if so, second, whether the restraints challenged here—that is, A, the UEP recommended short-term measures; B, the UEP Certified Program as challenged; and C, the USEM export program—are together unreasonable. These three alleged restraints must all be part of a single conspiracy, as opposed to, for example, three different conspiracies that were independent of each other.

DAP Jury Instruction No. 16, Tr. 248:16-249:1.  And therefore Question 1 of the verdict form asked:  "Do you unanimously find, by a preponderance of the evidence, that there was a conspiracy to reduce the supply of eggs comprised of (1) recommended short-term supply measures, (2) the United Egg Producers (UEP) Certified Program as challenged, and (3) United States Egg Marketers (USEM) exports?"  DAP Verdict Form, No. 08-md-2002, ECF No. 2089.

But in terms of *joining* the conspiracy, Judge Pratter instructed the jury that:

> It's also not necessary that all of the means or methods claimed by the Plaintiffs were agreed upon by each individual Defendant to carry out the alleged conspiracy, nor that all the means or methods that were agreed upon were actually used or put into operation. . . . It is the agreement or the understanding to restrain trade by limiting egg supply that can constitute a conspiracy. Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed.

DAP Trial Instruction 17, Tr. 252:3-12.[3]  The jury found that no conspiracy to reduce supply existed.  DAP Jury Verdict, ECF No. 2089.

The supermarket DAPs appealed, arguing that Judge Pratter should have never required them to prove a conspiracy that involved all three components.  They argued that Judge Pratter should have permitted the jury to find a narrower conspiracy that included only one or two components, even though the conspiracy DAPs were prosecuting involved all three.  On appeal, the Third Circuit affirmed the jury verdict, explaining:

> While Instruction No. 16 and Question 1 both used the conjunctive "and," the District Court repeatedly used disjunctive language when instructing the jury on the means or methods used to carry out the conspiracy.

*In re Processed Egg Prods. Antitrust Litig.*, 850 Fed. App'x. 142, 146 (3d Cir. 2021).

Referencing Instruction 17, the court stated:

> No ambiguity here, and the Appellants did not need to prove the Appellees used all three mechanisms to prove an illegal conspiracy. . . . Taken together, the full jury instructions allow one construction that does not inject an overt-act requirement into Section 1. ***It is, in short, simply the case the Direct Action Plaintiffs chose to make.***

*Id*. (emphasis added).

## II.    APPLICATION OF THE RULE OF REASON

In 2018, the DPP class was the first group of plaintiffs to go to trial.  Before trial, they sought to "confirm" application of the *per se* rule at trial on the grounds that the summary judgment motion that resulted in the rule of reason ruling had not been directed against them.  DPP's Motion for Confirmation of Application of Per Se Rule, No. 08-md-2002, Jan. 8, 2018, ECF No. 1574.  Judge Pratter confirmed her prior summary judgment ruling that the Certified

---

[3] This language came directly from the American Bar Association's model antitrust jury instructions.  *See* Model Jury Instructions in Civil Antitrust Cases, Ch. 2, Section A, Instruction 1, at 14 (Am. Bar Ass'n. 2016).

Program would be assessed under the rule of reason: "Given that the Court has already determined that the rule of reason applies to this Certified Program, *In re Processed Egg Products Antitrust Litig.*, 206 F. Supp. 3d 1033 (E.D. Pa. 2016), the Court declines to deviate from that ruling and denies the motion to 'confirm.'" *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2018 U.S. Dist. LEXIS 21445, at *1 (E.D. Pa. Feb. 9, 2018). Judge Pratter invited the parties to brief the issues as to the other components of the alleged conspiracy if they so desired. *Id*. at *8, n.3. That never happened.

The DPP trial jury found that a conspiracy to reduce supply existed, but that the conduct was reasonable. DPP Verdict, No. 08-md-2002, June 15, 2018, ECF No. 1763. Judge Pratter duly entered judgment in favor of the defendants. *See* DPP Judgment, No. 08-md-2002, June 19, 2018, ECF No. 1767. DPPs sought to alter the judgment, arguing that a finding of a conspiracy mandated *per se* treatment. DPPs' Motion to Alter J., No. 08-md-2002, July 12, 2018, ECF No. 1788. Judge Pratter denied that motion, noting that the antitrust standard to be applied to the conduct at issue is a matter of law for the court, not a matter of fact for the jury. *In re Processed Egg Prods. Antitrust Litig.*, 2018 U.S. Dist. LEXIS 210905, *12 (E.D. Pa., Dec. 13, 2018).

On appeal, the Third Circuit affirmed Judge Pratter across the board, upholding application of the rule of reason to the identical conduct involved in this litigation. The Third Circuit held that Judge Pratter properly looked behind DPPs' characterization of "a horizontal conspiracy to reduce supply" to determine whether the underlying evidence regarding the allegedly unlawful conduct dictated that the *per se* rule should apply. *In re Processed Egg Prod. Antitrust Litig.*, 962 F.3d 719, 729 (3d Cir. 2020) ("[T]he plaintiffs' choice of labels does not dictate the mode for assessing allegations and evidence."). As the Third Circuit explained, just

because plaintiffs "are masters of their complaint," that does not mean that "they are also masters of the District Court in deciding the analytical approach to be taken in the case." *Id*. at 726.

The Third Circuit went on to explain why the Certified Program must be judged by the default Rule of Reason standard. It first noted that the Certified Program "was not an express agreement to reduce the supply of eggs." *Id*. at 728. It went on to explain that the "Program did not limit the number of hens or structures a producer could have, so producers could increase the number of hen houses and add more hens." *Id*. Additionally, "[a]lthough the plaintiffs assert that the egg supply would have increased even more if not for the Certification Program, the economic impact of the actions at issue cannot be predicted with a high degree of certainty, which is a prerequisite for application of the *per se* standard." *Id*. at 729. As for the fact that the DPPs claimed that the conspiracy was to reduce the supply of eggs, the Third Circuit reiterated that "the plaintiffs' choice of labels does not dictate the mode for assessing allegations and evidence." *Id*.

In the second trial, the supermarket DAPs tried a new approach, seeking *per se* treatment, *or in the alternative*, requesting that Judge Pratter allow the jury the option of deciding whether the conspiracy is a *per se* conspiracy or a rule of reason conspiracy, just as Plaintiffs here are doing. DAPs' Mem. Of Law In Support Of Giving A Per Se Instruction To The Jury, 08-md-2002, Sept 27, 2019, ECF No. 1991. Judge Pratter refused to change her prior decision and applied the rule of reason. DAP Trial Transcript, 08-md-2002, Dec. 6, 2019, ECF No. 2121, 125:3–10.

On appeal, the Third Circuit affirmed stating:

Setting aside the fact that the jury said there was no conspiracy at all, our opinion in *Processed Egg Products I* already answered the objection raised by the Appellants here. There, we explained the rule of reason applied because the UEP

Certified Program had pro-competitive benefits and "was not an express agreement to reduce the supply of eggs, much less to fix prices." *Id.* at 728.

The same is true here. Appellants argue for a different outcome because their request more closely followed the Supreme Court's language in *United States v. Socony-Vacuum* Oil Co., 310 U.S. 150, 60 S. Ct. 811, 84 L. Ed. 1129 (1940). But "the test for determining what constitutes *per se* unlawful price-fixing is one of substance, not semantics." *United States v. Brown Univ.*, 5 F.3d 658, 670 (3d Cir. 1993). And the *per se* rule is "appropriate only after courts have had considerable experience with the type of restraint at issue, and only if courts can predict with confidence that it would be invalidated in all or almost all instances under the rule of reason." *Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877, 886-87, 127 S. Ct. 2705, 168 L. Ed. 2d 623 (2007) (citations omitted).

We have already evaluated the substance of the UEP Certified Program and concluded that it does not fall into the narrow subset of "manifestly anticompetitive" restraints. *Id.* at 886 (quoting *Continental T.V. v. GTE Sylvania, Inc.*, 433 U.S. 36, 50, 97 S. Ct. 2549, 53 L. Ed. 2d 568 (1977)). Because there is no distinction between the restraints at issue in *Processed Egg Products I* and those here, the District Court did not err by using the rule of reason.

850 Fed. Appx. 142, 147 (3d Cir. 2021).

## INTRODUCTION TO OBJECTIONS

Just like the DPPs and the supermarket DAPs before them, Plaintiffs now want this Court, through jury instructions, to reconsider and reverse the reasoned decisions of Judge Pratter and the Third Circuit. First, Plaintiffs seek application of the *per se* rule to all of the conduct at issue here, or alternatively, to allow the jury to determine whether the *per se* rule applies. *See* Plaintiffs' Proposed Jury Instructions Nos. 12–32. Second, Plaintiffs want to allow the jury to find a conspiracy that includes fewer than all three challenged activities. *See* Plaintiffs' Proposed Jury Instructions Nos. 13, 20, 22, and 33.

Putting aside for a moment the lack of substantive merit to Plaintiffs' positions, the previous decisions on the application of the rule of reason are the law of the case. Plaintiffs present no new information or intervening appellate decision that would warrant second-guessing those rulings. Additionally, it would be manifestly unjust to allow these Plaintiffs to

benefit pretrial from characterizing their conspiracy as a single conspiracy comprising three restraints, and then not to require them to bear the weight (and consequences) at trial of their earlier decisions.

## I. THE RULE OF REASON IS THE LAW OF THE CASE

Judge Pratter determined years ago – at summary judgment involving these very Plaintiffs – that the Rule of Reason applies to the UEP Certified Program, rejecting these same Plaintiffs' arguments for applying the *per se* rule. *In re Processed Egg Prods. Antitrust Litig.*, 206 F. Supp. 3d at 1047. In later rejecting the DPP's attempt to "confirm" that the *per se* rule governed their case, the Judge Pratter re-affirmed that the Certified Program is subject to the Rule of Reason, *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2018 U.S. Dist. LEXIS 21445, at *8–9 (E.D. Pa. Feb. 9, 2018), and the Third Circuit upheld the decision to apply the Rule of Reason twice, *In re Processed Egg Prods. Antitrust Litig.*, 850 F. App'x 142, 147 (3d Cir. 2021); *In re Processed Egg Prods. Antitrust Litig.*, 962 F.3d 719, 728 (3d Cir. 2020). Despite those decisions and with neither a change in law nor facts, these Plaintiffs take a fifth bite at the proverbial apple and now ask this Court to apply the *per se* rule to the conspiracy alleged in this case, including the UEP Certified Program. *See* Plaintiffs' Proposed Jury Instructions Nos. 12–19. In the alternative, Plaintiffs seek to have the jury determine whether the *per se* rule applies. *See* Plaintiffs' Proposed Jury Instructions Nos. 20–32. The law of the case doctrine precludes Plaintiffs' attempt to re-litigate what has already been decided by the MDL court and affirmed by the Third Circuit.

The law of the case doctrine generally prohibits reconsideration of previously decided issues in the same case. *United States v. Harris*, 531 F.3d 507, 513 (7th Cir. 2008) ("Under the law of the case doctrine, a court generally should not reopen issues decided in earlier stages of the same litigation."); *Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 902 (7th Cir. 2010)

("[L]aw-of-the-case principles are applicable when a case is transferred to a new judge midway through litigation; in general, the successor judge is discouraged from reconsidering the decisions of the transferor judge."). Decisions by transferring MDL judges are considered the law of the case: "once a court, including a coordinate court, has reached a decision, that decision should govern in subsequent stages in the litigation." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, No. 920-C-7768, 1998 U.S. Dist. LEXIS 18122, at *6 (N.D. Ill. Nov. 12, 1998) (finding that "law of the case rules regarding coordinate courts require me to uphold [the MDL judge's] decisions . . ."); *see also Rutz v. Novartis Pharm. Corp.*, No. 12-CV-0026-MJR, 2012 U.S. Dist. LEXIS 177779, at *14 (S.D. Ill. Dec. 17, 2012) (finding that the MDL court's determination of an issue at summary judgment was the "law of the case and continues to govern this issue in the current stage of the case.").

Although the law of the case doctrine is subject to the district court's exercise of its discretion, the Seventh Circuit has advised repeatedly that "because litigants have a right to expect consistency even if judges change, the second judge should 'abide by the rulings of the first judge unless some new development, such as a new appellate decision, convinces him that his predecessor's ruling was incorrect.'" *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012) (quoting *Fujisawa Pharm. Co. v. Kapoor*, 115 F.3d 1332, 1339 (7th Cir. 1997)); *see also Williams v. Comm'r.*, 1 F.3d 502, 503 (7th Cir. 1993) (the law of the case doctrine has "bite" in situations "when judges are changed in midstream" because "[l]itigants have a right to expect that a change in judges will not mean going back to square one."). A district court should not revisit a previous judge's decisions in the case "merely because he has a different view of the law or facts from the first judge," but may do so only "if new information convinces him that they are incorrect," *id.*, or if there is "an intervening change in the law, or some other special

16

circumstance . . . ," *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 796 (7th Cir. 2005). *See also Santamarina v. Sears*, 466 F.3d 570, 571–72 (7th Cir. 2006) (requiring "a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous."). The Seventh Circuit has further instructed district judges not to reconsider a previous ruling from a transferring judge unless "he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefitted from it." *Gilbert*, 591 F.3d at 902.

There have been no "new developments" since Judge Pratter's decisions that would justify re-litigating whether the *per se* rule applies to the conspiracy alleged in this case. Plaintiffs can cite no new appellate decision that would render incorrect Judge Pratter's determination that the rule of reason applies here. *See, e.g., Galvan*, 678 F.3d at 587 (the law of the case doctrine requires "some new development, such as a new appellate decision . . ." to reopen issues that have already been decided); *Sears, Roebuck & Co.*, 417 F.3d at 796 (courts may revisit an issue if there is "an intervening change in the law, or some other special circumstance . . ."). Nor have Plaintiffs brought new information or evidence to this Court's attention that would require a different outcome. *See Williams*, 1 F.3d at 503 (a district judge "may alter previous rulings if new information convinces him that they are incorrect, but he is not free to do so . . . merely because he has a different view of the law or facts from the first judge."). Absent new evidence or intervening law, Plaintiffs have no basis for challenging Judge Pratter's decisions on the rule of reason.

Not only is reconsideration of this issue unwarranted, it would unfairly prejudice Defendants, who have litigated and prepared extensively for a jury trial premised on the rule of reason. *See Gilbert*, 591 F.3d at 902. Indeed, in the many years following Judge Pratter's

rulings on this issue, Plaintiffs never asked this Court or the MDL court to reconsider the decision that the rule of reason applies to the conspiracy alleged here. Instead, just a few months before trial, Plaintiffs now propose jury instructions that presume that the issue remains undecided. *See* Plaintiffs' Proposed Jury Instructions Nos. 12–32. Because the Eastern District of Pennsylvania's decision is the law of the case, the Court should decline Plaintiffs' invitation to revisit the issue.

## II. PLAINTIFFS SHOULD BE ESTOPPED FROM RE-FRAMING THE ALLEGED CONSPIRACY THROUGH THEIR JURY INSTRUCTIONS

Plaintiffs' attempt to re-frame the entire conspiracy as an agreement to engage in "some or all of" the alleged restraints is wholly inconsistent with their pleadings and previous litigation positions. *See* Plaintiffs' Proposed Jury Instruction Nos. 13, 20, 22, and 33. Throughout this case, Plaintiffs have claimed consistently that there existed a single, overarching conspiracy to reduce the domestic supply of eggs that included all three of the following: (1) UEP's various short-term supply recommendations, (2) specific aspects of UEP's Certified Program, and (3) USEM's organized egg exports. They did so for a reason. If Plaintiffs could prove such a conspiracy, it would allow them to hold each Defendant liable for the effects of the entire conspiracy, even if a particular Defendant participated in only one or two of the conspiracy's three components. Articulating the conspiracy in this manner also allowed Plaintiffs to avoid standing trial for fraud and promissory estoppel and provided them with other strategic benefits. Now, Plaintiffs' tune has changed, and the Court should exercise judicial estoppel to prevent Plaintiffs from re-framing the alleged conspiracy through the jury instructions.

Judicial estoppel "is an equitable doctrine invoked by a court at its discretion" that "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532

18

U.S. 742, 749-50 (2001).  The doctrine "protects the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories."  *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 795 (7th Cir. 2013) (internal quotations omitted).  The application of judicial estoppel is "not reducible to any general formulation of principle," *New Hampshire*, 532 U.S. at 750, but courts consider three factors to guide the inquiry:

> (1) whether "a party's later position must be clearly inconsistent with its earlier position"; (2) whether "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled"; and (3) whether "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*Grochocinski*, 719 F.3d at 795 (quoting *New Hampshire*, 532 U.S. at 750-51).  All three factors are met here.

First, Plaintiffs' proposed instructions on the nature of the alleged conspiracy are fundamentally at odds with their earlier formulations of the conspiracy.  *See* Plaintiffs' Proposed Jury Instruction Nos. 13, 20, 22, and 33.  Their proposed jury instructions describe the conspiracy as an "agree[ment] to engage in some or all of" the alleged supply restraints, or merely, "the coconspirators engaged in some or all of the following overt acts" – a vast departure from their previous position that there was a single conspiracy to restrict egg supply comprising *three components*.  *See* Plaintiffs' Proposed Jury Instruction Nos. 13, 20, 22, and 33.  But now, facing the burden at trial of proving a single conspiracy comprising three sets of supply restraints, Plaintiffs seek to lower the bar by allowing the jury to consider multiple conspiracy options, in which Defendants agreed to implement "some or all" of the alleged supply restraints or where the supply restrictions are just "overt acts."  *Compare* Plaintiffs' Proposed Jury Instruction No. 13 ("Plaintiffs claim the conspirators engaged in some or all of the following

19

overt acts in furtherance of the conspiracy: (1) the early slaughter and early molting of hens to reduce the number of egg-laying hens; (2) the creation and enforcement of rules that restricted the number of egg-producing hens allowed in henhouses; (3) the banning of backfilling of egg-producing hens; or (4) the export of eggs to reduce the number of eggs available in the domestic market and therefore increase prices."); *and* Plaintiffs' Proposed Jury Instruction No. 33 ("Plaintiffs claim that each Defendant and its co-conspirators violated the Sherman Act by agreeing to actions that would limit or restrict the supply of eggs and egg products in the United States. Plaintiffs claim the conspirators agreed to engage in some or all of the following . . ."); *with* Pls'. Santiago Proffer at 1–2, ECF No. 164 ("Beginning in 1998, Defendants and their co-conspirators hatched a conspiracy to restrict the national egg supply and raise prices of shell eggs and egg products. *The conspiracy had four main initiatives*: (1) the early slaughter and molting (through starvation) of hens, both short-term measures to reduce egg production temporarily; (2) overseas egg exports at a loss to restrict domestic supply; (3) the creation of industry rules to decrease hen cage density to restrict the number of egg-laying hens per facility; ***and*** (4) the banning of "backfilling"—the replacement of dead hens—to further restrict the number of egg-laying hens per facility.") (emphasis added). The supermarket DAPs tried the exact same strategy, and Judge Pratter refused to allow them to alter the conspiracy they had been prosecuting for so many years. *Compare* DAPs' Proposed Instructions for the Liability Phase at 31, 34, 43, No. 08-md-2002, Oct. 17, 2019, ECF No. 2015; *with* DAP Jury Instruction No. 16, Tr. 248:16-249:1.

