**APPENDIX 13-4**
**DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KRAFT FOODS GLOBAL, INC., THE KELLOGG COMPANY, GENERAL MILLS, INC., and NESTLÉ USA, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:11-cv-08808 |
| v. | ) | Judge Seeger |
| UNITED EGG PRODUCERS, INC., UNITED STATES EGG MARKETERS, INC., CAL-MAINE FOODS, INC., and ROSE ACRE FARMS, INC. | ) ) ) ) ) | |
| Defendants. | ) | |

**<u>DEFENDANTS' PROPOSED JURY INSTRUCTIONS</u>**

# TABLE OF PROPOSED INSTRUCTIONS AND SOURCES

## GENERAL INSTRUCTIONS[1]

1 All Litigants Equal Before the Law ........................................................................1
2 Organizations ........................................................................................................2
3 Deposition Testimony ............................................................................................3
4 Multiple Claims; Multiple Plaintiffs/Defendants..................................................4
5 Burden of Proof......................................................................................................5

## SUBSTANTIVE ANTITRUST INSTRUCTIONS[2]

6 Purpose of the Sherman Act ..................................................................................6
7 Sherman Act Section 1...........................................................................................7
8 Definition of Conspiracy........................................................................................8
9 Definition of Conspiracy........................................................................................9
10 Existence of Conspiracy ......................................................................................10
11 Evidence of Conspiracy .......................................................................................11
12 Membership in Conspiracy...................................................................................12
13 Motive vs. Intent..................................................................................................14
14 Parallel Conduct...................................................................................................15
15 Single Conspiracy vs. Multiple Conspiracies .....................................................17
16 Associations May Commit Antitrust Violations..................................................18
17 Liability of Members for Acts of Association ......................................................19
18 Rule of Reason-Introduction................................................................................20
19 Rule of Reason-Proof of Relevant Market...........................................................21
20 Rule of Reason-Market Power..............................................................................23
21 Rule of Reason-Proof of Competitive Harm........................................................24
22 Rule of Reason-Evidence of Competitive Benefits .............................................26
23 Balancing the Competitive Effects ......................................................................27
24 Injury....................................................................................................................28

## PROPOSED INSTRUCTIONS—DAMAGES PHASE

25 Bifurcated Trial...................................................................................................30
26 Basis For Calculating Damages ...........................................................................31
27 Causation and Disaggregation .............................................................................32
28 Overcharges Based On Alleged Agreement To Restrict Output ..........................35

---

[1] Except for the instructions for Corporations, which is from the ABA Model Instructions in Civil Antitrust Cases (2016 ed.), and Parties and Claims, which is from the DAP trial, all General Instructions come from the Federal Civil Jury Instructions of the Seventh Circuit, Prepared by the Committee on Pattern Civil Jury Instructions (2017 rev.). Defendants have stricken through Seventh Circuit instructions that Defendants do not believe apply to this case, and the text of those inapplicable instructions is not included in this document. Defendants have omitted the Committee Comments.

[2] For Defendants' Proposed Substantive Antitrust Instructions, the primary source is indicated in this table. Additional source detail is provided under the text of the proposed instructions.

29  Multiple Plaintiffs ................................................................................................38
30  Mitigation ................................................................................................................39

## 1.     ALL LITIGANTS EQUAL BEFORE THE LAW

In this case ~~some of~~ the parties are <u>all organizations in the form of either</u> corporations <u>or agricultural associations</u>.  All parties are equal before the law.  A corporation, <u>association, or similar body</u> is entitled to the same fair consideration that you would give any individual person.

**Source:**  *Federal Civil Jury Instructions of the Seventh Circuit* (2017 rev.), Instruction 1.03, at 7 (modified as shown) (Committee Comments: "A court may choose to modify the first and third sentences of this instruction for other types of litigants.").

## 2. ~~CORPORATIONS~~<u>ORGANIZATIONS</u>

Under the law, a corporation<u>, cooperative, association, or similar body</u> is a person, but it acts only through its agents. ~~A corporation's a~~<u>A</u>gents <u>for such an organization</u> include its directors, officers, employees, or others acting on its behalf. A<u>n organization</u> ~~corporation~~ is not capable under the law of conspiring with its own agents, unincorporated divisions, or wholly owned subsidiaries. Through its agents, however, a<u>n organization</u> ~~corporation~~ is capable of conspiring with other persons or independent <u>organizations</u> ~~corporations~~.

A<u>n organization</u> ~~corporation~~ is legally bound by the acts and statements of its agents or employees done or made within the scope of the agent's employment or apparent authority.

Acts done within the scope of employment are acts performed on behalf of a<u>n organization</u> ~~corporation~~ and directly related to the performance of the duties the agent has general authority to perform. Apparent authority is the authority that persons outside the <u>organization</u> ~~corporation~~ could reasonably believe the agent would have, judging from his or her position with the <u>organization</u> ~~company~~, the responsibilities previously entrusted to the person or the office, and the circumstances surrounding his or her past conduct. An agent can have apparent authority even when, despite these appearances, the agent is actually acting in a dishonest, fraudulent, or anticompetitive manner.

To summarize, for a<u>n organization</u> ~~corporation~~ to be legally responsible for the acts or statements of its agents, you must find that the agent was acting within the scope of his or her employment with apparent authority.

A<u>n organization</u> ~~corporation~~ is entitled to the same fair trial as a private individual. The acts of a<u>n organization</u> ~~corporation~~ are to be judged by the same standard as the acts of a private individual, and you may hold a<u>n organization</u> ~~corporation~~ liable only if such liability is established by a preponderance of the evidence. All persons, including <u>organizations</u> ~~corporations~~, are equal before the law.

**Source:** American Bar Association, *Model Jury Instructions in Civil Antitrust Cases* (2016 ed.) ("ABA Model Instructions"), Ch. 2, Section A, Instruction No. 3. at 19 (modified as shown). *See also In re Processed Egg Prods. Antitrust Litig,*, No. 08-md-2002 (E.D. Pa. 2019) (Direct Action Plaintiffs' ("DAP") trial) (hereinafter "DAP Instruction"), transcript attached hereto as <u>Exhibit A</u>, December 10, 2019 Tr. at 229:22–231:20, word document version attached hereto as <u>Exhibit B</u>, DAP Instruction No. 5 at 11–12.

### 3.   DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you by the reading of a deposition and video.  You should give this testimony the same consideration you would give it had the witnesses appeared and testified here in court.

**Source:**  *Federal Civil Jury Instructions of the Seventh Circuit* (2017 rev.), Instruction 1.05, at 9.

### 4.     MULTIPLE CLAIMS; MULTIPLE PLAINTIFFS/DEFENDANTS

You must give separate consideration to each claim and each party in this case.  [Although there are <u>four</u> Defendants, it does not follow that if one is liable, any of the others is also liable.] [Although there are <u>four</u> Plaintiffs, it does not follow that if one is successful, the others are, too.]

