**APPENDIX 13-5**
**DEFENDANTS' DISPUTED INSTRUCTIONS WITH PLAINTIFFS' OBJECTIONS**

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| KRAFT FOODS GLOBAL, INC., THE KELLOGG COMPANY, GENERAL MILLS, INC., and NESTLÉ USA, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:11-cv-08808 |
| v. | ) ) | Judge Steven C. Seeger |
| UNITED EGG PRODUCERS, INC., UNITED STATES EGG MARKETERS, INC., CAL-MAINE FOODS, INC., and ROSE ACRE FARMS, INC. | ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

## TABLE OF CONTENTS

I.    The Instructions Should Define a Conspiracy to Restrict Supply, Consistent with the Law and The Kraft Plaintiffs' Theory of the Case. .......................................................2

    A.    The Kraft Plaintiffs' Conspiracy Instructions Follow Settled Law. .........................2

    B.    The Court Should Not Follow the Jury Instructions in the DAP Grocer Trial. ...................................................................................................................5

        1.    Defendants' Instructions Are Inconsistent with the Kraft Plaintiffs' Complaint. .................................................................................................5

        2.    Rulings In The DAP Grocer Trial Are Not Binding On The Kraft Plaintiffs. .................................................................................................8

II.   The Court Should Adopt the Kraft Plaintiffs' Proposed Per Se Instructions. ...................10

    A.    Seventh Circuit Law Supports a Per Se Instruction. ..............................................10

    B.    Judge Pratter's Rulings on the Applicable Legal Standard Are Not Binding on this Court. ............................................................................................................13

III.  This Court Should Not Follow Rulings of the MDL Court that Are Not Factually Relevant or Legally Correct. ............................................................................................16

IV.   Plaintiffs' Specific Objections To Defendants' Proposed Instructions. .............................19

Plaintiffs address the two major points of contention in the parties' proposed jury instructions, which also affect the proposed verdict forms. The first is the definition of the conspiracy. The Kraft Plaintiffs[1] propose that the jury be instructed to decide whether there was a conspiracy to restrict the domestic supply of eggs and egg products that was carried out through a variety of measures. *See* Pls. Proposed Instr. Nos. 13, 20, 33. Defendants contend that the Kraft Plaintiffs should be forced to prove that each defendant agreed to and participated in all three specific methods to implement the supply-restriction conspiracy. *See* Defs. Proposed Instr. Nos. 8, 15.

Defendants' proposal does not accurately describe the alleged conspiracy and conflicts with settled law holding a plaintiff is not required to prove all of the defendants agreed to or participated in all of the methods to implement the conspiracy. *See e.g., United States v. Socony Vacuum Oil Co*., 310 U.S. 150, 224 n.59 (1940) ("[C]onspiracies under the Sherman Act are not dependent on any overt act other than the act of conspiring."). Defendants do not base their argument on the law of conspiracy. Instead, they invite this Court to use their instructions because the MDL Court used those instructions in the DAP Grocer[2] Trial. Yet Judge Pratter based her instructions on what she understood was ***the DAP Grocers' theory***, which she decided after briefing and a hearing that occurred ***after the Kraft Plaintiffs' case was remanded to this Court***. Defendants' contention that in the MDL the Kraft Plaintiffs defined the conspiracy as an agreement to engage in all three supply-restriction methods and that Judge Pratter relied on that definition in making rulings in the Kraft Plaintiffs' favor is untrue, as even a cursory reading of the relevant pleadings reveals.

---

[1] The "Kraft Plaintiffs" are the plaintiffs in this case—Kraft, Kellogg, General Mills, and Nestlé.

[2] The "DAP Grocers" are the plaintiffs whose case was tried in the Eastern District of Pennsylvania after the Kraft Plaintiffs' case was remanded to this Court for trial.

The second point of contention is the standard of liability. A per se standard is appropriate because the Kraft Plaintiffs have alleged and will prove a horizontal agreement between competitors to limit supply and thereby raise prices. In this Circuit, such an agreement must be evaluated using a per se standard unless the defendant can establish it had substantial competitive benefits. *See Deslandes v. McDonald's U.S.A., LLC*, No. 22-2333, 2023 WL 5496957, at *1-3 (7th Cir. Aug. 25, 2023). Defendants, however, argue that because Judge Pratter applied a rule of reason standard, the "law of the case" doctrine requires this Court to do the same. But trial courts after remand are not required to follow the MDL Court's rulings, especially when a ruling does not actually decide an issue and conflicts with the law of the Circuit where the case is to be tried.

As briefly discussed above and detailed below, Defendants' contention that the Kraft Plaintiffs are bound by "law of the case" underlies all their arguments. Defendants assert Plaintiffs "are trying to re-write the script, and in doing so are ignoring the settled law of the case and contradicting their previous litigation positions." *See* Defs. Objs. Pls. Jury Instr., 13-1, pp.1-22, ECF No. 279-14 ("Def. Br."). Yet Defendants rely on decisions that are not in the Kraft Plaintiffs' case, address different claims, and do not follow the law of this Circuit. The Kraft Plaintiffs have yet to have their day in Court, and applying the wrong law that the Kraft Plaintiffs did not litigate would be fundamentally unfair.

## I.     The Instructions Should Define a Conspiracy to Restrict Supply, Consistent with the Law and The Kraft Plaintiffs' Theory of the Case.

### A.     The Kraft Plaintiffs' Conspiracy Instructions Follow Settled Law.

The Kraft Plaintiffs' Instructions call upon the jury to determine whether Defendants agreed to limit supply. The instructions further inform the jury that the agreement to limit supply is alleged to have been effectuated through a variety of measures, that every conspirator need not participate in every measure, and that the conspiracy is proven even if the jury does not find that a particular measure was used to further the conspiracy. *See* Pls. Proposed Instr. Nos. 13, 16-17. The

Kraft Plaintiffs' Instructions recognize a defendant may be liable as a conspirator if it joined the agreement to violate the Sherman Act, even if that defendant did not participate in every overt act. *See* Pls. Proposed Instr. No. 16 (citing *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit* (2022 ed.), Instruction 5.10). The Supreme Court made this point clearly in *Continental Ore Co., v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 698-99 (1962). There, the Supreme Court explained that "[t]he character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." *Id.* at 699.

Defendants' proposed instructions are legally wrong because they blur the line between the conspiratorial agreement and the methods the conspirators used to carry out their agreement. Defendants seek to instruct the jury that a defendant may be found liable *only* if it agreed to restrict the supply of eggs through ***all three*** of the following acts: (1) the United Egg Producers (UEP) Certified Program, (2) recommended short-term supply measures, and (3) United States Egg Marketers (USEM) exports. *See* Defs. Proposed Instr. Nos. 8, 15.

It is well-settled that a defendant need not engage in every facet of the conspiracy to be liable for the entire scheme. *See United States v. Sims*, 808 F. Supp. 620, 623 (N.D. Ill. 1992) ("A single act or conversation can 'suffice to connect the defendant to the conspiracy if that act leads to the reasonable inference of intent to participate in an unlawful enterprise.'") (quoting *United States v. Baskes*, 687 F.2d 165, 169 (7th Cir. 1981)). A defendant joins a conspiracy if it plays even "a minor role." *United States v. Liefer*, 778 F.2d 1236, 1247 n.9 (7th Cir. 1985). Likewise, defendants may be found to have entered into a conspiracy to commit an unlawful act, even though the particular means and measures in furtherance of the conspiracy used by the conspirators differ and the jury does not find that a specific measure was used to further the conspiracy. *See Ocasio v. United States*, 578 U.S. 282, 288 (2016) ("Although conspirators must pursue the same criminal objective, a conspirator [need] not agree to commit or facilitate each and every part of the

substantive offense.") (internal quotations and citations omitted); *United States v. Longstreet*, 567 F.3d 911, 919 (7th Cir. 2009) ("So long as the evidence demonstrates that the co-conspirators embraced a common [unlawful] objective, a single conspiracy exists, even if the parties do not know one or another and do not participate in every aspect of the scheme.") (quoting *United States v. Jones*, 275 F.3d 648, 652 (7th Cir. 2001)); *United States v. Mojica*, 185 F.3d 780, 787 (7th Cir. 1999) ("As long as the conspiracy continues toward its goal to achieve a common objective, it remains a single conspiracy despite the fact that participants may change or perform different roles or functions at different times.") (quoting *United States v. Marshall*, 985 F.2d 901, 907 (7th Cir.1993)); *United States v. Cervantes*, 466 F.2d 736, 738 (7th Cir. 1972) ("The fact that a conspiracy's various members may play different roles in executing it and may have dissimilar motives for participating in it, does not mean that a single conspiracy does not exist."). Conspiracy cases tried in this district frequently involve this pattern; the Defendants are charged with, and convicted of, entering into a conspiracy to commit an unlawful act, even though the particular means and measures in furtherance of the conspiracy used by the conspirators differ.

These statements of law ring particularly true in the antitrust conspiracy context. "[C]onspiracies under the Sherman Act are not dependent on any overt act other than the act of conspiring." *United States v. Socony Vacuum Oil Co*., 310 U.S. 150, 224 n.59 (1940)). Moreover, "[u]nlike standard criminal conspiracies, liability attaches under Sherman Act conspiracies based solely on the agreement—regardless of whether or not overt acts were committed in furtherance of the conspiracy, conspirators' second thoughts over participation, or disagreement as to the overall objective." *United States v. Andreas*, 39 F. Supp. 2d 1048, 1073 (N.D. Ill. 1998), *aff'd*, 216 F.3d 645 (7th Cir. 2000).

Tellingly, Defendants' 22-page brief is devoid of any authority for the proposition that a plaintiff must prove that each defendant agreed to and engaged in all of the methods used to

effectuate the conspiracy. That is because there is no such authority. Defendants' only argument in support of the characterization of the conspiracy in their proposed instructions is the Court should use the DAP Grocer Trial instructions because the Kraft Plaintiffs supposedly pleaded and relied on a "three part" conspiracy and therefore are bound to it by law of the case. That argument is incorrect, as explained below.

**B.      The Court Should Not Follow the Jury Instructions in the DAP Grocer Trial.**

     **1.      Defendants' Instructions Are Inconsistent with the Kraft Plaintiffs' Complaint.**

Defendants contend the Kraft Plaintiffs asserted in the MDL that the conspiracy was an agreement by all defendants to engage in all of the supply-restriction mechanisms, and obtained favorable rulings based on that description of the conspiracy. Def. Br. at 2-6, 18-22. Defendants' argument misstates the record. The pleadings and rulings Defendants cite do not support their proposed instructions.

***The Kraft Plaintiffs' Complaint***. Defendants assert their instructions are consistent with the Kraft Plaintiffs' complaint. Def. Br. at 12-18. The operative complaint in this case does not describe a conspiracy in which all of the defendants agreed to participate in all of the specific mechanisms by which the conspiracy was carried out. Instead, consistent with the Kraft Plaintiffs' proposed jury instructions, the complaint defines the alleged conspiracy as an agreement to manipulate supply in order to inflate the price of eggs and egg products. It states:

> Defendants and their co-conspirators' combination and conspiracy consisted of a continuing understanding, agreement, and concerted action by and among each Defendant and co-conspirator, the material terms of which included:
>
> A. To control and manipulate supply and/or capacity for production of eggs and egg products;
>
> B. To artificially maintain and increase prices for eggs and egg products; and

C. To affirmatively conceal the existence of their illegal understanding and agreement.

SAC ¶ 195, ECF No. 25; *see also id.* ¶ 194 (alleging that "beginning at least as early as 1999 and continuing through at least 2008, Defendants and their co-conspirators engaged in a continuing combination, conspiracy, and agreement to control and manipulate supply and fix and raise prices for eggs and egg products"); *id.* ¶ 7 (alleging that "during the relevant conspiracy period, Defendants unlawfully agreed to and did implement their conspiracy to control supply and artificially maintain and increase the prices of eggs through a series of collective actions . . . .").

The complaint further alleges that Defendants engaged in a variety of overt acts in furtherance of the conspiracy that included, among other things, adopting the UEP Certified Program Guidelines that controlled the size of the egg-producing flock; banning backfilling; organizing large-scale exports; and agreeing to cull or destroy existing layer hens. *Id.* ¶ 196(A)-(J) (listing numerous overt acts to "facilitate the formation, implementation, operation, enforcement, and concealment of [the] combination and conspiracy"). This, again, is consistent with the Kraft Plaintiffs' proposed instructions. *See* Pls. Proposed Instr. Nos. 13, 20, 33.

***Motion to Dismiss Counterclaims***. Contrary to Defendants' assertion, Def. Br. at 5-6, 21, the motion the DAPs filed to dismiss Cal-Maine and Rose Acre's counterclaims did not have anything to do with whether the DAPs' theory was that all of the alleged co-conspirators agreed to and participated in all of the supply-restriction methods. Cal-Maine's and Rose Acre's counterclaim was based on the theory that certain DAPs defrauded them by pressuring them to adopt the UEP Certified Program and then suing them over it. *See* Mem. Order at 1-2, *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, (E.D. Pa. June 10, 2014), ECF No. 987. As Judge Pratter explained, the counterclaim's survival depended on whether the DAPs were alleging that the UEP Certified Program, *standing alone*, was a per se violation of the Sherman Act. *Id.* at 2. Judge Pratter denied the motion because she found that the DAPs' complaints alleged

6

a conspiracy to control supply through various means, not just the UEP Certified Program. *Id*. at 4-5. That is consistent with the Kraft Plaintiffs' theory, and their proposed instructions and jury form, which state that the Defendants agreed to restrict supply and carried out that agreement through various methods, not just the UEP Certified Program.

*Summary Judgment*. The DAPs' summary judgment briefing and Judge Pratter's summary judgment ruling are similarly consistent with the Kraft Plaintiffs' proposed instructions. The question Judge Pratter grappled with in the summary judgment motion Defendants cite was whether the UEP Certified Program should be evaluated under a per se standard or a rule of reason standard. *In re Processed Egg Prod. Antitrust Litig.*, 206 F. Supp. 3d 1033, 1036, 1039–43 (E.D. Pa. 2016). Judge Pratter's ruling that the rule of reason standard applied was not predicated on any assumption that the DAPs' alleged conspiracy was one in which every defendant agreed to and participated in every method of implementing the conspiracy. *See generally*, *id.* Moreover, the DAPs **lost** that motion, so there can be no judicial estoppel. *Levinson v. United States*, 969 F.2d 260, 264–65 (7th Cir. 1992) ("the party to be estopped must have convinced the first court to adopt its position; a litigant is not forever bound to a losing argument"). As shown below, Judge Pratter's statements in 2016 about the rule of reason standard did not constrain the parties in the DAP Grocer Trial in 2019; and they do not constrain the parties here. *See infra* Section II.

*Egg Products Appeal*. Defendants' discussion of the Third Circuit appeal relating to egg products claims is equally misleading. Def. Br. at 8–9. That appeal had nothing to do with which defendants participated in which supply-restriction methods. Rather, it was about whether Judge Pratter erred in dismissing the Kraft Plaintiffs' egg product claims because she concluded they sought improper "umbrella damages." The Third Circuit held Judge Pratter dismissed the Kraft Plaintiffs' claim in error. *In re Processed Egg Prod. Antitrust Litig.*, 881 F.3d 262, 276 (3d Cir. 2018). The language Defendants cite from Plaintiffs' brief does not define the conspiracy as an

agreement to participate in all three methods. Def. Br. at 8. Consistent with the complaint, it simply describes the various methods by which the conspiracy was carried out. *Id.* And the Third Circuit opinion reversing Judge Pratter does not even describe the alleged supply-restriction mechanisms, much less rely on any description of the conspiracy as a basis for its ruling.

      ***Santiago Motion***. Finally, contrary to Defendants' assertion, Def. Br. at 9, the Kraft Plaintiffs' *Santiago* motion does not define the conspiracy as one in which all of the Defendants agreed to and did carry out all of the methods of implementing the conspiracy. *Santiago* Proffer at 1–2, 10–11, ECF No. 164. Saying that the supply-restriction conspiracy "had four main initiatives" is not the same as saying that every Defendant participated in every initiative or that the agreement required each Defendant to participate in every measure. Indeed, just two sentences after the language Defendants quoted, the *Santiago* motion states: "***Not every Defendant participated in every part of the conspiracy, but all of them took steps to further its common goal— to raise the price of eggs and their own profits***." *Id.* at 2 (emphasis added). Again, this is entirely consistent with the Kraft Plaintiffs' proposed instructions.

