UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRAFT FOODS GLOBAL, INC., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Case No. 11-cv-8808 |
| ) | |
| v. ) | Hon. Steven C. Seeger |
| ) | |
| UNITED EGG PRODUCERS, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**ORDER**

Plaintiffs' motion *in limine* to exclude any reference to the action or inaction of any federal or state antitrust regulator or the USDA (Dckt. No. 178) is hereby granted in large part. There are two issues. The first issue is about antitrust regulators, and the second issue is about the USDA.

First, Plaintiffs seek to exclude any reference to the decisions by federal and state regulators not to charge Defendants with antitrust violations. The Court agrees that any such evidence is out of bounds.

As a general matter, the Constitution entrusts the executive branch with enforcement decisions (and state constitutions do, too). The decision to bring, or not bring, charges against a potential defendant for a possible violation of the law is a matter of prosecutorial discretion.

Sometimes the government elects not to bring charges against a potential defendant based on the merits. Maybe the case is weak, factually or legally. But sometimes the government elects not to bring charges for other reasons, separate and apart from the strengths and weaknesses of the case. Potential reasons include resource limitations, the relative importance of the matter compared to other matters, broader enforcement priorities, the complexity of the case, evidentiary problems, and the like.

Most of the time, the reasons are complicated, and they are known only to the executive branch. A decision not to bring charges is not necessarily the same thing as a clean bill of health. Sometimes the government decides not to bring charges even when it thinks that someone is guilty as sin.

Here, the parties cannot make any statements or arguments to the jury about the decisions of federal or state antitrust authorities not to bring charges. The lack of charges has modest probative value, at best, and any probative value is substantially outweighed by the risk of confusion and unfair prejudice. No one knows why the antitrust regulators looked into the

situation, and decided to let it go. The reasons are anyone's guess, and speculation wouldn't add anything helpful to the trial.

Evidence about no-action decisions could create an artificial sense of inertia for the jury. There is too much risk that jurors might think that the government dropped it, so they should drop it, too.

The Court can't second-guess the decision of the executive branch not to bring charges against a potential defendant. The jury can't second-guess the executive branch, either. By the same token, the jury should not be swayed by a no-action decision by the executive branch. A no-interference rule applies to both lanes of traffic: the jury can't second-guess the decision of the executive branch, and the decision by the executive branch should not taint the decision-making of the jury. Everyone should stay in their lane, and make their own decisions.

This ruling is in line with the ground rules in the trial involving the Direct Action Plaintiffs in the Pennsylvania MDL. There, the parties agreed that they would not "introduce evidence, argument, or testimony referring to the failure of federal or state enforcement agencies to initiate an enforcement action concerning the UEP Certified Program." *See* MDL Court, Order at 2, ECF No. 1947 (E.D. Pa. Aug. 15, 2019). The parties agreed that things might change if someone opens the door.

This Court expects the door to remain shut.

Second, Plaintiffs seek to exclude references to the USDA, especially any statements suggesting that the USDA approved the UEP Certified Program. Drawing boundaries on references to the USDA is a more complicated issue, given the nature of the case.

The USDA plays no role in enforcing the federal antitrust laws, as far as the Court knows. Assuming that's right, then no party should suggest to the jury that the USDA "blessed" the UEP Certified Program and gave the Program the green light from an antitrust perspective. Maybe the USDA was involved in some other area of the Program, but the parties should not blur the lines for the jury. By way of analogy, when building a house, passing a plumbing inspection doesn't tell you much about the condition of the electrical work.

Even so, there is no need for a blanket ban on references to the USDA, either. It is possible that the USDA could have had some role in the UEP Certified Program, without getting involved in the potential anticompetitive implications of the program.

As a hypothetical example, maybe the USDA blessed the new pen size for hens, from an animal-welfare perspective, without considering the potential competitive implications for the egg market. If so, evidence about the USDA's involvement might help to show that the reasons for the UEP Certified Program were not pretextual. Also, the second amended complaint refers to audits under the UEP Certified Program (*see* Second Am. Cplt., at ¶ 7(E)), and the USDA seems to have played a role in those audits. If so, the USDA might come up at trial for that reason, too. Maybe there are other legitimate reasons why the USDA could deserve mention at trial, without suggesting that the USDA gave its blessing from an antitrust perspective.

So, at this juncture, the Court will not bar any and all references to the USDA. But the parties should steer clear of any suggestion that the USDA approved the UEP Certified Program from an antitrust perspective.

Maybe the Court could give an instruction that the USDA is involved in agricultural / animal-welfare issues, but is not involved in antitrust issues. Such an instruction could help the jury understand the USDA's role, and avoid potential confusion. The jury should understand that the USDA wears an agricultural hat, not an antitrust hat.

Date: September 19, 2023

Steven C. Seeger
United States District Judge