**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KRAFT FOODS GLOBAL, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 11-cv-8808 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| UNITED EGG PRODUCERS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>ORDER</u>

Defendants' motion *in limine* regarding deposition designations (Dckt. No. 163) is hereby granted in large part.

The motion is about how the parties will present deposition designations to the jury at trial. It's a big issue for the mechanics of trial. Most witnesses will testify by deposition designations instead of taking the stand for live testimony.

Defendants propose that the parties present all deposition designations and counter-designations for each witness at one time. That is, Defendants propose that the parties present a witness's deposition designations, and the counter-designations, for both sides at the same point in the trial. The jury would hear the designations and the counter-designations together, one after the other, the first time that the jury hears from the witness.

Under that proposal, it would not matter whether the witness is called in Plaintiffs' case in chief, or in Defendants' case in chief. When the witness is called, the parties would present all designations and counter-designations for that witness, then and there. Defendants argue that this protocol will "streamline trial, avoid repetition of witness testimony, and will most effectively present each witness to the jury." *See* Defs.' Mtn., at 2 (Dckt. No. 163).

Defendants point out that the parties have identified a staggering number of witnesses – 57 people – who will testify through deposition designations. *Id.* One side or the other offered affirmative designations for 46 of the 57 witnesses. For those witnesses, one side has affirmative designations, and the other side has counter-designations.

For the remaining 11 witnesses, both sides affirmatively designated testimony. For those witnesses, the designations and counter-designations overlap. That is, sometimes both sides designated the same passages of testimony. "If both Plaintiffs and Defendants played their affirmative deposition designations for each witness in their respective cases, plus separate

completeness and counter-designations, the jury would hear hours of repetitive testimony." *Id.* at 3.

In sum, Defendants ask the Court to exercise its authority under the Federal Rules, and "require the parties to present all deposition testimony of each witness testifying via deposition at one time, in order, including all affirmative, completeness, and counter-designations of both sides." *Id.* at 4.

In response, Plaintiffs take issue with the notion that the proposal would lead to a more efficient trial. "There will be no efficiency for the Court and the jury because Plaintiffs have no plans to play duplicate testimony. Unlike live witnesses requiring significant travel, there is no efficiency for the parties' time and expenses in playing Plaintiffs' designated portions (including Defendants' appropriate Rule 106 designations) in Plaintiffs' case-in-chief and Defendants' designated portions after Plaintiffs rest, particularly when Defendants' designations sometimes dwarf Plaintiffs' portions." *See* Pls.' Resp., at 2 (Dckt. No. 188).

Plaintiffs point out that they have the burden of proof, and that burden comes with one advantage: the ability to tell their story first. "By their Motion, Defendants attempt to eliminate this benefit and severely prejudice Plaintiffs by asking this Court for a blanket order that would cause Plaintiffs' case to be flooded with Defendants' lengthy designations for every one of the depositions Plaintiffs may use." *Id.* at 1.

As Plaintiffs see it, requiring each side to present its own material would help the jury keep things straight, because the jury could better understand who is sponsoring which testimony. "[T]here will be less juror confusion by having the parties play their designated segments in their respective cases-in-chief given the case's complexities and age. This preferred method would allow the jury to understand which party is endorsing the testimony and to better understand each party's theory of the case. This is especially important because not one of the questions asked at any deposition was posed by one of the attorneys who will be representing Plaintiffs during trial." *Id.* at 3.

The Federal Rules give district courts sweeping discretion to control the presentation of witness testimony at trial. Rule 611 empowers district courts to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." *See* Fed. R. Evid. 611(a).

Federal Rule of Civil Procedure 32 covers the use of depositions at trial, including designations and counter-designations. *See* Fed. R. Civ. P. 32(a)(6). "If a party offers in evidence only part of a deposition, an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced, and any party may itself introduce any other parts." *Id.* In a similar vein, Federal Rule of Evidence 106 addresses the rule of completeness. "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time." *See* Fed. R. Evid. 106.

Basically, once a party makes deposition designations, the other side can point to other parts of the transcript that the jury needs to hear in the interest of fairness, under the rule of completeness. The idea is to provide context and avoid misleading the jury, by clearing things up then and there. *See* Fed. R. Evid. 106, Advisory Committee Cmt. (1972) (noting the need to prevent a "misleading impression created by taking matters out of context," and the "inadequacy of repair work when delayed to a point later in the trial"). In addition, the adverse party can offer counter-designations of its own.

Taking a step back, the purpose of a trial is to find the facts. So, one of the most important objectives is making the evidence digestible and comprehensible for the finders of fact, without wearing them down.

Plaintiffs get to go first, and generally speaking, they get to tell their story and present their witnesses without the other side grabbing the microphone. No one likes telling a story when someone else jumps in and starts telling *their* side of the story. Getting interrupted interferes with the narrative. The story-telling can be jarring if someone else tells a different version of what happened when you're in the middle of talking.

So, as a general matter, this Court prefers to let each side present its side of the story, one at a time. Plaintiffs get to tell their story, and when they're done, Defendants get to tell their story. In most cases, that protocol is this Court's default rule.

But this case presents some unique challenges, especially for the jury. Trial is expected to last over one month. The parties plan to present dozens and dozens of witnesses through deposition designations. That's a tall order.

