UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRAFT FOODS GLOBAL, INC., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Case No. 11-cv-8808 |
| ) | |
| v. ) | Hon. Steven C. Seeger |
| ) | |
| UNITED EGG PRODUCERS, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## ORDER

Defendants' motion *in limine* to preclude Plaintiffs' expert from offering factual narrative testimony (Dckt. No. 171) is hereby granted in large part.

The motion is about the ability of an expert to comment on the evidence and offer an interpretation of what it all means. Plaintiffs' expert, Dr. Baye, produced a report spanning 234 paragraphs spread over 84 pages, excluding all of the attachments. *See* Baye Report (Dckt. No. 172-1). The expansiveness of the report is rivaled by the list of materials considered, which includes 100 depositions, scores of documents, and other material. *See* Defs.' Mtn., at 2 (Dckt. No. 171).

As Defendants see it, Dr. Baye "cherry-picks documentary material that he views as helpful for Plaintiffs' case and then argues Plaintiffs' view of how that documentary material supports Plaintiffs' antitrust claim. Essentially, Dr. Baye provides Plaintiffs' closing argument in several sections of his report." *Id.*

Plaintiffs disagree. As they see it, Dr. Baye does not merely "summarize" the documents in the record. *See* Pls.' Resp., at 2 (Dckt. No. 208). "Dr. Baye is an economics professor at one of the nation's preeminent business schools and a seasoned antitrust expert. He draws upon his expertise to analyze Defendants' conduct in the context of the egg market's unique economic characteristics, and he creates an econometric model to test whether Defendants' coordinated efforts to limit egg supply inflated the prices of eggs and egg products." *Id.* In their view, the motion *in limine* is a thinly-disguised *Daubert* motion that arrived seven years too late.

The Federal Rules of Evidence place limits on the ability of a witness to testify as an expert. A witness who is qualified as an expert "may testify in the form of an opinion or otherwise if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case." *See* Fed. R. Evid. 702.

An expert must put his or her cards on the table in a report, so that there are no surprises at trial. An expert report "must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; [and] (ii) the facts or data considered by the witness in forming them." *See* Fed. R. Civ. P. 26(a)(2)(B)(i), (ii).

An expert can summarize the facts that form the basis for his decision. After all, Rule 702 provides that expert testimony must rest on "sufficient facts or data," and Rule 26(a)(2)(B) requires an expert report to disclose the "facts or data considered by the witness in forming them." *See* Fed. R. Evid. 702; Fed. R. Civ. P. 26(a)(2)(B)(ii).

But an expert witness cannot merely read the evidence, and offer his own gloss on the facts of the case. An expert is not a color commentator on the evidence. An expert cannot merely argue the facts, or say what he would do if he sat on the jury. It is the lawyer's job, not an expert's job, to make arguments about the meaning of the exhibits. And it is the jury's job, not an expert's job, to weigh the evidence and draw reasonable inferences.

An expert witness must offer "specialized knowledge" that will "help the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. 702. If it isn't "specialized knowledge," it isn't helpful. And if it isn't helpful, it isn't admissible.

An expert must offer a value-add, meaning some "specialized knowledge" that would help the jury. *Id.* If an expert merely reads the evidence, and offers his spin on the facts, that expert isn't telling the jury more than it already knows. The expert must bring something to the table that the jury doesn't already have. *See United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996) ("Unless the expertise adds something, the expert at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under Rule 403."); *see also Baldonado v. Wyeth*, 2012 WL 1802066, at *4 (N.D. Ill. 2012) (St. Eve, J.). An expert who simply offers his spin on the evidence is helpful to the lawyer, but not helpful to the jury.

"An expert must testify to something more than what is 'obvious to the layperson' in order to be of any particular assistance to the jury." *See Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001); *Taylor v. Ill. Cent. R.R. Co.*, 8 F.3d 584, 585–86 (7th Cir. 1993) (affirming the exclusion of expert testimony where "any lay juror could understand th[e] issue without the assistance of expert testimony"); *In re Complaint of Ingram Barge Co.*, 2016 WL 3763450, at *10 (N.D. Ill. 2016) (St. Eve, J.) ("Expert testimony does not assist the trier of fact when the jury is able to evaluate the same evidence and is capable of drawing its own conclusions without the introduction of a proffered expert's testimony."). "[M]erely reading and interpreting documents without drawing on any additional expertise" is not helpful, and thus not admissible. *See Sullivan v. Alcatel-Lucent USA Inc.*, 2014 WL 3558690, at *6 (N.D. Ill. 2014).

An expert witness cannot turn into a mouthpiece for the lawyer, giving a closing argument in the middle of the case. An expert is not a narrator of the evidence, offering a running commentary on what the jury has already heard. *See LQD Business Finance, Inc. v.*

*Rose*, 2023 WL 2306854, at *2 (N.D. Ill. 2023) ("An expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence.") (citations omitted). An expert is not a lawyer's sock puppet.

"An expert witness is not a fact witness, and an expert witness is not a mouthpiece for telling the jury facts by calling them 'opinions.'" *See Burns v. Sherwin-Williams Co.*, 2022 WL 4329417, at *20 (N.D. Ill. 2022); *see also SEC v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013) ("It is also inappropriate for experts to become a vehicle for factual narrative. Acting simply as a narrator of the facts does not convey opinions based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology. Mere narration thus fails to fulfill *Daubert*'s most basic requirements. In addition, narration of facts of the case may easily invade the province of the jury, providing a separate basis for exclusion.").

