**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **KRAFT FOODS GLOBAL, INC.**, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:11-cv-08808 |
| | ) | Judge Steven C. Seeger |
| **UNITED EGG PRODUCERS, INC.**, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT ROSE ACRE FARMS, INC.'S MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY OF DR. JESSE DAVID**

## I.    INTRODUCTION

Just 11 days before the start of trial, 14 months after the deadline for filing motions *in limine*, and over eight years after the deadline for filing *Daubert* motions in the MDL, Plaintiffs have moved to exclude the testimony of expert witness Dr. Jesse David, an expert economist whom Defendant Rose Acre Farms, Inc. ("Rose Acre") intends to call in this case.  (*See* ECF No. 330.)  Without seeking either leave or permission to submit a motion long past the deadline, Plaintiffs excuse their tardiness by relying on this Court's recent ruling that their expert, Dr. Baye, and, indeed all experts offering opinions in this case, cannot simply "comment on the evidence and offer an interpretation of what it all means."  (ECF No. 300 at 1.)  Using the Court's order as a hook, Plaintiffs move to exclude most, if not all, of Dr. David's opinions, alleging that his expected testimony violates the boundaries this Court set.

Plaintiffs' motion should be denied.  First, their motion is too late.  The motion should have been filed 14 months ago before the deadline for filing *in limine* motions.  The issues Defendants raised in their timely-filed motion *in limine* on Dr. Baye could have been addressed

if Plaintiffs thought those issues could be implicated with Dr. David's testimony. Yet Plaintiffs' opposition to Defendants' motion was silent on whether the issues presented by Defendants' motion applied to Dr. David. Plaintiffs instead dismissed Defendants' criticisms of Dr. Baye and, apparently, believed this Court would reject them as well. They thought wrong. They should have and could have easily anticipated the Court's ruling. They should not receive a pass for failing to fully appreciate the potential import of Defendants' motion.

Second, Plaintiffs already raised – and lost – many of these same arguments against Dr. David in the MDL. Over eight years ago, Plaintiffs moved to exclude Dr. David's testimony before Judge Pratter. Judge Pratter rejected their motion, holding that Dr. David's opinions constituted proper expert testimony. This Court's order on Dr. Baye did not open the door for Plaintiffs to rehash losing arguments. Plaintiffs are bound by Judge Pratter's earlier ruling.

Third and finally, Plaintiffs' motion is premature and their arguments are without merit. Trial has not yet started, no evidentiary record yet exists, and the defense case is still a long way off. Even so, as Rose Acre indicated to Plaintiffs before they filed the instant motion, Rose Acre does not intend to present Dr. David in a manner that violates this Court's order. The facts that Dr. David describes in his expert report are simply background that sets the foundation for his opinions. His actual opinions focus on whether Rose Acre's stated business strategy of growth actually played out during the years when Plaintiffs allege a conspiracy to restrict the egg supply occurred. He analyzes flock growth and egg production data to support his opinions, and compares his analysis to that of Dr. Baye. In the end, he concludes that the data reflect actions that are consistent with Rose Acre's claimed strategy of growth, that this strategy was consistent with Rose Acre's unilateral self-interest and independent action, and that Rose Acre's *conduct* (not its motive) is inconsistent with Plaintiffs' allegation that Rose Acre participated in a

conspiracy to limit egg supplies. The kinds of opinions in Dr. David's report are commonly offered and allowed in antitrust cases.

For these reasons, Defendant Rose Acre respectfully requests that Plaintiffs' motion be denied.

## II.     BACKGROUND

### A.     Dr. David and the MDL.

Dr. Jesse David is an economic consultant with the firm Edgeworth Economics. He holds a Ph.D. in economics from Stanford University, and received his B.A. in economics and physics from Brandeis University. He has served as a consultant and expert witness for various industries, including the agriculture industry, and has offered expert testimony in federal and state courts, in arbitrations, and before regulatory bodies.

