## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| KRAFT FOODS GLOBAL, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 11-cv-8808 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| UNITED EGG PRODUCERS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER REGARDING TRIAL STIPULATIONS 1-15

The Parties met and conferred on a number of matters both before and after this Court's rulings on the motions *in limine*. The Parties jointly agreed to the following Trial Stipulations 1 through 15, without prejudice to any of the Parties' positions regarding the admissibility of any other evidence.

The Agreed Motion to Enter Proposed Trial Stipulations and Orders (Dckt. No. 309) is hereby granted. The Parties reached agreement on all of these issues. The Court enters an Order as follows:

### Trial Stipulation 1: Capper-Volstead

The Parties shall not introduce any argument or evidence regarding Capper-Volstead or Cooperative Marketing Act. The Parties will not introduce any argument or evidence suggesting that the Defendants did or did not have a good faith belief that their actions were immune from liability. The Parties agree to meet and confer regarding whether redactions are needed for documents that reference the Capper-Volstead or Cooperative Marketing Act, but are being introduced for another purpose.

**Trial Stipulation 2: The Parties' Financial Conditions**

The Parties will not argue or introduce evidence regarding whether (1) Defendants can or cannot withstand a judgment against them; or (2) Plaintiffs should or should not receive a judgment because of their financial status. In addition, the Parties shall not present argument or testimony concerning the negative impact that an adverse verdict would have on their businesses, employees, or communities, or that a verdict would prospectively increase or decrease the price of eggs.

This stipulation does not bar argument or evidence regarding (1) a Party's bargaining power, market power, ability to harm competition, financial condition, revenues, profits, relative size, expansion or lack thereof, when offered for a purpose other than those excluded above; or (2) whether Plaintiffs were injured or suffered damages.

**Trial Stipulation 3: Pass-Through Harm**

The Parties shall not argue or present evidence suggesting that Plaintiffs were not injured because they passed through overcharges to their own customers, or otherwise offset the overcharges.

**Trial Stipulation 4: Plaintiff Lawyers' Involvement**

Defendants shall not argue or present evidence regarding how Plaintiffs or their lawyers became involved in this litigation, or how the case is "lawyer driven." If, however, Plaintiffs open the door by, for example, portraying themselves as advocates against price-fixing schemes, argument or evidence otherwise excluded by this stipulation may be used to rebut those assertions.

**Trial Stipulation 5: Prior Settlements**

The Parties agree to not offer argument and evidence regarding any current or past party's settlement agreement with another current or past party at trial. This includes the existence of any such settlement agreement and the contents therein. The parties further agree that this stipulation

does not apply to any non-party witness who testifies at trial and has executed a settlement agreement.

**Trial Stipulation 6: Deposition Testimony of Witnesses Under Parties' Control**

The Parties shall not affirmatively seek to designate and introduce deposition or prior trial testimony of witnesses within their control as current officers, current employees, or current agents of that party.

**Trial Stipulation 7: "Good" Corporate Conduct**

Any argument or evidence concerning the Parties' respective charitable donations, philanthropic activity, or other "good" corporate conduct unrelated to allegations in the Complaint is inadmissible. If a Party opens the door by, for example, presenting argument or evidence that another party engaged in "bad" corporate conduct, a Party may present argument or evidence regarding "good" conduct to rebut the same. This stipulation does not govern argument, evidence, or testimony regarding Defendants' alleged animal welfare violations or activity in a price fixing scheme.

**Trial Stipulation 8: Rose Acre's 2018 Recall**

Plaintiffs shall not introduce argument or evidence referring to Rose Acre Farms, Inc.'s April 13, 2018 recall of shell eggs unless Defendants open the door to such argument or evidence. Plaintiffs may need to address this recall should Defendants themselves present argument or evidence making this recall relevant for rebuttal or impeachment purposes.

**Trial Stipulation 9: Alleged Animal Welfare Abuses**

Should the Court deny Defendants' Motion in Limine [D.E. 161] with respect to the videos and photographs taken at facilities of Defendants, Defendant Rose Acre will not object to foundation or authenticity of the videos and photographs previously admitted into evidence at the

DAP Trial [Exhibits 506 & 719], which are currently a subset of what Plaintiffs have listed as PX 10, 24, & 1094 on their exhibit list.

With respect to Rose Acre, the Parties agree that Plaintiffs will only attempt to introduce what was previously admitted as Exhibits 506 & 719 at the DAP Trial and will not attempt to introduce any other videos or photographs taken of Rose Acre's facilities, including specifically the full videos currently encompassed by PX 4, 10, and 24. The Parties also agree that DAP Trial Exhibits 506 & 719 would only be admissible against Rose Acre, and that a limiting instruction to this effect should be given at trial when the video is published to the jury.

**Trial Stipulation 10: Alleged Side Agreement on Expanding Facilities**

The Parties agree to refrain from arguing or presenting evidence regarding any alleged side agreements among UEP Certified producers, including current and past Defendants, to refrain from expanding facilities or capacity for egg-laying hens or otherwise expanding capacity for egg production. This stipulation does not bar argument or evidence regarding whether or not the Defendants' expanded facilities or capacity, or whether or not Defendants' restricted facilities or capacity, or the nature of any purported expansion whether by acquisition or whether in the same relevant market, nor does it bar evidence of the UEP's statements, or any other conspirators' statements, with respect to restricting expansion.

