IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **KRAFT FOODS GLOBAL, INC.**, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:11-cv-08808 |
| | ) | Judge Steven C. Seeger |
| **UNITED EGG PRODUCERS, INC.**, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION *IN LIMINE* TO ADMIT BUSINESS RECORDS**

Defendants United Egg Producers, Inc., United States Egg Marketers, Inc., Cal-Maine Foods, Inc., and Rose Acre Farms, Inc. ("Defendants") respectfully oppose Plaintiffs' Motion *In Limine* to Admit Business Records Pursuant to Federal Rules of Evidence 803(6) and 902(11) (ECF No. 322). As shown, the majority of the exhibits in Plaintiffs' motion do not qualify under Rule 803(6).

## INTRODUCTION

On October 6, 2023, Plaintiffs filed a motion *in limine* to admit certain documents as records of regularly-conducted business activity under Federal Rules of Evidence 803(6) and 902(11). Plaintiffs identified 34 documents in Exhibit B that they believe satisfy the requirements of 803(6).[1] In support, Plaintiffs attached certifications from representatives of Kraft, Kellogg, General Mills, and Nestle under Rule 902(11).

Defendants never objected to eight of the documents that are part of Plaintiffs' filing, so Defendants do not know why Plaintiffs have included them in the motion. (*See* Exs. 342, 740,

---

[1] Plaintiffs' Exhibit 509 was not listed in the chart Plaintiffs included as Exhibit A, but it was included among the documents subject to the Nestlé Certification in Exhibit B.

340, 341, 475, 745, 739, 743). Defendants have never opposed admission of those eight exhibits, and do not oppose them in this response.

Defendants, however, do object to the remaining 26 exhibits. The documents consist of assorted emails and various presentation materials, none of which appear to satisfy Rule 803(6). As the Seventh Circuit has explained, Rule 803(6) has three essential elements: "(1) the document must be prepared in the normal course of business; (2) it must be made at or near the time of the events it records; and (3) it must be based on the personal knowledge of the entrant or on the personal knowledge of an informant having a business duty to transmit the information to the entrant." *Datamatic Servs. v. United States*, 909 F.2d 1029, 1032 (7th Cir. 1990). The hearsay exception in 803(6) is based on the premise that the reliability of business records is "supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon, or by a duty to make an accurate record as party of a continuing job or occupation." Fed. R. Evid. 803(6), Advisory Committee Notes (1972).

Business records are reliable evidence to the extent they are kept with sufficient regularity. *See United States v. Ramsey*, 785 F.2d 184, 192 (7th Cir. 1986). Conversely, records that include entries which "may or may not appear at the whim of the writer[ ] do not have the sort of regularity that supports a reliable inference" to justify admission under Rule 803(6). *Id.* at 192. Moreover, a document will not qualify as a business record if the source for the record is outside of the company. *See Datamatic*, 909 F.2d at 1032 (if source of information is a company outsider, the business record exception does not apply and the outsider's statement or information must fall within another hearsay exception); *United States v. Santos*, 201 F.3d 953, 963 (7th Cir. 1999) (statements made by strangers to the business that become part of records

2

does not make them business records within the exception). Third parties have no business duty to report reliable information; therefore, documents containing information from outsiders are ineligible for the Rule 803(6) hearsay exception.

Certain categories of documents are problematic as business records. Emails are probably at the top of the list. Case law has consistently held that emails represent a "form of conversation" that are not typically included within the exception in Rule 803(6). "Emails are not business records under Rule 803(6) merely because 'employees regularly conduct business through emails.'" *Freedman v. Am. Guardian Holdings, Inc.*, No. 1:16-cv-11039, 2021 U.S. Dist. LEXIS 149266, *11-12 (N.D. Ill. Aug. 9, 2021) (quoting *United States v. Daneshvar*, 925 F.3d 766, 777 (6th Cir. 2019)). "When emails represent a 'form of conversation,' the content of the emails does not fall within the hearsay exception of Rule 803(6)." *Id.* at *12.

Likewise, a document does not qualify as a business record if it is a "one-off" – that is, it is not an activity that is both regularly conducted and regularly recorded. *See Pierce v. Atchinson*, *T & S.F. Ry.*, 110 F.3d 431, 444 (7th Cir. 1997) (one-off records do not qualify under Rule 803(6) because these records are "not created with the kind of regularity or routine which gives business records their inherent reliability").

Here, Plaintiffs' emails and presentations are not the sort of records created "consistently and conscientiously" to qualify as business records under 803(6). *See Ramsey*, 785 F.2d at 192. The emails do not qualify because they are nothing more than "forms of conversation." And the presentations are one-off reports addressing discrete subjects, not routine and systematic recordings of the business.

