UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KRAFT FOODS GLOBAL, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 11-cv-8808 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| UNITED EGG PRODUCERS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## **ORDER**

Plaintiffs' renewed motion to preclude post-2008 evidence in the liability phase (Dckt. No. 314) is hereby denied.

The motion is about whether the parties can present evidence about the 2009 to 2012 time frame during the liability stage of the bifurcated trial. Plaintiffs claim that a conspiracy existed until 2008, and that the anticompetitive effects lasted until 2012. Plaintiffs seek damages during the time of the alleged conspiracy (*i.e.*, through 2008), and during the so-called injury tail period (*i.e.*, from 2009 to 2012).

Taking a step back, this Court already issued a ruling about post-2008 evidence in response to a motion *in limine*. Plaintiffs originally moved to exclude evidence after 2008, largely on relevance grounds. *See* Pls.' Mtn. *in Limine* (Dckt. No. 173).

This Court granted in part, and denied in part, that motion *in limine*. This Court held that Defendants could not present evidence after 2008 to prove that they did not conspire from 1999 to 2008. "Evidence after 2008 does not shed much light on why Defendants did what they did before 2008." *See* 9/15/23 Order (Dckt. No. 292).

But the Court did allow Defendants to present evidence from 2009 to 2012 to address whether Plaintiffs suffered an antitrust injury from 2009 to 2012. Basically, by seeking damages from 2009 to 2012, Plaintiffs opened the door to evidence that Plaintiffs cannot recover damages because they did not suffer an antitrust injury from 2009 to 2012. *Id.* at 14.

"The Court concludes that evidence of procompetitive benefits from 2009 to 2012 is fair game, because Plaintiffs are alleging an injury and seeking damages from 2009 to 2012. Plaintiffs cannot recover damages for the injury tail period unless they suffered an injury caused by an unreasonable restraint of trade. So Defendants can argue that the restraint of trade had procompetitive benefits during injury tail period." *Id.*

At the final pretrial conference on September 28, 2023, Plaintiffs revisited the issue about the scope of evidence after 2008. Plaintiffs revealed that they do not intend to produce evidence about any injury suffered after 2008 during the liability phase of the trial. Plaintiffs hope to relegate that evidence to the damages phase. In their view, that decision means that any post-2008 evidence should be out of bounds during the liability phase of the trial, including any evidence of procompetitive benefits.

In other words, Plaintiffs announced that they want to present evidence about a post-2008 injury during the damages phase (Phase II), but not during the liability phase (Phase I). And in that case, as Plaintiffs see it, the door that was open for post-2008 evidence in the liability phase (Phase I) should now be closed, locked, and bolted shut.

Plaintiffs' counsel explained: "So as Your Honor no doubt remembers, you held that there's certain swaths of post-2008 evidence that will come in – would come in because plaintiffs opened the door to it by arguing that there is antitrust injury between 2009 and 2012. We've taken that to heart and reconsidered strategically in light of that decision and have decided that in our liability phase of the trial, we will not seek to prove up injury after 2008. So after the last overt act, which was in about September of 2008." *See* 9/28/23 Tr., at 152 (Dckt. No. 316).

Counsel continued: "And our position in light of that would be that, you know, the door is now closed. And as Your Honor already has held that post-2008 evidence is not relevant to the balancing of pro and anticompetitive effects during the conspiracy period, it's not relevant to the conspiracy's formation and, therefore, things like consumer demand after 2008 or state laws that passed after 2008 would not be admissible." *Id.*

Plaintiffs' counsel added that they want to present evidence of post-2008 injuries in the damages phase, not the liability phase. "One additional note about this is that our position will be that at the second phase of trial, the damages phase, that we would ask Your Honor to let that evidence of injury in," which the Court took to mean evidence of injury after 2008. *Id.*

In response to this Court's question, Plaintiffs' counsel confirmed that they do not intend to drop the allegation that Plaintiffs suffered an antitrust injury after 2008, and they do not intend to drop a request for damages after 2008. They simply don't want to present evidence of an antitrust injury after 2008 during the liability phase:

> The Court: Let me unpack what the plaintiffs are saying. Are you saying you are not alleging anymore that there was an antitrust injury and you are not seeking damages after 2008?
>
> Pls.' Counsel: That is not what we're saying. We are saying that for the liability phase of the trial –
>
> The Court: Yeah.

