UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRAFT FOODS GLOBAL, INC., THE KELLOGG COMPANY, GENERAL MILLS, INC., and NESTLÉ USA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED EGG PRODUCERS, INC., UNITED STATES EGG MARKETERS, INC., CAL-MAINE FOODS, INC., MICHAEL FOODS INC., and ROSE ACRE FARMS, INC. <br><br> Defendants. | No. 1:11-cv-08808 <br><br> Judge Steven C. Seeger |

## Defendants' Motion to Limit Plaintiffs' Proposed Exhibit Redactions

Defendants United Egg Producers, Inc., United States Egg Marketers, Inc., Cal-Maine Foods, Inc., and Rose Acre Farms, Inc. submit this Motion to Limit Plaintiffs' Proposed Exhibit Redactions.

### I.  Introduction

Plaintiffs have marked as exhibits more than one hundred United Voices newsletters sent by UEP on a semi-monthly basis.[1] Defendants expect that Plaintiffs will argue that these newsletters were one of the primary vehicles for communication

---

[1] In addition to their redactions of United Voices newsletters, Plaintiffs have redacted more than one hundred other documents on their exhibit list. Defendants also object to these redactions but focus this motion on the United Voices due to the highly unfair prejudice Defendants would suffer if redacted versions of United Voices are used at trial. Defendants will seek to resolve objections to other redactions on a document-by-document basis upon being notified by Plaintiffs of their anticipated use of those exhibits at trial.

1

about the alleged conspiracy. But Plaintiffs do not want the jury to see the United Voices the way they were actually sent and received. Instead, Plaintiffs cherry-picked portions of the newsletters to show the jury, redacting the remainder of the newsletters based on their purported claim that the such portions are irrelevant. (A list of the redacted United Voices on Plaintiffs' Exhibit List that Defendants dispute is attached as Exhibit A.)

Plaintiffs' heavy redactions mean the newsletter the jury will see look nothing like the newsletters that actually were sent and received. This creates a misleading, incomplete, and improper presentation of the evidence to the jury. Plaintiffs' redactions also remove exculpatory evidence, compounding the unfairness and impropriety.

Defendants respectfully submit that the jury should see the United Voices as they were prepared and sent at the time, with redactions only where necessary to conform to this Court's rulings. A list of the redactions that Defendants do not dispute is attached as Exhibit B.[2] This proposal is consistent with the law, particularly Federal Rules of Evidence 106 and 403.

## II.  Background

United Voices is the bi-weekly newsletter distributed by United Egg Producers, Inc. to its members and other industry participants. The newsletters typically include four to twelve articles, notices, and other material that reported on UEP's activities, the egg market, legislative initiatives relevant to the industry,

---

[2] Defendants do not dispute any redactions of the "Washington Report" that are appended to the end of many United Voices.

2

USDA flock data, Urner Barry prices, equipment for sale, disease outbreaks, etc. With the exception of special guest editorials, the contents of the United Voices were drafted and edited by Gene Gregory, President of UEP.[3]

Plaintiffs have marked eighty-eight United Voices newsletters as exhibits for trial. All of them suffer substantial redactions, resulting in newsletters that are mostly blank, save for an article or two that Plaintiffs want the jury to see. The result is 88 exhibits that look nothing like they did in their original form.

Defendants met-and-conferred with Plaintiffs about this issue several times, and proposed that the parties agree to the admission of the United Voices in unredacted form. Plaintiffs refused. As a result, Defendants now have on their exhibit list all United Voices between January 1999 and December 2008 in chronological order without redactions. *See* Defendants' Exhibits 915–1143.

### III. Applicable Legal Standards

***The Rule of Completeness.*** Federal Rule of Evidence 106 provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. The Seventh Circuit has held that, under Rule 106, "a complete statement is required to be read or heard when it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the

---

[3] *See* UE_DEP_0001408 (G. Gregory July 15, 2013 Tr. 55:21-56:7) (explaining that Gene Gregory authored the United Voices newsletter from 1992 through January of 2013), attached hereto as Exhibit C.

3

trier of fact, or (4) insure a fair and impartial understanding. The completeness doctrine does not, however, require introduction of portions of a statement that are neither explanatory of nor relevant to the admitted passages." *United States v. Lewis*, 641 F.3d 773, 785 (7th Cir. 2011) (internal quotations and citations omitted).

