UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KRAFT FOODS GLOBAL, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 11-cv-8808 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| UNITED EGG PRODUCERS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **ORDER**

Plaintiffs' motion to exclude the testimony of Dr. Jesse David (Dckt. No. 330) is granted in part and denied in part. The punchline is that this Court will follow the same approach to defense experts that it followed for Plaintiffs' expert, Dr. Baye.

On September 19, 2023, this Court granted in part and denied in part Defendants' motion *in limine* about Dr. Baye. *See* 9/19/23 Order (Dckt. No. 300). The Court placed certain limits on the testimony, such as prohibiting Plaintiffs' expert (and, by extension, Defendants' experts) from opining about knowledge, intent, motivations, and so on. But the Court gave the parties wide boundaries to present economic analysis of the underlying events.

Plaintiffs now move to exclude certain testimony from Dr. David, the expert for Rose Acre. Out of the box, Plaintiffs point to the last paragraph in the section of his report that summarized his conclusions.

Dr. David concluded that "Rose Acre pursued a business strategy consistent with its unilateral self-interest – *i.e.*, producing the greatest number of eggs that it could." *See* David Expert Report, at ¶ 7 (Dckt. No. 330-1). He opined that his findings are "inconsistent with allegations by Plaintiffs and their experts that Rose Acre acted contrary to its unilateral self-interest and participated in a conspiracy to 'restrict supply.'" *Id.*

Stopping there for a moment, that opinion is fair game. And so is the opposite opinion. Dr. Baye can testify that the actions of Defendants were inconsistent with acting in their unilateral self-interest. And on the flipside, defense experts can testify that the actions of Defendants were consistent with acting in their unilateral self-interest. Each side can offer opinion testimony on that subject.

Plaintiffs then point to passages from Dr. David's report that seem to opine about Rose Acre's motivations. For example, Dr. David opined that "Rose Acre joined UEP and complied with the UEP standards . . . in order to meet demand for the UEP certification from its customers and as a response to pressure from animal rights groups." *Id.*

The jury does not need an expert to opine about why a party did what it did, or about a party's motivations, intent, or knowledge generally. The jury can hear testimony on those topics from fact witnesses, and an expert is unlikely to have any specialized knowledge on those areas that would help the jury.

In its response, Rose Acre stated that it indicated to Plaintiffs, before Plaintiffs filed the motion, that "Rose Acre does not intend to present Dr. David in a manner that violates this Court's order." *See* Def.'s Resp., at 2 (Dckt. No. 332).

Suffice it to say that the Court will take an even-handed approach, and apply the same rules to each side. The experts can testify about whether the conduct was consistent with their unilateral self-interest (as Defendants contend), or was consistent with the existence of a conspiracy (as Plaintiffs contend). But the experts should not get into the motivations, intent, or knowledge of the parties.

Overall, the Court expects that this issue will work itself out when the expert witnesses are on the witness stand. The Court doesn't expect any problems when the time comes.

This Court assumes that the parties do not need any additional guidance before opening statements. But if so, they should say so.

The Court makes two final points.

First, Plaintiffs object to any testimony about Rose Acre's current practices. This Court does not see the relevance of testimony about practices after 2012, because Plaintiffs aren't seeking damages after 2012. If the Court is missing something, Rose Acre should explain what it is.

Second, Rose Acre argues that Plaintiffs' motion is far too late, because the deadline for *Daubert* motions has long since passed. The Court fully appreciates the lateness of the hour, as the parties are on the courthouse steps on the eve of trial. Even so, the Court reads Plaintiffs' motion to simply ask this Court to apply the same standard to all experts from both sides. What's good for the goose is good for the gander.

Date:   October 16, 2023

Steven C. Seeger
United States District Judge