# ATTACHMENT 39

HIGHLY CONFIDENTIAL

Marshall, Gregory Dean					March 18, 2014

                                                                                   1

IN THE DISTRICT COURT OF WAYNDOTTE COUNTY,

KANSAS

TWENTY-NINTH JUDICIAL DISTRICT

_____

ASSOCIATED WHOLESALE GROCERS,

INC., et al.,

       Plaintiffs,			Case No.

  V.						10CV2171

UNITED EGG PRODUCERS, et al.,	HIGHLY

       Defendants.			CONFIDENTIAL

_____

                                   Volume I

                                   Washington, D.C.

                                   March 18, 2014

        The deposition of GREGORY DEAN

MARSHALL was convened on Tuesday, March 18,

2014, commencing at 4:27 a.m., at the offices of

Porter Wright, 1900 K Street, Northwest

Washington, D.C., before Paula G. Satkin,

Registered Professional Reporter and Notary

Public.

## Page 2

APPEARANCES:

On behalf of the Plaintiffs:
    PATRICK J. STUEVE, ESQ.
    DAVID A. HICKEY, ESQ.
    Stueve Siegel Hanson LLP
    460 Nichols Road, Suite 200
    Kansas City, Missouri 64112
    (816) 714-7100

On behalf of Rose Acre Farms:
    JOHN C. MONICA, JR., ESQ.
    MOLLY CRABTREE, ESQ.
    Porter, Wright, Morris & Arthur LLP
    1900 K Street, NW
    Suite 1110
    Washington, DC 20006
    (202) 778-3000

## Page 3

A P P E A R A N C E S  (Cont'd)

ALSO PRESENT:
    JOSEPH A. MILLER
    General Counsel, Rose Acre Farms, Inc.

## Page 4

E X A M I N A T I O N

By Mr. Stueve    7

E X H I B I T S

| Exhibit No. | Page No. |
|---|---|
| Exhibit 596 (Previously Marked) | 9 |
| Exhibit 597 Document Bates stamped RAFKS 0009762 | 13 |
| Exhibit 598 Consolidated Financial Statement 12/99 | 17 |

## Page 5

P R O C E E D I N G S

    THE VIDEOGRAPHER: This is media unit number one of the videotaped deposition of Mr. Greg Marshall on behalf of Rose Acre Farms, Incorporated in the matter of Associated Wholesale Grocers, Incorporated, et al. Plaintiffs versus United Egg Producers, et al., Defendants in the District Court of Wayndotte County, Kansas, 29th Judicial District, Case Number 10CV2171.

    This deposition is being held at Porter Wright Morris & Arthur LLP located at 1900 K Street, Northwest, Washington, D.C. on March 18, 2014 at approximately 4:28 p.m.

    My name is Steve Decanio from the firm of Henderson Legal Services. I am the legal video specialist.

    The court reporter is Paula Satkin in association with Henderson Legal Services located at 1015 Fifteenth Street, Northwest, Washington, D.C.

    For the record, will counsel

Page 6

1  please introduce themselves.
2         MR. STUEVE:  Patrick Stueve of
3  Stueve Siegel Hanson firm here on behalf of the
4  Plaintiffs.  Along with me is David Hickey.
5         MR. MONICA:  John Monica from
6  Porter Wright representing Rose Acre Farms, Inc.
7  With me is my colleague, Molly Crabtree, and
8  also Rose Acre's general counsel, Joe Miller.
9         Is anyone on the phone?  Hearing
10 no one I'm going to hang up.  Is that okay,
11 counsel?
12        MR. STUEVE:  Yes.
13        THE VIDEOGRAPHER:  Now will the
14 court reporter please swear or affirm in the
15 witness.
16 Whereupon --
17
18        GREGORY DEAN MARSHALL
19 a witness, called for examination, having been
20 first duly sworn, was examined and testified as
21 follows:
22        EXAMINATION BY COUNSEL FOR PLAINTIFF

