UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KRAFT FOODS GLOBAL, INC., THE KELLOGG COMPANY, GENERAL MILLS, INC., and NESTLÉ USA, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:11-cv-08808 |
| v. | ) ) | Judge Steven C. Seeger |
| UNITED EGG PRODUCERS, INC., UNITED STATES EGG MARKETERS, INC., CAL-MAINE FOODS, INC., and ROSE ACRE FARMS, INC. | ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION TO PRECLUDE
DEFENDANTS' MITIGATION EVIDENCE**

Defendants have disclosed an intention to attempt to prove Plaintiffs should have pursued grain-based contract pricing, rather than pricing based on egg prices; should have purchased from others or at different prices; or should have substituted other raw materials for eggs in their products. This testimony is designed to lessen or avoid damage. As a result, it is mitigation evidence. Plaintiffs move to preclude Defendants from offering testimony or exhibits that is relevant, if at all, to mitigation of damages.

First, courts have held that mitigation is not an available defense in a horizontal case such as this. Second, even if mitigation is an issue that may be tried, it is a damages phase issue and is not proper evidence in the first phase of this trial. The law could not be clearer. Defendants' own proposed instruction, and the ABA pattern instruction on which it is based, treat mitigation as a damages issue. Defendants even proposed their mitigation instruction for the second phase of trial. Having convinced this Court to bifurcate the trial Defendants must live with the consequences. One of those consequences is that mitigation of damages is a phase two issue.

**Background**

***The Conspiracy's Actions Affected Egg Prices and Contracts Tied To a Price Index.*** The theory of Plaintiffs' case is that Defendants conspired to reduce the supply of eggs, thereby increasing the price paid by purchasers of eggs and egg products. Large purchasers, such as Plaintiffs, entered into contracts with suppliers to govern their purchases of egg products over a defined time period. The prices on many of those contracts floated to allow each side of the contract to gain the benefit or avoid the burden of economic conditions that affected the price.

Many contracts were written to float with the "Urner-Barry" index, a commercially published index of egg prices relevant to the products Plaintiffs bought. The damage claim in this case quantifies the increase in the Urner-Barry index, over time, compared to what the index would have been had the conspiracy not reduce the supply.

***Defendants Incorrectly Contend Plaintiffs Should Have Avoided Their Damages By Altering Their Purchases****.* Defendants intend to offer evidence and argument that Plaintiffs could have avoided or lessened the damages they suffered as a result of the conspiracy through a variety of measures. *See* Rose Acre Opening St., Tr. 818 ("Plaintiffs had choices"). Plaintiffs believe Defendants will suggest Plaintiffs could have negotiated to avoid or lessen the impact of the conspiracy by contracting to price their egg products without reference to the Urner-Barry index. Or, perhaps Plaintiffs could have made their products with fewer—or no—egg products. Finally, Defendants point to the fact that other companies paid less than these Plaintiffs. Perhaps the argument will be that Plaintiffs could have been better negotiators and gotten better prices for the egg products they bought.

What these arguments have in common, aside from blaming the victims of the conspiracy for the wrongdoing of the Defendants, is that they suggest ways damages could have been avoided or lessened. They do not prove Plaintiffs were not injured based on actual purchasing behavior.

# THE COURT SHOULD PRECLUDE
# DEFENDANTS' MITIGATION EVIDENCE

Defendants' theory—blaming Plaintiffs for not figuring out that Defendants were engaged in a secret, supply-limiting conspiracy—is not a valid defense. Second, Defendants' theory relates to the amount of damages. It does not deny that Plaintiffs were injured. If allowed at all, this is a question for the damages phase of the trial.

### 1. Defendants Intend To Present Mitigation Evidence In The Liability Phase.

In opening statements, Defendants suggested their mitigation argument by emphasizing the choices they believe Plaintiffs had in purchasing eggs and egg products.

Defendants' deposition designations reflect this tactic. For example, Defendants took the deposition of Binh Tran, a General Mills purchasing employee. Plaintiffs designated approximately 30 minutes of testimony; Defendants designated twice as much. Their designations focus on issues that are relevant, if at all, on damages. For example, Defendants designated testimony that General Mills had the opportunity to purchase egg products on grain-based contracts. *See* Tran Dep. pp. 145-48. Defendants designated testimony regarding General Mills' consideration of a proposal to purchase from Rembrandt in 2008 using a cost-plus pricing agreement. *Id*. at 156-57. As a final example, Defendants designated a long passage about General Mill's consideration of seasonal purchasing, suggesting Plaintiffs should have altered their practices and purchased egg products long before they needed the products and stored them. *Id*. at 152-54. Using this one witness as an example, and considering only a few of the designations, demonstrates that Defendants intend to offer in their liability cases testimony about how Plaintiffs could have altered their business practices to avoid the impact of Defendants' undisclosed conspiracy.

Defendants have designated other testimony addressing similar topics. For example, Defendants have designated deposition testimony of customers who are not Plaintiffs, apparently

3

under the theory that their purchasing decisions are relevant to show that they paid less for egg products than one of Plaintiffs. Aside from the fact that the jury would have to engage in a collateral inquiry into whether the contracts were comparable, their time periods, and a host of irrelevant issues, this evidence does not show that Plaintiffs were not in fact injured through overcharges. Defendants, likewise, may suggest Plaintiffs should have reformulated their products to use non-egg substitutes. This is an odd argument for an egg producer to make.

