UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

KRAFT FOODS GLOBAL, INC., THE )
KELLOGG COMPANY, GENERAL MILLS, )
INC., and NESTLÉ USA, INC., )
)  No. 1:11-cv-08808
Plaintiffs, )
)  Judge Steven C. Seeger
v. )
)
UNITED EGG PRODUCERS, INC., UNITED )
STATES EGG MARKETERS, INC., CAL- )
MAINE FOODS, INC., MICHAEL FOODS )
INC., and ROSE ACRE FARMS, INC. )
)
Defendants. )

## Motion to Exclude In-Trial Expansion of Defined Conspiracy

### I.    Introduction

One of the most fundamental issues in this case is the identity of those who participated in the supply restriction conspiracy Plaintiffs allege. In considering this issue, there is no dispute that an entity's mere membership in United Egg Producers ("UEP"), United States Egg Marketers ("USEM"), or even participation in the UEP Animal Care Certified Program ("Certified Program"), would **not** be enough to make that entity a co-conspirator.

Consciously taking a different approach in this litigation from the two prior plaintiff groups before Judge Pratter, these Plaintiffs elected to define the alleged conspiracy as involving five egg producers and two associations. *See* disc. *infra*, at 4-8. Plaintiffs consistently presented this seven-member conspiracy to Defendants and

this Court in the lead up to trial in key motions and proffered jury instructions, and continued to advance this approach to the jury, both in their opening statement and in their lengthy examination of Mr. Baker, the Chairman of Defendant Cal-Maine Foods, Inc.

This motion is necessary because Plaintiffs signaled an intention to diverge from this approach as the trial draws near the critical market power discussion. Although Plaintiffs previously disclaimed the theory that "all" UEP members are co-conspirators, Plaintiffs now claim that they are under no obligation to identify all the alleged co-conspirators if they are only going to try to obtain damages from the identified Defendants in a possible Phase Two. *See* Oct. 24, 2023 Tr. Tran. at 1659:19-25; 1688:13-15. But Plaintiffs are incorrect as a matter of law: the scope of the alleged conspiracy is a liability issue. It implicates all elements of liability, including market effects and antitrust injury. Plaintiffs cannot now shift theories mid-trial. Plaintiffs must prove their case consistent with the conspiracy definition they previously and consistently offered.

Plaintiffs' belated attempt to expand the roster of the alleged co-conspirators mid-trial cannot be squared with governing law, including this Court's ruling regarding Plaintiffs' *Santiago* proffer, where the Court correctly held that Plaintiffs must, as a threshold matter, prove membership of each alleged co-conspirator in the alleged conspiracy, and further, that mere membership in a trade association does not equate to that member "tying itself to the conspiratorial mast." D.E. #294 at 29, 32 ("Something more is required, above and beyond trade association membership.

There must be 'some evidence of actual knowledge of, and participation in, an illegal scheme in order to establish a violation of the antitrust laws by a particular association member'"); *see also id.* at 49 (noting in a related context that "Plaintiffs must still 'close the evidentiary loop at trial'") (cleaned up).

If, like their predecessors, Plaintiffs intended to plead and prove in this trial a conspiracy larger than the seven entities they disclosed and discussed; they should have identified those additional alleged co-conspirators long before now. Indeed, as Plaintiffs were well aware, Judge Pratter required their predecessors to make this same disclosure before trial as it was essential to defendants being able to appropriately defend themselves. So too here.

Plaintiffs have assumed the burden to prove an agreement to conspire unlawfully "through direct evidence of that agreement." Obj. to Jury Charge at 35 (D.E. # 279-17) at 35. Defendants were entitled to know who the supposed co-conspirators were so that they could mount an appropriate defense against Plaintiffs' claims, including so Defendants can establish a lack of market effects, lack of agreement, and lack of antitrust injury. And Plaintiffs made their choice clear before this trial and during this trial, and stuck to it, until now.

## II.    Relevant Background

Plaintiffs' Second Amended Complaint alleged seventeen entities were co-conspirators.[1] *See* 2d Am. Compl. (D.E. #73) at 10-40. Eight were named as

---

[1] The seventeen were USEM; UEP; United Egg Association; Cal-Maine Foods, Inc. ("Cal-Maine"); Daybreak Foods, Inc.; Hillandale Farms of Pa, Inc.; Michael Foods, Inc. ("Michael Foods"); Midwest Poultry Services, L.P.; National Food Corporation;

defendants but were later voluntarily dismissed.[2] Plaintiffs also alleged that "[v]arious" other unnamed "persons, entities, companies and corporations" participated in the alleged conspiracy. *Id.* ¶ 79.

