UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KRAFT FOODS GLOBAL, INC., THE KELLOGG COMPANY, GENERAL MILLS, INC., and NESTLÉ USA, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:11-cv-08808 |
| v. | ) ) ) | Judge Steven C. Seeger |
| UNITED EGG PRODUCERS, INC., UNITED STATES EGG MARKETERS, INC., CAL-MAINE FOODS, INC., and ROSE ACRE FARMS, INC. | ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO ROSE ACRE FARM, INC.'S
MOTION TO EXCLUDE OR LIMIT PLAINTIFF'S SUMMARY EXHIBITS**

Defendants moved to exclude 12 charts summarizing voluminous data. As shown in this response, the motion should be denied. Admissible summaries under Rule 1006 are not limited to data compilations. They can also reflect the conclusions and assumptions of an expert.

**1.  Rule 1006 Permits The Admissions of Summaries Reflecting Expert Judgment and Analysis.**

Federal Rule of Evidence 1006 allows for the admission of a summary, chart, or calculation to prove the content of voluminous materials, including materials reflecting expert analysis. For example, "experts in accounting and other disciplines regularly give summary evidence of the sort envisioned by Federal Rule of Evidence 1006[.]" *United States v. Pree*, 408 F.3d 855, 869 (7th Cir. 2005). The material summarized in a chart can include data calculated using judgment. *United States v. Chhibber*, 741 F.3d 852, 855 (7th Cir. 2014) (holding that charts comparing patient data were admissible even though the percentages computed were the product of judgment about how the calculations should be done). In deciding whether to permit the summary, courts consider

whether the opposing party has "ample opportunity [for] cross-examination," *United States v. Swanquist*, 161 F.3d 1064, 1073 (7th Cir. 1998); and whether the charts are "inaccurate or that they were improperly created." *United States v. Turner*, 400 F.3d 491, 498 (7th Cir. 2005). Yet experts' summaries are admitted even if they contain "assumptions" that could render the exhibits "conclusory," particularly when those assumptions are explained by experts whose "qualifications to draw conclusions based upon the evidence were amply established at trial." *United States v. Radseck*, 718 F.2d 233, 238-39 (7th Cir. 1983).

    2.    **Dr. Baye's Charts Satisfy Rule 1006**.

Dr. Baye's charts summarize computations of many years of monthly industry data that would be inefficient and uninformative to the jury in another form. While he could testify to the particular price that his regression model outputs for each month of the conspiracy period, presenting his findings in a chart allows the jury to understand the impact of the analysis.

The summary charts summarize that data, allowing the jury to make their own judgments about any conclusions it may yield. Consider the trend lines in Plaintiffs' Exhibit 1003. The solid lines are visual representations of underlying monthly data. The dotted and dashed trend lines are similarly representations of those data, in another form. These lines use basic calculations to identify the slope of the lines just as the solid lines represent averages of more granular data. Defendants do not dispute the validity of the underlying calculations. Nor can they contend that the jury would be better off digesting this data in another form.

Dr. Baye's regression analyses are the product of formulaic calculations that use standard assumptions outlined during his testimony. His judgment in making a chart is properly the subject of a Rule 1006 summary chart. *United States v. Suquet*, 547 F. Supp. 1034, 1045 (N.D. Ill. 1982). To the extent that Defendants would make different assumptions, the Seventh Circuit has held that

"[a] party is not obligated . . . to include within its charts or summaries its opponent's version of the facts." *U.S. v. Swanquist*, 161 F.3d 1064, 1072–73 (7th Cir. 1998).

Plaintiffs' Exhibit 1011, for example, applies simple math to evidence that has all already been admitted into evidence. The left two columns summarize the date and number of containers Mr. Baker testified to. The next two columns convert from containers of eggs to cases and then dozens. Dr. Baye testified to the inverse price elasticities of eggs during his testimony. The final column is simply a mathematical calculation applying a conservative price elasticity to the number of eggs shipped abroad by each export.

