UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **KRAFT FOODS GLOBAL, INC.**, *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 1:11-cv-08808 |
| **UNITED EGG PRODUCERS, INC.**, *et al.*, | ) | Judge Steven C. Seeger |
| Defendants. | ) | |

# DEFENDANTS' OPPOSITION TO PLAINTIFFS' PROPOSED IN-TRIAL LIMITING INSTRUCTIONS

Defendants respond and object to Plaintiffs' proffered "limiting instructions." (Dkt. # 397). While the timing of such instructions is left to the sound discretion of the trial court (*Westchester Fire Ins. Co. v. Gen. Star Indem. Co.*, 183 F.3d 578, 585 (7th Cir. 1999); *United States v. Papia*, 560 F.2d 827, 840 (7th Cir.1977)), an instruction should not be given if it is erroneous, an inaccurate statement of the law, or is likely to confuse or mislead the jury. *See*, *e.g.*, *United States v. White*, 443 F.3d 582, 587 (7th Cir.2006) (quoting *United States v. Smith*, 415 F.3d 682, 688 (7th Cir.2005)); *see also Lasley v. Moss*, 500 F.3d 586, 589 (7th Cir.2007) (quoting *Doe v. Burnham*, 6 F.3d 476, 479 (7th Cir.1993).

Defendants set forth each proposed instruction and their response.

Proposed Instruction 1.   Coconspirators Lost Money

It is plaintiff's burden to prove by a preponderance of the evidence that the defendants engaged in a conspiracy to restrict the egg market to increase the price of eggs. If you find that the plaintiffs have met this burden, it is not a defense to claim that a defendant or co-conspirator did so to avoid losing money.

**Defendants' Position:**

Defendants object to this instruction as highly prejudicial. *First*, it assumes that Plaintiffs have already proven a relevant market for antitrust purposes ("the egg market") though they have not. *Second*, it also assumes a direct correlation between output restriction attributable to what Defendants did (or did not) do and price. Third, this instruction risks confusing the jury. The Defendants have never argued, and will not argue, that they should not be held liable for joining a conspiracy because they did so to avoid losing money, as this instruction misleadingly suggests. Instead, Defendants have argued that they made the unilateral decision to engage in certain short-term supply measures, not as part of a conspiracy, but because it was in their individual self-interest to avoid losing even more money in a down market. Finally, it conflates the term "defendant" and "co-conspirator," which plainly is improper and unfair.

Defendants continue to believe the Court's instruction regarding a party's financial performance sufficiently covers the concept that Plaintiffs are trying to convey; specifically, the favorable or unfavorable financial performance of any party is irrelevant.

For the Court's ready reference, here is the instruction previously given on financial performance:

During the course of the trial, you may hear evidence about the financial performance of the plaintiffs, and you may hear evidence about the financial performance of the defendants. The financial performance of a plaintiff in and of itself is not a sufficient basis to conclude whether the company suffered an injury. On the flip side, the financial performance of a defendant in and of itself is not a sufficient basis to conclude whether the company entered into an alleged conspiracy. The financial performance of a defendant in and of itself is not a sufficient basis to conclude whether a conspiracy existed.

Proposed Instruction 2. Role Of The USDA

You [will now hear] [have just heard] testimony referring to the United States Department of Agricultural, which is often referred to as the USDA. Among other things, the USDA is involved in agricultural issues, including animal welfare. The USDA is not involved in enforcing antitrust law. Statements, actions, and inaction of the USDA have no bearing on the issues you are to decide.

**Defendants' Position:**

Defendants object to this instruction.

First, the last sentence of this instruction inappropriately hinders Defendants' ability to put on their defense. As set forth more fully in Defendants' Memorandum in Opposition to Plaintiffs' Motion *in Limine* No. 7 to Preclude Reference to the Action or Inaction of Any Federal or State Antitrust Regulator or the USDA (Dkt. # 196), evidence relating to USDA's involvement in UEP and the UEP Certified Program directly rebuts Plaintiffs' allegations that the Certified Program was a sham and pretext for a conspiracy to reduce supply and, thus, is probative evidence that the conspiratorial agreement alleged by Plaintiffs never existed.

