# Exhibit 5

Bunker Ramo Corp. v. United Business Forms, Inc., 713 F.2d 1272 (1983)
1983-2 Trade Cases P 65,515

713 F.2d 1272
United States Court of Appeals,
Seventh Circuit.

BUNKER RAMO CORPORATION, a Delaware
corporation, Plaintiff-Appellee,
v.
UNITED BUSINESS FORMS, INC., an Illinois
corporation, and Edward M. Reif, Defendants-
Appellants,
and
Marvin H. Cywan, Defendant.

No. 82–2173.
|
Argued Dec. 10, 1982.
|
Decided July 26, 1983.

**Synopsis**
Plaintiff corporation's original action alleging that
defendants engaged in scheme to defraud it by
falsifying purchase orders was dismissed, and plaintiff
thereafter brought similar action, including claims
under Sherman Act and Racketeer Influences and
Corrupt Organizations Act. Defendants filed motions
to dismiss on res judicata grounds, for lack of subject-
matter jurisdiction, and for failure to state a claim. The
United States District Court for the Northern District
of Illinois, James B. Parsons, J., denied motions, and
defendants appealed. The Court of Appeals, Walter E.
Hoffman, Senior District Judge, held that: (1)
judgment dismissing original suit which specifically
stated lack of subject-matter jurisdiction did not have
res judicata effect as to subsequent action; (2) plaintiff
failed to state cause of action under Sherman Act; and
(3) plaintiff stated cause of action under Racketeer
Influences and Corrupt Organizations Act sufficient to
withstand motion to dismiss.

Affirmed in part and reversed in part with
instructions.

**Procedural Posture(s):** On Appeal; Motion to
Dismiss; Motion to Dismiss for Failure to State a
Claim; Motion to Dismiss for Lack of Subject Matter
Jurisdiction.

West Headnotes (21)

[1]  **Res Judicata** Res Judicata
**Res Judicata** Issues or questions in
general

Valid final judgment on merits is res
judicata and is absolute bar to subsequent
action between the same parties on the
same cause of action, and prior judgment
is conclusive not only as to issues that
were decided, but also as to issues that
could have been raised.

10 Cases that cite this headnote

[2]  **Res Judicata** Particular Grounds or
Defects, Determinations Premised on

Final judgment will have full res judicata
effect only if it is on merits; dismissal
other than one on merits merely precludes
relitigation of issues decided.

9 Cases that cite this headnote

[3]  **Res Judicata** Lack of jurisdiction

Dismissal for lack of subject-matter
jurisdiction is not judgment on merits and
consequently will not bar later suit by
virtue of res judicata.

12 Cases that cite this headnote

[4]  **Res Judicata** Failure to state claim

Dismissal for failure to state claim upon
which relief can be granted is dismissal on
merits, and is res judicata with regard to
subsequent suit. Fed.Rules Civ.Proc. Rule
12(b)(6), 28 U.S.C.A.

4 Cases that cite this headnote

Bunker Ramo Corp. v. United Business Forms, Inc., 713 F.2d 1272 (1983)

1983-2 Trade Cases P 65,515

**[5]** **Federal Courts**🔑Dismissal or other disposition

**Res Judicata**🔑Effect of lack of jurisdiction

Once court expresses view that it lacks jurisdiction, court thereafter does not have power to rule on any other matter, and any finding made after determination that court lacks subject-matter jurisdiction carries no res judicata consequences.

12 Cases that cite this headnote

**[6]** **Res Judicata**🔑Lack of jurisdiction

Where trial judge, in dismissing original suit, specifically ruled that court did not have subject-matter jurisdiction to hear claim, further comments by judge suggesting that dismissal was on merits did not control, and thus, such judgment did not have res judicata effect as to subsequent action involving same parties.

8 Cases that cite this headnote

**[7]** **Antitrust and Trade Regulation**🔑
Cartels, Combinations, Contracts, and Conspiracies in General

Sherman Anti-Trust Act prohibits "[e]very contract, combination* * *, or conspiracy, in restraint of trade or commerce among the several States," and such language defines both conduct proscribed by statute and its jurisdictional reach. Sherman Anti-Trust Act, § 1, 15 U.S.C.A. § 1.

**[8]** **Commerce**🔑Monopolies and Anti-Trust Laws in General

"Interstate commerce" requirement of Sherman Act is satisfied by showing that challenged activity occurred in interstate commerce or, if activity is wholly local in nature, by showing that interstate commerce was substantially affected; interstate commerce nexus must be asserted in practical sense. Sherman Anti-Trust Act, § 1, 15 U.S.C.A. § 1.

**[9]** **Federal Civil Procedure**🔑Time of determination; reserving decision

In antitrust cases, dismissals prior to giving plaintiff opportunity for discovery should be granted very sparingly; action should not be dismissed unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

2 Cases that cite this headnote

**[10]** **Antitrust and Trade Regulation**🔑
Questions of law and fact

In antitrust cases, impact that defendants' activities may have upon interstate commerce is question of fact not normally susceptible of determination without scrutiny of proof that may be offered. Sherman Anti-Trust Act, § 1, 15 U.S.C.A. § 1.

1 Case that cites this headnote

**[11]** **Antitrust and Trade Regulation**🔑
Complaint

Where plaintiff bringing action for alleged violation of Sherman Act alleged that conspiracy had effect of restraining interstate commerce in that both plaintiff's and defendants' businesses were in interstate commerce, action was not subject to being dismissed for lack of nexus with interstate commerce merely because plaintiff had not yet demonstrated a substantial effect on interstate commerce as matter of practical economics. Sherman Anti-Trust Act, § 1, 15 U.S.C.A. § 1.

4 Cases that cite this headnote

**[12]** **Antitrust and Trade Regulation**🔑
Complaint

Complaint will not state cause of action

Bunker Ramo Corp. v. United Business Forms, Inc., 713 F.2d 1272 (1983)

1983-2 Trade Cases P 65,515

under antitrust laws unless alleged conduct is type of conduct such laws were intended to protect against, and when deciding whether complaint states claim for relief, this should be initial area of critical inquiry.

1 Case that cites this headnote

[13] **Antitrust and Trade Regulation**⚖️Rule of reason

"Rule of reason" is established standard of analysis for determining whether antitrust violation has been stated, and, under this rule, fact finder weighs all circumstances of case to decide whether restrictive practice should be prohibited as imposing unreasonable restraint on competition; it is necessary under rule of reason to show anticompetitive effects or actual harm to competition to establish antitrust violation and cause of action, and it is not unfair means defendants employed that is to be focus of inquiry, but whether these means lessened competition. Sherman Anti-Trust Act, § 1, 15 U.S.C.A. § 1.

12 Cases that cite this headnote

[14] **Antitrust and Trade Regulation**⚖️ Territorial Agreements
**Antitrust and Trade Regulation**⚖️ Illegal Restraints or Other Misconduct
**Antitrust and Trade Regulation**⚖️ Boycotts
**Antitrust and Trade Regulation**⚖️Tying Agreements
**Antitrust and Trade Regulation**⚖️Price Fixing in General

Certain types of conduct are so destructive of competition that they are considered per se violations of Sherman Act, and when per se offense is alleged, showing of anticompetitive effect is not required to establish violation, as conduct is considered anticompetitive without inquiry into precise harm caused; some of

activities accepted as per se offenses are price fixing, group boycotts, market allocation, and certain types of tying agreements. Sherman Anti-Trust Act, § 1, 15 U.S.C.A. § 1.

7 Cases that cite this headnote

[15] **Antitrust and Trade Regulation**⚖️Per se

Particular course of conduct will not be termed per se violation of Sherman Act until courts have had considerable experience with that type of conduct and application of rule of reason has inevitably resulted in finding of anticompetitive effects; only conduct that is manifestly anticompetitive will be considered per se offense. Sherman Anti-Trust Act, § 1, 15 U.S.C.A. § 1.

13 Cases that cite this headnote

[16] **Antitrust and Trade Regulation**⚖️ Complaint

Where plaintiff alleged in essence merely scheme to defraud it on part of defendants by falsification of purchase orders, and failed to show any anticompetitive effect of such fraud, plaintiff's allegations and reasonable inferences therefrom did not state cause of action under Sherman Act. Sherman Anti-Trust Act, § 1, 15 U.S.C.A. § 1.

