**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KRAFT FOODS GLOBAL, INC., THE KELLOGG COMPANY, GENERAL MILLS, INC., and NESTLÉ USA, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:11-cv-08808 |
| v. | ) ) | Judge Steven C. Seeger |
| UNITED EGG PRODUCERS, INC., UNITED STATES EGG MARKETERS, INC., CAL-MAINE FOODS, INC., and ROSE ACRE FARMS, INC. | ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' REVISED JURY INSTRUCTIONS**

Plaintiffs submitted jury instructions during the pretrial process.  In light of the evidence at trial and the rulings of the Court, Plaintiffs submit these revised jury instructions.  Plaintiffs' revised instructions focus on the substantive issues the jury needs to decide.

For the Court's guidance in reviewing these instructions, we explain what is contained in these revised instructions.  Plaintiffs have revised their prior instructions to track the Court's preliminary jury instructions.  Plaintiffs repeat the four elements the Court included in its preliminary instruction (*infra,* Instruction 1) and adopt the Court's instructions regarding conspiracy (*infra,* Instructions 2 through 6).  While similar in substance to the instructions Plaintiffs previously submitted, Plaintiffs believe the Court's instructions should be used at the end of the trial.  Plaintiffs provide per se and rule of reason alternatives (*infra*, Instructions 7 through 14), followed by instructions on other elements (*infra,* Instructions 15 to 16).

Finally, Plaintiffs present several other instructions relevant to liability, some of which concern issues that have arisen at trial (*infra,* Instruction 17 through 28).

Plaintiffs have previously submitted general instructions, which are largely agreed. Dkt. 289-12 (agreed general instructions); 289-13 at pp.11-18 (disputed general instructions). Plaintiffs' general instructions have not changed and therefore Plaintiffs do not resubmit those instructions.

# TABLE OF CONTENTS

PLAINTIFFS' REVISED JURY INSTRUCTIONS ........................................................................1

1.  Section 1 Elements.............................................................................................................4

2.  Contract or Combination....................................................................................................5

3.  Definition of Conspiracy....................................................................................................6

4.  Explanation of Conspiracy.................................................................................................7

5.  Evidence of Conspiracy .....................................................................................................8

6.  Membership in Conspiracy.................................................................................................9

7.  Restraint of Trade Introduction........................................................................................11

8.  Restraint of Trade .............................................................................................................12

9.  Unreasonable: Per Se Illegal Practices ...........................................................................13

10. Alternative to Judicially-Mandated Per Se Analysis: Jury To Decide ...........................14

11. Alternative to Judicially-Mandated Per Se Analysis: Rule of Reason Overview............15

12. Proof Of Competitive Harm/Relevant Market.................................................................16

13. Evidence Of Competitive Benefits ..................................................................................17

14. Balancing The Competitive Effects .................................................................................18

15. Interstate Commerce ........................................................................................................19

16. Cause of Injury/Pass-Through Irrelevant........................................................................20

17. Motive Not A Defense......................................................................................................21

18. No Defense of In Pari Delicto..........................................................................................22

19. Limiting Supply ...............................................................................................................23

20. Trade Organization May Commit Antitrust Violations....................................................24

21. Passage of Time ...............................................................................................................25

22. Presence of Counsel Defense...........................................................................................26

23. Financial Performance......................................................................................................27

24.    Coconspirators Lost Money .............................................................28

25.    Role of the USDA ...........................................................................29

26.    Impact of State Laws ......................................................................30

27.    Animal Welfare Is Not An Antitrust Defense ................................31

28.    Other Injury Evidence After 2008 .................................................32

29.    No quantification of damages .........................................................33

1.   Section 1 Elements

Plaintiffs challenge Defendants' conduct under Section 1 of the Sherman Act.

The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace.  The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.  I may refer to the Sherman Act as the antitrust laws.

Section 1 prohibits contracts, combinations, and conspiracies that unreasonably restrain trade.  At the beginning of the case, I explained in my preliminary instructions that to establish a violation of Section 1 of the Sherman Act, plaintiffs must prove certain elements.  I am now going to explain what those mean.

