UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRAFT FOODS GLOBAL, INC., THE KELLOGG COMPANY, GENERAL MILLS, INC., and NESTLÉ USA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED EGG PRODUCERS, INC., UNITED STATES EGG MARKETERS, INC., CAL-MAINE FOODS, INC., and ROSE ACRE FARMS, INC. <br><br> Defendants. | No. 1:11-cv-08808 <br><br> Judge Steven C. Seeger |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO EXCLUDE IN-TRIAL EXPANSION OF DEFINED CONSPIRACY**

Halfway through this trial and after conditionally resting their case (except for one party witness "that is to be determined" Tr. 3688 at 2-6), the evidence Plaintiffs have put into the record is at best unclear as to which egg producers Plaintiffs allege are members of their purported conspiracy besides the five they have long identified, and they should not be permitted to argue later that other unnamed entities also may have been conspirators. A clear understanding of the scope of the alleged conspiracy – including its alleged participants – goes to each of the key questions Plaintiffs must prove to establish liability: the existence of an agreement among the co-conspirators, the existence of an unreasonable restraint on trade, and the existence of antitrust and actual injury. For these reasons, Judge Pratter required the plaintiffs well in

1

advance of trial to specific clearly the scope of the alleged conspiracy, including the specific conspirator participants. Plaintiffs neither dispute Judge Pratter's ruling nor distinguish it. Moreover, Plaintiffs do not dispute the importance of clearly defining the scope of the alleged conspiracy and its participants. Rather, they obfuscate by distorting antitrust law and then claiming they have done what was required by supposedly proving a "conspiracy [that] reaches far beyond the particular Defendants." *See* Resp. at 5. Plaintiffs are wrong both on the law and on sufficiency of the evidence they must put forth to prove a conspiracy of that breadth.

Plaintiffs should be held to the list of conspirators that they have cited repeatedly as the specific scope of the conspiracy in this case. Ambiguous and potentially shifting lists of hundreds of potential "conspirators"—unsupported by any evidence of *actual* agreement by any of those entities—is not sufficient or proper at this stage of trial.[1] Defendants' motion should be granted.

## I. Argument

### A. Defendants and the Court Are Entitled to Know the Scope of the Conspiracy Plaintiffs Are Trying to Prove

At the most basic level, Plaintiffs must show harm to competition and injury that flowed from the alleged unlawful conspiracy they intend to prove – *i.e.*, the conduct of the alleged conspirators — as opposed to injury from conduct of non-conspirators and/or from conduct that is not unlawful. Plaintiffs made a conscious

---

[1] By way of just one example, the Court's consideration and ruling on this motion and the significant legal issues it raises will be significant to the upcoming jury instruction conferences the Court will be hosting.

choice not to do so, however. Rather than consider whether Plaintiffs' alleged conspiracy produced any anticompetitive effect, and rather than consider whether Plaintiffs suffered injury from such anticompetitive effect, Dr. Baye's injury analysis attempts to show "injury is traceable **to the UEP [Certified] program**, originated and sponsored by one of the core conspirators—UEP itself." Dkt. 428 (emphasis added). Indeed, Dr. Baye *never* evaluated *any* subset of egg producers who signed up for the Certified Program, let alone the five Plaintiffs have repeatedly contended constitute the conspiracy they intend to prove. In contrast to the five-producer conspiracy Plaintiffs have pursued for the last two years, the relevance and reliability of Dr. Baye's analysis rises and falls on Plaintiffs proving that every single UEP Certified Program participant was a co-conspirator.[2]

Whether or not Plaintiffs identify every co-conspirator by name, it is critical for the Court and Defendants to know which producers (by name or category) form the alleged horizontal conspiracy that provides the "rim" to their proffered hub and

---

[2] To the extent Plaintiffs rely on *NCAA v. Bd. of Regents*, 468 U.S. 85 (1984), for the proposition that they can prove an alleged conspiracy that includes all members of the UEP Certified Program without proving that each member of the Program had a conscious commitment to a common *unlawful* scheme, they are wrong. Because "the UEP Certified Program does not involve an express agreement among competitors to restrain supply," something more than an agreement to join the UEP Certified Program is required to show that any alleged co-conspirator agreed with its competitors to reduce supply. *In Re Processed Egg Prods Antitrust Litig.*, 206 F. Supp. 3d 1033, 1045 (E.D. Pa. 2016) (Pratter J.). Moreover, mere UEP membership also is not enough because the undisputed evidence shows that UEP members did not have to join the UEP Certified Program and non-UEP members were in fact UEP Certified Producers. In contrast to UEP Certified Program, the Court found the NCAA television plan expressly restrained price and reduced output, and that the plan was binding on and enforced against all NCAA schools. *See NCAA*, 468 U.S. at 104-108.

3

spoke conspiracy. Right now, the only evidence of competitive impact and injury presented flows from the adherence of every Certified egg producer to the Certified Guidelines. If Plaintiffs theory is that every such producer who joined the Certified Program is an alleged co-conspirator, they must say so definitively.

Defendants do not argue that Plaintiffs are required to *sue* all members of the alleged conspiracy. But this Court and Defendants are entitled to know the scope of the conspiracy Plaintiffs intend to prove. Defining the co-conspirators is necessary for purposes of directed verdict practice, the contours of the jury charge, and Defendants' ability to defend themselves. As set forth in the oft-cited treatise Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 1412 (4th and 5th eds.) (2023) (hereinafter, "*Antitrust Law*"):[3] "The first step should always be to identify with maximum particularity the alleged conspirators and the subject matter of each such conspiracy. Only then should the court move on to look for the necessary agreement." *Id.* at ¶ 1409. Unless Plaintiffs put forth competent evidence identifying all whom they claim are unnamed co-conspirators, they may not argue or speculate as to their existence during closing argument. Nor can such speculation go to the jury.

