# EXHIBIT A

Nos. 22-2333, 22-2334

IN THE

# United States Court of Appeals
# for the Seventh Circuit

LEINANI DESLANDES, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED,
*Plaintiff-Appellant,*

v.

MCDONALD'S USA, LLC, ET AL.,
*Defendants-Appellees.*

STEPHANIE TURNER, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED,
*Plaintiff-Appellant,*

v.

MCDONALD'S USA, LLC, ET AL.,
*Defendants-Appellees.*

On Appeal from the
United States District Court for the Northern District of Illinois
Honorable Jorge L. Alonso
Nos. 1:17-cv-04857, 1:19-cv-05524

## BRIEF FOR THE UNITED STATES OF AMERICA AND
## THE FEDERAL TRADE COMMISSION AS AMICI CURIAE
## IN SUPPORT OF NEITHER PARTY

ANISHA S. DASGUPTA
*General Counsel*
JOEL MARCUS
*Deputy General Counsel*
MATTHEW M. HOFFMAN
*Counsel*
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, D.C. 20580

JONATHAN S. KANTER
*Assistant Attorney General*
DOHA MEKKI
*Principal Deputy Assistant Attorney General*
MAGGIE GOODLANDER
*Deputy Assistant Attorney General*
DAVID B. LAWRENCE
*Policy Director*
JACOBUS VAN DER VEN
*Attorney Advisor*
DANIEL E. HAAR
NICKOLAI G. LEVIN
PETER M. BOZZO
*Attorneys*
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 Pennsylvania Ave., NW, Room 3224
Washington, DC 20530-0001
(202) 803-1196
peter.bozzo@usdoj.gov
*Counsel for the United States and the Federal Trade Commission*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ii

INTEREST OF AMICI ................................................................. 1

ISSUES PRESENTED ................................................................. 2

FACTUAL BACKGROUND ........................................................... 2

ARGUMENT ................................................................................. 8

   I.  THE DISTRICT COURT MISAPPLIED THE ANCILLARY-RESTRAINTS
      DOCTRINE ........................................................................ 13

      A. The District Court Correctly Recognized that No-Hire/No-
         Solicitation Provisions in Franchise Agreements May
         Be Horizontal and, If So, Are Per Se Illegal Unless
         Defendants Establish Ancillarity ................................... 14

            1. *No-Hire/No-Solicitation Provisions in Franchise*
               *Agreements Can Be Horizontal* ............................ 14

            2. *The Per Se Rule Applies to Horizontal Employee-*
               *Allocation Agreements Unless Defendants Establish*
               *Ancillarity* .......................................................... 18

         B. The District Court Erred in Failing to Require Defendants
         to Establish that the Challenged Restraint Is "Reasonably
         Necessary" to Achieve a Procompetitive Objective of the
         Franchise Agreement .................................................... 21

  II.  *ALSTON* DID NOT CHANGE THE LEGAL STANDARDS GOVERNING
      WHETHER THE PER SE RULE OR QUICK-LOOK CONDEMNATION
      APPLIES ........................................................................... 30

CONCLUSION ........................................................................... 36

CERTIFICATE OF COMPLIANCE ............................................. 38

CERTIFICATE OF SERVICE....................................................... 39

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Addyston Pipe & Steel Co. v. United States,*
    175 U.S. 211 (1899) ................................................................... 24

*Agnew v. NCAA,*
    683 F.3d 328 (7th Cir. 2012) ................................................... 35

*Anderson v. Shipowners' Association of Pacific Coast,*
    272 U.S. 359 (1926) ............................................................ 9, 19

*Arizona v. Maricopa County Medical Society,*
    457 U.S. 332 (1982) ....................................................... 8, 33, 34

*Arrington v. Burger King Worldwide, Inc.,*
    47 F.4th 1247 (11th Cir. 2022) ............................................... 16

*Aya Healthcare Services, Inc. v. AMN Healthcare, Inc.,*
    9 F.4th 1102 (9th Cir. 2021) ............................................... 20, 24

*Blackburn v. Sweeney,*
    53 F.3d 825 (7th Cir. 1995) .......................................... 21, 24, 25

*Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic,*
    65 F.3d 1406 (7th Cir. 1995) ................................................... 20

*Board of Regents of University of Oklahoma v. NCAA,*
    707 F.2d 1147 (10th Cir. 1983) ......................................... 21, 22

*Butler v. Jimmy John's Franchise, LLC,*
    331 F. Supp. 3d 786 (S.D. Ill. 2018) ....................................... 17

*California Dental Association v. FTC,*
    526 U.S. 756 (1999) ...................................................... 9, 34, 35

*Catalano, Inc. v. Target Sales, Inc.,*
    446 U.S. 643 (1980) ................................................................. 8

Page(s)

**Cases**

*Chicago Professional Sports Limited Partnership v. NBA,*
  95 F.3d 593 (7th Cir. 1996)......................................................27

*Continental T. V., Inc. v. GTE Sylvania Inc.,*
  433 U.S. 36 (1977)............................................................28, 29

*Fleet Wholesale Supply Co. v. Remington Arms Co.,*
  846 F.2d 1095 (7th Cir. 1988)..................................................29

*Freeman v. San Diego Association of Realtors,*
  322 F.3d 1133 (9th Cir. 2003).................................................21

*Freyd v. University of Oregon,*
  990 F.3d 1211 (9th Cir. 2021)..................................................10

*FTC v. Indiana Federation of Dentists,*
  476 U.S. 447 (1986)..............................................................8

*Gunn v. Continental Casualty Co.,*
  968 F.3d 802 (7th Cir. 2020)..............................................27, 28

*Hammes v. AAMCO Transmissions, Inc.,*
  33 F.3d 774 (7th Cir. 1994)....................................................20

*In re Animation Workers Antitrust Litigation,*
  123 F. Supp. 3d 1175 (N.D. Cal. 2015)......................................20

*In re Geisinger Health & Evangelical Community Hospital
  Healthcare Workers Antitrust Litigation,*
  No. 4:21-CV-00196, 2021 WL 5330783 (M.D. Pa. Nov. 16, 2021).......20

*In re High-Tech Employee Antitrust Litigation,*
  856 F. Supp. 2d 1103 (N.D. Cal. 2012)......................................20

*In re Insurance Brokerage Antitrust Litigation,*
  618 F.3d 300 (3d Cir. 2010)...................................................23

Page(s)

## Cases

*In re NCAA Athletic Grant-in-Aid Cap Antitrust Litigation*,
   375 F. Supp. 3d 1058 (N.D. Cal. 2019)...........................................31, 32

*In re Outpatient Medical Center Employee Antitrust Litigation*,
   No. 21-cv-00305, 2022 WL 4465929 (N.D. Ill. Sept. 26, 2022)............20

*In re Railway Industry Employee No-Poach Antitrust Litigation*,
   395 F. Supp. 3d 464 (W.D. Pa. 2019) .....................................................20

*In re Sulfuric Acid Antitrust Litigation*,
   743 F. Supp. 2d 827 (N.D. Ill. 2010).................................................24, 25

*Interstate Circuit v. United States*,
   306 U.S. 208 (1939) ..................................................................................17

