UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRAFT FOODS GLOBAL, INC., THE KELLOGG COMPANY, GENERAL MILLS, INC., and NESTLÉ USA, INC., <br><br>  Plaintiffs, <br><br>  v. <br><br>UNITED EGG PRODUCERS, INC., UNITED STATES EGG MARKETERS, INC., CAL-MAINE FOODS, INC., and ROSE ACRE FARMS, INC. <br><br>  Defendants. | No. 1:11-cv-08808 <br><br>Judge Steven C. Seeger |

**DEFENDANTS' REPLY IN SUPPORT OF SUBMISSION
IN RESPONSE TO COURT'S THREE QUESTIONS**

Defendants submit this short reply in further support of their Submission in Response to Court's Three Questions.

  **A. Horizontal Restraints Are Not Always Governed
    By The Per Se Rule.**

In their response (ECF No. 503), Plaintiffs begin by claiming that "horizontal price-fixing restrictions are often termed naked restraints and are per se illegal." (Response at 1.) That is not universally true. Many cases reviewing horizontal agreements have found that the Rule of Reason applies. The Supreme Court's decisions in *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.,* 441 U.S. 1 (1979), and *FTC v. Actavis, Inc.,* 570 U.S. 136 (2013), both involved horizontal

agreements. A horizontal alleged price-fixing agreement was also at issue in *In re Sulfuric Acid Antitrust Litigation*, 703 F. 3d 1004 (7th Cir. 2012), yet the court found the restraints were governed by the Rule of Reason. These decisions are not outliers. They represent the mainstream in antitrust jurisprudence.

B.     **The Ancillary Restraints Doctrine Does Not Apply**.

Plaintiffs next suggest that "courts apply the rule of reason to horizontal agreements where those agreements are ancillary to a procompetitive combination." (Response at 2.) For that reason, according to Plaintiffs, the UEP Certified Program is per se unlawful because the challenged restraints that are part of the program are not "ancillary." (*Id.* at 8-15.) But the ancillary restraints doctrine has no application to this case. The doctrine applies only when an ancillary restraint that is part of a larger endeavor would be "per se standing alone." *In re Sulfuric Acid Antitrust Litig.*, 743 F.Supp.2d 827, 871 (N.D. Ill. 2010); *see also Polk Bros., Inc. v. Forest City Enters., Inc.*, 776 F.2d 185, 188-89 (7th Cir. 1985).

Here, the challenged restraints – the cage-space restrictions, the "100% Rule," and the ban on backfilling – are not on their face so plainly anticompetitive to warrant per se condemnation such that an ancillary restraints analysis is necessary. As Judge Pratter correctly found, "the UEP Certified Program does not involve an express agreement among competitors to restrain supply[.]" *In re Processed Egg Prods. Antitrust Litig.*, 206 F.Supp.3d 1033, 1045 (E.D. Pa. 2016). As the uncontroverted evidence has shown, the Certified Program places no limitation on the number of hens, cages, hen houses, or farms a producer has, or on the

number of eggs a producer can produce. Growth, expansion, and production decisions are all left to the individual producer. It was for these reasons that Judge Pratter concluded that the challenged restraints were not governed by the per se rule.

C. **Standard-Setting Activity Is Subject to the Rule of Reason.**

Finally, Plaintiffs completely ignore that the UEP Certified Program set a minimum level of standards for animal husbandry of egg-laying hens. But the standard-setting nature of the Certified Program cannot be ignored. It is well settled that standard-setting activities of private associations are subject to the Rule of Reason. *See Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 500-01 (1988). Although trade association members may have an incentive to restrict competition, and "include members having horizontal and vertical business relations," industry standards can have significant procompetitive advantages." *Id*. As the Supreme Court observed, "It is this potential for procompetitive benefits that has led most lower courts to apply rule-of-reason analysis to product standard-setting by private associations." *Id.* (emphasis added). The Seventh Circuit has similarly applied the Rule of Reason to standard-setting activities. *See Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 396 (7th Cir. 1993) (applying Rule of Reason to actions of a private, standard-setting body); *Moore v. Boating Indus. Ass'ns*, 819 F.2d 693, 697 (7th Cir. 1987) (analyzing activities of association of boat trailer manufacturers under Rule of Reason); *Wilk v. Am. Med. Ass'n*, 895 F.2d 352, 378 (7th Cir. 1990) ("The Supreme Court historically has been

