

FILED

11/17/2023

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

JJR

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KRAFT FOODS GLOBAL, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 11-cv-8808 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| UNITED EGG PRODUCERS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**JURY INSTRUCTIONS**

**Instruction No. 1**

**General Function of Court and Jury**

Members of the Jury:

You have seen and heard all the evidence.  Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone.

Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them.

Perform your duties fairly and impartially.  Do not allow bias, sympathy, prejudice, fear, or public opinion to influence you.  You should not be influenced by any person's race, color, religion, national ancestry, or sex.

Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

**Instruction No. 2**

**No Inference from Judge's Rulings**


During this trial, I have ruled on a number of objections.  Do not assume that I hold any opinion on what the outcome of the case should be.  The outcome of the case is for you to decide.

**Instruction No. 3**

**All Litigants Equal Before the Law**

Several parties are corporations. One party is an association, and another party is a trade association. All parties are equal before the law. A corporation, an association, and a trade association are entitled to the same fair consideration that you would give any individual person.

**Instruction No. 4**

**Organizations**


Under the law, a corporation, association, organization, or other entity is a person.  For the sake of simplicity, I will refer to corporations, associations, organizations, and all other types of entities as an "entity."

An entity is a person, but it acts only through its agents.  Agents for an entity include its directors, officers, employees, or others acting on its behalf.  An entity is not capable under the law of conspiring with its own agents, unincorporated divisions, or wholly owned subsidiaries. In other words, an entity cannot conspire with itself.

However, through its agents, an entity is capable of conspiring with other persons or with other entities.

An entity is legally bound by the acts and statements of its agents or employees done or made within the scope of the agent's employment.

Acts done within the scope of employment are acts performed on behalf of an entity and directly related to the performance of the duties the agent has general authority to perform.

To summarize, for an entity to be legally responsible for the acts or statements of its agents, you must find that the agent was acting within the scope of his or her employment.

An entity is entitled to the same fair trial as a private individual.  The acts of an entity are to be judged by the same standard as the acts of a private individual, and you may hold an entity liable only if such liability is established by a preponderance of the evidence.  All persons, including entities, are equal before the law.

**Instruction No. 5**

**Evidence**

The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence, and stipulations.

A stipulation is an agreement between both sides that certain facts are true.

**Instruction No. 6**

**Redactions**

  During trial, you were shown documents that contain redactions, meaning that some words in those documents are hidden from view.  Documents are redacted for a number of reasons that have nothing to do with the merits of the case.  You should not draw any inferences or conclusions from the fact that a document contains redactions.

**Instruction No. 7**

**Deposition Testimony**

During the trial, you heard testimony by a number of witnesses who did not testify live in person in the courtroom. For example, the parties presented testimony by playing the video of depositions. The parties also presented testimony by reading deposition transcripts. The parties also presented testimony by calling at least one witness remotely, through a live video connection.

You should give all of this evidence the same consideration that you would give if the witnesses had appeared and testified here in the courtroom.

**Instruction No. 8**

**What Is Not Evidence**

Certain things are not to be considered as evidence. I will list them for you:

First, if I told you to disregard any testimony or exhibits or if I struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded. This includes any press, radio, Internet or television reports you may have seen or heard. Such reports are not evidence and your verdict must not be influenced in any way by such publicity.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

**Instruction No. 9**

**Note-Taking**

Any notes you have taken during this trial are only aids to your memory. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

**Instruction No. 10**

**Consideration of All Evidence Regardless of Who Produced It**

In determining whether any fact has been proved, you should consider all of the evidence bearing on the question regardless of who introduced it.

**Instruction No. 11**

**Limited Purpose of Evidence**

You will recall that during the course of this trial I instructed you that I admitted certain evidence for a limited purpose. You must consider this evidence only for the limited purpose for which it was admitted.

**Instruction No. 12**

**Evidence Limited to Certain Parties**

Each party is entitled to have the case decided solely on the evidence that applies to that party.

If evidence was admitted against only one defendant, but not the other defendants, you must consider that evidence against only that defendant.

For example, at various times during the trial, I instructed you that the testimony offered by a witness was admissible against one defendant, but was not admissible against other defendants.

You must not consider that evidence against the other defendants.

**Instruction No. 13**

**Weighing the Evidence**


You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inference you make must be reasonable and must be based on the evidence in the case.

