UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRAFT FOODS GLOBAL, INC., THE KELLOGG COMPANY, GENERAL MILLS, INC., and NESTLÉ USA, INC., ) ) ) ) | |
| Plaintiffs, ) | No. 1:11-cv-08808 |
| ) | |
| v. ) | Judge Steven C. Seeger |
| ) | |
| UNITED EGG PRODUCERS, INC., UNITED STATES EGG MARKETERS, INC., CAL-MAINE FOODS, INC., and ROSE ACRE FARMS, INC. ) ) ) ) ) | |
| Defendants. ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
FOR A CURATIVE INSTRUCTION**

Defendants seek a curative instruction for a mathematical error Plaintiffs made during closing arguments. At issue is Plaintiffs' statement that the total number of eggs exported under the USEM program was in the billions, rather than approximately 700 million.

Defendants' request should be denied for several reasons. First, it comes too late. Defendants apparently knew of, yet failed to address, the error before the jury began deliberations. Defendants had ample opportunity to do so. For example, they failed to raise the issue in Defendants' Motion to Strike Improper Closing Arguments, which they filed the evening of Plaintiffs' closing argument. *See* Dkt. 543. As Defendants recognized in that motion, a party must object to errors in closing argument "before the trial judge submits the case to the jury to deliberate." *Id*. at 1 (citing Deppe v. Tripp, 863 F.2d 1356, 1364 (7th Cir. 1988).

Second, Defendants had three closing arguments—spanning four hours—the day after the Plaintiffs' closing argument. During any of those closing arguments, Defendants could have taken issue with the characterization. It is hard to imagine how an error could be so material that the

Court needs to draw attention to it after the jury has begun deliberations—yet not be something Defendants felt was important to address in arguments, or even after rebuttal argument and before the Court's final instructions to the jury.

Third, the error is not prejudicial to defendants. The Court instructed the jurors that counsel's statements are not evidence and their memory of the evidence controls. The difference between billions of eggs and 700 million eggs is immaterial in the liability phase, where Plaintiffs need to prove any amount of an antitrust injury. Should the case proceed to the damages phase, both sides will have the ability to clear up the issue.

In addition, providing a curative instruction that Defendants seek will call undue attention to one factual error. And it would necessitate a curative instruction for the *slew* of incorrect factual assertions Defendants made in their closing arguments—which until now Plaintiffs found no reason to emphasize. Defendants' misstatements and improper arguments including the following, only some of which Plaintiffs addressed in rebuttal:

### Rose Acre

- <u>Jury's Sympathies.</u> After telling the Court that he would not play to the jury's sympathies when discussing the Rust family's presence at trial, Rose Acre's counsel argued—without any evidentiary support—that the "toll" to the Rust family has been "immeasurable."

- <u>Playing of Depositions.</u> Despite the Court informing Rose Acre that it did not "think the defense team should be throwing stones at the plaintiffs for presenting someone through deposition testimony, because they are entitled to it" and instructing the jury that it "should give [deposition] evidence the same consideration" as live testimony, Rose Acre criticized Plaintiffs for their use of Marcus Rust's depositions by stating, "They played his deposition testimony. They had read in his testimony. We brought him here. You got to see him. But in their case-in-chief, they just used his deposition." Rose Acre did the same with respect to the deposition testimony of the Plaintiffs' other witnesses, and even argued that Plaintiffs should have called someone currently employed by their companies—even though the events in question occurred many years ago.

- <u>Customers demanding UEP Certification before program existed.</u> Rose Acre claimed in a demonstrative and in argument that Walmart and Kroger informed Rose Acre in late 2001 or early 2002 that Rose Acre needed to be UEP certified. Rose Acre's own witness stated

that Rose Acre did not speak with Walmart. As counsel is aware, the UEP certified program did not even exist until April 2002.

- Exports purportedly only occurred at low-demand times. Rose Acre's counsel argued that the producers "weren't exporting when there was high demand. They were exporting when there was low demand, when they had surplus eggs." Tr. 6312; Slide 55 of demonstratives. At least one export occurred between October and mid-November at a time when there was very high demand. Even Rose Acre's own witness conceded that there was at least one occasion when Rose Acre did not have surplus eggs. Tr. 4157.

- Rose Acre's Flock Reduction Forecast (Plaintiffs' Exhibit 196). Rose Acre argued that Hurd testified that "several of the numbers" in Plaintiffs' Exhibit 196 were "incorrect. But they kept using it. He explained, he got on the stand and said, listen, those numbers aren't right, you can't rely upon them." Tr. 6314. This argument is wrong for several reasons. First, Plaintiffs' Exhibit 196 is a document Hurd created in 2002. Hurd testified that he created that document as a forward-looking analysis of what would happen to capacity if Rose Acre did not expand. Tr. 4820. Rose Acre's counsel was presumably referring to Plaintiffs' Exhibit 36, the document Ty Harweger prepared in January 2008 looking backward. But counsel's statements are still wrong. Hurd testified that despite containing some errors, Harweger's document is consistent with what happened at Rose Acre in terms of growth. *See* Tr. 4836. Hurd did not testify that the document is unreliable.

