UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KRAFT FOODS GLOBAL, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:11-cv-08808 |
| | ) | Judge Steven C. Seeger |
| UNITED EGG PRODUCERS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO EXCLUDE OPINIONS
AND STATEMENTS OF NON-EXPERT GENE GREGORY**

Last week, the jury found that Defendants Cal-Maine Foods, Inc. and Rose Acre Farms, Inc., non-parties Moark LLC and Wabash Valley Produce Inc., and Defendants United Egg Producers, Inc. ("UEP") and United States Egg Marketers, Inc. ("USEM")) participated in a conspiracy to restrict the supply of eggs that included short-term measures (early slaughter, early molting, and flock reduction), exports of eggs through USEM, and the cage-space requirements and backfilling restrictions in the UEP Certified Program.

## I.  Introduction

Facing the damages phase, Plaintiffs are confronting serious evidentiary gaps. As discussed in the Memorandum in Support of Defendants' Motion to Exclude or Limit Testimony of Plaintiffs' Witness Dr. Michael Baye on Damages (ECF No. 566), Dr. Baye has admitted that he cannot measure the economic impact of the short-term measures or any injury to the Plaintiffs from the exports. And with respect to the UEP Certified Program, Dr. Baye did not calculate damages based on the conspiracy

the jury found: one that includes Rose Acre, Cal-Maine, Moark, and Wabash Valley, but no other egg producer, and that only caused injury between October 2004 and December 2008.

To try to bridge those gaps, Plaintiffs just disclosed that four out of their five damages-phase witnesses will base their overcharge testimony on the musings of a man who had no education after high school and never explained or supported his conclusions: now-deceased Gene Gregory, former President of United Egg Producers.[1] *See* ECF No. 563. But Mr. Gregory's statements are not a permissible basis to determine purported "overcharges" or anything else related to any damages. Mr. Gregory's assertions are unreliable, irrelevant, and more prejudicial than probative, and thus should be excluded under Fed. R. Evid. 402, 403, and 701.

As a threshold matter, any statements uttered by Mr. Gregory before October 2004 or after December 2008 are outside the injury period and therefore irrelevant to calculating damages. Even statements by Mr. Gregory from within the relevant time period should be excluded because his views are unsupported musings that do not satisfy Plaintiffs' burden to provide a reasonable basis for determining damages.

## II. Argument

### A. Mr. Gregory Was Not Qualified to Measure Overcharges, Let Alone Impact from the Conspiracy.

Mr. Gregory, who passed in 2020, had no background in economics. He did not even have a college degree. Yet Plaintiffs now want to prove "overcharges" based on

---

[1] Mr. Gregory passed approximately three years ago. *See, e.g.*, United Egg Producers, *UEP Mourns Gene Gregory* (Dec. 7, 2020) (available at https://unitedegg.com/uep-mourns-gene-gregory/).

2

his assertions, which purport to precisely calculate the supposed price effects of short-term supply recommendations, exports, and the impact of the UEP Certified Program. Plaintiffs should not be allowed to "prove" their damages based on Mr. Gregory's self-interested musings because: (1) Mr. Gregory lacked scientific, technical, or other specialized knowledge; (2) there is no basis to conclude his statements were based on sufficient facts or data; (3) there is no basis to believe his claims were the product of reliable principles and methods; and (4) there is no evidence that Mr. Gregory could have reliably applied (or did apply) reliable principles and methods to substantiate any of the assertions he made.

Allowing Plaintiffs to rely on Mr. Gregory's statements would not comport with either the letter or the spirit of Rule 701 or 702, which Defendants submit should inform the Court's analysis (particularly because Plaintiffs seek to use Mr. Gregory's unreliable testimony to try to "prove" their damages). Rule 701 mandates that "lay opinion testimony is limited to those observations of a lay witness that are not based on scientific, technical, or other specialized knowledge[,]" a requirement intended "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." *United States v. Conn,* 297 F.3d 548, 553 (7th Cir. 2002) (internal citation omitted). Plaintiffs cannot skirt Rule 701 through a "summary witnesses" to inject evidence that goes beyond the limits of lay opinion testimony.

If Mr. Gregory were alive and testifying as a lay witness, Plaintiffs would not be able to rely on his calculations of economic impact to prove damages because "lay

3

testimony is not admissible to 'provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events.'" *Securities and Exchange Commission v. Nutmeg Group, LLC,* 2017 WL 1545721, at *12 (N.D. Ill. Apr. 28, 2017) (quoting *Conn,* 297 F.3d at 554); *see also Zenith Electronics Corp. v. WH-TV Broadcasting Corp.,* 395 F.3d 416, 420 (7th Cir. 2005) (plaintiff's damages estimates were not admissible as lay opinion "because its claimed losses depend on the inferences to be drawn from the raw data, rather than these data [] themselves").

