UNITED STATES DISTRICT COURT
FOR THE Northern District of Illinois – CM/ECF NextGen 1.7.1.1
Eastern Division

Kraft Foods Global, Inc., et al.
            Plaintiff,

v.                     Case No.: 1:11−cv−08808
                    Honorable Steven C. Seeger

United Egg Producers, Inc., et al.
            Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, November 27, 2023:

  MINUTE entry before the Honorable Steven C. Seeger: The Court issues this minute order to follow up with the parties on a point raised in the dueling briefs about the damages analysis by Plaintiffs' expert (Dr. Baye). Taking a step back, the jury found that the four Defendants conspired to restrict the supply of eggs, and that non−parties Moark and Wabash Valley joined the conspiracy, too. See Jury Verdict Form (Dckt. No. [582]). But the jury did not find that any other egg producer joined the conspiracy. And in fact, the jury expressly rejected the notion that all participants in the UEP Certified Program were participants in the alleged conspiracy (as revealed by the answer to Question #8 on the jury verdict form). Plaintiffs proved that the four Defendants (Cal−Maine and Rose Acre, plus UEP and USEM) and two non−parties (Moark and Wabash Valley) were members of the conspiracy, so Plaintiffs can recover damages for the purchases from those members of the conspiracy. But Plaintiffs cannot recover damages for purchases from any other egg producer, including Michael Foods and anyone else, because Plaintiffs did not prove that anyone else joined the conspiracy. Even so, Plaintiffs' damages theory does seem to depend on the restriction in supply by non−conspirators. As this Court understands it (and the Court invites a correction if necessary), Plaintiffs expect Dr. Baye to opine that the UEP Certified Program restricted the nationwide flock of hens, which reduced the supply of eggs, which increased the price of eggs, which meant that Plaintiffs paid too much for egg products. As far as this Court can tell, Plaintiffs do not argue (and have no evidence) that Cal−Maine, Rose Acre, Moark, and Wabash Valley as a foursome raised nationwide prices by restricting the supply of hens by themselves. Plaintiffs don't seem to be arguing that those four producers, standing alone, had enough heft to raise prices on their own. That theory might be on tenuous footing, given the relatively small market share of those four producers. (According to Defendants, Cal−Maine, Rose Acre, Moark, Wabash Valley, and Michael Foods had a 20% market share. So the market share is somewhere less than 20% without Michael Foods.). Instead, Plaintiffs' theory seems to be that those four producers conspired with UEP and USEM, and popularized the idea of implementing cage−space restrictions and a backfilling ban. And the cage−space restrictions and backfilling ban had the effect of reducing supply, even if other egg producers were not in on the conspiracy. This Court has called that theory a "bullhorn theory." The idea is that Defendants conspired to restrict supply, and used UEP as a mouthpiece (especially through the United Voices newsletters, and various committee

meetings) to popularize the cage−space restrictions and backfilling ban and get other UEP members to get on board with the UEP Certified Program. Under that theory, Plaintiffs seem to depend on the supply restrictions done by non−conspirators. The idea is that Defendants conspired and coaxed non−conspiring egg producers to restrict supply, and that collective action raised the prevailing market price for eggs in the industry, even though the other non−conspiring egg producers may not have known about the conspiracy and may have taken the actions for other, non−conspiratorial reasons. The question then becomes whether a plaintiff can recover damages caused by a conspiracy, if the damages theory depends on market decisions made in part by non−members of the conspiracy. To that end, Plaintiffs included the following sentence on page four of their brief (Dckt. No. [575]): "The Seventh Circuit regularly holds actors to account for conduct that was carried out by unknowing participants who they mobilized into action. See, e.g., United States v. Randy, 81 F.3d 65, 68 (7th Cir. 1996)." The Randy decision was about the applicability of an enhancement under the U.S. Sentencing Guidelines. See United States v. Randy, 81 F.3d 65, 68 (7th Cir. 1996) ("Mr. Randy was the founder, promoter, and chief executive officer of the scheme involved in this case. He was its guiding force. To carry out his scheme, he enlisted the perhaps unwitting help of a nationwide network of more than 60 brokers who sold $16 million worth of certificates."). So Randy might be suggestive or directionally helpful, but it is not on all fours, either. This Court is curious to know what else might be lurking behind Plaintiffs' tantalizing use of "See, e.g." All of this windup is a long way of saying the following. Plaintiffs' damages theory seems to depend heavily on a supply restriction made by non−defendant non-conspirators, in addition to the supply restrictions by Defendants and their co−conspirators themselves. That is, Plaintiffs' theory seems to be that Defendants and two co−conspirators agreed to restrict supply, and got most of the industry as a whole to go along, even though those other egg producers were not (proven to be) in on the alleged conspiracy. What do courts say about the ability to consider the business decisions of non−conspirators when calculating damages? In antitrust cases, do courts allow plaintiffs to recover damages based on supply restrictions taken by non−conspirators, if the conspirators caused those non−conspirators to restrict supply? Can a damages model take into account the actions of non−conspirators who engaged in conduct that raised industry prices? Is it fair game to rely on an increase in market prices if most producers in the industry were not proven to be members of the alleged conspiracy? More broadly, in conspiracy cases generally (apart from antitrust), to what extent can a damages theory take into account the actions by non−members of the conspiracy, including people who may have unwittingly gone along with the group action without knowing about the conspiracy itself? The Court invites the parties to file citations to any cases that might shed light. This Court has reviewed the Third Circuit's decision in In re Processed Egg Products Antitrust Litig., 881 F.3d 262, 274 (3d Cir. 2018). The Court thanks the parties for their anticipated cooperation. Mailed notice. (jjr, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.