IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **KRAFT FOODS GLOBAL, INC.**, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:11-cv-08808 |
| ) | Judge Steven C. Seeger |
| **UNITED EGG PRODUCERS, INC.**, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MEMORANDUM IN RESPONSE TO
PLAINTIFFS' MOTION TO LIMIT ANY TESTIMONY BY
DR. WALKER IN THE DAMAGES PHASE**

Plaintiffs have filed a motion (ECF No. 568) seeking to limit the testimony of Defendants' expert witness, Dr. Jonathan Walker, in the damages phase of the trial of this matter. Plaintiffs ask the Court to limit Dr. Walker's testimony in three ways: (1) to exclude testimony on matters that "go only to liability and are not appropriate for the damages phase" (Mot. at 1-2); (2) to exclude testimony that *is* relevant to damages, but on matters which Dr. Walker discussed in the liability phase (*id.* at 2); and (3) to exclude opinions not included in Dr. Walker's reports (*id.* at 3). On the last point, Plaintiffs also ask that Defendants be required to preview their examination of Dr. Walker so the Court can determine, in advance, whether Dr. Walker's opinions on damages can be found in his reports. (*Id.*)

Plaintiffs' first ask is unnecessary. Defendants have no intention of examining Dr. Walker on those portions of his opinions that relate solely to liability (for example, whether "Plaintiffs … prove[d] the relevant product market" (*id.* at 1)). The Court has already instructed the parties not to "encourage the jury to second-guess any decision from the liability phase" (Notification of Docket Entry, ECF No. 562, at 1) and Defendants will follow the Court's instructions.

Plaintiffs' third ask is also unnecessary. Defendants have no intention of eliciting opinions from Dr. Walker that have no basis in his main and supplemental reports and the appendices and exhibits thereto (attached as sealed Exhibits A through D of Plaintiffs' Motion). Rule 26(a)(2)(B)(i) of the Federal Rules of Civil Procedure requires parties to submit expert reports that "contain[ ] … a complete statement of all opinions the witness will express." Defendants will comply with Rule 26.[1] Defendants further object to Plaintiffs' one-sided request that "the Court order Defendants to [file] a proffer of the opinions they expect to elicit from [their expert witness] in sufficient time for the Court to consider the scope of this testimony before he testifies." (Mot. at 3.) Nothing in the Federal Rules of Civil Procedure, the Northern District of Illinois's local rules, or the Court's standing orders requires parties to file their expert witness examinations in advance. Plaintiffs cite no rule or court precedent to justify their request. They point to no experiences in the liability phase that would warrant such an extraordinary measure. And they offer no justification for raising their request except "efficiency." (*Id*.) Plaintiffs' request should be rejected out-of-hand.

Defendants respectfully oppose the remainder of Plaintiffs' motion as well, for numerous reasons. *First*, Plaintiffs claim to have made a list of "Dr. Walker's opinions [that] go only to liability" (Mot. at 1), but that list contains several topics that are, in fact, entirely relevant to damages and therefore proper for Phase 2. As discussed in Defendants' recent motion to limit the damages-phase testimony of Plaintiffs' expert Dr. Michael Baye (ECF No. 565), overcharges are recoverable under the Clayton Act only if they result from unlawful anticompetitive behavior and not some other reason. *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1161 (7th

---

[1] Defendants do, of course, reserve the right to seek leave to offer new expert testimony on damages if the Court permits Plaintiffs to introduce new expert testimony on damages.

