UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KRAFT FOODS GLOBAL, INC., THE KELLOGG COMPANY, GENERAL MILLS, INC., and NESTLÉ USA, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:11-cv-08808 |
| v. | ) ) | Judge Steven C. Seeger |
| UNITED EGG PRODUCERS, INC., UNITED STATES EGG MARKETERS, INC., CAL-MAINE FOODS, INC., and ROSE ACRE FARMS, INC. | ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' STATEMENT REGARDING DAMAGES**

Pursuant to the Court's Order at Dkt. 578, Plaintiffs respectfully submit the following summary of the damages they seek to recover in the damages phase and the basis for Plaintiffs' calculations.

Plaintiffs seek to recover a total of $31,143,503. Plaintiffs calculate that each Plaintiff paid the following overcharges during the period of September 2004 through December 31, 2008:

| Plaintiff | Overcharge |
|---|---|
| Kraft | $22,189,086 |
| Kellogg | $5,353,548 |
| Nestle | $1,987,386 |
| General Mills | $1,613,483 |

The vast majority of the overcharges were the product of the UEP Certified Program, as calculated by Dr. Baye using his regression model. The remainder of the overcharges were caused by USEM's coordinated exports, as explained below.

### I. Dr. Baye's Damages Calculations

Plaintiffs will rely on Dr. Baye's regression analysis and conclusions regarding the overcharges Plaintiffs paid due to the UEP Certified Program's restriction on the supply of eggs.

Dr. Baye calculated damages in a multi-step process using regression analysis. First, as described during his testimony in the liability phase, Dr. Baye used his regression model to identify the extent to which the UEP Certified Program restricted supply. Second, Dr. Baye conducted regression analysis to determine how much each 1% reduction in output of eggs would increase the Urner Barry price. Third, Dr. Baye used regression analysis to determine how changes in Urner Barry prices affected prices particular Plaintiffs paid to particular suppliers. That analysis resulted in an "adjustment factor"—an indication of the extent to which purchase price increased when the Urner Barry price for that egg product went up 1%. Finally, Dr. Baye used the adjustment factor to calculate each Plaintiff's overcharges. Dr. Baye's process is set forth in his January 2015 report at ¶¶ 208 to 234.

Dr. Baye's testimony during the damages phase of trial will include only those overcharges paid by one of the four Plaintiffs to one of two egg producers, each found by the jury to be part of the conspiracy: Rose Acre and Wabash Valley. Dr. Baye will exclude Plaintiffs' purchases from Michael Foods in light of the jury's findings. He also will exclude the "tail period" of 2009 through 2012, instead calculating overcharges only from September 2004 through December 31, 2008.

With those restrictions in place, Dr. Baye's regression model shows that Plaintiffs paid approximately $25,396,542 more for egg products than Plaintiffs would have paid but-for the supply restrictions in the UEP Certified Program—primarily, the henhouse density requirements and backfilling ban. Specifically, Dr. Baye will present to the jury overcharges per Plaintiff as follows:

- Kraft paid overcharges in the amount of $18,329,288 to Rose Acre.

- Kellogg paid overcharges in the amount of $4,605,380 to Rose Acre and Wabash Valley.

- Nestle paid overcharges in the amount of $1,156,262 to Rose Acre.

- General Mills paid overcharges in the amount of $1,305,612 to Rose Acre.

## II.     Export Damages Calculations

Plaintiffs also will present evidence of damages from exports through two witnesses and documentary evidence. The evidence will show Plaintiffs paid $5,746,961 more for egg products during the relevant period than Plaintiffs would have paid but-for the exports. These damages were calculated by identifying Plaintiffs' purchases of egg products from Rose Acres and co-conspirator Wabash Valley during the relevant time period, determining the amount of the overcharge resulting from the export, and applying the overcharge during the time period of the impact of the exports.

Plaintiffs' calculations of the damages caused by exports are conservative. Plaintiffs intend to rely on UEP's own statements—and specifically, the statements of its agent and President, Gene Gregory. In an April 27, 2007 United Voices admitted into evidence during the liability phase, Gregory observed that between mid-October 2006 to April 2007,

> During this period the Urner Barry Midwest Large quote has averaged 24.5 cents per dozen more than during the same period a year earlier. During the same period the Urner Barry Central Breaking Stock quote has averaged 15.5 cents per dozen more than the comparable period a year earlier.

