UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRAFT FOODS GLOBAL, INC., THE KELLOGG COMPANY, GENERAL MILLS, INC., and NESTLÉ USA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED EGG PRODUCERS, INC., UNITED STATES EGG MARKETERS, INC., CAL-MAINE FOODS, INC., and ROSE ACRE FARMS, INC. <br><br> Defendants. | No. 1:11-cv-08808 <br><br> Judge Steven C. Seeger |

**DEFENDANTS' SUBMISSION IN RESPONSE TO
<u>MINUTE ENTRY ECF NO. 584</u>**

Defendants Cal-Maine Foods, Inc., ("Cal-Maine"), Rose Acre Farms, Inc., (Rose Acre"), United Egg Producers, Inc. ("UEP"), and United States Egg Marketers, Inc. (USEM) by and through their attorneys, respectfully submit case citations and other authorities in response to the Court's minute entry at ECF No. 584.

The Court has correctly identified the dilemma facing Plaintiffs in the damages phase of this trial. As the Court observed:

> Taking a step back, the jury found that the four Defendants conspired to restrict the supply of eggs, and that non-parties Moark and Wabash Valley joined the conspiracy, too. See Jury Verdict Form (Dckt. No. [582]). But the jury did not find that any other egg producer joined the conspiracy. And in fact, the jury expressly rejected the notion that all participants in the UEP Certified Program were participants in the

alleged conspiracy (as revealed by the answer to Question #8 on the jury verdict form). Plaintiffs proved that the four Defendants (Cal-Maine and Rose Acre, plus UEP and USEM) and two non-parties (Moark and Wabash Valley) were members of the conspiracy, so Plaintiffs can recover damages for the purchases from those members of the conspiracy. But Plaintiffs cannot recover damages for purchases from any other egg producer, including Michael Foods and anyone else, because Plaintiffs did not prove that anyone else joined the conspiracy.

Nov. 27, 2023 Min. Entry (ECF No. 584).

The Court is entirely correct that "Plaintiffs' damages theory does seem to depend on the restriction in supply by non-conspirators." *Id*. The problem for Plaintiffs – which the Court also correctly identified – is that "Plaintiffs expect Dr. Baye to opine that the UEP Certified Program restricted the nationwide flock of hens, which reduced the supply of eggs, which increased the price of eggs, which meant that Plaintiffs paid too much for egg products." *Id*. It is also entirely correct that "Plaintiffs do not argue (and have no evidence) that Cal-Maine, Rose Acre, Moark, and Wabash Valley as a foursome raised nationwide prices by restricting the supply of hens by themselves." *Id*. As the Court also rightly noted, were that Plaintiffs' theory, it would be "on tenuous footing, given the relatively small market share of those four producers. (According to Defendants, Cal-Maine, Rose Acre, Moark, Wabash Valley, and Michael Foods had a 20% market share. So the market share is somewhere less than 20% without Michael Foods.)." *Id*.

The Court next queries whether Plaintiffs somehow can recover damages based on "the four producers conspir[ing] with UEP and USEM, and populariz[ing] the idea of implementing cage-space restrictions and a backfilling ban" which "had the effect of reducing supply, even if other egg producers were not in on the

2

conspiracy." *Id.* Put differently, the question the Court is posing is whether the Plaintiffs can recover damages resulting from an alleged reduction in supply due to conduct of egg producers who were expressly found by the jury to *not* be co-conspirators.

The answer to that question is **no**. To begin, the UEP Certified Program "does not involve an express agreement among competitors to restrain supply," and thus something more than the mere agreement to join the UEP Certified Program would be required to prove an agreement to reduce supply.[1] *In Re Processed Egg Prods Antitrust Litig.*, 206 F. Supp. 3d 1033, 1045 (E.D. Pa. 2016) (Pratter J.).[2] As has been established repeatedly at trial and without contradiction, the UEP Certified Program does not and never did limit the number of hens, cages, houses, or farms any producer can have or the number of eggs any producer can produce. Rust, Nov. 8, 2023 Trial Tr., 4368:20-4370:13 (explaining that Rose Acre expanded every year after joining the Certified Program by building new houses and farms); Walker, Nov. 13, 2023 Trial Tr., 5235:9-24 (testifying that nothing in the Certified Program limits the number of cages, houses, farms a producer can have or "the output of any particular producer").[3]

---

[1] This is a finding the jury impliedly made when they checked "no" to Verdict Form Question 8: Do you find that every egg producer who joined the UEP Certified Program through 2008 (whether or not a member of UEP) participated in the conspiracy to restrict the supply of eggs? Answer: No.

