**UNITED STATES DISTRICT COURT**
**IN THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KRAFT FOODS GLOBAL, INC., THE KELLOGG COMPANY, GENERAL MILLS, INC., and NESTLÉ USA, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:11-cv-08808 |
| v. | ) ) | Judge Steven C. Seeger |
| UNITED EGG PRODUCERS, INC., UNITED STATES EGG MARKETERS, INC., CAL-MAINE FOODS, INC., MICHAEL FOODS INC., and ROSE ACRE FARMS, INC. | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE AMENDED MOTION OF DEFENDANTS UNITED EGG PRODUCERS, INC. AND UNITED STATES EGG MARKETERS FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(a)**

**Table of Contents**

TABLE OF AUTHORITIES ......................................................................................... ii

I.   INTRODUCTION ............................................................................................ 1

II.  LEGAL STANDARD........................................................................................ 2

III. PLAINTIFFS HAVE FAILED TO ADDUCE EVIDENCE FROM WHICH A
REASONABLE JURY COULD FIND THAT THE ALLEGED CONSPIRACY
UNREASONABLY RESTRAINED TRADE OR INJURED PLAINTIFFS ............................... 3

   A.  Plaintiffs Failed To Adduce Evidence that Any Short-Term Measure or Export Had Any
   Anticompetitive Effect or Caused Antitrust Injury.................................................. 5

      1.  Plaintiffs have not proved that any short-term measure or export had any cognizable
      anticompetitive effect........................................................................................ 7

      2.  Plaintiffs' expert's analysis on short-term measures and exports is unreliable. ............ 8

   B.  Plaintiffs Have Not Adduced Evidence of Market Power Necessary To Find
   Anticompetitive Effect or Injury................................................................... 10

   C.  Plaintiffs Failed to Adduce Evidence Sufficient To Find the UEP Certified Program Had
   Any Anticompetitive Effect or Injured Plaintiffs .................................................. 11

   D.  Plaintiffs Have Not Established a Hub and Spoke Conspiracy ........................................ 15

   E.  Plaintiffs Have Not Shown a Reduction in Eggs or an Increase in Egg Product Prices... 15

IV. PLAINTIFFS HAVE FAILED TO ADDUCE EVIDENCE FROM WHICH A
REASONABLE JURY COULD FIND DAMAGES RESULTING FROM THE CONSPIRACY
ALLEGED AND/OR FOUND ................................................................................. 15

V.   CONCLUSION................................................................................................ 16

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adaptive Power Sols., LLC v. Hughes Missile Sys. Co.*,
    141 F.3d 947 (9th Cir. 1998) ...........................................................................7

*Agnew v. Nat'l Collegiate Athletic Ass'n*,
    683 F.3d 328 (7th Cir. 2012) ...........................................................................4

*Am. Needle, Inc. v. NFL*,
    560 U.S. 183 (2010)...........................................................................................4

*Atl. Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328 (1990)...........................................................................................4

*Audio Car Stereo, Inc. v. Little Guys, Inc.*,
    No. 04-3562, 2004 WL 3019298 (N.D. Ill. Dec. 28, 2004)............................4, 7

*Colo. Interstate Gas Co. v. Nat. Gas Pipeline Co.*,
    885 F.2d 683 (10th Cir. 1989) .........................................................................7

*Cygnar v. City of Chicago*,
    865 F.2d 827 (7th Cir. 1989) ...........................................................................2

*Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*,
    980 F.3d 1117 (7th Cir. 2020) .........................................................................3

*Fish v. Greatbanc Tr. Co.*,
    No. 09 C 1668, 2016 WL 5923448 (N.D. Ill. Sept. 1, 2016)............................9

*Flis v. Kia Motors Corp.*,
    No. 1:03-CV-1567-JDT-TAB, 2005 WL 8165913 (S.D. Ind. May 31, 2005) ...................9

*F.T.C. v. Indiana Fed'n of Dentists*,
    476 U.S. 447, 106 S.Ct. 2009, 90 L.Ed.2d 445 (1986)...................................4, 7

*Garrett v. Barnes*,
    961 F.2d 629 (7th Cir. 1992) ...........................................................................3

*Gordon v. Illinois Bell Tel. Co.*,
    330 F.2d 103 (7th Cir. 1964) ...........................................................................3

*Greater Rockford Energy and Tech. Corp. v. Shell Oil Co.*,
   998 F.2d 391 (7th Cir. 1993) ...................................................................5

*Hannah's Boutique, Inc. v. Surdej*,
   No. 13-CV-2564, 2015 WL 3856551 (N.D. Ill. June 19, 2015)........................10

*In re Brand Name Prescription Drugs Antitrust Litig.*,
   No. 94-C-897, 1999 U.S. Dist. LEXIS 550 (N.D. Ill. Jan. 19, 1999)..................3

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
   No. 18-C-864, 2023 WL 4305901 (N.D. Ill. June 29, 2023)............................4

