UNITED STATES DISTRICT COURT
FOR THE Northern District of Illinois – CM/ECF NextGen 1.7.1.1
Eastern Division

Kraft Foods Global, Inc., et al.
                                      Plaintiff,

v.                                                                        Case No.: 1:11−cv−08808
                                                                                    Honorable Steven C. Seeger

United Egg Producers, Inc., et al.
                                      Defendant.

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Tuesday, November 28, 2023:

       MINUTE entry before the Honorable Steven C. Seeger: For the reasons stated on the record during the pretrial conference on November 28, 2023, Defendants' motion to exclude testimony of Nathan Blalock and David Tantlinger (Dckt. No. [580]) and Defendants' motion in limine to exclude newly−identified lay witnesses and lay "summary" testimony based on statements of Gene Gregory (Dckt. No. [583]) are hereby granted. After the liability phase of the trial, over the Thanksgiving holiday weekend, Plaintiffs disclosed for the first time four new witnesses (Nathan Blalock, David Tantlinger, Vinay Vallabh, and Douglas Keaton), and revealed an intention to call them to the stand during the damages phase of the trial. See 11/26/23 Plaintiffs' Supplemental Damages Phase Witness List (Dckt. No. [571]). The belated disclosure is rife with problems. First, the disclosure is far too late. Taking a step back, on December 19, 2022, nearly a year ago, this Court ordered the parties to file the final pretrial order by June 9, 2023. (Dckt. No. [249]). This Court expressly ordered the parties to file their "witness list" with that final pretrial order, as further explained by this Court's Standing Order. This Court later extended that deadline, at the request of the parties, to August 22, 2023. (Dckt. No. [259]). The parties later filed the final pretrial order by that deadline. The final pretrial order begins: "This Order will control the course of the trial and may not be amended except by consent of the parties, or by order of the Court to prevent manifest injustice." (Dckt. No. [279]). The final pretrial order included Plaintiffs' witness list, but the list did not include Nathan Blalock, David Tantlinger, Vinay Vallabh, or Douglas Keaton. Plaintiffs did not unveil the plan to call any of those individuals as witnesses until Friday, November 24, 2023, after the liability phase of the trial and only a few days before the damages phase. The late disclosure is highly problematic. Defendants had no opportunity to depose any of those individuals. Calling them to the witness stand would be highly prejudicial, and would create an unfair and unwelcome surprise. Before and during trial, this Court has repeatedly discussed the need to avoid surprises. The closer the parties get to trial, the greater the burden and prejudice imposed by even a small new revelation. Announcing four new witnesses after the liability phase of a trial is a big revelation, not a small revelation. Disclosing four new witnesses less than a week before the damages phase of a trial in a 12−year−old case isn't any way to run a railroad. Second, the proffered testimony is substantively problematic. For example, Plaintiffs disclosed that Blalock would testify "as a summary witness regarding Plaintiffs' purchases of egg products,

Urner Barry data, and overcharges based on statements made by Gene Gregory." (Dckt. No. [571]) In a similar vein, Plaintiffs wanted Tantlinger to testify "as a summary witness regarding Plaintiffs' purchases of egg products close in time to the seven exports at issue and overcharges based on statements made by Gene Gregory." Id. The disclosures for Vallabh and Keaton were similar, too. There is no need for a summary witness to testify about the statements made by Gene Gregory, the former President of UEP. That's not the proper subject of testimony by a summary witness, and the proffered testimony would not involve voluminous records, either. There is no need to call those witnesses to talk about Plaintiffs' purchases of egg products, either, because Plaintiffs' expert (Dr. Baye) can cover that ground. Third, the disclosure was a thinly disguised attempt to lend credence to the statements by Gene Gregory about exports, from an economic perspective. After all, Blalock is an economist at NERA, and Tantlinger is an accountant. If those individuals testified, the jury likely would view those witnesses as experts or near–experts, to create an aura of economic legitimacy to Gene Gregory's statements. Fourth, it appears that Plaintiffs want to offer the witnesses to perform an expert–like analysis about exports. For example, in their statement about damages filed on November 27, 2023, Plaintiffs revealed that they wanted Blalock to testify as follows: "Blalock will calculate export damages using the percent increase in price due to coordinated exports, as reflected in revised Baye Exhibit 26, by multiplying the Dr. Baye's estimated percent increase by purchases. Attachment C, Plf. Ex. 2010. Plaintiffs anticipate that the summary testimony will be that Plaintiffs' alternative method of calculating damages from exports totals $1,822,67.59." (Dckt. No. [592]) Similarly, Plaintiffs wanted Tantlinger to testify as follows: "Plaintiffs will just ask Tantlinger to conduct calculations based on assumptions Plaintiffs provide based on UEP's statements about the rise in Urner Barry prices. Tantlinger will testify that he was provided by Plaintiffs' counsel an assumption for a price increase: 24.8%. (This reflects the more conservative of Gregory's statements regarding the exports' impact on Urner Barry pricing.) Tantlinger will testify that he was instructed by counsel to apply this percentage to every month between October 2006 and September 2008 affected by exports, thus including any month in which an export was decided upon and announced, or during which the export was actually taken." Id. That's the type of analysis that an expert should perform. And here, Plaintiffs' own expert refused to do it. Plaintiffs' expert (Dr. Baye) could not and did not testify that Plaintiffs suffered damages from the exports. He calculated no such damage. So, Plaintiffs should not be able to get that testimony into the record and before the jury, through a late–breaking disclosure of new fact witnesses a few days before the damages phase of the trial. Truth be told, Plaintiffs are making a last–minute, last–ditch attempt to create an evidentiary basis for damages for exports, after Plaintiffs' own expert could not find any damages based on exports. Plaintiffs want the new fact witnesses to do what Plaintiffs' own expert could not do when it came to damages for exports. The disclosure is an expert gap filler, a belated backdoor backstop for opinions that Plaintiffs' own expert could not and did not provide. It's backfilling, as it were. At some point, targets need to stop moving. The first stopping point is the disclosure deadline for expert opinions. The second and final stopping point is the disclosure deadline for witness lists and exhibit lists in the final pretrial order. Those disclosure deadlines exist for good reason. And here, the deadlines have long since passed. Plaintiffs did not disclose Nathan Blalock, David Tantlinger, Vinay Vallabh, and Douglas Keaton as expert witnesses or fact witnesses in a timely manner. So they will not testify at trial. Mailed notice(jjr, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was

generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.