**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

KRAFT FOODS GLOBAL, INC., )
THE KELLOGG COMPANY, )
GENERAL MILLS, INC., and )
NESTLÉ USA, INC., )
) No. 1:11-cv-08808
Plaintiffs, )
) Judge Steven C. Seeger
v. )
)
UNITED EGG PRODUCERS, INC., )
UNITED STATES EGG )
MARKETERS, INC., CAL-MAINE )
FOODS, INC., and ROSE ACRE )
FARMS, INC., )
)
Defendants. )

**PLAINTIFFS' MOTION FOR A STATUS CONFERENCE**
**IN LIGHT OF RECENT DEVELOPMENTS**

Plaintiffs Kraft Foods Global, Inc., The Kellogg Company, General Mills, Inc., and Nestlé USA, Inc. respectfully move this Court to hold a status conference. Since trial in this case, and continuing through the period in which post-trial motions have been pending before the Court, Defendant Cal-Maine, its executives, and their co-conspirators are alleged to have engaged in a new scheme to manipulate prices by submitting false bids for eggs at premium prices so a market reporter would increase its published price of eggs. Specifically, the U.S. Department of Justice's Antitrust Division and 17 state attorneys general filed a complaint on June 29, 2026, outlining this new scheme, which allegedly began in June 2022 (a few months before this Court was assigned this case) and continued throughout pretrial proceedings, during the trial itself, and during the post-trial briefing. (The new complaint is attached as Ex. A.)

Cal-Maine was asking the Court to vacate the jury's verdict and to stay litigation over attorneys' fees and costs, while it allegedly was actively manipulating prices its customers were paying—with perhaps the most vivid example coming on December 4, 2024. On the same day that Cal-Maine moved to set aside the jury verdict, Cal-Maine's "former CEO"[1] allegedly directed the execution of part of the plan, instructing a CEO of a conspiring company to "let it rip"; after this instruction, the co-conspirators submitted a greater number of manipulative bids per day. Ex. A at 29.

The background below details the full scope of Cal-Maine's new alleged conduct and explains why the Court should hold a status conference imminently. At the status conference, the Court should inquire about the new conduct and ask why the Court should not lift the stay of the proceedings on attorneys' fees and cost, as Plaintiffs have requested in a pending motion (Dkt. No. 776).

**The New Allegations**

On June 29, 2026, the DOJ and 17 state attorneys general filed a civil antitrust complaint against Cal-Maine Foods, Inc. and three other egg producers in the U.S. District Court for the Northern District of Iowa. *United States, et al. v. Cal-Maine Foods, Inc.*, et al.,

---

[1] The complaint's reference to Cal-Maine's "former CEO" undoubtedly is to Dolph Baker, who is Cal-Maine's only living former CEO. *See* Cal-Maine Foods Board of Directors, available at https://www.calmainefoods.com/board-of-directors (last visited July 2, 2026) (showing Mr. Baker served as CEO from 2010 until 2022 and Sherman Miller has been serving as CEO since 2022); *Reuters*, Cal-Maine Foods, Inc. Announces Passing of Company Founder, Fred R. Adams, Jr., available at https://www.nasdaq.com/press-release/cal-maine-foods-inc.-announces-passing-of-company-founder-fred-r.-adams-jr.-2020-04 (last visited July 2, 2026) (showing Mr. Adams served as CEO from 1969 to 2012, and passed away in 2020). As the Court will recall, Mr. Baker testified and attended several days of the trial as Cal-Maine's representative. It is striking that Cal-Maine and he allegedly committed the new price fixing scheme at the same time of trial and after the jury found Cal-Maine liable, in part based on his testimony.

No. 5:26-cv-04060 (N.D. Iowa).[2] The complaint alleges that between June 2022 and March 2025, Cal-Maine and its co-defendants submitted bids designed to artificially inflate the daily egg price quotations published by Urner Barry Publications, Inc., the price-reporting firm used throughout the egg industry and the metric used by the Defendants in this case to carry out their scheme and bilk Plaintiffs out of millions of dollars. *See* Ex. A at ¶¶ 1–2, 13. If true, it is likely that Plaintiffs were among the victims of this scheme.