Second, Plaintiffs persuaded both this Court and Judge Pratter to accept their formulation of a single conspiracy with three components at critical stages of this case. Allowing Plaintiffs to retreat from their previous position through the jury instructions would create "the perception

that either the first or second court was misled." *See Grochocinski*, 719 F.3d at 795.  As

previously discussed, Plaintiffs clung to their previous formulation of the conspiracy when

seeking to dismiss Defendants' counterclaims, arguing that "the core of Plaintiffs' antitrust

claims is . . . a multifaceted supply-restriction conspiracy" that "involved much more than the

supply limitations resulting from the Certified Program itself, such as the various supply

reduction initiatives orchestrated through UEP and the USEM exports."  Reply in Supp. of

DAPs'. Mot. to Dismiss Cal-Maine and Rose Acre's State-Law Countercls. at 10, No. 08-md-

2002, Apr. 16, 2014, ECF No. 947.  In dismissing Defendants' counterclaims, the District Court

relied on Plaintiffs' description of the alleged conspiracy.  *In re Processed Egg Prods. Antitrust

Litig.*, 2014 U.S. Dist. LEXIS 78616.  The District Court agreed that Plaintiffs had alleged the

"use of the UEP Certified Program, *among and along with other agreed-upon activities*, to

support or control supply," explaining that Plaintiffs were not "contending that the UEP Certified

Program, standing *alone*, violates antitrust law."  *Id.* at *6, *9 (emphasis in original).

And Plaintiffs continue to press their single conspiracy formulation before this Court

when it suits them, such as in their *Santiago* proffer and in oppositions to motions in limine.

Pls'. Santiago Proffer 1–2, ECF No. 164; Pls'. Mem. In Opp'n To Defs'. Motion In Limine To

Preclude Evid. Regarding Egg Exports at 1, ECF No. 207.  *See als*o DAPs' Mem. in Opp'n to

Defs'. Motion for Summ. J. at 2–3, No. 08-md-2002, Aug. 13, 2015, ECF No. 1272.

Finally, allowing Plaintiffs to craft jury instructions that contradict their previous

characterization of the conspiracy would grant an unfair advantage to Plaintiffs, to the prejudice

of Defendants, in at least two ways.  First, Plaintiffs are not facing counterclaims in this trial

precisely because of how they articulated the alleged conspiracy.  Second, Plaintiffs are reducing

their burden of proof bar at trial, from proving a single conspiracy that includes all three

components to proving any agreement to implement *just one of the three* supply restraints. Plaintiffs should be compelled to prove at trial the same conspiracy that they argued and from which they benefitted at every other stage of this litigation.

**DEFENDANTS' SPECIFIC OBJECTIONS TO
PLAINTIFFS' PROPOSED INSTRUCTIONS**

**Instructions Before Introduction of Evidence**

**Plaintiffs' Proposed Instruction No. 1**

**Preliminary Statement of the Case**

Although you may have learned some of what I am about to tell you during jury selection, I am now going to give some background about this case.

This is a civil case. It is not a criminal case. You will not be deciding if anyone has committed a crime or may be sentenced to prison. The government is not a party to this case.

In this civil case, the parties are private entities. The party that brings a lawsuit is known as the Plaintiff. There are four Plaintiffs in this case. They are large food manufacturers that are probably familiar to you: General Mills, Kellogg, Kraft, and Nestlé. These four businesses are suing the Defendants.

The Defendants consists of two large egg-producing companies and two trade associations for egg producers. The companies are Cal-Maine and Rose Acre Farms. The trade associations are called the United Egg Producers and the United States Egg Marketers. Plaintiffs allege that the Defendants and others were members of a conspiracy, a term I will explain shortly.

Plaintiffs allege that Moark, Michael Foods, and Wabash Valley—other egg producers—joined the conspiracy. These alleged co-conspirators are not defendants in this trial. You should not concern yourself with why they, or anyone else you will hear about, are not defendants.

This is an "antitrust" case. In our country, laws exist to protect free and open competition among businesses. One of those laws is the Sherman Antitrust Act, which, among other things, prohibits businesses from entering into an agreement, known as a "conspiracy," to restrain trade.

This case is about eggs. Plaintiffs buy eggs – in the form of processed egg products that they use in manufacturing the foods that they sell. Egg products are eggs that have been cracked, the egg whites and yolks are then processed in various ways, and the product can then be used in large quantities in making food that are sold in grocery stores.

Plaintiffs claim that the Defendant and their co-conspirators violated the Sherman Act by agreeing to actions that would limit the supply of eggs available to be sold in the United States. They claim the Defendants and their co-conspirators

agreed to engage in anti-competitive activity to restrict the supply of eggs to raise prices from what they would have been in a free and open market. The Plaintiffs allege that they paid higher prices for egg products that they purchased from Defendants and their co-conspirators as a result of their alleged conduct.

The Plaintiffs allege that this conspiracy violated the antitrust laws. The Defendants deny Plaintiffs' allegations. They claim that there was no conspiracy and that their conduct did not violate the antitrust laws.

To succeed on their claim, the Plaintiffs must prove each of the following propositions by a preponderance of the evidence:

(1) defendants and their alleged co-conspirators were at relevant times competitors or potential competitors;

(2) defendants knowingly entered into an agreement to limit or restrict the production of eggs. To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason; and

(3) plaintiffs were injured in their business or property because of the agreement.

The relevant time period is 1999 to [2008] and, therefore, much of the evidence in this case concerns facts that occurred many years ago. The Plaintiffs filed their civil lawsuit in a timely fashion several years ago. It is through no fault of the parties that this case was brought to trial no earlier than now.

When I say a particular party must prove something by "a preponderance of the evidence," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

This instruction is intended to give you a brief overbview of what you will need to decide. I will provide further instructions on these requirements and others at the conclusion of this trial.

**Source(s):** Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.), Sample Preliminary Instruction at 412 (for form and structure). *See* Plaintiffs' Proposed Per Se Liability Instructions.

**Objection to Plaintiffs' Proposed Jury Instruction No. 1 – Preliminary Statement of the Case**

Defendants object to this Proposed Instruction as it mischaracterizes the facts and law of this case.  In particular, Defendants object to Plaintiffs' language to the extent that it applies the *per se* standard rather than a rule of reason standard.  Judge Pratter already ruled in the MDL case in an Order binding upon these Plaintiffs that the restraints that are part of the UEP Certified Program are to be analyzed under the rule of reason.  *See In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2018 U.S. Dist. LEXIS 21445, at *8–9 (E.D. Pa. Feb. 9, 2018) (citing *In re Processed Egg Prods. Antitrust Litig.*, 206 F. Supp. 3d 1033, 1047 (E.D. Pa. Sept. 8, 2016)).  Application of the rule of reason, rather than the *per se* standard, was affirmed twice by the Third Circuit.  *See In re Processed Egg Prods. Antitrust Litig.*, 850 F. App'x 142, 147 (3d Cir. 2021); *In re Processed Egg Prods. Antitrust Litig.*, 962 F.3d 719, 728 (3d Cir. 2020).  *See also* Introduction to Objections, Section I, *supra*, at 12–14.

Defendants also object to the Proposed Instruction because it is not neutral. For example, it characterizes Plaintiffs as "food manufacturers you that you are probably familiar with" while characterizing Defendants as "two large egg-producing companies." If the Court is inclined to provide a preliminary statement of the case twice (after already providing one to the venire), then Defendants submit that the same statement of the case the Court intends to use with the venire should be read here.

Furthermore, Defendants object to Plaintiffs' characterization that they "filed their civil lawsuit in a timely fashion several years ago." This statement is factually and legally inaccurate, as well as unnecessary.

**Plaintiffs' Proposed Instruction No. 2**

**Jurors Questioning Witnesses**

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

First, you must submit all questions in writing. Please don't ask any questions aloud.

Second, the court can't re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an opinion about the case or a witness. You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.

**Source:** Eleventh Circuit Pattern Jury Instructions, Civil Cases (2022 rev.), Instruction No. 1.4.

**<u>Alternate:</u>**

You may submit questions to witnesses to clarify their testimony during trial under certain conditions.

If you feel the answer to your question would be helpful in understanding this case, you should raise your hand after the lawyers have completed their examinations but before the witness is excused. I will have you write your question and hand it to the clerk. I will then privately confer with the lawyers about the question and make a ruling on whether the law allows the question to be asked of that witness. If the question is of the type that is allowed, I will address the question to the witness. Please do not directly speak to me, the lawyers, or the witnesses, but carefully follow this procedure if you wish to have a specific question addressed to a witness.]

**Source:** Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.), Sample Preliminary Instruction at 417 (alternate).

**Objection to Plaintiffs' Proposed Jury Instruction No. 2 – Jurors Questioning Witnesses**

Defendants object to this Proposed Instruction and the practice of allowing the jury to question witnesses. While not prohibited by the Seventh Circuit, courts have found that the practice has risks and, if allowed, "may lead [jurors] to take positions too early in the trial, emulating the advocates by choosing sides and becoming argumentative rather than reflective." *SEC v. Koenig*, 557 F.3d 736, 742 (7th Cir. 2009). If questioning were allowed, it would permit jurors to begin deliberations prematurely. While the Seventh Circuit has acknowledged some benefits in allowing questioning by jurors, the practice is subject to the discretion of the trial court. *E.g.*, *Raab v. Wendel*, No. 16-cv-1396, 2019 U.S. Dist. LEXIS 244061, at *14–15 (E.D. Wis. Nov. 14, 2019).

In the event the Court permits questioning by jurors, Defendants ask that the Court use the pattern instruction provided for in the Appendix to the Seventh Circuit's pattern instructions. The parties should be able to preview the questions outside the presence of the jury in order to make objections as needed, and for the Court to reframe as necessary.

## Instructions Upon the Admission of Certain Evidence

## Plaintiffs' Proposed Instruction No. 3

## Instruction Before Introduction of Prior Sworn Testimony

<u>You are about to receive evidence in the form of prior sworn testimony of a witness.</u> ~~A deposition is the sworn testimony of a witness taken before trial.~~ The witness <u>was</u> ~~is~~ placed under oath to tell the truth and lawyers for each party [against whom the testimony is now being offered] <u>were able to</u> ~~may~~ ask questions. The questions and answers <u>were</u> ~~are~~ recorded.

The <u>testimony</u> ~~deposition~~ of [Witness] <u>occured</u>~~, which was taken~~ on [Date]<u>.</u> ~~, is about to be presented to you.~~ <u>This</u> ~~Deposition~~ testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify <u>in this courtroom</u>.

[Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]

<u>Only certain portions of the testimony are being played back for you. As a result, you may notice some edits throughout the recording. Please ignore these edits, and do not speculate about testimony that is not being presented to you. [In addition, I have instructed the parties to play both the portions the plaintiffs and defendants want to show you at the same time.]</u>

**Source(s):** Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.), Instruction No. 2.08 (modified); *cf. United States v. Jordan*, 223 F.3d 676, 690 (7th Cir. 2000) ("Effectively combining multiple instructions into one instruction is an accepted practice.").

**Objection to Plaintiffs' Proposed Jury Instruction No. 3 – Instruction Before Introduction of Prior Sworn Testimony**

Defendants object to Plaintiffs' reworking of Pattern Instruction No. 2.08 to address both prior deposition testimony (as originally contemplated by the Pattern), as well prior sworn testimony given at the earlier DAP and DPP trials.

Prior sworn testimony should be treated differently than deposition designations because the prior sworn testimony that Plaintiffs are offering is only admissible against certain Defendants. As a result, the jury should receive a fulsome limiting instruction on the admissibility of this prior sworn testimony. Plaintiffs' rewriting of Pattern Instruction No. 2.08 does this in a confusing fashion. As a result, there should be two separate instructions on this issue.

**Instructions After Presentation Of The Evidence**

**General Instructions**

**Plaintiffs' Proposed Instruction No. 4**

**All Litigants Equal Before the Law**

    All parties are equal before the law. In this case <u>all</u> [one/some] of the [defendants/plaintiffs/parties] [is a/are] <u>business organizations</u> corporations.  <u>The parties in this case are</u> A corporation is entitled to the same fair consideration that you would give any individual person.

**Source(s):** Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.), Instruction No. 1.03.

**Objection to Plaintiffs' Proposed Jury Instruction No. 4 – All Litigants Equal Before the Law**

Plaintiffs have lumped all parties together by calling them "business organizations." This is not an accurate description of UEP and USEM, which are cooperatives. Defendants submit that the instruction should refer to "corporations and associations."

## Plaintiffs' Proposed Instruction No. 5

## Business Organizations

~~Under the law, a corporation is a person, but it~~ A business organization acts ~~only~~ through its agents. A business organization's ~~corporation's~~ agents include its directors, officers, employees, or others acting on its behalf. ~~A corporation is not capable under the law of conspiring with its own agents, unincorporated divisions, or wholly owned subsidiaries.~~ Through its agents, ~~however, a~~ business organization ~~corporation~~ is capable of conspiring with other outside persons or ~~independent corporations~~organizations.

A business organization ~~corporation~~ is legally bound by acts and statements of its agents or employees done or made within the scope of their  duties ~~or apparent authority~~. [¶] An ~~acts done~~ or statement is within the scope of the agent's duties ~~are acts~~ if it is performed or made on behalf of a business organization ~~corporation~~ and directly related to the performance of the duties the agent has general authority to perform. ~~Apparent authority is the authority that persons outside the corporation could reasonably believe the agent would have, judging from his or her position with the company, the responsibilities previously entrusted to the person or the office, and the circumstances surrounding his or her past conduct. An agent can have apparent authority even when, despite these appearances, the agent is actually acting in a dishonest, fraudulent, or anticompetitive manner.~~

~~To summarize, for a corporation to be legally responsible for the acts or statements of its agents, you must find that the agent was acting within the scope of his or her employment with apparent authority.~~

~~The fact that a corporation has instructed its agents not to violate the antitrust laws does not excuse the corporation from responsibility for the unlawful acts of its agents done within the scope of their employment or apparent authority.~~

A business organization ~~corporation~~ is entitled to the same fair trial ~~as a private individual. The acts of a corporation~~ and its acts are to be judged by the same standard as ~~the acts of~~ a private individual~~, and you~~. You may hold a business organization ~~corporation~~ liable only if such liability is established by the preponderance of the evidence. ~~All~~That is because all persons, including business organizations ~~corporations~~, are equal before the law.

**Source(s):** *In re Egg Prods. Antitrust Litig.*, No. 2:12-cv-08808-MDL-2002 (E.D. Pa. Dec. 10, 2019), Instruction No. 5; ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-3 (modified); *see also In re Korean Ramen Antitrust Litig.*, No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 14, 2018), Instruction No. 20; *Animal Sci. Prods., Inc. v. Chinook Grp., Ltd.*, No. 99-197 (TFH) (D.D.C. June 11, 2003), Instruction No. 26.

**Objection to Plaintiffs' Proposed Jury Instruction No. 5 – Business Organizations**

Defendants object to the removal of language stating a corporation is not capable of conspiring with its own agents as misleading and prejudicial to Defendants.

Defendants further object to the removal of the language regarding "apparent authority." The ABA Model Instructions, used as the source for Plaintiffs' Proposed Instruction, explain that a corporation is bound by the acts of its employees and agents if made within the scope of their employment or "apparent authority." Plaintiffs needlessly strike that portion of the Model Instruction, as well as the remainder of the Instruction that explains the concept of "apparent authority." Defendants believe such an instruction is appropriate in this case and would retain the Model Instruction's language.

**Plaintiffs' Proposed Instruction No. 6**

**Prior Sworn Testimony**

During the trial, certain ~~prior~~ testimony <u>that was given under oath</u> was presented to you<u>, such as</u> by [the <u>showing or</u> reading of ~~a deposition/depositions]~~ ~~[and video]~~ <u>prior sworn testimony</u>. You should give this testimony the same consideration you would give it had the witness~~[es]~~ appeared and testified here in court.

**Source(s):** Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.), Instruction No. 1.05 (paragraph 1) (modified to include reference to prior trial testimony); *cf. United States v. Jordan*, 223 F.3d 676, 690 (7th Cir. 2000) ("Effectively combining multiple instructions into one instruction is an accepted practice.").

35

**Objection to Plaintiffs' Proposed Jury Instruction No. 6 – Prior Sworn Testimony**

Consistent with Defendants' objection to Proposed Instruction No. 3 above regarding the introduction of prior sworn testimony, Defendants believe this instruction should make reference to depositions and prior sworn testimony. Plaintiffs have needlessly strayed from Pattern Instruction No. 1.05.

## Plaintiffs' Proposed Instruction No. 7

### Redacted Exhibits

Portions of certain exhibits have been "redacted," meaning that certain portions of those exhibits have been omitted or obscured so that those portions may not be read. The portions that have been shown are the relevant and admissible portions of the documents. You must only consider the visible portions of the exhibits and draw no inferences from the existence of redacted portions.

**Source(s):** *See Gonzalez v. Olson*, No. 11 C 8356, 2015 WL 3671641, at *20 (N.D. Ill. June 12, 2015) (explaining jury speculation regarding redacted information may be cured by an instruction that "the redacted information is not relevant to any issue in the case").

**Objection to Plaintiffs' Proposed Jury Instruction No. 7 – Redacted Exhibits**

Defendants object to the second sentence, which states: "The portions that have been shown are the relevant and admissible portions of the documents." This sentence is unnecessary and unhelpful. The jurors will not be instructed on the rules of evidence, and the appropriate direction for them is to not speculate as to what was redacted. Furthermore, it may be that relevant evidence was redacted, making this factually and legally inaccurate.

**Plaintiffs' Proposed Instruction No. 8**

**No Inferences Regarding Timing of Trial**

Much of the evidence in this case concern facts that occurred many years ago. The Plaintiffs filed their civil lawsuit in a timely fashion. It is through no fault of the parties that this case was brought to trial no earlier than now.

**Objection to Plaintiffs' Proposed Jury Instruction No. 8 – No Inferences Regarding Timing of Trial**

Defendants object to this Proposed Instruction as unnecessary and biased. Tellingly, Plaintiffs' Proposed Instruction is neither based on a pattern instruction nor is it based on an instruction given in either of the two previous trials in this MDL proceeding. Plaintiffs also offer no case law support for this instruction, let alone a reason to suggest that it is necessary based on the facts.

Defendants further object to this Proposed Instruction as it is factually and legally inaccurate. Plaintiffs filed the instant case in 2011. Judge Pratter ruled that a portion of their claims was time-barred by the statute of limitations. ECF 776 at 14-15; ECF 846 at 10. Accordingly, there is no basis for Plaintiffs' assertion that the jury should make no inferences regarding the timing of trial when almost one-third of their claims was dismissed precisely because of when they filed their lawsuit.