*[If evidence was admitted only as to fewer than all defendants or all claims:]* In considering a claim against a Defendant, you must not consider evidence admitted only against other Defendants [or only as to other claims].

**Source:**  *Federal Civil Jury Instructions of the Seventh Circuit* (2017 rev.), Instruction 1.25, at 32 (modified as shown).

4

## 5.     BURDEN OF PROOF

When I say a particular party must prove something by "a preponderance of the evidence," or when I use the expression "if you find," or "if you decide," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

**Source:** *Federal Civil Jury Instructions of the Seventh Circuit* (2017 rev.), Instruction 1.27, at 34.

## SUBSTANTIVE INSTRUCTIONS

### 6.      PURPOSE OF THE SHERMAN ACT

I now want to turn to the specific law of antitrust.  The Plaintiffs here bring suit under the Sherman Act.

The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace.  The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.

**Source:**  ABA Model Instructions, Ch. 1, Section A, Instruction No. 1, at 1 (modified as shown).

### 7.     SHERMAN ACT SECTION 1

The Plaintiffs challenge the Defendants' conduct under Section 1 of the Sherman Act. Section 1 prohibits contracts, combinations, and conspiracies that unreasonably restrain trade.  <u>One of the requirements of this law is that the alleged restraint of trade affects interstate commerce.  I am instructing you that I have determined this requirement concerning interstate commerce is met, and therefore you need not consider that in your deliberations.</u>

<u>In light of that</u>, to establish a violation of Section 1 of the Sherman Act, <u>the</u> Plaintiffs <u>still</u> must prove the following <u>by a preponderance of the evidence</u>:

(1)     the existence of a contract, combination, or conspiracy between or among at least two separate entities;

(2)     that the contract, combination, or conspiracy unreasonably restrains trade; and

(3)     that the restraints caused <u>the</u> Plaintiffs to suffer an injury to their business or property.

<u>I will address each of these three elements in turn.</u>

**Source:**  ABA Model Instructions, Ch. 1, Section B, Instruction No. 2, at 2 (modified as shown). *See also* DAP Instruction No. 15, at 31, Tr. at 247:20–248:15.

### 8.     CONSPIRACY—DEFINITION OF CONSPIRACY

Plaintiff~~s~~ alleges that ~~d~~Defendant~~s~~ participated in a conspiracy to ~~restrain trade by~~ [*alleged conduct or restraint*] limit or restrict the domestic egg supply that consisted of (a) the UEP recommended short-term measures, (b) the UEP Certified Program, as challenged, and (c) the USEM export programs. Defendants deny that they entered into an agreement to restrict or limit the domestic supply of eggs.

The Plaintiffs must prove both of the following elements by a preponderance of the evidence:

(1)  that the alleged conspiracy existed; and

(2)  that the Defendants knowingly became a member of that conspiracy.  To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason.

**Source:**  ABA Model Instructions, Ch. 2, Section A, Instruction No. 1, at 13 (modified as shown).  *See also* DAP Instruction No. 17, at 34, Tr. at 250:17–25.

8

### 9. CONSPIRACY—DEFINITION OF CONSPIRACY

A "conspiracy" is an express or implied agreement between two or more persons or entities to do something the law prohibts~~commit a crime~~.  A conspiracy may be proven even if its goal~~[s]~~ ~~[was; were]~~ not accomplished.

In deciding whether the charged conspiracy existed, you may consider all of the circumstances, including the words and acts of each of the alleged participants.

**Source:** *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit* (2022 ed.), Instruction 5.09, at 107 (modified as shown).

## 10. <u>EXISTENCE OF CONSPIRACY</u>

<u>To meet their burden of proof, the Plaintiffs must prove that at least two Defendants came to a common and mutual understanding to limit the supply of eggs through the three means identified</u>. An agreement or understanding between two or more persons <u>or entities</u> exists when they share a <u>conscious</u> commitment to a common scheme <u>designed to achieve an unlawful purpose</u>. To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement. The agreement itself may have been entirely unspoken. A person can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the charged conspiracy. The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose. To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish A<u>n</u> <u>unlawful</u> ~~common~~ purpose.

A conspiracy may be formed without all parties coming to an agreement at the same time [~~such as where competitors separately accept invitations to participate in a plan to restrain trade~~]. Similarly, it is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement. It is also not necessary that all of the means or methods claimed by ~~p~~P<u>laintiffs</u> were agreed upon to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members. It is the agreement or understanding to restrain trade [~~in the way alleged by plaintiff~~] <u>by limiting or restricting the growth of the domestic egg supply</u> that constitutes a conspiracy. Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed.

**Source:** ABA Model Instructions, Ch. 2, Section A, Instruction No. 1, at 13-14 (modified as shown). *See also* DAP Instruction No. 17, at 34-35, Tr. at 250:7–16; 251:21-252:12.

10

## 11.    <u>EVIDENCE OF CONSPIRACY</u>

<u>The</u> Plaintiff<u>s</u> may prove the existence of the alleged conspiracy through direct evidence, circumstantial evidence, or both.  Direct evidence is explicit and requires no inferences to establish the existence of the alleged conspiracy.

Direct evidence of an agreement may not be available, and therefore, a conspiracy may also be shown through circumstantial evidence.  You may infer the existence of a conspiracy from the circumstances, including what you find the alleged members actually did and the words they used.  Mere similarity of conduct among various persons, or the fact that they may have associated with one another and may have met or assembled together, at meetings or otherwise, does not by itself establish the existence of a conspiracy.  If they acted similarly but independently of one another, without agreement among them, then there would not be a conspiracy.

In determining whether an agreement or understanding between two or more persons <u>or entities</u> has been proved, you must view the evidence as a whole and not piecemeal.

**Source:**  ABA Model Instructions, Ch. 2, Section A, Instruction No. 1, at 14 (modified as shown).  *See also* DAP Instruction No. 17, at 36, Tr. at 252:13-253:8.

### 12.    CONSPIRACY—MEMBERSHIP IN CONSPIRACY

<u>In order to prevail on their Sherman Act claims, the Plaintiffs must prove, as to each Defendant, by a preponderance of the evidence, that each Defendant knowingly became a member of that conspiracy.</u>  A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. ~~[In deciding whether the Defendant acted knowingly, you may consider all of the evidence, including what the Defendant did or said.]~~

To be a member of a conspiracy, ~~[the; a]~~ Defendant does not need to join it at the beginning, and he does not need to know all of the other members or all of the means by which the ~~illegal~~ <u>unlawful</u> goal~~[s]~~ of the conspiracy was~~; were~~ to be accomplished.  The ~~government~~ <u>Plaintiffs</u> must prove ~~beyond a reasonable doubt~~ <u>by a preponderance of the evidence that the Defendant</u> ~~[you are considering]~~ was aware of the ~~illegal~~ <u>unlawful</u> goal~~[s]~~ of the conspiracy and knowingly joined the conspiracy <u>for the purpose and with the intent of achieving that goal</u>.