### 2. Rulings In The DAP Grocer Trial Are Not Binding On The Kraft Plaintiffs.

      Defendants' proposed instructions regarding conspiracy diverge from the Seventh Circuit and ABA patterns where they rely on the instructions used in the DAP Grocer Trial. *See* Defs. Proposed Instr. Nos. 7–8, 10–12, & 15. Defendants argue that because Judge Pratter adopted jury instructions in the DAP Grocer Trial that required the plaintiffs to prove that each Defendant agreed to and engaged in all three initiatives in furtherance of the conspiracy, this Court should do the same. But Judge Pratter's ruling was based on circumstances unique to the DAP Grocer Trial that are not present here, namely her conclusion that the DAP Grocers were proceeding on the theory that the conspiracy included all three initiatives. This happened ***after*** the Kraft Plaintiffs' case was remanded to this Court.

Plaintiffs did not participate in the DAP Grocer Trial, which took place after this case was remanded to Illinois. Judge Pratter issued her order remanding the Kraft Plaintiffs' case to this District on **August 16, 2019**. Conditional Remand Order at 1, ECF No. 7. The proceedings that resulted in the conspiracy instructions Defendants cite did not involve the Kraft Plaintiffs. On August 15, 2019, Defendants filed a motion for clarification asking Judge Pratter to order the DAP Grocers to "define the conspiracy." Mot. for Clarification, *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002 (E.D. Pa. Aug. 15, 2019), ECF No. 1948. In their response brief and in subsequent hearings, filed and conducted in August and September 2019, the DAP Grocers apparently agreed that their alleged conspiracy was a single conspiracy that included all three of the initiatives: short term measures, the Certified Program, and exports. Rose Acre's Third Circuit brief contains a detailed description of the DAP Grocers' various pretrial admissions that their theory required proof of all three initiatives. RA Br. at 23–25, *In re Processed Egg Prods. Antitrust Litig.*, No. 20-1127 (3d Cir. Sept. 1, 2020), ECF No. 57. It is understandable why Judge Pratter would approve a jury instruction and verdict form that required the DAP Grocers to prove all three initiatives. But that case is not the record in this case.

In ***this*** case, unlike the DAP Grocers' case, the Kraft Plaintiffs' pretrial filings have clearly stated their theory is that the Defendants entered a conspiracy to restrict the supply of eggs and egg products which was carried out through four main initiatives, that "not every Defendant participated in every part of the conspiracy, but all of them took steps to further its common goal— to raise the price of eggs and their own profits." *Santiago* Proffer at 1–2, 10–11, ECF No. 164. This theory is entirely consistent with conspiracy law, which only requires the plaintiff to prove an agreement to establish a conspiracy, and does not require proof that the defendants agreed to or engaged in all of the overt acts in furtherance of the conspiracy. *See, e.g., Socony Vacuum*, 310 U.S. at 224 n. 59.

The Third Circuit's non-precedential opinion affirming the judgment in the DAP Grocer trial does not support Defendants' proposed instructions. For one, the Kraft Plaintiffs were not parties to the DAP Grocer Trial or that appeal. More importantly, the Third Circuit's opinion supports the Kraft Plaintiffs' proposed instructions. The Third Circuit confirmed that plaintiffs do not need to prove that the defendants used all three mechanisms—short-term measures, exports, and the UEP Certified Program—to prove an illegal conspiracy. *In re Processed Egg Prod. Antitrust Litig.*, 850 F. App'x 142, 146 (3d Cir. 2021). However, in evaluating the verdict form and instructions used in the DAP Grocer Trial, the Court concluded that, ***even assuming it was error to define the conspiracy as requiring all three methods***, there were no grounds for reversal because the jury instructions "as a whole accurately stated the law." *Id.* Specifically, the Court explained, other instructions were given that informed the jury it was not necessary to find that all of the means or methods were agreed upon by each individual defendant. *Id.* The Kraft Plaintiffs' proposed jury instructions avoid injecting any ambiguity in the first instance by making it clear that the Plaintiffs do not need to prove that Defendants used all three mechanisms to prove an illegal conspiracy.

## II. The Court Should Adopt the Kraft Plaintiffs' Proposed Per Se Instructions.

Defendants propose a rule of reason theory of liability, as was applied in the DPP and DAP cases. Def. Br. 15–18. Yet under the facts of this case and Seventh Circuit law, the case should be tried under a per se instruction theory of liability.

### A. Seventh Circuit Law Supports a Per Se Instruction.

Under Seventh Circuit law, this case should be tried under a per se standard of liability. The Kraft Plaintiffs will prove at trial that Defendant egg producers and their trade associations entered into an agreement to limit production. As such, their agreements are horizontal—meaning they are between entities at the same level of distribution. Horizontal agreements to limit

production are generally illegal per se. *See Hartford Empire Co. v. United States,* 323 U.S. 386, 400–01, 406–7 (1945); *see also Federal Trade Comm'n v. Superior Ct. Trial Lawyers Ass'n*, 493 U.S. 411 (1990) (applied per se rule despite societal benefits to the action of the defendants).

The Seventh Circuit has permitted an exception to this rule and allowed the application of the rule of reason to horizontal agreements among competitors—***but only upon the showing of substantial competitive benefits***. A leading case in this Circuit explaining this principle is *Polk Brothers, Inc. v. Forest City Enters., Inc.*, 776 F.2d 185 (7th Cir. 1985). In that case, two competitors agreed to develop real estate to accommodate a new retail location for each business. The wrinkle was that neither party would agree to the arrangement if the other party could sell product lines in direct competition with the other's product lines. Thus, the parties adopted a restrictive covenant prohibiting the other party from selling a few defined products from that particular location. (They were free to sell everything at their other locations.) After a change in corporate control, one of the joint venturers sued to set aside the restrictive covenant. *Id.* at 187–88. Although the case presented a horizontal arrangement between competitors, the Seventh Circuit applied the rule of reason because the restriction was "ancillary" to an agreement that allowed each business to expand. Without the agreement, there would not have been a new store for either business. *Id.* at 189–90. The ancillary agreement was necessary to permit the parties to a joint venture with the substantial pro-competitive benefit of expanding retail commerce. *Id.* at 190. The benefit supported applying the rule of reason.

Only days ago, in an opinion authored for the Court by Judge Easterbrook and joined by Judge Diane Wood and Judge Ripple, the Seventh Circuit reaffirmed the limited nature of the "ancillary restraint" exception to the per se rule. In *Deslandes v. McDonald's U.S.A., LLC*, the Seventh Circuit upheld the application of the per se standard of liability to horizontal agreements between competitors. No. 22-2333, 2023 WL 5496957. Plaintiffs challenged McDonald's "no

11

poaching" rule, under which McDonald's franchisees were prohibited from hiring any individual employed by other McDonald's franchisees. Because McDonald's operated its own restaurants, which also agreed to the rule, the no poaching rule was a horizontal agreement between operators of McDonald's restaurants. The district court applied a rule of reason standard and ultimately dismissed the case. The Seventh Circuit reversed. The Court explained that claims under Section 1 of the Sherman Act fall into two categories: naked restraints, which are unlawful per se, and other restraints evaluated under the rule of reason. *Id.* at *1. Citing *Polk Brothers*, the Court explained that an agreement among competitors only avoids being categorized as a naked restraint if it is ancillary to the success of a cooperative venture that increases supply or lowers price. *Id.* at *2. The Court held that a restraint is not ancillary simply because it "accompanies some other agreement that is itself lawful." *Id.* (citing Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law*, 1908(b) (4th Ed. 2022)).

To be evaluated under the rule of reason, an ancillary horizontal restriction must be *necessary* to promote output, as in *Polk Brothers*. McDonald's argued the franchise agreement allowed the expansion of McDonald's business, thereby increasing output. The Seventh Circuit demanded more. To the Court, the question was not whether the franchise agreement expanded output, which it unquestionably did. McDonald's franchise structure allowed it to grow from a single hamburger stand to a global business. Instead, the question was whether the challenged horizontal agreement was necessary to accomplish that goal, a matter on which the defendant bears the burden. *Id*. at *2–3. Concurring, Judge Ripple emphasized "the continued vitality of the rule that the ancillary restraint defense requires that the defendants establish *both* that the restriction in question be 'subordinate and collateral,' *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 224 (D.C. Cir. 1986), to a 'legitimate business collaboration' among the defendants,

*Texaco Inc. v. Dagher*, 547 U.S. 1, 7 (2006), *and* be reasonably necessary to achieve a procompetitive objective." *Id.* at *4 (cleaned up).

Applied to this case, *McDonald's* teaches that to invoke the rule of reason, Defendants must establish their horizontal agreement to limit production was subordinate and collateral to legitimate, output enhancing practices and was reasonably necessary to that objective. Defendants cannot sustain this burden. The overall agreement was designed and used to limit production. Even Defendants concede that serving an admirable goal—such as animal welfare— does not justify an anti-competitive agreement. *See* Defs. Proposed Instr. No. 22; *see also Federal Trade Comm'n* 493 U.S. at 423–24, 432. While Defendants assert that their measures met consumer desire for enhanced animal welfare, there is no proof that cooperation was needed for Defendants to treat their chickens humanely. They did not need an agreement with competitors to do so. If they were motivated by perceived consumer demand for humanely produced eggs, Defendants should have competed with other producers to best meet consumer demand. Agreeing with competitors to reduce output based on the sellers' purported justification that it somehow meets customer demand is the definition of a naked restraint. *See PLS.COM, LLC v. The Nat'l Ass'n of Realtors, et al.*, 32 F.4th 824, 836 (9th Cir. 2022), *cert. denied sub nom. The Nat'l Ass'n of Realtors v. The PLS.com, LLC.*, 143 S. Ct. 567 (2023) ("[J]ustifying a restraint on competition based on an assumption it will improve a product's quality is nothing less than a frontal assault on the basic policy of the Sherman Act.").

### B. Judge Pratter's Rulings on the Applicable Legal Standard Are Not Binding on this Court.

Defendants' arguments for the rule of reason instruction are unpersuasive. Defendants assert that whether to use a per se instruction or a rule of reason instruction had already been decided for purposes of this case in the prior MDL proceedings. Defendants rely on the MDL Court's denial of Defendants' motion for summary judgment, its DAP Grocer Trial jury instruction

ruling, and the Third Circuit opinion. These prior rulings are not preclusive and, if relevant at all, should not persuade the court for the following reasons.

First, the summary judgment ruling, which is the only ruling to which the Kraft Plaintiffs were parties, does not decide this issue. And an "actual decision of an issue is required to establish the law of the case." *United States v. Robinson*, 724 F.3d 878, 886 (7th Cir. 2013) (quoting 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 4478 (3d ed.2005)).

In the summary judgment ruling, the MDL Court held there was sufficient evidence to go to the jury under a rule of reason standard. While the MDL Court assessed the legal standard applicable to antitrust claims involving the UEP Certified Program, *In re Processed Egg Prods. Antitrust Litig.*, 206 F. Supp. 3d 1033, 1043-47 (E.D. Pa. 2016), the MDL Court did not view the summary judgment ruling to conclusively resolve the legal standard that would apply at trial. Indeed, the MDL Court continued to revisit the appropriate legal standard well after the summary judgment ruling. In the DAP Grocer Trial—again, where the Kraft Plaintiffs *were not parties*—the MDL Court heard argument and addressed whether the per se standard should apply, notwithstanding any of its prior statements in the summary judgment ruling. Tr. of Proceedings at 111-27, *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002 (E.D. Pa. Dec. 6, 2019). Judge Pratter's summary judgment ruling did not *actually decide* the issue of the applicable legal standard.

Second, even if the MDL Court had intended its summary judgment ruling to bind the parties at trial, this Court would not be bound because this trial is taking place in the Seventh Circuit where, as discussed above, the law dictates a per se standard should apply. *See City of Chicago v. Purdue Pharma L.P.*, No. 14 CV 4361, 2021 WL 1208971, at *7 (N.D. Ill. Mar. 31, 2021) (Alonso, J.) (explaining "the MDL court's rulings are instructive" but declining to follow

them as law of the case, "particularly if … the MDL court's rulings are inconsistent with Illinois or Seventh Circuit precedent"); *see also Champaign–Urbana News*, 632 F.2d 680, 683 (7th Cir. 1980) ("The only sensible thing for a trial court to do is to set itself right as soon as possible when convinced that the law of the case is erroneous. There is no need to await reversal."); *see also Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015) ("Cases consolidated for MDL pretrial proceedings ordinarily retain their separate identities"). This Court must follow Seventh Circuit precedent. *See Olson v. Paine, Weber, Jackson & Curtis, Inc.*, 806 F.2d 731, 734 (7th Cir.1986) (lower courts shall not go against binding precedent unless a subsequent decision or statutory changes make it "almost certain" that the higher court would reverse its previous position "if given a chance to do so").

The Third Circuit law used to uphold a rule of reason standard conflicts with this Circuit's law. The MDL Court ruled that "the plausible presence of certain pro-competitor aspects of the conspiracy" rendered the rule of reason analysis "necessary." *In re Processed Egg Prods. Antitrust Litig.*, 206 F. Supp. 3d at 1047. The court relied on Pennsylvania district court and Third Circuit decisions asserting that ***only*** schemes which have "no purpose except stifling competition" deserve per se condemnation. *Id.* That is not the standard in this Circuit. The Seventh Circuit has held that the mere existence of a pro-competitive justification does not rescue a scheme from per se treatment. *See General Leaseways v. Nat'l Truck Leasing Ass'n*, 744 F.2d 588, 594-95 (7th Cir. 1984). *McDonald's* reaffirms the application of the per se rule to horizontal restrictions, such as the restrictions here at issue. *See supra* at 12-13.

The procompetitive justifications must be significant and necessarily related to the scheme. That is not the case here. Output restrictions have long been recognized as a prototypical form of illegal price fixing. *See United States v. Andreas*, 216 F.3d 645, 667 (7th Cir. 1984) (noting that "output restrictions have long been treated as pe se violations"). In *Andreas*, the Seventh Circuit

15

applied the per se rule to a market allocation scheme, observing that "clever characteristics" are insufficient to camouflage an output restricting scheme. *Id.* at 667. Horizontal agreements to restrict production have long been recognized as subject to the per se standard of liability. That standard should apply with full force in this case.

Third, Defendants rely on the trial rulings in the DAP case, which were affirmed by the Third Circuit, to support a rule of reason standard. But the Kraft Plaintiffs were ***not parties*** to those proceedings: at the time of the DAP Grocer Trial, the Kraft Plaintiffs' case had already been remanded to this District, and was no longer part of the MDL proceeding. The DAP Grocer Trial rulings are not the law of *this* case. *See Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 61-62 (3d Cir. 2023) (holding law of the case doctrine did not apply to bind retailer to rulings that occurred before the retailer joined the MDL); *see also Bagola v. Kindt,* 131 F.3d 632, 636-37 (7th Cir. 1997) ("Because, ultimately, the law of the case is a discretionary doctrine, we will not apply it to a situation in which a court did not have jurisdiction over any adverse parties when it rendered its initial decision.").[3]

### III. This Court Should Not Follow Rulings of the MDL Court that Are Not Factually Relevant or Legally Correct.

Underlying Defendants' arguments is their oft-made assertion that the Kraft Plaintiffs "are trying to re-write the script, and in doing so are ignoring the settled law of the case and contradicting their previous litigation positions." Def. Br. 1; *see also* Def. Mot. to Bifurcate at 1-7, ECF 153. This Court has recently recognized the limits of Defendants' argument. The Court has stated that it "is bound by *certain* rulings made in the MDL Court." Mem. Op. at 12, ECF No. 277.

---

[3] The Kraft Plaintiffs invite the Court to instruct the jury under a per se theory. As a first alternative to the per se theory, the Kraft Plaintiffs have also proposed instructions that follow the directions of the Seventh Circuit in *Wilk v. American Medical Association*, 719 F.2d 207 (7th Cir. 1983). The Kraft Plaintiffs' second alternative instructions are applicable to a trial under a rule of reason.

Because of the prominence of this argument in Defendants' brief and its likelihood to recur in future arguments, the Kraft Plaintiffs address the limitations of these preclusion doctrines.

*First*, the Kraft Plaintiffs are not bound by decisions in proceedings in which they had no opportunity to be heard. *Exelon Generation Co., LLC v. Loc. 15, Int'l Bhd. of Elec. Workers, AFL-CIO*, 540 F.3d 640, 649 (7th Cir. 2008) (citing *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)) ("As a general rule, one is not bound by a judgment in an action in which he is not a party."); *see also Home Depot*, 59 F.4th at 61-62; *Bagola v. Kindt,* 131 F.3d at 636–637. It would violate due process if the law were otherwise. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.7 (1979) ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard."). The Kraft Plaintiffs are not bound by a decision in a case in which they were not present and had no opportunity to be heard.

*Second*, as a corollary to the first point, law of the case and similar doctrines apply to the same case, not different cases. *Rekhi v. Wildwood Indus*., 61 F.3d 1313, 1317 (7th Cir. 1995) (applies in "the same lawsuit). And "[c]ases consolidated for MDL pretrial proceedings ordinarily retain their separate identities." *Gelboim*, 574 U.S. at 413.