The lineup will test the ability of the jurors to keep everyone straight. The parties know who everyone is, and what role they play in the larger story. But the jurors don't. Everyone is new. The jury will be listening to strangers talk about a story that they've never heard before.

Consider how each alternative would play out in the real world. Under Plaintiffs' proposal, Plaintiffs would present their deposition designations for each witness (including designations under the rule of completeness), and leave it at that. Then, after Plaintiffs rest, Defendants would get a chance to present their defense. At that point, Defendants would present their counter-designations (again, including designations under the rule of completeness).

Under that battleplan, the jury would hear from many witnesses more than once. The jury would see and hear from some witnesses during Plaintiffs' case, and then during Defendants' case.

That procedure would have some advantages. Plaintiffs would get to tell their story, without interference. The one-storyteller-at-a-time approach makes for a clean story.

But the disadvantages would be substantial. The proverbial chickens would come home to roost when Defendants get their turn to tell their story.

Defendants would present testimony from witnesses that the jury had seen and heard before. Inevitably, the jury would wonder: who is this person again? Haven't we heard from this person already? Defendants would need to lay some of the foundation, to reorient the jury to who the witness is. The refreshers would take time.

Worse yet, that procedure would test the jury's ability to remember what the witness had said before. Trial will last more than a month, and the jury will hear from dozens of witnesses. It is asking a lot of the jury to expect them to remember who the witnesses are, and what they said days or weeks earlier. It could be jarring for the jury to hear from the same witnesses more than once, too. The greater the passage of time, the harder it will be for the jury to weigh the designations and the counter-designations together.

Jurors do not have infinite patience, or limitless absorption powers. The ability of jurors to keep witnesses straight has its limits. Their ability to recall prior testimony is limited, too.

Under Defendants' proposal, Plaintiffs would present their witnesses through deposition designations. The jury would hear Plaintiffs' affirmative designations (with additions under the rule of completeness), and then would hear Defendants' counter-designations (same caveat), all in one fell swoop.

Under that plan, the jury would hear evidence that favors Defendants during Plaintiffs' case in chief, which isn't ideal from Plaintiffs' perspective. It could inject rhetorical dissonance into Plaintiffs' case.

But on the flipside, the jury would hear from each witness only once. There would be no need to remind the jury who the witness is, or replay what the jury heard before. And the jury could hear and digest the designations and counter-designations all at once. The continuity, and the close proximity in time, would make things easier to understand for the jury.

If the jury separately hears the designations and counter-designations for a single witness, days or weeks apart, the jury might not remember who the witness is or what the witness had said before. And worse yet, there is risk that some of the counter-designations won't make sense unless the jury remembers what the witness said in the designations. The designations might provide necessary context for the counter-designations. Asking the jury to remember the designations in a trial of this magnitude is asking a lot.

In light of the unique posture of the case, and the challenges posed by a trial of this scale, the Court will adopt the following procedure. For each witness, Plaintiffs will play their designations, including any additional material under the rule of completeness. Then, Defendants will play their counter-designations, including any additional material under the rule of completeness. The jury will hear from each witness, all at once.

The Court concludes that this procedure will put the jury in the best position to digest and absorb the evidence. Hearing counter-designations days or weeks after hearing the designations is not ideal, especially considering the number of witnesses. The jury might forget who the witness is, or what the witness said before, or how the witness fits in the broader story. The jury

might not appreciate the importance of the counter-designations, either, without the context of the designations.

The Court is not swayed by the argument that the jury needs to keep straight who is the proponent of the evidence. *See* Pls.' Resp., at 3 (Dckt. No. 188). Understanding the content of the testimony is more important than "understand[ing] which party is endorsing the testimony." *Id.*

There is a simple solution, too. The Court could give an instruction to the jury that they will hear portions offered by Plaintiffs, and then portions offered by Defendants. The Court can explain things to the jury so that the jury will not "blame Plaintiffs for the length of the depositions being played." *Id.* at 6.

That said, this plan is a default rule. Plaintiffs pointed out that some of Defendants' counter-designations "dwarf[ed]" the designations made by Plaintiffs. *See* Pls.' Resp., at 2 (Dckt. No. 188); *see also id.* at 4 ("Defendants often designate significantly more testimony than Plaintiffs meaning Defendants' evidence would completely overshadow Plaintiffs' case-in-chief."). If that's right, then it is possible that this protocol might not make sense for a particular witness. If so, then Plaintiffs can raise it.

This Court will see how it goes, too. If the Court comes to believe that this protocol is being abused, or that Defendants are hijacking Plaintiffs' case to an unfair degree, then the Court might change course. But the starting point is an all-at-once approach.

One final thought. The Court encourages the parties to give some serious thought about the volume of deposition designations. Think about what you need to satisfy your burden of proof. Once you cross that threshold, the only thing that matters is whether the deposition designations are resonating with the jury.

The audience is all that matters. Ask yourself: do you really need it? And if not, is it resonating with people?

Listening to deposition designations can be tough sledding, even for the most attentive, well-intentioned, caffeinated jurors. Minds can wander, eyes can glaze over, and eyelids can droop. Deposition designations should not turn into a script for *Good Night Jury*. Few items in a drugstore can cure an inability to sleep quite like deposition designations.

Date:   September 19, 2023

_____
Steven C. Seeger
United States District Judge