By way of illustration, imagine watching a football game on a cozy autumn afternoon. Imagine if a question came up about whether a wide receiver caught a pass. Most people could watch the footage for themselves, and decide whether the player caught the ball. The fans can see it with their own eyes and make up their own minds. An announcer doesn't add much value by watching what everyone else can see and then declaring "he caught it" or "he dropped it." But it might help to have a rules expert explain what it *means* to make a catch (e.g., making a so-called "football move," or having two feet in bounds).

Some paragraphs of Dr. Baye's report seem to cross those boundaries. The report contains a number of paragraphs that start with "documents indicate that [X]," or words to that effect. In selected parts of his report, Dr. Baye basically read the evidence, and offered a conclusion. He added an interpretive gloss that aligned with Plaintiffs' theory of the case.

Consider, for example, paragraph 37. It reads: "The documentary record indicates that Defendants recognized that a coordinated supply reduction would be an effective way to raise prices." *See* Baye Report, at ¶ 37 (Dckt. No. 172-1).

The jury can decide for itself whether Defendants "recognized" this or that. The jury does not need to hear from an expert to decide if Defendants "recognized" something. That subject does not require any "specialized knowledge." *See* Fed. R. 702. And it is unclear what "principles and methods" an expert could rely on to reach that decision. *Id.*; *see also LQD Business Finance*, 2023 WL 2306854, at *2 ("Third, neither Carlson nor defendants' expert Sheinbaum may render an opinion regarding any party's knowledge or intent. . . . These are appropriately matters for argument, not expert witness testimony.").

As a second example, consider paragraph 38. "Although the UEP solicited input from the UEP's Scientific Advisory Committee for Animal Welfare, documents indicate that Defendants understood that the cage-size restrictions would result in an increase in prices." *See* Baye Report, at ¶ 38 (Dckt. No. 172-1).

The jury can read the "documents" for itself. The jury does not need to hear from an expert to decide if Defendants "understood" something. It is hard to see how Dr. Baye has "specialized knowledge" about what Defendants understood. *See* Fed. R. Evid. 702. And if

there are "reliable principles and methods" for figuring out what a person understands, this Court does not know what they are (except maybe a final exam, or appellate review). *Id.*

Consider one more example. Paragraph 40 reads: "In addition to the long-term supply restrictions instituted through the UEP Guidelines, another trade association, USEM, organized coordinated exports in an attempt to raise short-term domestic egg prices." *See* Baye Report, at ¶ 40 (Dckt. No. 172-1).

It is hard to see how this expert could contribute "specialized knowledge" about what a trade association was attempting to do. Presumably there is no treatise or industry standard for how to divine what a person is attempting.

A number of the statements in that section of Dr. Baye's report seem to suffer from the same problems. Tellingly, section VI of Dr. Baye's report is entitled "The Documentary Record is Consistent with Plaintiffs' Allegations that Defendants Sought to Raise Prices through Coordinated Supply Reductions." *See* Baye Report, at ¶¶ 36–48 (Dckt. No. 172-2). It then summarizes a bunch of documents, without offering any discernible economic analysis. There is a summary, but there is no value-add.

That said, maybe Dr. Baye does not intend to offer those opinions on the witness stand. Dr. Baye has plenty more to say, too. Dr. Baye's report is chock-full of economic analysis that might help the jury. For example, he summarized the structure of the egg market, and explained how the conduct reduced the supply and increased the prices of eggs. He explained the inelasticity of demand, and barriers to entry, and so on.

Those opinions are fair game. Dr. Baye has a lot to say – and there is a lot that he *can* say. But opinions that merely summarize documents, and apply a heavy coat of Expert Gloss, aren't helpful to the jury.

This Court fully acknowledges that an expert often needs to summarize the facts to lay the foundation for the opinions that follow. Dr. Baye will have the latitude to do so. The problem is not so much that Dr. Baye summarized the facts. The problem is that some paragraphs of the report seemed to summarize the exhibits, and then offer a raw conclusion about what it all means. There was no specialized knowledge, backed by reliable methods, that would help the jury. He put his thumb on the scale, and the thumb didn't help.

Plaintiffs insist that Dr. Baye "does not merely 'summarize' the emails and internal documents in which Defendants discussed their plans to limit egg supply." *See* Pls.' Resp., at 2 (Dckt. No. 208). They take Defendants to task for suggesting that "Dr. Baye merely summarizes facts with no expert analysis." *Id.* at 4.

That's not exactly what Defendants are saying. No one is arguing that Dr. Baye *only* summarized the facts. Instead, the point is that Dr. Baye's opinions are not fair game *to the extent that* he merely summarized the facts and offered his gloss on the evidence. The issue is about trimming the fat, not throwing the whole thing out. Any meat on the bone can stay.

4

Pinning down the particulars is best left for trial. For now, the Court will simply say that it will enforce these limitations at trial, when Dr. Baye takes the witness stand. He can offer specialized knowledge through an economic analysis of the conduct and the egg industry. But any attempt to summarize the exhibits and offer a raw conclusion won't get very far.

One final point. Plaintiffs believe that the motion is like a pot calling the kettle black, because Defendants' expert offered so-called "narrative testimony," too. *See* Pls.' Resp., at 5 n.1 (Dckt. No. 208). Maybe so.

This Court will take an even-handed approach. Both sides must play by the same set of rules. The Court will apply the same standard to all experts who take the witness stand. So any defense experts must be mindful of these boundaries, too.

Date: September 19, 2023

_____

Steven C. Seeger
United States District Judge