Dr. David submitted an expert report on behalf of Rose Acre in the MDL on March 13, 2015. That report is the same report that is the subject of Plaintiffs' motion. (*See* Mot. at Ex. A.) Per the MDL's controlling Case Management Order, Judge Pratter established a deadline of May 25, 2015, for any *Daubert* motions against expert witnesses. (*See Kraft Foods Global, Inc., et al. v. United Egg Producers, Inc., et al.*, Case No. 2:12-cv-00088 (E.D. Pa.) (the "MDL"), ECF No. 1111, Case Management Order No. 22.) The DAPs filed a timely *Daubert* motion challenging Dr. David's opinions on multiple grounds. (*See* MDL, ECF No. 1193.) Those DAPs included the Plaintiffs here, all of which joined in the motion. (*Id.*)

Although their motion invoked *Daubert* and Rule 702, the DAPs did not question Dr. David's principles and methods or the reliability of his opinions. Rather, much like Plaintiffs' motion in this case, their motion argued that Dr. David's testimony – that Rose Acre pursued a business strategy consistent with its unilateral self-interest and that its conduct was inconsistent

with an antitrust conspiracy – was unhelpful and would not assist the trier of fact because many

of the issues on which he opines could be handled by fact witnesses.[1]

In a written opinion on July 18, 2016, Judge Pratter denied the DAPs' motion, finding

that Dr. David was free to offer the opinions expressed in his report. (*See* MDL, ECF No. 1422.)

Specifically, Judge Pratter held:

> The Court finds that the data and opinions in Dr. David's report draws upon
> the type of "scientific, technical or other specialized knowledge that will assist
> the trier of fact to understand the evidence or determine to understand the
> evidence or determine a fact at issue," which Rule 702 contemplates .… [T]he
> Court finds that his analysis can be helpful to the jury.

(*Id*. at 11.) Dr. David was, therefore, permitted to testify at trial in the DPP case and then

in the supermarket DAP case.

**B.      Evidentiary Motions in this Case.**

In the present litigation, Judge Norgle set a pretrial schedule (to which all parties agreed)

requiring that all motions *in limine* be filed on or before August 26, 2022. (ECF No. 143.) In

accordance with the Court's order, on August 26, 2022, Defendants filed their motion seeking to

preclude Dr. Baye from offering factual narrative testimony. (ECF No. 171.) On September 19,

2023, this Court entered its order granting Defendants' motion. (ECF No. 300.) The order made

clear that although its subject was Dr. Baye, "the Court will apply the same standard to all

experts who take the witness stand," including any defense experts. (*Id*. at 5.)

**III.      LAW AND ARGUMENT**

**A.      Plaintiffs' Motion is Untimely.**

Plaintiffs' decision to wait until the eve of trial to seek to exclude Dr. David's testimony

is not excused by this Court's order on Dr. Baye. The issues raised with Dr. Baye clearly were

---

[1] In addition, the DAPs' motion argued that Dr. David's testimony was not responsive to their experts and that it
should be excluded under Rule 403.

not secret.  Defendants' motion on Dr. Baye was filed in August 2022.  Had Plaintiffs believed

that those issues could also apply to other experts, like Dr. David, they should have said

something.  But they said nothing.  Nor should the Court's conclusion that its ruling would apply

equally to all experts have surprised anyone.  It was predictable and expected.  Plaintiffs' lack of

foresight on the likely effect of the ruling does not justify burdening Defendants and the Court

with eleventh-hour briefing.

Plaintiffs' motion should be denied as untimely.  Under the case schedule, the deadline

for motions *in limine* was August 26, 2022.  Plaintiffs' motion missed this deadline by over a

year, and it comes a mere 11 days before trial is set to begin on October 17, 2023.  Their motion

should be denied on that basis alone.  *See Pearl v. Keystone Consol. Indus., Inc.*, 884 F.2d 1047,

1052 (7th Cir. 1989) (a district court does not abuse its discretion by denying a motion *in limine*

filed *one week after the deadline* in the court's pretrial order); *Williams v. Schwarz*, No. 15-cv-

1691, 2018 U.S. Dist. LEXIS 92754, at *14-15 (N.D. Ill. June 1, 2018) (denying motion *in*

*limine* as untimely because it was first raised at the final pretrial conference, two weeks after the

court's deadline); *Rizzo v. Mr. Coffee, Inc.*, No. 94-cv-5825, 1996 U.S. Dist. LEXIS 1745, at *31