**Trial Stipulation 11: Prior Trials**

The Parties agree that argument, evidence, and testimony relating to the fact or outcome of the Direct Purchaser Plaintiffs' trial and Direct Action Plaintiffs' trial may not be presented in this trial. To the extent that the Parties in this trial introduce testimony from either previous trial in accordance with the Federal Rules of Civil Procedure, the Parties agree that such testimony shall be identified in the jury's presence as a witness's "prior sworn testimony," or "prior testimony under oath."

To the extent a witness mentions either previous trial on the stand in the presence of the jury, the Parties agree that they may request an appropriate limiting instruction.

**Trial Stipulation #12: Prior Testimony of Marcus Rust and Gregory Hinton**

Plaintiffs have represented to Defendants that Plaintiffs may offer in Plaintiffs' case in chief the prior trial testimony of Marcus Rust and the prior trial testimony of Gregory Hinton, who are under Rose Acre's control, both of whom Defendant Rose Acre intend to call live in their case.

With respect to prior trial testimony of Mr. Rust or Mr. Hinton from the DPP trial, Plaintiffs agree that such prior trial testimony is not admissible against Defendants United Egg Producers, United States Egg Marketers, and Cal-Maine.

With respect to prior trial testimony of Mr. Rust or Mr. Hinton from the DAP trial, Plaintiffs agree that such prior trial testimony is not admissible against Defendants United Egg Producers, United States Egg Marketers, and Cal-Maine if used in Plaintiffs' case in chief. Such prior trial testimony may be admissible against Defendants United Egg Producers and United States Egg Marketers if used for impeachment purposes.

Defendants United Egg Producers, United States Egg Marketers, and Cal-Maine reserve their rights to seek additional relief regarding such prior trial testimony.

**Trial Stipulation #13: Testimony of Dolph Baker**

Defendants agree to withdraw without prejudice Motion *in Limine* for One Appearance Per Witness Testifying Live (Docket Entry 166) based on Plaintiffs' representation that Plaintiffs only plan on calling live Dolph Baker, who is employed by Defendant Cal-Maine. The Parties have further agreed that Plaintiffs will call Mr. Baker as an adverse witness in the Plaintiffs' case and Defendants will not object to Plaintiffs questioning Mr. Baker in a leading fashion. After the adverse direct is completed, Defendants will conduct a cross-examination of Mr. Baker, combined with a direct examination of Mr. Baker for matters outside the scope of the adverse direct

examination. For topics outside the scope of Plaintiffs adverse direct examination, Defense counsel will endeavor to ask non-leading questions. The Plaintiffs will then be entitled to conduct a re-direct and cross examination of Mr. Baker in a leading fashion. Any further questioning will be at the discretion of the Court.

### Trial Stipulation #14: Admission of Articles and Books

Defendants agree to withdraw without prejudice Motion *in Limine* to Bar Articles and Books for the Truth of the Matter Asserted (Docket Entry 165) based on Plaintiffs' decision to withdraw all articles and books with the exception of *United Voices* newsletters. The Parties agree that Plaintiffs will have to establish admissibility separately for each *United Voices* that Plaintiffs seek to admit.

This Stipulation does not resolve Defendants' Motion *in Limine* to Exclude Prior Complaints, Investigations, and Settlements (Docket Entry 169), which addresses admissibility of a *Wall Street Journal* article related to a federal investigation.

### Trial Stipulation #15: Deposition Designations

For any witness whose designation Plaintiffs choose to present in their case-in-chief that qualifies under Rule 804(b)(1), and who Defendants have not also designated, Plaintiffs will play Defendants' admissible completeness and counter-designations together in one consolidated presentation in the order in which the testimony occurred. When Plaintiffs present their affirmative designations for witnesses who have also been affirmatively designated by Defendants, Plaintiffs will play Defendants' admissible affirmative, completeness, and counter-designations together in one consolidated presentation in the order in which the testimony occurred. For any witness whose designation is not played by Plaintiffs in their case-in-chief that Defendants choose to play in their defense case, Defendants will play Plaintiffs' admissible affirmatives (as applicable), completeness, and counter-designations together in one consolidated presentation in the order in

which the testimony occurred. The above approach will apply for all designations that qualify under Rule 804(b)(1), even if the witness's testimony also is admissible under Rule 801(d)(2)(A)-(D).

When a party presents designations of an available witness whose testimony qualifies solely as an opposing party statement under Rule 801(d)(2)(A)-(D), the parties agree that only the offering party's designations and proper completeness designations will be played or read in the order in which the testimony occurred. The parties identify the following witnesses by designation as qualifying under this paragraph: Scott Manion, Jeff Hardin, Marcus Rust, Greg Hinton, Greg Marshall, and David Hurd.

IT IS SO ORDERED.

Date:   October 12, 2023

Steven C. Seeger
United States District Judge