Not surprisingly, Plaintiffs' Rule 902(11) certifications fail to state that making the proffered exhibits was a regular practice of Kraft, Kellogg, General Mills, or Nestle. But this is

3

an essential element under 803(6). *See* Fed. R. Evid. 803(6)(C). Instead, the certificates simply state that the documents were made in connection with a regular business activity. That is not sufficient, and the certificates' deficiency is not trivial.

While this Court is entitled to accept Rule 902(11) certifications to avoid having custodians testify at trial, a Rule 902(11) certificate does not alleviate the need for the records to meet case law requirements to be admissible. Put differently, this Court does not become a "rubber stamp" for admissibility simply because a Rule 902(11) has been provided. Plaintiffs' motion does not acknowledge this, and nowhere provides legal analysis supporting its conclusory determination that records are admissible. But, when the Court analyzes the case law above, it is clear that the objectionable records presented do not meet the standards set by courts for admissibility of records under 803(6).

## OBJECTIONS

Defendants address Plaintiffs' exhibits in the order in which the documents appear in Exhibit B to their motion.

**A.     Kraft Exhibits**

Although Defendants do not believe that the identified Kraft exhibits qualify under Rule 803(6), Defendants withdraw their objections to the Kraft exhibits. (*See* Exs. 494, 498, 630).

**B.     Kellogg Exhibits**

Defendants object to the following exhibits:

- **Exhibit 477:** Kellogg witness Kelly Tobey's email discusses potential research and development activities as well as actions she intends to take on behalf of Kellogg. Ms. Tobey is scheduled to appear live at trial and can testify about the topics in the mail (although the email itself remains hearsay). Also, the email is a mere "form of conversation." This exhibit does not meet the criteria of Rule 803(6) because Plaintiffs fail to establish that this communication was a regularly-recorded document and not merely a "form of conversation."

- **Exhibit 478:** This email chain does not qualify under Rule 803(6) because Plaintiffs fail to establish that this communication is a regularly-recorded document and not merely a "form of conversation."

- **Exhibit 479:** This email merely asserts that the attachment encompassed the progress on the draft thus far, and that edits will be made only upon request. This exhibit does not meet the criteria of Fed. R. 803(6) because it is just a "form of conversation" concerning the presentation and not a regularly-conducted business activity. The exhibit is also inadmissible under Rule 803(6) because Plaintiffs fail to establish that this communication is a regularly-recorded communication and not merely a statement issued by the declarant.

- **Exhibit 480:** This presentation discusses the market for various food ingredients. Plaintiffs fail to establish that procurement update presentations were regularly held or recorded in this form, as this presentation appears to be merely a "form of conversation." Additionally, various data in the presentation are identified as having been derived from sources outside the business, (*e.g.,* WAOB) so those data are ineligible for the 803(6) exception.

- **Exhibit 482:** This presentation discusses the market for various raw materials and ingredients. Plaintiffs fail to establish that commodity outlook presentations were regularly held or recorded in this form, as this presentation appears to be merely a "form of conversation." Additionally, various data in the presentation are identified as having been derived from sources outside the business, (*e.g.,* DTN), so those data are ineligible for the 803(6) exception.

- **Exhibit 485:** This is an email from Kellogg employees Kelly Tobey and Joe Tubilewicz with the subject line "Procurement follow-up on Eggs for NFF." Ms. Tobey is scheduled to appear live at trial and can testify about the topics in the email (although the email itself remains hearsay). This exhibit fails to meet the criteria of Rule 803(6) because Plaintiffs do not establish that this type of email was regularly recorded. The email content responds to questions asked at a previous meeting, and therefore the subject material is, therefore, necessarily a "form of conversation" considered to be inadmissible under Rule 803(6).

- **Exhibit 487:** This email merely asserts that the declarant has attached a presentation that was sent to their management the day before. This exhibit fails to meet the criteria required by Rule 803(6) because Plaintiffs do not establish that the practice of sending presentations previously forwarded to management is a regular activity, nor that these emails are regularly recorded.

- **Exhibit 488:** This is an August 2003 internal Kellogg presentation titled "Procurement Overview" that discusses the market for various food ingredients. Plaintiffs fail to establish that procurement overview presentations were regularly recorded in this form. Moreover, this presentation appears to be merely a "form of conversation." Additionally, various data in the presentation are identified as having been derived from sources

outside the business, (*e.g.,* Sparks Companies, Urner Barry) so those data are ineligible for the 803(6) exception.