2

>           Pls.' Counsel:   – we will not be arguing that there is an antitrust injury
>                            after 2008.

*Id.* at 155.

Basically, Plaintiffs revealed that they do not want to present any post-2008 evidence during the liability phase of the trial, including evidence of any antitrust injury from 2009 to 2012. As counsel put it: "So for now, we are saying if you disagree at a later time that we can put in the 2009 to 2012 evidence of injury, we will deal with that at that time how that affects our damages case. But for now, for this phase of trial, we do not seek to put in any evidence that's outside that 2008 period." *Id.* at 156.

That plan was news to the Court, and it was relatively hot-off-the-press news for Defendants too. Plaintiffs shared that plan with defense counsel the day before. *Id.* at 153, 158.

At the final pretrial conference, Defendants strongly objected to any change of course, for a variety of reasons. Many of the reasons involved (in their view) the unfairness of changing a theory of the case on the eve of trial. As Defendants see it, Plaintiffs now want to present a "radically different case." *Id.* at 154. And it would require a substantial change in the analyses of the experts.

This Court was hearing it all on the fly, so it directed the parties to make written submissions. *Id.* at 156–66.

In their follow-up motion, Plaintiffs "seek to limit their evidence in the liability phase of the trial to injury they suffered during the conspiracy period: 1998 to 2008." *See* 10/2/23 Pls.' Renewed Mtn. to Preclude Post-2008 Evidence in the Liability Phase, at 1 (Dckt. No. 314). "Plaintiffs have consistently contended that the last overt act in the conspiracy took place in September 2008 and the conspiracy caused damage through 2012. . . . Plaintiffs now propose to limit the evidence of injury during the liability phase in response to the Court's ruling on post-2008 evidence." *Id.* at 2–3; *see also id.* at 3 ("As Plaintiffs developed their case after the complaint's filing, the economic evidence showed the conspiracy continued to affect prices into 2012.").

Plaintiffs reiterated that they want to seek damages through 2012 during the damages phase, but they do not want to present evidence of an antitrust injury from 2009 to 2012 during the liability phase. "[A]lthough Plaintiffs believe the issue is premature and can be decided by the Court at a later time, they respectfully submit they will be able to prove damages through 2012 in the damages phase. If the jury finds Defendants liable, Plaintiffs will ask this Court to permit them to introduce evidence of economic harm they suffered that extended to 2012. This is proper." *Id.* at 9.

As Plaintiffs see it, "if Plaintiffs do not introduce post-2008 evidence of injury, Defendants, too, are precluded from introducing evidence of post-2008 procompetitive impact." *Id.* at 15.

3

In response, Defendants opposed the motion on a number of grounds, echoing the themes that they shared before. *See* 10/6/23 Defs.' Resp. (Dckt. No 326). They view the proposal as a last-minute change to Plaintiffs' theory of the case, which they view as highly prejudicial. They view the request as "last-minute gamesmanship," especially given the potential impact on the experts. *Id.* at 3. They view the proposal as pulling the rug out from under them at the last minute and replacing it with sandbags.

At the second installment of the final pretrial conference on October 12, 2023, this Court announced its oral ruling on the motion at hand, and promised to follow-up with this written order. Once again, the parties had a spirited, lengthy exchange with the Court about post-2008 evidence.

The motion seems to have two embedded issues. First, when does a plaintiff have to prove antitrust injury? Can a plaintiff prove an antitrust injury for the first time during the damages phase of a bifurcated trial? Second, if a plaintiff has to prove an antitrust injury during the liability phase, is it good enough if a plaintiff proves *some* antitrust injury? That is, if a plaintiff proves an antitrust injury for *some* period of time during the liability phase of a trial, can that plaintiff recover damages for a *later* period during the damages phase?

Putting them together, if a plaintiff proves an antitrust injury during Year X, can that plaintiff recover damages for an antitrust injury suffered in Year Y? If a plaintiff must prove an antitrust injury during Year Y to recover damages for Year Y, can the plaintiff prove the antitrust injury during Year Y for the first time during the damages phase of a bifurcated trial? Or does that proof have to come during the liability phase?