Helpful to this Court's analysis is *Frymire-Brinati v. KPMG Peat Marwick*. In *Frymire-Brinati*, the Seventh Circuit found that the trial court erred in admitting "compressed" versions of party statement admissions that "omit[ed] the context of (and qualifications on) the admissions." 2 F.3d 183, 187 (7th Cir. 1993). The Seventh Circuit reasoned: "An admission depicts the party in its own words; [the non-offering party] was entitled to have the jury see those words rather than a precis that the adverse party thought would depict the speaker in the worst light." *Id.* The Seventh Circuit similarly found that the trial court erred by refusing to allow the defendant auditing firm to introduce an audit memorandum in its entirety, pursuant to Rule 106, to provide context to discoveries made during the audit. *Id.* at 188.

This issue is so important that the Seventh Circuit has explained: "If otherwise inadmissible evidence is necessary to correct a misleading impression, then either it is admissible for this limited purpose by force of Rule 106 . . . or, . . . the misleading evidence must be excluded too." *United States v. LeFevour*, 798 F.2d 977, 981 (7th Cir. 1986) (internal citations omitted). *LeFevour* thus stands for the proposition that redactions that mislead the jury may render otherwise admissible statements inadmissible. In other words, when redactions create a misleading impression, such redacted documents must be excluded.

4

***Preventing Misleading Impressions by Redactions.*** Preventing misleading impressions through redactions is an important consideration under Rule 403. That is because jurors are entitled to an "accurate picture of events" and "disappointing their expectations about what evidence would normally be available to establish a proposition may lead them to draw inaccurate inferences about what actually happened (based on conjectures about why evidence is being hidden from their view)." *Gonzalez v. DeTella*, 127 F.3d 619, 621 (7th Cir. 1997); *see also* Fed. R. Civ. P. 403 (providing that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of," among other things, "misleading the jury").

***Context is a Valid Non-Hearsay Purpose.*** The law is well-established in this Circuit that an out-of-court statement is not hearsay when it is offered for background or context. *See e.g., United States v. Norton*, 893 F.3d 464, 467 (7th Cir. 2018) ("An out-of-court statement admitted for the truth of the matter asserted is inadmissible hearsay. But when the statement is offered to provide context for the words or actions of others rather than the statement's truth, it is admissible."); *Estate of Moreland v. Dieter*, 395 F.3d 747, 753–54 (7th Cir. 2005) (recognizing that interrogator's questions were offered to provide context for defendant's answers and as such were not hearsay); *United States v. Gajo*, 290 F.3d 922, 929–30 (7th Cir. 2002) (statements of non-conspirator, in recorded conversation with co-conspirator, admissible to provide context for co-conspirator's statements) (collecting cases); *United States v. Lewisbey*, 843 F.3d 653, 658 (7th Cir. 2016) (finding that messages

5

defendant received were admitted not for the truth of the matter asserted but instead to provide context for the messages defendant sent); *United States v. Bermea–Boone*, 563 F.3d 621, 626 (7th Cir. 2009) (finding that the admission of the full transcripts of telephone conversations between the defendant and another party was appropriate and noting that "[i]t is well settled that statements that are offered for context, and not for the truth of the matter asserted, are not hearsay"); *United States v. Hanjuan Jin*, 833 F. Supp. 2d 957, 969 (N.D. Ill. 2011) (admitting string of emails for the non-hearsay purpose of providing context to other emails).[4]

While Rule 106 does not expressly address the admissibility of otherwise inadmissible evidence (and indeed Circuits appear to be split on this issue), the Seventh Circuit treats Rule 106 as an exception to the rule against hearsay, allowing such evidence where it is relevant and necessary to provide context.

Additional non-hearsay purposes—beyond context—are appropriate to consider. For instance, statements that may otherwise be hearsay may be admissible for notice or effect (or lack thereof) on the listener. *See, e.g.*, *Jin*, 833 F. Supp. 2d at 969.

---

[4] *See also United States v. Gutierrez–Chavez*, 842 F.2d 77, 81 (5th Cir. 1988) (statements on tape recording admissible "for the limited purpose of putting the responses of the appellant in context and making them 'intelligible to the jury and recognizable as admissions'"); *United States v. Price*, 792 F.2d 994, 997 (11th Cir. 1986) (statements admitted "to make understandable to the jury the statements made by" the defendant); *United States v. Whitman*, 771 F.2d 1348, 1352 (9th Cir. 1985) (no hearsay problem when tape recorded statements introduced to aid jury in understanding defendant's statements); *United States v. Williams*, 604 F.2d 1102, 1108 (8th Cir. 1979) ("the tape-recorded conversation was not hearsay because it was admitted to provide context for [the defendant's] end of the conversation.").