Page 7

1  BY MR. STUEVE:
2     Q.  Mr. Marshall, my name is Patrick
3  Stueve.  I met you for the first time just
4  before this deposition; is that right, sir?
5     A.  Correct.
6     Q.  Can you state your full name for
7  the record and where you reside?
8     A.  Gregory Dean Marshall in Seymour,
9  Indiana.
10    Q.  And that's the location of the
11 headquarters of Rose Acre; is that correct, sir?
12    A.  That's correct.
13    Q.  The purpose of this deposition is
14 it to ask you questions about topic 29 in
15 Exhibit 517.  Do you have topic 29 in front of
16 you?
17    A.  Yes.  I do.
18    Q.  Okay.  What did you do to prepare
19 to respond to topic 29?
20    A.  I met with counsel and also as
21 part of my job, I live it every day.
22    Q.  Is it your job to prepare the

Page 8

1  financial records of Rose Acre?
2     A.  Prepare or oversee those who do
3  prepare.
4     Q.  Okay.  And what is your title?
5     A.  CFO.
6     Q.  How long have you held that
7  position?
8     A.  Approximately five years.
9     Q.  Prior to that did you have a
10 position with Rose Acre?
11    A.  Yes.  I did.  It was senior
12 financial analyst.
13    Q.  Okay.  How long did you hold that
14 position?
15    A.  About 15 years.
16    Q.  Okay.  And when did you join Rose
17 Acre?
18    A.  January of 1995.
19    Q.  Okay.  So did you have any other
20 positions other than the two that you identified
21 while you've been at Rose Acre?
22    A.  No.

Page 9

1     Q.  Okay.  Were you responsible for
2  collecting the financial documents that have
3  been provided to counsel that have been produced
4  to us in this case?
5     A.  Yes.
6     Q.  And can you tell me the categories
7  of financial documents that you collected?
8     A.  Financial statements that are
9  prepared on a monthly basis and then also our
10 daily production records, as we call them.
11    Q.  Did you collect and produce any
12 audited financial statements?
13    A.  Yes.
14    Q.  And any others?
15    A.  I don't believe so.  No.
16    Q.  Okay.  Let me show you what's been
17 previously marked as 596.
18        (Exhibit Number 596 was previously
19 marked for identification.)
20 BY MR. STUEVE:
21    Q.  If you look over on RA, the Bates
22 range numbers down here, and the last two digits

### Page 10

1   is 92, so it's the second page in.
2   　　A.　Okay.
3   　　Q.　Did you prepare this document?
4   　　A.　Yes.
5   　　Q.　And what was the purpose of your
6   preparation of this document?
7   　　A.　92?
8   　　Q.　Yes.
9   　　A.　It looks like a comparison of the
10  individual layer farms as part of our layer farm
11  budget summary.
12  　　Q.　And would you prepare this on an
13  annual basis?
14  　　A.　No.
15  　　Q.　Why did you prepare this in August
16  of 2006?
17  　　A.　I'm not sure I can answer that.
18  　　Q.　Okay. The -- if you would, there
19  is on page 93, what is the -- what are you
20  comparing here, sir?
21  　　A.　Looks like various production
22  records for a given period, cage space

### Page 11

1   utilization, number of layers, dozens produced.
2   　　Q.　And is this a document that you
3   would keep updating on an annual basis?
4   　　A.　I don't believe so. No.
5   　　Q.　Was it prepared specifically for
6   the Rose Acre Farm, Inc. layer farm budget
7   summary, fiscal 2001 to 2006?
8   　　A.　Yes.
9   　　Q.　Have you prepared similar analysis
10  since August of 2006?
11  　　A.　No.
12  　　Q.　If you look down at the middle of
13  the page it says dozens sold. It says average
14  per dozen. Was that the average price per dozen
15  for fiscal year 1993 through '98?
16  　　A.　Yes.
17  　　Q.　And where would you have collected
18  that data from?
19  　　A.　It would have been collected from
20  our internal financial statements.
21  　　Q.　And where from your internal
22  financial statements would you have located that

### Page 12

1   information?
2   　　A.　On the income statement.
3   　　Q.　Okay. And it shows that the
4   average per dozen ranged from $0.61 -- excuse
5   me. $0.63 in '97 to a low of $0.47 in '95; is
6   that right?
7   　　A.　Correct.
8   　　Q.　Now, the average price per dozen
9   grew significantly in the 2000s; did it not?
10  　　　MR. MONICA: Objection.
11  　　　THE WITNESS: Yes. It did.
12  BY MR. STUEVE:
13  　　Q.　Okay. And do you know what the
14  high has been?
15  　　A.　I do not know off the top of my
16  head.
17  　　Q.　It would be over a dollar per
18  dozen; would it not?
19  　　A.　Yes. That being said, I would
20  also like to add that expenses went up
21  significantly in the 2000s, as well, with grain
22  prices.