The testimony Defendants seek to introduce is mitigation testimony. Mitigation is defined as an effort to avoid or lessen the damages resulting from an injury. *Mitigation*, *Black's Law Dictionary* (11th ed. 2019) (mitigation of damages is the effort to lessen or avoid further damage). Mitigation of damage is an affirmative defense on which the defendant bears the burden. *See American Bar Association Model Jury Instructions in Civil Antitrust Cases*, Instruction 14: Mitigation, p.324. As such, it does not operate to deny the existence of an injury, only to excuse the defendant from responsibility for some or all of the damages due to a failure to take reasonable actions to avoid or lessen those damages.

### 2. Mitigation Evidence Is Not Admissible in a Horizontal Case.

Plaintiffs have no duty to mitigate damages from horizontal antitrust conspiracies, such as this one. The court in *In re Airline Ticket Comm'n Antitrust Litig.* explained that "[i]n a horizontal price-fixing case … mitigation and offset generally do not affect the ultimate measure of damages." 918 F. Supp. 283, 286 (D. Minn. 1996) (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745–46 (1977)). This is because, "[w]hile an antitrust plaintiff alleging a refusal to deal or vertical price-fixing could reasonably be expected to mitigate damages by finding another supplier, a victim of horizontal price-fixing does not have this option." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2012 WL 6000154, at *3 (N.D. Cal. Nov. 30, 2012). Effects on the market price of a commodity affect all buyers, regardless of whom they buy from. As a result,

4

"antitrust injury occurs the moment the purchaser incurs an overcharge ... [a]nd in a price-fixing conspiracy, the amount of damages is established by the amount of the overcharge." *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 684 (N.D. Ga. 2016).

### 3. If Admissible At All, Mitigation Is Relevant to Damages, A Phase 2 Issue.

Evidence tending to show that a Plaintiff could have avoided harm, or lessened its financial impact, relates to damages questions and does not bear on liability.

Mitigation is a damages issue in an antitrust case. In its *Model Jury Instructions for Use in Civil Antitrust Cases*, the ABA has provided a mitigation instruction as part of its damage instructions. *See American Bar Association Model Jury Instructions in Civil Antitrust Cases*, 324-325. Defendants acknowledge as much. In the jury instructions they tendered to the Court in the Pretrial Oder, Defendants provided an instruction relating to mitigation in the instructions to be used in phase two only.

Courts in antitrust cases have applied this principle and held that "alleged failure to mitigate is not a defense to liability, but it could affect the amount of damages," *Healey v. Int'l Bhd. of Elec. Workers, Loc. Union No. 134, 296 F.R.D.* 587, 594 (N.D. Ill. 2013). Courts in tort and civil rights contexts apply the same principle. *Dease v. Morton Elec., Inc.*, No. 6:20-CV-386-GAP-DCI, 2021 WL 8773308, at *6 (M.D. Fla. May 20, 2021); *Chisolm v. Michigan AFSCME Council 25*, 218 F. Supp. 2d 855, 863 (E.D. Mich. 2002); *Krauter v. Norfolk S. R. Co.*, 306 F. Supp. 2d 716, 717 (N.D. Ohio 2004). The law reflects the common understanding that, while in certain circumstances a plaintiff has an obligation to take steps to reduce the amount of damage it incurs, that is a question for a damages analysis.

The fact that mitigation affects damages, not the fact of injury, is consistent with how mitigation is considered in other circumstances. In the context of class certification, for example, the Second Circuit held the defense of mitigation of damages is not a reason to preclude class

certification on liability issues. It is a separate issue to be resolved, if at all, at the damages phase. *See In re Visa Check/Master Money Antitrust Litig,* 280 F.3d 124, 138-40 (2d Cir. 2001). Courts have relied on this case to hold that mitigation is solely a damage issue. The court in *Herman v. Seaworld Parks & Ent., Inc.* expressly noted that tools like bifurcation could be used to carve off damages issues like mitigation defenses. 320 F.R.D. 271, 299 (M.D. Fla. 2017). Others have relied on *Visa* to hold that mitigation defenses are damages issues that do not bear on class certification. *In re Buspirone Pat. Litig.*, 210 F.R.D. 43, 59 (S.D.N.Y. 2002); *Rodriguez v. ACL Farms, Inc.*, No. CV-10-3010-LRS, 2010 WL 4683771, at *2 (E.D. Wash. Nov. 12, 2010).mThus, to the extent mitigation is relevant at all, it is an issue for the second phase of this trial.

## CONCLUSION

For the foregoing reasons, the Court should bar Defendants from presenting evidence or argument suggesting Plaintiffs should have reduced the amount of damage they suffered through different behavior. In the alternative, any such mitigation evidence and argument should be reserved for Phase 2.

October 23, 2023  Respectfully submitted.

***Counsel for Plaintiffs Kraft Foods Global, Inc., General Mills, Inc., Nestlè USA, Inc. and The Kellogg Company***

 /s/ *Brandon D. Fox*
Brandon D. Fox
Amy M. Gallegos (*pro hac vice*)
JENNER & BLOCK LLP
515 South Flower St, Suite 3300
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199
bfox@jenner.com
agallegos@jenner.com

James T. Malysiak
Joel T. Pelz
Andrianna D. Kastanek
Angela M. Allen
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel: (312) 222-9350
Fax: (312) 527-0484
jmalysiak@jenner.com
jpelz@jenner.com
akastanek@jenner.com
aallen@jenner.com