Since then, Plaintiffs narrowed their group of alleged co-conspirators even further in advance of trial, and on that basis, Defendants prepared to defend themselves for trial. Specifically, since mid-2022, Plaintiffs have repeatedly represented to the Defendants, the Court, and the impaneled jury that the alleged conspiracy consisted of UEP, USEM, and five egg producers—Cal-Maine, Rose Acre, Michael Foods, Moark, and Wabash Valley (all together, the "Seven Alleged Co-conspirators").

***First***, in seeking the admission of co-conspirator statements under Rule 801(d)(2)(E), Plaintiffs' *Santiago* Proffer referred to a conspiracy of only the Seven Alleged Co-conspirators. *See* D.E. #164. Plaintiffs repeatedly defined the conspiracy as including the Defendants (at that time, including Michael Foods) along with "non-defendant coconspirators Moark and Wabash Valley." *Id.* at 1, 4. While Plaintiffs explicitly stated that they did "not set forth each and every co-conspirator *statement* or *piece of corroborating evidence* they intend to introduce in this case," Plaintiffs never suggested that there were other unnamed co-conspirators in the conspiracy. *Id.*

---

NuCal Foods, Inc.; Ohio Fresh Eggs, LLC; Rose Acre Farms ("Rose Acre"); R.W. Sauder, Inc.; Sparboe Farms, Inc.; Moark LLC (and Norco Ranch, Inc.) ("Moark"); Hillandale Farms, Inc. (and Hillandale-Gettysburg, L.P., Hillandale Farms East, Inc.); and Wabash Valley Produce Inc. ("Wabash Valley").

[2] Daybreak Foods, Hillandale, Midwest Poultry, National Food Corp., NuCal Foods, Ohio Fresh Eggs, RW Sauder Inc., and Sparboe Farms settled with Plaintiffs.

at 18 (emphasis added). The lack of this catch-all inclusion is significant because it drew a hard line. Defendants accepted the Plaintiffs' choice in their response brief, and Plaintiffs' reply brief never contradicted Defendants' description of the scope of the conspiracy, which stated, "Plaintiffs argue that the conspiracy involved only *five* producers of Certified Eggs." D.E. #203 at 22. Plaintiffs repeated this description of the co-conspirators in their motion *in limine* filings.[3]

In ruling on the *Santiago* Proffer, the Court recognized that Plaintiffs did "not argue that *all* UEP members were part of the conspiracy" and that Plaintiffs instead "focus[ed] on only five producers." D.E. #294 at 32 (emphasis in original). The Court also noted trade membership alone would not be sufficient to establish that an entity was a co-conspirator and that "some evidence of actual knowledge of, and participation in, an illegal scheme in order to establish a violation of the antitrust laws by a particular association member" was required. Id. at 32.

*Second*, Plaintiffs' proposed jury instructions in the Joint Pretrial Order define the conspiracy to include only the Seven Alleged Co-conspirators. *See* D.E. #279-13 at v (Plaintiff's Proposed Instruction No. 1) ("The Defendants consists [sic] of two large egg-producing companies and two trade associations for egg producers. . . Plaintiffs allege that Moark, Michael Foods, and Wabash Valley—other egg producers—joined the conspiracy. These alleged coconspirators are not defendants in this trial."). In this submission, Plaintiffs again made no indication that other

---

[3] *See, e.g.*, D.E. #175 at 2 (explicitly stating that Sparboe did not "participat[e] in the UEP price fixing conspiracy" despite naming Sparboe as a defendant-co-conspirator in the Second Amended Complaint).

unidentified egg producers were part of the alleged conspiracy, nor did they include a catch all provision.