**Price Effects of USEM Coordinated Exports**
**2006 - 2008**

| Month | Quantity Exported | | | U.S. Egg Consumption | Percent Decrease in Domestic Sales Due to Coordinated Export | Percent Increase in Price Due to Coordinated Export |
| --- | --- | --- | --- | --- | --- | --- |
| | Containers | Cases | Dozens | -----(Dozens)----- | | |
| | | | $[30*(d)]$ | | $[-(d)/(d)+(e)]$ | $[((1+(f))^{\wedge}(-6.11)-1)]$ |
| (a) | (b) | (c) | (d) | (e) | (f) | (g) |
| October-06 | 90 | 76,500 | 2,295,000 | 552,263,416 | -0.41 % | 2.57 % |
| January-07 | 300 | 246,600 | 7,398,000 | 538,780,322 | -1.35 | 8.69 |
| February-07 | 300 | 243,750 | 7,312,500 | 487,190,666 | -1.48 | 9.53 |
| April-07 | 200 | 160,000 | 4,800,000 | 524,758,489 | -0.91 | 5.72 |
| October-07 | 130 [1] | 106,003 | 3,180,085 | 546,598,949 | -0.58 | 3.61 |
| June-08 | 100 | 80,000 | 2,400,000 | 510,075,868 | -0.47 | 2.91 |

Note: Percent increase in price calculated using an inverse elasticity of -6.11076 for Northwest White Jumbo Shell, the most elastic demand estimated from the 2SLS model.
1 Number of cases estimated using average number of cases per container for available data.

Source: NL001776; MOARK0009486-93 at MOARK0009486; NL001774-5 at NL001774; MOARK0008660-69 at MOARK0008660; UE0199809-10 at UE0199809, UE01998010; RA0000703-10 at RA0000703, RA0000704; RA0002299-306 at RA0002299; MOARK0007450-1 at MOARK0007450; MOARK0036622-3 at MOARK0036622; MOARK-IPP-0028504-5 at MOARK-IPP-0028504, MOARK-IPP-0028505; USDA.

Courts may admit summary charts that are "not just summaries, but . . . inferences and opinions about the underlying records." *U.S. v. Spalding*, 894 F.3d 173, 186 (5th Cir. 2018). The jury may make an independent judgment about whether these calculations represent a reasonable way to estimate changes in egg prices after they have heard the cross-examination of Dr. Baye. But the jury should be able to do so with the benefit of reviewing the voluminous data reflected in the charts.

3.     **The circumstances surrounding the summaries supports their inclusion.**

The data underlying the charts have been available to both sides for more than a decade. Defendants have ample opportunity to cross-examine Dr. Baye and challenge his methods and conclusions. *United States v. Swanquist*, 161 F.3d 1064, 1073 (7th Cir. 1998). Dr. Baye's qualifications enable him to draw conclusions based on the data and methods used. *United States v. Radseck*, 718 F.2d 233, 238-39 (7th Cir. 1983). Defendants do not contend that the data are inaccurate or the calculations are incorrect. *United States v. Turner*, 400 F.3d 491, 498 (7th Cir. 2005). Therefore, there is no risk that the jury will be misled by inaccurate data or unable to evaluate criticism of the methods used.

## Conclusion

For the foregoing reasons, Plaintiffs request the Court deny the motion to strike the summary exhibits.

4

October 30, 2023

Respectfully submitted,

***Counsel for Plaintiffs Kraft Foods Global, Inc., General Mills, Inc., Nestlè USA, Inc. and The Kellogg Company***

 /s/ *Brandon D. Fox*
James T. Malysiak
Joel T. Pelz
Angela M. Allen
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Tel: (312) 222-9350
Fax: (312) 527-0484
jmalysiak@jenner.com
jpelz@jenner.com
aallen@jenner.com

Brandon D. Fox
Amy M. Gallegos (*admitted pro hac vice*)
JENNER & BLOCK LLP
515 S. Flower St.,
Suite 3300
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199
bfox@jenner.com
agallegos@jenner.com