The USDA's presence at UEP meetings is relevant to show that there was nothing secretive about the alleged conspiracy. Plaintiffs have said repeatedly that these activities were done secretly. The presence of the USDA, egg buyers, and members of the public rebuts that contention. In addition, USDA's involvement in the UEP Certified Program as an independent third-party auditor was viewed as critical to the Certified Program's credibility and ability to satisfy customer demand for a verified animal welfare program. These facts are relevant to show the Program's procompetitive benefits, which the jury will have to weigh against any anticompetitive effects.

Second, the description of the USDA in the second to last sentence is misleading and inaccurate. While USDA does not enforce the antitrust laws, it does have the responsibility to refer antitrust matters to DOJ and FTC. Indeed, in 1999, the three agencies memorialized a long-standing practice in an MOU. *See* Antitrust Division, Memorandum Of Understanding Between The Antitrust Division, Department Of Justice And The Federal Trade Commission And The Department Of Agriculture Relative To Cooperation With Respect To Monitoring Competitive Conditions In The Agriculture Marketplace., available at https://www.justice.gov/atr/memorandum-understanding-between-antitrust-division-department-justice-and-federal-trade. While Defendants are not going to argue that USDA did not refer the matter to DOJ or FTC, it is also incorrect to tell jurors effectively that such a scenario could not have occurred. Indeed, USDA does take enforcement action against anticompetitive conduct pursuant to the Packers and Stockyard Act. More importantly, pursuant to Section 2 of the Capper-Volstead Act, USDA can issue a complaint against associations that engage in conduct that would violate Section 1 or Section 2 of the Sherman Act.

Third, the instruction is unnecessary. Pursuant to this Court's ruling, Defendants will not offer testimony or argue that "the USDA approved the UEP Certified Program from an antitrust perspective." ECF 178. Thus, there is no risk of jury confusion that warrants a limiting instruction.

To the contrary, the proposed instruction risks communicating to the jury to ignore relevant evidence, which is highly prejudicial to Defendants.

Proposed Instruction 3. <u>Responsibility of Conspirators</u>

You have heard Cal-Maine elicit testimony that it did not sell to the plaintiffs. Under the law, it does not matter if a conspirator sold to one of the Plaintiffs. A member of a conspiracy is liable for the actions of all members of the conspiracy, not just its own actions. Thus, if you find a company joined the conspiracy alleged in this case, that company is responsible for any harms suffered by a Plaintiff that were caused by any member of the conspiracy. Its responsibility is not limited to harms resulting from its own sales.

**<u>Defendants' Position</u>**:

Defendants object to this proposed instruction as highly prejudicial. *First*, the instruction assumes that there is a unitary "egg market," which is disputed and contrary to evidence in the record. There are shell eggs and egg products of various types and kinds, priced in a variety of ways, including according to different Urner Barry indices (*e.g.*, certified v. non-certified)  *Second*, it conflates "Cal-Maine" with "conspirator" as though Cal-Maine's status as a "conspirator" already has been established, though it is hotly disputed, and this would be very prejudicial to Cal-Maine. *Third*, it is an incorrect and incomplete statement of the law (*e.g.*, co-conspirators are not liable for "all" actions of "all" members of a conspiracy; they would be liable for actions undertaken in furtherance of the conspiracy if all other elements of a claim are proven by a preponderance of the evidence). Moreover, in this case, only demonstrable antitrust injury suffered by any Plaintiff as a result of the conduct of a proven conspiracy's members—and only the members of the alleged conspiracy—that caused antitrust injury would be compensable.

Proposed Instruction 4. <u>Impact of State Laws</u>

You [have heard] [are about to hear] testimony about state laws relating to animal welfare that were enacted after 2008.

State laws enacted after 2008 are not relevant to whether defendants conspired to violate the antitrust laws before those laws were passed. A decision to do something today obviously cannot be explained by something that takes place tomorrow.

You may consider evidence about state laws passed after 2008 only for the limited purpose of whether the alleged conspiracy, or some other cause, contributed to the injury claimed by the Plaintiffs' during the time period between whenever the laws were passed and 2012, which is the end of the damage period claimed by Plaintiffs. You may not consider it for any other purpose. State laws enacted after the conduct of Defendants that Plaintiffs complain of in this trial are not relevant to explain why the Defendants took those actions.