1 Case that cites this headnote

[17] **Commerce**⚖️Remedies and proceedings in general

Section of Racketeer Influences and Corrupt Organizations Act which creates private right of action with treble-damage recovery for any person injured in his business or property by reason of defendant's participation in pattern of racketeering activity creates private right of action for parties injured by conduct involving pattern of racketeering activity,

without any requirement of prior criminal conviction for such conduct. 18 U.S.C.A. §§ 1962, 1964(c).

[18]     **Commerce**—Remedies and proceedings in general

Proof that defendant or enterprise is connected with organized crime is not required before such defendant or enterprise can be subject to provisions of Racketeer Influences and Corrupt Organizations Act. 18 U.S.C.A. § 1964.

7 Cases that cite this headnote

[19]     **Commerce**—Remedies and proceedings in general

Competitive or commercial injury is not required in order to state civil claim under section of Racketeer Influences and Corrupt Organizations Act creating private right of action with treble-damage recovery for any person injured in his business or property by reason of defendant's participation in pattern of racketeering activity. 18 U.S.C.A. §§ 1962, 1964(c).

7 Cases that cite this headnote

[20]     **Commerce**—Remedies and proceedings in general

Interstate commerce nexus requirement of Racketeer Influences and Corrupt Organizations Act is satisfied if enterprise affects interstate commerce through its activities, even if it is racketeering activities of enterprise that affect interstate commerce. 18 U.S.C.A. § 1962.

9 Cases that cite this headnote

[21]     **Commerce**—Remedies and proceedings in general

Complaint which alleged that defendants

"established, conducted and participated in an enterprise* * *which engaged in a pattern of racketeering activity and affected interstate commerce" stated cause of action under Racketeer Influences and Corrupt Organizations Act sufficient to withstand motion to dismiss. 18 U.S.C.A. §§ 1962, 1964(c).

14 Cases that cite this headnote

## Attorneys and Law Firms

**\*1274** Pamela S. Hollis, Chicago, Ill., for plaintiff-appellee.

James S. Gordon, Chicago, Ill., for defendants-appellants.
Before CUMMINGS, Chief Judge, WOOD, Circuit Judge, and HOFFMAN, Senior District Judge.[*]

[*]     Honorable Walter E. Hoffman, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

## Opinion

WALTER E. HOFFMAN, Senior District Judge.

The plaintiff, Bunker Ramo Corporation (Bunker Ramo), has filed two suits against these defendants for causes of action arising from the same operative facts. This is an interlocutory appeal under 28 U.S.C. § 1292(b) from orders entered by the District Court in the second suit. Defendants appeal from the denial of their motion to dismiss the complaint under the doctrine of **\*1275** *res judicata,* and from the denial of their motion to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

Plaintiff, Bunker Ramo, is a Delaware corporation with its principal place of business in Illinois. Defendant, United Business Forms (U.B.F.), is an Illinois corporation with its principal place of business in Illinois and manufactures and distributes office and

Bunker Ramo Corp. v. United Business Forms, Inc., 713 F.2d 1272 (1983)
1983-2 Trade Cases P 65,515

business forms. Defendant, Edward M. Reif, is the president of U.B.F. Defendant, Marvin H. Cywan, is an employee of Amphenol Industrial Division, an unincorporated division of Bunker Ramo. Cywan did not participate in this appeal.

Bunker Ramo alleges that during the years 1970 through 1976 the defendants engaged in a scheme to defraud the company by falsifying purchase orders, invoices, and delivery receipts for business forms that were never delivered but were paid for by Bunker Ramo. Bunker Ramo claims that Cywan ordered business forms from U.B.F. in excess of the amount needed by Bunker Ramo, knowing that the forms would never be delivered. U.B.F. and Reif billed Bunker Ramo for the forms by submitting false invoices. Bunker Ramo paid for the supplies it never received, relying on the false invoices from U.B.F. and Reif, and relying on false delivery receipts filled out by Cywan, which indicated that the forms had been delivered. According to Bunker Ramo, U.B.F. and Reif paid Cywan bribes in excess of $160,000 for his participation in the scheme. Bunker Ramo learned of the scheme in 1980 when Cywan was prosecuted for income tax evasion for failure to report as income the money he received from U.B.F. and Reif.

On August 21, 1980, Bunker Ramo filed the first of the two suits against the defendants. Count VII of the seven count complaint alleged that the defendants' conduct violated section 2(c) of the Robinson-Patman Act, 15 U.S.C. § 13(c).[1] The count was brought pursuant to 15 U.S.C. § 15 and jurisdiction was asserted under 28 U.S.C. § 1337. The remaining six counts were asserted under the court's pendent jurisdiction and charged all the defendants with fraudulent misrepresentation, commercial bribery, and conspiracy, and charged Cywan individually with breach of fiduciary duty.

[1]     15 U.S.C. § 13(c) provides:
        It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other

compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control of any party to such transaction other than the person by whom such compensation is so granted or paid.

Defendants U.B.F. and Reif moved pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. On April 2, 1981, Judge Aspen dismissed the complaint. Bunker Ramo Corp. v. Cywan, 511 F.Supp. 531 (N.D.Ill.1981).

On May 5, 1981, Bunker Ramo moved, pursuant to Fed.R.Civ.P. 60(b), for leave to amend the complaint to add new claims which were based on newly discovered facts. In Judge Aspen's absence the Emergency Judge continued the motion until May 12, 1981, when it could be heard by Judge Aspen.

Also on May 5, 1981, apparently fearing that the statute of limitations might run on some of their claims before the request for leave to file an amended complaint could be acted upon, Bunker Ramo filed the second suit against the defendants. Counts I and II of this seven count complaint allege that the defendant's conduct violated Title IX of the Organized Crime Control Act of 1970 (Racketeer Influences and Corrupt Organizations), Pub.L. No. 91–452, 84 Stat. 922, 941–948 (codified at 18 U.S.C. §§ 1961–1968) [hereinafter RICO]. The RICO **1276 counts were brought pursuant to 18 U.S.C. § 1964(c). Count III of the complaint alleges that the defendants' conduct violated section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. The Sherman Antitrust claim was brought pursuant to 15 U.S.C. § 15. Jurisdiction for the federal claims was asserted under 28 U.S.C. §§ 1331 and 1337. The remaining counts were asserted

under the court's pendent jurisdiction and charge all the defendants with fraudulent misrepresentation and conspiracy, and charge Cywan individually with breach of fiduciary duty.

On May 12, 1981, Judge Aspen denied Bunker Ramo's Fed.R.Civ.P. 60(b) motion for leave to file an amended complaint in the first suit because the subject matter of the proposed amended complaint was covered by the complaint in the second suit.

On June 26, 1981, defendants U.B.F. and Reif filed a motion to dismiss the second suit on the ground that the action was barred by the doctrine of *res judicata*. Defendant Cywan joined the motion on July 24, 1981. On August 5, 1981, Judge Aspen denied the motion to dismiss the action on *res judicata* grounds. U.B.F. and Reif, on August 14, 1981, moved pursuant to Fed.R.Civ.P. 59(e) to amend Judge Aspen's order of August 5, 1981, to allow an immediate appeal. Shortly thereafter the case was reassigned to Judge Parsons.

On September 11, 1981, Cywan filed a motion to dismiss the second complaint urging several grounds for dismissal. On September 14, 1981, U.B.F. and Reif moved pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) to dismiss the complaint. U.B.F. and Reif argued that the court lacked subject matter jurisdiction to hear the RICO and Sherman Antitrust claims and that, even if the court had jurisdiction, the complaint failed to state a claim upon which relief can be granted. Additionally, they argued that the pendent claims should be dismissed for lack of subject matter jurisdiction.

On April 30, 1982, Judge Parsons denied defendants' motions to dismiss the complaint. The court did amend the order of August 5, 1981, to allow an interlocutory appeal of the decisions. On July 1, 1982, this court granted U.B.F. and Reif permission to appeal the orders of August 5, 1981, and April 30, 1982.

*I. RES JUDICATA*

Defendants first appeal Judge Aspen's order of August 5, 1981, denying their motion to dismiss the second suit as barred by *res judicata*.

The minute order entered by Judge Aspen on August 5, 1981, denying defendants' motion to dismiss the second suit stated:

> Defendants' motion to dismiss this action as barred by principles of res judicata is denied. This Court's prior dismissal of Bunker Ramo Corporation's lawsuit against these same defendants for lack of subject matter jurisdiction, *Bunker Ramo Corporation v. Cywan,* (N.D.Ill.1981), reported in 511 F.Supp. 531 (1981), was not on the merits as that term is used within the context of the res judicata doctrine. Accordingly, our prior order only precludes relitigation of the jurisdictional and justiciability issues decided therein.