As I said at the start of the trial, Plaintiffs must prove the following:

(1)      the existence of a contract, combination, or conspiracy between or among at least two separate entities;

(2)      that the contract, combination, or conspiracy unreasonably restrains trade;

(3)      that the restraint affects interstate or foreign commerce; and

(4)      that the restraints I instructed you are unreasonable and that you found to be unreasonable caused Plaintiffs to suffer an injury to their business or property.

**Source**: Court's Preliminary Instruction, Tr. at p. 642:1-21 (modified).

2.   Contract or Combination

The first element I just stated was "a contract, combination, or conspiracy between or among at least two separate entities."  That requires me to instruct you about a conspiracy, which is a word that parties have mentioned a lot.

### 3. Definition of Conspiracy

Plaintiffs allege that defendants entered a conspiracy to restrain trade by limiting the supply of eggs in order to increase prices of eggs and egg products. Plaintiffs allege that the conspirators engaged in the following manner and means in furtherance of the conspiracy: (1) the early slaughter, early molting, and reduction in placement of hens to reduce the number of egg-laying hens; (2) the export of eggs to reduce the number of eggs in the domestic market; (3) banning backfilling of egg-producing hens; and (4) the henhouse density restrictions. Defendants deny they entered into a conspiracy.

A conspiracy is an agreement or understanding between two or more persons or businesses to restrain trade in the way alleged by plaintiffs.

Plaintiffs must prove both of the following elements by a preponderance of the evidence:

(1)     that the alleged conspiracy existed; and

(2)     that the defendant knowingly became a member of that conspiracy. To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason.

**Source**: Court's Preliminary Instruction, Tr. at pp. 642:24-643:9, 15-17 (modified to include plaintiffs' allegations, as shown).

4.  Explanation of Conspiracy

The basis of a conspiracy is an agreement or understanding between two or more persons or businesses.  An agreement or understanding between two or more persons or businesses exists when they share a commitment to a common scheme.

To establish the existence of a conspiracy, the evidence need not show that its members entered into a formal or written agreement.  The agreement itself may have been entirely unspoken.

A person or business can become a member without full knowledge of all the details of the conspiracy, the identity of all of its members, or the parts such members played in the alleged conspiracy.  The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details of the means by which they would accomplish their purpose.

To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish a common purpose.

A conspiracy may be formed without all parties coming to an agreement at the same time. Similarly, it is not essential that all persons or businesses acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement.  It is also not necessary that all of the means or methods claimed by plaintiffs were agreed upon to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that everyone alleged to be members of the conspiracy were actually members.  It is the agreement or understanding to limit egg supply that constitutes a conspiracy. Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed. It is enough that a participant knowingly agreed or conspired to use at least one of the means or methods designed to achieve the common objective.


**Source**: Court's Preliminary Instruction, Tr. at pp. 643:18-645:4 (modified with addition of final sentence); ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction Nos. A-1,  A-4 at pp. 13-14, 21; *Toys R Us, Inc. v. FTC*, 221 F.3d 928, 932, 935 (7th Cir. 2000) (finding horizontal conspiracy among toy manufacturers in response to a major retailer's demand that they not supply warehouse club stores particular toys sold to the major retailer where it was demonstrated that toy manufacturers agreed to the demand only "on the condition that their competitors would do the same").

5.   Evidence of Conspiracy

Plaintiffs may prove the existence of the alleged conspiracy through direct evidence, circumstantial evidence, or both.  Again, direct evidence is explicit and requires no inferences to establish the existence of the alleged conspiracy.

Direct evidence of an agreement may not be available, and therefore a conspiracy also may be shown through circumstantial evidence.  You may infer the existence of a conspiracy from the circumstances, including what you find the alleged members actually did and the words they used.

While conspiracies are often carried out in secret, secrecy is not an element of a conspiracy. Conspirators may act openly or not, as best suits their purpose.

Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and not have met or assembled together, does not by itself establish the existence of a conspiracy.

If they acted similarly but independently of one another, without any agreement among them, then there would not be a conspiracy.

In determining whether an agreement or understanding between two or more persons or businesses has been proved, you must view the evidence as a whole and not piecemeal.

**Source**: Court's Preliminary Instruction, Tr. at pp. 645:5-645:22, 645:24-646:1 (modified); *Federal Trade Comm'n v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411 (1990) (work stoppage conspiracy unlawful although it was publicly disclosed); *San Juan Racing Ass'n Inc. v. Asociacion de Jinetes de Puerto Rico, Inc., et al.,* 590 F.2d 31, 32 (1st Cir. 1979) (holding that jockeys had participated in conspiracy to illegally control prices in violation of antitrust laws finding that jockeys' "openness [did] not immunize agreement" where jockeys refused to race at night of scheduled race until their fees were increased); *United States v. Spock,* 416 F.2d 165, 170 (1st Cir. 1969) (paragraph 3).

6.   Membership in Conspiracy

Before you can find that a defendant was a member of the conspiracy alleged by plaintiffs, the evidence must show that that defendant knowingly joined in the unlawful plan at its inception, or at some later time, with the intent to further the purpose of the conspiracy. To act knowingly means to participate deliberately and not because of mistake, accident, or other innocent reason.

A person or business may become a member of a conspiracy without full knowledge of all the details of the conspiracy, the identity of all its members, or the parts they played.

Knowledge of the essential nature of the plan is enough.  On the other hand, a person or business who has no knowledge of a conspiracy but happens to act in a way that helps the conspiracy succeed, does not thereby become a conspirator.

A person or business who knowingly joins an existing conspiracy, or who participates only in part of a conspiracy with knowledge of the overall conspiracy, is just as responsible as if they had been one of those who formed or began the conspiracy and participated in every part of it.

In determining whether a defendant was a member of the alleged conspiracy, you should consider only the evidence about that particular defendant's statements and conduct, including any evidence of that defendant's knowledge and participation in the events involved and any other evidence of that particular defendant's participation in the conspiracy alleged.

The same approach applies to evidence about any alleged co-conspirators who are not defendants in this case, such as other egg producers.

In determining whether another egg producer who is not a defendant was a member of the alleged conspiracy, you should consider only the evidence about that company's statements and conduct, including any evidence of that company's knowledge and participation in the events involved and any other evidence of that company's participation in the conspiracy alleged.

You may not find that a defendant or an alleged co-conspirator was a member of a conspiracy based only on its association with or knowledge of wrongdoing.  But it is a factor you may consider to determine whether defendant or an alleged co-conspirator was a member of the alleged conspiracy.

If you find that the alleged conspiracy existed, then the acts and statements of the conspirators are binding on all of those whom you find were members of the conspiracy.

In a conspiracy, each member of the alleged conspiracy is responsible for the sales by all other members of the alleged conspiracy. The fact that a particular defendant did not sell directly to one or all of the plaintiffs is not a defense to a claim under the federal antitrust laws.

If you find that a defendant or an alleged co-conspirator is a member of a conspiracy, it is presumed to remain a member and is responsible for all actions taken by all co-conspirators during and in furtherance of the conspiracy until it is shown that the conspiracy has been completed or abandoned.

**Source**: Court's Preliminary Instruction, Tr. at pp. 646:3- 647:15, 647:18-22, 647:25-648:8; Oct. 26, 2023, Trial Tr. at pp. 2246:5–16 (second to last paragraph).

### 7. Restraint of Trade Introduction

The second element is "that the contract, combination, or conspiracy unreasonably restrains trade."

I will first explain what is meant by "restraining trade." Then I will explain what it means for the restraint to be "unreasonable."

8. Restraint of Trade

Plaintiffs claim that defendants and their coconspirators are competitors and have violated the Sherman Act by agreeing to limit the production of eggs.