### B. Market Power Is Relevant Whichever Mode of Analysis is Applied

There is no dispute that "the first question in a rule of reason case is market power." *Schachar*, 870 F.2d at 398. "The Seventh Circuit has held in cases alleging

---

[3] Areeda and Hovenkamp are cited with approval by both the Seventh Circuit and the U.S. Supreme Court. *See Leegin Creative Leather Prod., Inc. v. PSKS*, Inc., 551 U.S. 877, 889, 893, 894, 906 (2007); *Allied Tube & Conduit Corp. v. Indian Head*, Inc., 486 U.S. 492, 507 n.10 (1988); *In re Sulfuric Acid Antitrust Litig.*, 703 F.3d 1004, 1010 (7th Cir. 2012).

4

a violation of Section 1 of the Sherman Act, 'a 20%-25% market share or less does not constitute market power.'" *Hannah's Boutique, Inc. v. Surdej*, 112 F. Supp. 3d 758, 773 (N.D. Ill. 2015) (quoting *Valley Liquors, Inc. v. Renfield Imps., Ltd.*, 822 F.2d 656, 666 (7th Cir. 1987). Plaintiffs do not dispute that knowing the precise list of alleged co-conspirators is necessary to answer the question about whether the alleged co-conspirators had market power. *See also* Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 1412 ("[Market share] bear[s] on the motive to enter such an agreement, for competitors aggregating a minor share would not ordinarily be able to affect market prices and thus are unlikely to have tried to do so.").

When the market share of the alleged reducers of supply is insignificant, "the alleged conspirators should be deemed to lack the motive to enter the alleged agreement." *Id.* (citing *Anderson News, L.L.C. v. American Media*, 899 F.3d 87, 99, 102–03 (2d Cir. 2018), cert. denied, 139 S. Ct. 1375 (2019) (finding alleged conspiracy among magazine publishers and distributors inadequately alleged because the conspiracy was economically implausible where the plaintiff did not show how defendants could have benefitted from it, finding that the more likely explanation is that each defendant independently decided that dealing with single-copy magazines was not profitable)). Dr. Baye admits that the producers that Plaintiff has held out as co-conspirators are a "small fraction . . . of the overall market." Oct. 31, 2023 Trial Tr. 2844:9–14 ("Q. Sir, my question for you was: With respect to the five, Moark, Wabash Valley, Cal-Maine, Rose Acre, [and Michael Foods,] I think that's five, they

5

only constituted 20.4 percent of the market based on your analysis, correct? A. They were a small fraction, that's correct, of the overall market.").

And even if this case were reviewed under a *per se* analysis, Plaintiffs still must prove injury. *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 346 (1990) ("Respondent has failed to demonstrate it has suffered any antitrust injury. The allegation of a *per se* violation does not obviate the need to satisfy this test.") Antitrust injury is possible only when there is adequate market power held by the co-conspirators.

Injury involves more than an injury causally related to alleged reduced supply. "[T]he plaintiff must establish, with a fair degree of certainty, that the violation was a material element of, and substantial factor in producing, the injury." *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 401 (7th Cir. 1993) (citing *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 114 n. 9 (1969)). Stated differently, Plaintiffs must tie their injury to the conspiracy that the co-conspirators carried out, not to independent actors. This necessarily would require evaluating the type of market power that specific alleged co-conspirators had over the relevant market. At this point in this trial, Plaintiffs must be held to the scope of conspiracy they have always put forward.

## II. Conclusion

For the foregoing reasons, Defendants respectfully request that the Court grant the Motion.

6

Dated: November 5, 2023  Respectfully submitted,

/s/ Patrick M. Collins
Patrick M. Collins (pcollins@kslaw.com)
Livia M. Kiser (lkiser@kslaw.com)
Patrick M. Otlewski (potlewski@kslaw.com)
Abigail Hoverman Terry (aterry@kslaw.com)
KING & SPALDING LLP
110 North Wacker Drive, 38th Floor
Chicago, IL 60606
Tel: (312) 995-6333

Lohr Beck (lohr.beck@kslaw.com)
(*pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel: (404) 572-2812

Brian E. Robison (brian@brownfoxlaw.com)
(*pro hac vice*)
BROWN FOX PLLC
6303 Cowboys Way, Suite 450
Frisco, TX 75034
Tel: (972) 707-2809

***Counsel for Defendant Cal-Maine Foods, Inc.***

/s/ Robin P. Sumner
Robin P. Sumner (robin.sumner@troutman.com)
Kaitlin L. Meola (kaitlin.meola@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
3000 Two Logan Square, 18th and Arch Streets
Philadelphia, PA 19103-2799
Tel: (215) 981-4000

/s/ Donald M. Barnes
Donald M. Barnes (dbarnes@porterwright.com)
Jay L. Levine (jlevine@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
2020 K. Street, N.W., Suite 600
Washington, D.C. 20006-1110
Tel: (202) 778-3000

James A. King

7

Whitney R. Redding
(whitney.redding@troutman.com)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Union Trust Building
501 Grant Street, Suite 300
Pittsburgh, PA 15219-4429
Tel: (412) 454-5085

Molly DiRago
(Molly.DiRago@troutman.com)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
227 West Monroe Street, Suite 3900
Chicago, IL 60606
Tel: (312) 759-1923

***Counsel for Defendants United Egg Producers, Inc. & United States Egg Marketers, Inc.***

(jking@porterwright.com)
Allen T. Carter
(acarter@porterwright.com)
PORTER, WRIGHT, MORRIS &
ARTHUR LLP
41 South High Street, Suite 2900
Columbus, OH 43215
Tel: (614) 227-2000

***Counsel for Defendant Rose Acre Farms, Inc.***