*Klor's, Inc. v. Broadway-Hale Stores, Inc.*,
   359 U.S. 207 (1959) ..................................................................................17

*Leegin Creative Leather Products, Inc. v. PSKS, Inc.*,
   551 U.S. 877 (2007)............................................................................28, 31

*Lektro-Vend Corp. v. Vendo Co.*,
   660 F.2d 255 (7th Cir. 1981).............................................................24, 25

*Mandeville Island Farms, Inc. v. American Crystal Sugar Co.*,
   334 U.S. 219 (1948) ..................................................................................19

*Marion Healthcare, LLC v. Becton Dickinson & Co.*,
   952 F.3d 832 (7th Cir. 2020)....................................................................18

*Markson v. CRST International, Inc.*,
   No. 5:17-cv-01261-SB-SP, 2021 WL 1156863 (C.D. Cal.
   Feb. 10, 2021) ...........................................................................................20

*Medical Center at Elizabeth Place, LLC v. Atrium Health System*,
   922 F.3d 713 (6th Cir. 2019)....................................................................25

Page(s)

<u>Cases</u>

*NCAA v. Alston*,
   141 S. Ct. 2141 (2021) ................................................................ *passim*

*NCAA v. Board of Regents of University of Oklahoma*,
   468 U.S. 85 (1984) .................................................................. 22, 32, 35

*Nichols v. Spencer International Press, Inc.*,
   371 F.2d 332 (7th Cir. 1967) .................................................. 19, 20, 21

*O'Bannon v. NCAA*,
   802 F.3d 1049 (9th Cir. 2015) ........................................................... 32

*Ohio v. American Express Co.*,
   138 S. Ct. 2274 (2018) ................................................................. 8, 35

*Omnicare, Inc. v. UnitedHealth Group, Inc.*,
   629 F.3d 697 (7th Cir. 2011) ............................................................ 19

*Palmer v. BRG of Georgia, Inc.*,
   498 U.S. 46 (1990) ................................................................. 8, 17, 19

*Polk Brothers v. Forest City Enterprises, Inc.*,
   776 F.2d 185 (7th Cir. 1985) .......................................... 21, 24, 25, 35

*Quinonez v. National Association of Securities Dealers, Inc.*,
   540 F.2d 824 (5th Cir. 1976) ............................................................ 19

*Roman v. Cessna Aircraft Co.*,
   55 F.3d 542 (10th Cir. 1995) ........................................................... 19

*Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*,
   792 F.2d 210 (D.C. Cir. 1986) ................................................ 15, 22, 23

*Schering-Plough Corp. v. FTC*,
   402 F.3d 1056 (11th Cir. 2005) ........................................................ 23

Page(s)

<u>Cases</u>

*Standard Oil Co. v. United States,*
   221 U.S. 1 (1911) ................................................................................ 8

*Texaco Inc. v. Dagher,*
   547 U.S. 1 (2006) ................................................................... 22, 34, 35

*Toys "R" Us, Inc. v. FTC,*
   221 F.3d 928 (7th Cir. 2000) .......................................................... 18

*United States v. Addyston Pipe & Steel Co.,*
   85 F. 271 (6th Cir. 1898) ........................................................... 24, 25

*United States v. Apple,*
   791 F.3d 290 (2d Cir. 2015) ............................................................ 17

*United States v. Cadillac Overall Supply Co.,*
   568 F.2d 1078 (5th Cir. 1978) ........................................................ 19

*United States v. Cooperative Theatres of Ohio, Inc.,*
   845 F.2d 1367 (6th Cir. 1988) ........................................................ 19

*United States v. eBay, Inc.,*
   968 F. Supp. 2d 1030 (N.D. Cal. 2013) ..................................... 20, 26

*United States v. General Motors Corp.,*
   384 U.S. 127 (1966) ........................................................................ 17

*United States v. Manahe,*
   No. 2:22-cr-00013-JAW, 2022 WL 3161781 (D. Me. Aug. 8, 2022) ..... 33

*United States v. Topco Associates,*
   405 U.S. 596 (1972) ........................................................................ 19

<u>Statutes</u>

15 U.S.C. § 1 ..................................................................................... 1, 8

vi

Page(s)

## Rules

Fed. R. App. P. 29 ...................................................................7

Fed. R. Civ. P. 12 ................................................... 12, 13, 27, 30

## Other Authorities

Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An
 Analysis of Antitrust Principles and Their Application
 (4th ed. 2022) ............................................................. 23

U.S. Bureau of Labor Statistics, *Occupational Employment & Wage
 Statistics* (last updated Mar. 31, 2022),
 https://www.bls.gov/oes/current/oes353023.htm ................................. 10

U.S. Dep't of Treasury, *The State of Labor Market Competition*
 (Mar. 7, 2022), https://home.treasury.gov/system/files/136/State-of-
 Labor-Market-Competition-2022.pdf ................................................. 10

## INTEREST OF AMICI

The United States and the Federal Trade Commission

("Commission") enforce the federal antitrust laws and have a strong

interest in their correct application. The United States enforces

Section 1 of the Sherman Act, 15 U.S.C. § 1, against employers who

enter into market-allocation agreements, including agreements not to

hire, solicit, and/or otherwise compete for employees. *See, e.g.*,

*United States v. Manahe*, No. 2:22-cr-00013-JAW (D. Me. Jan. 27,

2022); *United States v. Hee*, No. 2:21-cr-00098-RFB-BNW (D. Nev.

Mar. 30, 2021); *United States v. Surgical Care Affiliates, LLC*, No. 3:21-

cr-00011-L (N.D. Tex. July 8, 2021). The United States has filed amicus

briefs and statements of interest addressing such employee-allocation

agreements. *See, e.g.*, *Aya Healthcare Servs., Inc. v. AMN*

*Healthcare, Inc.*, No. 20-55679 (9th Cir. Nov. 19, 2020) (Doc. 14);

*Markson v. CRST Int'l, Inc.*, No. 5:17-cv-01261-SB (SPx) (C.D. Cal.

July 15, 2022) (Doc. 637); *In re Outpatient Med. Ctr. Emp. Antitrust*

*Litig.*, No. 1:21-cv-00305 (N.D. Ill. Dec. 9, 2021) (Doc. 91); *Seaman v.*

*Duke Univ.*, No. 1:15-cv-00462-CCE-JLW (M.D.N.C. Mar. 7, 2019)

(Doc. 325); *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, No. 2:18-mc-00798-JFC (W.D. Pa. Feb. 8, 2019) (Doc. 158).

The United States and the Commission file this brief under Federal Rule of Appellate Procedure 29(a)(2) to address the legal framework governing agreements among employers not to hire or solicit each other's employees in the franchise setting.  We take no position on other issues or the disposition of this appeal.

## ISSUES PRESENTED

1.  Whether the District Court misapplied the ancillary-restraints doctrine.

2.  Whether the District Court misread *NCAA v. Alston*, 141 S. Ct. 2141 (2021), as changing the legal standards governing when a restraint is per se unlawful or can be condemned after a quick look.