3

slow to condemn rules adopted by professional associations as unreasonable per se."); *see also Craftsman Limousine, Inc. v. Ford Motor Co.*, 363 F.3d 761, 773-74 (8th Cir. 2004) (reversing lower court's application of per se analysis to standard setting activities that were motivated, at least in part, by achieving procompetitive benefits).

Consistent with these principles, in ruling on Plaintiffs' motion *in limine* to exclude liability evidence after 2008, this Court has already observed that industry standards – like the UEP Certified Program – can have procompetitive benefits for consumers, and "that's why rule-of-reason analysis applies." *Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*, No. 11-CV-8808, 2023 WL 6049912, at *9 (N.D. Ill. Sept. 15, 2023) (allowing Defendants to present evidence at trial of the Certified Program's procompetitive benefits). Indeed, Plaintiffs' economic expert laid the foundation for the Rule of Reason when he testified that standard setting by industry associations "can be good." (Tr. at 2840: "That's the issue with an industry association that implements something like this. It can be good. But it can have, it can have the kind of effects that we see in the data, and I think that's the question.")

In this case, Plaintiffs attempt to dissect different components of the UEP Certified Program and argue that the separated standards are not "ancillary," and therefore the entire Program is subject to per se treatment. Plaintiffs have no authority for this. Rather, the above cases – none of which involve "ancillary"

4

restraints – make clear that standards set by industry associations are subject to Rule of Reason analysis.

Dated: November 12, 2023          Respectfully submitted,

         */s/ James A. King*
James A. King (jking@porterwright.com)
Allen T. Carter (acarter@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
41 South High Street, Suite 2900
Columbus, OH 43215
Tel: (614) 227-2000

Donald M. Barnes (dbarnes@porterwright.com)
Jay L. Levine (jlevine@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
2020 K. Street, N.W., Suite 600
Washington, D.C. 20006-1110
Tel: (202) 778-3000

**Counsel for Defendant Rose Acre Farms, Inc.**

*/s/ Robin P. Sumner*
Robin P. Sumner
(robin.sumner@troutman.com)
Kaitlin L. Meola
(kaitlin.meola@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
3000 Two Logan Square, 18th and Arch Streets
Philadelphia, PA 19103-2799
Tel: (215) 981-4000

Whitney R. Redding
(whitney.redding@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
Union Trust Building
501 Grant Street, Suite 300
Pittsburgh, PA 15219-4429
Tel: (412) 454-5085

Molly DiRago
(Molly.DiRago@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
227 West Monroe Street, Suite 3900
Chicago, IL 60606
Tel: (312) 759-1923

***Counsel for Defendants United Egg Producers, Inc. & United States Egg Marketers, Inc.***

*/s/ Patrick M. Collins*
*Patrick M. Collins (pcollins@kslaw.com)*
*Livia M. Kiser (lkiser@kslaw.com)*
*Patrick M. Otlewski*
*(potlewski@kslaw.com)*
*Abigail Hoverman Terry*
*(aterry@kslaw.com)*
*KING & SPALDING LLP*
*110 North Wacker Drive, 38th Floor*
*Chicago, IL 60606*
*Tel: (312) 995-6333*

*Lohr Beck (lohr.beck@kslaw.com)*
*(pro hac vice)*
*KING & SPALDING LLP*
*1180 Peachtree Street, NE, Suite 1600*
*Atlanta, GA 30309*
*Tel: (404) 572-2812*

*Brian E. Robison*
*(brian@brownfoxlaw.com)*
*(pro hac vice)*
*BROWN FOX PLLC*
*6303 Cowboys Way, Suite 450*
*Frisco, TX 75034*
*Tel: (972) 707-2809*

***Counsel for Defendant Cal-Maine Foods, Inc.***

23346133v1

6