**Instruction No. 14**

**Definition of Direct and Circumstantial Evidence**

You may have heard the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

As an example, direct evidence that it is raining is testimony from a witness who says, "I was outside a minute ago and I saw it raining." Circumstantial evidence that it is raining is the observation of someone entering a room carrying a wet umbrella.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You should decide how much weight to give to any evidence. In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence.

**Instruction No. 15**

**Testimony of Witnesses: Deciding What to Believe**

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, you may consider, among other things:

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the witness's intelligence;

- the manner of the witness while testifying;

- the witness's age; and

- the reasonableness of the witness's testimony in light of all the evidence in the case.

16

**Instruction No. 16**

**Prior Inconsistent Statements**

From time to time, witnesses were questioned about statements they made in the past. In considering those statements, keep in mind the following rules.

You may consider previous statements given by a party witness as evidence of the truth of what he said in the earlier statements, as well as in deciding what weight to give his testimony in this courtroom.

That rule applies regardless of whether the earlier statement was under oath.

A party witness is someone who was serving as a party's director, officer, employee, or agent at the time the witness testified.

The law is different for non-party witnesses. If you decide that, before trial, one of the witnesses made a statement that is inconsistent with his testimony here in court, you may consider the earlier statement only in deciding whether his testimony here in court was true and what weight to give to his testimony here in court.

In considering a prior inconsistent statement, you should consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail.

**Instruction No. 17**

**Requests for Admission**

During trial, you heard evidence in the form of responses to requests for admissions. Specifically, I read Plaintiffs' responses to requests to admit served by Defendants.

Those admissions were given in writing before the trial, in response to requests that were submitted under established court procedures. You must treat those facts as having been proved.

**Instruction No. 18**

**Number of Witnesses**


You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number of witnesses. You need not accept the testimony of the larger number of witnesses.

**Instruction No. 19**

**Absence of Evidence**


The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial.  Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

**Instruction No. 20**

**Expert Witnesses**

      You have heard witnesses give opinions about matters requiring special knowledge or skill.  You should judge this testimony in the same way that you judge the testimony of any other witness.  The fact that such person has given an opinion does not mean that you are required to accept it.  Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case.

**Instruction No. 21**

**Summary Exhibits & Demonstrative Exhibits**

Some of the exhibits during trial were so-called summary exhibits.  As the name suggests, the summary exhibits summarized voluminous documents.

You should consider these summaries like all other evidence in the case.

Summary exhibits are different than demonstratives.  Summary exhibits are summaries of voluminous documents.  Summary exhibits are evidence, and you will have them in the jury room.

Demonstratives are documents prepared by the parties to help illustrate or explain testimony.  Demonstratives are not evidence, and you will not have them in the jury room.

**Instruction No. 22**

**Multiple Claims; Multiple Plaintiffs/Defendants**

You must give separate consideration to each claim and each party in this case.

Although there are four defendants, it does not follow that if one defendant is liable, then any of the other defendants is also liable.

Although there are four plaintiffs, it does not follow that if one plaintiff is successful, then the other plaintiffs are successful, too.

**Instruction No. 23**

**No Inferences About Non-Parties**


You have heard the names of companies that are not plaintiffs or defendants in this case. Do not speculate on why other companies are not parties to this case.

## Instruction No. 24

## Overview of the Case

This is a civil case brought under Section 1 of the Sherman Act.  In civil matters, the parties who bring the lawsuits are called plaintiffs.  The Plaintiffs here are:  Kraft Foods Global, Inc., The Kellogg Company, General Mills, Inc., and Nestlé USA, Inc.  The Plaintiffs purchased egg products from egg producers.  Egg products are made from eggs and come in various forms including liquid, frozen, and dried.

In civil matters, the parties against whom a lawsuit is brought are called defendants.  The Defendants here are Rose Acre Farms, Inc., Cal-Maine, Inc., United Egg Producers, and United States Egg Marketers.

Cal-Maine and Rose Acre are producers and sellers of eggs.

United Egg Producers, which will sometimes be referred to as UEP, is an industry association made up of egg producers.

The United States Egg Marketers, which is sometimes referred to as USEM, is an industry association of egg producers that arranges for the export of eggs from the U.S. to other countries.