- Dr. Baye's Analysis of Short-Term Measures and Exports. Counsel claimed that Dr. Baye "doesn't think any of these short-term measures did anything." Tr. 6326. Counsel further alleged that Dr. Baye "couldn't measure impact from the exports." Tr. 6330. As counsel knows, Dr. Baye repeatedly testified, including during cross-examination, that the short-term measures and exports did have an impact, but that their impact couldn't be measured using an econometric model. Tr. 2567:6-22, Tr. 2567:6-22, Tr. 2690-91.

**Cal-Maine**

- Export Timing. Counsel left off several exports in Demonstrative Slide 19, and mischaracterized the 2006 export as concluding October 30 when it continued well into November, which means that it would have affected the Thanksgiving celebrations.

- Baye's Testimony re Injury. Counsel claimed Dr. Baye and his team "couldn't find any evidence of injury to any of these plaintiffs." Tr. 6431. Counsel also argued that "the plaintiffs can't establish injury from those molts, those slaughters, those exports. They just can't. Their expert couldn't find it." Tr. 6436. Similar to Rose Acre's argument above, this was inconsistent with Dr. Baye's testimony.

- Nestle's Evidence re Injury. Counsel stated, "I wish I could show you a Nestlé document, but we don't have any. We just don't have a single one." As the Court is aware, Plaintiffs introduced Nestlé USA's transactional data (*see* Plaintiffs' Exhibit 743) and the defense introduced Nestlé USA's admissions, interrogatory responses (Defendants' Exhibit 173), and stipulation (Defendants' Exhibit 175).

- <u>Depiction of a Nest Run Egg</u>. Cal-Maine's counsel showed a picture of what is purportedly a "nest-run egg." (Dkt. 550-1, Demonstrative 25.) The picture was not in evidence, but the jury is left with the closing argument's picture as being the only depiction of a nest-run egg. This was clearly improper and Plaintiffs had no way to rebut it given that it first saw the demonstrative Friday afternoon.

- <u>Professor Baye on Nest Run Eggs</u>. Counsel claimed that "Professor Baye didn't know what a nest run egg is. Dolph Baker did, helped you understand what this means." As the record shows, Dr. Baye did know what a nest run egg is. He testified about nest run eggs on direct and on cross. Tr. 2592 (stating that "The challenge here for, you know, exactly quantifying the effect is I don't know for sure what the destination of each of these eggs were. You know, some of them might have been destined for egg products. They might have been nest run eggs. Some of them might have been destined for cartons."); Tr. 2824 "And you also understand now that a class 1 egg is actually ungraded and unwashed, correct? A. Yes. Q. Such that it can't be sold in a grocery store? A. Until it's processed, yes.").

- <u>Son of Ronald McDonald</u>. Counsel claimed that the PETA depiction of Ronald McDonald holding up a chicken with a butcher knife was a reference to "Egg-laying hens." This is untrue, as it was about eating chicken meat. Counsel referenced Defendants' Exhibit 736, which is a pro-vegetarian ad with a link to meatstinks.com and a phone number to 1-888-VEG-FOOD.

**UEP**

- <u>UEP's Participation in the Certified Program.</u> Counsel for UEP argued that "UEP and USEM don't participate in the certified program." As should be beyond any dispute, UEP ran the certified program.

**USEM**

- Other associations that coordinate exports. In its closing argument, USEM argued, "And by the way, there's a lot of associations that coordinate exports for their members." Tr. 6348. This is not in the record.

**Conclusion**

The Court should deny Defendants' request since it comes too late, has no legal basis, is not material to the liability phase. If granted, this approach would necessitate a slew of other corrections, as listed above.

4

November 20, 2023                                    Respectfully submitted.


                                                    ***Counsel for Plaintiffs Kraft Foods Global, Inc., General Mills, Inc., Nestlè USA, Inc. and The Kellogg Company***

                                                   /s/ *Brandon D. Fox*
                                                   Brandon D. Fox
                                                   Amy M. Gallegos (*pro hac vice*)
                                                   JENNER & BLOCK LLP
                                                   515 South Flower St, Suite 3300
                                                   Los Angeles, CA 90071
                                                   Tel: (213) 239-5100
                                                   Fax: (213) 239-5199
                                                   bfox@jenner.com
                                                   agallegos@jenner.com

                                                   Andrianna D. Kastanek
                                                   Angela M. Allen
                                                   JENNER & BLOCK LLP
                                                   353 N. Clark Street
                                                   Chicago, IL 60654-3456
                                                   Tel: (312) 222-9350
                                                   Fax: (312) 527-0484
                                                   akastanek@jenner.com
                                                   aallen@jenner.com