Calculating the precise price effects of the at-issue conduct goes far beyond the "simple math" appropriate for lay witness testimony regarding damages. *Navarrete v. Madison Cnty.,* No. 17-cv-347-SMY, 2021 WL 2374350, at *2 (S.D. Ill. June 10, 2021) (observing that while a lay witness can testify regarding damages that "are based on simple math. . . expert testimony would be necessary for more complicated calculations such as interest, the effect of inflation, and potential future earnings and benefits."); *see also In Re General Instrument Corp.,* 2000 WL 1741937 at *4 ("The Court finds it simply incredible that if [the expert's] work on individual damages could be so easily converted into an opinion on corporate damages that [the expert] himself was not urged to make that conclusion and avoid this strange spectacle of a lay witness opining as to damages in a securities case.").

The unreliability of Mr. Gregory's statements is underscored by Plaintiffs' own expert, Professor Baye, who could not calculate the alleged impact of the challenged practices, let alone with the degree of precision that Mr. Gregory supposedly provided.

4

The risk of prejudice is heightened by the total lack of evidence illuminating the means or methods on which Mr. Gregory relied (if any) when making his statements.[2]

Plaintiffs cannot credibly suggest that Mr. Gregory's opinions are trustworthy simply because of his experience in the egg industry. "The mere fact that a witness has specialized training does not preclude her from offering a lay opinion limited to what he observed or to other facts derived exclusively from a particular investigation. Even though this line may be hard to draw, the court still must scrutinize the witness's testimony to ensure that all testimony based on scientific, technical or other specialized knowledge is subjected to the reliability standard of Rule 702." *Securities and Exchange Commission v. Nutmeg Group, LLC,* No. 09-1775, 2017 WL 1545721, at *12 (N.D. Ill. Apr. 28, 2017) (internal brackets, citations, and quotation marks omitted).

Even expert witnesses relying on nothing more than their "specialized knowledge" or "experience" must show that their opinions are reliable. "[I]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached . . . and how that experience is

---

[2] Damages evidence that relies on third-party estimates without knowledge of the underlying methods or assumptions upon which the estimates were based is properly excluded. *See Z.F. Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 292 (3rd Cir. 2012) (affirming exclusion of an expert's lost profits analysis where the expert simply "relied on a one-page set of profit and volume projections without knowing the circumstances under which such projections were created or the assumptions on which they were based"); *AngioDynamics, Inc. v. C.R. Bard, Inc.*, 537 F. Supp. 3d 273, 339 (N.D.N.Y. 2021) (affirming exclusion of damages opinion where expert relied on a third-party competitor's data despite "utterly lacking" "corroborating information or record evidence demonstrating how the data was created or validating its reliability); *MOSAID Techs. Inc. v. LSI Corp.*, 2014 WL 807877, at *3 (D. Del. Feb. 28, 2014) (finding that expert damages testimony "must be excluded as unreliable under Federal Rule of Evidence 702" where the opinion relied upon a business plan that was not independently verified).

5

reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *See* Fed. R. Evid. 702 Advisory Committee's Note, 2000 Amendments. Of course, Mr. Gregory is no longer with us, so he is unable to explain how he reached the conclusions that Plaintiffs propose to offer into evidence.

**B.     Mr. Gregory's Statements Are Irrelevant and Inject Substantial Prejudice in Light of the Jury's Verdict.**

Evidence is inadmissible when it is irrelevant or when "its probative value is substantially outweighed" by the risk of confusing or misleading the jury or unfairly prejudicing a party. Fed. R. Evid. 402, 403. Apart from Mr. Gregory's lack of qualifications to measure or assess overcharges, his statements about purported industry-wide impact of short-term measures, exports and the UEP Certified Program cannot form the basis for determining damages based on the four egg producers' conduct. Mr. Gregory's ruminations would confuse or mislead the jury and unduly prejudice Defendants. This is true for any single statement uttered by Mr. Gregory, but taken collectively, and considering that at least four out of five of Plaintiffs' witnesses apparently intend to rely on the statements to support their claims of alleged "overcharges," the risks overwhelmingly weigh in favor of exclusion.

Mr. Gregory's speculations are irrelevant to the question at hand, which is the amount of damages each Plaintiff can prove it sustained due to the conduct of two non-producers (UEP, USEM) and four egg producers that constitute less than 20% of the market (Cal-Maine, Rose Acre, Wabash Valley, and Moark). As the Court is

6

aware, the jury determined that membership in the UEP Certified Program did *not* equate to membership in a conspiracy. *See* Nov. 21, 2023 Trial Tr. at 6668:18–22.

Putting aside Mr. Gregory's utter lack of qualification to quantify *industry-wide* impact of any conduct on the pricing of eggs and egg products, the actual question remaining for the jury is considerably narrower—whether *these* four Plaintiffs suffered damage resulting from antitrust injury inflicted by *these* conspirators.