Cir. 1983) ("It is essential … that damages reflect only the losses directly attributable to *unlawful* competition"). Accordingly, whether the time trend variable in Dr. Baye's models[2] adequately controlled for the effects of, for example, the cage-space requirements imposed by McDonald's and Burger King,[3] the historic lows in inflation-adjusted egg prices between approximately 2005 and 2007 (which one would expect might lead egg producers to scale back expansion),[4] or the Great Recession between December 2007 and June 2009 (which, again, one might expect to cause reduced expansion, or even contraction, by egg producers),[5] is directly relevant to damages. *See Isaksen v. Vt. Castings, Inc.,* 825 F.2d 1158, 1165 (7th Cir. 1987) ("We do not allow antitrust plaintiffs … to obtain damage awards without proving what compensable damages were actually suffered as a result of the defendant's unlawful conduct[,]" as opposed to "unrelated market forces"). Dr. Baye's assumption of a broad conspiracy that included all 200+ egg producers who joined the UEP certified program (and all eggs sold in the US, including, *inter alia*, organic, free range, non-UEP certified and conventional eggs), rather than the narrower conspiracy found by the jury, is also directly relevant to damages. Dr. Walker has legitimate criticisms of Dr. Baye's damages models, and if Dr. Baye is permitted to testify on anything during Phase 2, Dr. Walker must be permitted to testify to rebut Dr. Baye's testimony.

Whether Dr. Baye reasonably calculated the price effects from the conspiracy found by the jury is also clearly relevant to the damages phase. As also discussed in Defendants' motion to limit the damages-phase testimony of Dr. Baye,[6] Dr. Baye ran two main regressions – his Main

---

[2] *See* Walker, Nov. 14, 2023 Tr. 5470:12-5474:1.

[3] *See* Walker, Nov. 14, 2023 Tr. 5448:21-5450:7. Plaintiffs mischaracterize this testimony as addressing "customer[ ] demand[ for] animal welfare policies[.]" Mot. at 2.

[4] *See* Walker, Nov. 14, 2023 Tr. 5460:6-5466:14.

[5] *See* Walker, Nov. 14, 2023 Tr. 5466:15-5470:17.

[6] *See* Defendants' Motion to Exclude or Limit Testimony of Dr. Baye at 10.

3

Specification and his Backfilling Ban specification – to determine the Certified Program's effects on egg production. He then ran a two-stage, least squares model to estimate how the shortfalls in egg production that his models calculated would have affected the prices of various categories of shell eggs and egg products. During the liability phase of the trial, Dr. Walker testified that he took a different approach as a cross check on the validity of Dr. Baye's models: Dr. Walker ran Dr. Baye's two main regressions *directly* on price. And he received wildly different results: under the Main Specification, the alleged conspiracy lowered some of the egg product prices by statistically significant amounts,[7] and under the Backfilling Ban specification, the conspiracy lowered *all* of the egg product prices, some by statistically significant amounts.[8] Plaintiffs characterize that testimony as a critique that "Dr. Baye's model proved unreliable when applied to prices instead of quantity … ." (Mot. at 2 (citing Tr. 5497-5501).) But as Dr. Walker's supplemental report (at ¶¶ 35-36) makes clear, Dr. Walker's price regressions are also an alternative means to determine the price effects of conspiracy that Dr. Baye assumed (*i.e.*, one in which all Certified egg producers were co-conspirators). The results of Dr. Walker's analysis provide evidence, at a minimum, whether the conspiracy Dr. Baye assumed increased, or decreased, the prices of the various types of egg products Plaintiffs purchased. That is clearly relevant to the damages phase.

*Second*, Dr. Walker's opinion that "Dr. Baye's model cannot isolate the effect of the UEP Certified Program from other components of the alleged conspiracy, like exports" (Walker Main Report ¶ 252) remains relevant, and the Court should permit him to offer that opinion in the damages phase. Plaintiffs mischaracterize Dr. Walker's opinion as an assertion that "Dr. Baye's

---

[7] Walker, Nov. 14, 2023 Tr. 5499:9-22.
[8] Walker, Nov. 14, 2023 Tr. 5498:9-21.

4

model would break down if certain elements of the conspiracy were found to be legal," and then dismiss this point as irrelevant (or more prejudicial than probative) based on the jury's verdict. (Mot. at 2-3.) But Dr. Walker's opinion is relevant to the calculation of damages because (among other things) Dr. Baye's model did not isolate the effects of the Certified Program from the effects of the short-term measures or exports (assuming there were any), which means the model's results may already *include* any effects from the short-term measures or exports. Defendants are entitled to point out any double counting.