Plf. Ex. 362. Plaintiffs may also seek to admit additional exhibits containing party admissions regarding the impact of exports on pricing, which Plaintiffs will read into evidence.

Gregory's observations in the April 27, 2007 United Voices are consistent with Urner Barry data, which Plaintiffs presented in part during the liability phase and intend to present more fulsomely during the damages phase. That data shows that, for the Urner Barry Midwest Large

3

index, a 24.5 cent increase from 2006 to 2007 is a 24.8% price change year over year; and a 15.5 cent increase in the Urner Barry Central Breaking Stock index from 2006 to 2007 is a 33.2% price change year over year. *See* Attachment A, Plf. Summary Ex. 2011.

Plaintiffs' damages presentations for exports will be through two witnesses. First, Nathan Blalock will testify as a summary witness. He will present voluminous transactional data of monthly purchases by each of the four Plaintiffs from Rose Acre or co-conspirator Wabash Valley, which has been summarized in a spreadsheet and which Plaintiffs intend to introduce into evidence. *See* Attachment B, Plf. Summary Ex. 2009. Blalock also will present a demonstrative to the jury that will summarize relevant dates for each export during this period—decision, announcement, and delivery—based on evidence already in the record. And Blalock will present the aforementioned Urner Barry data as described above for the period of October 2006 to September 2008.

Second, David Tantlinger, a forensic accountant employed by Nestle USA, will testify as a summary witness. Although he has training that could allow him to testify as an expert witness, Plaintiffs will not ask him to provide any opinions. Instead, Plaintiffs will just ask Tantlinger to conduct calculations based on assumptions Plaintiffs provide based on UEP's statements about the rise in Urner Barry prices. Tantlinger will testify that he was provided by Plaintiffs' counsel an assumption for a price increase: 24.8%. (This reflects the more conservative of Gregory's statements regarding the exports' impact on Urner Barry pricing.) Tantlinger will testify that he was instructed by counsel to apply this percentage to every month between October 2006 and September 2008 affected by exports, thus including any month in which an export was decided upon and announced, or during which the export was actually taken. Tantlinger further was directed by counsel that, if two exports affected one time period, the overcharge was to be applied

4

only once. Tantlinger therefore will act as a "human calculator" and conduct exemplar calculations per Plaintiff for each export.

The product of these exhibits and the anticipated summary testimony is that Plaintiffs will seek damages resulting from exports as follows:

- Kraft paid overcharges in the amount of $3,859,798 to Rose Acre.
- Kellogg paid overcharges in the amount of $748,168 to Wabash Valley.
- Nestle paid overcharges in the amount of $831,124 to Rose Acre and Wabash Valley.
- General Mills paid overcharges in the amount of $307,871 to Rose Acre.

In the alternative, Mr. Blalock will calculate export damages using the percent increase in price due to coordinated exports, as reflected in revised Baye Exhibit 26, by multiplying the Dr. Baye's estimated percent increase by purchases. Attachment C, Plf. Ex. 2010. Plaintiffs anticipate that the summary testimony will be that Plaintiffs' alternative method of calculating damages from exports totals $1,822,67.59. Plaintiffs alternatively seek damages resulting from exports as follows:

- Kraft paid overcharges in the amount of $1,267,176.71 to Rose Acre.
- Kellogg paid overcharges in the amount of $265,899.88 to Wabash Valley.
- Nestle paid overcharges in the amount of $173,599.60 to Rose Acre and Wabash Valley.
- General Mills paid overcharges in the amount of $116,036.38 to Rose Acre.

November 27, 2023

Respectfully submitted,

*Counsel for Plaintiffs Kraft Foods Global, Inc., General Mills, Inc., Nestlé USA, Inc. and The Kellogg Company*

 /s/ *Brandon D. Fox*
Andrianna D. Kastanek
Angela M. Allen
Joel T. Pelz

5

Michael T. Brody
Christopher M. Sheehan
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Tel: (312) 222-9350
Fax: (312) 527-0484
akastanek@jenner.com
aallen@jenner.com
jpelz@jenner.com
mbrody@jenner.com
csheehan@jenner.com

Brandon D. Fox
Amy M. Gallegos (*admitted pro hac vice*)
Sati Harutyunyan (*admitted pro hac vice*)
JENNER & BLOCK LLP
515 S. Flower St.,
Suite 3300
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199
bfox@jenner.com
agallegos@jenner.com
sharutyunyan@jenner.com