[2] This is the law of the case, and there is no basis to deviate from a ruling that has now been twice litigated and twice affirmed on appeal. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (the law of the case doctrine "applies as much to the decisions of a coordinate court in the same case as to a court's own decisions").

[3] To the extent Plaintiffs rely on *National Collegiate Athletic Association v. Board of Regents*, 468 U.S. 85 (1984), for the proposition that they can prove an alleged conspiracy that includes all members of the UEP Certified Program without proving that each member of the Program had a conscious commitment to a common unlawful scheme, they are wrong. In *NCAA*, the

Because the UEP Certified Program is not an express agreement between and among competitors to limit the supply of eggs, the almost-200 non-co-conspirator egg producers who joined the UEP Certified Program over time did not engage in any unlawful conduct whatsoever. *See, e.g., United States v. Falcone*, 311 U.S. 205, 210-211 (1940) ("Those having no knowledge of the conspiracy are not conspirators; and one who without more furnishes supplies to an illicit distiller is not guilty of conspiracy even though his sale may have furthered the object of the conspiracy to which the distiller was a party but of which the supplier had no knowledge."). And because the jury expressly found that not all members of the Certified Program were part of the conspiracy, Plaintiffs cannot recover damages for their conduct, which was not found unlawful. Recoverable damages may "reflect only the losses directly attributable to unlawful competition." *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1161 (7th Cir. 1983). Any other conclusion vitiates the distinction between lawful conduct, which cannot be the basis for damages, and unlawful conduct, which can.

As the Court instructed the jury: "A business has the right to determine on its own how much of its product to produce, provided that the decision results from the exercise of an independent business judgment and not from an agreement with a competitor." Jury Instructions, ECF No. 545, at Instr. 34. Moreover, this Court

---

Court found that the NCAA television plan expressly restrained price and reduced output, and that the plan was binding on and enforced against all member NCAA schools. *See NCAA*, 468 U.S. at 104-08. As discussed *supra*, the UEP Certified Program did not expressly restrain production. *In Re Processed Egg Prods Antitrust Litig.*, 206 F. Supp. 3d at 1045. It was also voluntary and open to producers who were not in UEP.

4

instructed the jury that: "If you find that a defendant or an alleged co-conspirator is a member of a conspiracy, it is presumed to remain a member and is responsible for all actions taken by all *co-conspirators* during and in furtherance of the conspiracy until it is shown that the conspiracy has been completed or abandoned." *Id*. at Instr. 32 (emphasis added). The jury was expressly asked whether "every egg producer who joined the UEP Certified Program through 2008 (whether or not a member of UEP) participated in the conspiracy to restrict the supply of eggs" and it answered, unequivocally, "no." Had the jury believed the "conspiracy" constituted the entire UEP Certified Program it certainly could have made that finding. But it did not. Rather, it found a far more limited conspiracy consisting of four egg producers, UEP and USEM. To repeat: It is axiomatic that the four egg producers, UEP and USEM cannot be held "liable" for the lawful conduct of third parties.

Moreover, and after reviewing Plaintiffs' submission, Defendants further observe that Plaintiffs continue to attempt to shift the discussion to causation and ignore the consequence of their damages theory relying, as it explicitly does, on expressly lawful conduct of non-conspirator egg producers. It is noteworthy that Plaintiffs provide no authority for the so-called "sneeze"/ "bullhorn" theory: moreover, after a searching inquiry, Defendants also have not been able to identify any legal support for such a theory in any caselaw, treatise or authority.

Defendants have cited a host of authority in their Rule 50 motions and commend those motions to the Court for its consideration in answer to the current

5

Court inquiry (and respectfully reiterate those motions are meritorious and should be granted after full consideration). Additional authority for the Court to consider:

1. *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264, 66 S. Ct. 574 (1946) (summarizing prior opinions as holding that, "in the absence of more precise proof, the jury could conclude as a matter of just and reasonable inference from the proof of *defendants' wrongful acts* and their tendency to injure plaintiffs' business, and from the evidence of the decline in prices, profits and values, *not shown to be attributable to other causes*, that defendants' wrongful acts had caused damage to the plaintiffs") (emphasis added).