*In re Paoli R.R. Yard PCB Litig.*,
   35 F.3d 717 (3d Cir. 1994)......................................................................9

*In Re Processed Egg Prods Antitrust Litig.*,
   206 F. Supp. 3d 1033 (E.D. Pa. 2016) ......................................................14

*JetAway Aviation, Ltd. Liab. Co. v. Bd. of Cty. Comm'rs*,
   754 F.3d 824 (10th Cir. 2014) .................................................................7

*Kochert v. Greater Lafayette Health Servs., Inc.*,
   372 F. Supp. 2d 509 (N.D. Ind. 2004), *aff'd*, 463 F.3d 710 (7th Cir. 2006)...................4, 9

*Lee Klinger Volkswagen, Inc. v. Chrysler Corp.*,
   583 F.2d 910 (7th Cir. 1978) ...................................................................4

*Marion Healthcare, LLC v. S. Ill. Healthcare*,
   No. 12-CV-871, 2020 U.S. Dist. LEXIS 55724 (S.D. Ill. Mar. 31, 2020) .........................4

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
   465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984)....................................12

*National Collegiate Athletic Association v. Board of Regents*,
   468 U.S. 85 (1984).........................................................................13, 14

*Northwestern Oil Co. v. Socony-Vacuum Oil Co.*,
   138 F.2d 967 (7th Cir. 1943) ...................................................................3

*Ohio v. Am. Express Co.*,
   585 U.S. ---, 138 S.Ct. 2274, 201 L.Ed.2d 678 (2018)....................................4

*Omnicare, Inc. v. UnitedHealth Grp., Inc.*,
   629 F.3d 697 (7th Cir. 2011) ..................................................................12

iii

*Phil Tolkan Datsun, Inc. v. Greater Milwaukee Datsun Dealers' Advert. Ass'n, Inc.*,
    672 F.2d 1280 (7th Cir. 1982) ........................................................................7

*Porter v. Whitehall Labs., Inc.*,
    791 F. Supp. 1335 (S.D. Ind. 1992), *aff'd*, 9 F.3d 607 (7th Cir. 1993) ............................9

*Procaps S.A. v. Patheon Inc.*,
    141 F. Supp. 3d 1246 (S.D. Fla. 2015), *aff'd*, 845 F.3d 1072 (11th Cir. 2016)..................7

*Republic Tobacco Co. v. N. Atl. Trading Co., Inc.*,
    381 F.3d 717 (7th Cir. 2004) ......................................................................10

*Richardson v. Indianapolis*,
    658 F.2d 494 (7th Cir. 1981) .........................................................................3

*Robinson v. Perales*,
    894 F.3d 818 (7th Cir. 2018) .........................................................................2

*Valley Liquors, Inc. v. Renfield Importers, Ltd.*,
    822 F.2d 656 (7th Cir. 1987) ......................................................................10

*W. Wholesale Supply v. Holladay*,
    No. 97-0297, 2000 U.S. Dist. LEXIS 22012 (D. Idaho Feb. 29, 2000)............................7

## **CODES, RULES, OTHER**

Fed. R. Civ. P. 50(a) ..............................................................................1

Fed. R. Civ. P. 50(a)(1) ...........................................................................2

Fed. R. Civ. P. 50(a)(2) ...........................................................................2

Fed. R. Civ. P. 50(b) ..............................................................................1

9 Moore's Federal Practice – Civil § 50.64[1] (2023) ...................................................3

I.     **INTRODUCTION**

Plaintiffs Kraft Food Global, Inc., The Kellogg Company, General Mills, Inc., and Nestlé USA, Inc. ("Plaintiffs") brought an antitrust claim under Section 1 of the Sherman Act alleging that Defendant United Egg Producers, Inc. ("UEP") conspired with Defendant United States Egg Marketers, Inc. ("USEM") and five egg producers to reduce the supply of eggs for the purpose of raising domestic egg prices through four mechanisms: (1) short-term measures recommended by UEP to reduce the nation's flock size, (2) coordinated exports through USEM, (3) cage density requirements adopted as part of the UEP Certified Program, and (4) a ban on backfilling, also required by the UEP Certified Program.

On August 11, 2023, the Court granted Defendants' motion to bifurcate the trial into a liability phase and a damages phase. The liability phase of the case was tried before a jury from October 19, 2023, to November 17, 2023. On November 15, 2023, UEP and USEM timely moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). *See* ECF Nos. 522, 523. The Court did not rule on UEP's and USEM's motion. On Tuesday, November 21, 2023, the jury entered a verdict in favor of Plaintiffs and against Defendants on liability. Notably, the jury found a conspiracy consisting of 6 members: UEP, USEM, Rose Acre Farms, Cal-Maine Foods, Wabash Valley, and Moark. The jury also found that neither Michael Foods nor any other egg producer who joined the UEP Certified Program through 2008 participated in the alleged conspiracy. *See* Jury Verdict Nos. 4 and 8.