Cal-Maine's alleged conduct as part of this new scheme tracked events in this case with striking precision. For example:

- DOJ's complaint alleges that on December 19, 2022—the same day this Court set this case for trial—Cal-Maine and its co-conspirators participated in a conference call and agreed to submit a coordinated wave of bids that caused Urner Barry to raise its published egg price quotations.[3] *Compare id.* ¶¶ 16–25, *with* Dkt. No. 249.

- DOJ's complaint further alleges that, in August 2023—the same month this Court was resolving the parties' motions in limine in advance of trial—Cal-Maine executed private trades at premium prices with a co-conspirator so that a market reporter would have "trades to hang her hat on," resulting in several days of increased Urner Barry price quotations. *Compare* Ex. A ¶¶ 27–28, *with* Dkt. Nos. 272, 275, 277, 285, 286, 287.

- Then, on December 4, 2024, Cal-Maine both filed its post-trial motions before this Court (Dkt. Nos. 730, 731) *and* instructed—through its former CEO—a conspiring CEO to "let it rip," after which Cal-Maine and its co-conspirators submitted a high volume of bids at premium prices, knowing that they were not going to fill them (Ex. A ¶¶ 29–30).

- Just days after the Court stayed proceedings related to fees and costs at Defendants' request (Dkt. No. 721), a co-conspirator wrote on December 21, 2022, to Cal-Maine and the other defendants, "[a]s a group we need to bid like they vote in Chicago, early and often"— meaning the conspirators needed to bid on a high volume of egg purchases they knew they would not fulfill so they could manipulate prices (Ex. A ¶¶ 9, 20–22).

---

[2] The parties in the DOJ case have filed a proposed settlement that, if approved, would require monetary payment from Cal-Maine and compliance measures to prevent coordinated manipulation.

[3] The complaint states that "[t]hese examples are not exhaustive" and that Cal-Maine and its co-conspirators discussed their price manipulation scheme "in a variety of other emails, texts, chats, and phone calls" during the lifetime of the scheme. (Ex. A at ¶ 32.)

**Plaintiffs' Request for a Status Conference**

Plaintiffs believe the Court should address these serious issues at a status conference. Plaintiffs respectfully ask that, at this status conference, the Court lift the stay of the proceedings on attorneys' fees, as Plaintiffs have requested in a pending motion. (Dkt. No. 776.) Cal-Maine's alleged conduct during the pendency of the stay—including on the very day it moved to set aside the jury's verdict—eliminates any reason to continue it. As Plaintiffs explained in their pending motion, there is no longer a reason for the stay; even if there were, Cal-Maine should lose the benefit of any doubt.

Plaintiffs also respectfully ask that the Court provide an update on the Defendants' post-trial motions at the status conference. Plaintiffs understand that the Court has an extremely busy docket and that it was the recipient of this complex case as a reassignment. But Plaintiffs have been waiting for justice since they filed their complaint nearly 15 years ago. (Dkt. No. 1). It was nearly three years ago that the jury found Defendants liable. (Dkt. No. 634.) It is in the public interest for the Court to decide both the post-trial motions and the pending motion to lift the stay. Congress enacted the fee-shifting provision in the Sherman Act to encourage private enforcement of the antitrust laws by ensuring that plaintiffs who successfully prosecute antitrust violations can recover their fees. *See Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 139 (1968), *overruled on other grounds by Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984). Many attorneys who once represented Plaintiffs have left their firms and retired from the practice of law since Plaintiffs filed their complaint. The longer the litigation drags on, the less incentive there is for litigants and lawyers to prosecute meritorious cases—and the less likely it is that companies like Cal-Maine are deterred from engaging in illegal conduct.

4

For all these reasons, Plaintiffs respectfully request that the Court schedule a status conference at its earliest convenience and bring this long-pending matter to resolution. Plaintiffs' lead attorney can make himself available to this Court with the exception of July 24 to July 31, 2026.

July 8, 2026

*Counsel for Plaintiffs Kraft Foods Global, Inc., The Kellogg Company, General Mills, Inc., and Nestlé USA, Inc.*

Respectfully submitted,

/s/ *Brandon D. Fox*

Brandon D. Fox (bfox@jenner.com)
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199

Andrianna D. Kastanek
(akastanek@jenner.com)
Angela M. Allen (aallen@jenner.com)
JENNER & BLOCK LLP
353 N. Clark Street Chicago, IL 60654
Tel: (312) 222-9350
Fax: (312) 527-0484