**Plaintiffs' Proposed Instruction No. 9**

**Multiple Claims, Plaintiffs, and Defendants**

You must give separate consideration to each claim and each party in this case. ~~[Although there are~~ ~~[number]~~ four ~~d~~Defendants, it does not follow that if you find one ~~is~~to be liable, ~~any of~~ the others ~~is~~must necessarily also be liable.] [~~And a~~lthough there are ~~[number]~~multiple ~~p~~Plaintiffs, it does not follow that if you find that one ~~is successful~~Plaintiff has proven its case, the others ~~are, too~~must necessarily have proven theirs as well.

~~*[If evidence was admitted only as to fewer than all defendants or all claims:]* In considering a claim against a defendant, you must not consider evidence admitted only against other defendants [or only as to other claims.]~~

**Source(s):** Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.), Instruction No. 1.25 (modified).

41

**Objection to Plaintiffs' Proposed Jury Instruction No. 9 – Multiple Claims, Plaintiffs, and Defendants**

Defendants object to Plaintiffs' deletion of the bracketed language, which states as follows: "[If evidence was admitted only as to fewer than all defendants or all claims:] In considering a claim against a defendant, you must not consider evidence admitted only against other defendants."

This language is necessary and relevant based on the facts to be presented at trial. Plaintiffs are offering numerous pieces of evidence – from exhibits to prior testimony – that will be subject to a limiting instruction advising the jury that it is only admissible against certain Defendants. This instruction follows on that, and importantly instructs the jury to only consider the evidence admitted as to a particular Defendant. Plaintiffs have failed to offer Defendants any reason why this language should be stricken.

**Plaintiffs' Proposed Instruction No. 10**

**Trade Associations**

<u>Earlier I instructed you that UEP and USEM, like the other parties in the case, are business organizations. UEP and USEM are also trade associations.</u>

Businesses that are actual or potential competitors may lawfully form into <u>groups</u> ~~associations~~ to advance common interests. For example, trade associations may keep members informed of new services or technology in the industry or perform other valuable services such as cooperative research, publication of trade journals, or joint representation before legislative or administrative bodies.

~~An association is~~<u>These groups are</u> capable of committing violations of the antitrust laws. The actions of a group of competitors taken through ~~an~~ association ~~to which they belong~~ present the same issues as the actions of a group of competitors ~~who have not created a formal organization such as a~~ <u>taking actions independent of any</u> trade association. A trade association or similar industry group cannot lawfully act to facilitate the raising, stabilizing, or maintaining of prices in the market in which its members compete with one another~~, to reduce members' collective output of products or services, or to allocate territories among members that are in horizontal competition with one another. A trade association or similar industry group cannot lawfully adopt rules that prohibit members from bidding competitively with one another because that severely affects price competition~~. These actions constitute an agreement with its members in violation of the Sherman Act even if the association has not conspired with a nonmember.

If a trade association exchanges with its members confidential, competitively sensitive information, such as current or future prices, or current or future output information, that is evidence which you may consider, along with all the other evidence, in deciding whether the association ~~is~~ <u>and its members have acted</u> in violation of the antitrust laws.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. C-10 (modified).

**Objection to Plaintiffs' Proposed Jury Instruction No. 10 – Trade Associations**

Defendants object to the modifications to the model instruction as confusing and misleading. First, while both UEP and USEM are agricultural cooperatives and can properly be referred to as "associations," USEM does not function like a trade association. Accordingly, the first paragraph should be stricken, as inaccurate, misleading and unnecessary. Defendants similarly object to the insertion of the words "a trade" in the second sentence of the third paragraph for the same reason. With respect to the facts of this case, "association" is the more accurate phrase.

Defendants object to the other changes in the second paragraph of the model as confusing, unnecessary, inaccurate.

Defendants object to Plaintiffs' insertion of the language "and its members have acted" in the last paragraph of this Proposed Instruction. The deviation from the pattern instructions is unnecessary, confusing, and misleading. Moreover, it misstates the law by implying that a trade association can be liable for acts of its members rather than its agents. United Egg Producers, Inc. and United States Egg Marketers, Inc., the two associations at issue in this matter, are both incorporated entities that operate independently of their members.

Additionally, this Proposed Instruction (or an additional Instruction) must clarify that members of an association are not liable for the acts of the association. *See* ABA Model Instructions, Ch. 2, Section C, Instruction No. 13, at 63.

Defendants further object to the placement of this Proposed Instruction as it will be better understood if it placed after the conspiracy elements, in much the same way that the ABA Model Instructions does.

## Plaintiffs' Proposed Instruction No. 11

## Burden of Proof: Preponderance of the Evidence

<u>Because this is a civil case, the Plaintiffs have the burden of proving their case against the Defendants by what is called the "preponderance of the evidence."</u> When I say a particular party must prove something by "a preponderance of the evidence," or when I use the expression "if you find," or "if you decide," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this, so you should put that concept out of your mind.

[And because this is a private civil antitrust case, the presence or lack of a government investigation or prosecution is of no relevance, and you should not consider it as a factor in determining liability in this matter.]

**Source(s):** Paragraph 1 is taken in modified form from Instruction No. 1.27 of the Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.). Paragraphs 2 and 3 are taken from paragraphs 9 and 10 of Instruction No. 6 in the DAP trial. *In re Egg Prods. Antitrust Litig.*, No. 2:12-cv-08808-MDL-2002 (E.D. Pa. Dec. 10, 2019).

**Objection to Plaintiffs' Proposed Jury Instruction No. 11 – Burden of Proof: Preponderance of the Evidence**

Defendants object to Plaintiffs' deletion of the phrase "investigation or" from Pattern Instruction No. 1.27. Just as a government prosecution is irrelevant, so too is any alleged investigation. This is particularly true because no government investigation of the conduct at issue occurred, making the omitted language necessary.

**Elements Instructions**

**Plaintiffs' Proposed Instruction No. 12**

**Purpose of The Antitrust Laws**

I am now going to instruct you on the elements of the claims in this case.

The Plaintiffs allege that Defendants violated the antitrust laws, namely the Sherman Act. It is for you to decide whether the Plaintiffs have proven this violation.

The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace. The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.

A party may not justify an agreement to restrain competition based on the belief that it will improve a product's quality or be in the interests of consumers. Consumers are to decide through competition what is in their interests. Sellers may not agree to restrain the market because they think it is in the consumers' interests.

**Source:** Paragraph 3 is taken from ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 1, Instruction A-1 (modified); Paragraph 4 is taken in modified form from *The PLS.COM, LLC v. The National Association of Realtors, et al.*, 32 F.4th 824, 836 (9th Cir. 2022) (quoting *Nat'l Soc'y of Prof. Eng'rs v. United States*, 435 U.S. 679, 695 (1978).

**Objection to Plaintiffs' Proposed Jury Instruction No. 12 – Purpose of The Antitrust Laws**

Defendants object to Paragraph 4 of this Proposed Instruction. It wrongly assumes application of the *per se* standard. The rule of reason standard is the law of this case. *See* Introduction to Objections, Section I, *supra*, at 12–14. The Third Circuit has twice confirmed that the conduct at issue here is subject to the Rule of Reason. *In re Processed Egg Prods.*, 850 F. App'x at 147; *In re Processed Egg Prods.*, 962 F.3d at 728.

Defendants further object to Paragraph 4 as it misstates the law and misstates the nature of the evidence in this case, which includes the procompetitive benefits that Defendants have introduced at the previous trials and will introduce at trial here. Improved product quality, creation of a new product and responding to the interests of customers are quintessential procompetitive benefits and Plaintiffs' Paragraph 4 seeks to render them irrelevant.

As the Eastern District of Pennsylvania also observed, the presence of procompetitive benefits, such as the development of a new product (Certified eggs), satisfaction of customer demand, increased hen productivity, and decreased hen mortality, also mandate application of the rule of reason: "the plausible presence of certain procompetitive aspects of the conspiracy, which have been highlighted by the defendants, renders it necessary and appropriate to evaluate the plaintiffs' claims under the rule of reason." *In re Processed Egg Prods.*, 206 F. Supp. 3d at 1047. The rule of reason standard permits evidence that a challenged restraint produced procompetitive benefits, including: "whether the challenged restraints were demanded by customers, increased production, increased consumer choice, decreased prices, or improved product quality. Evidence regarding the ethical treatment of laying hens may be considered with respect to issues such as whether a challenged restraint increased output, improved product quality, widened customer choice, or met customer demand." *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002 (E.D. Pa. 2019) (Direct Action Plaintiffs' ("DAP") trial) (hereinafter "DAP Instruction"), transcript attached hereto as Exhibit A, December 10, 2019 Tr. at 257:24–258:22, word document version attached hereto as Exhibit B, DAP Instruction No. 20, at 42; *see also In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002 (E.D. Pa. 2018) (Direct Purchaser Plaintiffs' ("DPP") trial) (hereinafter "DPP Instruction"), transcript attached hereto as Exhibit C, June 5, 2018 Tr. at 135:25–136:4, word document version attached hereto as Exhibit D, DPP Instruction No. 17, at 35 ("[Y]ou may consider various factors including, but not limited to: whether the challenged restraints were demanded by customers, increased production, decreased prices, or improved product quality."); *NCAA v. Board of Regents*, 468 U.S. 85, 101 (1984) (recognizing that some competitive "products" can only exist through joint agreement); *Broad. Music., Inc., v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 22–23 (1979) (recognizing that making a new or better product available to customers can be procompetitive); *Paladin Assocs. v. Montana Power Co.*, 328 F.3d 1145, 1157 (9th Cir. 2003) (explaining that the creation of a "new product" is a competitive justification for conduct and "[i]mproving customer choice is procompetitive"); *Toscano v. PGA Tour, Inc.*, 201 F. Supp. 2d 1106, 1123 (E.D. Calif. 2002) ("The [rules] provide a product that would not otherwise exist and, therefore, they further consumer welfare.").

The single authority cited by Plaintiffs – *PLS.COM, LLC v. National Association of Realtors,* 32 F.4th 824 (9th Cir. 2022) – lends no support for Paragraph 4 of their proposed Instruction. First,

the court was ruling on a motion to dismiss, and therefore simply accepted plaintiff's characterization of the restraint at issue. As the court explicitly stated: "Although we hold that PLS has adequately alleged a *per se* group boycott, we leave to the district court to determine in the first instance whether it should apply *per se* analysis or rule of reason analysis at later stages in this litigation." *Id*. at 837. Second, the conduct at issue was a group boycott, not the development of a new product in response to customer demand. This case does not obviate the well-settled law that a jury may consider evidence of procompetitive benefits under the rule of reason.

**Per Se Liability Instructions**

**Plaintiffs' Proposed Instruction No. 13**

**Liability Element:  Limiting Domestic Supply**

Plaintiffs claims that each ~~d~~Defendant ~~[and/or other persons~~ its co-conspirators~~]  are competitors [or potential competitors]  and have~~ violated the Sherman Act by agreeing to ~~limit the production of [product X].~~actions limit production or restrict the domestic supply of eggs and egg products in the United States. Plaintiffs claim the conspirators engaged in some or all of the following overt acts in furtherance of the conspiracy: (1) the early slaughter and early molting of hens to reduce the number of egg-laying hens; (2) the creation and enforcement of rules that restricted the number of egg-producing hens allowed in henhouses; (3)  the banning of backfilling of egg-producing hens; or (4) the export of eggs to reduce the number of eggs available in the domestic market and therefore increase prices.  The defendants have denied these allegations.

A business has the right to determine on its own how much of its product to produce, provided that the decision results from the exercise of an independent business judgment and not from any agreement with a competitor ~~[or a potential competitor]~~. The Sherman Act prohibits agreements between competitors ~~[or potential competitors]~~ that ~~limit~~restrict how much of a product one or more of them will produce.

~~By way of example, this includes an agreement by two or more competitors that one of them will reduce the amount of a product it produces in competition with the other's products, to set a quota on the amount of product to be produced, or to require one of them to discontinue the development or production of a product which the other will continue to produce and sell.~~

To succeed on their claim, the Plaintiffs must prove each of the following propositions:

(1) defendants and their alleged co-conspirators ~~are [or were at relevant times]~~ competitors or potential competitors;

(2) defendants ~~[or that defendant and one or more other persons who were its competitor(s)]~~ knowingly entered into an agreement to limit or restrict the production of eggs.  To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason;

(3) ~~defendants agreed that production of [product X] would be limited by [state the nature of the alleged limitation on production, e.g., that one of them would reduce the amount of the product X produced]~~;

~~(4) the agreement occurred in or affected interstate [*or foreign*] commerce;~~ and

(3~~5~~) plaintiffs were~~as~~ injured in their ~~its~~ business or property because of the agreement.

If you find that the evidence is insufficient to prove any one or more of these elements as to a particular ~~d~~Defendant or a particular Plaintiff, then you must find for that Defendant and against <u>that</u> ~~p~~Plaintiff ~~on plaintiff's claim that defendant conspired to limit production. If you find that the evidence is sufficient to prove all five elements as to that defendant, then you must find for plaintiff and against that defendant on plaintiff's claim with respect to an agreement to limit production.~~

<u>To assist you in applying this instruction, I will now provide further instructions as to the meaning of these terms.</u>

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. C-4 (modified); *Federal Trade Comm'n v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411 (applied per se rule despite societal benefits to the action of the defendants) (1990); *National Collegiate Athletic Ass'n v. Board of Regents*, 468 U.S. 85, 100 (1984); *Hartford-Empire Co. v. United States*, 323 U.S. 386, 400-01, 406-07 (1945); *United States v. Andreas*, 216 F.3d 645, 667-68 (7th Cir. 2000); *General Leaseways, Inc. v. National Truck Leasing Ass'n*, 744 F.2d 588, 594 (7th Cir.1984).

## *Per Se* Liability Instructions (Instructions 13 and 14)

Defendants object to all of Plaintiffs' Proposed Instructions that are based on a *per se* theory of liability because this case is governed by the Rule of Reason. *See* Introduction to Objections, Section I, *supra*, at 12–14. Should this Court deviate from the prior rulings in this case and determine that a *per se* instruction is appropriate here, Defendants reserve their right to object specifically to each *per se* instruction.

### Objection to Plaintiffs' Proposed Jury Instruction No. 13 – Liability Element: Limiting Domestic Supply

*See* Defendants' Objections to Plaintiffs' Proposed Jury Instruction No. 12; Introduction to Objections, Section I, *supra*, at 12–14.

Defendants further object to the Proposed Instruction because its description of the alleged conspiracy in Paragraph 1 departs from the one Plaintiffs have consistently asserted throughout this litigation. The Court should apply the doctrine of judicial estoppel to prevent Plaintiffs from re-framing the conspiracy through the jury instructions. *See* Introduction to Objections, Section II, *supra*, at 15–18.

**Plaintiffs' Proposed Instruction No. 14**

**Limiting Domestic Supply**

The Plaintiffs claim that Defendants agreed to "limit production" or "restrict the domestic supply" of eggs and egg products.

When I refer to limiting production or restricting output, I am not just asking you to decide whether the domestic supply of eggs went up or down. It is a violation of the antitrust laws for competitors to agree to limit production or restrict the domestic supply of eggs below what it would have been without their agreement.

I will give some examples.

If the level of supply went up during the relevant time period, but due to an agreement of competitors it went up less than it would have gone up without the agreement, that may be a violation of the antitrust laws. As an example, it is unlawful to agree to reduce supply from 10 to 5. It is also unlawful to agree to limit the increase in supply from 10 to 12 when without the agreement output naturally would have increased from 10 to 14. Both are examples of restricting output.

It is also true that not every decrease in supply is unlawful. if the level of supply went down but the decrease was not the result of an agreement of competitors, it is not a violation of the antitrust laws. It does not violate the antitrust law if supply declines from 10 to 5 where that decrease is not caused by an agreement among competitors. Likewise, it does not violate the antitrust laws where supply increases from 10 to 12 when it was expected to increase to 14, when the reason for the lower growth in production is something other than an agreement among competitors.

In deciding whether Defendants limited production or restricted domestic supply, it is for you to decide if Defendants caused the level of domestic supply to be less than it would have been without their agreement.

**Source:** *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 789-90 (6th Cir. 2002) (holding that evidence of injury to competition was sufficient where Plaintiff presented evidence that two of the three other manufacturers grew more slowly than they otherwise would have but for unlawful monopolization and " although [sales] in the . . . market grew, there was evidence showing that [the defendant's] actions caused higher prices and reduced consumer choice, both of which [were] harmful to competition"); *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637 (N.D. Ill. June 30, 2023) (Durkin, J.) (court approved admission of opinion "that a producer might restrict supply by slowing the rate of increase of production as opposed to an overall production cut. This may result in an increased production number, but one that would have been higher but for the conspiracy. To the extent the facts bear out this possibility, Williams's opinion on this issue is helpful and will not be excluded").

**Objection to Plaintiffs' Proposed Jury Instruction No. 14 – Limiting Domestic Supply**

Defendants object to this Proposed Instruction as unnecessary and one-sided, as it simply seeks to codify as an Instruction Plaintiffs' theory regarding anticompetitive harm. Plaintiffs are free to argue their theory of harm at trial, but they are not entitled to the Court's stamp of approval.

Though not delineated as such, the statements in this Proposed Instruction appear nowhere in the ABA Model Instructions, nor do they originate in any pattern instructions from any circuit or district court. Notably, no comparable instruction was given in either of the two previous trials in the MDL proceeding.

Defendants further object to this Proposed Instruction as it misstates the law. This Proposed Instruction states that "It is a violation of the antitrust laws for competitors to agree to limit production or restrict the domestic supply of eggs below what it would have been without their agreement." But that assumes application of the *per se* rule. Under the Rule of Reason, the standard to be applied here, any evidence of anticompetitive harm must be weighed against evidence of procompetitive benefits. *See* ABA Model Instructions, Ch. 1, Sec. C, Instruction No. 3A, at 3.

The two cases cited by Plaintiffs as authority are inapposite. First, the Sixth Circuit's decision in *Conwood Company, L.P. v. U.S. Tobacco Company*, 290 F.3d 768 (6th Cir. 2002), is distinguishable on its face in that it is a Sherman Act Section 2 case, not a Section 1 case. Even so, Plaintiffs' suggestion that *Conwood* stands for a settled question of law is undermined by the decision's own acknowledgement of other cases holding that increased output would defeat any claim of anticompetitive injury. *See id.* at 789 (*citing Omega Env't, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157 (9th Cir. 1997), and *Campus Ctr. Discount Den, Inc. v. Miami Univ.*, No. 96-4002, 1997 U.S. App. Lexis 12107 (6th Cir. May 21, 1997).