~~[A defendant is not a member of a conspiracy just because he knew and/or associated with people who were involved in a conspiracy, knew there was a conspiracy, and/or was present during conspiratorial discussions.]~~

If a Defendant performed acts that advanced the <u>conspiracy</u> ~~crime~~ but had no knowledge ~~that the crime was being committed or was about to be committed~~ <u>of the conspiracy</u>, those acts are not sufficient by themselves to establish the defendant's <u>membership in the conspiracy</u>~~guilt~~.

~~[The conspiracy must include at least one member other than the defendant who, at the time, was not [a government agent; a law enforcement officer; an informant].]~~

<u>Furthermore, in order to determine that a given Defendant participated in the alleged conspiracy, the Plaintiffs must present evidence that tends to exclude the possibility that the Defendant was acting independently or unilaterally.</u>

In deciding whether ~~[the; a]~~ Defendant joined the <u>alleged</u> ~~charged~~ conspiracy, you must base your decision only on what ~~[that; the]~~ Defendant did or said.  To determine what ~~[that; the]~~ Defendant did or said, you may consider ~~[that; the]~~ Defendant's own words or acts.  You may also use the words or acts of other persons to help you decide what the Defendant did or said.

**Source:**  *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit* (2022 ed.), Instruction 4.10, 80 (paragraph 1); Instructions 5.10, at 109 (paragraphs 2, 3 and 6) (modified as shown); Instruction 5.07, at 99 (paragraph 4) (modified as shown).

Paragraph 5: O'Malley, Grenig and Lee, Federal Jury Practice and Instructions, Civil Companion Handbook, Vol. 1 at 7 (2014–2015) (citing *In re Tableware Antitrust Litigation,* No. C-04-3514

(N.D. Cal.)) ("Mere similarity of conduct between Federated and May, however, or the fact that they may have associated with one another and may have met or assembled together and discussed common aims and interests, does not establish the existence of a conspiracy unless the evidence tends to exclude the possibility that the Federated and May were acting independently."); *see also Matsushita Elec. Indus. Co.. v. Zenith Radio Corp.,* 475 U.S. 574, 588 (1986) ("a plaintiff seeking damages for a violation of § 1 must present evidence 'that tends to exclude the possibility' that the alleged conspirators acted independently."); *Monsanto Co. v. Spray-Rite Serv. Co.,* 465 U.S. 752, 764 (1984) ("There must be evidence that tends to exclude the possibility that the manufacturer and nonterminated distributors were acting independently.").

### 13.    __MOTIVE vs. INTENT__

Motive is not an element of any of the unlawful conduct with which the Defendants are accused by the Plaintiffs here.  This means that proof of bad motive is not required.  Furthermore, proof of bad motive alone does not establish that a Defendant is liable, just as proof of good motive alone does not establish that it is not liable.

Evidence of a Defendant's motive may, however, help you to find its intent.  In other words, intent and motive are different concepts.  Motive is what prompts a person to act.  Intent refers only to the state of mind with which a particular act is done.

So, personal advancement and financial gain, for example, are motives for much of human conduct.  However, those motives might prompt one person to intentionally do something perfectly acceptable while prompting another person to intentionally do an act that is not.

**Source:**  DAP Instruction Tr. at 261:10-25.

14

## 14.    PARALLEL CONDUCT

~~Plaintiff contends that defendants engaged in similar conduct, namely [state the nature of parallel conduct]. Plaintiff further contends that this conduct, when considered with other evidence, shows that a conspiracy existed among defendants.~~  The fact that ~~defendants~~ <u>one or more of the egg producer Defendants and/or alleged co-conspirators</u> may have participated in the UEP recommended short-term measures, the UEP Certified Program, or the USEM Export Program does not by itself establish the existence of a conspiracy <u>to reduce the supply of eggs</u> among <u>the</u> Defendants.  Th<u>eir</u> <u>egg producers'</u> behavior may be no more than the result of the exercise of independent judgment in response to identical or similar market conditions.  ~~That is up to you to consider~~.

For example, everyone might open their umbrellas on a rainy day, but that similar behavior would not necessarily mean that they had agreed or conspired to open their umbrellas.  A business may lawfully adopt the same prices, conditions of sale, or other practices as its competitors<u>, so</u> ~~as~~ long as it does so independently and not as part of an agreement or understanding with one or more of its competitors.  If <u>the</u> Defendants <u>or alleged co-conspirators</u> acted similarly<u>, but independently</u>~~,~~ of one another, without any <u>overarching</u> agreement or understanding between two or more ~~of them~~ <u>competitors to reduce egg supply</u>, then there would not be a conspiracy.

You must decide whether <u>the egg producers</u> Defendants'<u> and alleged co-conspirators'</u> similar conduct was, more probably than not, the result of an agreement or understanding ~~between or~~ among them <u>or other co-conspirators who are not present here to reduce egg supply</u>.  In doing so, you may consider <u>the</u> Defendants' similar conduct along with other evidence.  You may infer that a conspiracy existed only if you find that the evidence, when viewed as a whole, makes it more likely that <u>the</u> Defendants had an agreement or understanding with one another than that they acted independently of one another.  In making this determination, you should consider the similar conduct against the entire background in which it took place. The evidence, when viewed all together, must satisfy you that it is more likely that <u>the</u> Defendants' similar actions were the product of an agreement or understanding with one another rather than their own independent decisions.

If after considering all the evidence, you conclude that <u>the</u> Plaintiffs <u>have</u> ~~has~~ shown that it was more likely than not that <u>a particular</u> Defendant<u>'s</u> similar conduct was the result of an agreement or understanding among them than their independent decisions, you must find for ~~the~~ Plaintiffs on the question of whether <u>that</u> Defendant participated in a conspiracy.  If, after considering all the evidence, you conclude that the Plaintiffs failed to prove that <u>the</u> ~~a~~ Defendant's similar conduct was more likely than not the result of an agreement or understanding with one or more of the other Defendants, then you must find against <u>the</u> Plaintiffs and in favor of that Defendant on the question of whether that Defendant participated in a conspiracy.

**Source**:  ABA Model Instructions, Ch. 2, Section A, Instruction No. 2, at 17, Paragraph 2 (modified as shown).  Modifications based on DAP Instruction No. 18, at 37, Tr. at 253:9–254:11.

### 15.    SINGLE CONSPIRACY VS. MULTIPLE CONSPIRACIES

The Plaintiffs allege the existence of a single, overarching conspiracy to reduce the supply of eggs that included three alleged restraints challenged here, namely:

- The UEP Certified Program, as challenged;
- USEM exports; and
- Recommended short-term supply measures.

These three alleged restraints must all be part of a single conspiracy, as opposed to, for example, three different conspiracies.