*Third*, the Kraft Plaintiffs' suit is not the same lawsuit as the DPP and DAP Grocer Trials. Here, the Kraft Plaintiffs filed suit in this District and their case was transferred to the MDL Court for consolidated pretrial proceedings. 28 U.S.C. § 1407. Upon the completion of consolidated pretrial proceedings, the MDL Court was obligated to remand the Kraft Plaintiffs to this Court for trial, *see Lexecon, Inc. v. Milberg, Weiss, Bershad, Hynes & Lerach*, 523 U.S. 26, 40-42 (1998), and the MDL Court did so, Conditional Remand Order, ECF No. 14. The Kraft Plaintiffs did not participate in the DPP Class Trial and the DAP Grocer Trial. They were excluded from the DPP class, and therefore are not bound by positions taken by that class or decisions made by the MDL Court in that case. Likewise, the Kraft Plaintiffs did not participate in the DAP Grocer Trial, which

took place after the MDL Court remanded this case back to this District. Conditional Remand Order, ECF No. 14. Thus, the DPP and DAP Grocer Trials are not the same case as this case, and the law of the case doctrine has no application.

*Fourth*, even where applicable, the law of the case doctrine has limitations. Consistent with Federal Rule of Civil Procedure 54, every interlocutory order is subject to revision until final judgment, even decisions of an MDL Court. The MDL Court frequently revisited issues, such as the per se standard, throughout the MDL proceedings. Moreover, the Kraft Plaintiffs' position differs from the positions of the parties in the DAP Grocer Trial and the law in this Circuit is different. As a result, this Court should only follow decisions of the MDL Court that are factually relevant and legally correct in this Circuit. *Purdue Pharma L.P.*, 2021 WL 1208971, at *7; *see also Olson*, 806 F.2d at 734.

*   *   *   *

While the Kraft Plaintiffs are not bound by the rulings of the MDL Court on which they did not have an opportunity to be heard, the Kraft Plaintiffs respect the rulings of the MDL Court. Yet, a few rulings of the MDL Court, including the definition of the conspiracy and the per se/rule of reason standard, merit consideration by this Court and a different outcome. The Kraft Plaintiffs seek a different ruling because the position they assert, and have asserted throughout this case, is different than the MDL Court's understanding of the positions asserted by the plaintiffs in the prior cases. The Kraft Plaintiffs argue for a different outcome where the law in this Circuit supports it. The Kraft Plaintiffs are here for the first time, seeking to present their claims to a jury, as is their right.

### Conclusion

As set forth in this memorandum, the Court should use the Kraft Plaintiffs' Proposed Jury Instructions defining the conspiracy and setting forth the per se standard of liability.

**IV.** **Plaintiffs' Specific Objections To Defendants' Proposed Instructions.**

**DEFENDANTS' TABLE OF PROPOSED INSTRUCTIONS AND SOURCES**

**GENERAL INSTRUCTIONS[4]**

1  All Litigants Equal Before the Law ........................................................................22
2  Organizations ........................................................................................................24
3  Deposition Testimony ............................................................................................26
4  Multiple Claims; Multiple Plaintiffs/Defendants..................................................28
5  Burden of Proof......................................................................................................30

**SUBSTANTIVE ANTITRUST INSTRUCTIONS[5]**

6  Purpose of the Sherman Act ...................................................................................32
7  Sherman Act Section 1 ...........................................................................................34
8  Definition of Conspiracy........................................................................................38
9  Definition of Conspiracy........................................................................................42
10  Existence of Conspiracy .......................................................................................44
11  Evidence of Conspiracy ........................................................................................46
12  Membership in Conspiracy ...................................................................................48
13  Motive vs. Intent ..................................................................................................52
14  Parallel Conduct...................................................................................................54
15  Single Conspiracy vs. Multiple Conspiracies ......................................................56
16  Associations May Commit Antitrust Violations ..................................................58
17  Liability of Members for Acts of Association ......................................................60
18  Rule of Reason-Introduction.................................................................................62
19  Rule of Reason-Proof of Relevant Market............................................................64
20  Rule of Reason-Market Power...............................................................................67
21  Rule of Reason-Proof of Competitive Harm .........................................................69
22  Rule of Reason-Evidence of Competitive Benefits ...............................................72
23  Balancing the Competitive Effects ........................................................................74
24  Injury.....................................................................................................................76

---

[4] Except for the instructions for Corporations, which is from the ABA Model Instructions in Civil Antitrust Cases (2016 ed.), and Parties and Claims, which is from the DAP trial, all General Instructions come from the Federal Civil Jury Instructions of the Seventh Circuit, Prepared by the Committee on Pattern Civil Jury Instructions (2017 rev.). Defendants have stricken through Seventh Circuit instructions that Defendants do not believe apply to this case, and the text of those inapplicable instructions is not included in this document. Defendants have omitted the Committee Comments.

[5] For Defendants' Proposed Substantive Antitrust Instructions, the primary source is indicated in this table. Additional source detail is provided under the text of the proposed instructions.

**PROPOSED INSTRUCTIONS—DAMAGES PHASE**

25  Bifurcated Trial ............................................................................................80
26  Basis For Calculating Damages ....................................................................82
27  Causation and Disaggregation .......................................................................84
28  Overcharges Based On Alleged Agreement To Restrict Output ...................88
29  Multiple Plaintiffs .........................................................................................91
30  Mitigation ......................................................................................................93

## 1.  LITIGANTS EQUAL BEFORE THE LAW

In this case ~~some of~~ the parties are <u>all organizations in the form of either</u> corporations <u>or</u> <u>agricultural associations</u>.  All parties are equal before the law.  A corporation, <u>association, or</u> <u>similar body</u> is entitled to the same fair consideration that you would give any individual person.


**Source:**  *Federal Civil Jury Instructions of the Seventh Circuit* (2017 rev.), Instruction 1.03, at 7 (modified as shown) (Committee Comments: "A court may choose to modify the first and third sentences of this instruction for other types of litigants.").

**Plaintiffs' Position**

Plaintiffs do not object to the substance of Defendants' Proposed Instruction 1. The jury should be informed that all litigants are equal before the law. Yet the Defendants' Proposed Instruction introduces differences in how the parties are described. Rather than describe them all as corporations or "business organizations," Defendants suggest distinctions between corporations, associations, agricultural associations, and similar bodies. The proposed instruction will introduce confusion, rather than clear it up.

Uniform language based on the Seventh Circuit pattern, is contained in Plaintiffs' proposed Instruction No. 4, which refers to all litigants equally rather than distinguish between litigants. Plaintiffs request that Plaintiffs' instruction be used.

## 2. ~~CORPORATIONS~~ <u>ORGANIZATIONS</u>

Under the law, a corporation<u>, cooperative, association, or similar body</u> is a person, but it acts only through its agents. ~~A corporation's a~~<u>A</u>gents <u>for such an organization</u> include its directors, officers, employees, or others acting on its behalf. A<u>n organization</u> ~~corporation~~ is not capable under the law of conspiring with its own agents, unincorporated divisions, or wholly owned subsidiaries. Through its agents, however, a<u>n organization</u> ~~corporation~~ is capable of conspiring with other persons or independent <u>organizations</u> ~~corporations~~.

An <u>organization</u> ~~corporation~~ is legally bound by the acts and statements of its agents or employees done or made within the scope of the agent's employment or apparent authority.

Acts done within the scope of employment are acts performed on behalf of a<u>n</u> <u>organization</u> ~~corporation~~ and directly related to the performance of the duties the agent has general authority to perform. Apparent authority is the authority that persons outside the <u>organization</u> ~~corporation~~ could reasonably believe the agent would have, judging from his or her position with the <u>organization</u> ~~company~~, the responsibilities previously entrusted to the person or the office, and the circumstances surrounding his or her past conduct. An agent can have apparent authority even when, despite these appearances, the agent is actually acting in a dishonest, fraudulent, or anticompetitive manner.

To summarize, for a<u>n organization</u> ~~corporation~~ to be legally responsible for the acts or statements of its agents, you must find that the agent was acting within the scope of his or her employment with apparent authority.

An <u>organization</u> ~~corporation~~ is entitled to the same fair trial as a private individual. The acts of a<u>n organization</u> ~~corporation~~ are to be judged by the same standard as the acts of a private individual, and you may hold a<u>n organization</u> ~~corporation~~ liable only if such liability is established by a preponderance of the evidence. All persons, including <u>organizations</u> ~~corporations~~, are equal before the law.

**Source:** American Bar Association, *Model Jury Instructions in Civil Antitrust Cases* (2016 ed.) ("ABA Model Instructions"), Ch. 2, Section A, Instruction No. 3. at 19 (modified as shown). *See also In re Processed Egg Prods. Antitrust Litig,*, No. 08-md-2002 (E.D. Pa. 2019) (Direct Action Plaintiffs' ("DAP") trial) (hereinafter "DAP Instruction"), transcript attached hereto as <u>Exhibit A</u>, December 10, 2019 Tr. at 229:22–231:20, word document version attached hereto as <u>Exhibit B</u>, DAP Instruction No. 5 at 11–12.

**Plaintiffs' Position**

Plaintiffs do not object to the substance of Defendants' proposed Instruction 2.   Plaintiffs object to the language of this Instruction for the same reasons that they object to Defendants' Proposed Instruction 16.  Further, this Instruction uses multiple undefined terms to refer to the business organizations in this case.

### 3.  DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you by the reading of a deposition and video.  You should give this testimony the same consideration you would give it had the witnesses appeared and testified here in court.

**Source:**  *Federal Civil Jury Instructions of the Seventh Circuit* (2017 rev.), Instruction 1.05, at 9.

**Plaintiffs' Position**

Plaintiffs do not object to the substance of Defendants' Proposed Instruction 3. The same substance, based on the Seventh Circuit pattern, is contained in Plaintiffs' proposed Instruction No. 6, which Plaintiffs request the Court use instead. Defendants' Instruction distinguishes between prior deposition testimony and prior trial testimony when both types of prior sworn testimony should be treated the same by the jury. Plaintiffs' Proposed Instruction treats all prior sworn testimony the same.

### 4.  MULTIPLE CLAIMS; MULTIPLE PLAINTIFFS/DEFENDANTS

You must give separate consideration to each claim and each party in this case. [Although there are <u>four</u> Defendants, it does not follow that if one is liable, any of the others is also liable.] [Although there are <u>four</u> Plaintiffs, it does not follow that if one is successful, the others are, too.]

*[If evidence was admitted only as to fewer than all defendants or all claims:]* In considering a claim against a Defendant, you must not consider evidence admitted only against other Defendants ~~[or only as to other claims]~~.

**Source:** *Federal Civil Jury Instructions of the Seventh Circuit* (2017 rev.), Instruction 1.25, at 32 (modified as shown).

**Plaintiffs' Position**

Plaintiffs object to Defendants' Proposed Instruction 4. Plaintiffs have proposed a similar instruction, Plaintiffs' Proposed Instructions No. 9, which deletes the second paragraph of the pattern.

Plaintiffs object to the second paragraph of this instruction because it may confuse the jury. The jury will be separately instructed during trial whenever testimony from a prior proceeding is admitted against a particular party as to the limits on use of that testimony. (Agreed Instruction 9.) The jury will also be instructed at the end of the case (Agreed Instruction 18) what to do with testimony admitted against a particular party. The second paragraph of Defendants' instruction is inconsistent with the co-conspirator hearsay rule. Without describing the limited testimony at issue, as the pattern advises, this instruction suggests testimony about one party may not be used against another party, which is the very nature of co-conspirator hearsay. While a lawyer may understand the differences between these rules, the jury will not and this instruction does not clear up the confusion.

### 5. BURDEN OF PROOF

When I say a particular party must prove something by "a preponderance of the evidence," or when I use the expression "if you find," or "if you decide," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

**Source:** *Federal Civil Jury Instructions of the Seventh Circuit* (2017 rev.), Instruction 1.27, at 34.

**Plaintiffs' Position**

Plaintiffs do not object to the substance of Defendants' Proposed Instruction 5. The same language is contained in Plaintiffs' proposed Instructions No. 11. Plaintiffs' Proposed Instruction, however, contains additional language that will assist the jury. It distinguishes the case from the more familiar "beyond a reasonable doubt" standard and explains that the jury should not be concerned with the presence or absence of government prosecutions. Plaintiffs request that their Proposed Instruction be used.

## SUBSTANTIVE INSTRUCTIONS

### 6. PURPOSE OF THE SHERMAN ACT

I now want to turn to the specific law of antitrust.  The Plaintiffs here bring suit under the Sherman Act.

The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace.  The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.

**Source:**  ABA Model Instructions, Ch. 1, Section A, Instruction No. 1, at 1 (modified as shown).

**Plaintiffs' Position**

Plaintiffs do not object to the substance of this instruction and the same content is presented in Plaintiffs' Proposed Instruction 12.

Plaintiffs request the Court use Plaintiffs' Proposed Instruction 12, which contains an additional paragraph, supported by the law, that will assist the jury in deciding the case.

## 7. SHERMAN ACT SECTION 1

The Plaintiffs challenge the Defendants' conduct under Section 1 of the Sherman Act. Section 1 prohibits contracts, combinations, and conspiracies that unreasonably restrain trade. One of the requirements of this law is that the alleged restraint of trade affects interstate commerce. I am instructing you that I have determined this requirement concerning interstate commerce is met, and therefore you need not consider that in your deliberations.

In light of that, to establish a violation of Section 1 of the Sherman Act, the Plaintiffs still must prove the following by a preponderance of the evidence:

    (1)    the existence of a contract, combination, or conspiracy between or among at least two separate entities;

    (2)    that the contract, combination, or conspiracy unreasonably restrains trade; and

    (3)    that the restraints caused the Plaintiffs to suffer an injury to their business or property.

I will address each of these three elements in turn.

**Source:** ABA Model Instructions, Ch. 1, Section B, Instruction No. 2, at 2 (modified as shown). *See also* DAP Instruction No. 15, at 31, Tr. at 247:20–248:15.

34

**Plaintiffs' Position**

***Objections to Rule of Reason Instructions.*** Plaintiffs object to the use of rule of reason instructions. As Plaintiffs propose in their elements instructions, the case should be tried under a per se standard of law. Plaintiffs are prepared to address the applicable standard in full briefing. To comply with the Court's standing order, Plaintiffs present the following summary of reasons as to why the per se standard applies to this case:

1. **Defendants Entered Into A Naked Restraint To Limit Egg Production That Should Be Tried as a Per Se Violation.**

Plaintiffs contend, and expect to prove at trial, that Defendants entered into a horizontal agreement—that is, an agreement among direct competitors—to limit the production of eggs and egg products. Horizontal agreements to limit production, such as will be proven in this case, are generally illegal per se. *See Hartford-Empire Co. v. United States*, 323 U.S. 386, 400–01, 406-07 (1945). Courts in this Circuit have applied a per se rule to restraints of trade that result in the reduction of output, and competition. *See United States v. Andreas*, 216 F.3d 645, 667-68 (7th Cir. 2000); *General Leaseways, Inc. v. Nat'l Truck Leasing Ass'n*, 744 F.2d 588, 594-95 (7th Cir. 1984).

The rule of reason can apply to agreements among competitors, but only on a showing of substantial pro-competitive benefits. The Seventh Circuit's decision in *Polk Brothers, Inc. v. Forest City Enters., Inc*., 776 F.2d 185 (7th Cir. 1985), is a good example of what must be shown to justify judging a horizontal agreement by the rule of reason standard. There, two retail businesses agreed to develop real estate to accommodate a new retail location for each business. 776 F.2d at 187. As part of the agreement, they each agreed not to sell at that particular location certain products that were important products of the other business. *Id.* When challenged as an illegal agreement among competitors, the Seventh Circuit applied the rule of reason. *Id.* at 190. The Seventh Circuit based its holding on the fact that the agreement, of which the sales restrictions were a part, allowed each business to expand – without the agreement, there would not have been a new store location for either business. *Id.* at 189-90. Thus, the restriction on certain product sales was necessary for that output expansion and should be evaluated under a rule of reason analysis. *Id.*

The same cannot be said in this case. Here, the evidence demonstrates that Defendants' agreement slowed the growth of the egg supply and increased egg prices. And although Defendants claim their agreement was necessary to accommodate customer demand for eggs and egg products from humanely-raised chickens, the agreement Plaintiffs challenge was not necessary to promote animal welfare. Each defendant remained free to develop its own animal welfare practices and use those practices as a means to compete with other egg producers in order to satisfy any alleged customer demand for humanely-produced eggs. There was no need for a group of competing egg producers to collude to limit supply.