(N.D. Ill. Feb. 12, 1996) (denying motion *in limine* as untimely because it was filed on the first

day of trial, one month after the court's deadline).[2]

Moreover, the fact that Plaintiffs are raising yet again the arguments they made

previously in their *Daubert* motion makes their motion doubly late.  The *Daubert* motion

deadline for this case expired on May 25, 2015.  It is too late to be raising these issues now.  *See*

---

[2] Plaintiffs likely will point to this Court's statement at the final pretrial conference that "if there are any issues [related to experts] that you folks are thinking about now, tee it up by a week from Friday."  (See Tr. of Proceedings – Final Pretrial Conference, ECF No. 316, at 131.)  But no party, and certainly not Plaintiffs, ever requested leave to file a new round of motions *in limine* long past the scheduled deadline as a means of bringing these issues to the Court's attention.

*Thomas v. United States*, No. 19-cv-1184, 2022 U.S. Dist. LEXIS 25417, at *10–11 (S.D. Ill. Feb. 11, 2022) (construing a motion to exclude expert testimony as a *Daubert* motion and denying it as untimely because it was filed more than a month after the court's *Daubert* motion deadline); *Rutz v. Novartis Pharm. Corp.*, No. 12-cv-0026, 2013 U.S. Dist. LEXIS 50092, at *2 (S.D. Ill. Apr. 8, 2013) (construing motions to exclude expert testimony as *Daubert* motions and denying them as untimely because they were filed ten months past the court's *Daubert* motion deadline and only seven weeks before trial: "[t]here is no time available on the Court's congested calendar to rule on additional *Daubert* motions before the May 28, 2013 trial.").

Having lost once on their *Daubert* motion, they do not get a second try. Just like before, Plaintiffs seek to exclude Dr. David's opinion that Rose Acre's conduct is consistent with independent action and inconsistent with the alleged conspiracy. And like before, they insist that Dr. David's opinions will not help the jury understand the evidence or determine facts at issue in this case, which is precisely the standard for admissibility of expert testimony under Rule 702(a). Although they could have acknowledged and sought reconsideration of the earlier *Daubert* ruling rejecting their arguments, Plaintiffs filed an entirely new motion without leave. Whether the Court views Plaintiffs' motion as a belated motion *in limine* or an even-more-belated motion to reconsider the denial of their *Daubert* motion, Plaintiffs clearly missed their deadline to raise (or re-argue) these issues.

**B.      Plaintiffs Are Bound by Judge Pratter's Previous Ruling.**

Plaintiffs are correct that the Court's order on Dr. Baye sets the ground rules for expert testimony in this case, but Plaintiffs' motion goes far beyond what the Court held in that order. Plaintiffs challenge what they describe as Dr. David's "expert gloss" on whether Rose Acre's conduct was consistent with its unilateral self-interest and inconsistent with Plaintiffs' claim of an antitrust conspiracy.  (*See* Mot. at 7-8.)  They also allege that Dr. David's testimony will not be helpful to the jury.  (*Id*. at 7.)  Neither of these issues is addressed by the order on Dr. Baye. And on each of these issues, again, Plaintiffs already lost in the MDL.

As Judge Pratter described Plaintiffs' arguments in their *Daubert* motion against Dr. David:

> In his report, Dr. David reaches the following conclusions, which the plaintiffs challenge: "Rose Acre pursued a business strategy consistent with its unilateral self-interest . . ." and Rose Acre's conduct was ". . . inconsistent with allegations by Plaintiffs and their experts that Rose Acre acted contrary to its unilateral self-interest and participated in a conspiracy to restrict supply."

(MDL, ECF No. 1422, at 4.)  Judge Pratter denied Plaintiffs' motion on this issue, finding that "[a]t this point, there appears no reason to exclude the testimony of Dr. Davi[d] based upon the plaintiffs' alleged direct evidence."  (*Id.* at 10.)  Similarly, as noted above, Judge Pratter also rejected Plaintiffs' argument that Dr. David's testimony will not assist the jury.  (*Id*. at 11.)