- **Exhibit 489:** This an email conversation between Kellogg employees Shelly Van Treeck and Kelly Tobey with the subject line "NFF Egg Savings and 2004 Outlook." Ms. Tobey is scheduled to appear live at trial and can testify about the topics in the email (although the email itself would remain hearsay). This conversation discusses the egg budget in 2003 and forecasts pricing for 2004. This exhibit does not qualify as a business record under Rule 803(6) because Plaintiffs do not establish that this email was regularly recorded. This email is merely a "form of conversation." This email conversation is further inadmissible to the extent that either conversant relies on information gathered by "Sparks," an outside source with no business duty to Kellogg. The Sparks data are hearsay within hearsay that cannot be cured by Rule 803(6).

- **Exhibit 490:** This is an undated (though appears to be 2007) internal Kellogg Procurement presentation titled "Eggs," discussing historical market data and forecasting a buying strategy for Q3 of 2007 into 2008. Plaintiffs fail to establish that these procurement strategy presentations were regularly recorded in this form. This presentation is merely a "form of conversation."

- **Exhibit 491:** This is an email conversation involving Kellogg employees Jim Roestel and Christine Wentworth with the subject line "Sparks Weekly Wire – 10/06/2003." These emails discuss egg white cost projections as compared to a prior year. This email does not qualify as a business record under Rule 803(6) because Plaintiffs do not establish that this email was regularly recorded and not merely a "form of conversation." This email conversation is further inadmissible to the extent that either conversant relies on information provided by the "Sparks Weekly Wire." Sparks is an outside informant with no business duty to Kellogg. The Sparks data are hearsay within hearsay that cannot be cured by Rule 803(6).

- **Exhibit 492:** This is an undated (though appears to be 2008) internal Kellogg presentation titled "Egg Strategy" that appears to be an excerpt of a larger market overview, discussing market conditions and forecasting a buying strategy for oats and eggs. Plaintiffs fail to establish that these procurement strategy presentations were regularly held or recorded in this form, as this presentation appears to be merely a "form of conversation."

- **Exhibit 493:** This is an undated (though appears to be 2003) internal Kellogg presentation, discussing egg market conditions, forecasting risk for 2005, and proposing a buying strategy. Plaintiffs fail to establish that these procurement strategy presentations were regularly held or recorded in this form, as this presentation appears to be merely a "form of conversation."

C. **General Mills Exhibits**

Defendants object to the following exhibits:

- **Exhibit 511:** This is an April 2008 General Mills presentation by former General Mills employee Tiffany Mercuri titled "Rembrandt Strategy Review," discussing egg market conditions and proposing a new buying strategy. Plaintiffs fail to establish that these procurement strategy presentations were regularly recorded in this form, as this presentation appears to be merely a "form of conversation." Additionally, various data in the presentation are identified as having been derived from sources outside the business, (*e.g.,* Urner Barry) so those data are ineligible for the 803(6) exception.

- **Exhibit 512:** This is an October 2007 General Mills presentation by Tiffany Mercuri titled "Egg Overview," discussing egg market conditions and proposing a new buying strategy. Plaintiffs fail to establish that these procurement strategy presentations were regularly held or recorded in this form, as this presentation appears to be merely a "form of conversation."

- **Exhibit 515:** This is a March 2007 General Mills presentation by Tiffany Mercuri titled "Eggs," discussing egg market conditions and discussing buying strategies. Plaintiffs fail to establish that these presentations on market conditions and procurement strategy were regularly recorded in this form, as this presentation appears to be merely a "form of conversation." Additionally, various data in the presentation are identified as having been derived from sources outside the business, (*e.g.,* Urner Barry) so those data are ineligible for the 803(6) exception.

- **Exhibit 553:** This is a General Mills presentation titled "Eggs: Change in Strategy & Vendor," discussing the egg industry and buying strategies. Plaintiffs fail to establish that these presentations on market conditions and procurement strategy were regularly held or recorded in this form, as this presentation appears to be merely a "form of conversation." Additionally, various data in the presentation are identified as having been derived from sources outside the business, (*e.g.,* Urner Barry) so those data are ineligible for the 803(6) exception.

D. **Nestle Exhibits**

Defendants object to the following exhibits:

- **Exhibit 505:** This a November 2008 internal Nestlé presentation discussing egg product pricing and forecasting its 2009 buying strategy based on market factors like the passage of California Prop 2. Plaintiffs fail to establish that these presentations on market conditions and procurement strategy were regularly held or recorded in this form, as this presentation appears to be merely a "form of conversation."

- **Exhibit 506:** This is an email conversation between Nestle employees William Trask and Monte Mace, among others. This exhibit does not qualify as a business record under Rule 803(6) because Plaintiffs do not establish that this email was regularly recorded and

7

not merely a "form of conversation." The subject line is "Dreyer's Liquid Sugar Egg Yolk Review" and discusses Mr. Trask's recommendations for Dreyer's, to which Mr. Mace responds with questions, and Mr. Trask provides specific answers. This exhibit is inadmissible under 803(6) because Plaintiffs fail to establish that this communication is a regularly-recorded document and not merely a "form of conversation."