The answer comes from first principles. To prevail on a claim under the Sherman Act, a plaintiff must prove an agreement that unreasonably restrains trade, an antitrust injury, and damages. *See, e.g.*, *Deppe v. NCAA*, 893 F.3d 498, 501 (7th Cir. 2018) ("[T]he plaintiff must prove three elements: (1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in a relevant market; and (3) an accompanying injury.") (cleaned up).

An antitrust injury is an essential part of an antitrust claim. The existence of an injury is a liability question. *See Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990) ("In *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 107 (1986), we reaffirmed that injury, although causally related to an antitrust violation, nevertheless will not qualify as 'antitrust injury' unless it is attributable to an anti-competitive aspect of the practice under scrutiny, 'since it is inimical to the antitrust laws to award damages for losses stemming from continued competition.'") (cleaned up); *Locklin v. Day-Glo Color Corp.*, 429 F.2d 873, 880 (7th Cir. 1970) ("Causation between an anti-trust violation and damage sustained, must be shown."); *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1161 (7th Cir. 1983) ("Once *causation* of damages has been established, the *amount* of damages may be determined[.]") (emphasis in original); 8 Julian O. Kalinowski, Antitrust Laws and Trade Regulation § 171.02 (2d ed. 2023) ("To recover damages, an antitrust plaintiff must demonstrate two things concerning damages: (1) the fact of damage and (2) the amount of damages sustained."); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 581 F. Supp. 3d 1029, 1048 (N.D. Ill. 2022) (Dow, J.) ("To recover

4

under the antitrust laws, a plaintiff must prove that its damages were caused by the unlawful acts of the defendant. This is the essence of antitrust injury—*i.e.*, injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' actions unlawful. In other words, if a plaintiff has suffered financial loss from the lawful activities of a competitor, then no damages may be recovered under the antitrust laws. Once causation of damages has been established, calculating damages presents a separate challenge.") (cleaned up) (emphasis in original); 8 Julian O. Kalinowski, Antitrust Laws and Trade Regulation § 160.04 (2d ed. 2023) ("The fact of damage requires proof of a causal connection between the anticompetitive conduct and the plaintiff's injury. The standard for proving impact is strict: injury must be proven with a 'reasonable certainty.' . . . In proving the amount of damages, the plaintiff need satisfy a less rigorous standard. So long as the damages claimed are not speculative or conjectural, they may be awarded; the plaintiff need only make a 'just and reasonable' estimate of the amount of damages sustained."); Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶ 392 (4th & 5th eds. 2023) ("[A] successful private plaintiff must prove three things: (1) that the defendant violated the antitrust laws; (2) that the plaintiff was injured by the antitrust violation; and (3) the monetary value of the injury suffered. . . . [I]n proving the fact of injury, the plaintiff must prove with reasonable certainty that the defendant's antitrust violation caused the harm suffered by the plaintiff.").

Antitrust injury is not the same thing as damages. Antitrust injury is about the fact of harm. That is, an antitrust injury is about the existence of harm, meaning a harm caused by the type of conduct that the antitrust laws are designed to prevent. Damages are about the amount of the harm. Damages measure the extent of the harm caused by the antitrust injury. *See, e.g., In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 194 (3d Cir. 2020) ("We have consistently distinguished injury from damages."); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 188 (3d Cir. 2001), *as amended* (Oct. 16, 2001) ("Proof of injury (whether or not an injury occurred at all) must be distinguished from calculation of damages (which determines the actual value of the injury)."); *Kleen Prod. LLC v. Int'l Paper*, 306 F.R.D. 585, 594 (N.D. Ill. 2015), aff'd sub nom. *Kleen Prod. LLC v. Int'l Paper Co.*, 831 F.3d 919 (7th Cir. 2016) ("Impact is 'whether the plaintiffs were harmed,' whereas 'damages quantify by how much.'") (citation omitted).

Plaintiffs contend that the conspiracy lasted until 2008, and that the effects lasted until 2012. Plaintiffs could have drawn a bright line at 2008, when the alleged conspiracy ended, and not sought damages from 2009 to 2012. That is, Plaintiffs could have dropped the request for damages after 2008, and only sought damages through 2008.

But that's not what Plaintiffs are doing. Plaintiffs continue to want damages from 2009 to 2012, meaning the so-called injury tail period.