6

## IV. Analysis

Plaintiffs' proposed redactions to United Voices newsletters should be rejected. The jury should be allowed to evaluate the statements within the context in which the statements were made, rather than presenting them amidst large swathes of white space. Plaintiffs' proposed redactions, for instance, make it appear that certain articles were the central focus of the newsletter. That is not true, of course, as the full context shows that the articles appear interspersed with other articles and material about other industry activities.

To make matters worse, Plaintiffs have not merely redacted articles that are relevant for context—their redactions extend to articles that are directly relevant to the issues in this case, such as notice, knowledge, and effect on the listener. Plaintiffs, for instance, redact relevant non-hearsay statements that discuss how flock sizes were increasing, prices were dropping, and the status of state law initiatives across the country related to animal welfare.

For purposes of this Motion, Defendants present to the Court a representative sample of the redacted newsletters which illustrate the legal insufficiency of Plaintiffs' position.

***Representative Example #1.*** Plaintiffs' Exhibit 1 is a United Voices newsletter dated August 2, 1999, attached hereto as Exhibit D. Plaintiffs propose to allow the jury see the header of the newsletter and date on the first page. But Plaintiffs want to hide ***all*** of the remaining content on the first page, two-thirds of the content on the second page, and all of the content on the fourth page. (Plaintiffs'

7

proposed redactions appear in yellow highlighting in all of the exhibits attached hereto.)

Against this expansive white space, Plaintiffs want the jury to see only an article titled "Roller Coaster Egg Price Quotes." Plaintiffs' proposed redactions create a misleading impression that this United Voices newsletter was issued solely to prod "the industry to participate in a program to bring supply more closely in line with demand over the next 12 months[.]" Seen in context, it is obvious this was not the case.

For instance, the article that Plaintiffs want the jury to see references a UEP meeting that occurred in Chicago. Yet another article on the first page indicates that "20 people met this past week in Chicago to work on a safe handling label for eggs." Stripping the newsletter of this context—and leaving only the article in the middle of the newsletter as Plaintiffs would have it—creates the false impression that the sole purpose of the Chicago meeting was to discuss supply adjustment recommendations. Similarly, Plaintiffs redacted other portions of the newsletter that refer to an upcoming series of UEP meetings, where the topics included "labeling for egg cartons," "animal welfare," and "economic conditions" as "just a few of the issues to be discussed at UEP Area Meetings during the week of August 9th."

There are other non-hearsay purposes—beyond context—for the articles proposed to be redacted by Plaintiffs. One such reason is effect on the listener and notice. For example, Plaintiffs' redactions hide from the jury information about molting practices. Specifically, the redactions conceal that "UEP recommended to

8

their Animal Welfare Scientific Advisory Committee and to USDA-ARS that further research, using field conditions of the egg industry, be conducted." Defendants expect to establish that information like this was among the mix of information that producers received with updates on the Scientific Advisory Committee's progress.

*__Representative Example #2.__* Plaintiffs' Exhibit 155 is a United Voices newsletter dated March 4, 2004, attached hereto as Exhibit E. Plaintiffs propose to redact ***all*** four pages of the newsletter, other than 12 lines of text under the heading "Supply Demand" on the second page by an unnamed author.

Critical context is missing due to Plaintiffs' proposed redactions. For instance, the first page of the newsletter provides notice of avian influenza being "found in the U.S. in a small broiler flock in Southeast Texas," which also goes to the issue of egg supply; avian influenza is a highly contagious disease known to require eradication of entire flocks of egg-laying hens. The newsletter also provides information about low-carb diets, and the impact those high-protein diets have on egg consumption. This is again critical context for the jury to consider when evaluating the statements that Plaintiffs propose to rely on regarding supply and demand, particularly when the article immediately following makes the same point: that per capita egg consumption was growing year over year.

Defendants note that this United Voices newsletter makes reference to Compassion Over Killing's initiative regarding the "Animal Care Certified" logo. Consistent with this Court's ruling, *see* D.E. #297, Defendants agree that this article should be redacted in its entirety.

***Representative Example #3.*** Plaintiffs' Exhibit 129 is a United Voices newsletter dated May 12, 2005, attached hereto as Exhibit F. Plaintiffs want to purge the entirety of the four-page newsletter other than five lines of text that appear on the second page under the heading, "Have You Reduced Your Flock Size Yet?" by an unnamed author. This article states, among other things, "With current egg prices, it is likely in every egg producer's best interest to reduce their flock size." Plaintiffs' redactions on that very page create a misleading impression. Right below this article is one titled, "Less Shell Eggs for Retail Market." That article posits, "Did you know that the nation's flock size was less than 1% larger on April 1, 2005 than the same date a year ago?" The article continues, saying, "Despite such a small increase, Urner Barry's Midwest Large quote averaged 33 cents per dozen less in April 2005 than the same month of 2004." The article concludes with, "The numbers just don't add up. … So what or who is driving the current low egg prices?"