### Page 13

1   　　Q.　Let me show you this next
2   document.
3   　　　(Exhibit Number 597 was marked for
4   identification.)
5   BY MR. STUEVE:
6   　　Q.　597. It is Bates range RAFKS
7   0009762. Do you remember preparing Exhibit 597?
8   　　A.　Yes.
9   　　Q.　And why were you providing this
10  information to Steve Paul?
11  　　A.　We provided this information to
12  Mr. Paul because we were looking at going
13  together with two or three other partners in an
14  effort to do a business combination leaning
15  toward the public markets.
16  　　Q.　And can you tell me about that
17  business combination, sir?
18  　　A.　It was a discussion that was had
19  with various parties and essentially fell apart
20  due to various Boards of the individual
21  companies deciding not to go forward with it.
22  　　Q.　When were those discussions held?

HIGHLY CONFIDENTIAL

Marshall, Gregory Dean                    March 18, 2014

5 (Pages 14 to 17)

---

Page 14

   A.   It would have been sometime in the 2010/2011 range.
   Q.   And did you prepare any other financial analysis other than Exhibit 597 as a part of that process?
   A.   Yes. I did.
   Q.   What did you prepare?
   A.   Several financial analysis looking at the various business combination possibilities, accumulations.
   Q.   Did you -- did you in there discuss the profitability for financial performance of Rose Acre?
   A.   No.
   Q.   Would the financial performance of Rose Acre been reflected in any of your analyses?
   A.   Yes.
   Q.   How would you have reflected those?
   A.   Essentially they were just business -- they were accumulations of the

---

Page 15

various businesses and what the combined totals would look like.
   Q.   So as a result -- as a part of that you would have had to have included the financial performance of Rose Acre?
   A.   Yes.
   Q.   What years did you use?
   A.   I don't know off the top of my head.
   Q.   Was it multiple years or?
   A.   It was probably two years.
   Q.   Okay. What was the name of the document that you prepared?
   A.   I don't remember off the top of my head.
   Q.   Okay. Who did you provide it to?
   A.   It was an internal document that was provided to probably Marcus Rust.
   Q.   Have you provided that to counsel for Rose Acre in this case?
   A.   No.
   Q.   Does it still exist?

---

Page 16

   A.   Yes.
   Q.   Okay. You state in here that fiscal 2008, 2009 and 2010 all had high average egg markets and profitability throughout the industry was expected. Do you see that?
   A.   Uh-huh.
   Q.   When you say that profitability throughout the industry was expected, what did you mean by that, Mr. Marshall?
   A.   I think I was probably just referring to the fact that there were high egg markets.
   Q.   When you mean high egg markets, you're talking about high Urner Barry prices; is that correct?
   A.   Prices. Correct.
   Q.   And then you say, however, when I look at the Mason Dixon financial statements RAF makes up 60.7 percent of combined net income for 2008. Do you see that?
   A.   Yes.
   Q.   Is that in comparison to one of

---

Page 17

the other partners?
   A.   I believe that would be comparative to all the other partners combined.
   Q.   Okay.
       (Exhibit Number 598 was marked for identification.)
BY MR. STUEVE:
   Q.   Let me show you -- let me ask you this, referring back to 597, what has been the profitability of Rose Acre in 2011 and 2012?
   A.   2011 we lost about $4.5 million. 2012 I believe we lost right around $16 million.
   Q.   And is that the result in part on lower Urner Barry market prices?
   A.   More so on the expense side and higher input costs with grain.
   Q.   But have there also been lower Urner Barry market prices in 2011 and 2012?
   A.   Actually, the markets have been very high.
   Q.   They have been?
   A.   Yes.

---

18

1  Q. So when you say very high, what do
2  you mean by that, that range?
3  **A. I don't know top of my head, but I**
4  **believe in 2012 the market averaged somewhere**
5  **around $1.25, $1.30.**
6  Q. What about 2011?
7  **A. Right around the same area.**
8  Q. Now, let me show you what's been
9  marked as 598.
10      This is Bates range -- I don't
11 need to do that, there's nobody else on. Good.
12      This is the consolidated financial
13 statement and supporting schedules December '99.
14 Do you see that?
15  **A. Yes.**
16  Q. And then what we've done -- I
17 would go ahead and mark all the rest of them.
18      In this consolidated financials,
19 would this be where you would look to if you
20 wanted to determine the profitability of Rose
21 Acre for the calendar year December 1999 --
22 excuse me. The calendar year 1999?