*Third*, Plaintiffs' opening statement cemented to the Court—and very significantly to the jury—that the conspiracy had only seven members. Plaintiffs described—and showed—the alleged conspiracy as a "hub and spoke" supply restriction conspiracy with UEP and USEM in the middle with Cal-Maine, Rose Acre, Michael Foods, Moark, and Wabash Valley as the producer-spokes. *See* Oct. 19, 2023 Tr. Tran. 655:3-10 ("This conspiracy is what's known as a hub-and-spoke conspiracy. Think about it as a wheel. At the center of the conspiracy, the hub was the United Egg Producers, forming agreements with the egg producers who were supposed to be competitors, the spokes of the conspiracy[.]"); *see also* Slide 13 of Plaintiffs' Opening Deck Entitled, "The Conspiracy") (attached as Exhibit ("Ex.") 1 to this Motion); Oct. 19, 2023 Tr. Tran. 668:5-9 (describing Slide 13 as having five producer-spokes "around the wheel"—Cal-Maine, Rose Acre, Michael Foods, Wabash Valley, and Moark without reference to additional producer co-conspirators); *id.* at 674:15-19 ("You'll hear evidence about three additional companies involved in the conspiracy: Moark, Wabash Valley, and Michael Foods. All you need to know about them is they were involved in the programs that I've described."). Plaintiffs never suggested that other unnamed egg producers (or anyone else) also participated in the alleged conspiracy.

*Fourth*, Defendants relied on Plaintiffs' undisputed position in their opening and showed the jury a pie chart showing 5 producer conspirators and 161 non-

conspirators:



This slide was presented to Plaintiffs days before trial and never received *any* objection (though they had plenty of objections to other slides). Plaintiffs had no problem with Defendants characterizing their alleged conspiracy this way—because it was accurate.

*Fifth*, in the examination of Mr. Baker, Plaintiffs made persistent efforts to highlight the participation of the Seven Alleged Co-conspirators without suggesting or identifying any other egg producer as an alleged co-conspirator. *See, e.g.*, Oct. 20, 2023 Tr. Tran. At 1025:8-18 (Q. When Rose Acre joined the UEP, it had a member on UEP's board of director, correct? A. I believe that's correct. Q. And that was Marcus Rust? A. Yes, sir. Q. Michael Foods had a representative on UEP's board of directors, correct? A. Yes, sir. Q. Moark had a representative on UEP's board of directors,

correct? A. Correct); 1175:19-23 (Q. On the right-hand side, Layers, Inc., which, again, we discussed is Wabash Valley; is that right? A. Correct. Q. Moark Productions; is that right? A. Yes, sir.); Oct. 23, 2023 Tr. Tran. At 1283:12-15 (Q. Cal-Maine, of course, and Moark are listed; but after 47, we see Wabash Valley at 86 and Rose Acre Farms at 98; is that correct? A. Correct.); 1388:3-16 (Q. And also Mr. Looper from your company was present, correct? A. Yes, sir. Q. And Michael Foods, Terry Baker was there, correct? A. Correct. Q. Larry Seger from Wabash Valley was there, correct? A. Correct. Q. Marcus Rust from Rose Acre, correct? A. Correct. … Q. Also Tim Bebee is with Michael Foods, correct? A. That's correct); 1567:2-12 (Q. We can look at the "from" and "to" lines along with the subject. The recipients of this e-mail included you, Mr. Willardson of Moark, correct? A. Correct. Q. Also Jerry Kil of Moark, correct? A. Correct. Q. Larry Seger of Wabash Valley, correct? A. Correct. Q. Marcus Rust of Rose Acre, correct? A. Correct. Q. And Terry Baker of Michael Foods, correct?).

*Plaintiffs' Changed Tactics.* Despite all the foregoing, on October 24, 2023, Plaintiffs told the Court and Defendants for the first time that: (1) Plaintiffs *may* assert that other egg producers were also co-conspirators, and (2) Plaintiffs have "*no obligation* . . . to identify the co-conspirators" altogether. *See* Oct. 24, 2023 Tr. Tran. at 1659:19-25; 1688:13-15 (emphases added).

Defendants promptly filed this motion seeking relief.

## III. Argument

### A. Identifying the Alleged Co-Conspirators Is Necessary for Plaintiffs to Prove the Elements of Their Claim.

"A successful claim under Section 1 of the Sherman Act requires proof of three

8

elements: (1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in the relevant market; and (3) an accompanying injury." *Denny's Marina, Inc. v. Renfro Prods., Inc.*, 8 F.3d 1217, 1220 (7th Cir.1993). The identification of co-conspirators is necessary for determining (a) with whom the Defendants entered into an agreement, (b) whether the conspiracy impacted a substantial portion of the relevant market, and (c) whether Plaintiffs were injured by the alleged conspiracy.