**<u>Defendants' Position</u>:**

1. The proposed instruction is both incorrect and not in the nature of a limiting or interim instruction. For example, the use of the word "obviously" is more a comment than an instruction.

2. While events in the future may not bear on why decisions were made earlier in time, contemporaneous evidence regarding future laws is relevant. Thus, for example, evidence in 2007 that producers were aware of laws being proposed that were ultimately passed in or after 2008 is relevant to deciding whether Defendants joined the Certified Program as part of an overarching conspiracy to reduce supply or because they understood that the regulatory environment was changing and they made the decision to join or continue with the Certified Program because of that. Dr. Baye's testimony bears this out as he testified that in fact egg producers took actions years in advance to be prepared to comply with anticipated legal changes. Simply because Plaintiffs do not want to acknowledge earlier changes does not mean Defendants should be precluded from offering that evidence or asking the jury to draw reasonable inferences.

3. State laws are also relevant to whether the Certified Program is reasonable. To the extent states passed laws that mirrored, included components of, or went beyond the requirements of the Certified Program that Plaintiffs allege are anticompetitive, that is probative evidence of their reasonableness.

4. As written, paragraphs 2 and 3 are largely duplicative.

Proposed Instruction 5. <u>Animal Welfare Is Not An Antitrust Defense</u>

You have just heard testimony about animal welfare. This is an antitrust case. In evaluating whether a measure violated the antitrust laws, you are only to consider the effect on competition. Concern about animal welfare is not to be considered. Examples of positive effects on competition include higher output, lower price, lower costs, greater efficiency, and more consumer choice and consumer satisfaction.

**<u>Defendants' Position:</u>**

1. The proposed interim instruction is unnecessary, incorrect, and highly prejudicial. This Court has recognized many times that whether the Certified Program is a *bona fide* animal welfare program is a crucial issue in this litigation. As the Court noted in its October 16 decision denying the motion to exclude the testimony of Dr. Armstrong, "This Court has never said that any and all evidence about animal welfare is out of bounds and off limits. In fact, the avowed desire to protect animal welfare is central to the defense." The proposed instruction is effectively Plaintiffs' counsel conducting an end-run around this Court's ruling and asking the jury to ignore relevant evidence.

2. How to treat evidence regarding animal welfare is already in the parties' proposed final instructions.

3. This instruction is too broad. The Plaintiffs put the animal welfare issue in play when they claimed that the Certified Program is a sham and not a *bona fide* animal welfare program. Plaintiffs cannot be allowed to claim that the Certified Program is a sham and then preclude the very evidence that undermines that claim. Plaintiffs' counsel, both in his opening and in his examination of Mr. Baker, referred explicitly and implicitly to evidence that the Certified Program was not concerned with animal welfare. Defining what animal welfare is and whether the Certified Program promoted it is thus relevant and crucial.

Additionally, to the extent that Defendants' customers are concerned about animal welfare and conveyed those concerns to their trade association (the FMI) and their egg suppliers, their concern must absolutely be considered. Indeed, there were clear procompetitive benefits from the Certified Program, and those competitive benefits are minimized or ignored as part of Plaintiffs' instruction. At minimum, it will confuse the jury and more likely appear as a comment on the weight of the evidence by the Court.

Proposed Instruction 6.    Other Injury Evidence After 2008

You [have heard] [are about to hear] testimony about [type of injury evidence] after 2008.

[Description of evidence] after 2008 are not relevant to whether defendants conspired to violate the antitrust laws before [description of evidence].  A decision to do something today obviously cannot be explained by something that takes place tomorrow.

You may consider evidence about [description of evidence] after 2008 only for the limited purpose of whether the alleged conspiracy, or some other cause, contributed to the injury claimed by the Plaintiffs' during the time period between whenever the statements were made and 2012, which is the end of the damage period claimed by Plaintiffs. You may not consider that evidence for any other purpose.  [Description of evidence] after the conduct of Defendants that Plaintiffs complain of in this trial are not relevant to explain why the Defendants took those actions.

**Defendants' Position:**

1.  The proposed instruction is both incorrect and not in the nature of a limiting or interim instruction.

2.  While events in the future may not bear on why decisions were made earlier in time, contemporaneous evidence regarding future events is relevant.  *See* above.