The minute order Judge Aspen entered on April 2, 1981, dismissing the first suit, clearly was based on a lack of subject matter jurisdiction. It stated:

> The section 2(c) commercial bribery claim will be dismissed for lack of subject matter jurisdiction. The pendent claims against UBF, Reif, and Cywan are dismissed without prejudice to a subsequent action in state court.

The Memorandum Opinion and Order Judge Aspen entered on the same day, however, is not as clear. Although in the Memorandum Opinion Judge Aspen ultimately dismissed the complaint for a lack of subject matter jurisdiction, he also reasoned that the complaint was defective because it did not allege the type of competitive injury that is cognizable under the Robinson-Patman Act. *Bunker Ramo Corp. v. Cywan,* 511 F.Supp. 531, 533–34 (N.D.Ill.1981). The Memorandum Opinion and Order stated:

> **\*1277** In the case at bar, Bunker Ramo, a manufacturer of electronic and mechanical

Bunker Ramo Corp. v. United Business Forms, Inc., 713 F.2d 1272 (1983)

1983-2 Trade Cases P 65,515

products, does not compete in any sense of the term with UBF, a distributor of office and business forms. Their relationship is one of buyer and seller, and regardless of any common law cause of action Bunker Ramo may have against UBF or Reif for fraudulent misrepresentation, commercial bribery, or conspiracy to induce a breach of fiduciary duty, the clear import of the cases cited above is that Bunker Ramo's injury is not cognizable under section 2(c) of the Robinson-Patman Act....

Accordingly, the section 2(c) commercial bribery claim will be dismissed for lack of subject matter jurisdiction. It is so ordered.

In the absence of a proper federal claim, the Court declines to exercise jurisdiction over the pendent state law claims. Courts and commentators generally agree that when a federal claim is dismissed for lack of subject matter jurisdiction, the court need not retain the pendent state claims in the absence of any prejudice to the parties or the commitment of significant judicial time and effort.

*Id.* at 534.

[1] A valid final judgment on the merits is *res judicata* and is an absolute bar to a subsequent action between the same parties on the same cause of action. *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981); *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948); *Harper Plastics, Inc. v. Amoco Chemicals Corp.,* 657 F.2d 939, 943–45 (7th Cir.1981); *Trujillo v. Colorado,* 649 F.2d 823, 825 (10th Cir.1981). The prior judgment is conclusive not only as to the issues that were decided but also as to issues that could have been raised. *Federated Department Stores, Inc.,* 452 U.S. at 398, 101 S.Ct. at 2427; *Harper Plastics, Inc.,* 657 F.2d at 945. 1B Moore's Federal Practice ¶ 0.405[1] (2d ed. 1982).

[2] [3] [4] A final judgment, however, will have full *res judicata* effect only if it is *on the merits. Harper Plastics, Inc.,* 657 F.2d at 943; *FTC v. Food Town Stores, Inc.,* 547 F.2d 247, 249 (4th Cir.1977);

*Thomas v. Consolidation Coal Co.,* 380 F.2d 69, 79 (4th Cir.1967). *See* Restatement (Second) of Judgments § 19 comment a (1982). A dismissal other than one on the merits merely precludes relitigation of the issues decided. *Harper Plastics, Inc.,* 657 F.2d at 943; 1B Moore's Federal Practice ¶ 0.405 [1]. A dismissal for lack of subject matter jurisdiction is *not* on the merits and consequently will not bar a later suit. *Costello v. United States,* 365 U.S. 265, 284–88, 81 S.Ct. 534, 544–46, 5 L.Ed.2d 551 (1961); *Harper Plastics, Inc.,* 657 F.2d at 943; *Boone v. Kurtz,* 617 F.2d 435, 436 (5th Cir.1980). *See* Restatement (Second) of Judgments §§ 20(1)(a), 13 comment d. A dismissal for failure to state a claim upon which relief can be granted, however, is a dismissal on the merits and is *res judicata. Federated Department Stores, Inc.,* 452 U.S. at 399 n. 3, 101 S.Ct. at 2428 n. 3. *See* Restatement (Second) of Judgments § 19 comment d; 1B Moore's Federal Practice ¶ 0.409[1].

The defendants argue that Judge Aspen's characterization that the April 2, 1981, dismissal "was not on the merits as the term is used within the context of the res judicata doctrine" is incorrect. They argue that on April 2, 1981, Judge Aspen issued two holdings and not just one. The first holding, that Bunker Ramo had not alleged an injury cognizable under the Robinson-Patman Act, was a ruling on the merits and thus *res judicata.* The second holding, that the court lacked subject matter jurisdiction, was not on the merits. The defendants admit in their opening brief that Judge Aspen was correct in dismissing the first suit for lack of subject matter jurisdiction. Appellant's Opening Brief at 15. The defendants also argue that reading Judge Aspen's opinion as a whole, Judge Aspen examined the merits of Bunker Ramo's claim and consequently it should receive *res judicata* effect. The defendants rely on *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), and *Harper Plastics, Inc. v. Amoco* *1278 *Chemicals Corp.,* 657 F.2d 939 (7th Cir.1981), to support their arguments.

In *Federated Department Stores,* seven plaintiffs had previously filed antitrust actions against the defendants in the United States District Court for the

Bunker Ramo Corp. v. United Business Forms, Inc., 713 F.2d 1272 (1983)
1983-2 Trade Cases P 65,515

Northern District of California. The District Court dismissed all of the complaints, "in their entirety" for failure to allege a competitive injury to business or property within the meaning of section 4 of the Clayton Act. 452 U.S. at 396–97, 101 S.Ct. at 2427. In its Memorandum and Order the District Court stated:

> The plaintiffs in these related cases cannot recover treble damages under section 4 of the Clayton Act because they have failed to allege an injury to a sufficient commercial enterprise or business in which they are engaged. Neither are they entitled to injunctive relief under section 16 since they are not irreparably injured. Therefore,

> It Is Hereby Ordered that this matter, in its entirety, be and is dismissed for failure of the plaintiffs to allege sufficient standing to sue.

Weinberg v. Federated Department Stores, Inc., 426 F.Supp. 880, 886 (N.D.Cal.1977). Five of the plaintiffs appealed the dismissal, but two of the plaintiffs refiled their actions in state court. Federated Department Stores, 452 U.S. at 396, 101 S.Ct. at 2426. The defendant removed the state actions to the District Court for the Northern District of California, where the actions were dismissed as barred by res judicata. The Court of Appeals for the Ninth Circuit reversed, feeling that res judicata must give way to "public policy" and "simple justice," it having previously reversed the District Court dismissal as to the five plaintiffs that appealed. Id. The Supreme Court reversed the Ninth Circuit, strictly applying the doctrine of res judicata. Id. at 398–402, 101 S.Ct. at 2427–29.

The defendants argue that the dismissal in Federated Department Stores and Judge Aspen's April 12, 1981, dismissal were on identical grounds: lack of standing because of the absence of competitive injury. Therefore, the defendants argue, since the dismissal in Federated Department Stores was on the merits, Judge Aspen's dismissal was also on the merits and res judicata. This court does not find the cases to be as parallel as defendants urge. The Supreme Court, in Federated Department Stores, was confronted with

whether it should endorse an exception to the doctrine of res judicata that had been recognized by the Ninth Circuit. It is clear from the Supreme Court opinion that it believed the district court dismissed the seven antitrust actions under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted and thus, the Supreme Court did not have to consider whether the dismissal had been on the merits. See 452 U.S. at 399 n. 3, 101 S.Ct. at 2428 n. 3. The Supreme Court was not confronted with a situation where the district court dismissed an action for lack of subject matter jurisdiction and dealt with the merits.