A business has the right to determine on its own how much of its product to produce, provided that the decision results from the exercise of an independent business judgment and not from any agreement with a competitor The Sherman Act prohibits agreements between competitors that limit how much of a product one or more of them will produce.

By way of example, this includes an agreement by two or more competitors that one of them will reduce the amount of a product it produces in competition with the other's products.

To agree with a competitor to limit production is a restraint of trade.

**Source**: ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.) at Ch. 2, Instruction No. C-4 at pp. 42-43 (excerpt, modified).

**Note**:  Plaintiffs contend the case should be evaluated under the per se rule.  If the Court agrees, it should instruct the jury the challenged conduct is unreasonable as a matter of law, using Instruction 9.  If the Court does not conclude as a matter of law that the conduct is unreasonable, the Court should submit to the jury the question of whether Defendants have proven their horizontal agreements are ancillary restraints, as stated in Instruction 10.  Only if the Defendants convince the jury they have adopted ancillary restraints will the jury need to engage in the full rule of reason analysis addressed in Instructions 11 through 14.

9.   Unreasonable: Per Se Illegal Practices

To violate the Sherman Act, a restraint of trade must be unreasonable.  I now instruct you that the agreement Plaintiffs challenge in this case is unreasonable.  If you find Defendants agreed to engage in the practices Plaintiffs have challenged, I instruct you that you are to conclude those practices were unreasonable restraints of trade:

You still must decide whether Plaintiffs have proven the other elements of their claim.

10. Alternative to Judicially-Mandated Per Se Analysis: Jury To Decide

I will now give you additional instructions as to what it means for an agreement to be unreasonable.

To decide if an agreement restraint is unreasonable, you must first determine if the agreement considered in its entirety is (1) subordinate and collateral to a legitimate business collaboration and (2) is necessary to achieve procompetitive objectives.

To be subordinate and collateral to a legitimate business collaboration, you must find the agreement to limit competition is not the primary reason for the practice. It must be a secondary reason for the agreement among competitors.

To be necessary to achieve a procompetitive objective, I mean that the procompetitive benefit could not occur without the agreement among competitors that Plaintiffs challenge.

For purposes of these instructions, "procompetitive objectives" includes, but is not limited to: increased production, increased consumer choice, lower prices, meeting consumer demand, and improved product quality. Evidence regarding the ethical treatment of laying hens may be considered with respect to whether a challenged restraint affected output or product quality, widened customer choice, or met customer demand. However, the ethical treatment of laying hens as a societal benefit is not a procompetitive benefit.

On this issue, the Defendants have the burden of proof. Thus, if you find that the Defendants have not shown that any agreement was both (1) subordinate and collateral to a legitimate business collaboration or (2) necessary to achieve procompetitive objectives, the agreement is unreasonable. You still must decide whether Plaintiffs have proven the other elements of their claim.

If you find the Defendants have met both of these tests, then you should evaluate the reasonableness of the agreement using the instructions I will now give you.


**Source:** *Wilk v. American Medical Association*, 719 F.2d 207 (7th Cir. 1983); *Deslandes v. McDonalds USA LLC*, 81 F.4th 699 (7th Cir. 2023) (per se rule applies to horizontal combination unless defendants prove restraint is subordinate and collateral to a legitimate business collaboration and is necessary to achieve procompetitive objective); *Polk Brothers, Inc. v. Forest City Enters., Inc*., 776 F.2d 185 (7th Cir. 1985) (explaining and applying ancillary restraint doctrine).

11. Alternative to Judicially-Mandated Per Se Analysis: Rule of Reason Overview

Under Section 1 of the Sherman Act, a restraint of trade is illegal only if it is found to be unreasonable. You must determine, therefore, whether the restraint challenged here —[*describe it*]—is unreasonable. In making this determination, you must first determine whether plaintiff has proven that the challenged restraint has resulted in a substantial harm to competition in a relevant product and geographic market. If you find that plaintiff has proven that the challenged restraint results in a substantial harm to competition in a relevant market, then you must consider whether the restraint produces countervailing competitive benefits. If you find that it does, then you must balance the competitive harm against the competitive benefit. The challenged restraint is illegal under Section 1 of the Sherman Act only if you find that the competitive harm substantially outweighs the competitive benefit.