## FACTUAL BACKGROUND

**1.**  The complaints allege that defendants—McDonald's Corporation and its subsidiary, McDonald's USA, LLC—"sell[] food to customers primarily through independently owned and operated franchise restaurants."  Am. Compl., Dkt. 32 ¶ 15; Compl., No. 1:19-cv-

2

05524, Dkt. 1 ¶ 20.[1]  Defendants serve as the franchisor for the
McDonald's restaurants.  Am. Compl., Dkt. 32 ¶ 26; Compl. No. 1:19-cv-
05524, Dkt. 1 ¶ 30.  According to the complaints, franchisees own 90%
of U.S. restaurants that operate under the McDonald's brand; the rest
are owned by "McDonald's Operating Companies" or "McOpCos,"
"subsidiaries of Defendant McDonald's Corporation."  Am. Compl.,
Dkt. 32 ¶¶ 21, 25; Compl., No. 1:19-cv-05524, Dkt. 1 ¶¶ 25, 29.

Plaintiffs, former employees of McDonald's restaurants, allege
that, until 2017, defendants and franchisees "entered into express
contractual agreements forbidding competition for employees among
franchisees and McDonald's company-owned stores."  Am. Compl.,
Dkt. 32 ¶¶ 59-70, 86; Compl., No. 1:19-cv-05524, Dkt. 1 ¶¶ 63-70, 86.
According to the complaints, each franchisee signed a franchise
agreement with McDonald's, and until 2017, the "standard language" in
McDonald's franchise agreements contained a provision that stated:

> *Interference With Employment Relations of Others.*  During
> the term of this Franchise, Franchisee shall not employ or
> seek to employ any person who is at the time employed by
> McDonald's, any of its subsidiaries, or by any person who is

---

[1] Docket citations refer to *Deslandes v. McDonald's USA, LLC*, No. 1:17-
cv-04857, unless otherwise noted.

at the time operating a McDonald's restaurant or otherwise
induce, directly or indirectly, such person to leave such
employment. This paragraph [] shall not be violated if such
person has left the employ of any of the foregoing parties for
a period in excess of six (6) months.

Am. Compl., Dkt. 32 ¶¶ 3, 26, 87; Compl., No. 1:19-cv-05524, Dkt. 1

¶¶ 5, 30, 87. Plaintiffs allege that "this provision was interpreted and

enforced by McDonald's itself as applying not only to franchisee hiring,

but also to McDonald's hiring in its company-owned McOpCo stores."

Am. Compl., Dkt. 32 ¶ 88; Compl., No. 1:19-cv-05524, Dkt. 1 ¶ 88.

"In 2017," plaintiffs allege, "McDonald's removed the no-hire and

no-solicitation provision from its standard franchise agreement."

Am. Compl., Dkt. 32 ¶ 92; Compl., No. 1:19-cv-05524, Dkt. 1 ¶ 92. In

addition, in 2018, McDonald's entered into an agreement with the

Washington Attorney General that required McDonald's to stop

including the no-hire/no-solicitation provision "in future franchise

agreements" and "to stop enforcing" the provision nationwide. Compl.,

No. 1:19-cv-05524, Dkt. 1 ¶ 11.

2. Plaintiff Leinani Deslandes alleged that she began working at

a franchisee-owned McDonald's as a crew person earning $7 an hour in

2009. Am. Compl., Dkt. 32 ¶ 59. According to the complaint, she rose

through the ranks, eventually earning $12 an hour as a department

manager, but decided to look for another job because, among other

reasons, her employer denied her the opportunity to become a general

manager due to her pregnancy. *Id.* ¶ 64. A manager at a nearby

McOpCo restaurant allegedly "expressed a desire to hire" Deslandes for

a department-manager position that would have paid $13.75 an hour

(with the potential for an increase to $14.75 an hour after 90 days). *Id.*

¶¶ 67-68. The complaint claims, however, that Deslandes was told that

she needed to obtain a "release" from her current franchisee-employer in

order to work at the McOpCo restaurant. *Id.* The franchisee allegedly

denied Deslandes's request for a release. *Id.* ¶ 69.

Deslandes sued, claiming that the no-hire/no-solicitation

agreement violated Section 1 under the "*per se*" rule or "a 'quick look'

analysis." *Id.* ¶¶ 1, 133-34.

**3.** Defendants moved to dismiss. The District Court stated that

the complaint alleged a horizontal "no-hire" agreement that, if "naked,"

"would be a *per se* violation." June 25, 2018 Order, Dkt. 53 at 10-12.

But the District Court declined to apply the per se rule because it

viewed the alleged agreement as "ancillary to an agreement with a

5

procompetitive effect"—the "franchise agreement." *Id.* at 13-14. The District Court emphasized: "That is not to say that the provision itself was output enhancing. The very fact that McDonald's has managed to continue signing franchise agreements even after it stopped including the provision in 2017 suggests that the no-hire provision was not necessary to encourage franchisees to sign." *Id.* at 13. The District Court permitted the claim to proceed "under quick-look analysis" because "[e]ven a person with a rudimentary understanding of economics would understand" that the agreement could cause wages to "stagnate." *Id.* at 14.

4. Plaintiff Stephanie Turner brought a similar suit, alleging that she had worked at several McDonald's locations and considered applying to positions at other locations. Compl., No. 1:19-cv-05524, Dkt. 1 ¶¶ 63-69. She allegedly declined to do so, however, after her supervisors informed her of the release requirement and led her to believe that any request for a release would be denied. Compl., No. 1:19-cv-05524, Dkt. 1 ¶¶ 66, 68-69.

Both plaintiffs moved for class certification. Holding that full rule-of-reason analysis would apply, the District Court denied the

6

motion partly because individual issues would predominate over common ones. July 28, 2021 Order, Dkt. 372 at 10-24. According to the District Court, quick-look analysis was no longer available to plaintiffs after *NCAA v. Alston*, 141 S. Ct. 2141 (2021). July 28, 2021 Order, Dkt. 372 at 10-11.

**5.** Defendants moved for judgment on the pleadings or, alternatively, summary judgment.[2] The District Court granted the motion for judgment on the pleadings, reiterating the view that neither the per se rule nor quick-look analysis applied. June 28, 2022 Order, Dkt. 453 at 8-9. The District Court held that plaintiffs had not alleged (and could not plausibly allege) facts supporting a full rule-of-reason claim and denied the summary-judgment motion as moot. *Id.* at 10-13.

---

[2] As Appellants correctly point out (Appellants' Br. 56), the District Court was wrong to reject the United States' request to file a statement of interest below. There was no "separation of power[s]" issue here, as the District Court believed. Congress has explicitly authorized the United States to express its views in Article III proceedings: 28 U.S.C. § 517 allows "any officer of the Department of Justice" to "attend to the interests of the United States in a suit pending in a court of the United States." *Cf.* Fed. R. App. P. 29(a)(2) (The "United States . . . may file an amicus brief without the consent of the parties or leave of court.").

## ARGUMENT

Section 1 of the Sherman Act bars every "contract," "combination," or "conspiracy" that unreasonably restrains trade.  15 U.S.C. § 1; *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 457 (1986).  "Restraints can be unreasonable in one of two ways." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2283 (2018).  First, Congress condemned certain horizontal restraints—including market-allocation agreements—as per se unreasonable based on their inherently anticompetitive "nature and character." *Standard Oil Co. v. United States*, 221 U.S. 1, 64-65 (1911); *see Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49-50 (1990); *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 647 (1980).  "The anticompetitive potential inherent in all" per se illegal agreements "justifies their facial invalidation even if procompetitive justifications are offered for some." *Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332, 351 (1982). Second, "[r]estraints that are not unreasonable per se are judged under the 'rule of reason,'" a "fact-specific assessment" of "the restraint's actual effect on competition." *Am. Express*, 138 S. Ct. at 2284 (internal quotation marks and brackets omitted).