Plaintiffs claim that defendants and other egg producers are competitors and have violated the Sherman Act by agreeing to limit the supply of eggs in order to raise prices of eggs and egg products.  Defendants deny this claim.

More specifically, the Plaintiffs allege that the defendants and other egg producers agreed or conspired to limit the United States supply of eggs, which then drove up the domestic price of eggs and egg products in violation of the nation's antitrust laws.  The Plaintiffs further allege that they were injured by this conduct in that it caused them to pay higher prices for egg products than they otherwise would have paid.

The Defendants deny that they conspired to limit the supply of eggs or egg products, and they further deny that they conspired to increase the price of eggs or egg products.  The Defendants deny that the Plaintiffs were injured, and also deny that the prices Plaintiffs paid were higher than they otherwise would have paid.

**Instruction No. 25**

**Burden of Proof**

This case is a civil case, not a criminal case. Plaintiffs have the burden of proving their case against each of the Defendants by a preponderance of the evidence.

When I say a particular party must prove something by "a preponderance of the evidence," or when I use the expression "if you find," or "if you decide," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

The standard is different in criminal cases. In a criminal case, the government must prove its case "beyond a reasonable doubt." That standard does not apply to civil cases like this case. Plaintiffs do not need to prove their case beyond a reasonable doubt.

When deciding your verdict, you must decide whether Plaintiffs proved their case by a preponderance of the evidence.

**Instruction No. 26**

**Passage of Time**

The evidence in this case is about events that occurred many years ago.

The case is not about the price of eggs in the last few years.

You heard evidence in this case about the price of eggs through 2012, but not later.

The amount of time that it took to get to trial is not the fault of the parties.

You should not return a verdict, one way or the other, based on a belief about whether the case should have gone to trial sooner.

You may take the passage of time into account when evaluating the testimony of the witnesses, including when you evaluate their memories.

**Instruction No. 27**

**Overview of the Sherman Act**

I will now give you instructions about the substantive law that applies to the case.  Again, the case is about an antitrust statute called the Sherman Act.

The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace.  The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.  I may refer to the Sherman Act as the antitrust laws.

**Instruction No. 28**

**The Elements**

Plaintiffs challenge Defendants' conduct under Section 1 of the Sherman Act. Section 1 prohibits contracts, combinations, and conspiracies that unreasonably restrain trade.

To establish a violation of Section 1 of the Sherman Act, Plaintiffs must prove the following by a preponderance of the evidence:

(1)     the existence of a contract, combination, or conspiracy between or among at least two separate entities;

(2)     that the contract, combination, or conspiracy unreasonably restrains trade;

(3)     that the restraint affects interstate or foreign commerce; and

(4)     that the restraint caused Plaintiffs to suffer an injury to their business or property.

Notice that the claim has four elements. I will instruct you on the four elements in the instructions that follow. I will give you additional instructions on related topics as well.

## Instruction No. 29

## Overview of the First Element

The first element of the claim is the existence of a contract, combination, or conspiracy between or among at least two separate entities.

Plaintiffs allege that Defendants entered a conspiracy to restrain trade by limiting the supply of eggs in order to increase prices of eggs and egg products.

Specifically, Plaintiffs allege that Defendants conspired to limit the supply of eggs through (1) the early slaughter, early molting, and flock reduction, meaning the so-called "short-term measures;" (2) the export of eggs to reduce the number of eggs in the domestic market as part of the USEM export program; (3) the cage space or henhouse density restrictions as part of the UEP Certified Program; and (4) restricting backfilling of egg-producing hens as part of the UEP Certified Program.

Defendants deny that they entered into a conspiracy.

Plaintiffs allege that the conspiracy included the four Defendants.

Plaintiffs also allege that the conspiracy included three non-parties, meaning other entities who are not defendants in this case: (1) Michael Foods; (2) Moark; and (3) Wabash Valley.

A conspiracy is an agreement or understanding between two or more persons or entities to restrain trade in the way alleged by Plaintiffs.

Plaintiffs must prove both of the following elements by a preponderance of the evidence:

(1)     that the alleged conspiracy existed; and

(2)     that Defendants knowingly became a member of that conspiracy. To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason.

**Instruction No. 30**

**Existence/Explanation of a Conspiracy**

To satisfy their burden of proof, Plaintiffs must prove that one or more Defendants conspired with each other, or with one or more alleged co-conspirators. Plaintiffs must prove the existence of an agreement or understanding to limit the supply of eggs.