The probative value is negligible at best. Mr. Gregory's guesstimates do not address the specific economic impact of the actions of Cal-Maine, Rose Acre, Wabash Valley, Moark, UEP and USEM. And none refer to economic impact on any of the Plaintiffs. Mr. Gregory instead provides guesses, couched in commentary, as to the industry-wide impact of the combination of varied participation in programs like exports, short-term measures, and the UEP Certified Program, along with other factors that he deemed relevant to the price of shell eggs including grain prices, higher consumer demand, and inclement weather. *See e.g.* PX-37, PX-279.

The risk of juror confusion and prejudice to Defendants is substantial because Plaintiffs' proffered expert, Professor Baye, has acknowledged he "can't tell you how much the plaintiffs in this case exactly were injured" from exports and short-term measures. Oct. 31, 2023 Trial Tr. 2693:21–2694:2 ("that's a decision that someone other than me has to make"). It would be confusing and unfair to allow Plaintiffs to bridge the yawning evidentiary gap in their damages model with *United Voices* newsletters and other commentary from Mr. Gregory, who possesses no qualifications

that would enable him to measure the impact of any program at issue here for the purposes of accurately measuring damages resulting from antitrust injury. *Compare e.g.* PX-279 (Mr. Gregory claiming in *United Voices* that the February 2007 export resulted in a price increase of 23.9 cents per dozen); *with* Oct. 30, 2023 Trial Tran. 2590:15-2591:2 (Dr. Baye testifying that he was not able to estimate any effects from the exports using an econometric model because "it's impossible to identify those while controlling adequately for everything else"). By purporting to accomplish what Professor Baye, a Ph.D.-holding economist, identified as "impossible," Mr. Gregory's statements implicate a serious risk of misleading the jury and unduly prejudicing Defendants. The Court should not permit Plaintiffs to bootstrap off of Mr. Gregory's statements to try to meet their burden of proof.

The fact that damages must be based on sufficiently reliable data does not change simply because the relied-upon (unreliable) information comes from a party-opponent. *See Jacked Up, LLC v. Sara Lee Corporation*, 807 Fed. Appx. 344, 346 (5th Cir. 2020) (affirming lower court's exclusion of an expert report that relied on a party opponent's financial projections to extrapolate lost-profit figures). *See also United States v. Kattar*, 840 F.2d 118, 131 n.10 (1st Cir. 1988) (noting that a "party-opponent admission is still subject to the trial court's balancing of its probative value against its prejudicial effect under Rule 403").

### III.     Conclusion

For the foregoing reasons, Defendants respectfully request that the Court grant the Motion and exclude Mr. Gregory's statements, including, *inter alia*, those

8

set forth in Appendixes A and B, and not permit Plaintiffs to rely on them to determine purported "overcharges."

Dated: November 27, 2023          Respectfully submitted,

/s/ Patrick M. Collins
Patrick M. Collins (pcollins@kslaw.com)
Livia M. Kiser (lkiser@kslaw.com)
Patrick M. Otlewski (potlewski@kslaw.com)
Abigail Hoverman Terry (aterry@kslaw.com)
KING & SPALDING LLP
110 North Wacker Drive, 38th Floor
Chicago, IL 60606
Tel: (312) 995-6333

Lohr Beck (lohr.beck@kslaw.com)
(pro hac vice)
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel: (404) 572-2812

Brian E. Robison (brian@brownfoxlaw.com)
(pro hac vice)
BROWN FOX PLLC
6303 Cowboys Way, Suite 450
Frisco, TX 75034
Tel: (972) 707-2809

***Counsel for Defendant Cal-Maine Foods, Inc.***

| /s/ Robin P. Sumner | /s/ Donald M. Barnes |
|---|---|
| Robin P. Sumner (robin.sumner@troutman.com) | Donald M. Barnes (dbarnes@porterwright.com) |
| Kaitlin L. Meola (kaitlin.meola@troutman.com) | Jay L. Levine (jlevine@porterwright.com) |
| TROUTMAN PEPPER HAMILTON SANDERS LLP | PORTER, WRIGHT, MORRIS & ARTHUR LLP |
| 3000 Two Logan Square, 18th and Arch Streets | 2020 K. Street, N.W., Suite 600 |
| Philadelphia, PA 19103-2799 | Washington, D.C. 20006-1110 |
| Tel: (215) 981-4000 | Tel: (202) 778-3000 |

Whitney R. Redding
(whitney.redding@troutman.com)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Union Trust Building
501 Grant Street, Suite 300
Pittsburgh, PA 15219-4429
Tel: (412) 454-5085

Molly DiRago
(Molly.DiRago@troutman.com)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
227 West Monroe Street, Suite 3900
Chicago, IL 60606
Tel: (312) 759-1923

*Counsel for Defendants United Egg Producers, Inc. & United States Egg Marketers, Inc.*

James A. King
(jking@porterwright.com)
Allen T. Carter
(acarter@porterwright.com)
PORTER, WRIGHT, MORRIS &
ARTHUR LLP
41 South High Street, Suite 2900
Columbus, OH 43215
Tel: (614) 227-2000

*Counsel for Defendant Rose Acre Farms, Inc.*