*Third*, Plaintiffs' argument that Dr. Walker should be barred from re-presenting any of his opinions because the jury "rejected" those opinions "in the liability phase" (Mot. at 1) is based on nothing but supposition. The verdict form did not ask the jury to divulge its interior workings, let alone rate the parties' expert witnesses. Defendants are mindful that the Court – and the jury – want this second phase to proceed expeditiously, and they fully intend to be efficient. But Defendants are entitled to put on their case. Thus, as permitted by the Court's recent docket entry (ECF No. 562), Defendants will likely remind the jury of Dr. Walker's opinions on the various topics discussed before that are relevant to damages and explain *why* those opinions are relevant to their calculation of damages, without repeating Dr. Walker's examination in full.

For the foregoing reasons, Defendants request that this Court deny Plaintiffs' Motion to Preclude Certain Testimony from Dr. Walker.

Dated: November 27, 2023　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　*/s/ Jay L. Levine*
　　　　　　　　　　　　　　　　　　　　Donald M. Barnes (dbarnes@porterwright.com)
　　　　　　　　　　　　　　　　　　　　Jay L. Levine (jlevine@porterwright.com)
　　　　　　　　　　　　　　　　　　　　PORTER, WRIGHT, MORRIS & ARTHUR LLP
　　　　　　　　　　　　　　　　　　　　2020 K. Street, N.W., Suite 600
　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20006-1110
　　　　　　　　　　　　　　　　　　　　Tel: (202) 778-3000

　　　　　　　　　　　　　　　　　　　　James A. King (jking@porterwright.com)
　　　　　　　　　　　　　　　　　　　　Allen T. Carter (acarter@porterwright.com)
　　　　　　　　　　　　　　　　　　　　Eric B. Gallon (egallon@porterwright.com)
　　　　　　　　　　　　　　　　　　　　　(pro hac vice)
　　　　　　　　　　　　　　　　　　　　PORTER, WRIGHT, MORRIS & ARTHUR LLP
　　　　　　　　　　　　　　　　　　　　41 South High Street, Suite 2900
　　　　　　　　　　　　　　　　　　　　Columbus, OH 43215
　　　　　　　　　　　　　　　　　　　　Tel: (614) 227-2000

　　　　　　　　　　　　　　　　　　　　**Counsel for Defendant Rose Acre Farms, Inc.**

*/s/ Robin P. Sumner*
Robin P. Sumner
(robin.sumner@troutman.com)
Kaitlin L. Meola
(kaitlin.meola@troutman.com)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
3000 Two Logan Square, 18th and Arch Streets
Philadelphia, PA 19103-2799
Tel: (215) 981-4000

Whitney R. Redding
(whitney.redding@troutman.com)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Union Trust Building
501 Grant Street, Suite 300
Pittsburgh, PA 15219-4429
Tel: (412) 454-5085

Molly DiRago
(Molly.DiRago@troutman.com)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
227 West Monroe Street, Suite 3900
Chicago, IL 60606
Tel: (312) 759-1923

***Counsel for Defendants***
***United Egg Producers, Inc. &***
***United States Egg Marketers, Inc.***

*/s/ Patrick M. Collins*
Patrick M. Collins (pcollins@kslaw.com)
Livia M. Kiser (lkiser@kslaw.com)
Patrick M. Otlewski (potlewski@kslaw.com)
Abigail Hoverman Terry (aterry@kslaw.com)
KING & SPALDING LLP
110 North Wacker Drive, 38th Floor
Chicago, IL 60606
Tel: (312) 995-6333

Lohr Beck (lohr.beck@kslaw.com)
(pro hac vice)
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel: (404) 572-2812

Brian E. Robison (brian@brownfoxlaw.com)
(pro hac vice)
BROWN FOX PLLC
6303 Cowboys Way, Suite 450
Frisco, TX 75034
Tel: (972) 707-2809

***Counsel for Defendant***
***Cal-Maine Foods, Inc.***