2. *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1161-1164 (7th Cir. 1983) (To establish causation of damages, the plaintiff "must prove that his damages were caused by the *unlawful* acts of the defendant," further holding that antitrust damages cannot be predicated on lawful activity).

3. *Marion Diagnostic Ctr. v. Beckton Dickinson & Co.*, 29 F.4th 337, 347-48 (7th Cir. 2022) (holding that "it does not make sense" to hold a party liable for alleged injuries arising from a conspiracy of which the party is not a member).

4. *In re Dealer Mgmt. Sys. Antitrust Litig.*, --- F.Supp.3d ----, 2023 WL 4305901, at *34 (N. D. Ill. June 29, 2023) ("It is essential … that damages reflect only the losses directly attributable to unlawful competition … If a plaintiff has suffered financial loss from the lawful activities of a competitor, then no damages may be recovered under the antitrust laws.").

5. "The Seventh Circuit has held in cases alleging a violation of Section 1 of the Sherman Act, 'a 20%-25% market share or less does not constitute market power.'" *Hannah's Boutique, Inc. v. Surdej*, 112 F. Supp. 3d 758, 773 (N.D. Ill. 2015) (quoting *Valley Liquors, Inc. v. Renfield Imps., Ltd.*, 822 F.2d 656, 666 (7th Cir. 1987)). The marginal 15.5% market share of the egg producer defendants, Wabash Valley and Moark (Jan. 22, 2015 Baye Rpt., Ex. 7) does not constitute enough market power to cause sustained injury to competition. *Id.*

6. *Kleen Prods. LLC. v. Int'l Paper*, 306 F.R.D. 585, 609 (N. D. Ill. 2015), *aff'd* 813 F. 3d 919 (7th Cir. 2016) (it is membership in a conspiracy that gives rise to liability).

7. *In re Sulfuric Acid Litig.*, 743 F.Supp.2d 827, 863-64 (N. D. Ill. 2010) (granting summary judgment to an asset purchaser defendant; although it assumed an existing contract, maintained seller's personnel, and decided against restarting production at inoperable plants, that activity was not enough as a matter law to prove membership in a conspiracy that included seller to reduce output to stabilize prices).

8. *United States v. Nguyen*, 504 F.3d 561, 572 (5th Cir. 2007) ("one cannot be an unwitting conspirator").

Dated: November 28, 2023

Respectfully submitted,

*/s/ Patrick M. Collins*
Patrick M. Collins (pcollins@kslaw.com)
Livia M. Kiser (lkiser@kslaw.com)
Patrick M. Otlewski (potlewski@kslaw.com)
Abigail Hoverman Terry (aterry@kslaw.com)
KING & SPALDING LLP

7

110 North Wacker Drive, 38th Floor
Chicago, IL 60606
Tel: (312) 995-6333

Lohr Beck (lohr.beck@kslaw.com)
(pro hac vice)
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel: (404) 572-2812

Brian E. Robison (brian@brownfoxlaw.com)
(pro hac vice)
BROWN FOX PLLC
6303 Cowboys Way, Suite 450
Frisco, TX 75034
Tel: (972) 707-2809

***Counsel for Defendant Cal-Maine Foods, Inc.***

/s/ *Robin P. Sumner*
Robin P. Sumner
(robin.sumner@troutman.com)
Kaitlin L. Meola
(kaitlin.meola@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
3000 Two Logan Square, 18th and Arch Streets
Philadelphia, PA 19103-2799
Tel: (215) 981-4000

Whitney R. Redding
(whitney.redding@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
Union Trust Building
501 Grant Street, Suite 300
Pittsburgh, PA 15219-4429
Tel: (412) 454-5085

/s/ *Donald M. Barnes*
Donald M. Barnes
(dbarnes@porterwright.com)
Jay L. Levine
(jlevine@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
2020 K. Street, N.W., Suite 600
Washington, D.C. 20006-1110
Tel: (202) 778-3000

James A. King
(jking@porterwright.com)
Allen T. Carter
(acarter@porterwright.com)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
41 South High Street, Suite 2900
Columbus, OH 43215
Tel: (614) 227-2000

***Counsel for Defendant Rose Acre Farms, Inc.***

8

Molly DiRago
(Molly.DiRago@troutman.com)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
227 West Monroe Street, Suite 3900
Chicago, IL 60606
Tel: (312) 759-1923

*Counsel for Defendants United Egg Producers, Inc. & United States Egg Marketers, Inc.*