UEP and USEM now renew and amend their Motion for Judgment as a Matter of Law pursuant to Rule 50(a)[1] because, after 20 days of testimony, the evidence presented by Plaintiffs

---

[1] At this time, because the damages phase of trial has not yet been submitted to the jury, UEP and USEM bring this motion pursuant to Rule 50(a). In the alternative, and to the extent the Court deems it appropriate, UEP and USEM bring this motion pursuant to Rule 50(b) and/or expressly reserve the right to do so following the jury's verdict on the damages phase.

fails to establish that the alleged conspiracy that the jury found to exist produced any anticompetitive effect or caused any antitrust injury. For that reason, and for the reasons set forth in (1) the Memorandum in Support of Defendant Rose Acre Farms' Motion for Judgment as a Matter of Law and Amended/Renewed Motion for Judgment as a Matter of Law; and (2) Defendant Cal-Maine Foods, Inc.'s Memorandum in Support of Motion for Judgment as a Matter of Law and Amended/Renewed Motion for Judgment as a Matter of Law, which are incorporated by reference as if fully set forth herein, UEP and USEM should be granted judgment as a matter of law.[2]

## II.     LEGAL STANDARD

"If a party has been fully heard on an issue . . . and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may . . . grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1). "A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). The standard for granting judgment under Rule 50 mirrors the standard for summary judgment. *Robinson v. Perales*, 894 F.3d 818, 833 (7th Cir. 2018). That is, the court must determine "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in a light most favorable to the party to whom the motion is directed." *Cygnar v. City of Chicago*, 865 F.2d 827, 834 (7th Cir. 1989) (internal quotations omitted). A reasonable

---

[2] Sections III and IV below restate and incorporate by reference arguments made by Defendants Rose Acre Farms and Cal-Maine, Inc. in their memoranda in support of their motions (including amended/and or renewed motions) for judgment as a matter of law. For the avoidance of doubt, any argument not expressly restated here is nevertheless fully incorporated by reference.

inference is one that may only be drawn from the evidence "without resort to speculation." 9 Moore's Federal Practice – Civil § 50.64[1] (2023) (internal citations omitted). The nonmoving party is "not entitled to the benefit of unreasonable inferences or to inferences conflicting with uncontested facts." *Id.* Rather, the court must "determine whether the party with the burden of proof has produced sufficient evidence upon which a jury could properly proceed to a verdict, and . . . a mere scintilla of evidence will not suffice." *Garrett v. Barnes*, 961 F.2d 629, 632 (7th Cir. 1992) (quoting *Richardson v. Indianapolis*, 658 F.2d 494, 498 (7th Cir. 1981)); *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 980 F.3d 1117, 1133 (7th Cir. 2020).

District courts do not hesitate to grant, and the Seventh Circuit does not hesitate to affirm, judgments as a matter of law when the evidence is insufficient to support a claim, including in Sherman Act Section 1 conspiracy claims. *See, e.g.*, *Gordon v. Illinois Bell Tel. Co.*, 330 F.2d 103, 106 (7th Cir. 1964) (affirming directed verdict for defendants on Sherman Act § 1 and § 2 claims where plaintiffs failed to establish evidence of conspiracy or intent to restrain interstate commerce); *Northwestern Oil Co. v. Socony-Vacuum Oil Co.*, 138 F.2d 967, 969, 971 (7th Cir. 1943) (affirming directed verdict for defendant where plaintiff failed to provide sufficient evidence of injury resulting from the allegedly anticompetitive conduct); *see also In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94-C-897, 1999 U.S. Dist. LEXIS 550, at *43 (N.D. Ill. Jan. 19, 1999) (entering judgment in favor of all wholesaler defendants where plaintiffs failed to demonstrate the alleged conspiracy under Sherman Act § 1).

## III. PLAINTIFFS HAVE FAILED TO ADDUCE EVIDENCE FROM WHICH A REASONABLE JURY COULD FIND THAT THE ALLEGED CONSPIRACY UNREASONABLY RESTRAINED TRADE OR INJURED PLAINTIFFS

To prove that UEP and USEM violated Section 1 of the Sherman Act, Plaintiffs must establish that (1) UEP and USEM conspired to unreasonably restrain trade, (2) the conspiracy in

which UEP and USEM participated unreasonably restrained trade, and (3) Plaintiffs suffered an injury resulting directly from the unreasonable trade restraint's adverse impact on competition. *See, e.g.*, *Am. Needle, Inc. v. NFL*, 560 U.S. 183, 186 (2010); *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 335 (7th Cir. 2012). An agreement unreasonably restrains trade when it has a "substantial anticompetitive effect that harms consumers in the relevant market." *Ohio v. Am. Express Co.*, 585 U.S. ---, 138 S.Ct. 2274, 2284, 201 L.Ed.2d 678 (2018); *Lee Klinger Volkswagen, Inc. v. Chrysler Corp.*, 583 F.2d 910, 915 n.6 (7th Cir. 1978) ("There must be evidence sufficient to show that 'the effect upon competition in the marketplace is substantially adverse.'" (citations omitted)). To prove an unreasonable trade restraint, Plaintiffs must show "actual, sustained adverse effects on competition." *Audio Car Stereo, Inc. v. Little Guys, Inc.*, No. 04-3562, 2004 WL 3019298, at *6 (N.D. Ill. Dec. 28, 2004) (citing *F.T.C. v. Indiana Fed'n of Dentists*, 476 U.S. 447, 460–61, 106 S.Ct. 2009, 2019, 90 L.Ed.2d 445 (1986)).