Likewise, *In re Broiler Chicken Antitrust Litigation*, No. 16-C-8637, 2023 U.S. Dist. LEXIS 113271 (N.D. Ill. June 30, 2023), centered on questions of fact for the jury to decide, not on a basic principle of antitrust law. There, the court simply found relevant an expert's opinion that a producer that increased production could still be part of an antitrust conspiracy if production would have been higher absent the conspiracy. *Id.* at *67. Thus, the court concluded that "[t]o the extent the facts bear out this possibility, [the expert's] opinion on this issue is helpful and will not be excluded." *Id.* at *68.

In sum, neither the Sixth Circuit's *Conwood* opinion nor the decision in *In re Broiler Chicken* provides support for a legal instruction on the nature of the alleged anticompetitive injury or what constitutes a restraint on domestic supply. Here, as in those two cases, these are questions of fact for the jury, not questions of law that merit a jury instruction.

**Plaintiffs' Proposed Instruction No. 15**

**Conspiracy Definition**

Plaintiff~~s~~ allege~~s~~ that ~~d~~Defendant~~s~~ participated in a conspiracy to restrain trade by ~~[alleged conduct or restraint]~~ limiting or restricting the the domestic egg supply. Defendants deny that they entered into an agreement to restrict the domestic supply of eggs.

A "conspiracy" is an express or implied agreement between two or more persons or entities to do something the law prohibits. ~~commit a crime~~. The basis of a conspiracy is an agreement or understanding between two or more persons. A conspiracy may be proven even if its goal~~[s]~~ ~~[was; were]~~ not accomplished.

In deciding whether the ~~charged~~ conspiracy existed, you may consider all of the circumstances, including the words and acts of each of the alleged participants.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-1 (modified) (paragraph 1); *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit* (2020 ed.), Instruction 5.09, at 107 (modified) (paragraphs 2 and 3).

**Objection to Plaintiffs' Proposed Jury Instruction No. 15 – Conspiracy Definition**

Defendants object to this Proposed Instruction to the extent it includes only the first paragraph from the ABA Model Instruction, but not the remainder of the Model Instruction. ABA Model Instructions, Ch. 2, Section A, Instruction No. 1, at 13.

Defendants further object to Paragraph 1 of this Proposed Instruction as the description of the alleged conspiracy should be expanded to clarify that the "agreement to restrict the domestic supply of eggs" is one that includes the three challenged components. Defendants' Proposed Instruction Nos. 24, 32; *See* DAP Instructions No. 7–10, at 16–25, Tr. at 235:10–242:22.

**Plaintiffs' Proposed Instruction No. 16**

**Membership in Conspiracy**

[1]     To be a member of a conspiracy, ~~[the; a]~~ Defendant does not need to join it at the beginning, and he does not need to know all of the other members or all of the means by which the ~~illegal~~ unlawful goal~~[s]~~ of the conspiracy was~~; were~~ to be accomplished. A defendant may join in the unlawful plan at some later time of the conspiracy. It is also not necessary that all of the means or methods claimed by the Plaintiffs were agreed upon by each individual Defendant to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members. ~~The government must prove beyond a reasonable doubt that the defendant [you are considering] was aware of the illegal goal[s] of the conspiracy and knowingly joined the conspiracy.~~

~~[A defendant is not a member of a conspiracy just because he knew and/or associated with people who were involved in a conspiracy, knew there was a conspiracy, and/or was present during conspiratorial discussions.]~~

~~[The conspiracy must include at least one member other than the defendant who, at the time, was not [a government agent; a law enforcement officer; an informant].]~~

[2]     In deciding whether ~~[the; a]~~ Defendant joined the alleged ~~charged~~ conspiracy, you must base your decision only on what ~~[that; the]~~ Defendant did or said. To determine what ~~[that; the]~~ Defendant did or said, you may consider ~~[that; the]~~ Defendant's own words or acts. You may also use the words or acts of other persons to help you decide what the Defendant did or said.

[3]     If you find that the alleged conspiracy existed, then the acts and statements of the conspirators are binding on all of those whom you find were members of the conspiracy.

[4]     ~~Once you have found~~ If you find that a ~~d~~Defendant is a member of a conspiracy, ~~he, she, or~~ that Defendant is presumed to remain a member and is responsible for all actions taken by all coconspirators during and in furtherance of the conspiracy until it is shown that the conspiracy has been completed or abandoned ~~[or that the person has withdrawn from the conspiracy]~~.

**Source:** *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit* (2022 ed.), Instruction 5.10, at 109 (paragraphs 1 & 2, modified as shown);

ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.),Ch. 2, Instruction A-4 (paragraphs 3 and 4, modified as shown).

**Objection to Plaintiffs' Proposed Jury Instruction No. 16 – Membership in Conspiracy**

Defendants object to Plaintiffs striking of the following language from the pattern instructions as one-sided, unfairly prejudicial and not an accurate recitation of the law:

> "A defendant is not a member of a conspiracy just because he knew and/or associated with people who were involved in a conspiracy, knew there was a conspiracy, and/or was present during conspiratorial discussions."

This language will be consistent with the facts presented at trial, and the jury should be instructed accordingly.

**Plaintiffs' Proposed Instruction No. 17**

**Explanation of Conspiracy**

An agreement or understanding between two or more persons exists when they share a commitment to a common scheme. To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement. The agreement itself may have been entirely unspoken. A person can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the charged conspiracy. The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose. To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish a common purpose.

A conspiracy may be formed without all parties coming to an agreement at the same time [*such as where competitors separately accept invitations to participate in a plan to restrain trade*]. Similarly, it is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement. It is also not necessary that all of the means or methods claimed by ~~p~~Plaintiff<u>s</u> were agreed upon to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members<u>, nor that all of them employed all of the means or methods designed to achieve the goals of the agreement or conspiracy</u>. It is the agreement or understanding to restrain trade [*in the way alleged by plaintiff*] <u>by limiting or restricting the growth of the domestic egg supply</u> that constitutes a conspiracy. Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed. <u>It is enough that a participant knowingly agreed or conspired to use at least one of the means or methods designed to achieve the common objective.</u>

A person who knowingly joins an existing conspiracy, or who participates only in part of a conspiracy with knowledge of the overall conspiracy, is just as responsible as if he or she had been one of those who formed or began the conspiracy and participated in every part of it.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-1 (modified) (other portions are included in other instructions) (paragraphs 1-2); ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-4; *Toys R Us, Inc. v. FTC*, 221 F.3d 928, 932, 935 (7th Cir. 2000) (finding horizontal conspiracy among toy manufacturers in response to a major retailer's demand that they not supply warehouse club stores particular toys sold to the major retailer where it was demonstrated that toy manufacturers agreed to the

demand only "on the condition that their competitors would do the same") (paragraph 3).

**Objection to Plaintiffs' Proposed Jury Instruction No. 17 – Explanation of Conspiracy**

Defendants object to this Proposed Instruction, as the added statements in Paragraph 2 about the "means or methods" of the conspiracy are redundant. The pattern instructions already fully discuss whether a conspirator must agree and participate in all of the "means or methods" of the conspiracy. *See* ABA Model Instructions, Ch. 2, Section A, Instruction No. 1, at 13.

Additionally, the last sentence of Paragraph 2 is not included in any model or pattern jury instructions, and Plaintiffs have not supported it with any case law. To the extent that the Proposed Instruction attaches liability to a Defendant who uses one of the "means or methods" of the alleged conspiracy but does not join an agreement to unreasonably restrain trade, it is a misstatement of the law. *See* DPP Instruction No. 14, at 28, Tr. at 130:14–16 ("It is the agreement or understanding to restrain trade by limiting egg supply that constitutes a conspiracy."); DAP Instruction No. 17, at 35–36, Tr. at 252:9–10 ("It is the agreement or understanding to restrain trade by limiting egg supply that can constitute a conspiracy."). Agreeing to "one of the means or methods designed to achieve the common objective" and agreeing to achieve something the law prohibits ***through*** various means or methods are two very different things. As discussed *supra*, Plaintiffs have already dictated the description of the conspiracy here through years of legal pleadings and may not change that now.

Defendants also object to Paragraph 3 of this Proposed Instruction as one-sided and unfairly prejudicial. Paragraph 3 should not be included without the full set of instructions from ABA Model Instructions, Ch. 2, Section A, Instruction No. 4, at 21, discussing the standard for membership in a conspiracy.

**Plaintiffs' Proposed Instruction No. 18**

**Evidence of Conspiracy**

[1]    Plaintiff<u>s</u> may prove the existence of the alleged [agreement] or conspiracy through direct evidence, circumstantial evidence, or both. Direct evidence is explicit and requires no inferences to establish the existence of the alleged conspiracy.

[2]    While conspiracies are often carried out in secret, secrecy is not an element of a conspiracy.  Conspirators may act openly or not, as best suits their purpose.

[3]    Direct proof of an agreement may not be available. A conspiracy may be proven by the circumstances or the acts of the members. Therefore, you may infer the existence of an agreement from what you find the alleged members actually did, as well as from the words they used. Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together, does not by itself establish the existence of a conspiracy unless the evidence tends to exclude the possibility that the persons or businesses were acting independently.

**Source(s):** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-1 (paragraph 1); *Federal Trade Comm'n v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411 (1990) (work stoppage conspiracy unlawful although it was publicly disclosed); *San Juan Racing Ass'n Inc. v. Asociacion de Jinetes de Puerto Rico, Inc., et al.,* 590 F.2d 31, 32 (1st Cir. 1979) (holding that jockeys had participated in conspiracy to illegally control prices in violation of antitrust laws finding that jockeys' "openness [did] not immunize agreement" where jockeys refused to race at night of scheduled race until their fees were increased); *United States v. Spock,* 416 F.2d 165, 170 (1st Cir. 1969) (paragraph 2); *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984) (paragraph 3).

**Objection to Plaintiffs' Proposed Jury Instruction No. 18 – Evidence of Conspiracy**

Defendants object to this Proposed Instruction as an unnecessary departure from the pattern instructions. Paragraphs 2 and 3 are ***not*** in the ABA Model Instructions nor in the Seventh Circuit's Pattern Civil Jury Instructions, yet Plaintiffs do not underline the proposed paragraphs to indicate that they have included this additional language.

Moreover, both the ABA Model Instructions and the Seventh Circuit's Pattern Civil Jury Instructions already address the definition and use of "direct" and "circumstantial" evidence. *See* Seventh Circuit Pattern Civil Jury Instructions 1.12.

Defendants further object to Paragraph 2 as one-sided and unfairly prejudicial. Paragraph 2 simply states Plaintiffs' theory of the case, and it implies that the lack of secrecy surrounding the Defendants' alleged conspiracy should not be considered by the jury for any reason. While a lack of secrecy may not "immunize" Defendants from antitrust liability, the lack of secrecy regarding the UEP Certified Program and other alleged restraints is *relevant* to determining the existence of a conspiracy and can be properly considered by the jury. *See United States v. Markowski*, 772 F.2d 358, 366 (7th Cir. 1985) (evidence that the defendant tried to silence a co-conspirator "to protect the secrecy of his enterprise" was relevant for proving the existence of a conspiracy); *see also United States v. Brown*, 71 F.3d 1352, 1357 (7th Cir. 1995) ("[M]ost criminals take pains to keep their conspiracies secret . . ."); *Zurich Capital Mkts., Inc. v. Coglianese*, 383 F. Supp. 2d 1041, 1051 (N.D. Ill. 2005) ("[A] conspiracy by nature is secretive . . ."). Moreover, the cases Plaintiffs cite do not eliminate the relevance of this form of evidence in the jury's determination of the existence of a conspiracy. Both *Federal Trade Comm'n v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411 (1990) and *San Juan Racing Ass'n Inc. v. Asociacion de Jinetes de Puerto Rico, Inc., et al.*, 590 F.2d 31, 32 (1st Cir. 1979) stand for the unremarkable proposition that openly publicizing a conspiracy to restrain trade will not *preclude* antitrust liability. The weight of this evidence is a question of fact for the jury, not a question of law on which the Court should issue an instruction.

Additionally, any discussion of indirect or circumstantial proof of conspiracy must be accompanied by the Supreme Court's requirement that there "must be evidence that tends to exclude the possibility that the [Defendants] were acting independently."). *Monsanto Co. v. Spray-Rite Serv. Co.*, 465 U.S. 752, 764 (1984). *See also Matsushita Elec. Indus. Co.. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) ("a plaintiff seeking damages for a violation of § 1 must present evidence 'that tends to exclude the possibility' that the alleged conspirators acted independently.").

**Plaintiffs' Proposed Instruction No. 19**

**Cause of Injury/Pass Through Irrelevant**

Plaintiffs must prove they were injured in their business or property. Here, Plaintiffs complain that they were injured in their business or property by paying more for eggs [egg products] due to the conspiracy. A Plaintiff has been injured in their business or property ~~if you find that~~ it paid an inflated price for eggs [egg products] as a result of ~~d~~Defendant's alleged antitrust violation. Plaintiff must only prove that it has been injured in its business or property, and need not prove an amount of injury.

~~Plaintiff must also offer evidence that establishes by a preponderance of the evidence that defendant's alleged illegal conduct was a material cause of plaintiff's injury. This means that plaintiff must have proved that some damage occurred to it as a result of defendant's alleged antitrust violation, and not some other cause.~~ Plaintiffs must also establish that the injury was a result of a Defendant's violation of the antitrust laws. To do so, Plaintiffs must also establish that the alleged illegal conduct was a material or substantial cause of Plaintiffs' injuries. Plaintiffs ~~is~~are not required to prove that a ~~d~~Defendant's alleged antitrust violation was the sole cause of ~~its~~their injur~~y~~ies; nor need ~~p~~Plaintiffs eliminate all other possible causes of injury. It is enough if ~~p~~Plaintiffs ~~has~~have proved that the alleged antitrust violation was a material or substantial cause of ~~its~~their injury.

In evaluating whether a Plaintiff was injured, I instruct you that under antitrust law, only the entity that purchased products directly from a liable defendant may collect damages. Thus, in evaluating whether a Plaintiff was injured, ~~That direct purchaser plaintiff is entitled to recover the full amount of the overcharge as damages, without regard to~~ you should not consider whether some portion of any injury suffered by a Plaintiff ~~the overcharge~~ was passed on to any of its ~~downstream~~ customers. ~~As a result, you are not to be concerned whether any of an overcharge was passed on to other businesses or individuals.~~

It is for this reason that there has been no evidence in this trial about whether any overcharge was passed on from Plaintiffs to others – that question is irrelevant under the law. Because there has been no evidence of pass through, and because you are to decide this case solely based on the evidence, you should not consider the issue in your deliberations.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction No. A-2 (modified)(paragraph 1):.ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction A-1 (paragraphs 3 and 4, modified); final two paragraphs: Instruction derived from ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction No. B-1 (explanatory note); *Paper*

*Systems v. Nippon Paper Indus. Co.*, 281 F.3d 629, 632-34 (7th Cir. 2002) (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)).

**Objection to Plaintiffs' Proposed Jury Instruction No. 19 – Cause of Injury/Pass Through Irrelevant**

Defendants object to this Proposed Instruction, as Paragraph 2 fails to explain that Plaintiffs' injury must result directly from the conduct of the Defendants that were found to be members of the alleged conspiracy, and not from other causes, including the adherence to the UEP Certified guidelines by other egg producers. *Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337 (7th Cir. 2022) (Plaintiff must show "that their injury is fairly traceable to [Defendants'] conduct."); *MCI Communications Corp. v. American Tel. & Tel. Co.*, 708 F.2d 1081 (7th Cir. 1983) ("Thus, the courts have been consistent in requiring plaintiffs to prove in a reasonable manner the link between the injury suffered and the illegal practices of the defendant.").

Defendants further object to this Proposed Instruction as an unnecessary departure from the ABA Model Instructions and from the instructions given in the previous two trials in this MDL proceeding. *See* ABA Model Instructions, Ch. 6, Section A, Instruction No. 1, at 300; DAP Instruction No. 26, at 49–51, Tr. at 263:10–265:22; DPP Instruction No. 22, at 42–45, Tr. at 140:10–143:13. This is particularly true for paragraphs 3 and 4, which are not found in the ABA Model Instructions nor in any pattern instructions, though Plaintiffs fail to note that.

Defendants further object to Paragraphs 3 and 4 of this Proposed Instruction as unnecessary, confusing and potentially prejudicial. Defendants do not intend to argue or present evidence that Plaintiffs were not injured or damaged because they passed on any alleged overcharges. Indeed, as the product Plaintiffs sell bears no resemblance to the product Plaintiffs purchase, there is no reason to assume that this issue will arise in the jury's mind. Accordingly, the inclusion of such an Instruction will only serve to confuse the jury and suggest to the jury that injury or damages should be found.

**First Alternative to Per Se Instructions: *Wilk***

If the Court declines to use the per se instructions,
Plaintiffs propose the following Instructions.

**Plaintiffs' Proposed Instruction No. 20**

**Wilk Alternative: Jury Decides If Per Se Case is Proven Intro**

Plaintiffs claim that each Defendant and its co-conspirators violated the Sherman Act by agreeing to limit or restrict the supply of eggs and egg products in the United States. Plaintiffs claim the conspirators agreed engaged in some or all of the following overt acts in furtherance of the conpiracy: (1) the early slaughter and early molting of hens to reduce the number of egg-laying hens; (2) the creation and enforcement of rules that restricted the number of egg-producing hens allowed in henhouses; (3) the banning of backfilling of egg-producing hens; or (4) the export of eggs to reduce the number of eggs available in the domestic market and therefore increase prices. The defendants have denied these allegations.

There are two ways to evaluate whether the practices Plaintiffs challenge in this case constitute a violation of the Sherman Act.

First, a conspiracy to restrict the domestic supply of eggs and egg products is illegal under the "per se" rule. Under the per se rule, a practice is evaluated without considering the actual harm to competition resulting from the practice or the business justification for engaging in the practice.

Second, practices that unreasonably restrain trade in a relevant market are illegal and are evaluated under a "rule of reason." Under the "rule of reason," a practice that restrains trade is evaluated for its reasonableness in light of its actual effect on competition and any pro-competitive justifications for the practice.

Plaintiffs contend that Defendants engaged in a conspiracy to restrict the domestic supply of eggs. If you agree, you should evaluate this case under the per se rule.

If you do not agree that Defendants engaged in a conspiracy to restrict the domestic supply of eggs, you should evaluate the case under the rule of reason.

I will now instruct you as to both of these tests.

**Source:** *Wilk v. American Medical Association*, 719 F.2d 207 (7th Cir. 1983); 3A Fed. Jury Prac. & Instr. § 150.21&22 (5th ed.); ABA Model Jury Instr. In Civ. Antitrust Cases A-36 (2005); Modern Fed. Jury Instr.-Civ. Instr. 79-49; Comm. on Pattern Jury Instr. Dis. Judges Ass'n 5th Cir.; Order Denying Dismissal Motion at 16-19.

## First Alternative to *Per Se* Instructions

Defendants object to all of Plaintiffs' Proposed Instructions that are based on a *per se* theory of liability as this case is governed by the Rule of Reason. *See* Introduction to Objections, Section I, *supra*, at 12–14. This applies to Instructions 20-22.