In order for the Plaintiffs to prove the existence of the alleged conspiracy to reduce supply, the alleged restraints challenged here must all be part of a single, overarching conspiracy, as opposed to, for example, three different conspiracies that were each independent of each other.

To determine whether these three alleged restraints constitute one conspiracy, you must consider the nature and scope of the conspiratorial agreement to distinguish between several similar purposes and one common purpose.   Separate conspiracies exist when each of the conspirators' agreements has its own end, and each transaction constitutes an end in itself, even if they were all alike in having similar objectives.

If, after considering these factors, you find that these alleged restraints were part of the same conspiracy to reduce the supply of eggs, only then must you determine if the actions taken were reasonable or unreasonable.

Additionally, whether a Defendant entered into an agreement, and the scope of that agreement, must be determined from what was proved as to that Defendant.

**Source**:  Paragraph 1: DPP Instruction No. 13, at 25, Paragraph 2, Tr. at 127:1–4 (modified).

Paragraphs 2 and 3: DAP Jury Instruction No. 16, at 32, Paragraph 2, Tr. at 249:2–15 (modified); *United States v. Bullis,* 77 F.3d 1553, 1560 (7th Cir. 1996) ("The nature and scope of the conspiratorial agreement is 'the determinative factor in distinguishing between single and multiple conspiracies.'") (quoting *United States v. Shorter,* 54 F.3d 1248, 1254 (7th Cir. 1989)). *See also United States v. Varelli,* 407 F.2d 735, 742 (7th  Cir. 1969) (quoting *Blumenthal v. United States,* 332 U.S. 539, 558 (1947)); *United States v. Napue,* 834 F.2d 1311, 1332 (7th Cir. 1987).

Paragraph 4:  *See U.S. v. Varelli,*, 407 F.2d 735, 743 (7th Cir. 1969) (holding that the "scope of [each alleged coconspirator's] agreement must be determined individually from what was proved as to him," and "it becomes essential to determine just what" venture or conspiracy each defendant "is promoting and making his own.").

### 16. ~~TRADE ORGANIZATIONS~~ ASSOCIATIONS MAY COMMIT ANTITRUST VIOLATIONS

Businesses that are actual or potential competitors may lawfully form into associations to advance common interests. <u>You have heard of two such examples here, United Egg Producers and United States Egg Marketers.</u> ~~For example, trade~~ Associations may keep members informed of new services or technology in the industry or perform other valuable services such as cooperative research, publication of trade journals, or joint representation before legislative or administrative bodies.

An association is capable of committing violations of the antitrust laws. The actions of ~~a group of~~ <u>competitors</u>, taken through an association to which they belong, present the same issues as the actions of ~~a group of~~ competitors who have not created a formal organization such as a trade association. A trade association or similar industry group cannot lawfully act to facilitate the raising, stabilizing, or maintaining of prices in the market in which its members compete with one another~~., to reduce members' collective output of products or services, or to allocate territories among members that are in horizontal competition with one another. A trade association or similar industry group cannot lawfully adopt rules that prohibit members from bidding competitively with one another because that severely affects price competition. These actions constitute an agreement with its members in violation of the Sherman Act even if the association has not conspired with a nonmember~~.

~~If an association exchanges with its members confidential, competitively sensitive information, such as current or future prices, or current or future output information, that is evidence which you may consider, along with all the other evidence, in deciding whether the association conspired in violation of the antitrust laws.~~

18

## 17.     LIABILITY OF MEMBER FOR ACTS OF ASSOCIATION

A person or business that belongs to ~~an  trade~~ association does not become liable for violating the antitrust laws simply because the association is liable for such violation.  Instead, <u>the</u> Plaintiffs must prove that the ~~member of the trade association~~ <u>Defendant in question</u> knew of and <u>intentionally</u> participated in the <u>specific</u> conduct that you find unlawful.

**Source:** ABA Model Instructions, Ch. 2, Section C, Instruction No. 13, at 63 (modified as shown); DAP Instruction No. 25, at 48, Tr. at 263:4–9 (verbatim).

## 18.    THE RULE OF REASON – INTRODUCTION

If you have determined that any of the Defendants participated in a conspiracy to reduce supply under the instructions I have previously given, then you must consider whether the alleged restraints challenged here are unreasonable.  Under ~~Section 1 of~~ the Sherman Act, a restraint of trade is illegal only if it is found to be unreasonable.  You must therefore determine~~, therefore,~~ whether the three alleged restraint~~s~~ challenged here—(a) the UEP recommended short-term measures, (b) the UEP Certified Program as challenged, and (c) the USEM export programs—are, together, ~~is~~ unreasonable.

In making this determination, you must first determine whether the Plaintiffs have ~~has~~ proven that the alleged ~~challenged~~ restraints ~~has~~ challenged here result~~eds~~ ~~have resulted~~ in a substantial harm to competition in ~~a~~ the relevant product and geographic market.  If you find that ~~plaintiff has~~ the Plaintiffs have proven that the alleged ~~challenged~~ restraints challenged here result~~eds~~ in a substantial harm to competition in ~~a~~ the relevant market, then you must consider whether the alleged restraints produce~~sd~~ countervailing competitive benefits.  If you find that ~~it does~~ they did, then you must balance the competitive harm against the competitive benefit.  The challenged ~~restraint is~~ restraints are unlawful under Section 1 of the Sherman Act only if you find that the competitive harm substantially outweighs the competitive benefit.

I will now review each step of the analysis in more detail.

**Source:**  ABA Model Instructions, Ch. 1, Section C, Instruction No. 1, at 3 (modified as shown). Modifications based on DAP Instruction No. 16, at 32–33, Tr. at 248:16–250:6.

### 19.     RULE OF REASON—PROOF OF A RELEVANT MARKET

As I mentioned, to prove that the <u>alleged</u> <s>challenged</s> <u>restraints challenged here</u> <s>restraint is are</s> unreasonable, <u>the</u> Plaintiffs <s>first</s> must demonstrate that the <s>restraint has</s> <u>alleged</u> restraints have <u>resulted</u> [*or is likely to result*] in a substantial harm to competition.  Although it may be relevant to the inquiry, harm that occurs merely to the individual business of <s>plaintiff</s> <u>the Plaintiffs</u> is not sufficient, by itself, to demonstrate harm to competition generally.  That is, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition.

Furthermore, <s>plaintiff</s> <u>the Plaintiffs</u> must show that the harm to competition occurred in an identified market, known as a relevant <u>product</u> market.  <s>There are two aspects to a relevant market.  The first aspect is known as the relevant product market.  The second aspect is known as the relevant geographic market.  The</s> <u>It</u> is <s>plaintiff's</s> <u>the Plaintiffs'</u> burden to prove the existence of a relevant <u>product</u> market.

The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other.  In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other.  This is a practical test with reference to the actual behavior of buyers and marketing efforts of sellers.  Products need not be identical or precisely interchangeable as long as they are reasonable substitutes.  Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material—such as aluminum foil, cellophane, or even plastic containers – to be reasonable alternatives, then all those products may be in the same relevant product market.