2. **Defendants' Arguments For A Rule of Reason Instruction Are Unpersuasive.**

In meet and confer sessions about jury instructions, Defendants took the position that whether to use a per se instruction or a rule of reason instruction had already been decided, for purposes of this case, in the prior MDL proceedings. Defendants relied on Judge Pratter's summary

judgment ruling, instruction ruling, and the Third Circuit opinion. These prior rulings are not preclusive and, if relevant at all, should not persuade the court.

In the summary judgment ruling (to which Plaintiffs were parties), Judge Pratter analyzed the facts under the rule of reason standard. Even under that standard, which is favorable to Defendants, the court concluded Defendants failed to demonstrate they were entitled to summary judgment. In her opinion, she made clear the court was not attempting to decide the legal standard that would apply at trial. She observed that the standard of liability at trial "***can be decided as late as the jury instructions***." Mem. Op. at 3, *In re Processed Egg Prods. Antitrust Litig.,* No. 08-md-2002 (E.D. Pa. Feb. 9, 2018), ECF No. 1586 (emphasis added). That is in fact what Judge Pratter did. In the trials she conducted, she heard argument and addressed whether the per se standard should apply, notwithstanding any prior statements in the summary judgment ruling.

Defendants also rely on Judge Pratter's trial rulings, which were affirmed by the Third Circuit. Plaintiffs in this case were ***not*** parties to those proceedings, and thus rulings in those trials and appeals are not binding on plaintiffs or this Court. As shown above, decisions of the Supreme Court and of courts in this Circuit support the application of the per se rule in this case. Rulings of other courts to the contrary are not persuasive.

The Third Circuit law Judge Pratter followed to impose a rule of reason standard does not apply in this Circuit, and in fact conflicts with this Circuit's law. Judge Pratter ruled that "the plausible presence of certain pro-competitor aspects of the conspiracy" rendered the rule of reason analysis "necessary." The court relied on Pennsylvania district court and Third Circuit decisions asserting that ***only*** schemes which have "no purpose except stifling competition" deserve per se condemnation. Mem. Op. at 21, *In re Processed Egg Prods. Antitrust Litig.,* No. 08-md-2002, ECF No. 1437 (E.D. Pa. Sept. 8, 2016). That is not the standard in this Circuit. The Seventh Circuit has held that the mere existence of a pro-competitive justification does not "rescue a scheme" from per se treatment. *See General Leaseways v. Nat'l Truck Leasing Ass'n,* 744 F.2d 588, 594-95 (7th Cir. 1984). The procompetitive justifications must be significant and necessarily related to the scheme. That is not the case here.

Output restrictions have long been recognized as a prototypical form of the legal price fixing. *See United States v. Andreas,* 216 F.3d 645, 667 (7th Cir. 1984) (noting that "output restrictions have long been treated as pe se violations"). In *Andreas,* the Seventh Circuit applied the per se rule to a market allocation scheme, observing that "clever characteristics" are insufficient to camouflage an output restricting scheme. 216 F.3d at 667. Horizontal agreements to restrict production have long been recognized as subject to the per se standard of liability. That standard should apply with full force in this case.

### 3. Alternatively, The Court Can Apply The Seventh Circuit's *Wilk* Decision And Allow the Jury to Determine If Plaintiffs Proved A Scheme To Reduce Output.

When the appropriate standard to be applied at trial turns on the facts, the Seventh Circuit's ruling in *Wilk v. American Med. Ass'n,* 719 F.2d 207 (7th Cir. 1983), allows the jury to select the proper standard based on the evidence presented at trial. If the Court declines to hold, at this juncture, that the per se standard applies, then Plaintiffs propose the *Wilk* approach should govern.

In *Wilk*, plaintiffs challenged the American Medical Association's restrictions on chiropractors. 719 F.2d at 211. Plaintiffs sought to apply a per se test; defendant asked the court to apply the rule of reason. *Id.* at 219. The Seventh Circuit observed that the appropriate legal test may turn on the facts. A per se rule applies where defendants have entered into a conspiracy to limit production. A rule of reason may apply in circumstances in which an otherwise justifiable business arrangement may have an effect on price or output. Wilk stated that this factual issue could be resolved in the first instance by the jury. *Id.* If the jury determines, as Plaintiffs contend is the case here, that Defendants entered into a horizontal conspiracy to restrict output, the jury should apply per se instructions. *See id.* at 217. If the jury rejects the per se claim, the jury should analyze the restraint under a rule of reason analysis. *See id.*

Proposed instructions following the Seventh Circuit's direction in *Wilk* can be found at Plaintiffs' Proposed Instructions 20 through 32.

### 4. The Court May Defer Ruling On This Issue At This Time.

The application of a per se rule, as opposed to a rule of reason, may depend upon the Court's analysis of evidence presented during the trial. The Court may defer this issue until later in the case.

***Position As To This Particular Instruction***: If the case is tried as a rule of reason case, Plaintiffs do not have a substantive objection to this instruction. Plaintiffs submit that the language about interstate commerce added to paragraph 1 should be deleted. The jury does not need to be instructed about an element that the parties agree is not at issue.

The same instruction is presented in Plaintiffs' Proposed Instruction 33, which contains additional language accurately describing the contentions of the parties. Plaintiffs request the Court give that instruction, which will assist the jury.

## 8.  CONSPIRACY—DEFINITION OF CONSPIRACY

Plaintiff~~s~~ alleges that ~~d~~Defendant~~s~~ participated in a conspiracy to ~~restrain trade by~~ ~~[*alleged conduct or restraint*]~~ limit or restrict the domestic egg supply that consisted of (a) the UEP recommended short-term measures, (b) the UEP Certified Program, as challenged, and (c) the USEM export programs. Defendants deny that they entered into an agreement to restrict or limit the domestic supply of eggs.

The Plaintiffs must prove both of the following elements by a preponderance of the evidence:

(1)  that the alleged conspiracy existed; and

(2)  that the Defendants knowingly became a member of that conspiracy.  To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason.

**Source:**  ABA Model Instructions, Ch. 2, Section A, Instruction No. 1, at 13 (modified as shown).  *See also* DAP Instruction No. 17, at 34, Tr. at 250:17–25.

**Plaintiffs' Position**

***Objections to Conspiracy Instructions***. Plaintiffs object to this instruction and Defendants' other Proposed Instructions that present the same issue relating to the definition of the conspiracy. Defendants in the first paragraph of this instruction misstate the claims in this case and the law and attempt to hold Plaintiffs to proving a case they have not alleged. Defendants rely on the instructions given in the MDL trials. Those cases were tried on a different theory that Plaintiffs here do not assert.

### 1. Defendants' Proposed Instructions Do Not Relate To Plaintiffs' Claim.

The conspiracy instructions Defendants propose do not instruct the jury as to the claims to be tried in this case. Plaintiffs alleged a conspiracy to restrict supply carried out through several methods (certified program, exports, slaughter/molt, etc.) that were separate overt acts in furtherance of the conspiracy.

Defendants' Proposed Instructions redefine the conspiracy to limit or restrict the domestic egg supply through all of the restrictive methods. Under Defendants' instruction, a Defendant could escape liability by showing it did not participate in one of the methods, even if it was a ringleader in the others. That is inconsistent with the pleadings and the law. Defendants repeat that erroneous instruction throughout the conspiracy instructions and emphasize the erroneous point in Defendants' Proposed Instructions 8 and 15, which repeat the improper requirement of a single conspiracy in which all Defendants engaged in all acts. But that is inconsistent with the pleadings and the law.

Instructions should guide the jury as to the claim plaintiff has made in the case. *See generally Florists' Nationwide Tel. Delivery Network v. Florists' Telegraph Delivery Ass'n*, 371 F.2d 263, 270 (7th Cir.1967) ("A party is entitled to instructions presenting his theory of the case if there is evidence to support it."); se*e also Cameo Convalescent Ctr., Inc. v. Senn*, 738 F.2d 836, 841-43 (7th Cir. 1984) (finding that district court erred in failing to instruct the jury on plaintiffs' conspiracy theory and remanding for new trial with instructions on plaintiffs' theory of the case). Defendants may not redefine Plaintiffs' claim, as Defendants here attempt to do.

Here, Plaintiffs allege a conspiracy to limit or restrict supply. In paragraph 194 of the Second Amended Complaint (the operative complaint) Plaintiffs alleged that "beginning at least as early as 1999 and continuing through at least 2008, Defendants and their co-conspirators engaged in a continuing combination, conspiracy, and agreement to control and manipulate supply and fix and raise prices for eggs and egg products. Defendants and their co-conspirators' horizontal combination and conspiracy was a *per se* violation of Section 1 of the Sherman Act." SAC ¶ 194; *see also id.* at ¶ 195.

That conspiracy was carried out through a variety of separate, overt acts engaged in by different members of the conspiracy. In Paragraph 196, Plaintiffs alleged "Defendants and their co-conspirators engaged in a variety of acts to facilitate the formation, implementation, operation, enforcement and concealment of their combination and conspiracy. Defendants and their co-conspirators controlled and manipulated capacity for production of eggs and egg products, including, without limitation, in the following ways." *See id.* ¶ 196(a)-(j) (listing various mechanisms). These are overt acts in furtherance of the conspiracy, rather than restrictive acts

39

that somehow narrow the scope of the conspiracy. Defendants' proposed conspiracy instructions do not explain the conspiracy Plaintiffs have alleged and will prove.

### 2. The Instructions in the DAP and DPP Cases Should Not Be Used Here.

The objectionable language in the Defendants' Proposed Conspiracy Instructions is not pattern language. It is language Defendants have added based on the instructions in the MDL trials. Plaintiffs were not parties in the prior trials, and thus cannot be bound by positions other parties took in trials that did not involve them.

The prior instructions reflect positions the court attributed to the plaintiffs in those cases, which are positions Plaintiffs here do not assert. Prior to trial in the DAP case, Defendants filed a "motion for clarification" asking the court to order the DAPs to "define the conspiracy." Mot. Clarification, *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002 (E.D. Pa. Aug. 15, 2019), ECF No. 1948. The Defendants argued that the DAPs were inconsistent in their definitions of the conspiracy. *Id.* at 1-8. Based on the parties' briefing and argument, Judge Pratter concluded the plaintiffs contended the conspiracy was an overarching conspiracy comprised of all three elements—the certified program, exports, and early slaughter/molt – and reflected that definition in the jury instruction and verdict form. Order re Mot. Clarification, *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002 (E.D. Pa. Sept. 23, 2019), ECF No. 1980. As shown above, Plaintiffs allege a different claim.

Judge Pratter's rulings support Plaintiffs' Proposed Instructions here. She recognized instructions should match the *plaintiffs'* theory. But that principle does not support using the prior instructions as models. While the theory reflected in Defendants' Proposed Instructions may have been the DAPs' theory, it is not the theory of Plaintiffs in this case, and never has been.

### 3. Plaintiffs' Proposed Instructions Assist The Jury In Deciding The Issues Raised in This Case

Plaintiffs' instructions inform the jury of the law of conspiracy as it relates to the Plaintiffs' allegations in this case: that Defendants are alleged to have engaged in a single agreement to limit supply carried out at various times by various conspirators. Plaintiffs' instructions are consistent with the allegations. Indeed, the Third Circuit framed Plaintiffs' conspiracy allgations the same way: "[i]n this antitrust case, suppliers of processed egg products are accused of conspiring to reduce the supply of eggs and, consequently, increasing the market price for egg products[,]" and that "Plaintiffs seek to recover overcharges they paid in the market for egg products due to 'substantially increased' prices resulting from Defendants' alleged participation in the supply-reduction conspiracy." *See In re Processed Egg Prods. Antitrust Litig.*, No. 16-3795, at 4, 7 (3rd Cir. 2017).

Plaintiffs' theory, as expressed in Plaintiffs' Proposed Instructions, is supported by the law. It is improper to conspire to advance an unlawful goal (here, to limit the supply of eggs) even if different conspirators are engaged in different acts. The conspiracy does not require granular agreement as to each alleged act as long as the conspirators agreed to the unlawful objective. *See United States v. Socony Vacuum Oil Co.*, 310 U.S. 150, 224 n.59 (1940) ("[C]onspiracies under the Sherman Act are not dependent on any overt act other than the act of conspiring."); *United*

*States v. Andreas*, 39 F. Supp. 2d 1048, 1073 (N.D. Ill. 1998), *aff'd*, 216 F.3d 645 (7th Cir. 2000) ("Unlike standard criminal conspiracies, liability attaches under Sherman Act conspiracies based solely on the agreement—regardless of whether or not overt acts were committed in furtherance of the conspiracy, conspirators' second thoughts over participation, or disagreement as to the overall objective."); *see also United States v. Longstreet*, 567. F.3d 911, 919 (7th Cir. 2009) ("So long as the evidence demonstrates that the co-conspirators embraced a common [unlawful] objective, a single conspiracy exists, even if the parties do not know one or another and do not participate in every aspect of the scheme."); *United States v. Cervantes*, 466 F.2d 736, 738 (7th Cir. 1972) ("The fact that a conspiracy's various members may play different roles in executing it and may have dissimilar motives for participating in it, does not mean that a single conspiracy does not exist.").

***Objection As To This Particular Instruction***: For the reasons stated above, Plaintiffs object to the first paragraph of this instruction. Plaintiffs do not object to the substance of Defendants' proposed Instruction 8. The same language, based on the Seventh Circuit pattern and the ABA pattern, is contained in Plaintiffs' proposed Instructions 13 and 22, which contain additional language that will assist the jury. Plaintiffs request that these instructions be used.

### 9. CONSPIRACY—DEFINITION OF CONSPIRACY

A "conspiracy" is an express or implied agreement between two or more persons <u>or entities to do something the law prohibts</u>~~commit a crime~~.  A conspiracy may be proven even if its goal<u>[s]</u> [was; ~~were~~] not accomplished.

In deciding whether the charged conspiracy existed, you may consider all of the circumstances, including the words and acts of each of the alleged participants.

**Source:**  *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit* (2022 ed.), Instruction 5.09, at 107 (modified as shown).

## Plaintiffs' Position

***Objection As To This Particular Instruction***: Plaintiffs do not object to the substance of Defendants' proposed Instruction 9.  The same language, based on the Seventh Circuit pattern and the ABA pattern is contained in Plaintiffs' proposed Instruction 15, which contains additional language that will assist the jury.  Plaintiffs request that these instructions be used.

## 10. <u>EXISTENCE OF CONSPIRACY</u>

<u>To meet their burden of proof, the Plaintiffs must prove that at least two Defendants came to a common and mutual understanding to limit the supply of eggs through the three means identified.</u> An agreement or understanding between two or more persons <u>or entities</u> exists when they share a <u>conscious</u> commitment to a common scheme <u>designed to achieve an unlawful purpose</u>. To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement.  The agreement itself may have been entirely unspoken. A person can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the charged conspiracy. The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose. To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish A<u>n unlawful</u> ~~common~~ purpose.

A conspiracy may be formed without all parties coming to an agreement at the same time [*such as where competitors separately accept invitations to participate in a plan to restrain trade*]. Similarly, it is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement. It is also not necessary that all of the means or methods claimed by p<u>P</u>laintiff<u>s</u> were agreed upon to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members. It is the agreement or understanding to restrain trade [*in the way alleged by plaintiff*] <u>by limiting or restricting the growth of the domestic egg supply</u> that constitutes a conspiracy. Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed.

**Source:**  ABA Model Instructions, Ch. 2, Section A, Instruction No. 1, at 13-14 (modified as shown). *See also* DAP Instruction No. 17, at 34-35, Tr. at 250:7–16; 251:21-252:12.

**Plaintiffs' Position**

***Objection to Conspiracy Instructions.*** Plaintiffs object to the first sentence of this instruction. To avoid duplication, Plaintiffs rely on their prior objection to Defendants' Proposed Conspiracy Instructions, as set forth in response to Defendants' Proposed Instruction 8.

***Objection As To This Particular Instruction***: Plaintiffs do not object to the substance of Defendants' proposed Instruction 10. The same language, based on the Seventh Circuit pattern and the ABA pattern is contained in Plaintiffs' proposed Instruction 17, which contains additional language that will assist the jury. Plaintiffs request that these instructions be used. Plaintiffs propose:

- Paragraph 2 should be modified with additional instructions as proposed in Plaintiffs' Proposed Instruction No.17. These additional instructions, consistent with caselaw, instructs the jury that a conspiracy does not require that all its members employed or participated in all of the means or methods of the conspiracy. This additional language is critical given Plaintiffs' allegations that the conspiracy was to restrict the domestic supply of eggs and that Defendants and their co-conspirators participation in the various mechanisms to achieve those ends varied.

## 11.   <u>EVIDENCE OF CONSPIRACY</u>

<u>The</u> Plaintiff<u>s</u> may prove the existence of the alleged conspiracy through direct evidence, circumstantial evidence, or both.  Direct evidence is explicit and requires no inferences to establish the existence of the alleged conspiracy.