Plaintiffs relegate any reference to Judge Pratter's earlier ruling to a footnote at the end of their brief.  (Mot. at 9 n.5.)  But they do not discuss it at any length or address the legal effect of that ruling.  More remarkably, Plaintiffs ignore completely that the "Direct Action Plaintiffs" that filed the *Daubert* motion in the MDL *included them*.  (*See* MDL, ECF No. 1193.)  Plaintiffs had their opportunity to prevent Dr. David from testifying.  They failed.  The Court should decline Plaintiffs' invitation to revisit these issues.

Indeed, the law of the case doctrine generally bars reconsideration of previously decided issues in the same case. *United States v. Harris*, 531 F.3d 507, 513 (7th Cir. 2008) ("Under the law of the case doctrine, a court generally should not reopen issues decided in earlier stages of the same litigation."). This is so even when the case has been transferred from one court to another. *Gilbert v. Illinois State Bd. of Educ.*, No. 05 C 4699, 2008 U.S. Dist. LEXIS 72874, at *14 (N.D. Ill. Sep. 24, 2008) ("Generally speaking, a successor judge should not reconsider the decision of a transferor judge at the same hierarchical level of the judiciary when a case is transferred."), *aff'd*, 591 F.3d 896 (7th Cir. 2010).

While the law of the case doctrine is subject to the district court's exercise of its discretion, the Seventh Circuit has advised repeatedly that "because litigants have a right to expect consistency even if judges change, the second judge should 'abide by the rulings of the first judge unless some new development, such as a new appellate decision, convinces him that his predecessor's ruling was incorrect.'" *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012) (quoting *Fujisawa Pharm. Co. v. Kapoor*, 115 F.3d 1332, 1339 (7th Cir. 1997)); *see also Williams v. Comm'r.*, 1 F.3d 502, 503 (7th Cir. 1993) (The law of the case doctrine has "bite" in situations "when judges are changed in midstream" because "[l]itigants have a right to expect that a change in judges will not mean going back to square one."). A district court should not revisit a previous judge's decisions in the case "merely because he has a different view of the law or facts from the first judge," but may do so only "if new information convinces him that they are incorrect," *id.*, or if there is "an intervening change in the law, or some other special circumstance[.]" *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 796 (7th Cir. 2005). *See also Santamarina v. Sears*, 466 F.3d 570, 571-72 (7th Cir. 2006) (requiring "a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was

erroneous."). The Seventh Circuit has further instructed district judges not to reconsider a previous ruling from a transferring judge unless "he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefitted from it." *Gilbert*, 591 F.3d at 902.

There have been no changes in the law that would warrant departing from Judge Pratter's reasoned determination that Dr. David could offer opinions that Rose Acre behaved in a manner that was consistent with independent conduct, undertaken in its unilateral self-interest, and inconsistent with Plaintiffs' conspiracy claim. *See*, *e.g.*, *Galvan*, 678 F.3d at 587 (the law of the case doctrine requires "some new development, such as a new appellate decision" to reopen issues that have already been decided); *Sears, Roebuck & Co.*, 417 F.3d at 796 (courts may revisit an issue if there is "an intervening change in the law, or some other special circumstance"). Nor have Plaintiffs adduced new information or evidence that would even suggest that Judge Pratter's decision should be revisited. *See Williams*, 1 F.3d at 503 (A district judge "may alter previous rulings if new information convinces him that they are incorrect, but he is not free to do so . . . merely because he has a different view of the law or facts from the first judge."). Absent new evidence or intervening law, Plaintiffs have no basis for challenging Judge Pratter's decision on Dr. David's expert opinions.

### C. There Is No Legitimate Basis to Exclude Dr. David's Testimony Before The Trial Even Starts.

Plaintiffs' concerns that Dr. David's testimony would violate this Court's order on Dr. Baye are premature and unwarranted. Rose Acre and its counsel are mindful of this Court's order on Dr. Baye. Rose Acre does not intend to have Dr. David testify in a manner that would run afoul of what this Court ruled, and Rose Acre has communicated that to Plaintiffs. Even so, Dr. David will be testifying based on the trial record and that record has not yet even been

developed.  If Dr. David for some reason oversteps this Court's guidelines on expert testimony,

Plaintiffs will have ample opportunity to object at trial, which their own motion fully recognizes:

> For now, Plaintiffs have heard the Court and understand that "pinning down
> the particulars is best left for trial." [ECF No. 300 at 5.]  All parties will better
> understand the contours of the Court's order by the time Rose Acre calls Dr. David.
> Plaintiffs can raise these challenges then if appropriate.