- **Exhibit 507:** This is an email with an attachment sent from Nestle employees Ed Lewis and Dale Bohman. The subject line is "Sept. CFO update.ppt" and the email's content merely states that Mr. Lewis was asked to assemble something, which Mr. Lewis attached; the follow-up email attaches an "updated sheet." This exhibit does not meet the criteria of Fed. R. 803(6) because Plaintiffs fail to establish that the circulation of this attachment records a regularly-conducted activity. This exhibit is further inadmissible under Rule 803(6) because Plaintiffs fail to establish that this communication is a regularly recorded document and not merely a "form of conversation."

- **Exhibit 508:** This is an email chain from Ed Lewis and John Hill, with the subject line "Informa Weekly egg comments." These emails discuss egg and egg product pricing projections as compared to a prior year. This exhibit does not qualify as a business record under Rule 803(6) because Plaintiffs do not establish that this email was regularly recorded and not merely a "form of conversation." This email conversation is further inadmissible to the extent that either conversant relies on "Informa Weekly" for their statements. Informa is an outside informant with no business duty to Nestlé. The Informa data constitute hearsay within hearsay under Rule 805, and cannot be cured by Rule 803(6).

- **Exhibit 509:** This is an email from Mark Jordan at Informa Economics, Inc. responding to a question asked by William Trask about a question he was asked. This exhibit does not qualify as a business record under Rule 803(6) because Plaintiffs do not establish that this email was regularly recorded and not merely a "form of conversation." This email conversation is further inadmissible because Mr. Jordan is an employee of non-party Informa and does not have a business duty to Nestlé. The statements made by Mr. Jordan are hearsay within hearsay under Rule 805, and cannot be cured by Rule 803(6).

- **Exhibit 510:** This is a September 2008 internal Nestle presentation, titled "Dynamic Forecast Submission, Raw Materials" discussing the market for various raw materials and ingredients. Plaintiffs fail to establish that these presentations on commodity prices were regularly held or recorded in this form. Additionally, various data in the presentation are identified as having been derived from sources outside the business, (*e.g.,* ZMP figure on page NES00002186) so those data are ineligible for the 803(6) exception.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' Motion *In Limine* to Admit Business Records Pursuant to Federal Rules of Evidence 803(6) and 902(11).

8

Dated: October 13, 2023                    Respectfully submitted,

*/s/ James A. King*
James A. King (jking@porterwright.com)
Allen T. Carter (acarter@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
41 South High Street, Suite 2900
Columbus, OH 43215
Tel: (614) 227-2000

Donald M. Barnes (dbarnes@porterwright.com)
Jay L. Levine (jlevine@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
2020 K. Street, N.W., Suite 600
Washington, D.C. 20006-1110
Tel: (202) 778-3000

***Counsel for Defendant Rose Acre Farms, Inc.***

/s/ Robin P. Sumner
Robin P. Sumner
(robin.sumner@troutman.com)
Kaitlin L. Meola
(kaitlin.meola@troutman.com)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
3000 Two Logan Square, 18th and Arch Streets
Philadelphia, PA 19103-2799
Tel: (215) 981-4000

Whitney R. Redding
(whitney.redding@troutman.com)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Union Trust Building
501 Grant Street, Suite 300
Pittsburgh, PA 15219-4429
Tel: (412) 454-5085

Molly DiRago
(Molly.DiRago@troutman.com)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
227 West Monroe Street, Suite 3900
Chicago, IL 60606
Tel: (312) 759-1923

**Counsel for Defendants United Egg Producers, Inc. & United States Egg Marketers, Inc.**

/s/ Patrick M. Collins
*Patrick M. Collins (pcollins@kslaw.com)*
*Livia M. Kiser (lkiser@kslaw.com)*
*Patrick M. Otlewski (potlewski@kslaw.com)*
*Abigail Hoverman Terry (aterry@kslaw.com)*
*KING & SPALDING LLP*
*110 North Wacker Drive, 38th Floor*
*Chicago, IL 60606*
*Tel: (312) 995-6333*

*Lohr Beck (lohr.beck@kslaw.com)*
*(pro hac vice)*
*KING & SPALDING LLP*
*1180 Peachtree Street, NE, Suite 1600*
*Atlanta, GA 30309*
*Tel: (404) 572-2812*

*Brian E. Robison (brian@brownfoxlaw.com)*
*(pro hac vice)*
*BROWN FOX PLLC*
*6303 Cowboys Way, Suite 450*
*Frisco, TX 75034*
*Tel: (972) 707-2809*

**Counsel for Defendant Cal-Maine Foods, Inc.**