If Plaintiffs are going to seek damages for the period after 2008, then they need to prove that they suffered an antitrust injury after 2008. And if Plaintiffs need to prove that they suffered an antitrust injury after 2008, then they need to make that showing during the liability phase of the trial.

5

The point is simple. An injury is an essential element of liability, and evidence of liability must come during the liability phase.

Plaintiffs must prove an injury from 2009 to 2012 during the liability phase to recover damages from 2009 to 2012 during the damages phase. Plaintiffs cannot present evidence of an antitrust injury after 2008 for the first time during the damages phase, because at that point, the liability ship will have sailed. Liability first; damages second.

Proving an injury during 1999 to 2008 (only) would not entitle Plaintiffs to recover damages for an antitrust injury during 2009 to 2012. When it comes to antitrust injury, the principle is not in for a penny, in for a pound. The principle is not "in for an injury in Year X, in for damages in Year Y."

If a plaintiff wants to recover damages for Year Y, then that plaintiff must prove an antitrust injury during Year Y. So, in a bifurcated trial, the plaintiff must prove an antitrust injury in Year Y during the liability phase of the trial.

Plaintiffs contend that they are the masters of their own case. *See* 10/2/23 Pls.' Renewed Mtn. to Preclude Post-2008 Evidence in the Liability Phase, at 6 (Dckt. No. 314). Fair enough. But Plaintiffs are not the masters of the defense. If Plaintiffs seek damages for an antitrust injury suffered after 2008, then Defendants can present evidence during the liability phase that there was no antitrust injury after 2008 because there was no unreasonable restraint of trade.

Plaintiffs also argue that they are entitled to trim their case.[1] They point out that a plaintiff can always narrow its case before trial. *Id.* at 7.

That's not exactly the situation. Plaintiffs are not saying that they want to trim their case, and drop the demand for damages after 2008. In fact, Plaintiffs are saying the opposite. Plaintiffs are saying that they want to recover damages after 2008 during the damages phase, without proving an antitrust injury after 2008 during the liability phase. Plaintiffs aren't narrowing their case – they are trying to narrow the *defenses*.

Plaintiffs cite a few cases, but they do not help the cause. None of the cases stands for the proposition that proving an antitrust injury during an *earlier* period is enough to recover damages for a *later* period. They do not support the notion that proving an injury during Year X is enough to get damages during Year Y.

And none of the cases stands for the proposition that a plaintiff can prove an antitrust injury for Year Y for the first time during the damages phase of a bifurcated trial. The cases do not say that a plaintiff can prove an antitrust injury for Year Y during the damages phase, when the jury only heard evidence about an injury during Year X during the liability phase.

Plaintiffs point to the Seventh Circuit's decision in *Agnew v. NCAA*, 683 F.3d 328 (7th Cir. 2012), but it is not on point. The language in question merely summarized the elements of an antitrust claim. "Accordingly, a plaintiff must prove three elements to succeed under § 1 of

---

[1] For now, the Court is setting aside the Defendants' argument about prejudice, simply because there is no reason to get into it. This Court is not issuing a ruling on that issue in this order, one way or the other.

the Sherman Act: "(1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in [a] relevant market; and (3) an accompanying injury." *Id.* at 335.

The Seventh Circuit simply noted that a plaintiff has to prove an antitrust injury. The Court of Appeals never suggested that proving "an antitrust injury" for one period is enough to get damages for a *later* period. And the Court of Appeals never said that a plaintiff can prove an antitrust injury for that later period in the damages phase, after the liability phase of a trial is over.

Plaintiffs rely on the Ninth Circuit's decision in *Optronic Technologies, Inc. v. Ningbo Sunny Elec. Co., Ltd.*, 20 F.4th 466 (9th Cir. 2021). That case does not help Plaintiffs' argument float. If anything, it sinks it.

The Ninth Circuit recognized that a plaintiff can recover damages for a period of time after a conspiracy ends, because the anticompetitive effects can continue. "But even if the conspiracy between Sunny and Synta to eliminate Meade as an independent competitor ended in 2016, when Orion and Synta signed the Settlement and Supply Agreements, Orion could still recover post-2016 damages because it continued to suffer economic harm from the harm to competition caused by the illegal concerted activity." *Id.* at 487.

That proposition is unremarkable. An antitrust conspiracy can distort a market in ways that reverberate after the conspiracy ends. The conspiracy might end, but the harm might not. It might take a while for the market to recover.