Other aspects of the newsletters provide important context. For instance, the newsletter discusses a logo contest for the Certified Program, and it encourages all "Certified companies make their retail customers aware of the program." Another article provides notice that residents of Ohio are willing to pay more for humanely treated animals. Consistent with that article, an article on the fourth page provides notice that the Humane Society of the United States was initiating a campaign to require "eggs to be produced in cage-free systems." The jury needs to see these and the rest of the articles for context around the statements Plaintiffs propose to show

10

in order to understand that article and to be better informed about the other information that UEP was transmitting contemporaneously.

***Representative Example #4***: Plaintiffs' Exhibit 400 is a United Voices newsletter dated July 5, 1999. Plaintiffs propose redacting several articles, including an article under the heading, "Europe Bans Battery Cages." But one of the proffered rationales for the UEP Certified Program was to avoid the situation in Europe, and this article presents notice of this issue to readers of the newsletter.

In their August 22, 2023 submission to the Court, Plaintiffs affirmatively designated testimony from Gene Gregory discussing this very article. *See* ECF 279-5 at 38, Plaintiffs' Deposition Designations (designating testimony at 169:23-170:19 and 171:4-24 asking Mr. Gregory to review the article under the heading "EUROPE BANS BATTERY CAGES" and asking several questions about the article and what was happening in Europe). Plaintiffs then withdrew this designation. Plaintiffs' changing positions on the testimony they propose to offer demonstrates the way they are slicing the United Voices in a way that paints an improper and misleading picture of United Voices, what was communicated through them, and why.

## V. Conclusion

For the foregoing reasons, Defendants respectfully request that the Court grant this Motion.

Dated: October 15, 2023                    Respectfully submitted,

                                           */s/ Patrick M. Otlewski*
                                           Patrick M. Collins (pcollins@kslaw.com)
                                           Livia M. Kiser (lkiser@kslaw.com)
                                           Patrick M. Otlewski (potlewski@kslaw.com)

11

Abigail Hoverman Terry (aterry@kslaw.com)
KING & SPALDING LLP
110 North Wacker Drive, 38th Floor
Chicago, IL 60606
Tel: (312) 995-6333

Lohr Beck (lohr.beck@kslaw.com)
(pro hac vice)
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel: (404) 572-2812

Brian E. Robison (brian@brownfoxlaw.com)
(pro hac vice)
BROWN FOX PLLC
6303 Cowboys Way, Suite 450
Frisco, TX 75034
Tel: (972) 707-2809

***Counsel for Defendant Cal-Maine Foods, Inc.***

| | |
|---|---|
| */s/ Robin P. Sumner* | */s/ Donald M. Barnes* |
| Robin P. Sumner (robin.sumner@troutman.com) | Donald M. Barnes (dbarnes@porterwright.com) |
| Kaitlin L. Meola (kaitlin.meola@troutman.com) | Jay L. Levine (jlevine@porterwright.com) |
| TROUTMAN PEPPER HAMILTON SANDERS LLP | PORTER, WRIGHT, MORRIS & ARTHUR LLP |
| 3000 Two Logan Square, 18th and Arch Streets | 2020 K. Street, N.W., Suite 600 |
| Philadelphia, PA 19103-2799 | Washington, D.C. 20006-1110 |
| Tel: (215) 981-4000 | Tel: (202) 778-3000 |
| | |
| Whitney R. Redding (whitney.redding@troutman.com) | James A. King (jking@porterwright.com) |
| TROUTMAN PEPPER HAMILTON SANDERS LLP | Allen T. Carter (acarter@porterwright.com) |
| Union Trust Building | PORTER, WRIGHT, MORRIS & ARTHUR LLP |
| 501 Grant Street, Suite 300 | 41 South High Street, Suite 2900 |
| Pittsburgh, PA 15219-4429 | Columbus, OH 43215 |
| Tel: (412) 454-5085 | Tel: (614) 227-2000 |

Molly DiRago
(Molly.DiRago@troutman.com)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
227 West Monroe Street, Suite 3900
Chicago, IL 60606
Tel: (312) 759-1926

***Counsel for Defendants United Egg Producers, Inc. & United States Egg Marketers, Inc.***

***Counsel for Defendant Rose Acre Farms, Inc.***