19

1  **A. No, because we're not a calendar**
2  **year company.**
3  Q. Okay. So this is the consolidated
4  financial statement and supporting schedule
5  December '99. Do you see that?
6  **A. Yes.**
7  Q. So this does not reflect the last
8  12 months performance?
9  **A. No. This would be six months.**
10  Q. Okay. So where would you look to
11 determine the profitability of Rose Acre for the
12 last 12 months?
13  **A. The last 12 months?**
14  Q. Yeah. So when -- at your year
15 end, using your calendar year?
16  **A. Yes.**
17  Q. What financial statement would you
18 look at to determine whether or not for that
19 fiscal year you had a profit or loss?
20  **A. It would be the June statement.**
21  Q. Okay. And would that be true for
22 every year starting in 1999 up through the

20

1  present?
2  **A. Yes.**
3  Q. Okay. Any other document you
4  would look to to determine the fiscal year
5  financial profitability other than the
6  consolidated financial statement and supporting
7  schedules?
8  **A. No.**
9  Q. So the -- just to be clear. So
10 the -- your fiscal year has always ended at the
11 end of June of each year?
12  **A. Actually, it ends on the last**
13 **Thursday of June each year.**
14  Q. Okay. So on those consolidated
15 financials, if we look to June, for example,
16 this year -- if we look to June of 2000, would
17 that give us the fiscal year summary that we're
18 looking for as far as profitability?
19  **A. Yes.**
20  Q. All right. Do you have anything
21 else to offer as far as where the profitability
22 under topic 29, annual profitability financial

21

1  performance, do you have anything else to add as
2  far as where the information concerning that
3  would be found other than what you just
4  testified to?
5  **A. No.**
6      MR. STUEVE: I have no further
7  questions.
8      MR. MONICA: Okay. I have none.
9      MR. STUEVE: Okay.
10     MR. MONICA: Off the record.
11     THE VIDEOGRAPHER: This concludes
12 the videotaped deposition of Mr. Greg Marshall
13 on behalf of Rose Acre Farms, Incorporated.
14 There's a total of one volume consisting of one
15 media unit. The time is 4:45 p.m. and we are
16 going off the record.
17     (Signature not waived.)
18     (Whereupon, at 4:45 p.m., the
19 deposition was concluded.)
20       - - - - -
21
22

HIGHLY CONFIDENTIAL

Marshall, Gregory Dean  March 18, 2014

7 (Pages 22 to 23)

22

ACKNOWLEDGMENT OF DEPONENT

I do hereby acknowledge that I have read and examined the foregoing of the transcript of my deposition and that:

(Check appropriate box):

( ) the same is a true, correct and complete transcription of the answers given by me to the questions therein recorded.

( ) except for the changes noted in the attached errata sheet, the same is a true, correct and complete transcription of the answers given by me to the questions therein recorded.

_____  _____
DATE            SIGNATURE

23

CERTIFICATE OF NOTARY PUBLIC

I, Paula G. Satkin, the officer before whom the foregoing proceedings were taken, do hereby certify that the witness whose testimony appears in the foregoing proceeding was duly sworn by me; that the testimony of said witness was taken by me in stenotype and thereafter reduced to typewriting under my direction; that said proceedings is a true record of the testimony given by said witness; that I am neither counsel for, related to, nor employed by any of the parties to the action in which these proceedings were taken; and, further, that I am not a relative or employee of any attorney or counsel employed by the parties hereto, nor financially or otherwise interested in the outcome of the action.

My commission expires November 14, 2015.