Critically, the Plaintiffs must identify the alleged co-conspirators because the jury may only consider the anticompetitive effect of alleged unlawful activity between those identified members of the alleged conspiracy. Plaintiffs cannot present evidence of anticompetitive harm without identifying those who allegedly caused the harm. Jurors must be allowed to examine—and Defendants must be able to rebut—evidence of the alleged co-conspirators' conduct that allegedly impacted supply in the relevant market.

*Conspiracy*. The first step of any antitrust analysis should "always be to identify with maximum particularity the alleged conspirators and the subject matter of each conspiracy." Phillip E Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 1409 (4th and 5th eds.) (2023). "Only then should the court move on to look for the necessary agreement." *Id.* While Plaintiffs need not sue every member of the conspiracy, Plaintiffs must first identify those they allege were co-conspirators before establishing that those members engaged in "concerted action" or "a conscious commitment to a common

scheme designed to achieve an unlawful objective." *Omnicare v. UnitedHealth Group, Inc.*, 629 F.3d 697, 705 (7th Cir. 2011).

It is crucial that Defendants know the scope of the alleged conspiracy. As noted above, Plaintiffs cannot present evidence of anticompetitive harm without identifying those who allegedly caused the harm. Plaintiffs must proffer to the jury all evidence concerning alleged co-conspirators' conduct that allegedly impacted supply in the relevant market (*i.e.*, those responsible for the anticompetitive harm). Defendants are entitled to know the identity of each alleged co-conspirator not only so they can refute Plaintiffs' theories, but also because the existence of others who engaged in the same conduct (but who are not alleged to be co-conspirators) undermines the alleged conspiracy's very existence. *See* ABA Model Instr. Ch. 2 Section A Instr. 1 at 14 ("Mere similarity of conduct among various persons, or the fact that they may have associated with one another and may have met or assembled together, at meetings or otherwise, does not by itself establish the existence of a conspiracy. If they acted similarly but independently of one another, without agreement among them, then there would not be a conspiracy."). Indeed, "[t]here is no such thing as an 'unwitting conspirator.'" *In re Brand Name Prescription Drugs Antitrust Litig.*, 1999 WL 33889, at *15 (N.D. Ill. Jan. 19, 1999), *aff'd in relevant part*, 186 F.3d 781 (7th Cir. 1999) (cleaned up). Were it otherwise, the jury would be left to speculate as to who else might have been a member of the alleged conspiracy.

At worst, jurors would be encouraged to wrongly assume that parallel conduct by industry members, without more, constitutes an unlawful antitrust conspiracy.

*See McGeshick v. Choucair*, 9 F.3d 1229, 1235 (7th Cir. 1993) ("a court may not leave a jury to guess or speculate").  As this Court has recognized, this is not the law. *See* D.E. #294 at 32-33.

*Relevant Market*. As "a threshold matter" in an antitrust action, Plaintiffs must show that the alleged co-conspirators possessed enough market power to restrain trade. *See Agnew v. NCAA*, 683 F.3d 328, 335 (7th Cir. 2012); *Menasha Corp. v. News Am. Mktg. In-Store, Inc.*, 354 F.3d 661, 663 (7th Cir. 2004). Plaintiffs cannot rely on evidence of the alleged conspiracy's anticompetitive effects to retroactively prove the threshold issue of market power. *Hannah's Boutique, Inc. v. Surdej*, 112 F. Supp. 3d 758, 771 (N.D. Ill. 2015) ("Plaintiff's argument that it can use evidence of direct effects to prove market power while circumventing an initial showing of [defendant's] market share is not persuasive as a matter of law.").

To determine market power, the jury must assess the alleged co-conspirators' market share. *See* Oct. 26, 2023 Tr. Tran. at 2217:1-2219:25; *see also* ABA Model Instructions, Ch. 1, Section C, Instruction No. 2, at 5, ¶ 5 ("An important factor in determining whether [a] defendant possesses market power is defendant's market share, that is, its percentage of the products or services sold in the relevant market by all competitors. . . If defendant does not possess a substantial market share, it is less likely that defendant possesses market power. If defendant does not possess market power, it is less likely that the challenged restraint has resulted [or will result] in a substantial harmful effect on competition in the market.").