3.  The proposed instruction is premature.  It is difficult to argue whether certain evidence is relevant for some purpose without knowing the specific nature of the evidence.

4.  Plaintiffs' counsel stressed that something happened in 2008 that changed the nature of the conspiracy, terminating it. On page 714 of the 10/19/23 transcript, during his opening, Plaintiffs' counsel stated:

11 When you hear anything after September of 2008,
12 remember they knew people were looking over their shoulder.
13 They knew that a reporter had been asking questions, writing
14 an article.  That's what they knew.
15 The evidence will show that the conspiracy that we're
16 going to prove is going to be from 1998 to September of 2008.[1]
17 Anything after that is just about injury.  Just about the

---

[1] Note, Plaintiffs actually allege a supply control conspiracy from 1999-2008 (Sec. Am Compl. ¶ 49 (Dkt. # 73); Apr. 2, 2014 Dep. Tr. S. Manion at 182:11-13 (counsel for Kraft (Jenner & Block) stating that "the relevant period … is 1999 to 2008), Ex. 1 hereto; Plaintiffs maintained this boundary in discovery, objecting to responding to discovery seeking information prior to 1999: "Plaintiff objects to Defendants' Interrogatories to the extent they seek information outside the relevant time period, namely, January 1, 1999 to December 31, 2008." *See*, *e.g.*, Jan. 31, 2013 Kellog Am. Resp. to Interrogs. at 2 (Defs. Tr. Ex. # 64); Jan 31, 2013 Kraft Am. Resp. to Interrogs. at 2 (Defs. Tr. Ex. # 141). Indeed, even Plaintiffs' proposed jury charge filed just a few months ago acknowledges that "The relevant time period is 1999 to [2008]." Appendix 13-2 to Pretrial Order at 7 (Dkt. # 279-13).

18 effect on the market from 2009 on.

Defendants are entitled to introduce post-2008 evidence to show that their conduct continued unabated and to refute the notion that any conspiracy ever existed and that they changed their conduct after a news article in September of 2008.

5. As written, paragraphs 2 and 3 are largely duplicative.

Dated: October 31, 2023

Respectfully submitted,

*/s/ Patrick M. Collins*
Patrick M. Collins (pcollins@kslaw.com)
Livia M. Kiser (lkiser@kslaw.com)
Patrick M. Otlewski (potlewski@kslaw.com)
Abigail Hoverman Terry (aterry@kslaw.com)
KING & SPALDING LLP
110 North Wacker Drive, 38th Floor
Chicago, IL 60606
Tel: (312) 995-6333

Lohr Beck (lohr.beck@kslaw.com)
(pro hac vice)
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel: (404) 572-2812

Brian E. Robison (brian@brownfoxlaw.com)
(pro hac vice)
BROWN FOX PLLC
6303 Cowboys Way, Suite 450
Frisco, TX 75034
Tel: (972) 707-2809

**Counsel for Defendant Cal-Maine Foods, Inc.**

*/s/ Robin P. Sumner*
Robin P. Sumner
(robin.sumner@troutman.com)
Kaitlin L. Meola
(kaitlin.meola@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
3000 Two Logan Square, 18th and Arch

*/s/ Jay L. Levine*
Donald M. Barnes
(dbarnes@porterwright.com)
Jay L. Levine (jlevine@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
2020 K. Street, N.W., Suite 600
Washington, D.C. 20006-1110

8

Streets
Philadelphia, PA 19103-2799
Tel: (215) 981-4000

Whitney R. Redding
(whitney.redding@troutman.com)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Union Trust Building
501 Grant Street, Suite 300
Pittsburgh, PA 15219-4429
Tel: (412) 454-5085

Molly DiRago
(Molly.DiRago@troutman.com)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
227 West Monroe Street, Suite 3900
Chicago, IL 60606
Tel: (312) 759-1923

*Counsel for Defendants United Egg Producers, Inc. & United States Egg Marketers, Inc.*

Tel: (202) 778-3000

James A. King (jking@porterwright.com)
Allen T. Carter (acarter@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
41 South High Street, Suite 2900
Columbus, OH 43215
Tel: (614) 227-2000

*Counsel for Defendant Rose Acre Farms, Inc.*

9