In Harper Plastics, Inc., Harper sued the defendants in United States District Court for the Northern District of Illinois, stating claims under the Clayton Act and Robinson-Patman Act. Counts I and II of the complaint alleged violations of 15 U.S.C. § 13(a). Count III of the complaint alleged violations of 15 U.S.C. § 13(e). As to the first two counts, the District Court determined that the allegations failed to satisfy the "in commerce" requirements of 15 U.S.C. § 13(a) and dismissed the counts for lack of subject matter jurisdiction. The third count was dismissed for failure to state a claim upon which relief can be granted. Harper Plastics, Inc., 657 F.2d at 942. While an appeal was pending, Harper filed a suit in state court based on the same conduct. The defendants sought relief from the state court proceeding in the federal district court and the District Court enjoined the state action pursuant to the Anti-Injunction statute, 28 U.S.C. § 2283. Id. at 942–43. This Court affirmed the District Court's issuance of an injunction, after determining that Count III of the original complaint had been dismissed on the merits and was thus res judicata. Id. at 943–46.

**\*1279** The defendants argue that Judge Aspen's dismissal of April 2, 1981, is indistinguishable from the District Court's dismissal in Harper Plastics, Inc. In Harper Plastics, Inc., it was the dismissal of Count III for failure to state a claim that was entitled to res judicata effect. This Court determined that the subsequent state suit did not raise claims that were separate and distinct from the claims raised in Count III and consequently the state suit was barred. Id. at

Bunker Ramo Corp. v. United Business Forms, Inc., 713 F.2d 1272 (1983)

1983-2 Trade Cases P 65,515

944–46. The first two counts, which were dismissed for lack of subject matter jurisdiction, were not even considered by this Court. *See id.* at 944. In *Harper Plastics, Inc.,* there were two distinct rulings by the district court; one count was dismissed on the merits, and two counts stating different claims were dismissed for lack of subject matter jurisdiction. The court had not issued a mixed ruling on one claim as we have here.

[5]  [6]  In the present case, the initial complaint alleged only one federal question claim and Judge Aspen specifically ruled that the court did not have subject matter jurisdiction to hear that claim. In our opinion, the finding that the court did not have subject matter jurisdiction controls here. Once a court expresses the view that it lacks jurisdiction, the court thereafter does not have the power to rule on any other matter. *Muscardin v. Brownell,* 227 F.2d 31, 32 (D.C.Cir.1955); *Arrowsmith v. United Press International,* 320 F.2d 219, 221 (2d Cir.1963). Any finding made by a court when the court has determined that it does not have subject matter jurisdiction carries no *res judicata* consequences. *See Madden v. Perry,* 264 F.2d 169 (7th Cir.1959); *Sachs v. Ohio National Life Insurance Co.,* 148 F.2d 128 (7th Cir.), *cert. denied,* 326 U.S. 753, 66 S.Ct. 92, 90 L.Ed. 452 (1945); *Smith v. Pittsburgh Gage and Supply Co.,* 464 F.2d 870 (3d Cir.1972); *American Guaranty Corp. v. United States,* 401 F.2d 1004, 185 Ct.Cl. 502 (Ct.Cl.1968). *Accord* Restatement (Second) of Judgments § 20 comment e; Restatement of Judgments § 49 comment c (1942); 1B Moore's Federal Practice ¶ 0.405[5]. Therefore, since Judge Aspen ruled that the court did not have subject matter jurisdiction, any other findings made by him or consideration of the merits have *no res judicata* effect. For this reason we affirm Judge Aspen's order of August 5, 1981, denying defendant's motion to dismiss Bunker Ramo's complaint as barred by *res judicata.*

## II. SHERMAN ANTITRUST CLAIM

Second, defendants appeal the part of the District Court's order of April 30, 1982, refusing to dismiss Bunker Ramo's Sherman Antitrust Act claim for failure to state a claim upon which relief can be granted.

Count III of the complaint alleges that the conduct of U.B.F., Reif and Cywan violates section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.[2] The count incorporates paragraph 2 of the complaint, which alleges that Bunker Ramo is "engaged in the business of manufacturing electronic and mechanical goods in interstate commerce," and paragraph 4, which alleges that U.B.F. is "engaged in the manufacture and interstate distribution of various office and business forms." Paragraph 23 alleges a combination and conspiracy "to engage in conduct having the effect of restraining interstate commerce." Paragraphs 24, 25, and 26 allege that the purpose and effect of the conspiracy was to "fix the price" of forms sold to Bunker Ramo at an "artificially high, non-competitive price" resulting in damages to Bunker Ramo in excess of $200,000.

2     15 U.S.C. § 1 provides in part:
      Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.

The defendants raise two issues to argue that the Sherman Antitrust claim is insufficient. First, that the complaint fails to allege the interstate commerce nexus which is necessary to establish a Sherman Antitrust claim. Second, that the complaint fails to allege either a vertical or horizontal price fixing conspiracy.

**\*1280**  [7]  The Sherman Antitrust Act prohibits "[e]very contract, combination ..., or conspiracy, in restraint of trade or commerce among the several States...." 15 U.S.C. § 1. This language defines both the conduct proscribed by the statute and its jurisdictional reach. *Crane v. International Health Care, Inc.,* 637 F.2d 715, 720 (10th Cir.1980). *See Berardinelli v. Castle & Cooke, Inc.,* 587 F.2d 37, 38

(9th Cir.1978). The jurisdictional question is whether defendants' conduct had a sufficient relationship to interstate commerce to subject it to regulation, and the substantive question is whether the defendant participated in anticompetitive conduct included within the term "restraint of trade." *Berardinelli v. Castle & Cooke, Inc.,* 587 F.2d at 38.

### A. Interstate Commerce Nexus

[8] The "interstate commerce" requirement of the Sherman Act is satisfied by a showing that the challenged activity occurred in interstate commerce or if the activity is wholly local in nature, by a showing that interstate commerce was substantially affected. *McLain v. Real Estate Board of New Orleans, Inc.,* 444 U.S. 232, 241, 100 S.Ct. 502, 508, 62 L.Ed.2d 441 (1980); *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 743, 96 S.Ct. 1848, 1851, 48 L.Ed.2d 338 (1976); *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975). The interstate commerce nexus must be asserted in a practical sense. *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. at 745 n. 3, 96 S.Ct. at 1852 n. 3; *Goldfarb v. Virginia State Bar,* 421 U.S. at 784 n. 11, 95 S.Ct. at 2011 n. 11. *See also Williams v. St. Joseph Hospital,* 629 F.2d 448, 454 (7th Cir.1980); *Crane v. International Health Care, Inc.,* 637 F.2d at 721–22.

The defendants argued before the District Court that Bunker Ramo's complaint alleges nothing from which it might be inferred that the challenged activity occurred in the flow of interstate commerce or that interstate commerce was substantially affected. The defendants argued that the complaint alleged that the business forms that were the object of the conspiracy were never delivered nor intended to be delivered and never moved in commerce, thus there was no meaningful impact on interstate commerce.

The District Court refused to dismiss the complaint under either Fed.R.Civ.P. 12(b)(1) or 12(b)(6) for failure to meet the interstate commerce requirement.

The court found that "paragraphs 2, 4 and 23 of the complaint sufficiently allege defendants' activities as having the necessary nexus to interstate commerce[,]" and that with "$200,000 of alleged injury ... these sales and nondelivery of business forms could possibly have entered the stream of commerce in some context." In reaching its conclusion that there was a sufficient allegation of a nexus with interstate commerce, the District Court relied on *Western Waste Services Systems v. Universal Waste Control,* 616 F.2d 1094 (9th Cir.), *cert. denied,* 449 U.S. 869, 101 S.Ct. 205, 66 L.Ed.2d 88 (1980), which interpreted the Supreme Court's decision in *McLain v. Real Estate Board of New Orleans, Inc.,* 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980).