I will now review each step of the analysis in more detail.

**Source**: ABA Model Jury Instructions in Civil Antitrust Cases (2016 Edition) Ch. 1, Instruction No. C-3A at p.3 (modified).

12. Proof Of Competitive Harm/Relevant Market

[1]     To prove that the challenged restraint is unreasonable, plaintiff first must demonstrate that the restraint has resulted [*or is likely to result*] in a substantial harm to competition.

[2]     Plaintiff must show that the harm to competition occurred in a relevant market. There are two aspects to a relevant market. [2]Plaintiffs contend the relevant product market is the market for eggs, including shell eggs and egg products.

[3]     The first aspect is known as the relevant product market. Plaintiffs contend the relevant product market is the market for eggs, including shell eggs and egg products. One common way to think about the relevant product market is whether a seller of one product would be willing to shift their resources to selling a second product in response to an increase in the price of the second product.  To give an example not related to this case, take two orange growers. The first sells fresh squeezed juice, while the second grower process the oranges and sells orange juice concentrate. Generally speaking, a bottle of orange juice and a frozen container of orange juice concentrate are not reasonably interchangeable and, therefore, might be thought of as being in a separate product markets. However, it is possible that the fresh juice producer could quickly shift its resources to produce concentrate if the concentrate manufacturer raised its prices significantly and vice versa. Although purchasers of each product may not be willing or able to switch from one to the other, the ability of each manufacturer to alter its production could prevent the other manufacturer from raising prices significantly. Thus, in this example, fresh juice and concentrate would be included in the same market.

[4]     The second aspect is known as the relevant geographic market. Plaintiffs contend the relevant geographic market is the United States. It is Plaintiffs' burden to prove the existence of a relevant market.

[5]     If you find that plaintiff has proven the existence of a relevant market, then you must determine whether plaintiff also has proven that the challenged restraint has a substantial harmful effect on competition in that market. A harmful effect on competition refers to a loss of some of the benefits of competition, such as lower prices or increased output. Plaintiffs claim the Defendants' action caused higher prices and restrained output from what it would have been absent the Defendants' actions. If the challenged conduct has not resulted in higher prices, decreased output, lower quality, or the loss of some other competitive benefit, then there has been no competitive harm, and you should find that the challenged conduct was not unreasonable.


**Source**: Paragraphs 1, 2, 4, 5: ABA Model Jury Instructions in Civil Antitrust Cases (2016 Edition) Ch. 1, Instruction No. C-3B at p. 5 (modified).  Paragraph 3, ABA Model Jury Instructions in Civil Antitrust Cases (2016 Ed.), Ch. 3, Section A, Instruction No. 5 at p. 112 (supply side substitutability).

13. Evidence Of Competitive Benefits

If you find that Plaintiff has proven that the challenged restraint resulted in substantial harm to competition in a relevant market, then you next must determine whether the restraint also benefits competition in other ways.

In considering whether the challenged restraints benefitted or harmed competition, you may consider whether the restraint: increased or decreased production, lowered or increased prices, met consumer demand, and improved product quality. Evidence regarding the ethical treatment of laying hens may be considered with respect to whether a challenged restraint affected output or product quality, widened customer choice, or met customer demand. However, the ethical treatment of laying hens as a societal benefit is not a procompetitive benefit.

If you find that the challenged restraint does result in competitive benefits, then you also must consider whether the restraint was reasonably necessary to achieve the benefits. If plaintiff proves that the same benefits could have been readily achieved by other, reasonably available alternative means that create substantially less harm to competition, then they cannot be used to justify the restraint.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 Edition), Chapter 1, Instruction 3C at p. 8 (modified)**.**

14. Balancing The Competitive Effects

If you find that the challenged restraint was reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same restraint.