If a court determines that the rule of reason applies, there is no one-size-fits-all analysis that automatically applies. The rule of reason is flexible, and it entails an "enquiry meet for the case." *Cal. Dental Ass'n v. FTC*, 526 U.S. 756, 781 (1999). In some cases, a full rule-of-reason analysis is required, which can entail an analysis of the defendants' market power. In other cases, however, the Supreme Court has recognized that "no elaborate industry analysis is required to demonstrate" a restraint's "anticompetitive character" under the rule of reason because "an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect." *Id.* at 770 (citation omitted). The version of the rule of reason applied in these cases is called "abbreviated or 'quick-look' analysis." *Id.*

The Supreme Court has made clear that the Sherman Act protects workers and competition in labor markets. *Alston*, 141 S. Ct. at 2154-60; *Anderson v. Shipowners' Ass'n of Pac. Coast*, 272 U.S. 359, 363-64 (1926). This protection promotes competition among employers for

workers' labor, contributing to higher wages and benefits.[3]  Fast-food

workers stand especially to benefit from the Sherman Act's enforcement

in labor markets:  As of May 2021, the Bureau of Labor Statistics

classified nearly 3.1 million workers as "Fast Food and Counter

Workers" and calculated their mean hourly wage as just $12.53 and

their mean annual wage as $26,060.  U.S. Bureau of Labor Statistics,

*Occupational Employment & Wage Statistics* (last updated Mar. 31,

2022), https://www.bls.gov/oes/current/oes353023.htm.

Despite the Sherman Act's role in protecting workers, the District

Court misapplied the law in a way that would make it unduly difficult

for McDonald's restaurant workers to plead Section 1 claims against

their employers.  The proper analysis starts from the premise—

applicable both within and outside the franchise context—that

---

[3] *See, e.g.*, U.S. Dep't of Treasury, *The State of Labor Market Competition* 1, 23-25 (Mar. 7, 2022), https://home.treasury.gov/system /files/136/State-of-Labor-Market-Competition-2022.pdf; *Freyd v. Univ. of Or.*, 990 F.3d 1211, 1224-25 (9th Cir. 2021) (citing evidence that, because female employees "receive[d] fewer competing" job offers, they were less likely to "enter[] into retention negotiations" with employers and received lower salaries).

10

horizontal employee-allocation agreements are per se unlawful unless defendants raise and establish the ancillary-restraints defense.

An agreement is horizontal if it limits competition among parties to the agreement that are actual or potential competitors. If a franchisor and franchisee compete to hire workers from the same labor pool, an employee-allocation agreement between the franchisor and franchisee is horizontal. And if a franchisor orchestrates an employee-allocation agreement among franchisees that are actual or potential competitors for workers, that agreement is horizontal—even though the franchisor also participates in it.

When an employee-allocation agreement is horizontal, defendants may avoid the per se rule by raising and establishing an ancillarity defense. To do so, defendants must show that the restraint is both (i) subordinate and collateral to a separate, legitimate collaboration among defendants, such as a joint venture, and (ii) reasonably necessary to achieving a procompetitive objective of the collaboration. If defendants satisfy both requirements, the rule of reason applies, and the court must next determine what version of the rule of reason (whether a full analysis or a more truncated analysis) would apply.

11

In this case, the District Court applied the correct legal framework to find that plaintiffs alleged a horizontal restraint. It subsequently erred in two independent ways.

First, the District Court misapplied the ancillary-restraints doctrine. The court held at the Rule 12(b)(6) and 12(c) stages that the alleged restraint was ancillary to the McDonald's franchise arrangement—despite recognizing that defendants likely could not make a reasonable-necessity showing. Forgoing that essential element erroneously lightened defendants' burden and misapplied the law. Under a correct application of controlling law, if a defendant fails to establish that a horizontal employee-allocation agreement is an ancillary restraint (i.e., reasonably necessary to achieving a procompetitive objective of a separate, legitimate transaction or collaboration), the restraint is condemned under the per se rule.

Second, the District Court independently erred in suggesting that *Alston* changed the applicable legal standards. The District Court relied on *Alston* to reject per se treatment of the employee-allocation agreement—independent of whether or not the agreement satisfied the ancillary-restraints doctrine. And after concluding that the agreement

satisfied the ancillary-restraints doctrine, the District Court's Rule 12(c) decision walked back its own prior holding that a "quick look" version of the rule of reason applied to the McDonald's franchise-agreement provision. It did so, in part, based on the belief that the Supreme Court's intervening decision in *Alston* required that change in course. Both interpretations of *Alston* are wrong. Contrary to the District Court's view, *Alston* effected no such change to the legal standards governing the per se rule and quick-look condemnation.

## I.  THE DISTRICT COURT MISAPPLIED THE ANCILLARY-RESTRAINTS DOCTRINE

If an employee-allocation agreement in the franchise setting is horizontal and defendants do not properly assert and establish a defense under the ancillary-restraints doctrine, the per se rule applies. Although the District Court correctly recognized that no-hire/no-solicitation provisions in franchise agreements may be horizontal, it erred in its subsequent analysis of whether the restrictions at issue are ancillary to the franchise agreement. Under a correct ancillary-restraints analysis, whether the no-hire/no-solicitation provisions are ancillary to the franchise agreement turns on whether they are "reasonably necessary" to a procompetitive objective of the franchise

agreement.  The District Court failed to account for this part of the

governing test.

> ### A. The District Court Correctly Recognized that No-Hire/No-Solicitation Provisions in Franchise Agreements May Be Horizontal and, If So, Are Per Se Illegal Unless Defendants Establish Ancillarity

The District Court correctly recognized that (1) employee-

allocation agreements among franchisors and franchisees, including no-

hire and no-solicitation provisions in franchise agreements, may be

horizontal under certain conditions and (2) horizontal employee-

allocation agreements in the franchise setting are per se unlawful

unless defendants establish ancillarity.

> #### 1. No-Hire/No-Solicitation Provisions in Franchise Agreements Can Be Horizontal

As the District Court explained, employee-allocation agreements

among franchisors and franchisees, including no-hire and no-solicitation

provisions in franchise agreements, can be horizontal under certain

conditions.  June 25, 2018 Order, Dkt. 53 at 10-11; June 28, 2022 Order,

Dkt. 453 at 3, 9.  Specifically, if a franchisor and franchisee actually or

potentially compete for employees, a no-hire agreement between them is

horizontal.  So is a no-hire agreement among franchisees that actually

or potentially compete for employees, even if the agreement is orchestrated in whole or in part by a franchisor.