The basis of a conspiracy is an agreement or understanding between two or more persons or entities. An agreement or understanding between two or more persons or entities exists when they share a commitment to a common scheme to achieve an unlawful purpose.

To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement. The agreement itself may have been entirely unspoken.

A person or entity can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the alleged conspiracy.

The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details of the means by which they would accomplish their purpose.

To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish a common purpose.

A conspiracy may be formed without all parties coming to an agreement at the same time. Similarly, it is not essential that all persons or entities acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement.

It is also not necessary that all of the means or methods claimed by Plaintiffs were agreed upon to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that everyone alleged to be members of the conspiracy were actually members.

It is the agreement or understanding to limit egg supply that constitutes a conspiracy. Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed.

**Instruction No. 31**

**Evidence of a Conspiracy**

Plaintiffs may prove the existence of the alleged conspiracy through direct evidence, circumstantial evidence, or both. Again, direct evidence is explicit and requires no inferences to establish the existence of the alleged conspiracy.

Direct evidence of an agreement may not be available, and therefore a conspiracy also may be shown through circumstantial evidence. You may infer the existence of a conspiracy from the circumstances, including what you find the alleged members actually did and the words they used.

Conspiracies are sometimes carried out in secret. Secrecy is not a necessary element of an antitrust claim. Plaintiffs do not have to prove that the alleged conspiracy was a secret. But you may consider whether the agreement was carried out in secret when deciding whether there was a conspiracy.

Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together, does not by itself establish the existence of a conspiracy. If they acted similarly but independently of one another, without any agreement among them, then there would not be a conspiracy.

In determining whether an agreement or understanding between two or more persons or entities has been proved, you must view the evidence as a whole and not piecemeal.

## Instruction No. 32

## Membership in a Conspiracy

To prevail against a Defendant, Plaintiffs must prove that that Defendant knowingly joined the alleged conspiracy.

Before you can find that a Defendant was a member of the conspiracy alleged by Plaintiffs, the evidence must show that that defendant knowingly joined in the unlawful plan at its inception, or at some later time, with the intent to further the purpose of the conspiracy.

To act knowingly means to participate deliberately and not because of mistake, accident, or other innocent reason. A person or business may become a member of a conspiracy without full knowledge of all the details of the conspiracy, the identity of all its members, or the parts they played. Knowledge of the essential nature of the plan is enough. On the other hand, a person or business who has no knowledge of a conspiracy but happens to act in a way that helps the conspiracy succeed, does not thereby become a conspirator.

A person or business who knowingly joins an existing conspiracy, or who participates only in part of a conspiracy with knowledge of the overall conspiracy, is just as responsible as if they had been one of those who formed or began the conspiracy and participated in every part of it.

In determining whether a defendant was a member of the alleged conspiracy, you should consider only the evidence about that particular defendant's statements and conduct, including any evidence of that defendant's knowledge and participation in the events involved and any other evidence of that particular defendant's participation in the conspiracy alleged.

The same approach applies to evidence about any alleged co-conspirators who are not defendants in this case, such as other egg producers. In determining whether another egg producer who is not a defendant was a member of the alleged conspiracy, you should consider only the evidence about that company's statements and conduct, including any evidence of that company's knowledge and participation in the events involved and any other evidence of that company's participation in the conspiracy alleged.

You may not find that a defendant or an alleged co-conspirator was a member of a conspiracy based only on its association with or knowledge of wrongdoing. But it is a factor you may consider to determine whether a defendant or an alleged co-conspirator was a member of the alleged conspiracy.

If you find that the alleged conspiracy existed, then the acts and statements of the conspirators are binding on all of those whom you find were members of the conspiracy.

In a conspiracy, each member of the alleged conspiracy is responsible for the conduct of all other members of the alleged conspiracy. The fact that a particular defendant did not sell directly to one or all of the plaintiffs is not a defense to a claim under the federal antitrust laws.

If you find that a defendant or an alleged co-conspirator is a member of a conspiracy, it is presumed to remain a member and is responsible for all actions taken by all co-conspirators during and in furtherance of the conspiracy until it is shown that the conspiracy has been completed or abandoned.

**Instruction No. 33**

**Parallel Conduct**

A business may lawfully adopt the same prices, conditions of sale, or other practices as its competitors, as long as it does so independently and not as part of an agreement or understanding with one or more of its competitors.