A plaintiff suffers antitrust injury when it sustains an injury that results directly from the anticompetitive nature of the challenged conduct. *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990); *Marion Healthcare, LLC v. S. Ill. Healthcare*, No. 12-CV-871, 2020 U.S. Dist. LEXIS 55724, at *23 (S.D. Ill. Mar. 31, 2020) (citations omitted); *see also Kochert v. Greater Lafayette Health Servs., Inc.*, 372 F. Supp. 2d 509, 515 (N.D. Ind. 2004) ("To show antitrust injury . . . [plaintiff] must prove that the [alleged antitrust violation] affected the price, quantity or quality of [] services, not just her own welfare."), *aff'd*, 463 F.3d 710 (7th Cir. 2006). Plaintiffs bear the burden of establishing injury to a fair degree of certainty. *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18-C-864, 2023 WL 4305901, at *62 (N.D. Ill. June 29, 2023) ("[P]laintiff must establish, with a fair degree of certainty, that the violation was a material element of, and

4

substantial factor in producing, the injury." (quoting *Greater Rockford Energy and Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 401 (7th Cir. 1993)).

Importantly, Plaintiffs must connect the alleged anticompetitive conduct to specific anticompetitive effect and injury. Plaintiffs allege an overarching conspiracy among seven entities—the four Defendants and three other egg producers[3]—to restrict egg supply in order to increase the price of eggs and egg products. Plaintiffs claim Defendants agreed to reduce egg supply by implementing short-term measures recommended by UEP to reduce the nation's flock size (*e.g.*, early molts and slaughters), coordinating exports through USEM, and agreeing to adhere to the UEP Certified Program's cage density requirements and backfilling prohibition. Plaintiffs claim those measures restricted the supply of eggs and caused Plaintiffs to pay higher prices for egg products. Because Plaintiffs have failed to adduce evidence from which a reasonable juror could conclude that the alleged agreement among Defendants and the three alleged co-conspirators in fact restricted supply and/or caused Plaintiffs to pay more for egg products, this Court should grant judgment as a matter of law in favor of UEP and USEM.

### A. Plaintiffs Failed To Adduce Evidence that Any Short-Term Measure or Export Had Any Anticompetitive Effect or Caused Antitrust Injury

Plaintiffs have failed to put forth any evidence from which a reasonable juror could find that any short-term measure or export adversely affected competition or resulted in antitrust injury. Plaintiffs' sole evidence on these points is the testimony of their economic expert Dr. Michael Baye. While Dr. Baye opined that the overarching conspiracy restricted the nations' flock size and egg supply, inflated egg prices, and caused Plaintiffs to pay more for egg products (Baye, Oct.

---

[3] The jury has found that the alleged conspiracy consists of six, not seven, entities. *See* Jury Verdict No. 4.

30, 2023, 2532:10-17), he conceded that short-term measures and exports were sporadic and, as an economic matter, could not sustain high prices. Baye, Oct. 30, 2023, 2567:6-11 (testifying that "short-term flock reduction measures" were "unsuccessful" because "you can't sustain higher prices by killing birds"); 2590:15-20 (testifying that he was unable to estimate effects from the exports because "[t]hey were short-lived"); 2593:3-4 ("it's hard to know exactly how long-lived these price increases are"); Baye, Oct. 30, 2023, 2593:4-7 ("I cannot say with a degree of scientific certainty how much the plaintiffs overpaid as a result of these price increases . . . ."); Baye, Oct. 31, 2023, 2689:3-7 (testifying that the short-term measures were temporary and imperfect and unlikely to be sustainable); 2691:10-12 (short-term measures would not have sustained a measurable impact); Baye, Nov. 1, 2023, 2999:16-19 ("I don't think it's a sustainable way to raise prices"); Baye, Nov. 1, 2023, 3000:8-10 (testifying that he conducted no analysis to determine how long any effect would last).

Moreover, when asked about short-term measures, Dr. Baye conceded that he cannot tell with any degree of scientific certainty whether any short-term measure had any impact—positive or negative—on egg supply. Baye, Oct. 31, 2023, 2811:13-18 (explaining that he could not tell "either positive or negative" whether a molt had any impact "with a degree of scientific certainty"); 2815:9-14 (explaining that he could not tell "positive or negative" whether a recommended slaughter had any impact on the production of egg-laying hens). By contrast, Dr. Walker testified that the short-term measures did not result in a supply reduction or higher prices. Walker, Nov. 14, 2023, 5545:13-22. Dr. Baye cannot refute this testimony with any degree of scientific certainty.