**Objection to Plaintiffs' Proposed Jury Instruction No. 20 – Wilk Alternative: Jury Decides if Per Se Case is Proven Intro**

*See* Defendants' Objections to Plaintiffs' Proposed Jury Instruction No. 12; Introduction to Objections, Section I, *supra*, at 12–14.

Defendants object to this Proposed Instruction as an improper departure from the pattern instructions and inaccurate statements of the law. The entirety of this Proposed Instruction appears nowhere in the current ABA Model Jury Instructions.

Based on their Proposed Instructions, Plaintiffs seek to turn what is unquestionably an issue of law—whether a given restraint is subject to *per se* treatment or the rule of reason—into a question of fact for the jury. But it is well settled that the ultimate question of which antitrust mode of analysis to apply is a question of law for the court, *not* the jury. *Deutscher Tennis Bund v. ATP Tour, Inc.*, 610 F.3d 820, 829 n.7 (3d Cir. 2010) ("The selection of a mode of antitrust analysis is a question of law over which [this Court] exercise[s] plenary review.") (citing *Arizona v. Maricopa Cty. Med. Soc'y*, 457 U.S. 332, 337 n.3 (1982)). Allowing the jury to determine the mode of analysis encroaches on the court's role: "The legal issues presented – that is, the identification of governing legal standards and their application to the facts found – are . . . for the courts to resolve." *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 454 (1986). *See In re Sulfuric Acid*, 703 F.3d at 1008 (whether the trial judge was correct in applying a rule of reason standard "is a question of law that we can decide"); *see also Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713, 724 (6th Cir. 2019); *Deutscher Tennis Bund*, 610 F.3d at 829 n.7; *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 363 F.3d 761, 772 (8th Cir. 2004); *In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, No. 21-cv-00305, 2022 U.S. Dist. LEXIS 173925, *39 (N.D. Ill. Sept. 26, 2022) ("The decision of what mode of analysis to apply—per se, rule of reason, or otherwise—is entirely a question of law for the Court, even though the question might involve factual disputes." (quoting *Markson v. CRST Int'l, Inc.*, No. 5:17-cv-01261, 2021 U.S. Dist. LEXIS 60368, at *13 (C.D. Cal. Feb. 10, 2021)).

The supermarket DAPs also sought to have the jury decide whether the case is Rule of Reason or *per se* and Judge Pratter rightly rejected that approach, which the Third Circuit affirmed. DAP Trial Transcript, 08-md-2002, Dec. 6, 2019, ECF No. 2121, 125:3–10; *In re Processed Egg Prods. Antitrust Litig.*, 850 F. App'x 142, 147 (3d Cir. 2021) (citing *In re Processed Egg Prods. Antitrust Litig.*, 962 F.3d 719, 728 (3d Cir. 2020)).

As Professors Areeda and Hovenkamp have explained, the court must make that determination because "the entire premise of the per se rule is that *judicial* experience with a certain class of restraints justifies more expedited treatment. Jurors not only lack judicial experience; they have no experience in the matter at all." Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶

1909b, at 309 (2d ed. 2005); *see also Leegin*, 551 U.S. at 886–87 (2007) ("[T]he per se rule is appropriate only after *courts have had considerable experience* with the type of restraint at issue, and only if *courts can predict with confidence* that it would be invalidated in all or almost all instances under the rule of reason." (emphasis added)); *In re Processed Egg Prods.*, 962 F.3d at 727 (recognizing that the "District Court [] decid[es] the analytical approach to be taken in the case").

Plaintiffs cite *Wilk v. American Medical Association*, 719 F.2d 207 (7th Cir. 1983), in an attempt to have the jury decide if the *per se* rule or the rule of reason applies. But *Wilk* did not turn this entire analysis over to the jury. Indeed, the *Wilk* court held that the district court's decision to give a *per se* instruction was wrong. *Id.* at 221. Moreover, *Wilk* demonstrated that the only time the jury is involved in determining whether the *per se* rule applies is when there is a factual question over what the restraint at issue *actually is*, which the court has determined may constitute a *per se* antitrust violation. *Id.* at 219 ("before the jury is freed to find a per se violation, the trial court must determine that there is evidence from which the jury may find that the defendants engaged in certain conduct—for example, a horizontal agreement among competitors to fix prices charged to consumers—which conduct, the court (not the jury) must decide, constitutes a per se violation. In such a case, it must be explained to the jury that its function is to decide whether certain conduct, described with precision in the instruction, did or did not occur.").

Providing the jury with alternative instructions is reserved for the rare situation in which a decision on the appropriate legal standard is dependent on a conclusion as to the basic facts. *See In re Wholesale Grocery Prods. Antitrust Litig.*, 752 F.3d 728, 734 (8th Cir. 2014) (recognizing that "[t]he crucial factual question" that must undergird its *per se* analysis is: "What are the terms of the allegedly anticompetitive agreement?"). In *In re Wholesale Grocery Products*, the legal question of which mode of analysis to apply depended on resolving the factual question as to what defendants had agreed upon, so the court held that the factual issue should be presented to the jury before the mode of analysis could be determined. *Id.* By contrast, the actual terms of Defendants' agreement in this case is not disputed. What is disputed is whether defendants ever entered into such an agreement. Accordingly, there is no basis to instruct the jury on the *per se* rule. Indeed, instructions that allow the jury to decide the mode of analysis are not even contemplated by the ABA Model Instructions.

**Plaintiffs' Proposed Instruction No. 21**

**Wilk Alternative: Limiting Domestic Supply**

The Plaintiffs claim that Defendants agreed to "limit production" or "restrict the domestic supply"of eggs and egg products.

When I refer to limiting production or restricting output, I am not just asking you to decide whether the domestic supply of eggs went up or down. It is a violation of the antitrust laws for competitors to agree to limit prodcution or restrict the domestic supply of eggs below what it would have been without their agreement, or to agree to restructions that unreasonably limit production or restrict the domestic supply of eggs.

I will give some examples.

If the level of supply went up during the relevant time period, but due to an agreement of competitors it went up less than it would have gone up without the agreement, that may be a violation of the antitrust laws. As an example, it is unlawful to agree to reduce supply from 10 to 5. It is also unlawful to agree to limit the increase in supply from 10 to 12 when without the agreement output naturally would have increased from 10 to 14. Both are examples of restricting output.

It is also true that not every decrease in supply is unlawful. If the level of supply went down but the decrease was not the result of an agreement of competitors, it is not a violation of the antitrust laws. It does not violate the antitrust law if supply declines from 10 to 5 where that decrease is not caused by an agreement among competitors. Likewise, it does not violate the antitrust laws where supply increases from 10 to 12 when it was expected to increase to 14, when the reason for the lower growth in production is something other than an agreement among competitors.

In deciding whether Defendants limited production or restricted domestic supply, it is for you to decide if Defendants caused the level of domestic supply to be less than it would have been without their agreement.

**Source:** *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 789-90 (6th Cir. 2002) (holding that evidence of injury to competition was sufficient where Plaintiff presented evidence that two of the three other manufacturers grew more slowly than they otherwise would have but for unlawful monopolization and " although [sales] in the . . . market grew, there was evidence showing that [the defendant's] actions caused higher prices and reduced consumer choice, both of which [were] harmful to competition"); *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637 (N.D. Ill. June 30, 2023) (Durkin, J.) (court approved admission of opinion "that a producer might restrict supply by slowing the rate of increase of production as opposed to an overall production cut. This may result in an increased production number, but one that

would have been higher but for the conspiracy. To the extent the facts bear out this possibility, Williams's opinion on this issue is helpful and will not be excluded").

**Objection to Plaintiffs' Proposed Jury Instruction No. 21 – Wilk Alternative: Limiting Domestic Supply**

This Proposed Instruction is identical to Proposed Instruction No. 14.  Defendants incorporate all of their Objections to Proposed Instruction No. 14 here.

**Plaintiffs' Proposed Instruction No. 22**

**Wilk Alternative: Jury Decides If Per Se Case is Proven**

Your first task is to decide if Plaintiffs have proven the existence of a conspiracy to restrict the domestic supply of eggs and egg products.

Plaintiffs claims that each ~~d~~Defendants ~~*[and/or other persons]* are competitors *[or potential competitors]*~~ and its co-conspirators ~~have~~ violated the Sherman Act by agreeing to ~~limit the production of *[product X]*~~ limit or restrict the supply of eggs and egg products in the United States. They claim the conspirators engaged in some or all of the following overt acts in furtherance of the conspiracy: (1) the early slaughter and early molting of hens to reduce the number of egg-laying hens; (2) the creation and enforcement of rules that restricted the number of egg-producing hens allowed in henhouses; (3)  the banning of backfilling of egg-producing hens; or (4) the export of eggs to reduce the number of eggs available in the domestic market, and therefore increase prices.

A business has the right to determine on its own how much of its product to produce, provided that the decision results from the exercise of an independent business judgment and not from any agreement with a competitor ~~*[or potential competitor]*~~. The Sherman Act prohibits agreements between competitors ~~*[or potential competitor]*~~ that ~~limit~~ restrict how much of a product one or more of them will produce.

~~By way of example, this includes an agreement by two or more competitors that one of them will reduce the amount of a product it produces in competition with the other's products, to set a quota on the amount of product to be produced, or to require one of them to discontinue the development or production of a product which the other will continue to produce and sell.~~

~~To prevail on this claim against a~~ To apply the per se standard, against a ~~d~~Defendant, ~~p~~Plaintiffs must prove, as to that Defendant, each of the following elements by a preponderance of the evidence:

To succeed on their claim, the Plaintiffs must prove each of the following propositions:

(1) defendants and their alleged co-conspirators ~~are *[or*~~ *were at relevant times]* competitors or potential competitors;

(2) defendants ~~*[or that defendant*~~ *and one or more other persons who were its competitor(s)]* knowingly entered into an agreement to limit or restrict the production of eggs.  To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason;

(3) ~~defendants agreed that production of [*product X*] would be limited by [*state the nature of the alleged limitation on production, e.g., that one of them would reduce the amount of the product X produced*]~~;

(4) ~~the agreement occurred in or affected interstate [*or foreign*] commerce;~~ and

(3~~5~~) plaintiffs were~~as~~ injured in their ~~its~~ business or property because of the agreement.

If you find that the evidence is insufficient to prove any one or more of these elements as to a particular ~~d~~Defendant or Plaintiff, then you must ~~find for that defendant and against plaintiff on plaintiff's claim that defendant conspired to limit production. If you find that the evidence is sufficient to prove all five elements as to that defendant, then you must find for plaintiff and against that defendant on plaintiff's claim with respect to an agreement to limit production~~ evaluate the Plaintiff's claim against that Defendant under a rule of reason. I will explain the rule of reason test later in these instructions.~~.~~

To assist you in applying this instruction, I will now provide further instructions as to the meaning of these terms.

**Source:** *Wilk v. American Medical Association*, 719 F.2d 207 (7th Cir. 1983); ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. C-4 (modified); *Federal Trade Comm'n v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411 (applied per se rule despite societal benefits to the action of the defendants) (1990); *National Collegiate Athletic Ass'n v. Board of Regents*, 468 U.S. 85, 100 (1984); *Hartford-Empire Co. v. United States*, 323 U.S. 386, 400-01, 406-07 (1945); *United States v. Andreas*, 216 F.3d 645, 667-68 (7th Cir. 2000); *General Leaseways, Inc. v. National Truck Leasing Ass'n*, 744 F.2d 588, 594 (7th Cir.1984).

**Objection to Plaintiffs' Proposed Jury Instruction No. 22 – Wilk Alternative: Jury Decides if Per Se Case is Proven**

This Proposed Instruction purports to allow the jury to decide if the case is to be judged under the Rule of Reason standard or the *per se* rule.  It is the law of the case that the Rule of Reason applies here.  *See* Defendants' Objections to Plaintiffs' Proposed Jury Instruction No. 12; Introduction to Objections, Section I, *supra*, at 12–14.

Additionally, Plaintiffs seek to turn what is unquestionably an issue of law—whether a given restraint is subject to *per se* treatment or the rule of reason—into a question of fact for the jury. Defendants incorporate all of their Objection to Plaintiffs' Proposed Jury Instruction No. 20 here.

**Plaintiffs' Proposed Instruction No. 23**

**Wilk Alternative: Conspiracy Definition**

Plaintiff~~s~~ allege~~s~~ that ~~d~~Defendant~~s~~ participated in a conspiracy to restrain trade by ~~*[alleged conduct or restraint]*~~ <u>limiting or restricting the domestic egg supply</u>. <u>Defendants deny that they entered into an agreement to restrict the domestic supply of eggs</u>.

A "conspiracy" is an express or implied agreement between two or more persons <u>or entities</u> to do something the law prohibits. ~~commit a crime~~. The basis of a conspiracy is an agreement or understanding between two or more persons. A conspiracy may be proven even if its goal~~[s]~~ [was~~; were~~] not accomplished.

In deciding whether the ~~charged~~ conspiracy existed, you may consider all of the circumstances, including the words and acts of each of the alleged participants.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-1 (modified) (paragraph 1); *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit* (2020 ed.), Instruction 5.09, at 107 (modified) (paragraphs 2 and 3).

**Objection to Plaintiffs' Proposed Jury Instruction No. 23 – Wilk Alternative: Conspiracy Definition**

Plaintiffs' Proposed Jury Instruction No. 23 is identical to Plaintiffs' Proposed Jury Instruction No. 15. Defendants incorporate all of their Objections to Proposed Instruction No. 15 here.

**Plaintiffs' Proposed Instruction No. 24**

**Wilk Alternative: Membership In Conspiracy**

[1]     To be a member of a conspiracy, ~~[the; a]~~ Defendant does not need to join it at the beginning, and he does not need to know all of the other members or all of the means by which the ~~illegal~~ unlawful goal~~[s]~~ of the conspiracy was~~; were~~ to be accomplished. <u>A defendant may join in the unlawful plan at some later time of the conspiracy. It is also not necessary that all of the means or methods claimed by the Plaintiffs were agreed upon by each individual Defendant to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members.</u> ~~The government must prove beyond a reasonable doubt that the defendant [you are considering] was aware of the illegal goal[s] of the conspiracy and knowingly joined the conspiracy.~~

~~[A defendant is not a member of a conspiracy just because he knew and/or associated with people who were involved in a conspiracy, knew there was a conspiracy, and/or was present during conspiratorial discussions.]~~

~~[The conspiracy must include at least one member other than the defendant who, at the time, was not [agovernment agent; a law enforcement officer; an informant].]~~

[2]     In deciding whether ~~[the; a]~~ Defendant joined the <u>alleged</u> ~~charged~~ conspiracy, you must base your decision only on what ~~[that; the]~~ Defendant did or said.  To determine what ~~[that; the]~~ Defendant did or said, you may consider ~~[that; the]~~ Defendant's own words or acts.  You may also use the words or acts of other persons to help you decide what the Defendant did or said.

[3]     If you find that the alleged conspiracy existed, then the acts and statements of the conspirators are binding on all of those whom you find were members of the conspiracy.

[4]     If you find ~~Once you have found~~ that a <u>d</u>~~D~~efendant is a member of a conspiracy, ~~he, she, or~~ that Defendant is presumed to remain a member and is responsible for all actions taken by all coconspirators during and in furtherance of the conspiracy until it is shown that the conspiracy has been completed or abandoned ~~[*or that the person has withdrawn from the conspiracy*]~~.

**Source:** *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit* (2022 ed.), Instruction 5.10, at 109 (paragraphs 1 & 2, modified as shown);

ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.),Ch. 2, Instruction A-4 (paragraphs 3 & 4, modified as shown).

**Objection to Plaintiffs' Proposed Jury Instruction No. 24 – Wilk Alternative: Membership In Conspiracy**

Plaintiffs' Proposed Jury Instruction No. 24 is identical to Plaintiffs' Proposed Jury Instruction No. 16.  Defendants incorporate all of their Objections to Proposed Instruction No. 16 here.

**Plaintiffs' Proposed Instruction No. 25**

**Wilk Alternative: Explanation of Conspiracy**

An agreement or understanding between two or more persons exists when they share a commitment to a common scheme. To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement. The agreement itself may have been entirely unspoken. A person can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the charged conspiracy. The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose. To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish a common purpose.

A conspiracy may be formed without all parties coming to an agreement at the same time [*such as where competitors separately accept invitations to participate in a plan to restrain trade*]. Similarly, it is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement. It is also not necessary that all of the means or methods claimed by pPlaintiffs were agreed upon to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members, nor that all of them employed all of the means or methods designed to achieve the goals of the agreement or conspiracy. It is the agreement or understanding to restrain trade [*in the way alleged by plaintiff*]by limiting or restricting the growth of the domestic egg supply that constitutes a conspiracy. Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed. It is enough that a participant knowingly agreed or conspired to use at least one of the means or methods designed to achieve the common objective.

A person who knowingly joins an existing conspiracy, or who participates only in part of a conspiracy with knowledge of the overall conspiracy, is just as responsible as if he or she had been one of those who formed or began the conspiracy and participated in every part of it.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-1 (modified) (other portions are included in other instructions) (paragraphs 1-2); ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-4; *Toys R Us, Inc. v. FTC*, 221 F.3d 928, 932, 935 (7th Cir. 2000) (finding horizontal conspiracy among toy manufacturers in response to a major retailer's demand that they not supply warehouse club stores particular toys sold to the major retailer where it was demonstrated that toy manufacturers agreed to the

demand only "on the condition that their competitors would do the same") (paragraph 3).

**Objection to Plaintiffs' Proposed Jury Instruction No. 25 – Wilk Alternative: Explanation of Conspiracy**

Plaintiffs' Proposed Jury Instruction No. 25 is identical to Plaintiffs' Proposed Jury Instruction No. 17. Defendants incorporate all of their Objections to Proposed Instruction No. 17 here.

**Plaintiffs' Proposed Instruction No. 26**

**Wilk Alternative: Evidence of Conspiracy**

[1]    Plaintiff<u>s</u> may prove the existence of the alleged [agreement] or conspiracy through direct evidence, circumstantial evidence, or both. Direct evidence is explicit and requires no inferences to establish the existence of the alleged conspiracy.

[2]    While conspiracies are often carried out in secret, secrecy is not an element of a conspiracy.  Conspirators may act openly or not, as best suits their purpose.

[3]    Direct proof of an agreement may not be available. A conspiracy may be proven by the circumstances or the acts of the members. Therefore, you may infer the existence of an agreement from what you find the alleged members actually did, as well as from the words they used. Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together, does not by itself establish the existence of a conspiracy unless the evidence tends to exclude the possibility that the persons or businesses were acting independently.