In evaluating whether various products are reasonably interchangeable or reasonable substitutes for each other <s>under the price increase test I have just given you</s>, you may also consider:

- consumers' views on whether the products are interchangeable;
- the relationship between the price of one product and sales of another;
- the presence or absence of specialized vendors;
- the perceptions of either industry or the public as to whether the products are in separate markets;
- the views of <s>plaintiff and defendant</s> <u>the Plaintiffs and Defendants</u> regarding who<u>m</u> their respective competitors are; and
- the existence or absence of different customer groups or distribution channels.

In this case, <u>the</u> Plaintiffs contend<s>s</s> that the relevant product market is <u>the market for eggs in all of their various forms, including shell eggs, raw unpasteurized liquid egg, various categories of industrial egg products, and various categories of high value-added egg products.</u>  By contrast, <s>defendant</s> <u>the Defendants</u> contend that <s>plaintiff</s> <u>the Plaintiffs</u> <s>has</s> <u>have</u> failed to allege or prove a relevant product market.  <s>Defendant</s> <u>The Defendants contend that all of these various forms of eggs are not in the same relevant product market, that shell eggs and egg products are not interchangeable and that the various forms of egg products are not interchangeable with each other.</u>  If you find that <s>plaintiff has</s> <u>the Plaintiffs have</u><s>has</s> proven a relevant product market<u> that includes</u>

all forms of eggs, including all shell eggs and all egg products, then you should continue to evaluate the remainder of ~~plaintiff's~~ the Plaintiffs' claim.  However, if you find that ~~plaintiff has~~ the Plaintiffs have ~~has~~ failed to prove such a market, then you must find in ~~defendant~~ the Defendants' favor on this claim.

**Sources:**  Paragraphs 1–2: ABA Model Instructions, Ch. 1, Section C, Instruction No. 1, at 5, Paragraphs 1–2 (modified as shown).

Paragraphs 3–4:  ABA Model Instructions, Ch. 3, Section A, Instruction No. 4, at 108, Paragraphs 1, 3–4 (modified as shown).

"The requirement that plaintiffs prove adverse impact in the relevant market to establish a § 1 rule of reason violation is well established in the Seventh Circuit."  *Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255, 268 (7th Cir. 1981); *see also Agnew v. NCAA*, 683 F.3d 328, 335 (7th Cir. 2012) ("Under a Rule of Reason analysis, the plaintiff carries the burden of showing that an agreement or contract has an anticompetitive effect on a given market within a given geographic area.").

## 20.    RULE OF REASON -- MARKET POWER

If you have determined that the Plaintiffs have proven a relevant market that contains all egg products and all shell eggs, then you must determine whether the companies that you decided are in the alleged conspiracy, namely, any or all of Cal-Maine, Rose Acre, Michael Foods, Moark, and Wabash Valley, together possess market power in that relevant market.

~~The last factor mentioned,~~ Market power~~,~~ has been defined as an ability to profitably raise prices for a sustained period of time above those that would be charged in a competitive market. A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does not possess market power. The ability to charge higher prices for better products or services, however, is not market power. An important factor in determining whether ~~defendant possesses~~ the egg producers that you decided are in the alleged conspiracy together possess market power is ~~defendant's~~ their combined market share, that is, ~~its~~ their percentage of the products or services sold in the relevant market by all competitors. Other factors that you may consider in determining whether the companies that you decided are in the alleged conspiracy have market power include barriers to entry into the market for potential competitors, the threat of substitute products, and outside competitors who were not part of the alleged conspiracy. If ~~defendant~~ the companies that you decided are in the alleged conspiracy ~~does~~ not possess a substantial market share, it is less likely that ~~defendant~~ they possess~~es~~ market power. If defendant does not possess market power, it is less likely that the challenged restraint has resulted [*or will result*] in a substantial harmful effect on competition in the market.

**Source:**  ABA Model Instructions, Ch. 1, Section C, Instruction No. 2, at 5, Paragraph 5 (modified as shown above).  The Seventh Circuit requires antitrust plaintiffs to show that a defendant possessed market power "as a threshold matter."  *Agnew v. NCAA*, 683 F.3d 328, 335 (7th Cir. 2012); *see also Menasha Corp. v. News Am. Mktg. In-Store, Inc.*, 354 F.3d 661, 663 (7th Cir. 2004) ("The first requirement in every suit based on the Rule of Reason is market power, without which the practice cannot cause those injuries . . . that matter under the federal antitrust laws.").  Courts in the Seventh Circuit have rejected plaintiffs' attempts to try to use direct evidence of anticompetitive effects without a showing of market power.  *See Hannah's Boutique, Inc. v. Surdej*, No. 13-cv-2564, 2015 U.S. Dist. LEXIS 86257, at *14 (N.D. Ill. July 2, 2015) ("Plaintiff's argument that it can use evidence of direct effects to prove market power while circumventing an initial showing of [defendant's] market share is not persuasive as a matter of law." (citing *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 737 (7th Cir. 2004))).

## 21.    RULE OF REASON—PROOF OF COMPETITIVE HARM

If you find that ~~plaintiff has~~ the Plaintiffs have~~has~~ proven the existence of a relevant market, and those whom you have determined participated in the alleged conspiracy collectively possessed market power, then you must determine whether ~~plaintiff has~~ the Plaintiffs have also proven that the alleged ~~challenged~~ restraints challenged here had ~~has~~ [~~or is likely to have~~] a substantial harmful effect on competition in that market.  A harmful effect on competition, or competitive harm, refers to a reduction in competition that results in the loss of some of the benefits of competition, such as lower prices, increased output, or higher product quality.

The ability to charge higher prices for better products and services is not competitive harm. Additionally, to qualify as competitive harm, the harmful effect on competition in the relevant market must have endured for at least one year.  If the challenged conduct has not resulted in [~~or is not likely to result in~~] higher prices, decreased output, lower quality, or the loss of some other competitive benefit, or the effect lasted less than one year, then there has been no competitive harm, and you should find that the challenged conduct was not unreasonable.

In determining whether the alleged ~~challenged~~ restraints challenged here have ~~has~~ produced [~~or is likely to produce~~] competitive harm, you may only consider the effect caused by those whom you may have determined participated in the alleged conspiracy, as opposed to the conduct of egg producers who were not proven to be a part of the alleged conspiracy.  For example, if you determined that joining the Certified Program is an act in furtherance of the conspiracy you found to exist, then in deciding whether the UEP Certified Program produced competitive harm, you may only consider the effect on the market caused by those you found to be a part of the alleged conspiracy.  You may not consider the effect on the market caused by the conduct of the other, approximately 200, non-conspirator egg producers that participated in the UEP Certified Program.  In other words, you cannot consider whether the entire UEP Certified Program had a harmful effect on competition.  The same is true of the other alleged restraints challenged by the Plaintiffs.