Direct evidence of an agreement may not be available, and therefore, a conspiracy may also be shown through circumstantial evidence.  You may infer the existence of a conspiracy from the circumstances, including what you find the alleged members actually did and the words they used.  Mere similarity of conduct among various persons, or the fact that they may have associated with one another and may have met or assembled together, at meetings or otherwise, does not by itself establish the existence of a conspiracy.  If they acted similarly but independently of one another, without agreement among them, then there would not be a conspiracy.

In determining whether an agreement or understanding between two or more persons <u>or</u> <u>entities</u> has been proved, you must view the evidence as a whole and not piecemeal.

**Source:**  ABA Model Instructions, Ch. 2, Section A, Instruction No. 1, at 14 (modified as shown).  *See also* DAP Instruction No. 17, at 36, Tr. at 252:13-253:8.

## Plaintiffs' Position

***Objection to Conspiracy Instructions.*** Plaintiffs object to Defendants' Proposed Conspiracy Instructions. To avoid duplication, Plaintiffs rely on their prior objection to Defendants' Proposed Conspiracy Instructions, as set forth in response to Defendants' Proposed Instruction 8.

***Objection As To This Particular Instruction***: Plaintiffs object to the Defendants' proposed Instruction 11 because it is incomplete. Plaintiffs have tendered their Proposed Instructions 18, which contains additional language that will assist the jury:

- Defendants' Proposed Instruction also lacks important language present in Plaintiff's Proposed Instruction No. 18. Given that aspects of the conspiracy took place openly, Plaintiffs propose additional instructions advising the jury that secrecy is not an element of a conspiracy, and that conspirators may or may not act openly. This additional language will help to prevent any assumptions jurors may have that conspirators must operate in secret or attempt to hide their objectives for conduct to be considered unlawful.

- The last sentence of paragraph 2 of this instruction is duplicative of prior instruction defining a conspiracy and is unnecessary. It adds additional language to a concept that will already be clear to the jury and communicated in previous instruction.

## 12. CONSPIRACY—MEMBERSHIP IN CONSPIRACY

In order to prevail on their Sherman Act claims, the Plaintiffs must prove, as to each Defendant, by a preponderance of the evidence, that each Defendant knowingly became a member of that conspiracy.  A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. [In deciding whether the Defendant acted knowingly, you may consider all of the evidence, including what the Defendant did or said.]

To be a member of a conspiracy, [the; a] Defendant does not need to join it at the beginning, and he does not need to know all of the other members or all of the means by which the illegal unlawful goal[s] of the conspiracy was; were to be accomplished.  The government Plaintiffs must prove beyond a reasonable doubt by a preponderance of the evidence that the Defendant [you are considering] was aware of the illegal unlawful goal[s] of the conspiracy and knowingly joined the conspiracy for the purpose and with the intent of achieving that goal.

[A defendant is not a member of a conspiracy just because he knew and/or associated with people who were involved in a conspiracy, knew there was a conspiracy, and/or was present during conspiratorial discussions.]

If a Defendant performed acts that advanced the conspiracy crime but had no knowledge that the crime was being committed or was about to be committed of the conspiracy, those acts are not sufficient by themselves to establish the defendant's membership in the conspiracy guilt.

[The conspiracy must include at least one member other than the defendant who, at the time, was not [a government agent; a law enforcement officer; an informant].]

Furthermore, in order to determine that a given Defendant participated in the alleged conspiracy, the Plaintiffs must present evidence that tends to exclude the possibility that the Defendant was acting independently or unilaterally.

In deciding whether [the; a] Defendant joined the alleged charged conspiracy, you must base your decision only on what [that; the] Defendant did or said.  To determine what [that; the] Defendant did or said, you may consider [that; the] Defendant's own words or acts.  You may also use the words or acts of other persons to help you decide what the Defendant did or said.

**Source:**  *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit* (2022 ed.), Instruction 4.10, 80 (paragraph 1); Instructions 5.10, at 109 (paragraphs 2, 3 and 6) (modified as shown); Instruction 5.07, at 99 (paragraph 4) (modified as shown).

Paragraph 5: O'Malley, Grenig and Lee, Federal Jury Practice and Instructions, Civil Companion Handbook, Vol. 1 at 7 (2014–2015) (citing *In re Tableware Antitrust Litigation,* No. C-04-3514 (N.D. Cal.)) ("Mere similarity of conduct between Federated and May, however, or the fact that they may have associated with one another and may have met or assembled together and discussed common aims and interests, does not establish the existence of a conspiracy unless the evidence tends to exclude the possibility that the Federated and May were acting independently."); *see also Matsushita Elec. Indus. Co.. v. Zenith Radio Corp.,* 475 U.S. 574, 588

(1986) ("a plaintiff seeking damages for a violation of § 1 must present evidence 'that tends to exclude the possibility' that the alleged conspirators acted independently."); *Monsanto Co. v. Spray-Rite Serv. Co.,* 465 U.S. 752, 764 (1984) ("There must be evidence that tends to exclude the possibility that the manufacturer and nonterminated distributors were acting independently.").

**Plaintiffs' Position**

***Objection to Conspiracy Instructions.*** Plaintiffs object to Defendants' Proposed Conspiracy Instructions.  To avoid duplication, Plaintiffs rely on their prior objection to Defendants' Proposed Conspiracy Instructions, as set forth in response to Defendants' Proposed Instruction 8.

***Objection As To This Particular Instruction***:  Plaintiffs present the following additional objections to this instruction:

- Paragraph 1 of the instruction is duplicative of several other instructions defining "knowingly."  In addition, Defendants' use of the "as to each Defendant" language suggests that Plaintiffs must prove each Defendant participated in the conspiracy in order to prevail as to any Defendant, which is an incorrect statement of the law.

- Plaintiffs object to paragraph 2 of the instruction and specifically the last sentence, because it adds nonpattern language that suggests defendants must have joined the conspiracy with the same motives or goals to find that they were members of the conspiracy. There is no such requirement. *See e.g., Hanania v. Loren-Maltese*, 212 F.3d 353, 357 (7th Cir. 2000) ("It is true that participants need not share the same motives to share the same general conspiratorial objective."). Plaintiffs' position is further supported by the Bauer Pattern Criminal Jury Instructions, and to which Defendants cite, which does not include the additional language Defendants propose.

- Plaintiffs object to paragraph 3 and 4, of the instruction as duplicative and unnecessary. The previous instructions define what is required to prove membership in a conspiracy. Defendants' additional instructions introduce negative instructions regarding membership in a conspiracy including disproof of mere association and the requirement of evidence supporting the exclusion of independent reasons for a defendant's participation. Additionally, Defendants insert instructions requiring a defendant's knowledge of the conspiracy to establish membership. (*See id.* at para 4). This nonpattern language overcomplicates what is otherwise a straightforward concept: either the defendants agreed to join the conspiracy and did so knowingly, or they did not. The issues of mere association, lack of knowledge, or independent action, are resolved based on whether Plaintiffs meet their burden to prove the elements of a conspiracy.

- Defendants agree to the deletion of Paragraph 5.

- The sixth paragraph ("Furthermore, in order to…") is an improper statement of the law. First, it is not supported by a pattern.  The Federal Pattern Jury Instructions Defendants cite do not identify this as a pattern. *See* O'Malley, Grenig and Lee, Federal Jury Practice and Instructions, Civil Companion Handbook, Vol. 1 at 7 (2014–2015).  Instead, that treatise identifies one example in which the instruction was used, *In re Tableware Antitrust Litigation,* No. C-04-3514 (N.D. Cal. 2007).  In explaining the use of the instruction, the treatise states the defendants in that case disputed that they had conspired with each other to induce a distributor to boycott a competitor but had instead claimed they had communicated separately with the distributor to express their opposition, prompting the instruction.  In this case, the issue is different.  Second, Defendants have adopted the *Matsushita* summary judgment standard applicable to situations in which a

conspiracy instruction is being inferred from circumstantial evidence to this case in which trial evidence will demonstrate concerted action. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). Here, there is evidence of concerted action. At trial, a properly instructed jury will not hold a defendant liable unless it concludes that the defendant has knowingly entered into a conspiracy. The ordinary conspiracy instruction, advanced by both parties, adequately addresses the concern raised under the facts of this case. Defendants attempt to require not only that plaintiffs prove the existence of an agreement but somehow disprove independent action, which is not required.

- Plaintiffs do not object to the final paragraph, which is included in Plaintiffs' Proposed Instruction 16.

- This Instruction omits ABA pattern language in Plaintiffs' Proposed Instruction 16 that the acts and statements of the co-conspirators are binding on all who were members of the conspiracy. This instruction is consistent with Plaintiffs' position as argued in its Santiago Proffer. *See* ECF. No. 164.

- This Instruction omits ABA pattern language in Plaintiffs' Proposed Instruction 16 that members may join the conspiracy at different times, may or may not have participated in all methods or means of the conspiracy, that all the means of the conspiracy were actually used, or that all persons alleged to be members of the conspiracy were in fact members. This language is important given the alleged facts of this case that involved co-conspirators joining at different times and participating in various components.

## 13. MOTIVE vs. INTENT

Motive is not an element of any of the unlawful conduct with which the Defendants are accused by the Plaintiffs here. This means that proof of bad motive is not required. Furthermore, proof of bad motive alone does not establish that a Defendant is liable, just as proof of good motive alone does not establish that it is not liable.

Evidence of a Defendant's motive may, however, help you to find its intent. In other words, intent and motive are different concepts. Motive is what prompts a person to act. Intent refers only to the state of mind with which a particular act is done.

So, personal advancement and financial gain, for example, are motives for much of human conduct. However, those motives might prompt one person to intentionally do something perfectly acceptable while prompting another person to intentionally do an act that is not.

**Source:** DAP Instruction Tr. at 261:10-25.

**Plaintiffs' Position**

Plaintiffs object to this non-pattern Instruction:

- This is a negative instruction. Instead of advising the jury what it must find, it addresses an issue the jury should not consider. As a result, it is confusing.

- The instruction is unnecessary. Defendants' own instructions state that motive is not an element of the conduct at issue but proceeds to explain the term and distinguish it from intent. The jury need not be instructed as to additional concepts that are not pertinent to the issues and elements it must decide.

- The instruction is argumentative in that it addresses possible types of evidence, while not mentioning others, that may persuade the jury. *See United States v. Love*, 706 F.3d 832, 839 (7th Cir. 2013) ("A trial judge may reject instructions that would only confuse the jury.").

- The jury's task is to ascertain the existence of an agreement. Other instructions define the requirements of an agreement, including that it must be reached knowingly. This instruction does not aid in that task.

## 14. PARALLEL CONDUCT

~~Plaintiff contends that defendants engaged in similar conduct, namely [state the nature of parallel conduct]. Plaintiff further contends that this conduct, when considered with other evidence, shows that a conspiracy existed among defendants.~~  The fact that ~~defendants~~ one or more of the egg producer Defendants and/or alleged co-conspirators may have participated in the UEP recommended short-term measures, the UEP Certified Program, or the USEM Export Program does not by itself establish the existence of a conspiracy to reduce the supply of eggs among ~~the~~ Defendants.  The~~ir~~ egg producers' behavior may be no more than the result of the exercise of independent judgment in response to identical or similar market conditions.  ~~That is up to you to consider.~~

For example, everyone might open their umbrellas on a rainy day, but that similar behavior would not necessarily mean that they had agreed or conspired to open their umbrellas. A business may lawfully adopt the same prices, conditions of sale, or other practices as its competitors, so ~~as~~ long as it does so independently and not as part of an agreement or understanding with one or more of its competitors.  If ~~the~~ Defendants or alleged co-conspirators acted similarly~~,~~ but independently~~,~~ of one another, without any overarching agreement or understanding between two or more ~~of them~~ competitors to reduce egg supply, then there would not be a conspiracy.

You must decide whether ~~the egg producers~~ Defendants' and alleged co-conspirators' similar conduct was, more probably than not, the result of an agreement or understanding ~~between or~~ among them or other co-conspirators who are not present here to reduce egg supply. In doing so, you may consider ~~the~~ Defendants' similar conduct along with other evidence.  You may infer that a conspiracy existed only if you find that the evidence, when viewed as a whole, makes it more likely that ~~the~~ Defendants had an agreement or understanding with one another than that they acted independently of one another.  In making this determination, you should consider the similar conduct against the entire background in which it took place. The evidence, when viewed all together, must satisfy you that it is more likely that ~~the~~ Defendants' similar actions were the product of an agreement or understanding with one another rather than their own independent decisions.

If after considering all the evidence, you conclude that ~~the~~ Plaintiffs have ~~has~~ shown that it was more likely than not that a particular Defendant's similar conduct was the result of an agreement or understanding among them than their independent decisions, you must find for ~~the~~ Plaintiffs on the question of whether that Defendant participated in a conspiracy.  If, after considering all the evidence, you conclude that the Plaintiffs failed to prove that ~~the~~ ~~a~~ Defendant's similar conduct was more likely than not the result of an agreement or understanding with one or more of the other Defendants, then you must find against ~~the~~ Plaintiffs and in favor of that Defendant on the question of whether that Defendant participated in a conspiracy.

**Source**:  ABA Model Instructions, Ch. 2, Section A, Instruction No. 2, at 17, Paragraph 2 (modified as shown).  Modifications based on DAP Instruction No. 18, at 37, Tr. at 253:9–254:11.

**Plaintiffs' Position**

***Objections to Conspiracy Instructions:*** Plaintiffs object to Defendants' description of the conspiracy in the first paragraph of this instruction. To avoid duplication, Plaintiffs incorporate their statement regarding Defendants' Conspiracy Instructions above.

***Position As To This Particular Instruction***: Plaintiffs object to the giving of this instruction as it is not supported by the Plaintiffs' theory of the case, nor the evidence presented.

Plaintiffs allege that the Defendants agreed to limit or restrict the domestic egg supply. That allegation will be proven through direct evidence of that agreement. The record contains evidence of defendants and their co-conspirators proposing and agreeing to the practice Plaintiffs contend constitute the conspiratorial agreement. This is not a case in which the agreement will need to be inferred from independent action of Defendants. The Defendants communicated with each other and agreed to practices including short term supply reduction measures, the ban on backfilling, compliance with the 100% rule, or participation in exports.

An instruction of this type may be proper where the theory of the case is that parallel conduct actually evidenced an agreement. *See Washington Cty. Health Auth. v. Baxter Int'l*, 328 F. Supp. 3d 824, 840 (N.D. Ill. 2018) ("Parallel conduct is but one of many varieties of circumstantial evidence plaintiffs can employ to state a claim."). This is not such a case. Even the commentary to the instruction Defendants propose demonstrates its inappropriateness. *See* ABA Model Instructions, Ch. 2, Section A, Instruction No. 2, Committee Notes ("This instruction is appropriate for a case in which plaintiff is attempting to prove the existence of a conspiracy solely through ambiguous circumstantial evidence of parallel conduct. It may be inappropriate for cases where unambiguous, direct evidence of a conspiracy is present."); *see also Sherrod v. Berry*, No. 80 C 4117, 1985 WL 3926, at *1 (N.D. Ill. Nov. 15, 1985) ("A trial court should not instruct a jury on matters about which no evidence has been presented.").

Giving this instruction in a case of this type will confuse the jury.

55

## 15.  SINGLE CONSPIRACY VS. MULTIPLE CONSPIRACIES

The Plaintiffs allege the existence of a single, overarching conspiracy to reduce the supply of eggs that included three alleged restraints challenged here, namely:

- The UEP Certified Program, as challenged;
- USEM exports; and
- Recommended short-term supply measures.

These three alleged restraints must all be part of a single conspiracy, as opposed to, for example, three different conspiracies.

In order for the Plaintiffs to prove the existence of the alleged conspiracy to reduce supply, the alleged restraints challenged here must all be part of a single, overarching conspiracy, as opposed to, for example, three different conspiracies that were each independent of each other.

To determine whether these three alleged restraints constitute one conspiracy, you must consider the nature and scope of the conspiratorial agreement to distinguish between several similar purposes and one common purpose.  Separate conspiracies exist when each of the conspirators' agreements has its own end, and each transaction constitutes an end in itself, even if they were all alike in having similar objectives.

If, after considering these factors, you find that these alleged restraints were part of the same conspiracy to reduce the supply of eggs, only then must you determine if the actions taken were reasonable or unreasonable.

Additionally, whether a Defendant entered into an agreement, and the scope of that agreement, must be determined from what was proved as to that Defendant.