(Mot. at 9.)

Plaintiffs nevertheless still cry wolf over what they expect from Dr. David.  In doing so,

however, Plaintiffs' motion erects multiple strawmen that distort the opinions that Dr. David

actually intends to offer.  Plaintiffs begin by arguing that Dr. David cannot testify about Rose

Acre's motivations.  But that is not his testimony.  What he actually does, first, is recite the

evidence that he understands will be presented at trial that Rose Acre had a business strategy of

growth and expansion.  This is all background information that sets the stage for his opinions.

He does not comment on the veracity of the actual evidence that Rose Acre's witness are

expected to offer but instead simply acknowledges that this is what they say.

Dr. David next reviews the data associated with flock sizes, egg production, production

capacity, and egg prices, both in the egg market generally and with Rose Acre specifically.

Rather than take the word of counsel (as Dr. Baye does) or the word of the fact witnesses, Dr.

David applies his own economic and statistical expertise to determine whether (1) Rose Acre's

adherence to the Certified Program (including its allegedly anticompetitive restrictions) resulted

in lower production, and (2) Rose Acre ever followed any of UEP's short-term

recommendations.  As Judge Pratter observed in her *Daubert* ruling:

> In his report, Dr. David has compiled data from seventeen Rose Acre farms over fifteen years and extrapolated the increase in total inventory over the period of time. He used this data to draw comparisons between U.S. hen layer data and the regression models proposed by the plaintiffs' experts. He concludes that Rose Acre's flock grew faster than the national average and faster than the plaintiffs' expert predictions.

(*See* MDL, ECF No. 1422 at 11.)

Applying his training as an economist, Dr. David offers his opinion that Rose Acre's *conduct* – not its motive – is consistent with a strategy of growth and expansion that reflects unilateral action, as opposed to collusive activity. Dr. David also compares Dr. Baye's forecasts and analyses to Rose Acre's experience during the relevant time period. In addition, based on his analysis of the data, he concludes that Rose Acre's *conduct* – again, not its intent or motive – is inconsistent with Plaintiffs' allegations of a conspiracy to restrict the supply of eggs. All of this is reflected in his expert report.

Dr. David's testimony is precisely the type of expert testimony routinely allowed in Section 1 cases, particularly when, as Judge Pratter recognized in denying Plaintiffs' previous *Daubert* motion, the alleged conspiracy rests on circumstantial evidence. (*See* MDL, ECF No. 1422 at 10.) As court decisions have made clear, "[t]he general consensus in the case law is that economic experts may testify as to whether certain conduct is indicative of collusion, or 'consistent' with a conspiracy." *In re Dealer Mgt. Sys. Antitrust Litig.*, 581 F. Supp. 3d 1029, 1052 (N.D. Ill. 2022) (quoting *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 52 (D.D.C. 2017) (internal quotation marks and citations omitted). "Such testimony necessarily involves consideration of the defendants' conduct in the case." *Id.* (quoting *Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d at 52). "For instance, an expert might testify that an alleged arrangement 'furthered [Defendants'] collusive interest, but was inconsistent with Defendants pursuing their independent, unilateral self-interest[.]'" *Id.* (quoting

11

*In re Processed Egg Prods. Antitrust Litig.*, 81 F. Supp. 3d 412, 424 (E.D. Pa. 2015)).

Alternatively, an expert might reach the opposite conclusion, and offer an opinion "that the

accused acted in a manner consistent with unilateral self-interested behavior and inconsistent

with conspiratorial conduct." *Kleen Prods. LLC v. Int'l Paper*, No. 10 C 5711, 2017 U.S. Dist.

LEXIS 83321, at *64 (N.D. Ill. May 31, 2017) (denying *Daubert* motion as to such witness).