Consider, as a hypothetical, an agreement that each egg producer would have only 100 hens, and slaughter all the rest. (The prices would exceed golden eggs.) Imagine if that conspiracy lasted one year. And then, after one year, the egg producers started having as many hens as they wanted. It would take quite a while for the price of eggs to recover.

The Ninth Circuit simply recognized that harm can continue even after a conspiracy ends. The Ninth Circuit never suggested that a plaintiff can recover damages for a later period without proving an injury during that later period.

Quite the opposite. The Ninth Circuit held that Orion "could still recover post-2016 damages *because it continued to suffer economic harm* from the harm to competition caused by the illegal concerted activity." *Id.* (emphasis added).

Later paragraphs cemented the point, and confirmed that the Ninth Circuit was talking about an antitrust injury. Plaintiff's expert "explained that structural changes to the telescope manufacturing market brought about by the conspiracy *continued to impose costs* on Orion after 2016, and he was able to estimate those costs." *Id.* (emphasis added).

"Therefore, where an antitrust plaintiff *suffers continuing antitrust injuries* from anticompetitive changes to market structure that arose from a proven antitrust violation, we hold that the violation may be a material cause of *that injury*, and so recovery of damages is permitted, even after the last proven date of the violative conduct. This rule accords with the common-sense principle that 'if you break it, you buy it.'" *Id.* at 488 (emphasis added).

7

And again: "If a defendant has conspired to violate the antitrust laws and thereby harmed a market's competitive structure, it remains liable for the *continuing injuries suffered* by plaintiffs from the structural harm to competition that its unlawful scheme brought about. It is no defense to argue that the conspiracy has ended, where the conspiracy achieved its anticompetitive objective. As a result, Orion could prevail by showing that an overt pre-2016 conspiracy had *residual market effects* that resulted in post-2016 damages." *Id.* (emphasis added).

The Ninth Circuit simply held that a plaintiff could recover damages for an antitrust injury suffered after a conspiracy ended. That holding is in another zip code from the terrain defended by Plaintiffs here. The Ninth Circuit did not allow a plaintiff to recover damages for a certain period of time without proving an antitrust injury during that period of time.

And in any event, *Optronic Technologies* did not involve a bifurcated trial. So the Ninth Circuit did not address whether a plaintiff could prove – for the first time during the damages phase of a trial – an antitrust injury suffered during a later period.

Plaintiffs believe that the "open the door" metaphor swings in their favor. Again, this Court previously ruled that Plaintiffs opened the door to evidence about procompetitive effects after 2008 by seeking damages after 2008. "Plaintiffs are alleging an injury and seeking damages from 2009 to 2012. So Defendants can present evidence that the UEP Certified Program had procompetitive benefits – not anticompetitive effects – from 2009 to 2012. Plaintiffs have opened the door, so Defendants can walk through it." *See* 9/15/23 Order, at 1–2 (Dckt. No. 292).

Plaintiffs now want to close that door. "This Court found that Plaintiffs opened a door by alleging injury through 2012; but doors can be closed, and Plaintiffs want to close the door." *See* Pls.' Renewed Mtn. to Preclude Post-2008 Evidence in the Liability Phase, at 13 (Dckt. No. 314).

Not really. Plaintiffs want the door to be open to them, but closed for Defendants. Plaintiffs want to recover damages about an injury suffered after 2008, *without* proving an injury after 2008 during the liability phase of trial, and *without* giving Defendants a chance to argue during the liability phase that there *was no* antitrust injury after 2008.

The door cannot have one-way traffic. If Plaintiffs want damages after 2008, then they have to prove an injury after 2008 during the liability phase of the trial. And once they enter that area, Defendants can argue that there was no antitrust injury after 2008 because there was no unreasonable restraint of trade in light of the procompetitive benefits.

In sum, Plaintiffs can recover damages from 2009 to 2012, meaning the injury tail period, only if they prove that they suffered an antitrust injury from 2009 to 2012. And Plaintiffs must make that showing during the liability phase of the trial, not the damages phase of the trial. Without proving an antitrust injury from 2009 to 2012 during the liability phase, Plaintiffs cannot recover damages from 2009 to 2012 during the damages phase.

8

Date: October 13, 2023

_____
Steven C. Seeger
United States District Judge