_____
PAULA G. SATKIN
Notary Public in and for the
District of Columbia

**A**
$0.47 12:5
$0.61 12:4
$0.63 12:5
$1.25 18:5
$1.30 18:5
$16 17:12
$4.5 17:11
a.m 1:17
accumulations 14:10,22
acknowledge 22:3
ACKNOWLE... 22:1
Acre 2:11 3:5 5:4 6:6 7:11 8:1,10,17,21 11:6 14:13,16 15:5,20 17:10 18:21 19:11 21:13
Acre's 6:8
action 23:12,17
add 12:20 21:1
affirm 6:14
ahead 18:17
al 1:6,9 5:6,7
analyses 14:17
analysis 11:9 14:4,8
analyst 8:12
annual 10:13 11:3 20:22
answer 10:17
answers 22:10 22:16
apart 13:19
APPEARAN... 2:1
appears 23:4
appropriate 22:7
approximately 5:14 8:8
area 18:7
Arthur 2:14 5:12
Associated 1:5 5:5
association 5:19
attached 22:14
attorney 23:14
audited 9:12
August 10:15 11:10
average 11:13 11:14 12:4,8 16:3
averaged 18:4

**B**
B 4:7
back 17:9
Barry 16:14 17:14,18
basis 9:9 10:13 11:3
Bates 4:10 9:21 13:6 18:10
behalf 2:3,11 5:4 6:3 21:13
believe 9:15 11:4 17:2,12 18:4
Boards 13:20
box 22:7
budget 10:11 11:6
business 13:14 13:17 14:9,22
businesses 15:1

**C**
C 2:12 3:1 5:1
cage 10:22
calendar 18:21 18:22 19:1,15
call 9:10
called 6:19
case 1:7 5:9 9:4 15:20
categories 9:6
CERTIFICA... 23:1
certify 23:4
CFO 8:5
changes 22:13
Check 22:7
City 2:8
clear 20:9
colleague 6:7
collect 9:11
collected 9:7 11:17,19
collecting 9:2
Columbia 23:22
combination 13:14,17 14:9
combined 15:1 16:19 17:3
commencing 1:17
commission 23:18
companies 13:21
company 19:2
comparative 17:3
comparing 10:20
comparison 10:9 16:22
complete 22:10 22:15
concerning 21:2
concluded 21:19
concludes 21:11
CONFIDENT... 1:10
consisting 21:14
consolidated 4:12 18:12,18 19:3 20:6,14
Cont'd 3:1
convened 1:16
correct 7:5,11 7:12 12:7 16:15,16 22:9 22:15
costs 17:16
counsel 3:5 5:22 6:8,11,22 7:20 9:3 15:19 23:10,14
County 1:1 5:9
court 1:1 5:8,18 6:14
Crabtree 2:13 6:7

**D**
D 5:1
D.C 1:13,19 5:13,21
daily 9:10
data 11:18
DATE 22:22
David 2:5 6:4
day 7:21
DC 2:17
Dean 1:15 6:18 7:8
Decanio 5:15
December 18:13 18:21 19:5
deciding 13:21
Defendants 1:10
5:8
DEPONENT 22:1
deposition 1:15 5:3,11 7:4,13 21:12,19 22:5
determine 18:20 19:11,18 20:4
digits 9:22
direction 23:8
discuss 14:12
discussion 13:18
discussions 13:22
District 1:1,3 5:8,9 23:22
Dixon 16:18
document 4:10 10:3,6 11:2 13:2 15:13,17 20:3
documents 9:2,7
dollar 12:17
dozen 11:14,14 12:4,8,18
dozens 11:1,13
due 13:20
duly 6:20 23:5

**E**
E 3:1,1 4:1,7 5:1 5:1
effort 13:14
egg 1:9 5:7 16:4 16:11,13
employed 23:11 23:15
employee 23:14
ended 20:10
ends 20:12
errata 22:14
ESQ 2:4,5,12,13