In analyzing the question of market effects, the jury must consider the market

11

power of the conspiracy or "arrangement"—*i.e.*, the combined market power of only the conspirators in the relevant market. *See F.T.C. v. Indiana Fed'n of Dentists*, 476 U.S. 447, 460 (1986) ("[T]he purpose of the inquiries into market definition and market power is to determine whether an arrangement has the potential for genuine adverse effects on competition"); *Spectators' Commc'n Network Inc. v. Colonial Country Club*, 253 F.3d 215, 225 (5th Cir. 2001) (observing that "the reason for looking at market power is to determine whether the combination or conspiracy, not each individual conspirator, has the power to hurt competition in the relevant market). Plainly, it is impossible to make such a determination without identifying all alleged conspirators. Therefore, Plaintiffs must identify all whose market power should be considered—*i.e.*, which industry members were alleged to be co-conspirators. By identifying only the Seven Alleged Co-conspirators and no others, Plaintiffs have locked themselves in to their theory of the case.

*Injury*. The issue of market power is crucial to the element of injury. There can be no injury without market power. *See Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 348, 350 (7th Cir. 2022) (finding that conspiracies involving just two distributors and Becton Dickinson could not "plausibl[ly] influence the prices[.]"). Plaintiffs claim that prices for the egg products they purchased were somehow increased due to an unlawful restraint on trade. Who is alleged to have participated in the unlawful conduct, and whether those accused had sufficient market power to impact supply and ultimately price in the relevant market, are central issues in this case.

In short, defining the scope of the alleged conspiracy necessarily includes defining who participated in the conspiracy. The jury will be asked questions that require this information and Defendants must be able to defend themselves based on Plaintiffs' fully disclosed theory of the case. Plaintiffs' recent in-court statements indicate they are trying to reserve the right to change theories mid-trial. That is contrary to governing law and should not be permitted. *Omnicare*, 629 F.3d at 705.

### B. Judge Pratter Previously Directed DAP Plaintiffs to Identify Alleged Co-Conspirators Prior to Trial.

This very issue was confronted by Judge Pratter in advance of the DAP trial. During pretrial proceedings—after the DAP plaintiffs' proffer on Rule 801(d)(2)(E) did not identify all alleged co-conspirators—the defendants filed a motion for clarification, asking the Court to require the Plaintiffs to identify which entities "are the parties to the [alleged conspiratorial] agreement." Motion for Clarification and Other Relief (D.E. #1948), *In re Processed Egg Prod. Antitrust Litig.*, No. 08-md-02002 (E.D. Pa.), Ex. 2 hereto. This issue arose in the DAP trial because—unlike here—the DAP plaintiffs did not explicitly identify in their *Santiago* proffer (known as a *James* proffer) who the members of the alleged conspiracy were.

Judge Pratter addressed the issue at a pretrial conference, requiring that "well in advance of the final pretrial conference, [she] would expect everybody, including the Court, to have that information." *In re Processed Egg Prod. Antitrust Litig.*, Sept. 5, 2019 Tran. at 202:6-17; 202:18-25, Ex. 3 hereto. Following Judge Pratter's direction, defense counsel wrote to DAP counsel and asked them to identify the alleged co-conspirators. Oct. 4, 2019 Email Exchange, Ex. 4 hereto. DAP counsel

13

responded with the list of the alleged co-conspirators. *Id.*

No different from the DAP trial, Defendants have a right to know the identities of all alleged co-conspirators and Defendants have relied on Plaintiffs' multiple representations to this effect. Any effort to expand the number of co-conspirators now would be improper, as is the notion that Plaintiffs simply need not take a position. As Judge Pratter aptly explained, "everybody, including the Court" should have this information by the time trial begins. *In re Processed Egg Prod. Antitrust Litig.*, Sept. 5, 2019 Tran. at 202:24-25, Ex. 3. Plaintiffs cannot change their universe of alleged co-conspirators or muddy the waters on this issue mid-trial without irremediable prejudice to the Defendants. *See Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1172 (1st Cir. 1995) ("The truth-seeking function of our adversarial system of justice is disserved when the boundaries of a suit remain ill-defined and litigants are exposed to the vicissitudes of trial by ambush.").