In *McLain,* an action had been brought against real estate brokers in the New Orleans area under section 1 of the Sherman Antitrust Act for conspiring to fix brokers' fees. The district court dismissed the complaint for failure to meet the interstate commerce requirement of the Act, 432 F.Supp. 982 (E.D.La.1977). The Fifth Circuit affirmed the dismissal for lack of subject matter jurisdiction, 583 F.2d 1315 (5th Cir.1978). In addressing the allegations that were necessary to establish the interstate commerce nexus, the Supreme Court stated:

> To establish the jurisdictional element of a Sherman Act violation it would be sufficient for petitioners to demonstrate a substantial effect on interstate commerce generated by respondents' brokerage activity. Petitioners need not make the more particularized showing of an effect on interstate commerce caused by the alleged conspiracy to fix commission rates, or by those other aspects of respondents' **\*1281** activity that are alleged to be unlawful. The validity of this approach is confirmed by an examination of the case law. If establishing jurisdiction required a showing that the unlawful conduct itself had an effect on interstate commerce, jurisdiction would be defeated by a demonstration that the alleged restraint failed to have its intended

Bunker Ramo Corp. v. United Business Forms, Inc., 713 F.2d 1272 (1983)

1983-2 Trade Cases P 65,515

anticompetitive effect. This is not the rule or our cases. See *American Tobacco Co. v. United States,* 328 U.S. 781, 811 [66 S.Ct. 1125, 1139, 90 L.Ed. 1575] (1946); *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 225, n. 59 [60 S.Ct. 811, 846, n. 59, 84 L.Ed. 1129] (1940). A violation may still be found in such circumstances because in a civil action under the Sherman Act, liability may be established by proof of *either* an unlawful purpose or an anticompetitive effect. *United States v. United States Gypsum Co.,* 438 U.S. 422, 436, n. 13 [98 S.Ct. 2864, 2873, n. 13, 57 L.Ed.2d 854] (1978); see *United States v. Container Corp.,* 393 U.S. 333, 337 [89 S.Ct. 510, 512, 21 L.Ed.2d 526] (1969); *United States v. National Assn. of Real Estate Boards,* 339 U.S. 485, 489 [70 S.Ct. 711, 714, 94 L.Ed. 1007] (1950); *United States v. Socony-Vacuum Oil Co., supra,* [310 U.S.] at 224–25, n. 59 [60 S.Ct. at 844–46, n. 59].

444 U.S. at 242–43, 100 S.Ct. at 509. The Court also stated:

> To establish federal jurisdiction in this case, there remains only the requirement that respondents' activities which allegedly have been infected by a price-fixing conspiracy be shown "as a matter of practical economics" to have a not insubstantial effect on the interstate commerce involved. *Hospital Building Co. v. Rex Hospital Trustees,* 425 U.S., at 745 [96 S.Ct. at 1852]; *see Goldfarb v. Virginia State Bar,* [421 U.S.] at 784, n. 11 [95 S.Ct. at 2011, n. 11]; *Burke v. Ford,* 389 U.S. 320, 321–322 [88 S.Ct. 443, 444, 19 L.Ed.2d 554] (1967).

*Id.* at 246, 100 S.Ct. at 511. In *Western Waste Services Systems,* the Ninth Circuit interpreted the Supreme Court's holding in *McLain* as follows:

> The [Supreme] Court held that it was not necessary for the alleged antitrust

violations complained of to have affected interstate commerce as long as defendants' business activities, independent of the violations, affected interstate commerce.

616 F.2d at 1097.

In this appeal the defendants raise the same arguments concerning the sufficiency of an interstate commerce nexus that they raised before the District Court. Defendants also urge this Court to reject the Ninth Circuit's interpretation of *McLain* and adopt a more restricted view of the holding in *McLain,* as has been done by the First and Tenth Circuits.

In *Crane v. Intermountain Health Care, Inc.,* 637 F.2d 715 (10th Cir.1980), the Tenth Circuit interpreted *McLain* and rejected the view adopted by the Ninth Circuit in *Western Waste.* In *Crane,* the Tenth Circuit stated:

> An allegation that defendant's overall business has a general effect on interstate commerce is neither a necessary nor a sufficient condition for Sherman Act jurisdiction.... [It] is not a sufficient condition because even though the defendant's overall business may impact interstate commerce greatly, the challenged activity may in every practical economic sense be unrelated to interstate commerce. A mere allegation that the defendant's general or overall business affects interstate commerce falls short of alleging the required "critical relationship," for it leaves the court— impermissibly, under *McLain, see* 444 U.S. at 242, 100 S.Ct. at 509—to "presume" the nexus between the challenged activity and interstate commerce.
>
> ....
>
> In sum, we do not believe *McLain* signals a shift in analytical focus away from the challenged activity and towards the defendant's general or overall business. The analytical focus continues to be on the nexus, assessed in practical terms, **\*1282** between interstate commerce and the challenged activity.

637 F.2d at 723–24. In *Cordova & Simonpietri Insurance Agency, Inc., v. Chase Manhattan Bank,* 649 F.2d 36 (1st Cir.1981), the First Circuit, likewise, adopted a narrow reading of *McLain.* In *Cordova,* the First Circuit stated:

> While the Court's language is somewhat ambiguous, its specific reference to "respondents' brokerage activity" would seem to require plaintiffs in that price-fixing case to do more than simply point to some aspect of defendants' business which involves interstate commerce. Were so minimal a showing sufficient, the most local of conspiracies would fall inside, or outside, the Sherman Act, depending upon the fortuitous circumstance of whether a defendant firm happened to be owned by an interstate conglomerate. The Court does not sanction that result. Rather, its opinion simply emphasizes that a plaintiff need not prove that a defendant's unlawful activities *actually* affected interstate commerce; but it goes on to suggest that defendants' business still must be so connected with interstate commerce that it is logical, as a matter of practical economics, to believe that the unlawful activity will affect interstate commerce.

649 F.2d at 45.

The plaintiff, Bunker Ramo, argues that under the notice pleading standard of the federal rules, paragraph 23 of the complaint alleges an interstate commerce nexus sufficient to withstand a motion to dismiss. Bunker Ramo also urges this court to read *McLain* as meaning that an allegation that defendants' overall business affects interstate commerce satisfies the interstate commerce requirement, and under this approach paragraphs 2 and 4 of the complaint are a sufficient allegation.

[9] [10] [11] This Court does not find it necessary at this time to choose between the various interpretations of *McLain.* Dismissals in antitrust cases should not be granted lightly. *See McLain v. Real Estate Board of*

New Orleans, Inc., supra; Hospital Building Co. v. Trustees of Rex Hospital, supra. An action should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which will entitle him to relief. *McLain,* 444 U.S. at 246, 100 S.Ct. at 511; *Hospital Building Co.,* 425 U.S. at 746, 96 S.Ct. at 1853; *Havoco of America, Ltd. v. Shell Oil Co.,* 626 F.2d 549, 553 (7th Cir.1980). In antitrust cases, dismissals prior to giving the plaintiff an opportunity for discovery should be granted very sparingly. *Hospital Building Co.,* 425 U.S. at 746, 96 S.Ct. at 1853. *See also Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Williams v. St. Joseph Hospital,* 629 F.2d 448 (7th Cir.1980). The impact the defendants' activities may have upon interstate commerce is a question of fact not normally susceptible of determination without scrutiny of the proof that may be offered. *Williams,* 629 F.2d at 454. Bunker Ramo has alleged that the conspiracy had the effect of restraining interstate commerce and that plaintiff's and defendants' businesses were in interstate commerce. It may well be that Bunker Ramo can demonstrate a substantial effect on interstate commerce as a matter of practical economics, and at this point we cannot say beyond doubt that Bunker Ramo can prove no set of facts to show the required effect on interstate commerce. Thus we conclude that dismissal of the Sherman Antitrust claim, for lack of a nexus with interstate commerce, at this point in the proceeding, would be premature. *See McLain, supra; Hospital Building Co., supra; Williams v. St. Joseph Hospital, supra; Crane v. International Health Care, Inc., supra.*

### B. Unreasonable Restraint on Competition

Defendants argue next that Bunker Ramo has not stated a claim for relief under section 1 of the Sherman Antitrust Act because the complaint fails to allege either a vertical or horizontal price fixing conspiracy. Defendants assert that it is clear from the face of the complaint that the defendants' *1283 conduct does not involve a vertical price fixing

conspiracy between a supplier and reseller or a horizontal price fixing conspiracy among competing sellers. According to defendants, Bunker Ramo is attempting to characterize what is merely a common law fraud as an antitrust injury. They argue that the losses Bunker Ramo may have suffered were caused by a fraudulent invoicing scheme and *not* by a lessening of competition which is what the antitrust laws make actionable.

Bunker Ramo argues that the complaint states a claim for relief because the complaint alleges the existence of a conspiracy between the defendants to fix prices and this is sufficient to put defendants on notice that there is a Sherman Act violation. Bunker Ramo also recites facts that are not alleged in the complaint to argue that a horizontal or vertical price fixing conspiracy among the defendants did exist.

[12] A complaint will not state a cause of action under the antitrust laws unless the alleged conduct is the type of conduct the antitrust laws were intended to protect against. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). *See also In re Industrial Gas Antitrust Litigation: Bichan v. Chemetron Corp.,* 681 F.2d 514 (7th Cir.1982). When deciding whether a complaint states a claim for relief, this should be the initial area of critical inquiry.