If the competitive harm substantially outweighs the competitive benefits, then the challenged restraint is unreasonable. If the competitive harm does not substantially outweigh the competitive benefits, then the challenged restraint is not unreasonable. In conducting this analysis, you must consider the benefits and harm to competition and consumers, not just to a single competitor or group of competitors. Plaintiffs bear the burden of proving that the anticompetitive effect of the conduct substantially outweighs its benefits.

**Souce:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 Edition), Chapter 1 Instruction 3D at p. 9.

15. Interstate Commerce

I instructed you at the beginning of the case that an element of the claim is that the activities at issue affected interstate commerce. This one is easy. The parties agree that this case involves interstate commerce. You do not need to be concerned about this issue.

16. Cause of Injury

The final element of Plaintiffs' claim is injury.

Plaintiffs must prove they were injured in their business or property.  Here, Plaintiffs complain that they were injured by paying more for egg products due to the conspiracy.   A Plaintiff has been injured in their business or property if it paid an inflated price for egg products as a result of Defendant's alleged antitrust violation.  Even a short-lived increase in price is an injury. Plaintiff must only prove that it has been injured in its business or property, and need not prove an amount of injury.

Plaintiffs must also establish that the injury was a result of a Defendant's violation of the antitrust laws. To do so, Plaintiffs must also establish that the alleged illegal conduct was a material or substantial cause of Plaintiffs' injuries. Plaintiffs ~~is~~are not required to prove that a Defendant's alleged antitrust violation was the sole cause of ~~its~~their injur~~y~~ies; nor need Plaintiffs eliminate all other possible causes of injury. It is enough if Plaintiffs ~~has~~have proved that the alleged antitrust violation was a material or substantial cause of their injury.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, Instruction A-1 at p. 300 (modified).

17. Motive Not A Defense

If you find that a Defendant engaged in the conspiracy, it is not a defense for that Defendant to claim that it acted with good motives, that it thought its conduct was legal, that it thought its conduct resulted in other societal benefit, or that its conduct may have had some good results. If the conspiracy restrained trade, it is not a defense that the conspiracy was for a purpose other than to restrict egg supply. Moreover, a Defendant cannot justify engaging in a conspiracy by claiming it would have lost money had it not entered into the unlawful agreement.

A party may not justify an agreement to restrain competition based on the assumption or belief that it will improve a product's quality or be in the interests of customers. Customers are to decide through competition what is in their interests. Sellers may not agree to restrain the market because they think it is in the customers' interests. The antitrust laws are based on the view that competition will produce not only lower prices, but also better goods and services.

**Source:** ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. B-3 at p. 29 (modified); *Wilk v. American Medical Association*, 719 F.2d 207 (7th Cir. 1983); Paragraph 2 is taken in modified form from *The PLS.COM, LLC v. The National Association of Realtors, et al.*, 32 F.4th 824, 836 (9th Cir. 2022) (quoting *Nat'l Soc'y of Prof. Eng'rs v. United States*, 435 U.S. 679, 695 (1978).

21

18. No Defense of In Pari Delicto

You have heard evidence that certain Plaintiffs [and other purchasers of eggs] may have wanted to purchase UEP certified eggs at some point during the conspiracy. If you find that Defendants conspired to restrain trade, it is no defense to a claim under the Sherman Act that the Plaintiffs [and other purchasers of eggs] were in some way aware of the Defendants' restraint of trade or were involved in or participated in it.

**Source**: *Perma-Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 140 (1968).

19. Limiting Supply

The Plaintiffs claim that Defendants agreed to "limit production" or "restrict the domestic supply" of eggs and egg products.

When I refer to limiting production or restricting output, I am not just asking you to decide whether the domestic supply of eggs went up or down. It is a violation of the antitrust laws for competitors to agree to restrictions that unreasonably limit production or restrict the domestic supply of eggs.

I will give some examples.