1. "[H]orizontal restraints . . . eliminate some degree of rivalry between persons or firms who are actual or potential competitors." *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 229 (D.C. Cir. 1986). If defendants and franchisees hire from the same labor pool, they are "actual or potential competitors" for employees, and an employee-allocation agreement among them "eliminate[s] some degree of rivalry." *See id.*

To the extent defendants' corporate headquarters competes with franchisees for employees, an employee-allocation agreement among defendants and the competing franchisees is horizontal—even if the franchisees have not agreed among themselves to stop competing. Am. Compl., Dkt. 32 ¶ 83 ("But for the no-hire agreement, each McDonald's franchise (and McDonald's itself) would compete with each other for the best-performing employees."); Compl., No. 1:19-cv-05524, Dkt. 1 ¶ 83 (same). Similarly, to the extent McOpCos compete with franchisees for employees, an employee-allocation agreement by which defendants and the competing franchisees agree to end this competition

15

is horizontal—even if the franchisees have not agreed among
themselves to stop competing. Am. Compl., Dkt. 32 ¶ 83; Compl.,
No. 1:19-cv-05524, Dkt. 1 ¶ 83. The Eleventh Circuit illustrated this
principle by holding that Burger King—which, like McDonald's, both
enters into franchise agreements and runs company-owned
restaurants—"compete[s] . . . for employees" against "its separate and
independent franchise restaurants." *Arrington v. Burger King
Worldwide, Inc.*, 47 F.4th 1247, 1250 (11th Cir. 2022); *see id.* at 1253
(similar).

2. Even if defendant-franchisors do not actually or potentially
compete with franchisees for employees, an employee-allocation
agreement among defendant-franchisors and franchisees (including one
that is contained in a franchise agreement) may still be horizontal.
When a horizontal agreement is per se unreasonable, a vertically-
related firm's participation in the agreement does not alter the
agreement's horizontal character. As the Second Circuit explained,
where a "vertical organizer has not only committed to vertical
agreements, but has also agreed to participate in the horizontal
conspiracy," "the court need not consider whether the vertical

16

agreements restrained trade because all participants agreed to the
horizontal restraint." *United States v. Apple*, 791 F.3d 290, 325 (2d Cir.
2015); *see, e.g., United States v. Gen. Motors Corp.*, 384 U.S. 127, 132-
38, 140-41, 144-46 (1966) (vertically-related manufacturer enforced
horizontal restraint agreed upon by distributors); *Klor's, Inc. v.
Broadway-Hale Stores, Inc.*, 359 U.S. 207, 212-13 (1959) (conspiracy "of
manufacturers, distributors and a retailer"); *Interstate Circuit v.
United States*, 306 U.S. 208, 225-27 (1939) (conspiracy among
competing film distributors and certain exhibitors); *see also Palmer*,
498 U.S. at 47, 49-50 (treating agreement as horizontal where it both
created vertical licensor-licensee relationship and divided market in
which licensor and licensee could compete).

   This principle may apply in the franchise setting if, for example, a
franchisor participates in a horizontal agreement among franchisees by
inserting and enforcing no-hire clauses in franchise agreements at the
franchisees' behest. *Cf. Butler v. Jimmy John's Franchise, LLC*, 331
F. Supp. 3d 786, 795-96 (S.D. Ill. 2018) (corporate headquarters and
franchisees were participants in "horizontal agreement," in a "hub-and-
spoke" structure,  where "franchisees tacitly agree[d] amongst each

other to enforce the no-hire provision" and "the franchise agreements

g[a]ve the franchisees a contractual right to enforce the no-hire

agreements directly against each other"). Alternatively, a franchisor

might "induc[e]" franchisees that compete in the labor market to enter

into a no-hire agreement, *Toys "R" Us, Inc. v. FTC*, 221 F.3d 928, 934-36

(7th Cir. 2000), by providing "assurance" that all other franchisees will

"abid[e] by the agreement and behav[e] in the same way," *Marion*

*Healthcare, LLC v. Becton Dickinson & Co.*, 952 F.3d 832, 842 (7th Cir.

2020). This franchisor-orchestrated agreement, too, would be

horizontal. *Toys "R" Us*, 221 F.3d at 935-36.

### 2. The Per Se Rule Applies to Horizontal Employee-Allocation Agreements Unless Defendants Establish Ancillarity

The District Court further correctly explained that no-hire and no-

solicitation agreements among labor-market competitors in the context

of a franchise are horizontal employee-allocation agreements and that

such agreements are per se unlawful unless defendants establish

ancillarity.

Horizontal agreements among competitors to divide customers or

territories, including agreements to refrain from soliciting each other's

customers, are per se illegal. *Palmer*, 498 U.S. at 49-50; *United States
v. Topco Assocs.*, 405 U.S. 596, 608-12 (1972); *see United States v. Coop.
Theatres of Ohio, Inc.*, 845 F.2d 1367, 1373 (6th Cir. 1988);
*United States v. Cadillac Overall Supply Co.*, 568 F.2d 1078, 1088
(5th Cir. 1978). Although these cases involved agreements among
sellers, the same principles apply—and the per se rule applies—to
agreements among competing buyers of products or services.
*Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.*, 334 U.S. 219,
236 (1948); *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705
(7th Cir. 2011). And the antitrust laws apply to the buying of labor just
as they apply to the buying of goods. *Alston*, 141 S. Ct. at 2154-60
(applying Sherman Act to labor-market restraints); *Anderson*, 272 U.S.
at 360-65 (same); *Nichols v. Spencer Int'l Press, Inc.*, 371 F.2d 332, 335-
37 (7th Cir. 1967) (same).[4]

For this reason, agreements among competing employers not to
hire or solicit each other's employees are per se unlawful unless

---

[4] *See also Quinonez v. Nat'l Ass'n of Sec. Dealers, Inc.*, 540 F.2d 824,
826, 828-29 (5th Cir. 1976) (same); *cf. Roman v. Cessna Aircraft Co.*, 55
F.3d 542, 543-45 (10th Cir. 1995) (finding antitrust injury based on no-
hire agreement).

defendants establish ancillarity. *In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, No. 21-cv-00305, 2022 WL 4465929, at \*10-11 (N.D. Ill. Sept. 26, 2022).[5]  That is because employee allocations inherently "eliminat[e] . . . competition" by limiting employers' ability to compete for employees not allocated to them. *See Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 65 F.3d 1406, 1415 (7th Cir. 1995) (discussing territorial allocations).  The allocated employees cannot benefit from competition that would result in better wages and working conditions. *See Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 782 (7th Cir. 1994) (discussing customer allocations).[6]

_____

[5] *See also Markson v. CRST Int'l, Inc.*, No. 5:17-cv-01261-SB-SP, 2021 WL 1156863, at \*4 (C.D. Cal. Feb. 10, 2021); *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 480-85 (W.D. Pa. 2019); *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1211-14 (N.D. Cal. 2015); *United States v. eBay, Inc.*, 968 F. Supp. 2d 1030, 1038-39 (N.D. Cal. 2013); *In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1110-12, 1122 (N.D. Cal. 2012); *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 9 F.4th 1102, 1110 n.4 (9th Cir. 2021) (without deciding the issue, finding "considerable merit" in argument "that the *per se* rule applies to naked non-solicitation agreements"); *In re Geisinger Health & Evangelical Cmty. Hosp. Healthcare Workers Antitrust Litig.*, No. 4:21-CV-00196, 2021 WL 5330783, at \*2-4 (M.D. Pa. Nov. 16, 2021) (denying motion to dismiss per se claim based on "no-poach agreement").