The existence of parallel behavior, by itself, is not sufficient to show that two competitors entered into a conspiracy.

But you may consider whether competitors engaged in the same or similar conduct when deciding whether a conspiracy existed.

## Instruction No. 34

## Limiting Supply

A business has the right to determine on its own how much of its product to produce, provided that the decision results from the exercise of an independent business judgment and not from any agreement with a competitor.

Plaintiffs claim that Defendants agreed to limit production and restrict the domestic supply of eggs and egg products.

The question is not simply whether the number of hens, or the supply of eggs, went up or down.

The question is whether a conspiracy existed and caused the supply to be lower than it otherwise would have been without a conspiracy.

It is possible for a conspiracy to exist, even if the overall supply of a product went up.

On the flipside, it is possible for a conspiracy to not exist, even if the overall supply of a product went down.

Let me explain both points.

On the one hand, it is possible for a conspiracy to exist even if the overall supply of a product went up. For example, maybe the supply of a product went up, but the supply would have gone up even more without a conspiracy.

As an illustration, imagine if a bakery joined a conspiracy to limit the supply of pumpkin pies. It is possible that the bakery made 100 extra pumpkins pies, but would have made 500 extra pumpkin pies without the conspiracy. In that case, the supply of pumpkin pies went up, but there would have been 400 more pumpkin pies without the conspiracy.

On the other hand, it is possible that the overall supply of a product could go down even if there is no conspiracy. A reduction in supply, standing alone, does not mean that there was a conspiracy.

Maybe other competitive factors caused the supply of a product to go up or down, and those reasons had nothing to do with an alleged conspiracy.

As an illustration, maybe a bakery produced fewer pumpkin pies because consumers don't like pumpkin pies as much as they used to. Maybe consumers now prefer apple pies or pecan pies. The fact that a bakery makes fewer pumpkin pies does not necessarily mean that the bakery is engaged in a conspiracy.

In this case, you may consider whether the number of hens, and the supply of eggs, went up or down during the years in question. Changes in supply are relevant to the existence or non-existence of a conspiracy. But changes in supply, standing alone, are not enough to prove or disprove the existence of a conspiracy.

**Instruction No. 35**

**Unreasonable Restraint of Trade**

The second element of the claim is that the contract, combination, or conspiracy unreasonably restrains trade.

Under the Sherman Act, a restraint of trade is illegal only if it is found to be unreasonable.

You must decide if one or more of the alleged restraints at issue here are unreasonable. Again, the alleged restraints include: (1) the early slaughter, early molting, and flock reduction, meaning the so-called "short-term measures;" (2) the export of eggs to reduce the number of eggs in the domestic market as part of the USEM export program; (3) the cage space or henhouse density restrictions as part of the UEP Certified Program; and (4) restricting backfilling of egg-producing hens as part of the UEP Certified Program.

In making this determination, you must first determine whether the Plaintiffs have proven that the alleged restraints resulted in a substantial harm to competition in the relevant product and geographic market.

If you find that the Plaintiffs have proven that the alleged restraints resulted in a substantial harm to competition in the relevant market, then you must consider whether the alleged restraints produced countervailing competitive benefits.

If you find that they did, then you must balance the competitive harm against the competitive benefit.

The challenged restraints are unlawful under Section 1 of the Sherman Act only if you find that the competitive harm substantially outweighs the competitive benefit.

I will now review each step of the analysis in more detail.

**Instruction No. 36**

**Unreasonable Restraint of Trade – Proof of a Relevant Market**

To prove that the alleged restraints are unreasonable, Plaintiffs must demonstrate that the alleged restraints have resulted in a substantial harm to competition.

Plaintiffs must show that the harm to competition occurred in a relevant market.  It is the Plaintiffs' burden to prove the existence of a relevant product market.

The concept of a relevant market has two components.  The first component is the relevant product market.  The second component is the relevant geographic market.  That is, the concept of a relevant market covers what the product is, and where the market is.

I will first explain the relevant product market.

You may consider whether two products are in the same product market from the supplier's perspective, or from the buyer's perspective.

From the supplier's perspective, you can consider whether a producer of one product could shift to the production of a second product in response to an increase in price of the second product.  If a manufacturer has the ability to alter production and manufacture one product instead of another product in response to a price increase, then those products might be substitutes from the supplier's perspective.