6

### 1. Plaintiffs have not proved that any short-term measure or export had any cognizable anticompetitive effect.

Without actual, sustained adverse effects on competition, there is no substantial anticompetitive effect necessary to impose Section 1 liability. *See Indiana Fed'n of Dentists*, 476 U.S. at 460-61 (1986); *Audio Car Stereo, Inc.*, 2004 WL 3019298, at *6 (requiring, in part, "'actual, sustained adverse effects on competition' in a geographic area where Defendants had market power" in order to survive motion to dismiss). Short-lived and temporary impacts are insufficient to prove substantial anticompetitive effects. *Procaps S.A. v. Patheon Inc.*, 141 F. Supp. 3d 1246, 1281 (S.D. Fla. 2015) (holding that a restraint on trade that lasted seven months was "far too short as a matter of law to create the required substantial marketwide harm of actual detrimental effects"), *aff'd*, 845 F.3d 1072 (11th Cir. 2016); *Phil Tolkan Datsun, Inc. v. Greater Milwaukee Datsun Dealers' Advert. Ass'n, Inc.*, 672 F.2d 1280, 1289 (7th Cir. 1982) (holding that plaintiff's "fail[ure] to identify any clear or significant anticompetitive effects" from a "temporary denial" of membership in an industry association was insufficient to establish antitrust liability); *Adaptive Power Sols., LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 952 (9th Cir. 1998) (holding that a "four- to ten-month" effect on competition "is not significant enough to be classified as an injury to competition under the Sherman Act"); *W. Wholesale Supply v. Holladay*, No. 97-0297, 2000 U.S. Dist. LEXIS 22012, at *43 (D. Idaho Feb. 29, 2000) (following *Adaptive Power* and finding that an alleged group boycott would not support a claim under Sherman Act § 1 where it forced the plaintiff out of the relevant market "for just a few months"); *JetAway Aviation, Ltd. Liab. Co. v. Bd. of Cty. Comm'rs*, 754 F.3d 824, 841 (10th Cir. 2014) ("In divining the presence of an antitrust injury, courts have disregarded temporary anticompetitive effects."); *Colo. Interstate Gas Co. v. Nat. Gas Pipeline Co.*, 885 F.2d 683, 697 (10th Cir. 1989) (reversing jury

7

verdict for plaintiff where the alleged anticompetitive behavior "only threaten[ed] to have a transitory impact on the marketplace."). As such, Dr. Baye's concessions that the short-term measures and exports would not have had any "sustained measurable impact" on price or supply requires a finding in UEP's and USEM's favor that Plaintiffs failed to present evidence from which a reasonable juror could find that short-term measures or exports unreasonably restrained trade. Baye, Oct. 31, 2023, 2691:5-2692:5.

### 2. Plaintiffs' expert's analysis on short-term measures and exports is unreliable.

In addition to conceding that neither the short-term measures nor exports had any effect on competition, Dr. Baye explained that he could not form an opinion with any degree of scientific certainty regarding the impact of short-term measures and/or exports because the only evidence he considered was statements made by Gene Gregory in United Voices. Baye, Oct. 31, 2023, 2814:12-15; 2816:19-20 ("My opinions are based from the communications from United Voices to UEP members."); Baye, Nov. 1, 2023, 2948:1-5 (same). Dr. Baye admitted that he did not analyze and did not know whether any short-term measure was ever done, let alone effective. Baye, Nov. 1, 2023, 2918:18-24; 2919:22-2920:2. Dr. Baye also admitted that while he relied on Mr. Gregory's statements, he did not know the basis for Mr. Gregory's statements and did not know whether Mr. Gregory controlled for other variables before making statements about the impact of short-term measures. Baye, Nov. 1, 2023, 2948:1-2949:11. Further, Dr. Baye conceded that he did not conduct any analysis to test Mr. Gregory's statements. Baye, Nov. 1, 2023, 2949:1-5.

Thus, to the extent Dr. Baye offers any opinion about the impact of short-term measures or exports at all, that opinion is unreliable, unsupported, untested, and has no weight as a matter of