**Source(s):** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-1 (paragraph 1); *Federal Trade Comm'n v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411 (1990) (work stoppage conspiracy unlawful although it was publicly disclosed); *San Juan Racing Ass'n Inc. v. Asociacion de Jinetes de Puerto Rico, Inc., et al.,* 590 F.2d 31, 32 (1st Cir. 1979) (holding that jockeys had participated in conspiracy to illegally control prices in violation of antitrust laws finding that jockeys' "openness [did] not immunize agreement" where jockeys refused to race at night of scheduled race until their fees were increased); *United States v. Spock,* 416 F.2d 165, 170 (1st Cir. 1969) (paragraph 2); *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984) (paragraph 3).

**Objection to Plaintiffs' Proposed Jury Instruction No. 26 – Wilk Alternative: Evidence of Conspiracy**

Plaintiffs' Proposed Jury Instruction No. 26 is identical to Plaintiffs' Proposed Jury Instruction No. 18. Defendants incorporate all of their Objections to Proposed Instruction No. 18 here.

**Plaintiffs' Proposed Instruction No. 27**

**Wilk Alternative: Cause of Injury; Pass-Through Irrelevant**

Plaintiffs must prove they were injured in their business or property. Here, Plaintiffs complain that they were injured by paying more for eggs [egg products] due to the conspiracy. A Plaintiff has been injured in their business or property ~~if you find that~~ it paid an inflated price for eggs [egg products] as a result of ~~d~~Defendant's alleged antitrust violation. Plaintiff must only prove that it has been injured in its business or property, and need not prove an amount of injury.

~~Plaintiff must also offer evidence that establishes by a preponderance of the evidence that defendant's alleged illegal conduct was a material cause of plaintiff's injury. This means that plaintiff must have proved that some damage occurred to it as a result of defendant's alleged antitrust violation, and not some other cause.~~ Plaintiffs must also establish that the injury was a result of a Defendant's violation of the antitrust laws. To do so, Plaintiffs must also establish that the alleged illegal conduct was a material or substantial cause of Plaintiffs' injuries. Plaintiffs ~~is~~are not required to prove that a ~~d~~Defendant's alleged antitrust violation was the sole cause of ~~its~~their injur~~y~~ies; nor need ~~p~~Plaintiffs eliminate all other possible causes of injury. It is enough if ~~p~~Plaintiffs ~~has~~have proved that the alleged antitrust violation was a material or substantial cause of ~~its~~their injury.

In evaluating whether a Plaintiff was injured, I instruct you that under antitrust law, only the entity that purchased products directly from a liable defendant may collect damages. Thus, in evaluating whether a Plaintiff was injured, ~~That direct purchaser plaintiff is entitled to recover the full amount of the overcharge as damages, without regard to~~ you should not consider whether some portion of any injury suffered by a Plaintiff ~~the overcharge~~ was passed on to any of its ~~downstream~~ customers. ~~As a result, you are not to be concerned whether any of an overcharge was passed on to other businesses or individuals.~~

It is for this reason that there has been no evidence in this trial about whether any overcharge was passed on from Plaintiffs to others – that question is irrelevant under the law. Because there has been no evidence of pass through, and because you are to decide this case solely based on the evidence, you should not consider the issue in your deliberations.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction A-1 (paragraphs 3 and 4, modified); final two paragraphs: Instruction derived from ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction No. B-1 (explanatory note); *Paper Systems v. Nippon Paper Indus. Co.*, 281 F.3d 629, 632-34 (7th Cir. 2002) (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)).

**Objection to Plaintiffs' Proposed Jury Instruction No. 27 – Wilk Alternative: Cause of Injury; Pass-Through Irrelevant**

Plaintiffs' Proposed Jury Instruction No. 27 is identical to Plaintiffs' Proposed Jury Instruction No. 19. Defendants incorporate all of their Objections to Proposed Instruction No. 19 here.

**Plaintiffs' Proposed Instruction No. 28**

**Wilk Alternative: Rule of Reason**

~~Plaintiff challenges defendant's conduct under Section 1 of the Sherman Act.~~ ~~Section 1 prohibits contracts, combinations, and conspiracies~~ <u>You should only apply this instruction as to a Defendant if you decide that Plaintiffs have not proven that Defendants engaged in a conspiracy to restrict the domestic supply of eggs. In that case, you must then consider Plaintiffs' claims under a rule of reason standard to decide whether some or all of the Defendants entered into an agreement</u> that <u>had an anticompetitive effect and that is an</u> unreasonabl<u>e</u>~~y~~ restraint <u>of</u> trade.

<u>[¶]</u>

To establish a violation of Section 1 of the Sherman Act <u>under the rule of reason standard, must prove the following:</u>

1. the existence of a contract, combination, or conspiracy between or among at least two separate entities;
2. the ~~contract, combination, or~~ conspiracy unreasonably restrained~~s~~ trade;
3. ~~that the restraint affected~~s~~ interstate or foreign commerce; and~~
3. the restraint caused a ~~p~~<u>P</u>laintiff to suffer an injury to its business or property.

<u>If you find that a Plaintiff has proved these elements as to a Defendant, then you must find for that Plaintiff and against that Defendant.</u>

<u>If you find that the evidence is insufficient to prove any one or more of these elements as to a particular Defendant or Plaintiff, then you must find for that Defendant against that Plaintiff.</u>

<u>I have already instructed you as to what is meant by an agreement or conspiracy. I have also instructed you about whether a restraint has caused an injury to business of property. To assist you in applying this instruction, I will now instruct you as to what it means to unreasonably restrain trade.</u>

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 1, Instruction No. B-2(modified)

**Objection to Plaintiffs' Proposed Jury Instruction No. 28 – Wilk Alternative: Rule of Reason**

Defendants object to this Proposed Instruction to the extent the Proposed Instruction indicates that the jury has a choice between Rule of Reason and *per se*.

Defendants further object to Paragraph 4 of this Proposed Instruction as confusing – "If you find that the evidence is insufficient to prove any one or more of these elements as to a particular Defendant or Plaintiff, then you must find for that Defendant against that Plaintiff." All of the Plaintiffs are providing the same evidence, while each Defendant is providing unique evidence. Thus, if the jury were to find in favor of a particular Defendant, it would necessarily apply to all Plaintiffs, not any one particular Plaintiff.

Finally, Defendants object to this Proposed Instruction to the extent it refers to earlier, objected Proposed Instructions.

**Plaintiffs' Proposed Instruction No. 29**

**Wilk Alternative: Rule of Reason –**
**Proof Of Competitive Harm/Relevant Market**

[1]     ~~As I mentioned, t~~To prove that the challenged restraint is unreasonable, plaintiff first must demonstrate that the restraint resulted in a substantial harm to competition. ~~Although it may be relevant to the inquiry, harm that occurs merely to the individual business of plaintiff is not sufficient, by itself, to demonstrate harm to competition generally.¹ That is, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition.~~

[2]     ~~Furthermore,~~ Plaintiff must show that the harm to competition occurred in ~~an identified market, known as~~ a relevant market. There are two aspects to a relevant market.

[3]      The first aspect is known as the relevant product market. Plaintiffs contend the relevant product market is the market for eggs, including shell eggs and egg products. <u>One common way to think about the relevant product market is whether a seller of one product would be willing to shift their resources to selling a second product in response to an increase in the price of the second product.  To give an example not related to this case, take two orange growers. The first sells fresh squeezed juice, while the second grower process the oranges and sells orange juice concentrate. Generally speaking, a bottle of orange juice and a frozen container of orange juice concentrate are not reasonably interchangeable and, therefore, might be thought of as being in a separate product markets. However, it is possible that the fresh juice producer could quickly shift its resources to produce concentrate if the concentrate manufacturer raised its prices significantly and vice versa. Although purchasers of each product may not be willing or able to switch from one to the other, the ability of each manufacturer to alter its production could prevent the other manufacturer from raising prices significantly. Thus, in this example, fresh juice and concentrate would be included in the same market.</u>

[4]     The second aspect is known as the relevant geographic market. Plaintiffs contend the relevant geographic market is the United States.~~-It is p~~<u>P</u>laintiff~~'~~s<u>'</u> burden to prove the existence of a relevant market.

[5]     If you find that plaintiff has proven the existence of a relevant market, then you must determine whether plaintiff also has proven that the challenged restraint has [*or is likely to have*] a substantial harmful effect on competition in that market. A harmful effect on competition refers to a loss of some of the benefits of competition, such as lower prices or increased output. Plaintiffs claim the Defendants' action caused higher prices and restrained output from what it would have been absent the Defendants' actions. If the challenged conduct has not resulted in [*or is not likely to result in*] higher prices, decreased output, lower quality, or the loss of some other competitive benefit, then there has been no competitive harm, and you should find

that the challenged conduct was not unreasonable.

~~In determining whether the challenged restraint has produced [*or is likely to produce*] competitive harm, you may look at the following factors:~~

> ~~• the effect of the restraint on prices, output, product quality, and service;~~

> ~~• the purpose and nature of the restraint;~~

> ~~• the nature and structure of the relevant market;~~

> ~~• the number of competitors in the relevant market and the level of competition among them, both before and after the restraint was imposed; and~~

> ~~• whether the defendant possesses market power.~~

~~The last factor mentioned, market power, has been defined as an ability to profitably raise prices, for a sustained period of time, above those that would be charged in a competitive market.⁴ A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does not possess market power. The ability to charge higher prices for better products or services, however, is not market power. An important factor in determining whether defendant possesses market power is defendant's market share, that is, its percentage of the products or services sold in the relevant market by all competitors. Other factors that you may consider in determining whether defendant has market power include [*list factors relevant to the facts of the case, such as the existence of barriers to entry or potential competitors*]. If defendant does not possess a substantial market share, it is less likely that defendant possesses market power. If defendant does not possess market power, it is less likely that the challenged restraint has resulted [*or will result*] in a substantial harmful effect on competition in the market.~~

Source: Paragraphs 1, 2, 4, 5: ABA Model Jury Instructions in Civil Antitrust Cases (2016 Edition) Ch. 1, Instruction No. C-3B (modified). Paragraph 3 ABA Model Jury Instructions in Civil Antitrust Cases (2016 Ed.), Ch. 3, Section A, Instruction No. 5 (supply side substitutability).

**Objection to Plaintiffs' Proposed Jury Instruction No. 29 – Wilk Alternative: Rule of Reason – Proof of Competitive Harm/Relevant Market**

Defendants object to this Proposed Instruction as inaccurately stating the law as well as being a one-sided and unnecessary departure from the pattern instructions.

First, Plaintiffs fail to provide ABA Model Instruction 3A: "Rule of Reason – Overview." ABA Model Instructions, Ch. 1, Section C, Instruction No. 1, at 3.

Second, in Paragraph 1, Plaintiffs delete language from the ABA Model Instructions about "harm to competition" without providing a reason.

Third, Paragraph 3 purports to instruct the jury as to how to define a relevant market, but does so in a way that misstates the law and prejudicially alters language from the ABA Model Instructions. The default method for defining the relevant market is based on products that are "reasonably interchangeable" with the products at issue – here "egg products." *See Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*, 950 F.3d 911, 916 (7th Cir. 2020). And that is the method provided for by the ABA Model Instructions. See ABA Model Instructions, Ch. 3, Section A, Instruction 4, at 108. Plaintiffs' Proposed Instruction, however, does not include any such language. Rather, Plaintiffs improperly refer only to "supply substitutability" as the method for determining a relevant market. As the ABA Model Instructions make clear, at best, "supply substitutability" is an additional means for the jury to consider in determining a relevant product market, not a standalone means for defining it. *See* ABA Model Instruction, Ch. 3, Section A, Instruction 5, at 112 ("In deciding whether plaintiff has proven a relevant product market, you may ***also*** consider what the law refers to as the "cross-elasticity of supply" . . .") (emphasis added). The District Court in the previous two trials followed the ABA Model Instructions. *See* DAP Instruction No. 19, at 38–41, Tr. at 254:11–257:23; DPP Instruction No. 16, at 31–34, Tr. at 132:12–135:19; *see also* Defendants' Proposed Instruction No. 36, at 39–40.

Additionally, in Paragraph 3, Plaintiffs inexplicably alter the example provided by the ABA Model Instructions.

Moreover, Plaintiffs do not include paragraph 3 of the ABA Model Instruction, though the basis of their Proposed Instruction is the ABA Model Instruction. They provide no basis for this omission, nor do they indicate that they, in fact, omitted the paragraph. *Id*. The paragraph is a necessary component of a "supply substitutability" instruction as it provides the necessary guidance to when firms can be considered potential alternative suppliers. If the Court is inclined to include "supply substitutability" as an additional means for determining the relevant market, paragraph 3 of the Model Instruction should be included as well.

Defendants object to Paragraph 5 of this Proposed Instruction as it does not properly instruct the jury that in determining competitive harm they must only consider whether the conduct of those found to be members of the alleged conspiracy resulted in competitive harm. *See* Defendants' Proposed Instruction No. 38 and Defendants' Objection to Plaintiffs' Proposed Jury Instruction No. 16.

Defendants further object to this Proposed Instruction as it deleted almost half of the Model Instruction it purports to use as the source. Plaintiffs, for no reason, delete all of the factors a jury may consider in determining whether the alleged conspirators' conduct produced a competitive harm. *See* ABA Model Instructions, Ch. 1, Section C, Instruction 2 (3B), at 5-6.

Finally, Plaintiffs fail to provide an Instruction regarding a finding of market power (as required by the Seventh Circuit). *See* Defendants' Proposed Instruction No. 37.

**Plaintiffs' Proposed Instruction No. 30**

**Wilk Alternative:  Evidence Of Competitive Benefits**

If you find that plaintiff has proven that the challenged restraint resulted in substantial harm to competition in a relevant market, then you next must determine whether the restraint also benefits competition in other ways.

In considering whether the challenged restraints benefitted or harmed competition, you may consider various factors including, but not limited to: whether the challenged restraints were demanded by customers, increased or decreased production, consumer choice, prices,  and  product quality. Evidence regarding the ethical treatment of laying hens may be considered with respect to issues such as whether a challenged restraint affected output or product quality, widened customer choice, or met customer demand. However, the ethical treatment of laying hens as a societal benefit standing alone is not in and itself a procompetitive benefit.

If you find that the challenged restraint does result in competitive benefits, then you also must consider whether the restraint was reasonably necessary to achieve the benefits. If plaintiff proves that the same benefits could have been readily achieved by other, reasonably available alternative means that create substantially less harm to competition, then they cannot be used to justify the restraint.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases ( 2016 Edition), Chapter 1, Instruction 3C**.**

**Objection to Plaintiffs' Proposed Jury Instruction No. 30 – Wilk Alternative: Evidence of Competitive Benefits**

Defendants object to this Proposed Instruction to the extent that Plaintiffs inappropriately strike "whether the challenged restraints were demanded by customers" as an example of a competitive benefit. *See* DAP Instruction No. 20, at 42, Tr. at 258:3–8.

Defendants further object to Plaintiffs' subtle, but prejudicial, alteration of the instructions given in the previous two trials. Though this Proposed Instruction is meant to detail types of competitive benefits, Plaintiffs include "decreased" production in the list. Similarly, Judge Pratter had instructed that "Evidence regarding the ethical treatment of laying hens may be considered with respect to issues such as whether an alleged restraint increased output, improved product quality, widened customer choice, or met customer demand" but Plaintiffs alter that language to "*affected* output or product quality," which is not necessarily a compeitive benefit. Plaintiffs also strike "widened customer choice, or met customer demand" for no reason, although increasing customer choice and meeting demand are quintessential procompetitive benefits.

Additionally, in this Proposed Instruction, which dedicated to competitive benefits, Plaintiffs introduce the matter by saying "In considering whether the challenged restraints benefitted ***or harmed*** competition . . ." Yet, in the prior Proposed Instruction related to proof of competitive harm, Plaintiffs never use similar language or mention competitive benefits at all. This instruction should have no mention of competitive harm at all.

**Plaintiffs' Proposed Instruction No. 31**

**Wilk Alternative: Balancing The Competitive Effects**

If you find that the challenged restraint was reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same restraint.

If the competitive harm substantially outweighs the competitive benefits, then the challenged restraint is unreasonable. If the competitive harm does not substantially outweigh the competitive benefits, then the challenged restraint is not unreasonable. In conducting this analysis, you must consider the benefits and harm to competition and consumers, not just to a single competitor or group of competitors. Plaintiff bears the burden of proving that the anticompetitive effect of the conduct substantially outweighs its benefits.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 Edition), June 2016), Chapter 1 Instruction 3D.

**Objection to Plaintiffs' Proposed Jury Instruction No. 31 – Wilk Alternative: Balancing The Competitive Effects**

Plaintiffs' language substantially mirrors the ABA Model Instructions, as does Defendants' Proposed Instruction No. 40.  Defendants believe that the slight modifications Defendants made to the ABA Model Instruction are appropriate given the nature of the case.

**Plaintiffs' Proposed Instruction No. 32**

**Wilk Alternative: Motive Not A Defense**

If you find that a ~~d~~Defendant engaged in ~~a price-fixing~~ the conspiracy, it is not a defense for that ~~d~~Defendant to claim that it acted with good motives, that it thought its conduct was legal, that it thought its conduct resulted in other societal benefit, or that ~~the~~its conduct may have had some good results. If the conspiracy restrained trade, it is not a defense that the conspiracy was for a purpose other than to restrict egg supply. Moreover, a Defendant cannot justify engaging in a conspiracy by claiming it would have lost money had it not entered into the unlawful agreement.

A party may not justify an agreement to restrain competition based on the assumption or belief that it will improve a product's quality or be in the interests of customers. Customers are to decide through competition what is in their interests. Sellers may not agree to restrain the market because they think it is in the customers' interests. The antitrust laws are based on the view that competition will produce not only lower prices, but also better goods and services.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. B-3 (modified); *Wilk v. American Medical Association*, 719 F.2d 207, ___ (7th Cir. 1983); Paragraph 2 is taken in modified form from *The PLS.COM, LLC v. The National Association of Realtors, et al.*, 32 F.4th 824, 836 (9th Cir. 2022) (quoting *Nat'l Soc'y of Prof. Eng'rs v. United States*, 435 U.S. 679, 695 (1978).

**Objection to Plaintiffs' Proposed Jury Instruction No. 32 – Wilk Alternative: Motive Not a Defense**

Defendants object to this Proposed Instruction as an improper departure from the ABA Model Instructions.  *See* ABA Model Instructions, Ch. 2, Section B, Instruction 3, at 29.

Moreover, the subject matter of this Proposed Instruction is to be given only in a *per se* case.  *See* Notes to ABA Model Instructions, Ch. 2, Section B, Instruction 3, at 29 ("This instruction is appropriate where the court determines that the alleged restraint, if proven, is illegal per se.  If the court were to determine that the alleged restraint should be evaluated under the rule of reason because of the possible procompetitive benefits of the restraint, then the rule of reason instruction should be given instead.").  Given that the case is to be judged under the Rule of Reason, this Proposed Instruction is inappropriate.  As previously discussed, the Rule of Reason is the law of this case.  *See* Defendants' Objections to Plaintiffs' Proposed Jury Instruction Nos. 12; Introduction to Objections, Section I, *supra*, at 12–14.  In fact, Plaintiffs inexplicably include this Proposed Instruction in their Rule of Reason instructions.