Additionally, in determining whether the alleged restraints challenged here have produced [~~or is likely to produce~~] competitive harm, you may look at the following factors:

•    the effect of the restraint on prices, output, product quality, and service;
•    the purpose and nature of the restraint;
•    the nature and structure of the relevant market;
•    the number of competitors in the relevant market and the level of competition among them, both before and after the restraint was imposed.; and
•    whether the defendant possesses market power.

**Source:**  ABA Model Instructions, Ch. 1, Section C, Instruction No. 2, at 5, Paragraphs 3–4 (modified as shown; market power text omitted given separate instruction on market power). *See also* DAP Instruction No. 19, at 38–41, Tr. at 254:11–257:23.  Paragraph 3 is modified to ensure that any injury is associated with the conspiracy, as alleged, and with the violation actually found.  *See Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 401 (7th Cir. 1993) (no anticompetitive effect where certification not required to compete in the

market; plaintiff must "establish, with a fair degree of certainty, that the violation was a material element of, and substantial factor in producing, the injury"); *William O. Gilley Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 664 (9th Cir. 2009) (no liability or competitive harm for web of bilateral agreements absent proof that everyone worked together through the use of the independent bilateral agreements to restrain trade). Competitive harm must also be of significant duration. *see Procaps S.A. v. Patheon Inc.*, 141 F. Supp. 3d 1246, 1281 (S.D. Fla. Oct. 29, 2015), *aff'd*, 845 F.3d 1072 (11th Cir. 2016) (holding that a restraint on trade that lasted seven months was "far too short as a matter of law to create the required substantial marketwide harm of actual detrimental effects."); *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984) (indicating that the Sherman Act is intended to "distinguish robust competition from conduct with long-run anticompetitive effects"); *Adaptive Power Sols., LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 952 (9th Cir. 1998) (holding that a "four- to ten-month" effect on competition "is not significant enough to be classified as an injury to competition under the Sherman Act").

## 22.    RULE OF REASON—

## EVIDENCE OF COMPETITIVE BENEFITS

If you find that the Plaintiffs have~~has~~ proven that the alleged ~~challenged~~ restraints challenged here resulted in substantial harm to competition in a relevant market, then you next must determine whether the alleged restraints also benefits~~s~~ competition in other ways.

In considering whether the alleged restraints benefitted competition, you may consider various factors including, but not limited to: whether the alleged restraints were demanded by customers, increased production, increased consumer choice, resulted in the creation of a new product, decreased prices, or improved product quality. Evidence regarding the ethical treatment of laying hens may be considered with respect to issues such as whether an alleged restraint increased output, improved product quality, widened customer choice, or met customer demand. However, the ethical treatment of laying hens as a societal benefit standing alone is not in and of itself a procompetitive benefit.

If you find that the alleged ~~challenged~~ restraints challenged here ~~does~~ resulted in competitive benefits, then you also must consider whether the alleged restraints were reasonably necessary to achieve the benefits. If ~~plaintiff proves~~ the Plaintiffs prove~~s~~ that the same benefits could have been readily achieved by other, reasonably available alternative means that create substantially less harm to competition, then they cannot be used to justify the restraint.

**Sources:** Paragraphs 1 and 3: ABA Model Instructions, Ch. 1, Section C, Instruction No. 3, at 8 (modified as shown). *See also* DAP Instruction No. 20, at 42, Tr. at 257:24–258:22.

Paragraph 2: DAP Instruction No. 20, Paragraph 2, at 42, Tr. at 258:3–15.

26

## 23.    BALANCING THE COMPETITIVE EFFECTS

If you find that the <u>alleged</u> ~~challenged~~ restraint<u>s</u> <u>challenged here</u> ~~was~~ <u>were</u> reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same restraint.

If the competitive harm substantially outweighs the competitive benefits, then the <u>alleged</u> ~~challenged~~ restraint<u>s</u> <u>challenged here</u> <u>are</u> ~~is~~ unreasonable.  If the competitive harm does not substantially outweigh the competitive benefits, then the ~~challenged~~ <u>alleged</u> restraint<u>s</u> <u>challenged here are</u> not unreasonable.  In conducting this analysis, you must consider the benefits and harm to competition and consumers.~~, not just to a single competitor or group of competitors. Plaintiff bears~~ <u>The Plaintiffs bear</u> the burden of proving that the anticompetitive effect of the conduct substantially outweighs its benefits.


**Source:**  ABA Model Instructions, Ch. 1, Section C, Instruction No. 4, at 9 (modified as shown). *See also* DAP Instruction No. 21, at 43, Tr. at 258:23–259:10.

## 24.    INJURY

If you find that one or more Defendants participated in an overarching conspiracy to reduce egg supply in violation of ~~has violated~~ the Sherman Act, and that their conduct caused a substantial harm to competition in a relevant market, then you must decide if the Plaintiffs ~~is entitled to recover damages from defendant~~ were injured by ~~the violation~~ that conduct.  You must make this determination separately for each Plaintiff.

A Plaintiff is entitled to recover damages for an injury to its business or property if it can establish three elements of injury and causation:

(1) the Plaintiff was in fact injured as a result of the Defendants' ~~alleged~~ actions in violation of the antitrust laws;

(2) ~~defendant's~~ the alleged illegal conduct was a material cause of the Plaintiff's injury; and

(3) the Plaintiff's injury is an injury of the type that the antitrust laws were intended to prevent.

This first element is sometimes referred to as "injury in fact" or "fact of damage." Each Plaintiff ~~to establish that it is entitled to recover damages, it~~ must prove that it was injured as a result of ~~defendant's~~ the actions of those companies among the Defendants and alleged co-conspirators, namely, Cal-Maine, Rose Acre, Michael Foods, Moark, UEP, USEM, and/or Wabash Valley, whom you have decided are part of the alleged conspiracy, in ~~the alleged~~ violation of the antitrust laws.  ~~Proving the fact of damage~~ This does not require each Plaintiff to prove the dollar value of its injury—in fact, I have told the parties not to address that at this time. For now, it requires only that each Plaintiff ~~has established~~ prove that it was, in fact, injured by the actions of those whom you have found to be part of the conspiracy in violation of the antitrust laws.  ~~It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that plaintiff has established that it was in fact injured.~~

Second, each Plaintiff must also offer evidence that establishes by a preponderance of the evidence that ~~defendant's alleged illegal conduct~~ the actions of all alleged co-conspirators in violation of the antitrust laws was a material cause of that Plaintiff's injury.  This means that the Plaintiffs must have proved that some damage occurred to it as a result of ~~defendant's alleged antitrust violation~~ wrongful conduct of those whom you have found to be part of the conspiracy, and not some other cause.