**Source**:  Paragraph 1: DPP Instruction No. 13, at 25, Paragraph 2, Tr. at 127:1–4 (modified).

Paragraphs 2 and 3: DAP Jury Instruction No. 16, at 32, Paragraph 2, Tr. at 249:2–15 (modified); *United States v. Bullis,* 77 F.3d 1553, 1560 (7th Cir. 1996) ("The nature and scope of the conspiratorial agreement is 'the determinative factor in distinguishing between single and multiple conspiracies.'") (quoting *United States v. Shorter,* 54 F.3d 1248, 1254 (7th Cir. 1989)). *See also United States v. Varelli,* 407 F.2d 735, 742 (7th Cir. 1969) (quoting *Blumenthal v. United States,* 332 U.S. 539, 558 (1947)); *United States v. Napue,* 834 F.2d 1311, 1332 (7th Cir. 1987).

Paragraph 4:  *See U.S. v. Varelli,*, 407 F.2d 735, 743 (7th Cir. 1969) (holding that the "scope of [each alleged coconspirator's] agreement must be determined individually from what was proved as to him," and "it becomes essential to determine just what" venture or conspiracy each defendant "is promoting and making his own.").

## Plaintiffs' Position

***Objection to Conspiracy Instructions.*** Plaintiffs object to Defendants' Proposed Instruction 15. This Instruction is based on a misstatement of the claims in the case, as noted above.  To avoid duplication, Plaintiffs rely on their prior objection to Defendants' Proposed Conspiracy Instructions, as set forth in response to Defendants' Proposed Instruction 8.

***Position As To This Particular Instruction***: Plaintiffs further object to this Instruction on the ground that it is confusing. The standards expressed in the third and fourth paragraphs of the instruction will not assist the jury.  Instead, they will confuse the jury as to its task.

Plaintiffs further object to this Instruction because it misstates the law in that it suggests to the jury that all conspirators must participate in every method employed by the conspiracy and every overt act.  Even where an overt act is required, a conspirator is liable if it participates in a single overt act. Participation in every act, as the instruction suggests, is not required.

### 16. ~~TRADE ORGANIZATIONS~~ ASSOCIATIONS MAY COMMIT ANTITRUST VIOLATIONS

Businesses that are actual or potential competitors may lawfully form into associations to advance common interests. <u>You have heard of two such examples here, United Egg Producers and United States Egg Marketers.</u> ~~For example, trade~~ Associations may keep members informed of new services or technology in the industry or perform other valuable services such as cooperative research, publication of trade journals, or joint representation before legislative or administrative bodies.

An association is capable of committing violations of the antitrust laws. The actions of ~~a group of~~ <u>competitors</u>, taken through an association to which they belong, present the same issues as the actions of ~~a group of~~ competitors who have not created a formal organization such as a trade association. A trade association or similar industry group cannot lawfully act to facilitate the raising, stabilizing, or maintaining of prices in the market in which its members compete with one another<u>.</u>~~, to reduce members' collective output of products or services, or to allocate territories among members that are in horizontal competition with one another. A trade association or similar industry group cannot lawfully adopt rules that prohibit members from bidding competitively with one another because that severely affects price competition. These actions constitute an agreement with its members in violation of the Sherman Act even if the association has not conspired with a nonmember.~~

~~If an association exchanges with its members confidential, competitively sensitive information, such as current or future prices, or current or future output information, that is evidence which you may consider, along with all the other evidence, in deciding whether the association conspired in violation of the antitrust laws.~~

58

## Plaintiffs' Position

Plaintiffs object to Defendants' Proposed Instruction 16. Plaintiffs have proposed a nearly identical instruction, Plaintiffs' Proposed Instruction 10, which should be given in place of this instruction. The instructions differ in the following respects:

- The Defendants' instruction refers to "trade associations." Mindful of the UEP and USEM Defendants' unwillingness to be called a "trade association," which is the term used in the pattern, Plaintiffs modified the instruction to refer neutrally to "organizations" or "groups." Defendants insist on using the term "association." Plaintiffs object to this edit. All parties in the case should be treated the same, and therefore the instructions should not introduce confusion by using labels that may suggest a difference between the various entities in the case where no difference exists.

- Defendants have deleted the pattern language found in the last sentence of the second paragraph of Defendants' instruction and the third paragraph of Plaintiffs' instruction. Plaintiffs object. This language explains the rest of the paragraph and is useful.

- Plaintiffs ask the Court to reserve ruling on the final paragraph of the instruction, which Defendants delete, and to use if it is justified by the evidence or argument in the case.

### 17. LIABILITY OF MEMBER FOR ACTS OF ASSOCIATION

A person or business that belongs to ~~an trade~~ association does not become liable for violating the antitrust laws simply because the association is liable for such violation. Instead, the Plaintiffs must prove that the ~~member of the trade association~~ Defendant in question knew of and intentionally participated in the specific conduct that you find unlawful.

**Source:** ABA Model Instructions, Ch. 2, Section C, Instruction No. 13, at 63 (modified as shown); DAP Instruction No. 25, at 48, Tr. at 263:4–9 (verbatim).

## Plaintiffs' Position

Plaintiffs object to Defendants' Proposed Instruction 17. It will be unsupported by the evidence in the case and has no bearing on the claims Plaintiffs make.

Plaintiffs do not contend that any individual defendant is liable simply by virtue of its membership in either UEP or USEM.  Instead, the claim in this case is that individual egg producers conspired amongst themselves, and with the UEP and USEM, to limit or reduce the supply of eggs.  Because this instruction is unrelated to the claims in the case, providing the instruction will confuse the jury as to its task. *See Sherrod v. Berry*, No. 80 C 4117, 1985 WL 3926, at *1 (N.D. Ill. Nov. 15, 1985) ("A trial court should not instruct a jury on matters about which no evidence has been presented.").

## 18.   THE RULE OF REASON – INTRODUCTION

If you have determined that any of the Defendants participated in a conspiracy to reduce supply under the instructions I have previously given, then you must consider whether the alleged restraints challenged here are unreasonable.  Under ~~Section 1 of~~ the Sherman Act, a restraint of trade is illegal only if it is found to be unreasonable.  You must therefore determine, ~~therefore,~~ whether the three alleged restraints challenged here—(a) the UEP recommended short-term measures, (b) the UEP Certified Program as challenged, and (c) the USEM export programs—are, together, ~~is~~ unreasonable.

In making this determination, you must first determine whether the Plaintiffs have ~~has~~ proven that the alleged ~~challenged~~ restraints ~~has~~ challenged here resulted~~s~~ ~~have resulted~~ in a substantial harm to competition in ~~a~~ the relevant product and geographic market.  If you find that ~~plaintiff has~~ the Plaintiffs have proven that the alleged ~~challenged~~ restraints challenged here resulted~~s~~ in a substantial harm to competition in ~~a~~ the relevant market, then you must consider whether the alleged restraints produce~~s~~d countervailing competitive benefits.  If you find that ~~it does~~ they did, then you must balance the competitive harm against the competitive benefit.  The challenged ~~restraint is~~ restraints are unlawful under Section 1 of the Sherman Act only if you find that the competitive harm substantially outweighs the competitive benefit.

I will now review each step of the analysis in more detail.

**Source:**  ABA Model Instructions, Ch. 1, Section C, Instruction No. 1, at 3 (modified as shown). Modifications based on DAP Instruction No. 16, at 32–33, Tr. at 248:16–250:6.

## Plaintiffs' Position

***Objections to Rule of Reason Instructions:***  Plaintiffs object to the use of rule of reason instructions.  As Plaintiffs propose in their elements instructions, the case should be tried under a per se standard of law.  To avoid duplication, Plaintiffs rely on their prior objection to Defendants' rule of reason instructions, as set forth in response to Defendants' Proposed Instruction 7.

***Position As To This Particular Instruction***: If the case is tried as a rule of reason case, Plaintiffs object to the first paragraph of this instruction for two reasons. First, if the rule of reason applies, Plaintiffs are not required to prove Defendants participated in a "conspiracy to reduce supply." Plaintiffs are only required to prove that the alleged restraints were unreasonable. The form instruction correctly states what Plaintiffs must prove, and Defendants' addition is inappropriate and unsupported. *United States v. Love*, 706 F.3d 832, 839 (7th Cir. 2013) ("A trial judge may reject instructions that would only confuse the jury.")  Second, Defendants' proposal that Plaintiffs should be required to prove all three of the "alleged restraints" listed by Defendants are unreasonable, is unsupported by the law, and misstates Plaintiffs' theory of the case. *See supra* Plaintiffs' Position regarding Defendants' Proposed Instruction 8.

Plaintiffs further object to the modifications Defendants have made to the pattern.  The pattern refers to "the challenged restraints," which at this stage in the trial will be clear to the jury. Defendants instead refer to the "alleged restraints challenged here," which injects uncertainty and confusion.

The same substance is presented in Plaintiffs' Proposed Instruction 34, which more closely tracks the proposed pattern and avoids modifications that make the instruction more complicated and less clear.  Plaintiffs request the Court use Plaintiffs' Proposed Instruction 34.

### 19.   RULE OF REASON—PROOF OF A RELEVANT MARKET

As I mentioned, to prove that the alleged challenged restraints challenged here restraint is are unreasonable, the Plaintiffs first must demonstrate that the restraint has alleged restraints have resulted [or is likely to result] in a substantial harm to competition.  Although it may be relevant to the inquiry, harm that occurs merely to the individual business of plaintiff the Plaintiffs is not sufficient, by itself, to demonstrate harm to competition generally.  That is, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition.

Furthermore, plaintiff the Plaintiffs must show that the harm to competition occurred in an identified market, known as a relevant  product market.  There are two aspects to a relevant market.  The first aspect is known as the relevant product market.  The second aspect is known as the relevant geographic market.  The  It is plantiff's the Plaintiffs' burden to prove the existence of a relevant product market.

The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other.  In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other.  This is a practical test with reference to the actual behavior of buyers and marketing efforts of sellers.  Products need not be identical or precisely interchangeable as long as they are reasonable substitutes.  Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material—such as aluminum foil, cellophane, or even plastic containers – to be reasonable alternatives, then all those products may be in the same relevant product market.

In evaluating whether various products are reasonably interchangeable or reasonable substitutes for each other under the price increase test I have just given you, you may also consider:
* consumers' views on whether the products are interchangeable;
* the relationship between the price of one product and sales of another;
* the presence or absence of specialized vendors;
* the perceptions of either industry or the public as to whether the products are in separate markets;
* the views of plaintiff and defendant the Plaintiffs and Defendants regarding whom their respective competitors are; and
* the existence or absence of different customer groups or distribution channels.

In this case, the Plaintiffs contends that the relevant product market is the market for eggs in all of their various forms, including shell eggs, raw unpasteurized liquid egg, various categories of industrial egg products, and various categories of high value-added egg products.  By contrast, defendant the Defendants contend that plaintiff the Plaintiffs has have failed to allege or prove a relevant product market.  Defendant The Defendants contend that all of these various forms of eggs are not in the same relevant product market, that shell eggs and egg products are not interchangeable and that the various forms of egg products are not interchangeable with each other.  If you find that plaintiff has the Plaintiffs have has proven a relevant product market that includes all forms of eggs, including all shell eggs and all egg products, then you should continue

to evaluate the remainder of ~~plaintiff's~~ the Plaintiffs' claim.  However, if you find that ~~plaintiff has~~ the Plaintiffs have ~~has~~ failed to prove such a market, then you must find in ~~defendant~~ the Defendants' favor on this claim.

**Sources:**  Paragraphs 1–2: ABA Model Instructions, Ch. 1, Section C, Instruction No. 1, at 5, Paragraphs 1–2 (modified as shown).

Paragraphs 3–4:  ABA Model Instructions, Ch. 3, Section A, Instruction No. 4, at 108, Paragraphs 1, 3–4 (modified as shown).

"The requirement that plaintiffs prove adverse impact in the relevant market to establish a § 1 rule of reason violation is well established in the Seventh Circuit."  *Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255, 268 (7th Cir. 1981); *see also Agnew v. NCAA*, 683 F.3d 328, 335 (7th Cir. 2012) ("Under a Rule of Reason analysis, the plaintiff carries the burden of showing that an agreement or contract has an anticompetitive effect on a given market within a given geographic area.").

**Plaintiffs' Position**

***Objections to Rule of Reason Instructions:*** Plaintiffs object to the use of rule of reason instructions. As Plaintiffs propose in their elements instructions, the case should be tried under a per se standard of law. To avoid duplication, Plaintiffs rely on their prior objection to Defendants' rule of reason instructions, as set forth in response to Defendants' Proposed Instruction 7.

***Position As To This Particular Instruction***: If the case is tried as a rule of reason case, Plaintiffs object to this instruction and request the Court to instead use Plaintiffs' Proposed Instruction 40, which contains additional language that will assist the jury. Plaintiffs object to Defendants' proposed instruction for the following reasons:

- The Court should delete the second and third sentences of the first paragraph. The evidence will not support the claim that the harm is limited to a single group of competitors. The allegation in this case is injury to purchasers, not competitors.

- The second paragraph is confusing. It introduces the idea of a geographic market in the middle of a description of the product market. It should also state the proposed product market the jury should evaluate.

- The third paragraph is inappropriate in a case addressing a conspiracy that limited supply. Rather than addressing substitutability of demand as a measure of a market, the jury should be instructed as to supply-side substitutability. The instruction should be based on ABA Pattern Instruction, Chapter 3, Section A, Instruction 5. This instruction is erroneously based on Instruction 4 in that section.

- The fifth paragraph is duplicative and argumentative. It misstates Plaintiffs' proposed market definition by stating it includes all eggs and egg products in every form. The same concepts are captured in the remainder of the instruction.

## 20. RULE OF REASON -- MARKET POWER

If you have determined that the Plaintiffs have proven a relevant market that contains all egg products and all shell eggs, then you must determine whether the companies that you decided are in the alleged conspiracy, namely, any or all of Cal-Maine, Rose Acre, Michael Foods, Moark, and Wabash Valley, together possess market power in that relevant market.

~~The last factor mentioned,~~ Market power~~,~~ has been defined as an ability to profitably raise prices for a sustained period of time above those that would be charged in a competitive market. A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does not possess market power. The ability to charge higher prices for better products or services, however, is not market power. An important factor in determining whether ~~defendant possesses~~ the egg producers that you decided are in the alleged conspiracy together possess market power is ~~defendant's~~ their combined market share, that is, ~~its~~ their percentage of the products or services sold in the relevant market by all competitors. Other factors that you may consider in determining whether the companies that you decided are in the alleged conspiracy have market power include barriers to entry into the market for potential competitors, the threat of substitute products, and outside competitors who were not part of the alleged conspiracy. If ~~defendant~~ the companies that you decided are in the alleged conspiracy d~~oes~~ not possess a substantial market share, it is less likely that ~~defendant~~ they possess~~es~~ market power. If defendant does not possess market power, it is less likely that the challenged restraint has resulted [*or will result*] in a substantial harmful effect on competition in the market.

**Source:** ABA Model Instructions, Ch. 1, Section C, Instruction No. 2, at 5, Paragraph 5 (modified as shown above). The Seventh Circuit requires antitrust plaintiffs to show that a defendant possessed market power "as a threshold matter." *Agnew v. NCAA*, 683 F.3d 328, 335 (7th Cir. 2012); *see also Menasha Corp. v. News Am. Mktg. In-Store, Inc.*, 354 F.3d 661, 663 (7th Cir. 2004) ("The first requirement in every suit based on the Rule of Reason is market power, without which the practice cannot cause those injuries . . . that matter under the federal antitrust laws."). Courts in the Seventh Circuit have rejected plaintiffs' attempts to try to use direct evidence of anticompetitive effects without a showing of market power. *See Hannah's Boutique, Inc. v. Surdej*, No. 13-cv-2564, 2015 U.S. Dist. LEXIS 86257, at *14 (N.D. Ill. July 2, 2015) ("Plaintiff's argument that it can use evidence of direct effects to prove market power while circumventing an initial showing of [defendant's] market share is not persuasive as a matter of law." (citing *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 737 (7th Cir. 2004))).

**Plaintiffs' Position**

***Objections to Rule of Reason Instructions:*** Plaintiffs object to the use of rule of reason instructions. As Plaintiffs propose in their elements instructions, the case should be tried under a per se standard of law. To avoid duplication, Plaintiffs rely on their prior objection to Defendants' rule of reason instructions, as set forth in response to Defendants' Proposed Instruction 7.

***Position As To This Particular Instruction***: If the case is tried as a rule of reason case, Plaintiffs object to the inclusion of this instruction. Market power can be shown by direct evidence, *i.e.,* by proof that the defendants' anticompetitive practices actually did cause anticompetitive effects such as reduced output and higher prices. In many antitrust cases, particularly pleading cases, there is no such direct evidence, so market power has to be inferred from indirect evidence such as market share and the other factors described in Defendants' proposed instruction. Here, because Plaintiffs will show that challenged restraints did, in fact, reduce output and raise prices, there is no need to show anticompetitive effect indirectly through proof of market power. Adding this additional requirement will misstate the law and add unnecessary confusion to this case.