These opinions are "precisely the type of inquiry an economist can be expected to make using his

expertise." *Dealer Mgt. Sys. Antitrust Litig.*, 581 F. Supp. 3d at 1052 (internal citation omitted).[3]

In the end, the testimony that Dr. David is expected to offer is permissible. His ultimate

conclusions – conclusions that he was allowed to offer at both the DPP and the supermarket DAP

trials – are legally recognized as fair game in antitrust cases. And, to repeat, should Dr. David

drift into areas that Plaintiffs believe cross the line in terms of this Court's order on Dr. Baye,

they are free to object when the time comes.

But the examples Plaintiffs give in their motion do not cross the line. The various

questions and answers on pages 5 and 6 of their brief, for instance, center on what Dr. David

understands the evidence on Rose Acre's conduct to be. Plaintiffs may quarrel with the precise

way he may have expressed his understanding on the stand in the previous trials, but he was not

serving as a mouthpiece for the lawyers. He was describing the foundation for his opinions. As

a matter of fact, Dr. David has admitted that he does not offer any opinions on whether Rose

Acre actually agreed to reduce supply:

---

[3] *Accord In re Urethane Antitrust Litig.*, 152 F. Supp. 3d 357, 361 (D.N.J. 2016) ("An economic expert may permissibly testify as to whether certain conduct is consistent with collusion or an entity or individual's self-interest.") (quoting *In re Processed Egg Prods. Antitrust Litig.*, 81 F. Supp. 3d at 424–25; *see also In re Blood Reagents Antitrust Litig.*, No. 09-MD-2081, 2017 U.S. Dist. LEXIS 112090, at *12 (E.D. Pa. July 19, 2017) (denying *Daubert* motion where expert assessed the factors that make a market more conducive to collusion and "used his expertise to determine whether actions can be explained by rational self-interest"); *In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 372 (M.D. Fla. 2018) (collecting cases) (denying *Daubert* motion) ("Courts in this circuit and others regularly admit expert testimony that certain conduct or evidence is consistent with a finding that Defendants engaged in a conspiracy to fix prices.").

Q.      Right.  Now, I understand that you don't have an opinion in this case on whether Rose Acre reached an agreement with any of its competitors to reduce supply, right?

A.      In terms of, did they sign something or did they have some oral agreement or something like that, I don't have an opinion.  My opinion is about whether what they did is consistent with an agreement to reduce supply. But whether there was an agreement, I don't know.

Q.      You would agree with me that the question of whether there was an agreement or not is actually one for the jury, right?

A.      Sure.

Q.      It's not a question for you or me to answer.

A.      I don't have an opinion about whether there was an agreement.

(Dec. 4, 2019 DAP Trial Transcript, at 169:15-170:6, attached hereto as Exhibit A.)

By the time Dr. David testifies at the upcoming trial, the evidence comprising the foundation for his testimony – what Rose Acre did – should be in the record.  Assuming it is in the record, he will then offer his opinions on what that would mean in terms of Rose Acre's self-interest and whether Rose Acre acted consistently with a conspiracy to reduce egg supplies.

## IV.     CONCLUSION

Plaintiffs' motion is either months or years past this Court's and the MDL's filing deadlines.  Regardless, Dr. David's opinions have already been vetted.  Judge Pratter allowed them and he was permitted to testify at the DPP trial and at the supermarket DAP trial. Plaintiffs' renewed effort to block Dr. David from testifying is not supported by either the facts or the law.  For each of the reasons discussed above, the Plaintiffs' Motion to Exclude the Testimony of Dr. Jesse David should be denied.

Respectfully submitted

*/s/ James A. King*
James A. King (jking@porterwright.com)
Allen T. Carter (acarter@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
41 South High Street, Suite 2900
Columbus, OH  43215-6194
Tel: (614) 227-2000

Donald M. Barnes (dbarnes@porterwright.com)
Jay L. Levine (jlevine@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
2020 K Street, N.W., Suite 600
Washington, D.C.  20006-1110
Tel: (202) 778-3000

**Counsel for Defendant Rose Acre Farms, Inc.**

23227688v2