HIGHLY CONFIDENTIAL

Marshall, Gregory Dean                                     March 18, 2014

2

| | | | | |
|---|---|---|---|---|
| **essentially** 13:19 14:21<br>**et** 1:6,9 5:6,7<br>**examination** 6:19,22<br>**examined** 6:20 22:4<br>**example** 20:15<br>**excuse** 12:4 18:22<br>**Exhibit** 4:8,9,10 4:12 7:15 9:18 13:3,7 14:4 17:5<br>**exist** 15:22<br>**expected** 16:5,8<br>**expense** 17:15<br>**expenses** 12:20<br>**expires** 23:18<br>———— **F** ————<br>**fact** 16:11<br>**far** 20:18,21 21:2<br>**farm** 10:10 11:6 11:6<br>**farms** 2:11 3:5 5:4 6:6 10:10 21:13<br>**fell** 13:19<br>**Fifteenth** 5:20<br>**financial** 4:12 8:1,12 9:2,7,8 9:12 11:20,22 14:4,8,12,15 15:5 16:18 18:12 19:4,17 20:5,6,22<br>**financially** 23:15<br>**financials** 18:18 20:15 | **firm** 5:16 6:3<br>**first** 6:20 7:3<br>**fiscal** 11:7,15 16:3 19:19 20:4,10,17<br>**five** 8:8<br>**follows** 6:21<br>**foregoing** 22:4 23:3,5<br>**forward** 13:21<br>**found** 21:3<br>**front** 7:15<br>**full** 7:6<br>**further** 21:6 23:13<br>———— **G** ————<br>**G** 1:19 5:1 23:2 23:20<br>**general** 3:5 6:8<br>**give** 20:17<br>**given** 10:22 22:10,16 23:10<br>**go** 13:21 18:17<br>**going** 6:10 13:12 21:16<br>**Good** 18:11<br>**grain** 12:21 17:16<br>**Greg** 5:4 21:12<br>**Gregory** 1:15 6:18 7:8<br>**grew** 12:9<br>**Grocers** 1:5 5:6<br>———— **H** ————<br>**H** 4:7<br>**hang** 6:10<br>**Hanson** 2:6 6:3<br>**head** 12:16 15:9 15:15 18:3<br>**headquarters** 7:11 | **Hearing** 6:9<br>**held** 5:11 8:6 13:22<br>**Henderson** 5:16 5:19<br>**hereto** 23:15<br>**Hickey** 2:5 6:4<br>**high** 12:14 16:3 16:11,13,14 17:20 18:1<br>**higher** 17:16<br>**HIGHLY** 1:9<br>**hold** 8:13<br>———— **I** ————<br>**identification** 9:19 13:4 17:6<br>**identified** 8:20<br>**included** 15:4<br>**income** 12:2 16:19<br>**Incorporated** 5:5,6 21:13<br>**Indiana** 7:9<br>**individual** 10:10 13:20<br>**industry** 16:5,8<br>**information** 12:1 13:10,11 21:2<br>**input** 17:16<br>**interested** 23:16<br>**internal** 11:20 11:21 15:17<br>**introduce** 6:1<br>———— **J** ————<br>**J** 2:4<br>**January** 8:18<br>**job** 7:21,22<br>**Joe** 6:8<br>**John** 2:12 6:5<br>**join** 8:16 | **JOSEPH** 3:4<br>**JR** 2:12<br>**Judicial** 1:3 5:9<br>**June** 19:20 20:11,13,15,16<br>———— **K** ————<br>**K** 1:18 2:15 5:13<br>**Kansas** 1:2 2:8 5:9<br>**keep** 11:3<br>**know** 12:13,15 15:8 18:3<br>———— **L** ————<br>**layer** 10:10,10 11:6<br>**layers** 11:1<br>**leaning** 13:14<br>**legal** 5:16,17,19<br>**live** 7:21<br>**LLP** 2:6,14 5:12<br>**located** 5:12,20 11:22<br>**location** 7:10<br>**long** 8:6,13<br>**look** 9:21 11:12 15:2 16:18 18:19 19:10,18 20:4,15,16<br>**looking** 13:12 14:8 20:18<br>**looks** 10:9,21<br>**loss** 19:19<br>**lost** 17:11,12<br>**low** 12:5<br>**lower** 17:14,17<br>———— **M** ————<br>**M** 4:1<br>**March** 1:14,16 5:14<br>**Marcus** 15:18 | **mark** 18:17<br>**marked** 4:9 9:17 9:19 13:3 17:5 18:9<br>**market** 17:14,18 18:4<br>**markets** 13:15 16:4,12,13 17:19<br>**Marshall** 1:16 5:4 6:18 7:2,8 16:9 21:12<br>**Mason** 16:18<br>**matter** 5:5<br>**mean** 16:9,13 18:2<br>**media** 5:2 21:15<br>**met** 7:3,20<br>**middle** 11:12<br>**Miller** 3:4 6:8<br>**million** 17:11,12<br>**Missouri** 2:8<br>**Molly** 2:13 6:7<br>**Monica** 2:12 6:5 6:5 12:10 21:8 21:10<br>**monthly** 9:9<br>**months** 19:8,9 19:12,13<br>**Morris** 2:14 5:12<br>**multiple** 15:10<br>———— **N** ————<br>**N** 3:1 4:1,1 5:1<br>**name** 5:15 7:2,6 15:12<br>**need** 18:11<br>**neither** 23:10<br>**net** 16:19<br>**Nichols** 2:7<br>**Northwest** 1:18 |