### C. Allowing Plaintiffs to Add Conspirators Mid-Trial Would Unduly Prejudice Defendants.

If the Court were to permit Plaintiffs to identify additional (yet-unidentified) co-conspirators well into this trial and after witnesses have already given testimony, Defendants would be significantly prejudiced. For months, Defendants have prepared for trial based on Plaintiffs' repeated representations that the conspiracy consists of the Seven Alleged Co-conspirators. In the first week of trial, Defendants presented their defense in opening statements and during the presentation of key witnesses (including Mr. Baker) based on that understanding. Defendants cannot defend against a moving target of undefined and unnamed co-conspirators. Due process

demands disclosure. Now that the parties are in the middle of the trial in which liability will be determined, Plaintiffs must prove their case consistent with the conspiracy definition they previously set forth.

As the Court has cautioned, "parties typically can trim their cases, but the Court has a healthy measure of skepticism about big changes a short time before trial." D.E. #311 at 2. The parties are now over a week into trial, and the jury has heard the Plaintiffs' repeated assertion that the conspiracy consists of the Seven Alleged Co-conspirators. Allowing Plaintiffs to change their theory of the conspiracy mid-trial (or to conceal some of the alleged members) would result in incurable prejudice to the Defendants and substantial jury confusion, in addition to being contrary to law. *See Hannah's Boutique,* 112 F. Supp. 3d at 771.

## IV.  Conclusion

For the foregoing reasons, Defendants respectively ask the Court to prohibit Plaintiffs from arguing that the alleged conspiracy includes any co-conspirator other than Cal-Maine, Rose Acre, Michael Foods, Moark, Wabash Valley, UEP, and USEM.

Dated: October 28, 2023

Respectfully submitted,

*/s/ Patrick M. Collins*

Patrick M. Collins (pcollins@kslaw.com)
Livia M. Kiser (lkiser@kslaw.com)
Patrick M. Otlewski (potlewski@kslaw.com)
Abigail Hoverman Terry (aterry@kslaw.com)
KING & SPALDING LLP
110 North Wacker Drive, 38th Floor
Chicago, IL 60606
Tel: (312) 995-6333

Lohr Beck (lohr.beck@kslaw.com)
(pro hac vice)
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel: (404) 572-2812

Brian E. Robison (brian@brownfoxlaw.com)
(pro hac vice)
BROWN FOX PLLC
6303 Cowboys Way, Suite 450
Frisco, TX 75034
Tel: (972) 707-2809

***Counsel for Defendant Cal-Maine Foods, Inc.***

| | |
|---|---|
| */s/ Robin P. Sumner* | */s/ Donald M. Barnes* |
| Robin P. Sumner | Donald M. Barnes |
| (robin.sumner@troutman.com) | (dbarnes@porterwright.com) |
| Kaitlin L. Meola | Jay L. Levine (jlevine@porterwright.com) |
| (kaitlin.meola@troutman.com) | PORTER, WRIGHT, MORRIS & ARTHUR |
| TROUTMAN PEPPER HAMILTON | LLP |
| SANDERS LLP | 2020 K. Street, N.W., Suite 600 |
| 3000 Two Logan Square, 18th and | Washington, D.C. 20006-1110 |
| Arch Streets | Tel: (202) 778-3000 |
| Philadelphia, PA 19103-2799 | |
| Tel: (215) 981-4000 | James A. King (jking@porterwright.com) |
| | Allen T. Carter |
| Whitney R. Redding | (acarter@porterwright.com) |
| (whitney.redding@troutman.com) | PORTER, WRIGHT, MORRIS & ARTHUR |
| TROUTMAN PEPPER HAMILTON | LLP |
| SANDERS LLP | 41 South High Street, Suite 2900 |
| Union Trust Building | Columbus, OH 43215 |
| 501 Grant Street, Suite 300 | Tel: (614) 227-2000 |
| Pittsburgh, PA 15219-4429 | |
| Tel: (412) 454-5085 | ***Counsel for Defendant Rose Acre Farms, Inc.*** |

Molly DiRago
(Molly.DiRago@troutman.com)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
227 West Monroe Street, Suite 3900
Chicago, IL 60606
Tel: (312) 759-1923

***Counsel for Defendants United
Egg Producers, Inc. & United
States Egg Marketers, Inc.***