On its face, section 1 of the Sherman Antitrust Act prohibits "*Every* contract, combination ..., or conspiracy, in restraint of trade or commerce...." 15 U.S.C. § 1 (emphasis added). Although this language is literally all encompassing, the courts have construed it as prohibiting only those combinations which *unreasonably restrain competition. Northern Pacific Railway v. United States,* 356 U.S. 1, 4–5, 78 S.Ct. 514, 517–18, 2 L.Ed.2d 545 (1958); *Sitkin Smelting & Refining Co. v. FMC Corp.,* 575 F.2d 440, 446 (3d Cir.), *cert. denied,* 439 U.S. 866, 99 S.Ct. 191, 58 L.Ed.2d 176 (1978). *See Havoco of America, Ltd. v. Shell Oil Co.,* 626 F.2d 549, 554 (7th Cir.1980). *See also Apex Hosiery Co. v. Leader,* 310 U.S. 469, 493 n. 15, 60 S.Ct. 982, 992 n. 15, 84 L.Ed. 1311 (1940) (The Sherman Antitrust Act addresses "business

competition" and was designed to prevent restraints which had a significant effect on such competition).

[13] The "rule of reason" is the established standard of analysis for determining whether an antitrust violation has been stated. *Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 49, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977); *United States v. Topco Associates, Inc.,* 405 U.S. 596 at 606–607, 92 S.Ct. 1126 at 1133, 31 L.Ed.2d 515; *Standard Oil Co. v. United States,* 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911). Under this rule the fact finder weighs all the circumstances of a case to decide whether a restrictive practice should be prohibited as imposing an "unreasonable restraint on competition." *Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. at 49, 97 S.Ct. at 2557; *United States v. Topco Associates, Inc.,* 405 U.S. at 607, 92 S.Ct. at 1133. It is necessary under the rule of reason to show anticompetitive effects, or actual harm to competition, to establish an antitrust violation and a cause of action. *Independence Tube Corp. v. Copperweld Corp.,* 691 F.2d 310, 322 (7th Cir.1982); *Phil Tolkan Datsun, Inc. v. Greater Milwaukee Datsun Dealers' Advertising Association,* 672 F.2d 1280, 1287 (7th Cir.1982); *Havoco of America, Ltd. v. Shell Oil Co.,* 626 F.2d at 554–59. It is not the unfair means the defendants employed that is to be the focus of the inquiry, but whether those means "lessened competition." *Phil Tolkan Datsun, Inc. v. Greater Milwaukee Datsun Dealers' Advertising Association,* 672 F.2d at 1288; *Havoco of America, Ltd. v. Shell Oil Co.,* 626 F.2d at 558.

[14] Certain types of conduct are so destructive of competition that they are considered *per se* violations of the Sherman Antitrust Act. *United States v. Topco Associates,* **\*1284** *Inc.,* 405 U.S. at 607–608, 1133–1134. *See Northern Pacific Railway v. United States,* 356 U.S. at 5, 78 S.Ct. at 518. When a *per se* offense is alleged, a showing of anticompetitive effect is *not* required to establish a Sherman Antitrust Act violation—the conduct is considered anticompetitive without an inquiry into the precise harm caused. *Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. at 49–50, 97 S.Ct. at 2557; *Havoco of America, Ltd. v. Shell Oil Co.,* 626 F.2d at 555; *Sitkin Smelting &*

Bunker Ramo Corp. v. United Business Forms, Inc., 713 F.2d 1272 (1983)
1983-2 Trade Cases P 65,515

*Refining Co. v. FMC Corp.,* 575 F.2d at 446. Some of the activities that have been accepted as *per se* offenses are price fixing, group boycotts, market allocation, and certain types of tying agreements. *See Havoco of America, Ltd. v. Shell Oil Co.,* 626 F.2d at 555. *See also United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); *Sitkin Smelting & Refining Co. v. FMC Corp.,* 575 F.2d at 447.

[15] Recently this court has cautioned against over-zealous application of the *per se* doctrine and has noted a judicial reluctance to extend its use. *Phil Tolkan Datsun, Inc. v. Greater Milwaukee Datsun Dealers' Advertising Association,* 672 F.2d at 1284–85; *Havoco of America, Ltd. v. Shell Oil Co.,* 626 F.2d at 555–56. A particular course of conduct will not be termed a *per se* violation of the Sherman Antitrust Act until the courts have had considerable experience with that type of conduct and application of the rule of reason has inevitably resulted in a finding of anticompetitive effects. *United States v. Topco Associates, Inc.,* 405 U.S. at 607–608, 1133; *Havoco of America, Ltd. v. Shell Oil Co.,* 626 F.2d at 555; *Evans v. S.S. Kresge Co.,* 544 F.2d 1184, 1191 (3d Cir.1976), *cert. denied,* 433 U.S. 908, 97 S.Ct. 2973, 53 L.Ed.2d 1092 (1977). *See Northwest Power Products, Inc. v. Omark Industries, Inc.,* 576 F.2d 83, 87–88 (5th Cir.1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1021, 59 L.Ed.2d 75 (1979). Additionally, only conduct that is "manifestly anticompetitive" will be considered a *per se* offense. *Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. at 49–50, 97 S.Ct. at 2557; *Phil Tolkan Datsun, Inc. v. Greater Milwaukee Datsun Dealers' Advertising Association,* 672 F.2d at 1285.

[16] Bunker Ramo alleges that the defendants conspired to fix the price of office and business forms sold to it and argues that this conduct is a *per se* violation of the antitrust laws. Alternatively, Bunker Ramo argues that the defendants' conduct is a violation of the antitrust laws under the rule of reason.

The mere attachment of a *per se* label by a plaintiff to defendants' conduct does not automatically invoke the *per se* doctrine and eliminate the requirement that the plaintiff allege and prove the anticompetitive effects of defendants' conduct. *See Havoco of America, Ltd. v. Shell Oil Co., supra; Sitkin Smelting & Refining Co. v. FMC Corp., supra.* The defendants' conduct must be analyzed to determine whether it should receive *per se* treatment.

Bunker Ramo alleges that there was a conspiracy between U.B.F., Reif, and Cywan, the purpose of which was to "fix the price" of forms sold to Bunker Ramo at an "artificially high, non-competitive price." The defendants allegedly fixed the price of goods sold and delivered to Bunker Ramo by using a false invoicing scheme to get Bunker Ramo to pay for additional goods that Bunker Ramo never received. This Court is of the opinion that the facts alleged in the complaint specify conduct that is more akin to a scheme to defraud than a price-fixing scheme. Plaintiff has not brought to the attention of this Court any case or authority where a course of conduct similar to that alleged here has been classified as price fixing or a *per se* offense. The existence of a scheme, as described by plaintiff, does not in our view create a presumptive violation of Sherman Act. We do not find the conduct, as alleged, to be so anticompetitive that the court should allow plaintiff to invoke the *per se* doctrine and **\*1285** avoid having to show its anticompetitive effect. Additionally, the court has not had considerable experience dealing with similar conduct under the antitrust laws and, when such conduct has been considered under the antitrust laws, the court has not found it routinely to be anticompetitive. We therefore conclude that the challenged conduct is *not per se* illegal.

Using the rule of reason, we are similarly unable to conclude that plaintiff has alleged a violation of the antitrust laws. Plaintiff has not alleged any anticompetitive effect arising from the defendants' conduct, nor are we able to infer such an effect from the facts alleged. The closest Bunker Ramo comes to implicating any effect on competition is a bare allegation that it was charged an "artificially high, non-competitive price." This court is unwilling to construe pleadings so liberally as to imply an

anticompetitive effect or harm to competition where there is not even a bare allegation of such an effect and the alleged facts do not support one.

We therefore conclude that plaintiff's allegations and all the reasonable inferences that can be drawn from them do not state a cause of action under section 1 of the Sherman Antitrust Act. Count III of the complaint must accordingly be dismissed, and the ruling of the District Court is reversed in this respect. We do note that in Bunker Ramo's brief it referred to certain conduct of the defendants, which was not alleged in the complaint, to support its arguments. These additional facts, if properly pleaded, *may* state a cause of action under the antitrust laws. Therefore, the district judge should give Bunker Ramo leave to amend the Sherman Act count of the complaint if it desires to do so.