If the level of supply went up during the relevant time period, but due to an agreement of competitors it went up less than it would have gone up without the agreement, that may be a violation of the antitrust laws. As an example, it is unlawful to agree to reduce supply from 10 to 5. It is also unlawful to agree to limit the increase in supply from 10 to 12 when without the agreement output naturally would have increased from 10 to 14. Both are examples of restricting output.

It is also true that not every decrease in supply is unlawful. If the level of supply went down but the decrease was not the result of an agreement of competitors, it is not a violation of the antitrust laws. It does not violate the antitrust law if supply declines from 10 to 5 where that decrease is not caused by an agreement among competitors. Likewise, it does not violate the antitrust laws where supply increases from 10 to 12 when it was expected to increase to 14, when the reason for the lower growth in production is something other than an agreement among competitors.

In deciding whether Defendants limited production or restricted domestic supply, it is for you to decide if Defendants caused the level of domestic supply to be less than it would have been without their agreement.

**Source:** *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 789-90 (6th Cir. 2002) (holding that evidence of injury to competition was sufficient where Plaintiff presented evidence that two of the three other manufacturers grew more slowly than they otherwise would have but for unlawful monopolization and " although [sales] in the . . . market grew, there was evidence showing that [the defendant's] actions caused higher prices and reduced consumer choice, both of which [were] harmful to competition"); *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637 (N.D. Ill. June 30, 2023) (Durkin, J.) (court approved admission of opinion "that a producer might restrict supply by slowing the rate of increase of production as opposed to an overall production cut. This may result in an increased production number, but one that would have been higher but for the conspiracy. To the extent the facts bear out this possibility, Williams's opinion on this issue is helpful and will not be excluded").

20. Trade Organization May Commit Antitrust Violations

Businesses that are actual or potential competitors may lawfully form into associations to advance common interests. For example, trade associations may keep members informed of new services or technology in the industry or perform other valuable services such as cooperative research, publication of trade journals, or joint representation before legislative or administrative bodies.

An association is capable of committing violations of the antitrust laws. The actions of a group of competitors taken through an association to which they belong present the same issues as the actions of a group of competitors who have not created a formal organization such as a trade association. A trade association or similar industry group cannot lawfully act to facilitate the raising, stabilizing, or maintaining of prices in the market in which its members compete with one another, to reduce members' collective output of products or services, or to allocate territories among members that are in horizontal competition with one another. A trade association or similar industry group cannot lawfully adopt rules that prohibit members from bidding competitively with one another because that severely affects price competition. These actions constitute an agreement with its members in violation of the Sherman Act even if the association has not conspired with a nonmember.

If a trade association exchanges with its members confidential, competitively sensitive information, such as current or future prices, or current or future output information, that is evidence which you may consider, along with all the other evidence, in deciding whether the association is in violation of the antitrust laws.

**Source**: ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, Instruction No. C-10 at p. 57 (modified).

24

21. Passage of Time

The evidence in the case is about events that occurred many years ago. The case is not about the price of eggs in the last few years.

You have heard evidence in this case about the price of eggs through 2012, meaning the year 2012, but not later.

The amount of time that it took to get to trial is not the fault of the parties. You should not return a verdict one way or the other based on a belief about whether the case should have gone to trial sooner.

**Source**: Oct. 19, 2023, Trial Tr. at p. 640:9–20 (modified).

22. Presence of Counsel

You heard that UEP's general counsel was present at a UEP board of directors' meeting. None of the defendants is asserting an advice-of-counsel defense. The mere presence of counsel – in other words, the mere presence of a lawyer is not relevant and is not a defense.

**Source**: Oct. 23, 2023, Trial Tr. at p. 1269:2–7 (modified).

26

23. Financial Performance

You heard evidence about the financial performance of the parties.

The financial performance of a plaintiff in and of itself is not a sufficient basis to conclude whether the company suffered an injury. On the flip side, the financial performance of a defendant in and of itself is not a sufficient basis to conclude whether the company entered into an alleged conspiracy. The financial performance of a defendant in and of itself is not a sufficient basis to conclude whether a conspiracy existed.