[6] Despite defendants' citation of *Nichols*, 371 F.2d 332 (Motion to Dismiss, Dkt. 35 at 1), the District Court correctly declined to rely on it.

**B. The District Court Erred in Failing to Require Defendants to Establish that the Challenged Restraint Is "Reasonably Necessary" to Achieve a Procompetitive Objective of the Franchise Agreement**

If an employee-allocation agreement is horizontal, defendants can still avoid the per se rule's application by establishing the ancillary-restraints defense (i.e., establishing that the restraint is not naked). *See Polk Bros. v. Forest City Enters., Inc.*, 776 F.2d 185, 188-89 (7th Cir. 1985) ("distinguish[ing] between 'naked' . . . and 'ancillary' restraints"). Defendants bear the burden of establishing ancillarity. *Blackburn v. Sweeney*, 53 F.3d 825, 828-29 (7th Cir. 1995) (rejecting ancillarity defense that "seem[ed] plausible" "[a]t first blush" because, "[o]n closer scrutiny," defendants' evidence and arguments did not support it); *see also Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1152 (9th Cir. 2003) (defendants' ancillarity argument "fail[ed] to state a valid defense"); *Bd. of Regents of Univ. of Okla. v. NCAA*, 707

---

*Nichols*' statement that "[a]greements not to compete are tested by a standard of reasonableness" is dicta because it is followed by: "We do not attempt to deal with questions of this type at this stage of the proceeding." 371 F.2d at 337. Subsequent Supreme Court and Seventh Circuit decisions make clear that certain "[a]greements not to compete," such as market-allocation agreements, are per se unlawful. *See supra* at 18-20.

F.2d 1147, 1154 n.9 (10th Cir. 1983) (burden of "proving the
effectiveness and necessity" of allegedly ancillary restraints rightly
placed on defendant), *aff'd*, 468 U.S. 85 (1984).

The District Court concluded as a matter of law that the no-
hire/no-solicitation provision was ancillary to the franchise
arrangement and that the franchise arrangement was "output
enhancing in the market for fast food."  June 28, 2022 Order, Dkt. 453
at 9; *see* June 25, 2018 Order, Dkt. 53 at 13-14.  In doing so, the District
Court erred by failing to require that defendants establish a necessary
requirement of the ancillarity test—namely, that the challenged no-
hire/no-solicitation provision was "reasonably necessary" to achieve a
procompetitive objective of the franchise agreement as a whole.
*See* June 25, 2018 Order, Dkt. 53 at 13-14; June 28, 2022 Order,
Dkt. 453 at 9.

To establish an ancillary-restraints defense, defendants must
make two showings.  First, they must demonstrate that the challenged
restraint is (i) "subordinate and collateral," *Rothery Storage*, 792 F.2d
at 224, to a separate, "legitimate business collaboration" among
defendants, *Texaco Inc. v. Dagher*, 547 U.S. 1, 7 (2006).  This

requirement ensures that any restraint is "secondary," *Schering-Plough Corp. v. FTC*, 402 F.3d 1056, 1073 (11th Cir. 2005), to an "economic integration" or "fusion" of "productive capacities" that achieves "procompetitive" results—paradigmatically, a joint venture, *Rothery Storage*, 792 F.2d at 214, 230.

The mere fact that an employee-allocation agreement is "subordinate and collateral to a separate, legitimate" franchise arrangement, however, is not enough.  Restraints are "not automatically deemed ancillary simply because [they] facilitate[] a procompetitive arrangement," since "some determination must be made whether the challenged agreement is an essential part of this arrangement."  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 345-46 (3d Cir. 2010) (internal quotation marks omitted).  Put another way, a "restraint does not qualify as 'ancillary' merely because it accompanies some other agreement that is itself lawful."  PHILLIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW: AN ANALYSIS OF ANTITRUST PRINCIPLES AND THEIR APPLICATION (4th ed. 2022) ¶ 1908b. As Appellants correctly point out, "[o]therwise, any businessperson

could shield an anticompetitive restraint merely by placing it within a broader contract." Appellants' Br. 23.

For this reason, the second, and essential, step of the analysis under the ancillary-restraints doctrine is determining whether the no-hire and no-solicitation agreement is reasonably necessary to achieve a procompetitive objective of the franchise agreement. *Blackburn*, 53 F.3d at 828; *see also United States v. Addyston Pipe & Steel Co.*, 85 F. 271, 281 (6th Cir. 1898) (adopting a "reasonably necessary" standard), *aff'd in relevant part & modified in part*, 175 U.S. 211 (1899); *Aya*, 9 F.4th at 1109 (same); *see Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255, 265 (7th Cir. 1981) (assessing whether covenant not to compete was "(1) ancillary to the main business purpose of a lawful contract, and (2) necessary to protect the covenantee's legitimate property interests"). The reasonable-necessity requirement ensures that any restraint helps promote the collaboration's success and is not overbroad. *See Blackburn*, 53 F.3d at 828-29. As this Court has stated, in applying this part of the test, the District Court must assess whether the restraints at issue "promote[d]" the "success" of the "larger endeavor." *Polk Bros.*, 776 F.2d at 189; *see also In re Sulfuric Acid Antitrust Litig.*,

24

743 F. Supp. 2d 827, 878 (N.D. Ill. 2010) (citing *Polk Bros.* for the
proposition that a restraint must be "reasonably necessary to achieve a
legitimate joint venture's efficiency-enhancing benefits"). For example,
in *Blackburn*, this Court rejected an ancillarity defense partly on the
ground that the challenged restraint had an "infinite duration," which
was not reasonably "necessary" for a partnership's dissolution. 53 F.3d
at 828-29.[7]

The District Court did not undertake this analysis. Instead, it
rested its conclusion on the fact that the *franchise agreement* was
"output enhancing" (June 28, 2022 Order, Dkt. 453 at 9), without
looking to whether the no-hire/no-solicitation provision was reasonably
necessary to achieve the franchise agreement's procompetitive
objectives. In fact, the District Court suggested that the no-hire/no-

---

[7] The Sixth Circuit mistakenly stated that this Court applies the
ancillary-restraints doctrine even if a restraint is not "*necessary* to
achieve [a] joint venture's efficiency-enhancing purpose." *Med. Ctr. at
Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713, 726 (6th Cir.
2019). That assertion contravenes *Blackburn* (which the Sixth Circuit
did not cite) and *Lektro-Vend*, as well as *Polk Brothers*' definition of
"'ancillary' restraints" as "those that are part of a larger endeavor
whose success they promote," 776 F.2d at 189. Defendants
acknowledged that *Addyston Pipe* and other cases use a reasonable-
necessity standard. Reply in Support of Motion for Judgment on the
Pleadings or Summary Judgment, Dkt. 415 at 6 n.2.