From the buyer's perspective, the basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other.  In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other.  This is a practical test with reference to the actual behavior of buyers and marketing efforts of sellers.  Products need not be identical or precisely interchangeable as long as they are reasonable substitutes.

To determine whether products are reasonable substitutes for each other from the buyer's perspective, you may consider whether a small but significant and non-transitory increase in the price of one product would result in enough customers switching from that product to another product such that the price increase would not be profitable.  In other words, will customers accept the price increase or will so many customers switch to alternative products that the price increase will be withdrawn?  If you find that customers would switch and that the price increase would not be profitable, then you must conclude that the products are in the same product market.  If, on the other hand, you find that customers would not switch, then you must conclude that the products are not in the same product market.

In evaluating whether various products are reasonably interchangeable or reasonable substitutes for each other from the buyer's perspective, you may also consider:

- consumers' views on whether the products are interchangeable;

- the relationship between the price of one product and sales of another;

- the presence or absence of specialized vendors;

- the perceptions of either industry or the public as to whether the products are in separate markets;

- the views of the Plaintiffs and Defendants regarding whom their respective competitors are; and

- the existence or absence of different customer groups or distribution channels.

In this case, Plaintiffs contend that the relevant product market is the market for eggs, including shell eggs and egg products. Defendants contend that shell eggs and egg products are not in the same relevant product market.

You must decide whether shell eggs and egg products are in the same product market.

I will now explain the relevant geographic market.

Plaintiffs contend that the relevant geographic market is the United States. Defendants contend that Plaintiffs have failed to prove the relevant geographic market.

**Instruction No. 37**

**Competitive Harm**

If you find that the Plaintiffs have proven the existence of a relevant market, then you must determine whether Plaintiffs also have proven that the challenged restraint has a substantial harmful effect on competition in that market.

A harmful effect on competition refers to a loss of some of the benefits of competition. Harm to competition includes higher prices and lower output.

Plaintiffs claim that the alleged conspiracy restricted output, which led to higher prices.

If the challenged conduct has not resulted in higher prices, decreased output, lower quality, or the loss of some other competitive benefit, then there has been no competitive harm, and you should find that the challenged conduct was not unreasonable.

In determining whether the challenged restraints have produced competitive harm, you may look at the following factors:

- the effect of the restraint on prices, output product quality, and service;

- the purpose and nature of the restraint;

- the nature and structure of the relevant market;

- the number of competitors in the relevant market and the level of competition among them, both before and after the restraint was imposed; and

- whether the Defendants and the alleged co-conspirators possessed market power.

The last factor is market power. Market power has been defined as an ability to profitably raise prices, for a sustained period of time, above those that would be charged in a competitive market. A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does not possess market power. The ability to charge higher prices for better products or services, however, is not market power.

An important factor in determining whether Defendants and the alleged co-conspirators possesses market power is their market share, that is, its percentage of the products or services sold in the relevant market by all competitors.

Other factors that you may consider in determining whether Defendants and the alleged co-conspirators have market power include the existence of barriers to entry, the number of competitors, and other possible factors.

If conspirators do not possess a substantial market share, it is less likely that the conspirators possess market power.

If conspirators do not possess market power, it is less likely that the challenged restraint has resulted in a substantial harmful effect on competition in the market.

## Instruction No. 38

## Competitive Benefits

If you find that Plaintiffs have proven that the alleged restraints challenged here resulted in substantial harm to competition in a relevant market, then you next must determine whether the restraints also benefit competition in other ways.

Procompetitive benefits include, but are not limited to, increasing production, lowering prices, increasing consumer choice, meeting customer demand, creating a new product, and improving product quality.

A desire to improve animal welfare as a societal benefit is not a procompetitive benefit. That is, the desire to provide ethical treatment of hens, in and of itself, does not benefit competition itself. A desire to promote animal welfare, standing alone, is not a defense to a claim under the antitrust laws.

However, you may consider the potential competitive benefits of animal welfare and the ethical treatment of hens to the extent that they benefitted competition by increasing output, improving product quality, expanding consumer choice, or reflecting customer demand.

If you find that the alleged restraints challenged here do result in competitive benefits, then you also must consider whether the restraints were reasonably necessary to achieve the benefits.