law. Where an expert's "underlying data are so lacking in probative force and reliability that no reasonable expert could base an opinion on them, an opinion which rests entirely upon them must be excluded." *Fish v. Greatbanc Tr. Co.*, No. 09 C 1668, 2016 WL 5923448, at *66 (N.D. Ill. Sept. 1, 2016) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 748 (3d Cir. 1994)); *Porter v. Whitehall Labs., Inc.*, 791 F. Supp. 1335, 1346 (S.D. Ind. 1992) (excluding expert opinion that relied on "unsupported, hypothetical, inferential reasoning process to support an opinion on the fact of causation"), *aff'd*, 9 F.3d 607 (7th Cir. 1993) (affirming exclusion of expert opinion where the expert admitted that he could not show causation "to a reasonable degree of scientific certainty"); *Flis v. Kia Motors Corp.*, No. 1:03-CV-1567-JDT-TAB, 2005 WL 8165913, at *2 (S.D. Ind. May 31, 2005) ("experts may base their opinions on data that would otherwise be inadmissible so long as the data is 'of a type reasonably relied upon by experts in the particular field'" and expressing doubt about the reasonableness of an expert's reliance on certain factual material produced in discovery). This includes expert opinion that relies on anecdotes. *See Kochert*, 463 F.3d at 719 (expressing "serious doubts" as to expert opinion on anticompetitive effects that "rely almost exclusively on anecdotes").

The "data" underlying Dr. Baye's analysis as to short-term measures and exports—*i.e.,* the United Voices and statements made by Mr. Gregory elsewhere—is unreliable and inconsistent. United Voices are publications comprised of statements by Mr. Gregory "toot[ing] his own horn" and "tak[ing] credit" for favorable things that happened in the egg industry and "blam[ing] . . . producers" for unfavorable things. Hinton, Nov. 7, 2023, 4089:5-15. Producers did not consider Mr. Gregory's statements in United Voices to be consistent and did not rely on them. Hinton, Nov. 7, 2023, 4089:1-3 (Hinton testifying that he did not rely on Mr. Gregory's statements as to egg prices); 4089:16-20 (Hinton testifying that he did not consider Mr. Gregory's statements "to

9

be a model of consistency"). As such, for these reasons, and the reasons set forth in Defendants' Motion to Exclude Opinions and Statements of Non-Expert Gene Gregory (ECF No. 579), incorporated in full by reference, no reasonable expert could rely on Mr. Gregory's statements in United Voices, and Dr. Baye's opinions regarding the impact of short-term measures are insufficient to establish that either short-term measures or exports had any anticompetitive impact.

### B. Plaintiffs Have Not Adduced Evidence of Market Power Necessary To Find Anticompetitive Effect or Injury

In the Seventh Circuit, a finding of significant market power is a prerequisite to proving anticompetitive effect, and a 20.4 percent market share is insufficient as a matter of law.[4] *See Republic Tobacco Co. v. N. Atl. Trading Co., Inc.*, 381 F.3d 717, 736-37 (7th Cir. 2004) ("[I]f a plaintiff can show the rough contours of a relevant market, *and* show that the defendant commands a substantial share of the market, *then* direct evidence of anticompetitive effects can establish the defendant's market power—in lieu of the usual showing of a precisely defined relevant market and a monopoly market share . . . ." (emphasis added)); *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 666 (7th Cir. 1987) (establishing as a matter of law a 20%-25% market share as the benchmark for sufficient market power to restrain trade in violation of the Sherman Act); *Hannah's Boutique, Inc. v. Surdej*, No. 13-CV-2564, 2015 WL 3856551, at *5 (N.D. Ill. June 19, 2015) (citing 20%-25% threshold, finding 18% would be too small to possess market power). Here, Dr. Baye testified that the combined market share of the five alleged conspirators—that is, Rose Acre, Cal-Maine, Wabash Valley, Moark, and Michael Foods—was 20.4 percent. Baye, Oct. 31, 2023, 2744:25-2745:3. Now that the jury has found that Michael Foods did not participate in the alleged conspiracy, the combined market share is reduced to 15.5 percent. Exhibit 7 to Expert

---

[4] Without Michael Foods, the combined market share of the co-conspirators falls to 15.5 percent.

Report of Michael R. Baye (ECF No. 593) (showing that Michael Foods made up 4.9 percent of the total US market share). As such, the alleged conspirators lack the market power necessary to produce any anticompetitive effect as a matter of law.

### C. Plaintiffs Failed to Adduce Evidence Sufficient To Find the UEP Certified Program Had Any Anticompetitive Effect or Injured Plaintiffs

Plaintiffs have failed to put forth any evidence from which a reasonable juror could find that an agreement among Defendants and the three identified co-conspirators to restrict egg supply through the UEP Certified Program unreasonably restrained trade or caused these Plaintiffs to sustain antitrust injury. Notably, the jury has returned a verdict finding the existence of a six-member conspiracy consisting of UEP, USEM, Rose Acre, Cal-Maine, Wabash Valley, and Moark. The jury found that Michael Foods and the remaining 172 egg producers that joined the UEP Certified Program *did not* participate in the alleged conspiracy.