Additionally, this Proposed Instruction wrongly suggests that the Defendants' motivations for creating the alleged restraints are irrelevant and should not be considered under the rule of reason.  To the contrary, the purpose behind the restraint can be considered by the factfinder in determining whether the restraint is reasonable.  *See Havoco of Am., Ltd. v. Shell Oil Co.*, 626 F.2d 549, 557–58 (7th Cir. 1980) ("The history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, [and] the purpose or end sought to be attained, are all relevant facts. This is not because a good intention will save an otherwise objectionable regulation or the reverse; but because knowledge of intent may help the court to interpret facts and to predict consequences." (quoting *Chicago Bd. of Trade v. United States*, 246 U.S. 231, 238 (1918))).

Defendants further object to the extent the Proposed Instruction implies that the reason why a defendant entered into an agreement is irrelevant.  As an agreement is a meeting of the mind, and therefore it is crucial to understand what a defendant was agreeing to in order to determine whether an agreement existed.  Defendants object to this Proposed Instruction as an improper deviation from the pattern instructions.  *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) ("[T]he antitrust plaintiff should present direct or circumstantial evidence that reasonably tends to prove that the manufacturer and others 'had a conscious commitment to a common scheme designed to achieve an unlawful objective.'").  Indeed, Plaintiffs' language that "it is not a defense that the conspiracy was for a purpose other than to restrict egg supply" is contrary to the law and to what Plaintiffs must prove in this case.  If the agreement or "conspiracy" was not to restrict egg supply, then Plaintiffs have not proved the conspiracy that they alleged.

For this reason, Judge Pratter was careful to distinguish between motive and intent.  While motive is not an element of the Sherman Act, Judge Pratter noted that motive may be indicative of intent, which is extremely relevant to determining whether one agreed to do something that is unlawful.  DAP Instruction No. 23, at 46, Tr. at 261:10-25.

100

Finally, all of Plaintiffs' additions to the Model Instruction will only serve to confuse the jury and mischaracterize the evidence. Defendants have never argued that they entered into a conspiracy to reduce supply because they were losing money or that they were imposing unwanted benefits on society. Plaintiffs' Proposed Instruction presumes that there existed a conspiracy to reduce supply.

**Second Alternative to Per Se Instructions: Rule of Reason**

If the Court declines to use the per se instructions or the *Wilk* Instructions, Plaintiffs propose the following Instructions.

**Plaintiffs' Proposed Instruction No. 33**

**Rule of Reason Alternative: Sherman Act Section 1**

Plaintiff challenges defendant's conduct under Section 1 of the Sherman Act. Section 1 prohibits contracts, combinations, and conspiracies that unreasonably restrain trade.

Plaintiffs claim that each Defendant and its co-conspirators violated the Sherman Act by agreeing to actions that would limit or restrict the supply of eggs and egg products in the United States. Plaintiffs claim the conspirators agreed to engage in some or all of the following: (1) the early slaughter and early molting of hens to reduce the number of egg-laying hens; (2) the creation and enforcement of rules that restricted the number of egg-producing hens allowed in henhouses; (3) the banning of backfilling of egg-producing hens; or (4) the export of eggs to reduce the number of eggs available in the domestic market and therefore increase prices. The defendants have denied these allegations.

Defendant deny these claims.

To establish a violation of Section 1 of the Sherman Act, plaintiff must prove the following:

1. the existence of a contract, combination, or conspiracy between or among at least two separate entities;
2. the ~~contract, combination, or~~ conspiracy unreasonably restrain~~ed~~s trade;
~~[3] that the restraint affected~~s ~~interstate or foreign commerce; and~~
[3] the restraint caused a ~~p~~Plaintiff to suffer an injury to its business or property.

Source: **ABA Model Jury Instructions in Civil Antitrust Cases** (2016 Edition) Ch. 1, Instruction No. B (modified).

**Second Alternative to Per Se Instructions: Rule of Reason**

**Objection to Plaintiffs' Proposed Jury Instruction No. 33 – Rule of Reason Alternative: Sherman Act Section 1**

Defendants object to this Proposed Instruction as an improper departure from the pattern instructions.

Defendants specifically object to Paragraph 2 of the Proposed Instruction as it mischaracterizes the alleged conspiracy Plaintiffs are prosecuting. Instead of describing the alleged conspiracy as a single conspiracy to reduce/limit/restrict the supply of eggs that included three components, Plaintiffs offer the following description – "agreeing to actions that would limit or restrict the supply of eggs and egg products in the United States. Plaintiffs claim the conspirators agreed to engage in some or all of the following . . ." Plaintiffs then go on to list 4 components, two of which belong to the UEP Certified Program. But, Plaintiffs never once mention the Certified Program in any of their Proposed Instructions, even though that is the centerpiece of their case.

Additionally, as formulated, Plaintiffs improperly imply that the jury could find a conspiracy even if it did not include all of the challenged components. As discussed *supra*, Plaintiffs may not revise the conspiracy they have been prosecuting for years at this late stage and certainly they may not allow the jury various conspiracy alternatives from which to choose. The Court should apply the doctrine of judicial estoppel to prevent Plaintiffs from re-framing the conspiracy through the jury instructions. *See* Introduction to Objections, Section II, *supra*, at 15–18.

103

## Plaintiffs' Proposed Instruction No. 34

## Rule of Reason Alternative:  Rule of Reason Overview

Under Section 1 of the Sherman Act, a restraint of trade is illegal only if it is found to be unreasonable. You must determine, therefore, whether the restraint challenged here —[*describe it*]—is unreasonable. In making this determination, you must first determine whether plaintiff has proven that the challenged restraint has resulted in a substantial harm to competition in a relevant product and geographic market. If you find that plaintiff has proven that the challenged restraint results in a substantial harm to competition in a relevant market, then you must consider whether the restraint produces countervailing competitive benefits.  If you find that it does, then you must balance the competitive harm against the competitive benefit. The challenged restraint is illegal under Section 1 of the Sherman Act only if you find that the competitive harm substantially outweighs the competitive benefit.[2]

I will now review each step of the analysis in more detail.

Source: **ABA Model Jury Instructions in Civil Antitrust Cases** (2016 Edition) Ch. 1, Instruction No. C-3A (modified).

**Objection to Plaintiffs' Proposed Jury Instruction No. 34 – Rule of Reason Overview**

Defendants object to the Proposed Instruction as it does not clearly define that the "challenged restraints" must all be part of a single conspiracy. *See* Introduction to Objections, Section II, *supra*, at 15–18; Objection to Plaintiffs' Proposed Jury Instruction No. 33. Defendants, therefore, request that Defendants' Proposed Instruction No. 18 be given, as it mirrors the instruction given by Judge Pratter and accurately reflects that the conspiracy here must include all challenged restraints.

**Plaintiffs' Proposed Instruction No. 35**

**Rule of Reason Alternative:  Limiting Domestic Supply**

The Plaintiffs claim that Defendants agreed to "limit production" or "restrict the domestic supply" of eggs and egg products.

When I refer to limiting production or restricting output, I am not just asking you to decide whether the domestic supply of eggs went up or down. It is a violation of the antitrust laws for competitors to agree to restructions that unreasonably limit production or restrict the domestic supply of eggs.

I will give some examples.

If the level of supply went up during the relevant time period, but due to an agreement of competitors it went up less than it would have gone up without the agreement, that may be a violation of the antitrust laws. As an example, it is unlawful to agree to reduce supply from 10 to 5. It is also unlawful to agree to limit the increase in supply from 10 to 12 when without the agreement output naturally would have increased from 10 to 14. Both are examples of restricting output.

It is also true that not every decrease in supply is unlawful. If the level of supply went down but the decrease was not the result of an agreement of competitors, it is not a violation of the antitrust laws. It does not violate the antitrust law if supply declines from 10 to 5 where that decrease is not caused by an agreement among competitors. Likewise, it does not violate the antitrust laws where supply increases from 10 to 12 when it was expected to increase to 14, when the reason for the lower growth in production is something other than an agreement among competitors.

In deciding whether Defendants limited production or restricted domestic supply, it is for you to decide if Defendants caused the level of domestic supply to be less than it would have been without their agreement.

**Source:** *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 789-90 (6th Cir. 2002) (holding that evidence of injury to competition was sufficient where Plaintiff presented evidence that two of the three other manufacturers grew more slowly than they otherwise would have but for unlawful monopolization and " although [sales] in the . . . market grew, there was evidence showing that [the defendant's] actions caused higher prices and reduced consumer choice, both of which [were] harmful to competition"); *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637 (N.D. Ill. June 30, 2023) (Durkin, J.) (court approved admission of opinion "that a producer might restrict supply by slowing the rate of increase of production as opposed to an overall production cut. This may result in an increased production number, but one that would have been higher but for the conspiracy. To the extent the facts bear out this possibility, Williams's opinion on this issue is helpful and will not be excluded").

**Objection to Plaintiffs' Proposed Jury Instruction No. 35 – Rule of Reason Alternative: Limiting Domestic Supply**

Plaintiffs' Proposed Jury Instruction No. 35 is identical to Plaintiffs' Proposed Jury Instruction No. 14.  Defendants incorporate all of their Objections to Proposed Instruction No. 14 here.

**Plaintiffs' Proposed Instruction No. 36**

**Rule of Reason Alternative: Conspiracy Definition**

Plaintiff~~s~~ allege~~s~~ that ~~d~~Defendant~~s~~ participated in a conspiracy to restrain trade by **[~~alleged conduct or restraint~~]** <u>limiting or restricting the domestic egg supply</u>. <u>Defendants deny that they entered into an agreement to restrict the domestic supply of eggs</u>.

A "conspiracy" is an express or implied agreement between two or more persons <u>or entities</u> to do something the law prohibits. ~~Commit a crime~~. The basis of a conspiracy is an agreement or understanding between two or more persons. A conspiracy may be proven even if its goal~~[s]~~ ~~[was; were]~~ not accomplished.

In deciding whether the ~~charged~~ conspiracy existed, you may consider all of the circumstances, including the words and acts of each of the alleged participants.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-1 (modified) (paragraph 1); *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit* (2020 ed.), Instruction 5.09, at 107 (modified) (paragraphs 2 and 3).

**Objection to Plaintiffs' Proposed Jury Instruction No. 36 – Rule of Reason Alternative: Conspiracy Definition**

Plaintiffs' Proposed Jury Instruction No. 36 is identical to Plaintiffs' Proposed Jury Instruction No. 15. Defendants incorporate all of their Objections to Proposed Instruction No. 15 here.

## Plaintiffs' Proposed Instruction No. 37

## Rule of Reason Alternative: Membership In Conspiracy

[1] To be a member of a conspiracy, ~~[the; a]~~ Defendant does not need to join it at the beginning, and he does not need to know all of the other members or all of the means by which the ~~illegal~~ <u>unlawful</u> goal~~[s]~~ of the conspiracy was~~; were~~ to be accomplished. <u>A defendant may join in the unlawful plan at some later time of the conspiracy. It is also not necessary that all of the means or methods claimed by the Plaintiffs were agreed upon by each individual Defendant to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members.</u> ~~The government must prove beyond a reasonable doubt that the defendant [you are considering] was aware of the illegal goal[s] of the conspiracy and knowingly joined the conspiracy.~~

~~[A defendant is not a member of a conspiracy just because he knew and/or associated with people who were involved in a conspiracy, knew there was a conspiracy, and/or was present during conspiratorial discussions.]~~

~~[The conspiracy must include at least one member other than the defendant who, at the time, was not [agovernment agent; a law enforcement officer; an informant].]~~

[2] In deciding whether ~~[the; a]~~ Defendant joined the <u>alleged</u> ~~charged~~ conspiracy, you must base your decision only on what ~~[that; the]~~ Defendant did or said. To determine what ~~[that; the]~~ Defendant did or said, you may consider ~~[that; the]~~ Defendant's own words or acts. You may also use the words or acts of other persons to help you decide what the Defendant did or said.

[3] If you find that the alleged conspiracy existed, then the acts and statements of the conspirators are binding on all of those whom you find were members of the conspiracy.

[4] If you find ~~Once you have found~~ that a ~~d~~<u>D</u>efendant is a member of a conspiracy, ~~he, she, or~~ that Defendant is presumed to remain a member and is responsible for all actions taken by all coconspirators during and in furtherance of the conspiracy until it is shown that the conspiracy has been completed or abandoned ~~[*or that the person has withdrawn from the conspiracy*]~~.

**Source:** *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit* (2022 ed.), Instruction 5.10, at 109 (paragraphs 1 & 2, modified as shown);

ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.),Ch. 2, Instruction A-4 (paragraphs 3 & 4 modified as shown).

**Objection to Plaintiffs' Proposed Jury Instruction No. 37 – Rule of Reason Alternative: Membership in Conspiracy**

Plaintiffs' Proposed Jury Instruction No. 37 is identical to Plaintiffs' Proposed Jury Instruction No. 16. Defendants incorporate all of their Objections to Proposed Instruction No. 16 here.

**Plaintiffs' Proposed Instruction No. 38**

**Rule of Reason Alternative:  Explanation of Conspiracy**

An agreement or understanding between two or more persons exists when they share a commitment to a common scheme. To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement. The agreement itself may have been entirely unspoken. A person can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the charged conspiracy. The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose. To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish a common purpose.

A conspiracy may be formed without all parties coming to an agreement at the same time [*such as where competitors separately accept invitations to participate in a plan to restrain trade*]. Similarly, it is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement. It is also not necessary that all of the means or methods claimed by pPlaintiffs were agreed upon to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members, nor that all of them employed all of the means or methods designed to achieve the goals of the agreement or conspiracy. It is the agreement or understanding to restrain trade [*in the way alleged by plaintiff*] by limiting or restricting the growth of the domestic egg supply that constitutes a conspiracy. Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed. It is enough that a participant knowingly agreed or conspired to use at least one of the means or methods designed to achieve the common objective.

A person who knowingly joins an existing conspiracy, or who participates only in part of a conspiracy with knowledge of the overall conspiracy, is just as responsible as if he or she had been one of those who formed or began the conspiracy and participated in every part of it.

**Source:**  ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-1 (modified) (other portions are included in other instructions) (paragraphs 1-2); ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-4; *Toys R Us, Inc. V. FTC*, 221 F.3d 928, 932, 935 (7th Cir. 2000) (finding horizontal conspiracy among toy manufacturers in response to a major retailer's demand that they not supply warehouse club stores particular toys sold to the major retailer where it was demonstrated that toy manufacturers agreed to the

113

demand only "on the condition that their competitors would do the same") (paragraph 3).

**Objection to Plaintiffs' Proposed Jury Instruction No. 38 – Rule of Reason Alternative: Explanation of Conspiracy**

Plaintiffs' Proposed Jury Instruction No. 38 is identical to Plaintiffs' Proposed Jury Instruction No. 17. Defendants incorporate all of their Objections to Proposed Instruction No. 17 here.

**Plaintiffs' Proposed Instruction No. 39**

**Rule of Reason Alternative: Evidence of Conspiracy**

[1]     Plaintiffs may prove the existence of the alleged [agreement] or conspiracy through direct evidence, circumstantial evidence, or both. Direct evidence is explicit and requires no inferences to establish the existence of the alleged conspiracy.

[2]     While conspiracies are often carried out in secret, secrecy is not an element of a conspiracy. Conspirators may act openly or not, as best suits their purpose.

[3]     Direct proof of an agreement may not be available. A conspiracy may be proven by the circumstances or the acts of the members. Therefore, you may infer the existence of an agreement from what you find the alleged members actually did, as well as from the words they used. Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together, does not by itself establish the existence of a conspiracy unless the evidence tends to exclude the possibility that the persons or businesses were acting independently.

**Source(s):** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. A-1 (paragraph 1); *Federal Trade Comm'n v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411 (1990) (work stoppage conspiracy unlawful although it was publicly disclosed); *San Juan Racing Ass'n Inc. V. Asociacion de Jinetes de Puerto Rico, Inc., et al.,* 590 F.2d 31, 32 (1st Cir. 1979) (holding that jockeys had participated in conspiracy to illegally control prices in viola)ion of antitrust laws finding that jockeys' "openness [did] not immunize agreement" where jockeys refused to race at night of scheduled race until their fees were increased); *United States v. Spock,* 416 F.2d 165, 170 (1st Cir. 1969) (paragraph 2); *Monsanto Co. V. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984) (paragraph 3).

**Objection to Plaintiffs' Proposed Jury Instruction No. 39 – Rule of Reason Alternative: Evidence of Conspiracy**

Plaintiffs' Proposed Jury Instruction No. 39 is identical to Plaintiffs' Proposed Jury Instruction No. 18.  Defendants incorporate all of their Objections to Proposed Instruction No. 18 here.

**Plaintiffs' Proposed Instruction No. 40**

**Rule of Reason Alternative:**
**Proof Of Competitive Harm/Relevant Market**

[1]     ~~As I mentioned, t~~To prove that the challenged restraint is unreasonable, plaintiff first must demonstrate that the restraint has resulted [*or is likely to result*] in a substantial harm to competition. ~~Although it may be relevant to the inquiry, harm that occurs merely to the individual business of plaintiff is not sufficient, by itself, to demonstrate harm to competition generally.¹ That is, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition.~~

[2]     ~~Furthermore,~~ Plaintiff must show that the harm to competition occurred in ~~an identified market, known as~~ a relevant market. There are two aspects to a relevant market. ~~²~~Plaintiffs contend the relevant product market is the market for eggs, including shell eggs and egg products.

[3]     The first aspect is known as the relevant product market. Plaintiffs contend the relevant product market is the market for eggs, including shell eggs and egg products. <u>One common way to think about the relevant product market is whether a seller of one product would be willing to shift their resources to selling a second product in response to an increase in the price of the second product.  To give an example not related to this case, take two orange growers. The first sells fresh squeezed juice, while the second grower process the oranges and sells orange juice concentrate. Generally speaking, a bottle of orange juice and a frozen container of orange juice concentrate are not reasonably interchangeable and, therefore, might be thought of as being in a separate product markets. However, it is possible that the fresh juice producer could quickly shift its resources to produce concentrate if the concentrate manufacturer raised its prices significantly and vice versa. Although purchasers of each product may not be willing or able to switch from one to the other, the ability of each manufacturer to alter its production could prevent the other manufacturer from raising prices significantly. Thus, in this example, fresh juice and concentrate would be included in the same market.</u>

[4]     The second aspect is known as the relevant geographic market. Plaintiffs contend the relevant geographic market is the United States.~~ It is p~~<u>P</u>laintiff~~-s~~'<u>'</u> burden to prove the existence of a relevant market.