For example, if you determine that the UEP Certified Program was a material cause of a Plaintiff's injury, that Plaintiff must prove that it was injured as a result of the fact that the egg producers you determined were members of the conspiracy joined the Certified Program.  You may not consider whether the Plaintiff was injured by the conduct of the other, approximately 200 non-conspirator egg producers that participated in the UEP Certified Program.

28

The Plaintiff is not required to prove that the alleged antitrust violation was the sole cause of its injury; nor need the Plaintiff eliminate all other possible causes of injury. It is enough if the Plaintiff has proved that the alleged antitrust violation was a material cause of its injury.

Finally, each Plaintiff must establish that its injury is the type of injury that the antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." If the Plaintiff's injury was caused by a reduction in competition, acts that would lead to a reduction in competition, or by acts that would otherwise harm consumers and customers, then the Plaintiff's injuries are antitrust injuries. On the other hand, if the Plaintiff's injuries were caused by actions of non-conspirators, heightened competition, the competitive process itself, or by acts that would benefit consumers and customers, then the Plaintiff's injuries are not antitrust injuries and the Plaintiff may not recover damages for those injuries under the antitrust laws.

In summary, if a Plaintiff can establish that (a) it was in fact injured by ~~defendant's conduct~~ the actions of all those you found to be part of the alleged conspiracy in violation of the antitrust laws, (b) that ~~defendant's conduct was~~ the co-conspirators' actions were a material cause of the Plaintiff's injury, and (c) that ~~defendant's~~ the Plaintiff's injury was the type that the antitrust laws were intended to prevent, then that Plaintiff is entitled to recover damages for the injury to its business or property. As noted above, you must make this determination separately for each individual Plaintiff.

**Source:** ABA Model Instructions, Ch. 6, Section A, Instruction No. 1, at 300 (modified as shown); *see also* DAP Instruction No. 26, at 49–51, Tr. at 263:10–265:22. Modifications are intended to ensure that any injury is associated with the conspiracy, as alleged, and with the violation actually found. *See Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 401 (7th Cir. 1993) (no anticompetitive effect where certification not required to compete in the market; plaintiff must "establish, with a fair degree of certainty, that the violation was a material element of, and substantial factor in producing, the injury."); *William O. Gilley Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 664 (9th Cir. 2009) (no liability or competitive harm for web of bilateral agreements absent proof that everyone worked together through the use of the independent bilateral agreements to restrain trade). Competitive harm must also be of significant duration. *See Procaps S.A. v. Patheon Inc.*, 141 F. Supp. 3d 1246, 1281 (S.D. Fla. Oct. 29, 2015), *aff'd*, 845 F.3d 1072 (11th Cir. 2016) (holding that a restraint on trade that lasted seven months was "far too short as a matter of law to create the required substantial marketwide harm of actual detrimental effects."); *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984) (indicating that the Sherman Act is intended to "distinguish robust competition from conduct with long-run anticompetitive effects"); *Adaptive Power Sols., LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 952 (9th Cir. 1998) (holding that a "four- to ten-month" effect on competition "is not significant enough to be classified as an injury to competition under the Sherman Act").

Bracketed language in Paragraph 3 to be included if trial is bifurcated.

## PROPOSED JURY INSTRUCTIONS—DAMAGES PHASE

### 25.    DAMAGES INSTRUCTION NO. 1:  BIFURCATED TRIAL

[~~The first jury found~~] <u>In the liability phase of this proceeding, you</u> found that

<u>Defendant(s)</u> violated the antitrust laws by <u>conspiring to reduce the supply of eggs</u>.  <u>Each injured</u>

<u>Plaintiff</u> is entitled to recover for all damages to its business or property that were a direct result

or likely consequence of the conduct that [~~the first jury~~] <u>you</u> previously found to be unlawful.

You may not, however, award damages for injuries or losses caused by conduct not submitted to

[~~the first jury~~] <u>you in the liability phase of the trial</u>, or caused by factors other than <u>Defendants'</u>

conduct that [~~the first jury~~] <u>you</u> previously found to be ~~anticompetitive~~<u>unlawful</u>.

The law does not permit you to award damages to punish a wrongdoer—what we

sometimes refer to as punitive damages—or to deter particular conduct in the future.

Furthermore, you are not permitted to award to <u>Plaintiffs</u> an amount for attorneys' fees or the

costs of maintaining this lawsuit.

<u>Source</u>:  ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.) at 306.

26.     **DAMAGES INSTRUCTION NO. 2:  BASIS FOR CALCULATING DAMAGES**

You are permitted to make just and reasonable estimates in calculating each Plaintiff's damages.  You are not required to calculate damages with mathematical certainty or precision. However, the amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates.  Damages may not be based on guesswork or speculation.  Each Plaintiff must prove the reasonableness of each of the assumptions upon which the damages calculation is based.

If you find that a Plaintiff has provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

If you find that a Plaintiff has failed to carry its burden of providing a reasonable basis for determining damages, then you may not award damages.

Source:  ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.) at 307, citing *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566 (1981) and *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946) (other internal citations omitted).

27.     **DAMAGES INSTRUCTION NO. 3:  CAUSATION AND DISAGGREGATION**

~~If you find that defendant violated the antitrust laws and that plaintiff was injured by that violation,~~ If you have determined that there was an unlawful agreement among competitors to restrict the supply of eggs, that one or more of the Defendants participated in that unlawful agreement, and one or more Plaintiffs were injured by that unlawful agreement, you must now determine the amount of damages to award to each injured Plaintiff.  Each Plaintiff is entitled to recover for such injury that was the direct result or likely consequence of the unlawful acts of the Defendant(s).  If you find that Defendants violated the antitrust laws and that Plaintiffs were injured by that violation, Plaintiffs are entitled to recover for such injury that was the direct result or likely consequence of the unlawful acts of Defendants.  Plaintiffs bear the burden of showing that their injuries were caused by Defendants' antitrust violation, as opposed to any other factors. If you find that Plaintiffs' alleged injuries were caused in part by Defendants' alleged antitrust violation and in part by other factors, then you may award damages only for that portion of Plaintiffs' alleged injuries that were caused by Defendants' alleged antitrust violation.

Plaintiffs claim that they suffered injury because they paid higher prices for egg products than they would have paid if the alleged antitrust violation had not occurred.

Defendants claim that these higher prices occurred as a result of other factors that have nothing to do with the alleged antitrust violation.  These include:

- Changes in state law requirements regarding the husbandry of egg laying hens;

- Pressure from animal-welfare groups regarding the husbandry of egg laying hens;

- Increased feed costs;

- Increased fuel costs;

- Increases in operational costs due to governmental regulations;

32

- Construction costs;

- Increased consumption of eggs by consumers due to diets and reduced concerns about cholesterol in eggs;

- Increased specialty egg production;

- Global economic market forces (including, for example, increased egg prices in Europe due to animal-welfare regulations);

- Disease (including, for example, Avian flu);

- Salmonella outbreaks; and

- Economic recession.