The United States Supreme Court has held that a plaintiff need not prove market power, even in a rule of reason case, where the anticompetitive impact is proven. In *Federal Trade Comm'n v. Indiana Federation of Dentists*, the Court evaluated a conspiracy among dentists to withhold x-rays from insurers. 476 U.S. 447 (1986). The defendants argued the FTC's failure to engage in a market power analysis was fatal to its finding of a violation under the rule of reason. *Id.* at 460. The Supreme Court rejected this argument, finding that proof of "actual, sustained adverse effects on competition" in those areas in which the Defendants operated was sufficient to support a finding that the restraint was unreasonable. *Id.* at 460-61. Where Plaintiff establishes the anticompetitive effect, proof of market power to demonstrate the anticompetitive effect could occur is unnecessary. *Id.* at 461.

Defendants' cases do not refute this conclusion. First, the Supreme Court has made clear what is required. The lower courts on which Defendants rely are powerless to change the applicable principle of law. Second, the cases Defendants cite do not support their proposed instruction. Plaintiffs rely on *Agnew v. NCAA*, 683 F.3d 328, 335 (7th Cir. 2012), a pleading case. There, the Court required the definition of a product market. As to market power, the Court stated "a plaintiff must show that the defendant has market power—that is, the ability to raise prices significantly without going out of business—without which the defendant could not cause anticompetitive effects on market pricing." *Id.* at 335. Plaintiffs will show, as in *Indiana Federation*, that Defendants raised prices without going out of business. *Menasha Corp. v. News-Am. Mktg. In-Store, Inc.*, 354 F.3d 661, 663 (7th Cir. 2004), also described market power as the ability to cause injuries, an element already encompassed in the instructions. Finally, Defendants rely upon *Hannah's Boutique, Inc. v. Surdej*, yet that Section 2 case did not involve a horizontal agreement. 112 F.Supp.3d 758, 767 (N.D. Ill. 2015). More on point is *American Needle, Inc. v. New Orleans Louisiana Saints*, No. 04–cv–7806, 2014 WL 1364022, at *2-3 (N.D. Ill. Apr. 7, 2014), in which the Court held that evidence of price increases provided direct evidence of competitive harm, which is all that was needed. *See also ABA Antitrust Law Developments* 64-69 (7th ed. 2012).

## 21. RULE OF REASON—PROOF OF COMPETITIVE HARM

If you find that ~~plaintiff has~~ the Plaintiffs have~~has~~ proven the existence of a relevant market, <u>and that those whom you have determined participated in the alleged conspiracy collectively possessed market power</u>, then you must determine whether ~~plaintiff has~~ the Plaintiffs have also proven that the <u>alleged</u> ~~challenged~~ restraint<u>s</u> <u>challenged here</u> had ~~has~~ [*or is likely to have*] a substantial harmful effect on competition in that market.  A harmful effect on competition, or competitive harm, refers to a reduction in competition that results in the loss of some of the benefits of competition, such as lower prices, increased output, or higher product quality.

<u>The ability to charge higher prices for better products and services is not competitive harm.</u> <u>Additionally, to qualify as competitive harm, the harmful effect on competition in the relevant market must have endured for at least one year.</u>  If the challenged conduct has not resulted in [*or is not likely to result in*] higher prices, decreased output, lower quality, or the loss of some other competitive benefit, <u>or the effect lasted less than one year</u>, then there has been no competitive harm, and you should find that the challenged conduct was not unreasonable.

In determining whether the <u>alleged</u> ~~challenged~~ restraint<u>s</u> <u>challenged here</u> have ~~has~~ produced [*or is likely to produce*] competitive harm, you may <u>only consider the effect caused by those whom you may have determined participated in the alleged conspiracy, as opposed to the conduct of egg producers who were not proven to be a part of the alleged conspiracy.  For example, if you determined that joining the Certified Program is an act in furtherance of the conspiracy you found to exist, then in deciding whether the UEP Certified Program produced competitive harm, you may only consider the effect on the market caused by those you found to be a part of the alleged conspiracy.  You may not consider the effect on the market caused by the conduct of the other, approximately 200, non-conspirator egg producers that participated in the UEP Certified Program.  In other words, you cannot consider whether the entire UEP Certified Program had a harmful effect on competition.  The same is true of the other alleged restraints challenged by the Plaintiffs.</u>

<u>Additionally, in determining whether the alleged restraints challenged here have produced</u> [*or is likely to produce*] competitive harm, you may look at the following factors:

- the effect of the restraint on prices, output, product quality, and service;
- the purpose and nature of the restraint;
- the nature and structure of the relevant market;
- the number of competitors in the relevant market and the level of competition among them, both before and after the restraint was imposed.; and
- whether the defendant possesses market power.

**Source:**  ABA Model Instructions, Ch. 1, Section C, Instruction No. 2, at 5, Paragraphs 3–4 (modified as shown; market power text omitted given separate instruction on market power).  *See also* DAP Instruction No. 19, at 38–41, Tr. at 254:11–257:23.  Paragraph 3 is modified to ensure that any injury is associated with the conspiracy, as alleged, and with the violation

actually found. *See Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 401 (7th Cir. 1993) (no anticompetitive effect where certification not required to compete in the market; plaintiff must "establish, with a fair degree of certainty, that the violation was a material element of, and substantial factor in producing, the injury"); *William O. Gilley Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 664 (9th Cir. 2009) (no liability or competitive harm for web of bilateral agreements absent proof that everyone worked together through the use of the independent bilateral agreements to restrain trade). Competitive harm must also be of significant duration. *see Procaps S.A. v. Patheon Inc.*, 141 F. Supp. 3d 1246, 1281 (S.D. Fla. Oct. 29, 2015), *aff'd*, 845 F.3d 1072 (11th Cir. 2016) (holding that a restraint on trade that lasted seven months was "far too short as a matter of law to create the required substantial marketwide harm of actual detrimental effects."); *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984) (indicating that the Sherman Act is intended to "distinguish robust competition from conduct with long-run anticompetitive effects"); *Adaptive Power Sols., LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 952 (9th Cir. 1998) (holding that a "four- to ten-month" effect on competition "is not significant enough to be classified as an injury to competition under the Sherman Act").

**Plaintiffs' Position**

***Objections to Rule of Reason Instructions:*** Plaintiffs object to the use of rule of reason instructions. As Plaintiffs propose in their elements instructions, the case should be tried under a per se standard of law. To avoid duplication, Plaintiffs rely on their prior objection to Defendants' rule of reason instructions, as set forth in response to Defendants' Proposed Instruction 7.

***Position As To This Particular Instruction***: If the case is tried as a rule of reason case, Plaintiffs object to the instruction because the concepts explained in the instruction relating to proof of competitive harm are sufficiently captured in other instructions. Plaintiffs' Proposed Instruction 40 addresses the concept of competitive harm in its Paragraph 5. That instruction, which focuses on the issues relative to this case, should be given instead of this instruction.

Plaintiffs object to the specific language in Defendants' Proposed Instruction 21 to not be given for the following reasons:

- Defendants have modified the pattern to emphasize market power. As shown in response to Defendants' Proposed Instruction 20, market power need not be assessed by the jury. Even if market power is an important concept, the ABA pattern on which this proposal is based does not reemphasize that point.

- The proposed instruction refers to the "alleged restraints challenged here." As shown above, this language is improper.

- Defendants' additions to the second paragraph of the instruction imposes a requirement not found in the law. A violation of the Sherman Act does not require one year of competitive impact, although the evidence in this case will demonstrate harm exceeding that length of time.

- Defendants' additions to paragraph 3, which are inconsistent with the pattern instruction, are argumentative and should not be in an instruction.

- Plaintiffs object to Defendants' listing of additional factors for the jury to consider in the final paragraph of the instruction. This is not a case in which an agreement need be inferred from market structure. The additional factors identified in the final paragraph of the objection do not concern issues to be tried in this case.

## 22. RULE OF REASON—

## EVIDENCE OF COMPETITIVE BENEFITS

If you find that the Plaintiffs have~~has~~ proven that the alleged ~~challenged~~ restraints challenged here resulted in substantial harm to competition in a relevant market, then you next must determine whether the alleged restraints also benefits competition in other ways.

In considering whether the alleged restraints benefitted competition, you may consider various factors including, but not limited to: whether the alleged restraints were demanded by customers, increased production, increased consumer choice, resulted in the creation of a new product, decreased prices, or improved product quality.  Evidence regarding the ethical treatment of laying hens may be considered with respect to issues such as whether an alleged restraint increased output, improved product quality, widened customer choice, or met customer demand. However, the ethical treatment of laying hens as a societal benefit standing alone is not in and of itself a procompetitive benefit.

If you find that the alleged ~~challenged~~ restraints challenged here ~~does~~ resulted in competitive benefits, then you also must consider whether the alleged restraints were reasonably necessary to achieve the benefits. If ~~plaintiff proves~~ the Plaintiffs prove~~s~~ that the same benefits could have been readily achieved by other, reasonably available alternative means that create substantially less harm to competition, then they cannot be used to justify the restraint.

**Sources:**  Paragraphs 1 and 3: ABA Model Instructions, Ch. 1, Section C, Instruction No. 3, at 8 (modified as shown).  *See also* DAP Instruction No. 20, at 42, Tr. at 257:24–258:22.

Paragraph 2: DAP Instruction No. 20, Paragraph 2, at 42, Tr. at 258:3–15.

## Plaintiffs' Position

***Objections to Rule of Reason Instructions:*** Plaintiffs object to the use of rule of reason instructions. As Plaintiffs propose in their elements instructions, the case should be tried under a per se standard of law. To avoid duplication, Plaintiffs rely on their prior objection to Defendants' rule of reason instructions, as set forth in response to Defendants' Proposed Instruction 7.

***Position As To This Particular Instruction***: If the case is tried as a rule of reason case, Plaintiffs do not have a substantive objection to this instruction, although Plaintiffs object to the modifications Defendants have made to the pattern. The pattern refers to "the challenged restraints" in the first and third paragraphs, which at this stage in the trial will be clear to the jury. Defendants instead refer to the "alleged restraints challenged here," which injects uncertainty and confusion.

The same substance is presented in Plaintiffs' Proposed Instruction 41, without the unnecessary modifications and the repetitive references to customer choice in the second paragraph that Defendants propose. That instruction more closely tracks the proposed pattern and avoids modifications that make the instruction more complicated and less clear.

## 23. BALANCING THE COMPETITIVE EFFECTS

If you find that the alleged ~~challenged~~ restraints challenged here ~~was~~ were reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same restraint.

If the competitive harm substantially outweighs the competitive benefits, then the alleged ~~challenged~~ restraints challenged here are ~~is~~ unreasonable. If the competitive harm does not substantially outweigh the competitive benefits, then the ~~challenged~~ alleged restraints challenged here are not unreasonable. In conducting this analysis, you must consider the benefits and harm to competition and consumers., ~~not just to a single competitor or group of competitors. Plaintiff bears~~ The Plaintiffs bear the burden of proving that the anticompetitive effect of the conduct substantially outweighs its benefits.

**Source:** ABA Model Instructions, Ch. 1, Section C, Instruction No. 4, at 9 (modified as shown). *See also* DAP Instruction No. 21, at 43, Tr. at 258:23–259:10.

## Plaintiffs' Position

***Objections to Rule of Reason Instructions:*** Plaintiffs object to the use of rule of reason instructions. As Plaintiffs propose in their elements instructions, the case should be tried under a per se standard of law. To avoid duplication, Plaintiffs rely on their prior objection to Defendants' rule of reason instructions, as set forth in response to Defendants' Proposed Instruction 7.

***Position As To This Particular Instruction***: If the case is tried as a rule of reason case, Plaintiffs do not have a substantive objection to this instruction, although Plaintiffs object to the modifications Defendants have made to the pattern. The pattern refers to "the challenged restraints," which at this stage in the trial will be clear to the jury. Defendants instead refer to the "alleged restraints challenged here," which injects uncertainty and confusion. Defendants agree to the deletion of the reference to "not just to a single competitor or group of competitors," which is not relevant in this case, which is not brought by a competitor.

The same substance is presented in Plaintiffs' Proposed Instruction 42, without the unnecessary modifications Defendants propose. That instruction more closely tracks the proposed pattern and avoids modifications that make the instruction more complicated and less clear.

## 24. INJURY

If you find that one or more Defendants participated in an overarching conspiracy to reduce egg supply in violation of ~~has violated~~ the Sherman Act, and that their conduct caused a substantial harm to competition in a relevant market, then you must decide if the Plaintiffs ~~is entitled to recover damages from defendant~~ were injured by ~~the violation~~ that conduct. You must make this determination separately for each Plaintiff.

A Plaintiff is entitled to recover damages for an injury to its business or property if it can establish three elements of injury and causation:

(1) the Plaintiff was in fact injured as a result of the Defendants' ~~alleged~~ actions in violation of the antitrust laws;

(2) ~~defendant's~~ the alleged illegal conduct was a material cause of the Plaintiff's injury; and

(3) the Plaintiff's injury is an injury of the type that the antitrust laws were intended to prevent.

This first element is sometimes referred to as "injury in fact" or "fact of damage." Each Plaintiff ~~to establish that it is entitled to recover damages, it~~ must prove that it was injured as a result of ~~defendant's~~ the actions of those companies among the Defendants and alleged co-conspirators, namely, Cal-Maine, Rose Acre, Michael Foods, Moark, UEP, USEM, and/or Wabash Valley, whom you have decided are part of the alleged conspiracy, in ~~the alleged~~ violation of the antitrust laws. ~~Proving the fact of damage~~ This does not require each Plaintiff to prove the dollar value of its injury—in fact, I have told the parties not to address that at this time. For now, it requires only that each Plaintiff ~~has established~~ prove that it was, in fact, injured by the actions of those whom you have found to be part of the conspiracy in violation of the antitrust laws. ~~It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that plaintiff has established that it was in fact injured.~~

Second, each Plaintiff must also offer evidence that establishes by a preponderance of the evidence that ~~defendant's alleged illegal conduct~~ the actions of all alleged co-conspirators in violation of the antitrust laws was a material cause of that Plaintiff's injury. This means that the Plaintiffs must have proved that some damage occurred to it as a result of ~~defendant's alleged antitrust violation~~ wrongful conduct of those whom you have found to be part of the conspiracy, and not some other cause.

For example, if you determine that the UEP Certified Program was a material cause of a Plaintiff's injury, that Plaintiff must prove that it was injured as a result of the fact that the egg producers you determined were members of the conspiracy joined the Certified Program. You may not consider whether the Plaintiff was injured by the conduct of the other, approximately 200 non-conspirator egg producers that participated in the UEP Certified Program.

The Plaintiff is not required to prove that the alleged antitrust violation was the sole cause of its injury; nor need the Plaintiff eliminate all other possible causes of injury. It is enough if the Plaintiff has proved that the alleged antitrust violation was a material cause of its injury.

Finally, each Plaintiff must establish that its injury is the type of injury that the antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." If the Plaintiff's injury was caused by a reduction in competition, acts that would lead to a reduction in competition, or by acts that would otherwise harm consumers and customers, then the Plaintiff's injuries are antitrust injuries. On the other hand, if the Plaintiff's injuries were caused by actions of non-conspirators, heightened competition, the competitive process itself, or by acts that would benefit consumers and customers, then the Plaintiff's injuries are not antitrust injuries and the Plaintiff may not recover damages for those injuries under the antitrust laws.

In summary, if a Plaintiff can establish that (a) it was in fact injured by ~~defendant's conduct~~ the actions of all those you found to be part of the alleged conspiracy in violation of the antitrust laws, (b) that ~~defendant's conduct was~~ the co-conspirators' actions were a material cause of the Plaintiff's injury, and (c) that ~~defendant's~~ the Plaintiff's injury was the type that the antitrust laws were intended to prevent, then that Plaintiff is entitled to recover damages for the injury to its business or property. As noted above, you must make this determination separately for each individual Plaintiff.

**Source:** ABA Model Instructions, Ch. 6, Section A, Instruction No. 1, at 300 (modified as shown); *see also* DAP Instruction No. 26, at 49–51, Tr. at 263:10–265:22. Modifications are intended to ensure that any injury is associated with the conspiracy, as alleged, and with the violation actually found. *See Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 401 (7th Cir. 1993) (no anticompetitive effect where certification not required to compete in the market; plaintiff must "establish, with a fair degree of certainty, that the violation was a material element of, and substantial factor in producing, the injury."); *William O. Gilley Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 664 (9th Cir. 2009) (no liability or competitive harm for web of bilateral agreements absent proof that everyone worked together through the use of the independent bilateral agreements to restrain trade). Competitive harm must also be of significant duration. *See Procaps S.A. v. Patheon Inc.*, 141 F. Supp. 3d 1246, 1281 (S.D. Fla. Oct. 29, 2015), *aff'd*, 845 F.3d 1072 (11th Cir. 2016) (holding that a restraint on trade that lasted seven months was "far too short as a matter of law to create the required substantial marketwide harm of actual detrimental effects."); *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984) (indicating that the Sherman Act is intended to "distinguish robust competition from conduct with long-run anticompetitive effects"); *Adaptive Power Sols., LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 952 (9th Cir. 1998) (holding that a "four- to ten-month" effect on competition "is not significant enough to be classified as an injury to competition under the Sherman Act").