   5:13,20
**Notary** 1:20
   23:1,21
**noted** 22:13
**November**
   23:18
**number** 5:3,10
   9:18 11:1 13:3
   17:5
**numbers** 9:22
**NW** 2:15

**O**

**O** 4:1 5:1
**Objection** 12:10
**offer** 20:21
**officer** 23:2
**offices** 1:17
**okay** 6:10 7:18
   8:4,13,16,19
   9:1,16 10:2,18
   12:3,13 15:12
   15:16 16:2
   17:4 19:3,10
   19:21 20:3,14
   21:8,9
**outcome** 23:16
**oversee** 8:2

**P**

**P** 3:1,1 5:1
**p.m** 5:14 21:15
   21:18
**page** 4:8 10:1,19
   11:13
**part** 7:21 10:10
   14:5 15:3
   17:13
**parties** 13:19
   23:12,15
**partners** 13:13
   17:1,3
**Patrick** 2:4 6:2

   7:2
**Paul** 13:10,12
**Paula** 1:19 5:18
   23:2,20
**percent** 16:19
**performance**
   14:13,15 15:5
   19:8 21:1
**period** 10:22
**phone** 6:9
**PLAINTIFF**
   6:22
**Plaintiffs** 1:7
   2:3 5:7 6:4
**please** 6:1,14
**Porter** 1:18 2:14
   5:12 6:6
**position** 8:7,10
   8:14
**positions** 8:20
**possibilities**
   14:10
**preparation**
   10:6
**prepare** 7:18,22
   8:2,3 10:3,12
   10:15 14:3,7
**prepared** 9:9
   11:5,9 15:13
**preparing** 13:7
**present** 3:3 20:1
**previously** 4:9
   9:17,18
**price** 11:14 12:8
**prices** 12:22
   16:14,16 17:14
   17:18
**Prior** 8:9
**probably** 15:11
   15:18 16:10
**proceeding** 23:5
**proceedings**

   23:3,9,12
**process** 14:5
**produce** 9:11
**produced** 9:3
   11:1
**Producers** 1:9
   5:7
**production** 9:10
   10:21
**Professional**
   1:20
**profit** 19:19
**profitability**
   14:12 16:4,7
   17:10 18:20
   19:11 20:5,18
   20:21,22
**provide** 15:16
**provided** 9:3
   13:11 15:18,19
**providing** 13:9
**public** 1:21
   13:15 23:1,21
**purpose** 7:13
   10:5

**Q**

**questions** 7:14
   21:7 22:11,16

**R**

**R** 3:1 5:1
**RA** 9:21
**RAF** 16:18
**RAFKS** 4:11
   13:6
**range** 9:22 13:6
   14:2 18:2,10
**ranged** 12:4
**read** 22:3
**record** 5:22 7:7
   21:10,16 23:9
**recorded** 22:11

   22:17
**records** 8:1 9:10
   10:22
**reduced** 23:7
**referring** 16:11
   17:9
**reflect** 19:7
**reflected** 14:16
   14:19
**Registered** 1:20
**related** 23:11
**relative** 23:14
**remember** 13:7
   15:14
**reporter** 1:20
   5:18 6:14
**representing** 6:6
**reside** 7:7
**respond** 7:19
**responsible** 9:1
**rest** 18:17
**result** 15:3
   17:13
**right** 7:4 12:6
   17:12 18:7
   20:20
**Road** 2:7
**Rose** 2:11 3:5
   5:4 6:6,8 7:11
   8:1,10,16,21
   11:6 14:13,16
   15:5,20 17:10
   18:20 19:11
   21:13
**Rust** 15:18