### III. RICO CLAIM

Lastly, defendants appeal the part of the District Court's order of April 30, 1982, refusing to dismiss for failure to state a claim upon which relief can be granted Bunker Ramo's RICO claim.

The civil remedies provisions of RICO are contained in 18 U.S.C. § 1964. Section 1964(c)[3] creates a private right of action with a treble damage recovery for "[a]ny person injured in his business or property by reason of a violation of section 1962...." Section 1962, the proscriptive provision of RICO, establishes what conduct is illegal under RICO. 18 U.S.C. § 1962.

---

[3]    18 U.S.C. § 1964(c) provides:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

The definitions of the terms that are the key concepts in the proscriptive provisions of RICO are contained in 18 U.S.C. § 1961. "Enterprise," the first crucial concept, is defined as including "any individual, partnership, corporation, association, or other legal entity, ... any union or group of individuals associated in fact although not a legal entity," 18 U.S.C. § 1961(4), and any combination of them. *See, e.g., United States v. Thevis,* 665 F.2d 616, 625 (5th Cir.1982), *cert. denied,* 456 U.S. 1008, ——, 102 S.Ct. 2300, 3489, 73 L.Ed.2d 1303, 1370 (1982); *United States v. Huber,* 603 F.2d 387, 393–94 (2d Cir.1979), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 758 (1980). The next concept, "pattern of racketeering activity" is defined as "at least two acts of racketeering activity," which occurred within ten years of one another, with one of the acts occurring after the effective date of RICO. 18 U.S.C. § 1961(5).[4] The last concept, "racketeering activity" is defined in 18 U.S.C. § 1961(1) by listing predicate offenses that are considered racketeering activity. The list includes **\*1286** acts made punishable by state law, such as "murder, kidnapping, gambling, arson, robbery, bribery, extortion," and certain drug offenses; as well as specific federal offenses including mail fraud (18 U.S.C. § 1341) and interstate travel or transportation in aid of racketeering (18 U.S.C. § 1952), both of which are alleged in this case.

---

[4]    18 U.S.C. § 1961 provides:

As used in this chapter—

....

(4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

(5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity[.]

Section 1962⁵ makes it unlawful to (1) invest income derived from a pattern of racketeering activity in any enterprise, 18 U.S.C. § 1962(a); (2) acquire or maintain any interest in any enterprise through a pattern of racketeering activity, 18 U.S.C. § 1962(b), and (3) conduct any enterprise or participate in the conduct of the affairs of any enterprise through a pattern of racketeering activity, 18 U.S.C. § 1962(c). For the activity to be unlawful the enterprise that is involved must be engaged in or its activities affect interstate or foreign commerce. 18 U.S.C. § 1962. It is also unlawful to conspire to violate the substantive provisions of section 1962. 18 U.S.C. § 1962(d).

---

⁵     18 U.S.C. § 1962 provides:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition or any interest in, or the establishment or operation of, any enterprise which is engaged in or the activities of which affect, interstate or foreign commerce....

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or

collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

Counts I and II of the complaint allege that defendants U.B.F., Reif, and Cywan "established, conducted and participated in an enterprise ... which engaged in a pattern of racketeering activity and affected interstate commerce," in violation of section 1962 of RICO. The alleged pattern of racketeering activity consisted of acts that violated Ill.Rev.Stat. ch. 38 §§ 29A–1, –2 (commercial bribery), 18 U.S.C. § 1341 (mail fraud), and 18 U.S.C. § 1952 (interstate travel or transportation in aid of racketeering). The RICO counts are brought under section 1964(c) and pursuant to that section Bunker Ramo seeks to recover treble its actual damages which are in excess of $200,000, together with attorneys' fees and costs.

Defendants U.B.F. and Reif raise three arguments challenging the sufficiency of the RICO claim. First, that the complaint does not allege that defendants have been previously convicted of violating section 1962, an essential element for liability under section 1964(c). Second, that Bunker Ramo has not suffered a competitive injury and the complaint does not allege any competitive injury. Last, that the complaint does not allege that the enterprise was engaged in or that its activities affected interstate commerce.

*A. Prior Conviction for Violating Section 1962*

[17] Defendants argue first that a criminal conviction for violating section 1962 is a required element for a civil action under section 1964(c). Consequently, since the defendants have not been criminally convicted of violating any provision of section 1962, they cannot be civilly liable under RICO. Defendants rely on the literal language of section 1964(c) to support their argument. Section 1964(c) provides that any person injured in his business or property "by reason *1287 of a violation of section 1962" may recover treble damages. Defendants argue that

"violation" as used in section 1962 must mean "conviction." Defendants point out that the treble damages provision of RICO differs from section 4 of the Clayton Act which provides treble damages for injury to business or property "by reason of anything forbidden in the antitrust laws." According to defendants, this difference in language indicates that a criminal conviction under 18 U.S.C. § 1963 for violating section 1962 is an essential element for civil liability under section 1964(c). Defendants also argue that section 1962 is a criminal statute and Congress did not intend a charge of criminal conduct to be adjudicated in a civil proceeding.

The District Court concluded that a civil RICO action under section 1964(c) can be maintained without a prior criminal conviction. We agree that section 1964(c) creates a private right of action for parties injured by conduct that violates section 1962 without any requirement of a prior criminal conviction for that conduct.

In *United States v. Cappetto,* 502 F.2d 1351 (7th Cir.1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975), this Court upheld the civil remedies in section 1964, recognizing that Congress has the authority to provide for both civil and criminal enforcement of a statute. In *USACO Coal Co. v. Carbomin Energy, Inc.,* 689 F.2d 94 (6th Cir.1982), the Sixth Circuit specifically held that a criminal conviction is *not* required before a civil action can be maintained under RICO. 689 F.2d at 95 n. 1. The Sixth Circuit stated:

> We find nothing in the plain language of RICO to suggest that civil liability under § 1964(c) is limited only to those already convicted or charged with criminal racketeering activity. Section 1964(c) states that an action for damages may be maintained by any person injured in his business or property by reason of a violation of § 1962. *Bennett v. Berg,* 685 F.2d 1053 (8th Cir.1982). Section 1962 merely describes acts that are "unlawful" under RICO. Section 1963 provides that violations of § 1962 are criminal, just as §

1964(c) provides that violations of § 1962 create a private right of action for damages. If Congress had intended to limit liability under § 1964(c) only to those convicted of or charged with RICO crimes, it would have done so within § 1964(c) by referring to § 1963 or by otherwise specifically indicating that a conviction under § 1963 is a basis for civil damages. By referring in § 1964(c) only to the unlawful acts of § 1962, Congress has created a civil remedy that is independent of criminal proceedings under § 1963. We believe this literal reading of RICO is consistent with the approach of *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), and the Supreme Court's recognition in that case that Congress intended that RICO be liberally construed to effectuate its remedial purposes.

*Id.* We agree with the Sixth Circuit. *See also Parnes v. Heinhold Commodities, Inc.,* 487 F.Supp. 645, 647 (N.D.Ill.1980); *Farmers Bank v. Bell Mortgage Co.,* 452 F.Supp. 1278, 1280 (D.Del.1978).

### B. Competitive Injury Requirement

[18] Defendants argue next that the RICO claim is insufficient because Bunker Ramo has not adequately alleged a "competitive injury." Defendants urge that the plaintiff must have suffered a competitive injury to have a claim under section 1964(c).[6] Defendants rely on *North Barrington* **\*1288** *Development, Inc. v. Fanslow,* 547 F.Supp. 207 (N.D.Ill.1980), to support their argument. In *North Barrington Development,* the district court held that a "plaintiff must allege how it was injured competitively by the RICO violation in order to state a cause of action under § 1964(c)."

[6] In conjunction with the competitive injury argument, defendants also pronounce that they "UBF and Reif are hardly racketeers."