**Source**: Oct. 24, 2023, Trial Tr. at p. 1605:3–16 (modified).

24. Coconspirators Lost Money

It is plaintiff's burden to prove by a preponderance of the evidence that the defendants engaged in a conspiracy to restrict the egg market to increase the price of eggs. If you find that the plaintiffs have met this burden, it is not a defense that a defendant or co-conspirator did so to avoid losing money.

**Source**: Dkt. 397. Plaintiffs' Proposed Limiting Instructions. *See* Dkt. 436. Defendants' Opposition to Plaintiffs' Proposed In-Trial Limiting Instructions.

### 25. Role of the USDA

You heard testimony referring to the United States Department of Agricultural, referred to as the USDA. Among other things, the USDA is involved in agricultural issues, including animal welfare. The USDA does not prosecute antitrust violations. Statements, actions, and inaction of the USDA have no bearing on the issues you are to decide.

**Source**: Dkt. 397. Plaintiffs' Proposed Limiting Instructions. *See* Dkt. 436. Defendants' Opposition to Plaintiffs' Proposed In-Trial Limiting Instructions.

26. Impact of State Laws

You heard testimony about state laws relating to animal welfare that were enacted after 2008. State laws enacted after 2008 are not relevant to whether defendants conspired to violate the antitrust laws before those laws were passed. A decision to do something today cannot be explained by something that takes place tomorrow.

You may consider evidence about state laws passed after 2008 only for the limited purpose of whether the alleged conspiracy, or some other cause, contributed to the injury claimed by the Plaintiffs' during the time period between whenever the laws were passed and 2012, which is the end of the injury period claimed by Plaintiffs. You may not consider it for any other purpose. State laws enacted after the conduct of Defendants that Plaintiffs complain of in this trial are not relevant to explain why the Defendants took those actions.

**Source**: Dkt. 397. Plaintiffs' Proposed Limiting Instructions. *See* Dkt. 436. Defendants' Opposition to Plaintiffs' Proposed In-Trial Limiting Instructions.

27. Animal Welfare Is Not An Antitrust Defense

You heard testimony about animal welfare. This is an antitrust case. In evaluating whether a measure violated the antitrust laws, you are only to consider the effect on competition. Concern about animal welfare is not to be considered. Examples of positive effects on competition include higher output, lower price, lower costs, greater efficiency, and more consumer choice and consumer satisfaction.

**Source**: Dkt. 397. Plaintiffs' Proposed Limiting Instructions. *See* Dkt. 436. Defendants' Opposition to Plaintiffs' Proposed In-Trial Limiting Instructions.

## 28. Other Injury Evidence After 2008

You heard testimony about [type of injury evidence] after 2008. [Description of evidence] after 2008 are not relevant to whether defendants conspired to violate the antitrust laws at an earlier time. A decision to do something today cannot be explained by something that takes place tomorrow.

You may consider evidence about [description of evidence] after 2008 only for the limited purpose of whether the alleged conspiracy, or some other cause, contributed to the injury claimed by the Plaintiffs' during the time period between whenever the statements were made and 2012, which is the end of the injury period claimed by Plaintiffs. You may not consider that evidence for any other purpose. [Description of evidence] after the conduct of Defendants that Plaintiffs complain of in this trial are not relevant to explain why the Defendants took those actions.

**Source**: Dkt. 397. Plaintiffs' Proposed Limiting Instructions. *See* Dkt. 436. Defendants' Opposition to Plaintiffs' Proposed In-Trial Limiting Instructions.

### 29. No quantification of damages

You have been asked to decide if the Defendants violated the antitrust law and injured Plaintiffs. I have not instructed you about the quantification, or amount, of damages. At my direction, the Plaintiffs did not present any evidence about the amount of their damage claim. Your task, among others, is to decide if Plaintiffs were injured. The lack of evidence about the dollar amount of any injury has no bearing on whether the Plaintiffs were injured, which is one of the issues you are to decide.