solicitation provision was not reasonably necessary to increase output or achieve any other procompetitive objective of the franchise arrangement. The District Court underscored that "the very fact that McDonald's has managed to continue signing franchise agreements even after it stopped including the provision in 2017 suggests that the . . . provision was not necessary to encourage franchisees to sign." June 25, 2018 Order, Dkt. 53 at 13. The District Court further made clear that it was *not* "say[ing] that the [no-hire/no-solicitation] provision itself was output enhancing." *Id.* By concluding that the alleged restraint was ancillary without determining that it was reasonably necessary—and suggesting that the restraint likely was *not* reasonably necessary—the District Court erred by failing to address a required element that defendants must establish under the ancillary-restraints doctrine. *See eBay*, 968 F. Supp. 2d at 1039 (declining, on Rule 12(b)(6) motion, to treat restraint as ancillary "simply because [defendant] posits that it is").[8]

---

[8] To the extent that this Court finds the United States' statement of interest in *Stigar v. Dough Dough, Inc.*, No. 2:18-cv-00244 (E.D. Wash. Mar. 8, 2019) (Doc. 34) (the "*Stigar* Statement") to be relevant to this case, the *Stigar* Statement no longer represents the views of the

This error is especially worrisome in a ruling on the pleadings. As this Court has explained, an affirmative defense in a civil case provides a basis for a Rule 12(b)(6) motion only in the "narrow" class of cases where plaintiff "has pleaded herself out of court"; similarly, such a defense provides a basis for a Rule 12(c) motion only where defendant has met "the burden of showing that the allegations of the complaint and an answer show[]" that the defense "conclusively defeat[ed]" plaintiff's claims "as a matter of law." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806-07 (7th Cir. 2020). Simply alleging that a restraint is "part of a franchise agreement," as plaintiffs did here, June 28, 2022 Order,

---

United States, nor does it represent the Federal Trade Commission's views. The legal assertions in that statement also rest on factual assumptions that may not apply to this case. For example, while the *Stigar* Statement expresses general views about the verticality of employee-allocation agreements in the franchise context, assessing an agreement's horizontality requires a fact-bound evaluation of whether the agreement limits rivalry between actual or potential competitors. Similarly, while the *Stigar* Statement suggests that employee-allocation agreements are "likely" subject to the ancillary-restraints doctrine, that statement relied on a view that the *franchise agreement* is a legitimate business collaboration "under the same brand." But franchisees' competition for employees' labor is not intrabrand, *see infra* at 28-30, and the fact that "McDonald's franchises [may] coordinate the release of a new hamburger does not imply their ability to agree on wages for counter workers," *Chi. Pro. Sports Ltd. P'ship v. NBA*, 95 F.3d 593, 600 (7th Cir. 1996).

Dkt. 453 at 9; *see* June 25, 2018 Order, Dkt. 53 at 13-14, neither pleads

the case out of court nor "conclusively" establishes the ancillarity

defense because it says nothing about reasonable necessity. *See Gunn*,

968 F.3d at 806-07.

Instead of analyzing reasonable necessity, as required by this

Court's law, the District Court relied on analogies to support its

conclusion.  In particular, analogizing dual-distribution and franchise

arrangements, the District Court appeared to believe that the alleged

restraint was ancillary because it merely eliminated *intrabrand*

competition while promoting *interbrand* competition.  June 28, 2022

Order, Dkt. 453 at 9 n.4.  But while defendants and franchisees engage

in intrabrand competition when they compete to sell food to customers,

their competition to purchase employees' labor is not properly

characterized as intrabrand.  As the Supreme Court has explained,

"intrabrand competition is the competition between the distributors

wholesale or retail of the product of a particular manufacturer." *Cont'l*

*T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 52 n.19 (1977); *see Leegin*

*Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 890 (2007)

(defining "intrabrand competition" as "competition among retailers

28

selling the same brand"). Job opportunities are not a branded "product of a particular manufacturer," and competition among franchisees to purchase employees' labor is not competition over distribution of a manufacturer's branded product. *See GTE Sylvania*, 433 U.S. at 52 n.19. As the District Court seemed to recognize when denying defendants' motion to dismiss, this competition is not "intrabrand" as the Supreme Court defines that term. June 25, 2018 Order, Dkt. 53 at 15 ("In the employment market, the various McDonald's stores are competing brands.").

The analogy between dual distributors and franchisees fails for the same reason: It conflates product and labor markets. Dual distributors are "firm[s] with both wholesale and retail operations"—firms that both supply and compete with their retail customers. *Fleet Wholesale Supply Co. v. Remington Arms Co.*, 846 F.2d 1095, 1096 (7th Cir. 1988). Defendants may be analogous to dual distributors in the product market because they both license the McDonald's brand to franchisees and compete for sales under that brand through McOpCos. However, there is no distribution at all, let alone dual distribution, in the labor market. Defendants are purchasers, not distributors, of

employees' services and, as the District Court once recognized, are best understood as franchisees' "direct, horizontal, competitors" for employees, not as participants in a dual relationship with franchisees. June 25, 2018 Order, Dkt. 53 at 14-15.

II.   *ALSTON* DID NOT CHANGE THE LEGAL STANDARDS GOVERNING WHETHER THE PER SE RULE OR QUICK-LOOK CONDEMNATION APPLIES

The District Court relied on *Alston* in two ways. First, it thought that *Alston* required the District Court—independent of its ancillary-restraints holding—to reject per se treatment of the employee-allocation agreement. June 28, 2022 Order, Dkt. 453 at 9. Second, in its prior ruling on a motion to dismiss, the District Court had concluded that the employee-allocation agreement satisfied the ancillary-restraints doctrine, and was thus subject to the rule of reason, but could be condemned under the "quick look" version of that test. June 25, 2018 Order, Dkt. 53 at 18. But in its Rule 12(c) opinion four years later, the District Court concluded that the Supreme Court's intervening decision in *Alston* required it to change course, and reject this abbreviated version of the rule of reason in favor of the full analysis. June 28, 2022

Order, Dkt. 453 at 8-9.  Both views of *Alston* are wrong.  *Alston* does
not support the District Court's analysis.

*Alston* affirmed the district court's judgment—following a full
rule-of-reason trial—that several NCAA rules limiting student-athlete
compensation had severe anticompetitive effects and thus violated
Section 1.  141 S. Ct. at 2151; *see In re NCAA Athletic Grant-in-Aid
Cap Antitrust Litig.*, 375 F. Supp. 3d 1058, 1070 (N.D. Cal. 2019).  The
Court rejected the NCAA's argument that the lower courts should have
upheld these rules after "a quick look." *Alston*, 141 S. Ct. at 2155-57
(internal quotation marks omitted).