If Plaintiffs prove that the same benefits could have been readily achieved by other, reasonably available alternative means that create substantially less harm to competition, then they cannot be used to justify the restraints.

**Instruction No. 39**

**Balancing the Competitive Effects**


If you find that the alleged restraints challenged here were reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same restraints.

If the competitive harm substantially outweighs the competitive benefits, then the alleged restraints challenged here are unreasonable. If the competitive harm does not substantially outweigh the competitive benefits, then the alleged restraints challenged here are not unreasonable.

In conducting this analysis, you must consider the benefits and harm to competition and consumers.

Plaintiffs bear the burden of proving that the anticompetitive effect of the conduct substantially outweighs its benefits.

## Instruction No. 40

## Motive

Motive is not an element of an antitrust claim. Proof of a bad motive is not required.

Proof of a bad motive alone does not establish that a Defendant is liable. On the other hand, proof of a good motive alone does not establish that a Defendant is not liable.

If you find that one or more of the Defendants engaged in a conspiracy, it is not a defense that that Defendant acted with good motives, or thought that its conduct was legal.

It is not a defense that the conduct may have had good results or produced a societal benefit, unless that benefit promoted competition.

**Instruction No. 41**

**Interstate Commerce**

The third element of the claim is that the restraints affect interstate or foreign commerce.

During trial, the parties stipulated that the conspiracy alleged by the Plaintiffs affected interstate commerce.

**Instruction No. 42**

**Injury**

The fourth element of the claim is that the restraints caused Plaintiffs to suffer an injury to their business or property.

To prevail, each Plaintiff must prove that it suffered an injury. Plaintiffs must prove that they suffered an injury to their business or property, and that the injury was caused by one or more Defendants' participation in a conspiracy.

Here, Plaintiffs complain that they were injured by paying more for egg products due to the alleged conspiracy.

Plaintiffs must prove three elements to establish injury and causation:

(1)     Plaintiffs were in fact injured as a result of an alleged violation of the antitrust laws by one or more Defendants or by an alleged co-conspirator;

(2)     the alleged illegal conduct by one or more Defendants or by an alleged co-conspirator was a material cause of Plaintiffs' injury; and

(3)     Plaintiffs' injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For a Plaintiff to establish that it is entitled to recover damages, that Plaintiff must prove that it was injured as a result of an alleged violation of the antitrust laws by one or more Defendants or by an alleged co-conspirator.

Proving the fact of damage does not require Plaintiffs to provide the dollar value of the injury. It requires only that Plaintiffs prove that they were in fact injured by an antitrust violation by one or more Defendants or by an alleged co-conspirator.

The second element is causation. Plaintiffs must prove by a preponderance of the evidence that illegal conduct by one or more Defendants or by an alleged co-conspirator was a material cause of Plaintiffs' injury. That is, Plaintiffs must prove that they suffered damage as a result of an alleged antitrust violation by one or more Defendants or by an alleged co-conspirator, and not as a result of some other cause.

Plaintiffs are not required to prove that Defendants' alleged antitrust violation was the sole cause of the injury. Plaintiffs are not required to eliminate all other possible causes of injury, either. It is enough if Plaintiffs prove that the alleged antitrust violation was a material cause of the injury.

The third element is about an antitrust injury. Plaintiffs must establish that the injury is the type of injury that the antitrust laws were intended to prevent. This is sometimes referred to as an "antitrust injury."

If Plaintiffs' injuries were caused by a reduction in competition, or by acts that would lead to a reduction in competition, or by acts that would otherwise harm consumers and customers, then Plaintiffs' injuries are antitrust injuries.

On the other hand, if Plaintiffs' injuries were caused by heightened competition, or by the competitive process itself, or by acts that would benefit consumers and customers, then Plaintiffs' injuries are not antitrust injuries. Plaintiffs may not recover for injuries unless they are antitrust injuries.

**Instruction No. 43**

**Competitive Harm or Injury before 2004**

Evidence of competitive harm or injury before October 2004 cannot be considered by you in determining whether the actions of Defendants and co-conspirators caused competitive harm or injured Plaintiffs from October 2004 to December 2012.

You can consider evidence before October 2004 in determining whether any Defendant entered or participated in the alleged conspiracy.

**Instruction No. 44**

**No Quantification of Damages**

You must decide if the Defendants violated the antitrust laws and injured the Plaintiffs.