Plaintiffs' allegations and the jury's findings notwithstanding, Dr. Baye did not offer any opinion as to the impact of the conspiracy alleged and proved. Dr. Baye has no opinion as to the anticompetitive impact of the five (or four) egg producers' participation in the UEP Certified Program. Baye, Oct. 31, 2023, 2747:11-14; 2748:2. In fact, Dr. Baye denied any understanding of the number or identities of the alleged conspirators. Baye, Oct. 30, 2023, 2618:14-18 (testifying that he did not know who the alleged co-conspirators are). Instead, Dr. Baye's model tested and quantified the effects of the ***UEP Certified Program as a whole***, including the presumptively lawful conduct of 172 egg producers who are not alleged and who the jury found not to be conspirators but nevertheless chose to become UEP Certified. Baye, Oct. 31, 2023, 2746:19-21; 2830:23-24. In other words, Dr. Baye's only opinion with respect to the UEP Certified Program

is that the participation of ***all 177 egg producers*** reduced the nation's flock size and egg supply, which caused an increase in egg prices.

Yet, Plaintiffs adduced no evidence sufficient to support finding a 177-member conspiracy. Plaintiffs did not elicit any evidence that all 177 egg producers shared a conscious commitment to a common scheme to restrict the supply of eggs. *See, e.g.*, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 706 (7th Cir. 2011) (quoting *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984) (noting plaintiffs must prove that "the alleged conspirators 'had a conscious commitment to a common scheme designed to achieve an unlawful objective.'")). Dr. Baye testified that the UEP Certified Program includes at least 30 egg producers who are not even members of UEP, and Plaintiffs offered no evidence as to the circumstances under which or the reason why those producers joined the UEP Certified Program. Baye, Oct. 31, 2023, 2753:15-18; 2753:25-2754:2. Plaintiffs did not even identify them, and there is no evidence from which a reasonable juror could find any one of those 30 or more egg producers joined the UEP Certified Program with the intent and purpose of reducing egg supply to increase egg price. Contrary to any suggestion that all 177 UEP Certified producers joined the UEP Certified Program to restrict egg supply, the record is replete with evidence that customers and their trade associations required compliance with the UEP Certified Program as a condition of purchasing producers' eggs and egg products. *See, e.g.*, Manion, Oct. 30, 2023, 2444:7-18 (agreeing that Kraft's policy required its "facilities and suppliers to meet the specific animal welfare guidelines developed by industry trade associations," including the UEP guidelines for egg laying hens); D-142 at No. 4. (Kraft, Kellogg, and Nestlé admitting that they requested that their suppliers provide UEP Certified eggs or egg products); Baker, Oct. 25, 2023, 1854:19-21 (Walmart required suppliers to be certified in 2002); Baker, Oct. 24, 2023, 1719:1-25 (explaining

12

that Walmart, Kroger, Safeway, Albertsons, HEB, Publix, Food Lion, and Winn-Dixie all required Certified eggs at some point between 1998 to 2008); Baker, Oct. 25, 2023, 1826:20-1828:11; D-211 (explaining that if Cal-Maine did not join the UEP Certified Program at some point in 2003, it would not have been able to sell to Winn Dixie).

The jury agreed, returning a verdict not finding that "every egg producer who joined the UEP Certified Program through 2008" participated in the alleged conspiracy to restrict the supply of eggs. Specifically, the jury answered "NO" to the following question on the verdict form:

> **8.    Do you find that every egg producer who joined the UEP Certified Program through 2008 (whether or not a member of UEP) participated in the conspiracy to restrict the supply of eggs?**

Jury Verdict No. 8; Nov. 21, 2023, 6668:18-22. The jury also found that Michael Foods did not participate in the alleged conspiracy. Jury Verdict No. 4; Nov. 21, 2023, 6666:17-21. The jury made this finding after hearing evidence that Michael Foods joined the UEP Certified Program for legitimate, non-conspiratorial reasons. D-832; Pickett, Nov. 7, 2023, 4224:24-4227:3 (explaining that Walmart would buy less from Michael Foods if they did not become UEP Certified).

To the extent Plaintiffs rely on *National Collegiate Athletic Association v. Board of Regents*, 468 U.S. 85 (1984) for the proposition that they can hold the alleged conspirators liable for the participation of all producers in the UEP Certified Program without proving that each member of the Program had a conscious commitment to a common *unlawful* scheme, they are wrong. In *NCAA*, the Court found that the NCAA television plan expressly restrained price and reduced output, which the NCAA controlled, and that the plan was binding on and enforced against all member NCAA schools. *See NCAA*, 468 U.S. at 104-08. Unlike the NCAA television plan, "the UEP Certified Program does not involve an express agreement among competitors to restrain

13

supply," and thus something more than the mere agreement to join the UEP Certified Program is required to prove an agreement to reduce supply. *In Re Processed Egg Prods Antitrust Litig.*, 206 F. Supp. 3d 1033, 1045 (E.D. Pa. 2016) (Pratter J.). As has been established repeatedly at trial and without contradiction, the UEP Certified Program does not limit the number of hens, cages, houses, or farms any producer can have or the number of eggs any producer can produce. Rust, Nov. 8, 2023, 4368:20-4370:13 (explaining that Rose Acre expanded every year after joining the UEP Certified Program by building new houses and farms); Walker, Nov. 13, 2023, 5235:9-24 (testifying that nothing in the UEP Certified Program limits the number of cages, houses, farms a producer can have or "the output of any particular producer").