[5]     If you find that plaintiff has proven the existence of a relevant market, then you must determine whether plaintiff also has proven that the challenged restraint has [*or is likely to have*] a substantial harmful effect on competition in that market. A harmful effect on competition refers to a loss of some of the benefits of competition, such as lower prices or increased output. Plaintiffs claim the Defendants' action caused higher prices and restrained output from what it would have been absent the Defendants' actions. If the challenged conduct has not resulted in [*or is not likely to*

118

*result in*] higher prices, decreased output, lower quality, or the loss of some other competitive benefit, then there has been no competitive harm, and you should find that the challenged conduct was not unreasonable.

~~In determining whether the challenged restraint has produced [*or is likely to produce*] competitive harm, you may look at the following factors:~~

> ~~• the effect of the restraint on prices, output, product quality, and service;~~

> ~~• the purpose and nature of the restraint;~~

> ~~• the nature and structure of the relevant market;~~

> ~~• the number of competitors in the relevant market and the level of competition among them, both before and after the restraint was imposed; and~~

> ~~• whether the defendant possesses market power.~~

~~The last factor mentioned, market power, has been defined as an ability to profitably raise prices, for a sustained period of time, above those that would be charged in a competitive market.[4] A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does not possess market power. The ability to charge higher prices for better products or services, however, is not market power. An important factor in determining whether defendant possesses market power is defendant's market share, that is, its percentage of the products or services sold in the relevant market by all competitors. Other factors that you may consider in determining whether defendant has market power include [*list factors relevant to the facts of the case, such as the existence of barriers to entry or potential competitors*]. If defendant does not possess a substantial market share, it is less likely that defendant possesses market power. If defendant does not possess market power, it is less likely that the challenged restraint has resulted [*or will result*] in a substantial harmful effect on competition in the market.~~ Source: Paragraphs 1, 2, 4, 5: ABA Model Jury Instructions in Civil Antitrust Cases (2016 Edition) Ch. 1, Instruction No. C-3B (modified). Paragraph 3 ABA Model Jury Instructions in Civil Antitrust Cases (2016 Ed.), Ch. 3, Section A, Instruction No. 5 (supply side substitutability).

**Objection to Plaintiffs' Proposed Jury Instruction No. 40 – Rule of Reason Alternative: Proof of Competitive Harm/Relevant Market**

Plaintiffs' Proposed Jury Instruction No. 40 is identical to Plaintiffs' Proposed Jury Instruction No. 29.  Defendants incorporate all of their Objections to Proposed Instruction No. 29 here.

## Plaintiffs' Proposed Instruction No. 41

### Rule of Reason Alternative: Evidence Of Competitive Benefits

If you find that plaintiff has proven that the challenged restraint resulted in substantial harm to competition in a relevant market, then you next must determine whether the restraint also benefits competition in other ways.

In considering whether the challenged restraints benefitted or harmed competition, you may consider various factors including, but not limited to: ~~whether the challenged restraints were demanded by customers,~~ increased or decreased production, consumer choice, prices, and product quality. Evidence regarding the ethical treatment of laying hens may be considered with respect to issues such as whether a challenged restraint affected output or product quality~~, widened customer choice, or met customer demand~~. However, the ethical treatment of laying hens as a societal benefit ~~standing alone~~ is not ~~in and itself~~ a procompetitive benefit.

If you find that the challenged restraint does result in competitive benefits, then you also must consider whether the restraint was reasonably necessary to achieve the benefits. If plaintiff proves that the same benefits could have been readily achieved by other, reasonably available alternative means that create substantially less harm to competition, then they cannot be used to justify the restraint.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases ( 2016 Edition), Chapter 1, Instruction 3C**.**

**Objection to Plaintiffs' Proposed Jury Instruction No. 41 – Rule of Reason Alternative: Evidence of Competitive Benefits**

Plaintiffs' Proposed Jury Instruction No. 41 is identical to Plaintiffs' Proposed Jury Instruction No. 30. Defendants incorporate all of their Objections to Proposed Instruction No. 30 here.

## Plaintiffs' Proposed Instruction No. 42

### Rule of Reason Alternative: Balancing The Competitive Effects

If you find that the challenged restraint was reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same restraint.

If the competitive harm substantially outweighs the competitive benefits, then the challenged restraint is unreasonable. If the competitive harm does not substantially outweigh the competitive benefits, then the challenged restraint is not unreasonable. In conducting this analysis, you must consider the benefits and harm to competition and consumers, not just to a single competitor or group of competitors. Plaintiff bears the burden of proving that the anticompetitive effect of the conduct substantially outweighs its benefits.

**Souce:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 Edition), June 2016), Chapter 1 Instruction 3D.

**Objection to Plaintiffs' Proposed Jury Instruction No. 42 – Rule of Reason Alternative: Balancing The Competitive Effects**

Plaintiffs' Proposed Jury Instruction No. 42 is identical to Plaintiffs' Proposed Jury Instruction No. 31. Defendants incorporate all of their Objections to Proposed Instruction No. 31 here.

## Plaintiffs' Proposed Instruction No. 43

## Rule of Reason Alternative: Motive Not A Defense

If you find that a ~~d~~Defendant engaged in ~~a price-fixing~~ the conspiracy, it is not a defense for that ~~d~~Defendant to claim that it acted with good motives, that it thought its conduct was legal, that it thought its conduct resulted in other societal benefit, or that ~~the~~its conduct may have had some good results. If the conspiracy restrained trade, it is not a defense that the conspiracy was for a purpose other than to restrict egg supply. Moreover, a Defendant cannot justify engaging in a conspiracy by claiming it would have lost money had it not entered into the unlawful agreement.

A party may not justify an agreement to restrain competition based on the assumption or belief that it will improve a product's quality or be in the interests of customers. Customers are to decide through competition what is in their interests. Sellers may not agree to restrain the market because they think it is in the customers' interests. The antitrust laws are based on the view that competition will produce not only lower prices, but also better goods and services.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. B-3 (modified); *Wilk v. American Medical Association*, 719 F.2d 207, ___ (7th Cir. 1983); Paragraph 2 is taken in modified form from *The PLS.COM, LLC v. The National Association of Realtors, et al.*, 32 F.4th 824, 836 (9th Cir. 2022) (quoting *Nat'l Soc'y of Prof. Eng'rs v. United States*, 435 U.S. 679, 695 (1978).

**Objection to Plaintiffs' Proposed Jury Instruction No. 43 – Rule of Reason Alternative: Motive Not A Defense**

Plaintiffs' Proposed Jury Instruction No. 43 is identical to Plaintiffs' Proposed Jury Instruction No. 32.  Defendants incorporate all of their Objections to Proposed Instruction No. 32 here.

**Plaintiffs' Proposed Instruction No. 44**

**Rule of Reason Alternative: Cause of Injury/Pass Through Irrelevant**

Plaintiffs must prove they were injured in their business or property. Here, Plaintiffs complain that they were injured by paying more for eggs [egg products] due to the conspiracy. A Plaintiff has been injured in their business or property ~~if you find that~~ it paid an inflated price for eggs [egg products] as a result of ~~d~~Defendant's alleged antitrust violation. Plaintiff must only prove that it has been injured in its business or property, and need not prove an amount of injury.

~~Plaintiff must also offer evidence that establishes by a preponderance of the evidence that defendant's alleged illegal conduct was a material cause of plaintiff's injury. This means that plaintiff must have proved that some damage occurred to it as a result of defendant's alleged antitrust violation, and not some other cause.~~ Plaintiffs must also establish that the injury was a result of a Defendant's violation of the antitrust laws. To do so, Plaintiffs must also establish that the alleged illegal conduct was a material or substantial cause of Plaintiffs' injuries. Plaintiffs ~~is~~are not required to prove that a ~~d~~Defendant's alleged antitrust violation was the sole cause of ~~its~~their injur~~y~~ies; nor need ~~p~~Plaintiffs eliminate all other possible causes of injury. It is enough if ~~p~~Plaintiffs ~~has~~have proved that the alleged antitrust violation was a material or substantial cause of ~~its~~their injury.

In evaluating whether a Plaintiff was injured, I instruct you that under antitrust law, only the entity that purchased products directly from a liable defendant may collect damages. Thus, in evaluating whether a Plaintiff was injured, ~~That direct purchaser plaintiff is entitled to recover the full amount of the overcharge as damages, without regard to~~ you should not consider whether some portion of any injury suffered by a Plaintiff ~~the overcharge~~ was passed on to any of its ~~downstream~~ customers. ~~As a result, you are not to be concerned whether any of an overcharge was passed on to other businesses or individuals.~~

It is for this reason that there has been no evidence in this trial about whether any overcharge was passed on from Plaintiffs to others – that question is irrelevant under the law. Because there has been no evidence of pass through, and because you are to decide this case solely based on the evidence, you should not consider the issue in your deliberations.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction A-1 (paragraphs 3 and 4, modified); final two paragraphs: Instruction derived from ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction No. B-1 (explanatory note); *Paper Systems v. Nippon Paper Indus. Co.*, 281 F.3d 629, 632-34 (7th Cir. 2002) (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)).

**Objection to Plaintiffs' Proposed Jury Instruction No. 44 – Rule of Reason Alternative: Cause of Injury/Pass Through Irrelevant**

Plaintiffs' Proposed Jury Instruction No. 44 is identical to Plaintiffs' Proposed Jury Instruction No. 19. Defendants incorporate all of their Objections to Proposed Instruction No. 19 here.

## Plaintiffs' Proposed Instruction No. 45

### No Defense of In Pari Delicto

You have heard evidence that certain Plaintiffs [and other purchasers of eggs] may have wanted to purchase UEP certified eggs at some point during the conspiracy. If you find that Defendants conspired to restrain trade, it is no defense to a claim under the Sherman Act that the Plaintiffs [and other purchasers of eggs] were in some way aware of the Defendants' restraint of trade or were involved in or participated in it.

Source: *Perma-Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, ___ (1968).

**Objection to Plaintiffs' Proposed Jury Instruction No. 45 – No Defense of In Pari Delicto**

Defendants object to this Proposed Instruction because none of the Defendants are asserting a defense of *In pari delicto.* Such an instruction is unnecessary, confusing and misleading. Additionally, Defendants object to this Proposed Instruction as an unwarranted departure from the pattern instructions. Further, Defendants object to this Proposed Instruction as unnecessary and confusing as it directs the jury on what to *avoid* considering. Antitrust law is already complex, and there is no need to introduce an additional Instruction on what the jury does not need to consider. Rather, jury instructions should be streamlined to facilitate the jury's consideration of the law.

**Damage Instructions**

**Plaintiffs' Proposed Instruction No. 46**

**Antitrust Damages**

You have found that [certain] Plaintiff[s] has proven [certain] Defendant[s] committed antiturst violations that harmed [those] Plaintiff[s]. You must now determine the amount of damages, if any, Plaintiffs are entitled to recover. ~~The fact that I am giving you instructions concerning the issue of plaintiff's damages does not mean that I believe plaintiff should, or should not, prevail in this case. If you reach a verdict for defendant on the issue of liability, you should not consider the issue of damages, and you may disregard the damages instruction that I am about to give.~~

The law provides that ~~p~~Plaintiff~~s~~ should be fairly compensated for all damages ~~to its business or property~~ that were a direct result or likely consequence of the conduct that you have found to be unlawful.

~~If you have determined that there was an unlawful agreement among competitors to [~~*fix prices, restrict output, or allocate markets*~~] that caused some injury to plaintiff, you must now determine the amount of damages to award to plaintiff.~~ The proper way to calculate those damages is to determine the difference between the prices ~~p~~Plaintiff~~s~~ actually paid for ~~[~~*product X*~~]~~egg products and the prices ~~p~~Plaintiff~~s~~ would have paid had there been no agreement to ~~[~~*fix prices,* restrict *output, or allocate markets*~~].~~the domestic supply of eggs. This is referred to as the overcharge. ~~[~~*The court should incorporate case-specific instructions addressing legitimate means of measuring overcharge damages, such as multiple regression, yardstick, or before-and-after analyses.*~~]~~

Antitrust damages are only compensatory, meaning their purpose is to put an injured ~~p~~Plaintiff as near as possible in the position in which it would have been had the alleged antitrust violation not occurred. The law does not permit you to award damages to punish a wrongdoer—what we sometimes refer to as punitive damages—or to deter particular conduct in the future. Furthermore, you are not permitted to award to ~~p~~Plaintiff~~s~~ an amount for attorneys' fees or the costs of maintaining this lawsuit.

**Source:** Paragraphs 1, 2, and 4 from ABA Model Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction B-1, p. 306 (modified); Paragraph 3 from ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction B-5 (modified).

**Damages Instructions**

**Objection to Plaintiffs' Proposed Jury Instruction No. 46 – Antitrust Damages**

Defendants object to the placement of Paragraph 3 in this Proposed Instruction. This instruction is meant to provide the "Introduction and Purpose" of the damages instructions to the jury. *See* ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.) ("ABA Model Instructions"), Ch. 6, Section B, Instruction No. 1, at 304. Meanwhile, Paragraph 3 relates to the method for calculating damages, coming from ABA Model Instructions, Ch. 6, Section B, Instruction No. 5, at 5. The text in Paragraph 3 should therefore follow after the instruction relating to causation and disaggregation of damages. *See* ABA Model Instructions, Ch. 6, Section B, Instruction No. 4, at 4.

Defendants also object to the extent that Plaintiffs fail to provide the remaining ABA Model Instructions on damages, particularly the Instructions relating to causation and disaggregation of damages and mitigation. *Id.* at Ch. 6, Section B, Instruction Nos. 4 and 14. Instructions on the issues of causation and disaggregation of damages and mitigation are fundamental to the jury's understanding of what damages can be legally attributed to Defendants, and the omission of these Instructions would be misleading and unfairly prejudicial.

## Plaintiffs' Proposed Instruction No. 47

## Pass Through Of No Concern

Under antitrust law, only the entity that purchased products directly from a liable defendant may collect damages. That direct purchaser plaintiff is entitled to recover the full amount of the overcharge as damages, without regard to whether some portion of the overcharge was passed on to any downstream customers. As a result, you are not to be concerned whether any of an overcharge was passed on to other businesses or individuals.

It is for this reason that there has been no evidence in this trial about whether any overcharge was passed on from Plaintiffs to others – that question is irrelevant under the law. Because there has been no evidence of pass through, and because you are to decide this case solely based on the evidence, you should not consider the issue in your deliberations.

Source: Instruction derived from ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction No. B-1 (explanatory note); *Paper Systems v. Nippon Paper Indus. Co.*, 281 F.3d 629, 632-34 (7th Cir. 2002) (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)).

**Objection to Plaintiffs' Proposed Jury Instruction No. 47 – Pass Through of No Concern**

Plaintiffs' Proposed Jury Instruction No. 47 is substantially the same as Paragraphs 3 and 4 of Plaintiffs' Proposed Jury Instruction No. 19.  Defendants incorporate their Objections to Paragraphs 3 and 4 of Proposed Instruction No. 19 here.

## Plaintiffs' Proposed Instruction No. 48

### Basis for Calculating Damages

You are permitted to make just and reasonable estimates in calculating pPlaintiff's' damages. You are not required to calculate damages with mathematical certainty or precision. However, the amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates. Damages may not be based on guesswork or speculation. Plaintiffs must prove the reasonableness of each of the assumptions upon which the damages calculation is based.

If you find that pPlaintiffs hashave provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

If you find that pPlaintiffs hashave failed to carry itstheir burden of providing a reasonable basis for determining damages, then you may not award damages [*or you may award nominal damages, not to exceed one dollar*].

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction No. B-3 (modified).

**Objection to Plaintiffs' Proposed Jury Instruction No. 48 – Basis for Calculating Damages**

Defendants object to this Proposed Instruction as unnecessary, confusing, and misleading.

**Plaintiffs' Proposed Instruction No. 49**

**Joint and Several Liability**

Each participant in a conspiracy that violates t antitrust laws is jointly and severally liable for all of the damages resulting from the conspiracy. This means that each conspirator is fully liable for all of the damages caused by the conspiracy and not solely for damages caused by an~~that~~ individual conspirator. One who knowingly joins an ongoing conspiracy is liable for the previous acts of the other conspirators in furtherance of the conspiracy.

Plainitff[s] [is] [are] entitled to recover from the Defendant[s] all damages caused by any member of the conspiracy.

*[Insert the following where plaintiff is a purchaser claiming injury from an alleged overcharge: Thus,* ~~d~~Defendant~~s~~ are therefore liable for overcharges on all purchases of ~~[the~~ ~~egg~~ products~~s]~~ by ~~p~~Plaintiffs from <u>any</u> members of the conspiracy, <u>including co-conspirators,</u> and not merely <u>for overcharges</u> on purchases from ~~d~~Defendant~~s~~.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction No. B-17 (modified); *Paper Systems v. Nippon Paper Indus. Co.*, 281 F.3d 629, 632-34 (7th Cir. 2002) (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)).

137

**Objection to Plaintiffs' Proposed Jury Instruction No. 49 – Joint and Several Liability**

Defendants object to Paragraph 2 of this Proposed Instruction as an inaccurate statement of the law and an unnecessary departure from the pattern instructions. The text of Paragraph 2 is not found in the ABA Model Instructions, Ch. 6, Section B, Instruction No. 17, at 329. Further, this paragraph should clarify that Plaintiffs can only recover damages from the Defendants that were proven to be members of the conspiracy.

Defendants also object to Paragraph 3, as it must explain that Plaintiffs cannot collect damages for overcharges on egg purchases from non-conspiring entities and can *only* collect damages caused by the conduct of those entities found to be members of the alleged conspiracy. *See* ABA Model Instructions, Ch. 6, Section B, Instruction No. 17, at 329, Paragraph 3 (excluding damages based on overcharges from entities that were not members of the conspiracy); Defendants' Objection to Plaintiffs' Proposed Jury Instruction No. 43; *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) ("[P]laintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation."); *In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 124, 153 (E.D. Pa. 2015) ("[A]ny drop in egg supply should be sufficiently tied to Defendants' conduct to make the model reliable for showing antitrust impact. Here, Plaintiffs did not isolate the effects of Defendants' conduct on the total egg supply; any supply reduction by non-conspiring producers has not been controlled for."); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056–57 (8th Cir. 2000) (reversing jury verdict predicated on expert testimony that "failed to account for market events that both sides agreed were not related to any anti-competitive conduct" and "did not separate lawful from unlawful conduct").

**Plaintiffs' Proposed Instruction No. 50 Multiple Plaintiffs**

If you award damages, you will be asked what sum of money would fairly and reasonably compensate each ~~p~~Plaintiff. If you find that more than one ~~p~~Plaintiff is entitled to recover damages, exercise caution to be sure that each ~~p~~Plaintiff is awarded damages only for its own injuries.

**Source:**  ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction No. B-15 (modified).

**Response to Plaintiffs' Proposed Jury Instruction No. 50 – Multiple Plaintiffs**

Defendants do not object to Plaintiffs' Proposed Jury Instruction 50. Defendants have proposed the same instruction as Defendants' Proposed Damages Instruction 29.