Plaintiffs are not entitled to recover for changes in price that resulted solely from these or other causes arising from the normal course of lawful business activity. The presence of these factors does not mean Plaintiffs did not suffer antitrust injury, but Plaintiffs are not entitled to recover for damages caused by them. Plaintiffs only may recover for damages caused by the alleged antitrust violation.

Similarly, Plaintiffs are not entitled to recover damages for injuries caused by the conduct of egg producers who were not found to be a part of the alleged conspiracy. For example, if you determined that joining and adhering to the Certified Program caused Plaintiffs injuries, you may only consider the effect caused by the individual producers you found to be a part of the alleged conspiracy. You may not consider the effect on the market and on Plaintiffs caused by the conduct of the other, approximately 200, non-conspirator egg producers that participated in the UEP Certified Program.

Plaintiffs bear the burden of proving damages by a preponderance of the evidence, including apportioning damages between lawful and unlawful causes. If you find that Plaintiffs

33

<u>were</u> injured by Defendants' alleged antitrust violation, and there is a reasonable basis to apportion <u>Plaintiffs'</u> alleged injury between lawful and unlawful causes, then you may award damages.

If you find that <u>Plaintiffs'</u> alleged injuries were caused by factors other than <u>Defendants'</u> alleged antitrust violation, then you must return a verdict for <u>Defendants</u>. If you find that there is no reasonable basis to apportion <u>Plaintiffs'</u> alleged ~~injury~~ <u>injuries</u> between lawful and unlawful causes, or that apportionment can only be accomplished through speculation or guesswork, then you may not award any damages at all.

<u>Source</u>: ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.) at 311, citing *Comcast v. Behrend*, 133 S.Ct. 1426, 1433 (2013) and *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1353 (3d Cir. 1975) (other internal citations omitted). Paragraph 5 adapted from *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) [P]laintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation.") ; *In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 124, 153 (E.D. Pa. 2015) ("[A]ny drop in egg supply should be sufficiently tied to Defendants' conduct to make the model reliable for showing antitrust impact. Here, Plaintiffs did not isolate the effects of Defendants' conduct on the total egg supply; any supply reduction by non-conspiring producers has not been controlled for."); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056-57 (8th Cir. 2000) (reversing jury verdict predicated on expert testimony that "failed to account for market events that both sides agreed were not related to any anti-competitive conduct" and "did not separate lawful from unlawful conduct").

28.    **DAMAGES INSTRUCTION NO. 4:  OVERCHARGES BASED ON ALLEGED AGREEMENT TO RESTRICT OUTPUT**

If you have determined that there was an unlawful agreement among competitors to reduce the supply of eggs that caused some injuries to Plaintiffs, you must now determine the amount of damages to award to Plaintiffs.  The proper way to calculate those damages is to determine the difference between the prices Plaintiffs actually paid for egg products and the prices Plaintiffs would have paid for the egg products had there been no agreement to reduce the supply of eggs. That is referred to as the overcharge.

Plaintiffs have attempted to demonstrate that they paid more for egg products than they would have paid absent the unlawful agreement through econometric analysis, offered by Plaintiffs' expert witness, Dr. Baye.  Defendants presented evidence, through their expert witness, Dr. Jonathan Walker, that the model offered by Dr. Baye was flawed and did not accurately estimate the impact on Plaintiffs of any alleged unlawful conduct.

If you find that the Plaintiffs' model is a reliable guide to estimate what the Plaintiffs' egg product prices would have been absent the alleged conspiracy to reduce the supply of eggs, then you may calculate the Plaintiffs' damages using Plaintiffs' model.  You may find, however, that the model is not a reliable indicator of the amount of alleged supply reduction attributable to Defendants or of the price increase attributable to that reduction, in which case you are not permitted to award damages.

Further, Defendants are not liable for overcharges on egg product purchases that are a result of lawful conduct or the conduct of any non-conspiring entities. Any drop in egg supply, and any resulting increase in the price of egg products, must be tied only to the unlawful conduct of those entities that you found participated in the conspiracy to reduce the supply of eggs – [NAME OF ENTITIES FOUND TO BE IN CONSPIRACY].

<u>Source</u>:  Paragraph 1:  ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.) at 312 (as adapted).  Second paragraph adapted from Defendants' proposed damages instruction in *In re Southeastern Milk Antitrust Litig.*, Case No. 2:08-MD-01000 (ECF 1624-1) (July 14, 2011). Third paragraph adapted from *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) [P]laintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation.") ; *In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 124, 153 (E.D. Pa. 2015) ("[A]ny drop in egg supply should be sufficiently tied to Defendants' conduct to make the model reliable for showing antitrust impact. Here, Plaintiffs did not isolate the effects of Defendants' conduct on the total egg supply; any supply reduction by non-conspiring producers has not been controlled for."); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056-57 (8th Cir. 2000) (reversing jury verdict predicated on expert testimony that "failed to account for market events that both sides agreed were not related to any anti-competitive conduct" and "did not separate lawful from unlawful conduct").

### 29.    DAMAGES INSTRUCTION NO. 5:  MULTIPLE PLAINTIFFS

If you award damages, you will be asked what sum of money would fairly and reasonably compensate each Plaintiff. If you find that more than one <u>Plaintiff</u> is entitled to recover damages, exercise caution to be sure that each <u>Plaintiff</u> is awarded damages only for its own injuries.

<u>Sources</u>:  ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.) at 326.

30.     **DAMAGES INSTRUCTION NO. 6: MITIGATION**

Plaintiffs may not recover damages for any portion of their injuries that they could have avoided through the exercise of reasonable care and prudence. Plaintiffs are not entitled to increase any damages through inaction. The law requires an injured party to take all reasonable steps it can to avoid further injury and thereby reduce its loss. If any or all Plaintiffs failed to take reasonable steps available to them, and the failure to take those steps resulted in greater harm to that Plaintiff or Plaintiffs than it would have suffered had it taken those steps, then that Plaintiff or Plaintiffs may not recover any damages for that part of the injury it could have avoided. Defendants have the burden of proof on this issue. Defendants must prove by a preponderance of the evidence that a Plaintiff:

> (1) acted unreasonably in failing to take specific steps to minimize or limit its losses;
>
> (2) that the failure to take those specific steps resulted in its losses being greater than they would have been had it taken such steps; and
>
> (3) the amount by which Plaintiff's loss would have been reduced had Plaintiff taken those steps.

In determining whether a Plaintiff failed to take reasonable measures to limit its damages, you must remember that the law does not require a Plaintiff to take every conceivable step that might reduce its damages. The evidence must show that a Plaintiff failed to take commercially reasonable measures that were open to it. Commercially reasonable measures mean those measures that a prudent businessperson in the Plaintiff's position would likely have adopted, given the circumstances as they appeared at that time. Each Plaintiff should be given wide latitude in deciding how to handle the situation, so long as what each Plaintiff did was not unreasonable in light of the existing circumstances.

<u>Sources</u>:  ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.) at 324.