Bracketed language in Paragraph 3 to be included if trial is bifurcated.

**Plaintiffs' Position**

***Objections to Rule of Reason Instructions:*** Plaintiffs object to the use of rule of reason instructions. As Plaintiffs propose in their elements instructions, the case should be tried under a per se standard of law. To avoid duplication, Plaintiffs rely on their prior objection to Defendants' rule of reason instructions, as set forth in response to Defendants' Proposed Instruction 7.

***Position As To This Particular Instruction***: If the case is tried as a rule of reason case, Plaintiffs request the Court to decline to give this instruction, and to present Plaintiffs' Proposed Instruction 44, which more closely tracks the portions of the pattern relevant to this case and eliminates unnecessary language that makes the instruction more complicated and less clear. Plaintiffs object to the following aspects of this proposed instruction:

- The first paragraph is duplicative of prior instructions and is unnecessary.

- Plaintiffs object to the second paragraph and its three elements of injury. The jury need only find that Plaintiffs were in fact injured and the alleged illegal conduct was a material cause of that injury. This instruction can be greatly simplified to state those limited requirements. Plaintiffs' Proposed Instruction 44 makes the same point with substantially fewer words.

- The third paragraph is duplicative. Instead of stating simply that Plaintiff must prove it was injured, the paragraph, and Defendants' modifications of the language, adds length but not clarity. The language in the third paragraph does not explain the requirement of injury in fact.

- The fourth paragraph states that Plaintiff must show the illegal conduct was a material cause of the Plaintiff's injury, a concept that is simply stated in Plaintiffs' Proposed Instruction 44. The additional text in paragraph four does nothing to elaborate on the task the jury must decide.

- Paragraph 5 is argumentative. It is not an instruction. It is simply a restatement of Defendants' argument.

- Paragraph 6 is a correct statement of the law. It can properly be incorporated into a simpler jury instruction, as Plaintiffs propose in Plaintiffs' Instruction 44.

- Paragraph 7 attempts to explain the legal concept of antitrust injury. While an interesting concept for antitrust academics and practitioners, antitrust injury is not a jury issue in this case. Plaintiffs complain they were overcharged as a result of the conspiracy. That is an antitrust injury. The jury need not find that it is.

- Paragraph 8, which purports to summarize the proceeding instruction, is duplicative. Defendants also attempt to define "business" as part of the statute's requirement that there be an injury to business or property. This concept can be included in a streamlined damage instruction, as Plaintiffs do in their Proposed Instruction 44. Plaintiffs do not understand Defendants to contend that paying an overcharge is not an injury to business

or property.  As a result, this is not an issue that needs to be presented to the jury and including it will only make the case more complex.

**PROPOSED JURY INSTRUCTIONS—DAMAGES PHASE**

**25. DAMAGES INSTRUCTION NO. 1:  BIFURCATED TRIAL**

[~~The first jury found~~] In the liability phase of this proceeding, you found that Defendant(s) violated the antitrust laws by conspiring to reduce the supply of eggs.  Each injured Plaintiff is entitled to recover for all damages to its business or property that were a direct result or likely consequence of the conduct that [~~the first jury~~] you previously found to be unlawful. You may not, however, award damages for injuries or losses caused by conduct not submitted to [~~the first jury~~] you in the liability phase of the trial, or caused by factors other than Defendants' conduct that [~~the first jury~~] you previously found to be ~~anticompetitive~~unlawful.

The law does not permit you to award damages to punish a wrongdoer—what we sometimes refer to as punitive damages—or to deter particular conduct in the future. Furthermore, you are not permitted to award to Plaintiffs an amount for attorneys' fees or the costs of maintaining this lawsuit.

Source:  ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.) at 306.

**Plaintiffs' Position**

Defendants do not object to the substance of Defendants' Damages Instruction 1, but object to this instruction as duplicative.  The content of this instruction is covered in other instructions in a more direct manner.

The same content is included in Plaintiffs' Proposed Instruction 46.  As a result, it does not need to be set forth in a separate instruction.  Combining instructions to simplify the presentation of the jury is preferrable. *See United States v. Jordan*, 223 F.3d 676, 690 (7th Cir. 2000) ("Effectively combining multiple instructions into one instruction is an accepted practice.").

Plaintiffs submit Plaintiffs' Proposed Instruction 46 should be given.

## 26. DAMAGES INSTRUCTION NO. 2:  BASIS FOR CALCULATING DAMAGES

You are permitted to make just and reasonable estimates in calculating <u>each Plaintiff's</u> damages.  You are not required to calculate damages with mathematical certainty or precision.  However, the amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates.  Damages may not be based on guesswork or speculation.  <u>Each</u> Plaintiff must prove the reasonableness of each of the assumptions upon which the damages calculation is based.

If you find that <u>a Plaintiff</u> has provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

If you find that <u>a Plaintiff</u> has failed to carry its burden of providing a reasonable basis for determining damages, then you may not award damages.

<u>Source</u>:  ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.) at 307, citing *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566 (1981) and *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946) (other internal citations omitted).

**Plaintiffs' Position**

Plaintiffs do not object to the substance of the first two paragraphs of Defendants' Damages Instruction 2.

Plaintiffs object to the third paragraph. Plaintiffs invite the Court instead to use the ABA pattern instruction, including, if appropriate, the nominal damage language that Defendants have omitted from Defendants' Damages Instruction 2.

A more complete damage instruction is found at Plaintiffs' Proposed Instruction 48. The Court should use this instruction instead.

## 27. DAMAGES INSTRUCTION NO. 3:  CAUSATION AND DISAGGREGATION

~~If you find that defendant violated the antitrust laws and that plaintiff was injured by that violation,~~ If you have determined that there was an unlawful agreement among competitors to restrict the supply of eggs, that one or more of the Defendants participated in that unlawful agreement, and one or more Plaintiffs were injured by that unlawful agreement, you must now determine the amount of damages to award to each injured Plaintiff.  Each Plaintiff is entitled to recover for such injury that was the direct result or likely consequence of the unlawful acts of the Defendant(s).  If you find that Defendants violated the antitrust laws and that Plaintiffs were injured by that violation, Plaintiffs are entitled to recover for such injury that was the direct result or likely consequence of the unlawful acts of Defendants.  Plaintiffs bear the burden of showing that their injuries were caused by Defendants' antitrust violation, as opposed to any other factors. If you find that Plaintiffs' alleged injuries were caused in part by Defendants' alleged antitrust violation and in part by other factors, then you may award damages only for that portion of Plaintiffs' alleged injuries that were caused by Defendants' alleged antitrust violation.

Plaintiffs claim that they suffered injury because they paid higher prices for egg products than they would have paid if the alleged antitrust violation had not occurred.

Defendants claim that these higher prices occurred as a result of other factors that have nothing to do with the alleged antitrust violation.  These include:

- Changes in state law requirements regarding the husbandry of egg laying hens;

- Pressure from animal-welfare groups regarding the husbandry of egg laying hens;

- Increased feed costs;

- Increased fuel costs;

- Increases in operational costs due to governmental regulations;

- Construction costs;

- Increased consumption of eggs by consumers due to diets and reduced concerns about cholesterol in eggs;

- Increased specialty egg production;

- Global economic market forces (including, for example, increased egg prices in Europe due to animal-welfare regulations);

- Disease (including, for example, Avian flu);

- Salmonella outbreaks; and

- Economic recession.

Plaintiffs are not entitled to recover for changes in price that resulted solely from these or other causes arising from the normal course of lawful business activity. The presence of these factors does not mean Plaintiffs did not suffer antitrust injury, but Plaintiffs are not entitled to recover for damages caused by them. Plaintiffs only may recover for damages caused by the alleged antitrust violation.

Similarly, Plaintiffs are not entitled to recover damages for injuries caused by the conduct of egg producers who were not found to be a part of the alleged conspiracy. For example, if you determined that joining and adhering to the Certified Program caused Plaintiffs injuries, you may only consider the effect caused by the individual producers you found to be a part of the alleged conspiracy. You may not consider the effect on the market and on Plaintiffs caused by the conduct of the other, approximately 200, non-conspirator egg producers that participated in the UEP Certified Program.

Plaintiffs bear the burden of proving damages by a preponderance of the evidence, including apportioning damages between lawful and unlawful causes. If you find that Plaintiffs

85

<u>were</u> injured by Defendants' alleged antitrust violation, and there is a reasonable basis to apportion <u>Plaintiffs'</u> alleged injury between lawful and unlawful causes, then you may award damages.

If you find that <u>Plaintiffs'</u> alleged injuries were caused by factors other than <u>Defendants'</u> alleged antitrust violation, then you must return a verdict for <u>Defendants</u>. If you find that there is no reasonable basis to apportion <u>Plaintiffs'</u> alleged ~~injury~~ <u>injuries</u> between lawful and unlawful causes, or that apportionment can only be accomplished through speculation or guesswork, then you may not award any damages at all.

<u>Source</u>:  ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.) at 311, citing *Comcast v. Behrend*, 133 S.Ct. 1426, 1433 (2013) and *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1353 (3d Cir. 1975) (other internal citations omitted).  Paragraph 5 adapted from *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) [P]laintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation.") ; *In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 124, 153 (E.D. Pa. 2015) ("[A]ny drop in egg supply should be sufficiently tied to Defendants' conduct to make the model reliable for showing antitrust impact. Here, Plaintiffs did not isolate the effects of Defendants' conduct on the total egg supply; any supply reduction by non-conspiring producers has not been controlled for."); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056-57 (8th Cir. 2000) (reversing jury verdict predicated on expert testimony that "failed to account for market events that both sides agreed were not related to any anti-competitive conduct" and "did not separate lawful from unlawful conduct").

**Plaintiffs' Position**

Plaintiffs object to Defendants' Damage Instruction 3, for the following reasons:

- The first paragraph is incorrect. This instruction will only be given after the jury concludes Defendants engaged in an unlawful antitrust conspiracy and have found that Plaintiffs were injured by that action. The instruction does not recognize those realities and instead invites the jury to address those issues.

- The second paragraph correctly states the theory of overcharge. The jury need not be instructed as to that theory as Plaintiffs' Proposed Instruction 46 correctly advises the jury that it is proper to award damages on such a theory.

- The third paragraph, and all of its bullet points, are argumentative. Singly, and in combination, they unfairly suggest reasons, not supported by the evidence, to reduce damages. Defendants are entitled to argue their reasons why damages should be reduced. Those arguments are not proper subjects of an instruction.

- The remainder of the instruction elaborates, as do Defendants other damage instructions, on theories of causation and defense arguments as to why causation has not been established in this case. These repetitive, argumentative instructions need not be included. Plaintiffs' Proposed Damage Instruction 46 amply advises the jury as to the requirements of causation, as does the injury instruction from the first phase of the trial.

### 28. DAMAGES INSTRUCTION NO. 4:  OVERCHARGES BASED ON ALLEGED AGREEMENT TO RESTRICT OUTPUT

If you have determined that there was an unlawful agreement among competitors to reduce the supply of eggs that caused some injuries to Plaintiffs, you must now determine the amount of damages to award to Plaintiffs.  The proper way to calculate those damages is to determine the difference between the prices Plaintiffs actually paid for egg products and the prices Plaintiffs would have paid for the egg products had there been no agreement to reduce the supply of eggs. That is referred to as the overcharge.

Plaintiffs have attempted to demonstrate that they paid more for egg products than they would have paid absent the unlawful agreement through econometric analysis, offered by Plaintiffs' expert witness, Dr. Baye.  Defendants presented evidence, through their expert witness, Dr. Jonathan Walker, that the model offered by Dr. Baye was flawed and did not accurately estimate the impact on Plaintiffs of any alleged unlawful conduct.

If you find that the Plaintiffs' model is a reliable guide to estimate what the Plaintiffs' egg product prices would have been absent the alleged conspiracy to reduce the supply of eggs, then you may calculate the Plaintiffs' damages using Plaintiffs' model.  You may find, however, that the model is not a reliable indicator of the amount of alleged supply reduction attributable to Defendants or of the price increase attributable to that reduction, in which case you are not permitted to award damages.

Further, Defendants are not liable for overcharges on egg product purchases that are a result of lawful conduct or the conduct of any non-conspiring entities. Any drop in egg supply, and any resulting increase in the price of egg products, must be tied only to the unlawful conduct of those entities that you found participated in the conspiracy to reduce the supply of eggs – [NAME OF ENTITIES FOUND TO BE IN CONSPIRACY].

<u>Source</u>:  Paragraph 1:  ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.) at 312 (as adapted).  Second paragraph adapted from Defendants' proposed damages instruction in *In re Southeastern Milk Antitrust Litig.*, Case No. 2:08-MD-01000 (ECF 1624-1) (July 14, 2011). Third paragraph adapted from *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) [P]laintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation.") ; *In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 124, 153 (E.D. Pa. 2015) ("[A]ny drop in egg supply should be sufficiently tied to Defendants' conduct to make the model reliable for showing antitrust impact. Here, Plaintiffs did not isolate the effects of Defendants' conduct on the total egg supply; any supply reduction by non-conspiring producers has not been controlled for."); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056-57 (8th Cir. 2000) (reversing jury verdict predicated on expert testimony that "failed to account for market events that both sides agreed were not related to any anti-competitive conduct" and "did not separate lawful from unlawful conduct").

**Plaintiffs' Position**

Plaintiffs object to Defendants' Damage Instruction 4.

Paragraph 1 is not based on the finding of liability. It injects uncertainty as to what the jury has already done.

Paragraphs 2, 3, and 4 of this instruction are argumentative.

Throughout the entire instruction, Defendants attempt to re-argue issues of causation that will necessarily have been resolved in Plaintiffs' favor in the first phase of the trial.

While Defendants proport to rely on the ABA pattern instruction, they have "adapted" that instruction in a way that is contrary to its meaning. The pattern instructions advises the jury that they are to compensate Plaintiff for damages caused by the conduct to be unlawful. It further notes that overcharge damages are proper measure of damages. This guidance is already included in Plaintiffs' Proposed Instructions 46, for example. The remainder of this instruction attempts to incorporate into a jury instruction Defendants' argument, which is improper.

### 29. DAMAGES INSTRUCTION NO. 5:  MULTIPLE PLAINTIFFS

If you award damages, you will be asked what sum of money would fairly and reasonably compensate each Plaintiff. If you find that more than one <u>Plaintiff</u> is entitled to recover damages, exercise caution to be sure that each <u>Plaintiff</u> is awarded damages only for its own injuries.

<u>Sources</u>:  ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.) at 326.

**Plaintiffs' Position**

Plaintiffs do not object to Defendants' Damage Instruction 5.  Plaintiffs have proposed the same instruction as Plaintiffs' Proposed Instruction 50.

## 30. DAMAGES INSTRUCTION NO. 6: MITIGATION

Plaintiffs may not recover damages for any portion of their injuries that they could have avoided through the exercise of reasonable care and prudence. Plaintiffs are not entitled to increase any damages through inaction. The law requires an injured party to take all reasonable steps it can to avoid further injury and thereby reduce its loss. If any or all Plaintiffs failed to take reasonable steps available to them, and the failure to take those steps resulted in greater harm to that Plaintiff or Plaintiffs than it would have suffered had it taken those steps, then that Plaintiff or Plaintiffs may not recover any damages for that part of the injury it could have avoided. Defendants have the burden of proof on this issue. Defendants must prove by a preponderance of the evidence that a Plaintiff:

(1) acted unreasonably in failing to take specific steps to minimize or limit its losses;

(2) that the failure to take those specific steps resulted in its losses being greater than they would have been had it taken such steps; and

(3) the amount by which Plaintiff's loss would have been reduced had Plaintiff taken those steps.

In determining whether a Plaintiff failed to take reasonable measures to limit its damages, you must remember that the law does not require a Plaintiff to take every conceivable step that might reduce its damages. The evidence must show that a Plaintiff failed to take commercially reasonable measures that were open to it. Commercially reasonable measures mean those measures that a prudent businessperson in the Plaintiff's position would likely have adopted, given the circumstances as they appeared at that time. Each Plaintiff should be given wide latitude in deciding how to handle the situation, so long as what each Plaintiff did was not unreasonable in light of the existing circumstances.

Sources:  ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.) at 324.

## Plaintiffs' Position

Plaintiffs object to this Instruction as not supported by the evidence. There was no commercially reasonable way for Plaintiffs to mitigate their losses resulting from Defendants' wrongful conduct.