**S**

**S** 3:1 4:7 5:1
**Satkin** 1:19 5:18
   23:2,20
**says** 11:13,13
**schedule** 19:4

**schedules** 18:13
   20:7
**second** 10:1
**see** 16:5,20
   18:14 19:5
**senior** 8:11
**Services** 5:16,19
**Seymour** 7:8
**sheet** 22:14
**show** 9:16 13:1
   17:8 18:8
**shows** 12:3
**side** 17:15
**Siegel** 2:6 6:3
**Signature** 21:17
   22:22
**significantly**
   12:9,21
**similar** 11:9
**sir** 7:4,11 10:20
   13:17
**six** 19:9
**sold** 11:13
**space** 10:22
**specialist** 5:17
**specifically** 11:5
**stamped** 4:10
**starting** 19:22
**state** 7:6 16:2
**statement** 4:12
   12:2 18:13
   19:4,17,20
   20:6
**statements** 9:8
   9:12 11:20,22
   16:18
**stenotype** 23:7
**Steve** 5:15 13:10
**Street** 1:18 2:15
   5:13,20
**Stueve** 2:4,6 4:2
   6:2,2,3,12 7:1

7:3 9:20 12:12
13:5 17:7 21:6
21:9
**Suite** 2:7,16
**summary** 10:11
11:7 20:17
**supporting**
18:13 19:4
20:6
**sure** 10:17
**swear** 6:14
**sworn** 6:20 23:5

**T**

**T** 4:1,7
**taken** 23:3,6,13
**talking** 16:14
**tell** 9:6 13:16
**testified** 6:20
21:4
**testimony** 23:4
23:6,9
**think** 16:10
**three** 13:13
**Thursday** 20:13
**time** 7:3 21:15
**title** 8:4
**top** 12:15 15:8
15:14 18:3
**topic** 7:14,15,19
20:22
**total** 21:14
**totals** 15:1
**transcript** 22:4
**transcription**
22:10,15
**true** 19:21 22:9
22:14 23:9
**Tuesday** 1:16
**TWENTY-NI...**
1:3
**two** 8:20 9:22

13:13 15:11
**typewriting**
23:8

**U**

**Uh-huh** 16:6
**unit** 5:3 21:15
**United** 1:9 5:7
**updating** 11:3
**Urner** 16:14
17:14,18
**use** 15:7
**utilization** 11:1

**V**

**V** 1:8
**various** 10:21
13:19,20 14:9
15:1
**versus** 5:7
**video** 5:17
**VIDEOGRAP...**
5:2 6:13 21:11
**videotaped** 5:3
21:12
**volume** 1:12
21:14

**W**

**waived** 21:17
**wanted** 18:20
**Washington**
1:13,19 2:17
5:13,21
**Wayndotte** 1:1
5:8
**we're** 19:1 20:17
**we've** 18:16
**went** 12:20
**Wholesale** 1:5
5:6
**witness** 6:15,19
12:11 23:4,6

23:10
**Wright** 1:18
2:14 5:12 6:6

**X**

**X** 4:1,7

**Y**

**Yeah** 19:14
**year** 11:15
18:21,22 19:2
19:14,15,19,22
20:4,10,11,13
20:16,17
**years** 8:8,15
15:7,10,11

**Z**

**0**

**0009762** 4:11
13:7

**1**

**1015** 5:20
**10CV2171** 1:8
5:10
**1110** 2:16
**12** 19:8,12,13
**12/99** 4:13
**13** 4:10
**14** 23:18
**15** 8:15
**17** 4:12
**18** 1:14,16 5:14
**1900** 1:18 2:15
5:13
**1993** 11:15
**1995** 8:18
**1999** 18:21,22
19:22

**2**

**200** 2:7
**2000** 20:16
**20006** 2:17
**2000s** 12:9,21
**2001** 11:7
**2006** 10:16 11:7
11:10
**2008** 16:3,20
**2009** 16:3
**2010** 16:3
**2010/2011** 14:2
**2011** 17:10,11
17:18 18:6
**2012** 17:10,12
17:18 18:4
**2014** 1:14,17
5:14
**2015** 23:18
**202** 2:18
**29** 7:14,15,19
20:22
**29th** 5:9

**3**

**4**

**4:27** 1:17
**4:28** 5:14
**4:45** 21:15,18
**460** 2:7

**5**

**517** 7:15
**596** 4:9 9:17,18
**597** 4:10 13:3,6
13:7 14:4 17:9
**598** 4:12 17:5
18:9

**6**

**60.7** 16:19
**64112** 2:8

**7**

**7** 4:2
**714-7100** 2:9
**778-3000** 2:18

**8**

**816** 2:9

**9**

**9** 4:9
**92** 10:1,7
**93** 10:19
**95** 12:5
**97** 12:5
**98** 11:15
**99** 18:13 19:5