Bunker Ramo Corp. v. United Business Forms, Inc., 713 F.2d 1272 (1983)

1983-2 Trade Cases P 65,515

If by raising this point, defendants are trying to argue that some connection with "organized crime" is required before a person can be subject to the provisions of RICO, such an argument is specious. It is well-established that RICO does not require proof that the defendant or the enterprise are connected with organized crime. *United States v. Aleman,* 609 F.2d 298, 303–304 (7th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); *Bennett v. Berg,* 685 F.2d 1053, 1063 (8th Cir.1982), *reh'g en banc granted* Sept. 17, 1982; *United States v. Vignola,* 464 F.Supp. 1091, 1095–96 (E.D.Pa.1979), *aff'd,* 605 F.2d 1199 (3d Cir.1979), *cert. denied,* 444 U.S. 1072, 100 S.Ct. 1015, 62 L.Ed.2d 753 (1980); *Parnes v. Heinhold Commodities, Inc.,* 487 F.Supp. 645, 646 (N.D.Ill.1980); *D'Iorio v. Adonizio,* 554 F.Supp. 222, 230 (M.D.Pa.1982).

[19] The District Court in this case determined that competitive injury is not required to state a cause of action under section 1964(c), and upheld the RICO counts as sufficient.

This specific issue was decided by this Court in *Schacht v. Brown,* 711 F.2d 1343 at 1357–58 (7th Cir.1983). In *Schacht,* we found that requiring competitive injury before a RICO civil claim is stated did not agree with the plain language of the statute nor fulfill the purposes of RICO or the Congressional intent. *Id.,* at 1357, 1358. Consequently, this court held that competitive or commercial injury is *not* required in order to state a RICO civil claim. *Id.* As pointed out in *Schacht,* other courts and commentators have also reached this conclusion. *See e.g. Bennett v. Berg,* 685 F.2d 1053, 1059 (8th Cir.1982), *reh'g en banc granted* Sept. 17, 1982; *D'Iorio v. Adonizio,* 554 F.Supp. 222, 230 n. 5 (M.D.Pa.1982); Note, *Civil RICO: The Temptation and Impropriety of Judicial Restriction,* 95 Harv.L.Rev. 1101, 1109–14 (1982).

In *Hellenic Lines, Ltd. v. O'Hearn,* 523 F.Supp. 244 (S.D.N.Y.1981), the district court rejected the argument that competitive injury is required to state a civil RICO claim, in a suit where the fact situation is strikingly similar to the one pled here. The plaintiff alleged that the defendants paid kickbacks to various employees of the plaintiff to induce them to accept padded bills. 523 F.Supp. at 246. The defendants challenged the sufficiency of the complaint, arguing that the plaintiff could show no competitive injury and thus a civil RICO claim had not been stated. The district court rejected the argument that competitive injury was required and found the complaint sufficient in this respect to state a claim under RICO. *Id.* at 248. The court stated:

> RICO permits a suit by anyone "injured in his business or property in violation of Section 1962...." 18 U.S.C. § 1964(c). There is no express requirement that there be some "competitive" injury nor does it appear that Congress intended there to be such a requirement. RICO does not countenance racketeering activity so long as it is done uniformly among competing concerns. Moreover, the broad remedial purposes of RICO clearly permits private law suits by a firm forced to pay bribes or kickbacks of any kind. [Plaintiff] was directly injured if, as alleged, it paid for services it never received, the proceeds of which were used to pay off [its] employees and to bribe union officials. RICO was addressed to the precise form of racketeering activity which allegedly took place here.

*Id.* We reach the same conclusion here.

*C. Enterprise Nexus with Interstate Commerce*

Finally, defendants argue that the complaint fails to allege that the enterprise was engaged in, or that its activities affected, interstate commerce as required by section 1962. The complaint alleges only that the enterprise engaged in a pattern of racketeering activity and this activity affected interstate commerce. This allegation is irrelevant, according to defendants, since it is the enterprise that must affect interstate commerce, not the racketeering activity. Additionally,

Bunker Ramo Corp. v. United Business Forms, Inc., 713 F.2d 1272 (1983)
1983-2 Trade Cases P 65,515

defendants argue that the activities that are the subject of the complaint are wholly intrastate in nature; asserting that the claim is based on the fact that "no goods at all moved" and there is no allegation that any person traveled across a state line to perform any act. Defendants cite *United States v. Nerone,* 563 F.2d 836 (7th Cir.1977), *cert. denied,* 435 U.S. 951, 98 S.Ct. 1577, 55 L.Ed.2d 800 (1978), as supporting this argument. Finally, defendants assert that it is irrelevant that Bunker **\*1289** Ramo or U.B.F. are engaged in interstate commerce or that their activities affect interstate commerce, since neither of them is the alleged enterprise.

Bunker Ramo urges that paragraph 18 of the complaint makes the necessary allegation that the enterprise affects interstate commerce. Paragraph 18 states:

> UBF and its president Reif established, conducted and participated in an enterprise with Cywan which engaged in a pattern of racketeering activity that affected interstate commerce by committing the following, among others, acts....

Paragraph 10 makes the same allegation relating to Cywan. According to plaintiff, the phrase "affected interstate commerce" modifies both "enterprise" and "pattern of racketeering activity" and is sufficient for notice pleading.

[20] Defendants' argument that it is the enterprise, isolated from the racketeering activity, that must affect interstate commerce is not supported by the law. To establish a violation of RICO, a plaintiff must establish that the enterprise either engaged in or pursued activities affecting interstate commerce. 18 U.S.C. § 1962. *See United States v. Nerone,* 563 F.2d at 852. Several cases do contain language to the effect that it is the activity of the enterprise and not the acts of racketeering themselves that must have an effect on interstate commerce. *See, e.g., United States v. Long,* 651 F.2d 239, 241 (4th Cir.), *cert. denied,* 454 U.S. 896, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *United States v. Altomare,* 625 F.2d 5, 8 n. 8 (4th Cir.1980);

*United States v. Rone,* 598 F.2d 564 (9th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); *United States v. Vignola,* 464 F.Supp. 1091, 1097, 1100 (E.D.Pa.), *aff'd,* 605 F.2d 1199 (3d Cir.1979), *cert. denied,* 444 U.S. 1072, 100 S.Ct. 1015, 62 L.Ed.2d 753 (1980). The language in these cases, however, is in response to the argument that each act of racketeering activity must affect interstate commerce for there to be a RICO violation. *See United States v. Rone,* 598 F.2d at 573; *United States v. Vignola,* 464 F.Supp. at 1097. We do not read these cases to mean that an enterprise that has an effect on interstate commerce through its racketeering activities does not satisfy the statutory requirement. The interstate commerce nexus requirement of RICO is satisfied if an enterprise affects interstate commerce through its activities, even if it is the racketeering activities of the enterprise that affect interstate commerce.

Defendants' reliance on *United States v. Nerone, supra,* to argue that the activities which are the subject of the complaint are wholly intrastate in nature and do not affect interstate commerce is misplaced. In *Nerone,* this court determined that the RICO convictions could not be sustained because the government never attempted to prove that the enterprise, a casino operation, was engaged in or affected interstate commerce. 563 F.2d at 852–55. There was a complete lack of proof of any effect on interstate commerce. Such an argument is premature at the pleading stage of a case.

[21] We believe that the complaint sufficiently alleges that the enterprise affected interstate commerce. The complaint alleges the existence of an enterprise that engaged in a pattern of racketeering activity and had an effect on interstate commerce. We cannot say, at this stage, that Bunker Ramo can prove no set of facts to show the enterprise affected interstate commerce; especially in light of the minimal criteria for finding a nexus with interstate commerce. *See United States v. Nerone,* 563 F.2d at 851, 854; *United States v. Rone,* 598 F.2d at 573; *D'Iorio v. Adonizio,* 554 F.Supp. at 231. The complaint adequately alleges a nexus

between the enterprise and interstate commerce to state a claim under RICO.


CONCLUSION

The August 5, 1981, decision of the District Court refusing to dismiss the suit as barred by *res judicata* is affirmed. The April 30, 1982 decision of the District Court finding the complaint sufficient to state a **\*1290** Sherman Antitrust Act claim is reversed because no anticompetitive effect is alleged nor can any be implied from the facts as alleged. Plaintiff should be given leave to amend the Sherman Act count if it so desires. The District Court's decision on the Sherman Act claim in all other respects is affirmed. The April 30, 1982 decision of the District Court finding the complaint sufficient to state a RICO claim is affirmed.


Affirmed In Part,

Reversed In Part With Instructions.

**All Citations**

713 F.2d 1272, 1983-2 Trade Cases P 65,515

**Bunker Ramo Corp. v. United Business Forms, Inc., 713 F.2d 1272 (1983)**

1983-2 Trade Cases P 65,515

---

**End of Document**                                                  © 2023 Thomson Reuters. No claim to original U.S. Government Works.