The District Court unduly emphasized *Alston*'s dicta that "we take
special care not to deploy [the per se rule and quick-look condemnation]
until we have amassed 'considerable experience with the type of
restraint at issue' and 'can predict with confidence that it would be
invalidated in all or almost all instances.'" *Id.* at 2156 (quoting *Leegin*,
551 U.S. at 886-87).  Nothing about *Alston*'s passing reference to the
per se rule and quick-look condemnation, however, changed the legal
standards governing when a restraint is per se unlawful or can be
condemned after a quick look.  Neither per se illegality nor quick-look

31

condemnation (as opposed to quick-look approval) was at issue in
*Alston*, and the Court "confined" its review to the NCAA's objections to
the lower courts' rulings. *Id.* at 2154 ("Our review is confined to those
restrictions now enjoined."); *id.* at 2154-55 ("we focus only on the
objections the NCAA *does* raise").[9]

    1.  While *Alston* referenced the *Board of Regents* precedent that
declined to apply the per se rule to NCAA restraints, *Alston* noted that
those restraints were exempt from per se scrutiny "only because they
arose in 'an industry'"—sports leagues—"in which some 'horizontal
restraints on competition are essential if the product is to be available
at all.'" 141 S. Ct. at 2157 (quoting *Bd. of Regents*, 468 U.S. at 101-
02). This case differs materially because "horizontal restraints on

_____

[9] The student-athletes never sought abbreviated examination of the
challenged restraints.  Consistent with controlling circuit precedent, the
district court applied the full rule of reason.  *NCAA Athletic Grant-in-
Aid Cap*, 375 F. Supp. 3d at 1061 (citing *O'Bannon v. NCAA*, 802 F.3d
1049, 1069 (9th Cir. 2015)).  Because the district court's finding of
"severe anticompetitive effects," *id.* at 1070, was never challenged on
appeal, the student-athletes—having won under full rule-of-reason
analysis—had no need to seek examination under the per se rule or
quick-look analysis in either the Ninth Circuit or the Supreme Court.
*See Alston*, 141 S. Ct. at 2154 ("No one questions . . . that price and
quantity are both suppressed.").

competition" are not "essential" for restaurants to employ workers or for labor markets to function. *See Alston*, 141 S. Ct. at 2157; *see also United States v. Manahe*, No. 2:22-cr-00013-JAW, 2022 WL 3161781, at *7 (D. Me. Aug. 8, 2022) ("The Court interprets *Alston* . . . in the context of the unique line of athletic league-related antitrust caselaw.").

Moreover, to the extent the District Court understood *Alston* to support the view that the District Court lacked enough experience with the challenged restraint to apply the per se rule, that conclusion was erroneous. *Alston* did not change the longstanding principle that judicial experience with a restraint is relevant only when courts consider whether to apply "a *new per se* rule"; judicial experience with a restraint is not relevant, however, when courts apply an *existing* per se rule. *Maricopa Cnty.*, 457 U.S. at 349 & n.19. This case either involves a horizontal, naked employee-allocation agreement, in which case a well-established per se rule applies, *see supra* Part I.A, or not, in which case some form of the rule of reason applies. In either case, there will

be no *new* per se rule, and judicial experience with the restraint is thus
irrelevant.[10]

**2.** Nor did *Alston* change the standards governing quick-look
condemnation.  While the District Court thought that *Alston* "clarified
when quick-look analysis applies" (July 28, 2021 Order, Dkt. 372 at 10),
*Alston* never departed from the principle, articulated in *California
Dental Ass'n v. FTC*, 526 U.S. at 770, that "'quick-look' analysis"
governs when "an observer with even a rudimentary understanding of
economics could conclude that the arrangements in question would have
an anticompetitive effect." *Alston* favorably cited *California Dental*
multiple times, including the portion of *California Dental* that contains
the above language.  141 S. Ct. at 2156, 2160, 2163.  *Alston* also
favorably cited part of another opinion stating that "we have applied
the quick look doctrine to business activities that are so plainly
anticompetitive that courts need undertake only a cursory examination
before imposing anti-trust liability." *Id.* at 2156 (citing *Dagher*, 547

---

[10] The District Court also erred by focusing on *its* experience with the
challenged restraint.  The relevant reference point when applying a new
per se rule is the judiciary's experience as a whole, *Maricopa Cnty.*, 457
U.S. at 349 n.19, not the judge's individual experience.

U.S. at 7 n.3, in turn citing *Cal. Dental*, 526 U.S. at 770); *Agnew v. NCAA*, 683 F.3d 328, 336 (7th Cir. 2012) ("quick-look" version of the rule of reason applies when "the per se framework is inappropriate," but "'no elaborate industry analysis is required to demonstrate'" an agreement's "anticompetitive character").

**3.**  Ultimately, *Alston* has no bearing on which legal standard applies here:  If the alleged employee-allocation agreement is horizontal and the defendant fails to establish that it is ancillary, the per se rule applies. *See supra* Part I.A.  If the alleged employee-allocation agreement is horizontal and the defendant establishes that it is ancillary, some version of the rule of reason applies. *See Polk Bros.*, 776 F.2d at 189; *cf. Dagher*, 547 U.S. at 7 (citing *Board of Regents* as case that applied ancillary-restraints doctrine).  And if the alleged employee-allocation agreement is vertical, the rule of reason applies. *See Am. Express*, 138 S. Ct. at 2284.  *Alston* says nothing to the contrary.  If anything, *Alston*'s affirmance of an injunction against labor-market restraints confirms what was already evident:  The Sherman Act protects workers to the same extent it protects other economic actors.  *See* 141 S. Ct. at 2167-68 (Kavanaugh, J., concurring)

("Price-fixing labor is price-fixing labor. And price-fixing labor is ordinarily a textbook antitrust problem . . . .").

## CONCLUSION

This Court should hold that the District Court erred in two ways: First, by failing to assess, as part of the ancillary-restraints analysis, whether Defendants established that the challenged restraint was reasonably necessary to a procompetitive objective of a separate, legitimate collaboration and, second, by holding that *Alston* changed the legal standards governing the per se rule and quick-look condemnation.

Respectfully submitted,

/s/ Peter M. Bozzo

ANISHA S. DASGUPTA                   JONATHAN S. KANTER
   *General Counsel*                     *Assistant Attorney General*
JOEL MARCUS                          DOHA MEKKI
   *Deputy General Counsel*              *Principal Deputy Assistant*
MATTHEW M. HOFFMAN                       *Attorney General*
   *Counsel*                          MAGGIE GOODLANDER
Federal Trade Commission                *Deputy Assistant Attorney*
600 Pennsylvania Ave., NW               *General*
Washington, D.C. 20580               DAVID B. LAWRENCE
                                        *Policy Director*
                                     JACOBUS VAN DER VEN
                                        *Attorney Advisor*
                                     DANIEL E. HAAR
                                     NICKOLAI G. LEVIN
                                     PETER M. BOZZO
                                        *Attorneys*
                                     U.S. DEPARTMENT OF JUSTICE
                                     ANTITRUST DIVISION
                                     950 Pennsylvania Ave., N.W.
                                     Room 3224
                                     Washington, D.C. 20530-0001
                                     (202) 803-1196
                                     peter.bozzo@usdoj.gov

     *Counsel for the United States and the Federal Trade Commission*
November 9, 2022

## CERTIFICATE OF COMPLIANCE

1.      This amicus curiae brief complies with the type-volume limit of Circuit Rule 29 because, excluding the parts exempted by Fed. R. App. P. 32(f), the brief contains 6,925 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in Microsoft Word 2019, using 14-point New Century Schoolbook font, a proportionally spaced typeface.

*/s/ Peter M. Bozzo*
Peter M. Bozzo
*Counsel for the United States*

## CERTIFICATE OF SERVICE

I certify that on November 9, 2022, I caused the foregoing to be filed through this Court's CM/ECF system, which will serve a notice of electronic filing on all registered users.

/s/ Peter M. Bozzo
Peter M. Bozzo
*Counsel for the United States*