At my direction, the Plaintiffs did not present any evidence about the amount of their damages claim, meaning the dollar amount.

You must decide whether Plaintiffs proved all of the elements of their claim, including whether Plaintiffs suffered an injury.

When making that decision, you must not take into account whether Plaintiffs quantified the monetary amount of their damages.

**Instruction No. 45**

**Financial Performance**

During trial, you heard evidence about the financial performance of the parties.

The financial performance of a Plaintiff, in and of itself, is not a sufficient basis to conclude whether the company suffered an injury.

On the flip side, the financial performance of a Defendant, in and of itself, is not a sufficient basis to conclude whether the company entered into an alleged conspiracy. The financial performance of a Defendant, in and of itself, is not a sufficient basis to conclude whether a conspiracy existed.

**Instruction No. 46**

**Avoiding Losses**


Plaintiffs do not have the burden to prove that Defendants increased profits by entering into an alleged conspiracy.

The federal antitrust laws apply to conspiracies to increase profits, as well as to conspiracies to avoid losses.

It is not a defense to argue that a party entered into a conspiracy to avoid losses.

A conspiracy could exist even if all members of the conspiracy lost money.

**Instruction No. 47**

**Trade Associations May Commit Antitrust Violations**

Businesses that are actual or potential competitors may lawfully form into associations to advance common interests. The Defendants in this case include United Egg Producers and United States Egg Marketers.

UEP is a trade association. USEM is an association but not a trade association.

A trade association like UEP performs various functions. A trade association like UEP may keep members informed of new services or technology in the industry or perform other valuable services such as cooperative research, publication of trade journals, or joint representation before legislative or administrative bodies.

An association like UEP or like USEM is capable of committing violations of the antitrust laws. The actions of a group of competitors taken through an association to which they belong present the same issues as the actions of a group of competitors who have not created a formal organization such as a trade association. An association cannot lawfully act to facilitate the raising, stabilizing, or maintaining of prices in the market in which its members compete with one another, or to reduce members' collective output of products or services.

**Instruction No. 48**

**Liability of Member for Acts of Association**


A person or business that belongs to an association or trade association does not become liable for violating the antitrust laws simply because the association or trade association is liable for such violation.  Instead, Plaintiffs must prove that the Defendant in question knew of and participated in the conduct that you find unlawful.

The issue you must decide is whether Plaintiffs proved that Defendants used the membership organization and its challenged practices in an anticompetitive manner.

**Instruction No. 49**

**State Laws**

During trial, you heard testimony about state laws relating to animal welfare that were enacted after 2008.

State laws enacted after 2008 are not relevant to whether Defendants conspired to violate the antitrust laws before those laws were passed. State laws passed from 2009 to 2012 are not relevant to whether Defendants entered into a conspiracy from 1999 to 2008.

You may consider state laws enacted from 2008 to 2012 for the limited purpose of deciding whether the state laws contributed to any change in the supply or price of eggs during that period.

**Instruction No. 50**

**Deliberations**

Upon retiring to the jury room, you must select a presiding juror. The presiding juror will preside over your deliberations and will be your representative here in court. You may discuss the case only when all jurors are present.

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, a smart phone, or computer to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during the deliberations.

A verdict form has been prepared for you.

[Forms of verdict read.]

Take the verdict form to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in and date the appropriate form, and all of you will sign it.

**Instruction No. 51**

**Communications with the Court**


I do not anticipate that you will need to communicate with me.  If you do need to communicate with me, the only proper way is in writing.  The writing must be signed by the presiding juror, or, if he or she is unwilling to do so, by some other juror.  The writing should be given to the Court Security Officer, who will give it to me.  I will respond either in writing or by having you return to the courtroom so that I can respond orally.

If you do communicate with me, you should not indicate in your note what your numerical division is, if any.

## Instruction No. 52

## The Verdict

The verdicts must represent the considered judgment of each juror. Your verdicts, whether for or against the parties, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

All of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror. You are impartial judges of the facts.

**Instruction No. 53**

**Protecting Competition**


The antitrust laws protect competition, not competitors.

Harm to a single competitor, or a group of competitors, does not necessarily mean that there has been harm to competition.

**Instruction No. 54**

**Membership in a Trade Association**

Membership in a trade association is not sufficient to show participation in a conspiracy.