Similarly, UEP membership is not enough to find that any producer in fact agreed to restrict supply through the UEP Certified Program because, unlike the NCAA television plan to which all NCAA members agreed, the UEP Certified Program is entirely voluntary. UEP members did not have to join the UEP Certified Program, and many did not. At the same time, at least 30 non-UEP members did. Baye, Oct. 31, 2023, 2753:15-21; 2753:25-2754:2; D-1239, D-1250, D-1241, D-1240, D-1242, D-515 (identifying non-member Certified companies from 2002 through 2008). Moreover, the trial record is replete with independent, economically rational reasons a producer could choose to join the UEP Certified Program, including to meet customer demand and a commitment to improved animal welfare. As such, Dr. Baye's opinion as to the impact of the UEP Certified Program is wholly insufficient to prove impact from the conspiracy Plaintiffs alleged and the jury found.

In short, Plaintiffs have failed to adduce evidence from which a reasonable juror could find that (1) any short-term measure or export had any anticompetitive effect or caused antitrust injury; (2) that the conspiracy alleged and found had the market power needed to produce any

14

anticompetitive effect or antitrust injury; and/or (3) that participation in the UEP Certified Program of the five egg producers who are alleged to have joined the conspiracy—or the four egg producers the jury found to have participated in the conspiracy—had any anticompetitive effect or caused antitrust injury. As such, Plaintiffs lack any evidence from which a reasonable juror could conclude that the alleged anticompetitive effect and injury modeled by Dr. Baye resulted from an illegal agreement as opposed to presumptively legal independent decision making. Thus, judgment as a matter of law should be granted in UEP's and USEM's favor.

### D. Plaintiffs Have Not Established a Hub and Spoke Conspiracy

As set forth more fully in the Memorandum in Support of Defendant Rose Acre Farms' Motion for Judgment as a Matter of Law and Defendant Cal-Maine Foods, Inc.'s Memorandum in Support of Motion for Judgment as a Matter of Law and incorporated by reference herein, Plaintiffs have failed to present evidence of a "hub and spoke" conspiracy.

### E. Plaintiffs Have Not Shown a Reduction in Eggs or an Increase in Egg Product Prices

As set forth more fully in the Memorandum in Support of Defendant Rose Acre Farms' Motion for Judgment as a Matter of Law and Defendant Cal-Maine Foods, Inc.'s Memorandum in Support of Motion for Judgment as a Matter of Law, and incorporated by reference herein, Plaintiffs have failed to present evidence establishing that there was a reduction in eggs during the relevant time period.

## IV. PLAINTIFFS HAVE FAILED TO ADDUCE EVIDENCE FROM WHICH A REASONABLE JURY COULD FIND DAMAGES RESULTING FROM THE CONSPIRACY ALLEGED AND/OR FOUND

In addition to failing to introduce any evidence from which a reasonable jury could find liability, Plaintiffs also have failed to put forth any evidence from which a jury could find damages

15

resulting from the conspiracy alleged and/or found. In support of this argument, UEP and USEM incorporate in full Defendants' Memorandum in Support of Defendants Rose Acre Farms, Inc., Cal-Maine Food, Inc., United Egg Producers, Inc., and United States Egg Marketers, Inc.'s Motion to Exclude or Limit Testimony of Plaintiffs' Witness Dr. Michael Baye on Damages (ECF No. 566) and Defendants' Submission in Response to Minute Entry ECF No. 584 (ECF No. 599). UEP and USEM also incorporate in full Defendants' in-court arguments related to Defendants' Motion to Exclude or Limit Testimony of Plaintiffs' Witness Dr. Michael Baye. Nov. 28, 2023, 6835-6870.

## V.     **CONCLUSION**

For the reasons set forth above, Defendants UEP and USEM respectfully request that the Court enter judgment in UEP's and USEM's favor as a matter of law with respect to Plaintiffs' claim under Section 1 of the Sherman Act.

Dated: November 29, 2023                    Respectfully submitted:

*/s/ Robin P. Sumner*
Robin P. Sumner (robin.sumner@troutman.com)
Kaitlin L. Meola (kaitlin.meola@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
3000 Two Logan Square, 18th and Arch Streets
Philadelphia, PA 19103-2799
Tel: (215) 981-4000

Whitney R. Redding
(whitney.redding@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS LLP
Union Trust Building
501 Grant Street, Suite 300
Pittsburgh, PA 15219-4429
Tel: (412) 454-5085

Molly DiRago
(Molly.DiRago@troutman.com)
TROUTMAN PEPPER HAMILTON SANDERS
LLP
227 West Monroe Street, Suite 3900
Chicago, IL 60606
Tel: (312) 759-1926

**_Counsel for Defendants United Egg Producers, Inc. & United States Egg Marketers, Inc._**